1    contacted the Plaintiff to complain about the hostile, rude and demanding treatment of the

2    attorney from LUCE FORWARD and the Plaintiff informed each witness that he was

3    unable to discuss anything regarding the matter, but all of the contacting witnesses

4    reported similar unprofessional treatment and reported their own conversations and

5    attempts at conversation with the lawyer from LUCE FORWARD.  The lawyer seemed

6    to be fishing to find anything he could about the Plaintiff that might put him in a negative

7    light, and by all accounts he seemed to be failing.  The lawyer from LUCE FORWARD

8    was reduced to "suggesting" various scenarios to the witnesses, some of whom

9    laughed at the lawyer and concluded he was engaged in a "witch hunt" to do harm to the

10   Plaintiff.  The Plaintiff, unable to respond and tell the contacting witnesses anything, was

11   unable to defend himself.  The Plaintiff knew what Thella Bowens (Doe No.1) was

12   doing to him and why she was doing it but could not disclose anything about it.

13   25.    As the attorney for LUCE FORWARD became more desperate to find some

14   wrong doing from people who did not want to see the Plaintiff harmed, he utilized the

15   Private Investigator to go after tangential subjects and try to get some "hard evidence"

16   that the Plaintiff had done something, anything, wrong.  The attorney for LUCE

17   FORWARD sent the investigator over to the car repair place the Plaintiff used and

18   threatened and coerced the owner to give him copies of the repair bills for the Plaintiff's

19   car.  The investigator specifically represented himself as working for the Authority and

20   not for LUCE FORWARD.  The Plaintiff had never been asked to produce these car

21   repair bills and did not give his permission to the owner of the repair place to give them

22   to the investigator or to anyone else.  The investigator produced the documents in front

23   of the attorney for LUCE FORWARD and in front of the Plaintiff.  The investigator and

24   the attorney for LUCE FORWARD refused to say where they had obtained them.  In fact,

25   it was the witness who called the Plaintiff and told him about the incident.  The car repair

26   bills yielded no evidence of wrong doing by the Plaintiff.

27   26.    Next the attorney for LUCE FORWARD questioned witnesses about what they

     knew about the Plaintiff's marriage, including whether they had observed

28

12

1    "communication" problems in the marriage.  The witnesses quickly defended the

2    Plaintiff's marriage and quickly informed the Plaintiff of the attorney's specific

3    invasion into the Plaintiff's marriage and informed him that it was a great marriage and

4    asked the Plaintiff why this attorney was asking questions that had nothing to do with the

5    Plaintiff's job and were also none of his business.

6    27.    On February 7, 2006 the Plaintiff was called into a meeting by his former

7    Vice President of Operations and told they were here to "discuss the disposition of

8    of the recent investigation concerning possible misconduct on your behalf." The Plaintiff

9    was specifically told that he was unable to leave the meeting until a decision had been

10   made regarding his employment status and that he did not have the right to discuss the

11   matter with anyone regarding his options.  The former Vice President had prepared a

12   written outline reference which he claimed would show the Plaintiff that "it was no witch

13   hunt." The Plaintiff vehemently objected and told him that the 'investigation' "was just

14   that: a witch hunt aimed at specifically terminating my employment' with the Authority"

15   and "the point was made clear to me by the was the 'investigation' was conducted and

16   through the questions asked by the 'investigators'." The Plaintiff asked the former Vice

17   President if it was his opinion that the Plaintiff had asked for favors in exchange for

18   'gifts.' The former Vice President then reiterated his statement that the 'investigation' had

19   concluded that there was no Quid Pro Quo.The former Vice President then stated that

20   "the reason for such an extensive 'investigation' was to assure the Authority that there

21   were no signs of criminal activity from [the Plaintiff's] behavior."  The Plaintiff asked

22   him if there was and the former Vice President stated: "to date" no evidence to support

23   this allegation could be found

24        The Former Vice President and the Plaintiff then discussed the Authority Policy

25   concerning "Conflict of Interest".  He specifically singled out one airline for his

26   acceptance of a comp stand-by ticket, available by the airline to the general public.

27   28.    Plaintiff then pointed out his points of concern to the former Vice President: (1)

28   the ambiguousness of the "Conflict of Interest" Code, and (2) more importantly, the

13

4-64

application of the policy among Authority employees. The Plaintiff mentioned the specific abuse of the policy from the Authority Vice Presidents, Board Members, and the President/CEO Thella Bowens (Doe No.1) This included airline ticket changes, upgrades, access to First Class lounges and other routinely-demanded expensive privileges not allowed to other Authority employees. The Plaintiff pointed out to the Vice President that the application of the "Conflict of Interest" Code policy was selective and unfairly enforced.

29.    The Plaintiff had discussed such items as the above-stated violations of the Authority's policy with the former Vice President when he had been the Vice President and the Plaintiff's supervisor and he had always seen no reason for concern, and no action had been taken. This same former Vice President had himself directed the Plaintiff to take care of tickets for Authority employees and Board Members. The Plaintiff asked why it was okay for Thella Bowens (Doe No.1) to ask and receive favors and not okay for employees to receive the same benefits. One example was Bowen's request to fly in in BBQ meat from Texas. The former Vice President defended this practice as approved as an "Accepted Industry Practice", which connotes that among the Regional Airport Authority for the Counties paying to fly in meat from another state is a billable expense.

30.    The former Vice President then told the Plaintiff that the Authority could no longer trust his judgment and they are "forced to discontinue working relations." His "choice" was to sign a resignation or they would terminate him. When the former Vice President, now Chief of Staff to Thella Bowens (Doe No.1), asked the Plaintiff for final comments he told him his opinion as to the unfairness of the 'investigation' and the lack of professionalism on the part of the 'hired help' (the lawyer from LUCE FORWARD and the 'investigator' he hired). The Plaintiff stated that the outcome of the investigation had already been pre-determined and that the 'investigators' were not impartial and did not let the 'truth come out.' The Plaintiff asked the following questions, all of which went unanswered: How did this 'investigation' come about? Why were the

14

allegations made against him never explained? Why was the reasoning behind being placed on administrative leave never disclosed? Am I the only person being 'investigated' or are there others? What authority was given to the 'investigators' to allow them to invade my privacy and procure privileged information? The former Vice President's last comment to the Plaintiff was: "Holy shit, I knew something like this would happen as part of the reorganization."

31. The conduct of the Authority employees and DOES 1 through 20 was a substantial factor in causing the Plaintiff's harm.

32. As a direct and proximate cause of the acts and conduct described above, Plaintiff has been and continues to be subjected to shame, humiliation and extreme emotional distress, all to the Plaintiff's damage in a sum as yet undetermined, and Plaintiff requests leave of court to state such damages in accordance with proof at trial.

33. As a direct and proximate cause of said acts of harm and conduct against the Plaintiff by Defendants and DOES 1 through 20 the Plaintiff has lost standing in his community, been held up to ridicule and shame, suffered great mental and emotional distress, worry, fear of his economic future and depression, all to the Plaintiff's damage in a sum that cannot be computed at this time, and the Plaintiff requests leave to amend this complaint to state these damages in accordance with proof at trial.

## SECOND CAUSE OF ACTION
### (Violation of Ethics Code)
### (Against All Defendants)

34. Plaintiff incorporates paragraphs 1 through 7 of the Facts Common to All Causes of Action as though fully set forth herein and paragraphs 8 through 33 of the First Cause of Action as though fully set forth herein.

35. " It is the policy of the San Diego County Regional Airport Authority that (a) Public officials, both elected and appointed, shall comply with both the letter and the

15

spirit of the laws affecting the operations of government; (b) Public officials shall be independent, impartial and fair in their judgment and actions; ( c ) Public office shall be used for the public good, not for personal gain;." SDCRAA Policies Art. 2 Ethics, Part 2.0; Section 2.01 POLICY STATEMENT   The Authority then adopted a Code of Ethics and Conduct and specifically designated that the "employees" includes "the Authority's Executive Director" [Thella Bowens, Doe No.1]   General Counsel [Bret Lobner] "other officers and consultants." Further, "This Ethics Code shall be broadly construed to effectuate its purposes." The citizens served by the Authority "are entitled to fair, ethical and accountable . . . government." Code of Ethics, Art. 2, Part 2.0, Section 2.01

36.    Ethics Code Art. 2, Part 2.0, Section 2.02 "Act in the Public Interest" requires "[e]mployees of the Authority will work for the common good of the people of the County of San Diego and not for any private or personal interest. . . ." Under the Code of Ethics, Art. 2, Part 2.0, Section 2.10    "Prohibited Receipt of Benefits" (a) **"Benefit"** means any honorarium, gift or **travel expense** made to, or in the interest of, an individual or a member of the individual's immediate family." (2) **"Gift"** means any payment that confers a personal benefit on the recipient . . . *unless the rebate or discount is made in the regular course of business to members of the public without regard to official status."* The standard airline issued trip pass which is used when ticketing employees, other airline personnel and non-employees authorized for non-revenue travel ticket given to the Plaintiff is only valid for ninety days and the seats are limited because it is a stand-by ticket. All airlines have the autonomy to give them to anybody  and is routinely given in the regular course of business to members of the public "without regard to official status." There was no requirement for the Plaintiff to report the gift of a stand-by complementary ticket whether it was used or not. In order to be a "benefit" the recipient must know that the rebate or discount is not made in the regular course of business to members of the public. Ethics Code, *supra,I* (4)(d)

37.    The Ethics Code Art. 2, Part 2.0, Section 2.10 contains specific Restriction on

16

**4-67**

Benefits under (b) (1) No Board member or employee of the Authority shall request a benefit from any person or entity or accept any benefit intended to influence official duties. (B)(2) No Board member or employee of the Authority shall accept anything of value from anyone, other than the Authority or another Board member or employee, for doing his or her job. Violations of the above-stated Ethics Code, Sections 2.01; 2.02; and 2.10 occurred during the Plaintiff's employment as a Director with the Authority including, but not limited to the following incidents:

a.     The Vice President of Operations paid $1200.00 for a ticket on an airline to get Blue Bell ice cream for Thella Bowen's BBQ, received reimbursement for the travel expense under the guise that he was attending a cultural awareness development meeting with another airline. The ice cream was available in Southern California. When word got around the Authority about the cost of going to Texas for ice cream, the Vice President directed the Plaintiff to "shut that little shit up" referring to the budget analyst who continued to comment on it. The Plaintiff refused the directive. This travel expense was not reasonably related to a governmental purpose.

b.     Each time an Authority employee requested a change to be made to an airline ticket a benefit was accepted when the recipient took "any action exercising control over the benefit." Thella Bowen would purchase her own tickets and then request date changes and upgrades, along with Premier Lounge Access (only permitted for airline premier club members). This practice was so prevalent by Bowens and her staff that on the day that the investigation of the Plaintiff began, Bowens had secured access to an airline Premier lounge prior to her trip to Asia. Any change to any ticket itinerary is approximately fifty to one hundred dollars, a service charge, plus the cost in set p rice for an upgrade on a ticket, ranging from one hundred fifty to two hundred dollars each way. Thella Bowens routinely instructed her Assistant to contact either the Plaintiff or the Vice President that the Plaintiff reported to, to make the changes described above. The Plaintiff would make the changes for Bowen by going directly to the airline Station

17

Manager and requesting the change for Thella Bowens. The Plaintiff performed this benefit accommodation more than thirty times for Bowen and her staff. All of these requested benefits were in violation of the Ethics policy.

   c.    Each year Thella Bowens requested an employee BBQ named "Thella's BBQ." The event drew from fifty to over three hundred attendees. The centerpiece of the event called for pork, beef ribs and brisket to be flown out from her favorite restaurant in the Dallas Fort Worth area, Angelo's. Employees from the Director level and above were required to pay money to help subsidize the expense of the meat. Currently Thella's BBQ has been renamed the "Annual Employee Appreciation Employees BBQ" and now costs approximately ten to fifteen thousand dollars, not including the cost of the labor for the Authority employees who are designated to support the event. The Plaintiff was then instructed to contact an airline to make arrangements at her behest for free airline delivery of the meat. The net weight of the total delivery was over two hundred pounds at an approximate cost of $2500.00. The free airline flight of the meat violated the Ethics policy. The cost of the BBQ comes from the revenue collected by the Authority from the airlines and its users.

   d.    Thella Bowens requested through a Vice President that he obtain special airline flight privileges for her sister who lives in Texas. Bowens asked for the ability to get either stand by or reduced rate tickets for her sister for business and personal travel. The request was made to the airline Station Manager. The airline Station Manager then responded to the conditions under which they could do it. This request by Thella Bowens (Doe No.1) violates the Ethics Code.

   e.    The request from the Chairman of the Board of the Authority to secure First Class upgrade airline tickets on the day of his planned departure for his wife and himself required the intervention of the airline Station Manager. This tactic allowed the Chairman of the Board of the Authority to save approximately two hundred fifty dollars for the upgrade expenses. This action violates the Ethics Code.

18

f.      The Chairman of the Board of the Authority on several occasions requested to enter into a temporary lease to use a portion of the parking lot at Harbor Island for no expense for an activity he is involved with annually. The lease of Authority property for non-aviation use is strictly prohibited and a violation of the Ethics Code as well as other laws and regulations.

g.      An Authority Board member annually inserts his official authority to influence negotiations between a community event and the rental of the General Dynamics property at a rate lower than the fair market value. As a condition of this use, all rental cars must be removed from the property and a large amount of vehicles relocated from the property. This violates the Ethics Code as well as other laws and regulations.

h.      An Authority Board member requested assistance in rearranging his itinerary so that he could attend the Little League World Championships in Williamsport, Pennsylvania. The Plaintiff had to work with three different airlines to coordinate the First Class upgrade the Board member requested, as well as the time changes to allow the Authority Board member his desired schedule. This violates the Ethics Code.

I.      The Authority's Vice President of Budget and Finance repeatedly requested from the Plaintiff assistance in changing flight schedules. Over a one year period the Plaintiff assisted with the change of approximately fifteen to twenty schedules, all to accommodate personal and non Authority business travel to Las Vegas and Texas. This violates the Ethics Code.

j.      The General Counsel of the Authority used his official position to obtain fifty-yard-line premier seating at the Poinsettia Bowl football game by getting the Plaintiff to use his official position as Director, Landside Operations to make contact with the Holiday Bowl Committee and request premium seating for the event. This involved securing six tickets for $300.00, which the Plaintiff paid for so that the General Counsel had to reimburse the Plaintiff. When the Holiday Bowl Committee member asked the

19

4-70

Plaintiff if the tickets were complimentary for no charge the Plaintiff refused the gift and paid for them. The General Counsel knew he was in violation of the Ethics Code when he made the request for the favors from the Plaintiff.

After the Plaintiff filed his Claim with the Airport Authority, the General Counsel wrote to the Plaintiff that "the facts about me are false, misleading, defamatory, slanderous, libelous" because the number of tickets he requested was six, not eight, and the price he paid for the tickets was $300.00 not $400.00. He then threatened to pursue legal action against the Plaintiff for "filing a false defamatory accusation against [him]" because "Mr. Hernandez had volunteered to pick up the tickets since he already had plans to visit the ticket the ticket [sic] location", a statement which is untrue. The General Counsel's threat is an additional and separate violation of the Ethics Code.

k.    The Plaintiff was present with the Vice President of Operations when the Chairman of the Board of the Authority requested a contractor to be hired to re-survey his Authority office space for "listening devices." The Chairman's office space had previously on two separate occasions been surveyed for "bugging devices" or other "listening apparatus." The Chairman was worried that his communications could be intercepted by the FBI or similar such agencies. This contract request is a gross waste of the Authority funds.

l.    The Vice President of Budget and Finance, representing himself and Thella Bowens as Board members of the Jackie Robinson YMCA, requested that the Plaintiff secure a free round trip airline ticket for the owner of national basketball team. The request was made so that the owner could be the featured speaker at a banquet.

m.    The Vice President of Operations with the full knowledge of Thella Bowens, requested that the Plaintiff secure free round tip airline tickets to be donated as the featured prizes of the annual United Way campaign. The Plaintiff did this twice.

n.    Thella Bowens requested from the Plaintiff that a marked reserved parking stall be designated in the employee parking lot at the Commuter Terminal for her

20

**4-71**

1  personal use. Bowens then never used the stall, choosing to park elsewhere and

2  she reassigned the stall to the Vice President of Budget and Finance. That particular

3  reserved parking staff is clearly marked for use only by the President/CEO of the

4  Airport Authority. The designation of the parking stall to the Vice President of Budget

5  and Finance clearly connotes preferential treatment and is a violation of Airport Authority

6  rules and regulations.

7        o.     The Vice President of Operations instructed the Plaintiff to use his

8  position as Director of Landside Operations to secure a limousine from one of the

9  Airport's service providers to be used as part of the procession for a colleague's wife's

10  funeral.

11  38. "No Board member or employee of the Authority shall use or threaten to use

12  any official power or influence to discourage, restrain or interfere with any other person

13  for the purpose of preventing such person from acting in good faith to report or otherwise

14  to bring to the attention of the Board *or any other appropriate agency, office or*

15  *department* any information which, if true, would constitute:

16       (1) a work-related violation by a Board member or employee of any law or

17  regulation, including this Ethics Code;

18       (2) a gross waste of Authority funds;

19       (3) a gross abuse of power;

20       (4) a conflict of interest of a Board member or employee; or

21       (5) No Board member or employee of the Authority shall use or threaten to use

22  any official authority or influence to effect any action as a reprisal against a Board

23  member or employee who reports or otherwise brings to the attention of the Board or

24  other appropriate agency, office or department, any information regarding the subjects

25  described in Subsection (a)

26       The Plaintiff attempted, time and time again, to bring to the attention of the

27  attorney from LUCE FORWARD the above-stated Ethics violations and every single

28  

21

**4-72**

time the attorney from LUCE FORWARD interrupted and spoke over the Plaintiff to
prevent the Plaintiff from reporting violations, both legal and ethical, that he was aware
of and had not been 'investigated.' The attorney was not interested in knowing about the
above-stated violations or any incident that did not show wrongdoing by the Plaintiff.
The Plaintiff did his best to report, disclose, divulge and bring to the attention of his
employer's 'investigator' (the attorney from LUCE FORWARD) facts and information
relative to both suspected and actual violations of state law directly related to his job.
The Plaintiff observed improper governmental activity by employees of the Authority
undertaken in the performance of the employee's official duties that demonstrated
economic waste, incompetency and inefficiency.  The 'investigator' Thella Bowens hired
(the lawyer from LUCE FORWARD) attempted to use and used, both directly and
indirectly, intimidating, threatening, coercing, and commanding tactics to influence the
information he was told by the Plaintiff and by the witnesses during their interviews.
Thella Bowens could not have reasonably believed that taking personnel action, including
hiring and directing an 'investigation' into the Plaintiff's alleged but not articulated
violations of the Authority's Ethics policy was and is justified based on her own and her
direct report employees' own well-know violations of the same policies and Codes.
Bowens was well aware that the evidence of her own violations were known to the
Plaintiff and when he reported those violations to her hired 'investigator' he was cut off
and told not to discuss them.  Other witnesses also disclosed to Bowen's 'investigator'
knowledge of Bowne's wrongdoing as well as the Ethics violations by her Vice
Presidents that Bowens condoned and ratified.

39.    The Plaintiff contends he disclosed a number of legal violations for which the
Authority retaliated against him.

The first disclosure arose from the Plaintiff's opposition to a "side deal" that
Bryan Enarson made with a concessionaire at the airport, Host, that restricted the
Authority's ability to annex the space needed to comply with ADA requirement for the

22

women's restrooom at the airport..  The result of Enarson's actions increased the project budget by over $2 million.  The Plaintiff believed this resulted in legal noncompliance with the ADA requirements which were well settled at that time and took precedence over the handshake agreement Enarson made without negotiation with Host.

The second disclosure also arose from events involving Enarson, who was the lead negotiator on behalf of the Airport for the property known as the General Dynamics property.  Enarson proceeded with the negotiations without ascertaining the extent of the "public hazards around the airport"and resulted in a lease agreement that loses millions of dollars per year for the Authority.

The third disclosure involved the misuse and waste of the usable land around the property known as the Teledyne Ryan property.  Enarson proceeded with the negotiations without ascertaining the extent of the "public hazards around the airport" and that resulted in a lease agreement that loses millions of dollars per year for the Authority.  Enarson then blocked open discussion of the problem and no resolution has been attempted.

The fourth and final disclosure encompassed the issue of the contract bid by the Lindbergh Parking, Inc.  (LPI) and its failure to meet its contract expectations and the offenses and actions by the LPI that indicate a lack of business integrity.

The Plaintiff believes it was the personal relationship of the President/CEO of the Authority, Thella Bowens (Doe No.1) who has shown favoritism, partiality and a refusal to hold those of the same minority race as herself to the same accountability as the Ethics Code and other laws and regulations require.  Besides Enarson, who is white, and a premier kiss ass, Bowens has never applied the same policy standards to herself or to her Vice Presidents who are black.  Maurice Gray is black and is the beneficiary of not having to comply with the standards and requirements that other Authority contractors have been held to.  By eliminating the Plaintiff from his job she has assured that no one else surrounding her at the high management levels will speak up or oppose whatever it is

23

1   she desires to do, both personally and in her job position.  Thella Bowens (Doe No.1)

2   made it clear through the attorney she hired from LUCE FORWARD and through the

3   investigator the attorney hired that she alone would make the determinations as to

4   conclusions and findings of the two.  Bowens (Doe No.1) met on a regular, if not daily

5   basis, with the two she hired and reviewed their "findings" and personally directed them

6   in their 'work', including their 'work' that invaded the Plaintiff's privacy and had no

7   relation whatsoever to the Plaintiff's job or his job performance.

8   36.    The Ethics Code, Art. 2, Part 2.0, Section 2.05 (a) requires that : "Board members

9   and employees of the Authority shall comply with the laws of the . . . State of California

10  and the ordinances, codes, rules and regulations of the Authority in the performance of

11  their public duties. . . ." Section 1.17 (a) of the Ethics Code provides: "Whenever in this

12  Code any act or omission is made unlawful, it shall include causing, permitting, aiding or

13  abetting such act or omission." Under these laws, all employees, including Thella Bowens

14  (Doe No.1) and her Vice Presidents and Directors who participated in acts that violated

15  the Ethics Code, whether by requesting them, directing them, condoning them or ratifying

16  them, are "causing, permitting, aiding or abetting" the acts.

17  40.    The Plaintiff believed in good faith that LPI was in violation of California Public

18  Contracting laws found in the California Public Contract Code Section 100 et seq.  The

19  discovery that LPI had presented false expenses in its bid submission, combined with the

20  unsatisfactory performance of the contract, its failure to submit insurance documents and

21  its lack of business integrity when given time and opportunities to correct its wrongdoing

22  seriously affected the reliability and credibility of the performance of LPI.  The final

23  deadline for Maurice Gray to submit a job description that detailed the duties he

24  performed as President of LPI to justify his salary of $60,000.00 was quickly approaching

25  when Thella Bowens (Doe No.1) made the decision to begin an 'investigation' of the

26  Plaintiff.  Bowens wanted Maurice Gray to continue in that position, partly because he

27  was black, and she favored protection of the black employees, but also because she did

28

24

not want anyone, including the Plaintiff, to speak up and oppose whatever decisions she made, whether they involved misuse of government funds as the Plaintiff believed when he opposed and objected to the leases that cost the Authority millions of dollars for nothing in exchange. Over and over again the Plaintiff voiced his opinions that waste of money occurred when Enarson, with Bowen's approval, failed to consider the budget and its inability to sustain payments when no revenue could be generated from projects improperly negotiated and Bowen's refusal to address those problems. LPI was the last straw for Bowens. The Plaintiff believed that Bowens and her Vice Presidents were using favoritism as a form of corruption in the LPI contract. There is no other "justification" for the timing, the identity of the retaliators, and the secretive and calculated course of conduct that Bowens called for choosing to 'investigate' the Plaintiff at that time. Bowens cannot show independent reasons for her hiring of an 'investigator' that demonstrates clear and convincing evidence that she would have conducted an 'investigation' if the Plaintiff had not engaged in protected disclosures or refused to participate in suspected and actual violations of state law governing public contracts.

41.    The Ethics policies and Code are not uniformly followed, enforced or used by Authority management. The Plaintiff was singled out because he opposed and objected on numerous occasions to the actions of the Authority's President/CEO Thella Bowens and her Vice Presidents when he believed he had reasonable cause to believe that the opposition was necessary to disclose a violation of state statute, or a violation or noncompliance with a state statute, rule or regulation. The Authority, as the Plaintiff's employer, retaliated against the Plaintiff for having exercised his rights under Labor Code section 1102.5(a)(b) ( c).

42.    The conduct of the Defendant Authority and DOES 1 through 20 was a substantial factor in causing the Plaintiff's harm.

43.    As a direct and proximate cause of said acts of harm and conduct described above, Plaintiff has been and continued to be subjected to shame, humiliation and extreme

25

emotional distress, all to the Plaintiff's damage in a sum as yet undetermined, and Plaintiff requests leave of court to state such damages in accordance with proof at trial.

44.      As a direct and proximate cause of said acts of harm and conduct against the Plaintiff by Defendants and DOES 1 through 20 the Plaintiff has lost standing in his community, been held up to ridicule and shame, suffered great mental and emotional distress, worry, fear of his economic future and depression, all to the Plaintiff's damage in a sum that cannot be computed at this time, and the Plaintiff requests leave to amend this complaint to state these damages in accordance with proof at trial.

### THIRD CAUSE OF ACTION
### (Violation of the Right to Privacy)
### (Against All Defendants)

45.      Plaintiff incorporates paragraphs 1 through 7 of the Facts Common to all Causes of Action and paragraphs 8 through 33 of the Plaintiff's First Cause of Action and paragraphs 34-44 of the Second Cause of Action as though fully set forth herein.

46.      Thella Bowens (Doe No.1) hired an attorney from LUCE FORWARD and he hired an investigator to supposedly look into "allegations" of violations of the Ethics policy and Code by the Plaintiff. There is nothing in either the Ethics policy or the Ethics Code of the Authority that invites intrusion into the private life of the Plaintiff, including "investigating" anything in regard to his marriage. The Plaintiff's private life, including his marriage, has nothing to do with his job duties, his job position or any matter that is of any concern to the Authority or to Thella Bowens personally. The attorney from LUCE FORWARD hired by Thella Bowens and the investigator hired by the attorney from LUCE FORWARD are both subject to the Authority's Ethics policies and to the Ethics Code of the Authority, as both were hired by Thella Bowens on behalf of the Authority as consultants to her and the officers of the Authority with whom she shared the decision

26

making of the 'investigation.' In addition, Thella Bowens and all of those with whom she shared the 'investigation' responsibilities were and are charged with knowledge of the Ethics policies and Ethics Code of the Authority and as so charged knowingly with the actions of intrusion committed by them individually and in the dual capacity of their job duties on behalf of the Authority.

47.      The Plaintiff had a reasonable expectation of privacy in regard to his marriage. The interrogation of witnesses as to their observations, personal knowledge or opinions regarding the Plaintiff's marriage, including communication within his marriage, the manner of communication between the Plaintiff and his wife, the appearance of the marriage to outsiders, and any other matters that the attorney for LUCE FORWARD and his hired investigator made regarding the Plaintiff's marriage from witnesses who were being interviewed regarding an 'investigation' whose subject matter had not been revealed to the Plaintiff was intentionally intruded in by the hired help of the Authority. The intrusion of the Authority's 'consultants' and the stated discussion regarding the findings of the 'consultants' with the Authority management on a regular basis that included findings of the interrogation of witnesses on the subject of the Plaintiff's marriage was highly offensive to the Plaintiff and would be highly offensive to a reasonable person.

48.      The investigator hired by the attorney from LUCE FORWARD also intruded into the Plaintiff's privacy by coercing the owner of the car repair shop (where the Plaintiff had his car repaired) to hand over copies of car repair records and invoices showing payment of the car repairs.  The owner immediately contacted the Plaintiff to explain that the investigator told him he was hired by the Authority to look into the Plaintiff's records and threatened him with legal proceedings if he did not immediately turn over the records to him.  The owner protested and opposed the demand but was coerced into providing the records by the investigator.  Neither the Authority, the attorney for LUCE FORWARD or the investigator had sought permission from the Plaintiff to obtain or look at those private

27

records. The Plaintiff was furious at the intrusion into his private affairs without his knowledge or permission. Given the instruction that he could not tell the owner what the circumstances of the invasion into his privacy meant, the Plaintiff was further denied the opportunity to defend himself from the invasion or explain the reason why the investigator had committed this act of intrusion. Once again, the Plaintiff was left in a position of not knowing himself the reason for the 'investigation' and the embarrassment that this investigator could act to further leave the Plaintiff in another position of looking like he had done something wrong when he had not.

49.    The Plaintiff had a reasonable expectation of privacy in regard to his private vehicle and its repair documents and invoices. The intentional intrusion and false statements used by the investigator hired by the attorney for LUCE FORWARD to obtain the Plaintiff's private records were highly offensive to him and would be highly offensive to a reasonable person. The circumstances surrounding the Authority's intrusion were part of a calculated scheme to find some violation that could "justify" the termination of the Plaintiff because he had made disclosures regarding the Authority's operations and budget that he believed were illegal and would prevent the Plaintiff and others from reporting similar violations by the Authority and allow the Authority to continue to operate in whatever manner it desired to do so regardless of the consequences to the budget of the Authority.

50.    The Plaintiff did not consent to the Defendant Authority's or Defendants DOES 1 through 20's intrusion into either his marriage or the records of his car repair.

51.    The Plaintiff suffered harm from the Defendant Authority's and Defendants DOES 1 through 20's wrongful intrusion into his private affairs and Defendants' conduct was a substantial factor in causing the Plaintiff harm.

52.    The Plaintiff suffered severe emotional distress The Defendants' conduct was a substantial factor in causing Plaintiff severe emotional distress. As a direct and proximate result of the acts and conduct described above, Plaintiff has been and continues

28

to be subjected to shame, humiliation, and extreme emotional distress, all to the Plaintiff'

damage in a sum as yet undetermined, and Plaintiff requests leave of court to state such

damages in accordance with proof at trial.

53.     As a direct and proximate cause of said acts of harm and conduct against the

Plaintiff by Defendants the Plaintiff has lost standing in his community, been held

up to ridicule and shame, suffered great mental and emotional distress, worry, fear of his

economic future and depression, all to the Plaintiff's damage in a sum that cannot be

computed at this time, and the Plaintiff requests leave to amend this complaint to state

those damages in accordance with proof at trial.

**FOURTH CAUSE OF ACTION**

**(Wrongful Discharge in Violation of Public Policy)**

**(Against All Defendants)**

54.     Plaintiff incorporates paragraphs 1 through 7 of the Facts Common to All Causes

of Action and paragraphs 8 through 33 of the First Cause of Action and paragraphs 34 to

44 of the Second Cause of Action and paragraphs 45 to 53 of the Third Cause of Action

as though fully set forth herein.

55.     The Plaintiff was discharged from employment for reasons that violate a public

policy.  The Plaintiff was forced to resign his position from the Authority because he

had disclosed in good faith to his own Authority, a government agency, the violations of

the Authority regarding its misuse of money, waste of government funds, the violations of

law regarding four projects of which he had personal knowledge of the violations of law

and rules and regulations that the Authority violated repeatedly.

56.     The Plaintiff was exercising a statutory right or privilege to disclose the legal

violations he in good faith believed were violations and in doing so was reporting to his

own agency violations of statutes, rules and regulations that were of paramount public

importance.  It is well settled in California law that in addition to statutory provisions,

29

1   valid administrative regulations such as Ethics Code may serve as a source of

2   fundamental public policy because those regulations implement fundamental public

3   policy.

4   57.    The Plaintiff absolutely made clear his opposition in private meetings, in public

5   meetings, at open door and closed door meetings to the failure of the Authority

6   to implement the annexation of the space needed to have the women's restroom comply

7   with the ADA requirements and to complete the project at a reasonable cost and in a

8   timely manner.

9   58.    The Plaintiff made clear to the Vice President to whom he reported that he

10   objected and opposed during the negotiations and the due diligence process that Enarson

11   ( Vice President and confidante to Thella Bowens ) was not properly understanding the

12   lawful use and conditions of the General Dynamics property that resulted and continues

13   to result in losses of millions of dollars for the Authority.

14   59.    The Plaintiff disclosed and opposed the misuse and waste of the unusable land

15   around the Teledyne Ryan property at Capitol Improvement meetings, at weekly

16   Operations meetings, at Directors meetings and other times.

17   60.    The Plaintiff conducted numerous disclosure meetings with the Vice President

18   to whom he reported regarding the failure of LPI to meet the expenses and conditions that

19   the company had used to bid on the parking operations contract.  The Plaintiff also met

20   repeatedly with Maurice Gray of LPI and gave him extended help and time to come into

21   compliance on the contract and he failed and refused to do so.  This correlated with the

22   idea of conducting an 'investigation' of the Plaintiff rather than of the contractor.

23   61.    The conduct of the Defendants was a substantial factor in causing the Plaintiff's

24   harm.

25   62.    As a direct and proximate cause of the acts and conduct described above, Plaintiff

26   has ben and continues to be subjected to shame, humiliation and extreme emotional

27   distress, all to the Plaintiff's damages in a sum as yet undetermined, and Plaintiff requests

28

30

leave of court to state such damages in accordance with proof at trial.

63.    As a direct and proximate cause of said acts of harm and conduct against the Plaintiff by Defendants and DOES 1 through 20 the Plaintiff has lost standing in his community, been held up to ridicule and shame, suffered great mental and emotional distress, worry, fear of his economic future and depression, all to the Plaintiff's damage in a sum that cannot be computed at this time, and the Plaintiff requests leave to amend this complaint to state those damages in accordance with proof at trial.

WHEREFORE, Plaintiff JOSE HERNANDEZ respectfully prays this court:

    1.    For general damages according to proof;

    2.    For attorneys fees and costs on this suit pursuant to CCP Section 1021.5;

    3.    For such other and further relief as the court deems just and proper.

Dated: August 30, 2006

CATHRYN CHINN, Attorney for
Plaintiff Jose Hernandez

31

4-82

**BLUEBIRD** (888) 477-0700
OFFICE SUPPLIES www.bluebirdonline.com

**EXHIBIT 5**

1  FRED M. PLEVIN (SBN 126185)
   SANDRA L. MCDONOUGH (SBN 193308)
2  ALBERT R. LIMBERG (SBN 211110)
   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3  401 B Street, Tenth Floor
   San Diego, California  92101-4232
4  Telephone: 619-237-5200
   Facsimile: 619-615-0700

5
   AMY S. GONZALEZ (SBN 181745)
6  **SAN DIEGO COUNTY REGIONAL AIRPORT
   AUTHORITY**
7  3225 N. Harbor Drive
   San Diego, CA 92138
8  Telephone:  (619) 400-2425
   Facsimile: (619) 400-2428
9

10 Attorneys for Defendant
   SAN DIEGO COUNTY REGIONAL AIRPORT
11 AUTHORITY

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                         COUNTY OF SAN DIEGO

14 JOSE HERNANDEZ,                          CASE NO. GIC 871979

15            Plaintiff,                    **NOTICE OF HEARING ON DEMURRER
                                            AND DEMURRER TO PLAINTIFF'S
16       v.                                 COMPLAINT**

17 SAN DIEGO COUNTY REGIONAL
   AIRPORT AUTHORITY, a public entity;
18 and DOES 1 through 12, inclusive,        Date:          December 22, 2006
                                            Time:          1:30 p.m.
19            Defendants.                   Dept:          71
                                            Judge:         Hon. Richard E. Strauss
20                                          Complaint Filed: September 1, 2006
                                            Trial Date:    Not Set
21                                          **EXEMPT FROM FEES
                                            GOVT. CODE § 6103**
22

23       TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24       PLEASE TAKE NOTICE that on December 22, 2006 at 1:30 p.m., or as soon thereafter as

25 counsel may be heard, in Department 75 of the San Diego County Superior Court, located at 330

26 West Broadway, San Diego, California 92101, defendant San Diego County Regional Airport

27 Authority ("Authority") demurs to plaintiff's complaint on the following grounds:

28

PAUL, PLEVIN,
SULLIVAN &         NOTICE OF HEARING ON DEMURRER AND        1        CASE NO. GIC 871979
CONNAUGHTON LLP    DEMURRER TO PLAINTIFF'S COMPLAINT

5-83

1     1)    The second cause of action fails because there is no private right of action for

2            violation of the Authority's Ethics Code.

3     2)    The second through fourth causes of action are all common law claims and are

4            barred by Government Code section 815(a);

5     3)    Each cause of action is barred by the discretionary act immunity and investigatory

6            immunity found in Government Code sections 820.2 [second through fourth causes

7            of action] and 821.6 [all causes of action], which apply to the Authority through

8            Government Code section 815.2(b);

9     4)    The first, second and fourth causes of action, which allege retaliation and

10           violations of Labor Code section 1102.5, fail as a matter of law because Plaintiff

11           has not alleged a prima facie case showing that he reasonably believed that the

12           Authority's actions violated a state or federal law, rule or regulation; and

13     5)    The third cause of action for invasion of privacy fails as a matter of law because

14           Plaintiff did not have any reasonable expectation of privacy in his motor vehicle

15           repair records or in third parties' opinions regarding his marriage.

16        This demurrer is based on this notice, the accompanying demurrer and memorandum of

17  points and authorities filed in support of this demurrer and motion to strike, the entire file in this

18  case, and any other evidence or argument properly considered by the court in connection with this

19  demurrer.

20        This court follows California Rules of Court, Rule 324.  The court will therefore make its

21  tentative ruling available by telephone at (619) 531-3690 the court day before the scheduled

22  hearing at 3:00 p.m., or the tentative ruling may be reviewed on the Court's internet web site

23  (www.sdcourt.ca.gov) after 3:00 p.m. on that same day.

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF HEARING ON DEMURRER AND
DEMURRER TO PLAINTIFF'S COMPLAINT

2

CASE NO. GIC 871979

1

Dated: October 5, 2006

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

By: _Sandra L. McDonough_
FRED M. PLEVIN
SANDRA L. MCDONOUGH
ALBERT R. LIMBERG
Attorneys for Defendant
SAN DIEGO COUNTY REGIONAL AIRPORT
AUTHORITY

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF HEARING ON DEMURRER AND
DEMURRER TO PLAINTIFF'S COMPLAINT

3

CASE NO. GIC 871979

# PROOF OF SERVICE

I, the undersigned, hereby declare that I am over the age of eighteen years and not a party to this action. I am employed, or am a resident of, the County of San Diego, California, and my business address is: Paul, Plevin, Sullivan & Connaughton LLP, 401 B Street, Tenth Floor, San Diego, California 92101.

On October 5, 2006, I caused to be served the following document(s):

- **NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S COMPLAINT;**

- **NOTICE OF HEARING ON DEMURRER AND DEMURRER TO PLAINTIFF'S COMPLAINT;**

- **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S DEMURRER TO PLAINTIFF'S COMPLAINT**

- **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S DEMURRER AND/OR MOTION TO STRIKE;**

on the interested party (ies) in this action by placing ☑ a true copy ☐ the original thereof and addressed as follows:

Cathryn Chinn, Esq.
3990 Old Town Avenue, Suite A109
San Diego, CA  92110
Tel:  619-295-4190 / Fax:  619-295-9529
**Attorney for Plaintiff Jose Hernandez**

☑    (By **MAIL SERVICE**) I then sealed each envelope and, with postage thereon fully prepaid postage, I placed each for deposit with United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

☐    (By **FACSIMILE**) I transmitted the documents by facsimile machine, pursuant to California Rules of Court, Rule 2006.  The facsimile machine I used complied with Rule 2003 and no error was reported by the machine. The transmitting facsimile machine number is **619-615-0700**.  The fax number of the party being served is **619-295-9529**. Pursuant to Rule 2006.

☐    (By **OVERNIGHT DELIVERY**) I caused to be delivered such envelope by hand to the office of the addressee.  I then sealed each envelope and, with postage thereon fully prepaid, I placed each for deposit this same day, at my business address shown above, following ordinary business practices for overnight delivery.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed October 5, 2006, at San Diego, California.

_Martha Martinez_
Martha Martinez

**EXHIBIT 6**

1   FRED M. PLEVIN (SBN 126185)
    SANDRA L. MCDONOUGH (SBN 193308)
2   ALBERT R. LIMBERG (SBN 211110)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3   401 B Street, Tenth Floor
    San Diego, California 92101-4232
4   Telephone: 619-237-5200
    Facsimile: 619-615-0700
5
    AMY S. GONZALEZ (SBN 181745)
6   **SAN DIEGO COUNTY REGIONAL AIRPORT
    AUTHORITY**
7   3225 N. Harbor Drive
    San Diego, CA 92138
8   Telephone:  (619) 400-2425
    Facsimile: (619) 400-2428
9

10  Attorneys for Defendant
    SAN DIEGO COUNTY REGIONAL AIRPORT
11  AUTHORITY

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                      COUNTY OF SAN DIEGO

14  JOSE HERNANDEZ,                        CASE NO. GIC 871979

15          Plaintiff,                     **NOTICE OF MOTION AND MOTION TO
                                           STRIKE PLAINTIFF'S COMPLAINT**
16      v.

17  SAN DIEGO COUNTY REGIONAL             Date:            December 22, 2006
    AIRPORT AUTHORITY, a public entity;   Time:            1:30 p.m.
18  and DOES 1 through 12, inclusive,     Dept:            75
                                          Judge:           Hon. Richard E. Strauss
19          Defendants.                   Complaint Filed: September 1, 2006
                                          Trial Date:      Not Set
20
                                               **EXEMPT FROM FEES
21                                             GOVT. CODE § 6103**

22

23          TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24          PLEASE TAKE NOTICE that on December 22, 2006 at 1:30 p.m., or as soon thereafter as

25  counsel may be heard, in Department 75 of the San Diego County Superior Court, located at 330

26  West Broadway, San Diego, California 92101, defendant San Diego County Regional Airport

27  Authority ("Authority") will and hereby does move to strike improper and irrelevant allegations

28  from the complaint pursuant to Code of Civil Procedure section 436(a), as detailed in the table

PAUL, PLEVIN,
SULLIVAN &        NOTICE OF MOTION AND MOTION TO STRIKE          1          CASE NO. GIC 871979
CONNAUGHTON LLP   PLAINTIFF'S COMPLAINT

1  attached to this notice as Exhibit A and incorporated herein by reference, on the following

2  grounds:

3    1.  Plaintiff has failed to allege a state or federal law, rule or regulation that the Authority

4       allegedly violated, as required by Labor Code section 1102.5 (Complaint ¶¶ 6, 10, 12, 13,

5       14, 18, 28, 29, 37 (a-o), 38-41, and 55-60);

6    2.  Plaintiff has failed to allege that he reasonably believed that the Authority's actions

7       violated a state or federal law, rule or regulation, as required by Labor Code section

8       1102.5(b).  (Complaint ¶¶ 10, 11, 12, 29, 37, 38-39, 48, and 57-58);

9    3.  Plaintiff has failed to allege that the Authority made or enforced a rule, policy or

10      regulation that prevented him from disclosing violations of law, as required by Labor

11      Code section 1102.5(a) (Complaint ¶ 38);

12    4.  Plaintiff has failed to allege that he disclosed certain alleged ethical violations (Complaint

13      ¶ 37);

14    5.  The Authority is immune from liability for its actions in connection with the investigation

15      of potential Ethics Code violations under Government Code sections 821.6 and 815.2(b)

16      (Complaint ¶¶ 23-26, 28, 30, 38, 46-49, and 55-60);

17    6.  The Authority is immune from liability for its discretionary acts under Government Code

18      sections 820.2 and 815.2(b) (Complaint ¶¶ 23-26, 28, 30, 38, 46-49, and 55-60);

19    7.  Plaintiff did not have a reasonable expectation of privacy in his car repair records

20      (Complaint ¶ 25);

21    8.  Plaintiff did not have a reasonable expectation of privacy in third parties' observations of

22      his marital relationship (Complaint ¶¶ 26 and 47); and

23    9.  Plaintiff may not pursue a private right of action for violations of the Authority's Ethics

24      Code (Complaint ¶¶ 37-41).

25      This motion is based on this notice and motion, the accompanying memorandum of points

26  and authorities filed in support of the demurrer and this motion to strike, the entire file in this

27  case, and any other evidence or argument properly considered by the court in connection with this

28  motion.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

2

CASE NO. GIC 871979

6-88

1         This court follows California Rules of Court, Rule 324.  The court will therefore make its

2    tentative ruling available by telephone at (619) 531-3690 the court day before the scheduled

3    hearing at 3:00 p.m., or the tentative ruling may be reviewed on the Court's internet web site

4    (www.sdcourt.ca.gov) after 3:00 p.m. on that same day.

5

6    Dated: October 5, 2006          PAUL, PLEVIN, SULLIVAN &
                                    CONNAUGHTON LLP

7
                                  By: _Sandra L. McDonough_

8                                        FRED M. PLEVIN
                                    SANDRA L. MCDONOUGH

9                                        ALBERT R. LIMBERG
                                    Attorneys for Defendant

10                                        SAN DIEGO COUNTY REGIONAL
                                    AIRPORT AUTHORITY

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

NOTICE OF MOTION AND MOTION TO STRIKE     3                  CASE NO. GIC 871979
PLAINTIFF'S COMPLAINT

**EXHIBIT A**

**EXHIBIT A**

**TABLE OF ALLEGATIONS TO BE STRICKEN FROM THE COMPLAINT**

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| Paragraph 6, p. 2, line 2 through p. 3 line 4, which reads: ". . . as well as the San Diego County Regional Airport Authority's Code of Ethics and Conflicts of Interest Code, Article 1, Part 1.1, Section 1.17(a); Article 2, Parts 2.0 to 2.30; Article 3, Part 3.0, Section 3.01; Article 5, Par 5.1. Sections 5.10 to 5.18; San Diego County Regional Airport Authority Policies, Article 2, Part 2.0, Section 2.01 (1)(a)(b)(2) et seq." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows: Local rules and internal regulations do not support a cause of action under Labor Code section 1102.5, because they are not *state or federal* laws, rules or regulations. (Labor Code § 1102.5; see also *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384 [the court recognized that the 2003 Amendment to Labor Code section 1102.5, which added that the plaintiff could disclose a violation of a "rule" as a protected activity, made it clear that the alleged violated "rule" must be a "state or federal 'rule'"].) |
| Para. 10, p. 4, line 26- p. 25, line 2, which reads: ". . . In the process it was revealed that Enarson had entered into side deals with a handshake agreement with Host that restricted the Operations Division's ability to annex the space which was needed to comply with ADA requirements." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows: Plaintiff does not allege that the Authority violated the ADA. Instead, he only alleges that the Authority was restricted from complying with the ADA and the Authority was thus required to increase the project budget by over $2 million. Since plaintiff did not allege that the Authority was actually violating the ADA, he must not have had a reasonable belief that the Authority was violating the ADA, as required by Labor Code section 1102.5. |
| Paragraph 11, which reads: "The Plaintiff disclosed to members of the Authority Enarson's "side deal" made with out | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

4

CASE NO. GIC 871979

6-91

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| negotiation that restricted the Authority's ability to annex the space needed to comply with ADA requirements for the airport restroom. Plaintiff also disclosed that Enarson's refusal had increased the project budget by over $2 million. On both counts, Plaintiff believed that he was disclosing legal violations: violations of the ADA requirements and also disclosing the unauthorized use of public assets because Enarson had a "handshake" deal. The project suffered over three (3) years of delays due to Enarson's conflict with the airport's food and beverage concession." | and irrelevant allegations as follows:<br><br>Plaintiff does not allege that the Authority violated the ADA. Instead, he only alleges that the Authority was restricted from complying with the ADA and the Authority was thus required to increase the project budget by over $2 million. Since plaintiff did not allege that the Authority was actually violating the ADA, he must not have had a reasonable belief that the Authority was violating the ADA, as required by Labor Code section 1102.5. |
| Paragraph 12, which reads: "The General Dynamics property is approximately 85 acres and sits along Pacific Coast Highway on the north side of the airport. The property contains a 1,600 parking stall long term parking lot (SAN Park Pacific Highway), and provides for Convention Center truck staging, rental car storage, and Cruise Ship truck staging. The terms of the original three year lease called for rent of $4.6 million year one, $6.6 million year two, and $8.6 million year three. Enarson was the lead negotiator on the lease. When Plaintiff compared the revenue potential of the approximately $3 million net from the parking operation and $1 million from the vehicle storage, the lease payments were too expensive and out of line. Plaintiff disclosed that the increased lease payments pulled funds away from the operating budget and he believed it was an unauthorized use of the Authority funds. Plaintiff also believed the failure to negotiate the lease properly was a violation of law and contrary to public interest. Despite the Plaintiff's objections to the actual revenue streams, Enarson decided the matter would go up to the Vice President level, where it died and no corrective action was taken. The lease was signed contrary to the objections of true | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff could not have had a reasonable belief that the General Dynamics lease violated a federal or state law because the terms of the lease were authorized by statute. (See Public Utilities Code § 170056(f); Labor Code § 1102.5 [reasonable belief requirement]) |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| forms of revenue streams." | |
| Paragraph 13, which reads: "The Authority's Teledyne Ryan property lease calls for $3 million in annual payments for the 46.77 acre property, located immediately east of the airport along Harbor Drive. At the time the lease was negotiated, with Enarson as the lead negotiator, contamination of the property allegedly required approximately $10 million. The failure to properly inspect and analyze the actual contamination resulted in a finding that the contamination remediation range would be approximately $30 million and would limit the use of the property to the existing 350 space long term parking lot (SAN Park Harbor Drive). Current revenues derived from the parking lot are approximately $1.2 million a year with about $700,000.00 in expenses, netting the Authority only $500,000.00. The original plan for the property was to phase in the parking development from what is now Phase!, 350 parking stalls, to Phase 2, approximately 1,300 stalls. If the project had stayed as planned the property would now be developed and be positioned to take advantage of the increasing occupancy levels in the market. When the development process began the discovery of the deep environmental concerns with the property, which were not previously disclosed before Enarson completed the negotiations for the lease, significantly curtailed the purpose of the lease because of the unusable areas. Plaintiff disclosed the findings that there was no way to open Phase 2 of the parking development and also disclosed the enormous amount of money the Authority was paying for the lease. Plaintiff asked the Authority members, including Enarson, "Why are we paying all this money? Why are we paying the rent?" Enarson replied, "We're obligated to pay the rent." Plaintiff stated that "we can use a little bit, 351 parking stalls, yet | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Teledyne Ryan lease, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |

| | ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|---|
| | we're paying $3 million and we can't use any of the rest. We're on the hook for the $30 million. We should only pay a pro rata amount." Enarson's response was that it would get pushed up to the Vice President group. When the Teledyne Ryan transition team, of which the Plaintiff was a member, re-briefed the Vice Presidents, at a second meeting, the members and officers were in awe, and asked, "Are you sure it's $30 million? Are you kidding me?" Enarson was agitated and Plaintiff received reports that Enarson was angry." | |
| | Paragraph 14, p. 8, line 16 through p. 9, line 2, which reads: "Plaintiff then discovered that LPI was double billing the Authority for Workers Compensation Insurance. He had noted that the premiums were running twice the amount of the previous year and were being billed to a different expense category. As a result Plaintiff posted a credit of approximately $150,000.00 against LPI's monthly request for reimbursement. Plaintiff had communicated throughout the process and disclosed LPI's wrongdoing and financial misuse issues with his direct supervisor, the Vice President of Airport Operations. The Vice President asked Plaintiff to work out the issues with Grey because he was a Minority Owned Business and the Authority needed the relationship in order to comply with FAA regulations governing Minority participation. Plaintiff had disclosed computational or other errors in LPI's bid submission; the unsatisfactory performance of the contract; the failure of LPI to submit insurance documents acceptable to the Authority; Grey's unjustified refusal to warrant his performance and other offenses and actions that indicated a lack of business integrity by LPI. Plaintiff believed that disclosures he made pursuant to the contract contained violations of the Ethics Code and also of rules and | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the LPi contract, as required by Labor Code section 1102.5.  (Labor Code § 1102.5)<br><br>2.  A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law.  (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

7

CASE NO. GIC 871979

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| regulations of law." | |
| Paragraph 18, which reads: "By October 2005 the Plaintiff had met with the Vice President of Operations to inform the Vice President of Operations of the status of LPI's non-compliance and areas of deficiencies and to obtain agreement that Maurice Gray would step down as President of LPI should he not be able to comply with the standards and improve the deficiencies and clarify his job duties for his position." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the LPi contract, as required by Labor Code section 1102.5.  (Labor Code § 1102.5)<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law.  (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |
| Paragraph 23, p. 11, lines 16-23, which reads: ". . . He was also told specifically that he could not discuss anything related to this interrogation or "the investigation" with anyone else. Under California Labor Code section 1102.5 an employer may not make or enforce any rule or policy preventing an employee from disclosing information to a government agency, including the Authority, where the employer has reasonable cause to believe that the information discloses a violation of state statute, or a violation or noncompliance with a state rule or regulation. The Plaintiff asked the Vice Presidents to clarify the specific charges but they refused to do so." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2. The Authority is immune from liability for its discretionary acts.  (See Gov. Code §§ 820.2 and 815.2(b).) |
| Paragraph 24, which reads as follows: "The attorney from LUCE FORWARD and his hired investigator then began to contact | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| various people of the Plaintiff's acquaintance. These witnesses immediately contacted the Plaintiff to complain about the hostile, rude and demanding treatment of the attorney from LUCE FORWARD and the Plaintiff informed each witness that he was unable to discuss anything regarding the matter, but all of the contacting witnesses reported similar unprofessional treatment and reported their own conversations and attempts at conversation with the lawyer from LUCE FORWARD. The lawyer seemed to be fishing to find anything he could about the Plaintiff that might put him in a negative light, and by all accounts he seemed to be failing. The lawyer from LUCE FORWARD was reduced to "suggesting" various scenarios to the witnesses, some of whom laughed at the lawyer and concluded he was engaged in a "witch hunt" to do harm to the Plaintiff. The Plaintiff, unable to respond and tell the contacting witnesses anything, was unable to defend himself. The Plaintiff knew what Thella Bowens (Doe No.1) was doing to him and why she was doing it but could not disclose anything about it." | and irrelevant allegations as follows:<br><br>1. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 815.2(b).) |
| Paragraph 24, which reads as follows: "As the attorney for LUCE FORWARD became more desperate to find some wrong doing from people who did not want to see the Plaintiff harmed, he utilized the Private Investigator to go after tangential subjects and try to get some "hard evidence" that the Plaintiff had done something, anything, wrong. The attorney for LUCE FORWARD sent the investigator over to the car repair place the Plaintiff used and threatened and coerced the owner to give him copies of the repair bills for the Plaintiffs car. The investigator specifically represented himself as working for the Authority and not for LUCE FORWARD. The Plaintiff had never been asked to produce these car repair | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 815.2(b).)<br><br>3. Seeking information regarding plaintiff's car repairs is not an unreasonable invasion of |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| bills and did not give his permission to the owner of the repair place to give them to the investigator or to anyone else. The investigator produced the documents in front of the attorney for LUCE FORWARD and in front of the Plaintiff. The investigator and the attorney for LUCE FORWARD refused to say where they had obtained them. In fact, it was the witness, who called the Plaintiff and told him about the incident. The car repair bills yielded no evidence of wrong doing by the Plaintiff. | privacy. |
| Paragraph 26, which reads as follows: "Next the attorney for LUCE FORWARD questioned witnesses about what they knew about the Plaintiff's marriage, including whether they had observed "communication" problems in the marriage. The witnesses quickly defended the Plaintiffs marriage and quickly informed the Plaintiff of the attorney's specific invasion into the Plaintiffs marriage and informed him that it was a great marriage and asked the Plaintiff why this attorney was asking questions that had nothing to do with the Plaintiffs job and were also none of his business." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 815.2(b).)<br><br>3. Questioning third party witnesses regarding their observations of plaintiff and his wife is not an unreasonable invasion into plaintiff's privacy. |
| Paragraph 28, which reads as follows: "Plaintiff then pointed out his points of concern to the former Vice President: (1) the ambiguousness of the "Conflict of Interest" Code, and (2) more importantly, the application of the policy among Authority employees. The Plaintiff mentioned the specific abuse of the policy from the Authority Vice Presidents, Board Members, and the President/CEO Thella Bowens (Doe No.1) This included airline ticket changes, upgrades, access to First Class lounges and other routinely-demanded expensive privileges not | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 815.2(b).) |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

10

CASE NO. GIC 871979

6-97

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| allowed to other Authority employees. The Plaintiff pointed out to the Vice President that the application of the "Conflict of Interest" Code policy was selective and unfairly enforced." | 3. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Authority, as required by Labor Code section 1102.5. (Labor Code § 1102.5) |
| Paragraph 29, which reads as follows: "The Plaintiff had discussed such items as the above-stated violations of the Authority's policy with the former Vice President when he had been the Vice President and the Plaintiffs supervisor and he had always seen no reason for concern, and no action had been taken. This same former Vice President had himself directed the Plaintiff to take care of tickets for Authority employees and Board Members. The Plaintiff asked why it was okay for Thella Bowens (Doe No.1) to ask and receive favors and not okay for employees to receive the same benefits. One example was Bowen's request to fly in BBQ meat from Texas. The former Vice President defended this practice as approved as an "Accepted Industry Practice", which connotes that among the Regional Airport Authority for the Counties paying to fly in meat from another state is a billable expense." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Authority, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].)<br><br>3. Plaintiff has not alleged that he reasonably believed that these actions were a violation of law, as required by Labor Code section 1102.5. |
| Paragraph 30, which reads: "The former Vice President then told the Plaintiff that the Authority could no longer trust his judgment and they are "forced to discontinue working relations." His "choice" was to sign a resignation or they would terminate him. When the former Vice President, now Chief of Staff to Thella Bowens (Doe No.1), asked the Plaintiff for final comments he told him his opinion as to the unfairness of the 'investigation' and the lack of professionalism on the part of the 'hired help' (the lawyer from | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

11

CASE NO. GIC 871979

6-98

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| LUCE FORWARD and the 'investigator' he hired). The Plaintiff stated that the outcome of the investigation had already been pre-determined and that the 'investigators' were not impartial and did not let the 'truth come out.' The Plaintiff asked the following questions, all of which went unanswered: How did this 'investigation' come about? Why were the allegations made against him never explained? Why was the reasoning behind being placed on administrative leave never disclosed? Am I the only person being 'investigated' or are there others? What authority was given to the 'investigators' to allow them to invade my privacy and procure privileged information? The former Vice President's last comment to the Plaintiff was: 'Holy shit, I knew something like this would happen as part of the reorganization.'" | 820.2 and 815.2(b).) |
| Paragraph 37(a), which reads: "The Vice President of Operations paid $1200.00 for a ticket on an airline to get Blue Bell ice cream for Thella Bowen's BBQ, received reimbursement for the travel expense under the guise that he was attending a cultural awareness development meeting with another airline. The ice cream was available in Southern California. When word got around the Authority about the cost of going to Texas for ice cream, the Vice President directed the Plaintiff to "shut that little shit up" referring to the budget analyst who continued to comment on it. The Plaintiff refused the directive. This travel expense was not reasonably related to a governmental purpose." [hereinafter "Blue Bell Transaction"] | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Blue Bell transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's Ethics Code is not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2. Plaintiff has not set forth any violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed this Blue Bell Transaction, or that he reasonably believed this Blue Bell Transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | section 1102.5(b). |
| | 4.  Plaintiff also has not sufficiently alleged that he refused to perform an activity that would result in a violation of state or federal law, rule, or regulation, as required by Labor Code section 1102.5(c). |
| | 5.  A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law.  (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |
| | 6.  Plaintiff may not maintain a private right of action under the Ethics Code: |
| Paragraph 37(b), which reads:  "Each time an Authority employee requested a change to be made to an airline ticket a benefit was accepted when the recipient took "any action exercising control over the benefit." Thella Bowen would purchase her own tickets and then request date changes and upgrades, along with Premier Lounge Access (only permitted for airline premier club members). This practice was so prevalent by Bowens and her staff that on the day that the investigation of the Plaintiff began, Bowens had secured access to an airline Premier lounge prior to her trip to Asia. Any change to any ticket itinerary is approximately fifty to one hundred dollars, a service charge, plus the cost in set price for an upgrade on a ticket, ranging from one hundred fifty to two hundred dollars each way. Thella Bowens routinely instructed her Assistant to contact either the Plaintiff or the Vice President that the Plaintiff reported to, to make the changes described above. The Plaintiff would make the | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:

1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by these transactions, as required by Labor Code section 1102.5.  (Labor Code § 1102.5) The Authority's Ethics Code is not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.

2.  Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed these Transactions were a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).

3.  Plaintiff may not maintain a private right of |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

13

CASE NO. GIC 871979

6-100

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| changes for Bowen by going directly to the airline Station Manager and requesting the change for Thella Bowens. The Plaintiff performed this benefit accommodation more than thirty times for Bowen and her staff. All of these requested benefits were in violation of the Ethics policy." | action under the Ethics Code. |
| Paragraph 37(c), which reads: "Each year Thella Bowens requested an employee BBQ named "Thella's BBQ." The event drew from fifty to over three hundred attendees. The centerpiece of the event called for pork, beef ribs and brisket to be flown out from her favorite restaurant in the Dallas Fort Worth area, Angelo's. Employees from the Director level and above were required to pay money to help subsidize the expense of the meat. Currently Thella's BBQ has been renamed the "Annual Employee Appreciation Employees BBQ" and now costs approximately ten to fifteen thousand dollars, not including the cost of the labor for the Authority employees who are designated to support the event. The Plaintiff was then instructed to contact an airline to make arrangements at her behest for free airline delivery of the meat. The net weight of the total delivery was over two hundred pounds at an approximate cost of $2500.00. The free airline flight of the meat violated the Ethics policy. The cost of the BBQ comes from the revenue collected by the Authority from the airlines and its users." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the BBQ, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's Codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2. The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).<br><br>5. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 37(d), which reads: "Thella Bowens requested through a Vice President that he obtain special airline flight privileges for her sister who lives in Texas. Bowens asked for the ability to get either stand by or | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows: |

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S COMPLAINT

14

CASE NO. GIC 871979

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| reduced rate tickets for her sister for business and personal travel. The request was made to the airline Station Manager. The airline Station Manager then responded to the conditions under which they could do it. This request by Thella Bowens (Doe No.1) violates the Ethics Code." | 1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's "rules and regulations" are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.

2. The facts as alleged do not demonstrate a violation of the Ethics Code.

3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).

4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).

5. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 37(e), which reads: "The request from the Chairman of the Board of the Authority to secure First Class upgrade airline tickets on the day of his planned departure for his wife and himself required the intervention of the airline Station Manager. This tactic allowed the Chairman of the Board of the Authority to save approximately two hundred fifty dollars for the upgrade expenses. This action violates the Ethics Code." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:

1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's Codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.

2. The facts as alleged do not demonstrate a violation of the Ethics Code.

3. Plaintiff has not alleged that he disclosed |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
|  | these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).<br><br>5. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 37(f), which reads: "The Chairman of the Board of the Authority on several occasions requested to enter into a temporary lease to use a portion of the parking lot at Harbor Island for no expense for an activity he is involved with annually. The lease of Authority property for non-aviation use is strictly prohibited and a violation of the Ethics Code as well as other laws and regulations." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's Codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2. The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).<br><br>5. Plaintiff may not maintain a private right of action under the Ethics Code. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

16

CASE NO. GIC 871979

6-103

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| Paragraph 37(g), which reads: An Authority Board member annually inserts his official authority to influence negotiations between a community event and the rental of the General Dynamics property at a rate lower than the fair market value. As a condition of this use, all rental cars must be removed from the property and a large amount of vehicles relocated from the property. This violates the Ethics Code as well as other laws and regulations. | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows: <br><br> 1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5.  (Labor Code § 1102.5)  The Authority's Codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5. <br><br> 2.  The facts as alleged do not demonstrate a violation of the Ethics Code. <br><br> 3.  Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b). <br><br> 4.  Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). <br><br> 5.  Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 37(h), which reads: "An Authority Board member requested assistance in rearranging his itinerary so that he could attend the Little League World Championships in Williamsport, Pennsylvania. The Plaintiff had to work with three different airlines to coordinate the First Class upgrade the Board member requested, as well as the time changes to allow the Authority Board member his desired schedule. This violates the Ethics Code." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows: <br><br> 1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5.  (Labor Code § 1102.5)  The Authority's Codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5. |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | 2. The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).<br><br>5. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 37(I), which reads: "The Authority's Vice President of Budget and Finance repeatedly requested from the Plaintiff assistance in changing flight schedules. Over a one year period the Plaintiff assisted with the change of approximately fifteen to twenty schedules, all to accommodate personal and non Authority business travel to Las Vegas and Texas. This violates the Ethics Code." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's Codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2. The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
|  | Code section 1102.5(c).<br><br>5.  Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 37(j), which reads:  "The General Counsel of the Authority used his official position to obtain fifty-yard-line premier seating at the Poinsettia Bowl football game by getting the Plaintiff to use his official position as Director, Landside Operations to make contact with the Holiday Bowl Committee and request premium seating for the event. This involved securing six tickets for $300.00, which the Plaintiff paid for so that the General Counsel had to reimburse the Plaintiff. When the Holiday Bowl Committee member asked the Plaintiff if the tickets were complimentary for no charge the Plaintiff refused the gift and paid for them. The General Counsel knew he was in violation of the Ethics Code when he made the request for the favors from the Plaintiff.  After the Plaintiff filed his Claim with the Airport Authority, the General Counsel wrote to the Plaintiff that "the facts about me are false, misleading, defamatory, slanderous, libelous" because the number of tickets he requested was six, not eight, and the price he paid for the tickets was $300.00 not $400.00. He then threatened to pursue legal action against the Plaintiff for "filing a false defamatory accusation against [him]" because "Mr. Hernandez had volunteered to pick up the tickets since he already had plans to visit the ticket the ticket [sic] location", a statement which is untrue. The General Counsel's threat is an additional and separate violation of the Ethics Code." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by these transactions, as required by Labor Code section 1102.5.  (Labor Code § 1102.5)  The Authority's Codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2.  The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3.  Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed these transactions were a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4.  Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).<br><br>5.  Plaintiff may not maintain a private right of action under the Ethics Code.<br><br>6.  A plaintiff must be an employee at the time of the alleged disclosure and retaliation act. (See *Edwards v. Arthur Andersen LLP* (2006) 142 Cal.App.4th 603.) |
| Paragraph 37(k), which reads:  "The Plaintiff was present with the Vice President of Operations when the Chairman of the Board of | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| the Authority requested a contractor to be hired to re-survey his Authority office space for "listening devices." The Chairman's office space had previously on two separate occasions been surveyed for "bugging devices" or other "listening apparatus." The Chairman was worried that his communications could be intercepted by the FBI or similar such agencies. This contract request is a gross waste of the Authority funds." | and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed this alleged violation, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).<br><br>5. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 37(l), which reads: "The Vice President of Budget and Finance, representing himself and Thella Bowens as Board members of the Jackie Robinson YMCA, requested that the Plaintiff secure a free round trip airline ticket for the owner of national basketball team. The request was made so that the owner could be the featured speaker at a banquet." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed this alleged ethical violation, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

20

CASE NO. GIC 871979

6-107

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).<br><br>5. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 37(m), which reads: "The Vice President of Operations with the full knowledge of Thella Bowens, requested that the Plaintiff secure free round tip airline tickets to be donated as the featured prizes of the annual United Way campaign. The Plaintiff did this twice." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed this alleged ethical violation, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).<br><br>5. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 37(n), which reads as follows: "Thella Bowens requested from the Plaintiff that a marked reserved parking stall be designated in the employee parking lot at the Commuter Terminal for her personal use. Bowens then never used the stall, choosing to | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| park elsewhere and she reassigned the stall to the Vice President of Budget and Finance. That particular reserved parking staff is clearly marked for use only by the President/CEO of the Airport Authority. The designation of the parking stall to the Vice President of Budget and Finance clearly connotes preferential treatment and is a violation of Airport Authority rules and regulations." | law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's "rules and regulations" are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2. The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed these transactions were a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 37(o), which reads: "The Vice President of Operations instructed the Plaintiff to use his position as Director of Landside Operations to secure a limousine from one of the Airport's service providers to be used as part of the procession for a colleague's wife's funeral." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's Ethics Code is not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2. The facts as alleged do not demonstrate a violation of the Ethics Code.<br><br>3. Plaintiff has not alleged that he disclosed this alleged ethical violation, or that he reasonably believed this transaction was a violation of a state or federal law, rule or |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c).<br><br>5. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 38, p. 21, line 25 through p. 22, line 21, which reads: "The Plaintiff attempted, time and time again, to bring to the attention of the attorney from LUCE FORWARD the above-stated Ethics violations and every single time the attorney from LUCE FORWARD interrupted and spoke over the Plaintiff to prevent the Plaintiff from reporting violations, both legal and ethical, that he was aware of and had not been 'investigated.' The attorney was not interested in knowing about the above-stated violations or any incident that did not show wrongdoing by the Plaintiff The Plaintiff did his best to report, disclose, divulge and bring to the attention of his employer's 'investigator' (the attorney from LUCE FORWARD) facts and information relative to both suspected and actual violations of state law directly related to his job. The Plaintiff observed improper governmental activity by employees of the Authority undertaken in the performance of the employee's official duties that demonstrated economic waste, incompetency and inefficiency. The 'investigator' Thella Bowens hired (the lawyer from LUCE FORWARD) attempted to use and used, both directly and indirectly, intimidating, threatening, coercing, and commanding tactics to influence the information he was told by the Plaintiff and by the witnesses during their interviews. Thella Bowens could not have reasonably believed that taking personnel action, including hiring and directing an | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Authority's acts, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's Ethics Code is not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2. Plaintiff has not alleged that the Authority made, adopted or enforced a rule, regulation, or policy, as required by Labor Code section 1102.5(a), that prevented him from disclosing alleged improprieties.<br><br>3. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>4. Plaintiff may not maintain a private right of action under the Ethics Code. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

23

CASE NO. GIC 871979

6-110

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| 'investigation' into the Plaintiff's alleged but not articulated violations of the Authority's Ethics policy was and is justified based on her own and her direct report employees' own well-know violations of the same policies and Codes. Bowens was well aware that the evidence of her own violations were known to the Plaintiff and when he reported those violations to her hired 'investigator' he was cut off and told not to discuss them. Other witnesses also disclosed to Bowen's 'investigator' knowledge of Bowne's wrongdoing as well as the Ethics violations by her Vice Presidents that Bowens condoned and ratified." | |
| Paragraph 39, p. 22, line 24 through p. 23, line 4, which reads: ". . . The first disclosure arose from the Plaintiffs opposition to a "side deal" that Bryan Enarson made with a concessionaire at the airport, Host, that restricted the Authority's ability to annex the space needed to comply with ADA requirement for the women's restroom at the airport.. The result of Enarson's actions increased the project budget by over $2 million. The Plaintiff believed this resulted in legal noncompliance with the ADA requirements which were well settled at that time and took precedence over the handshake agreement Enarson made without negotiation with Host." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows: <br><br> 1. Plaintiff does not allege that the Authority violated the ADA. Instead, he only alleges that the Authority was restricted from complying with the ADA and the Authority was thus required to increase the project budget by over $2 million. Since plaintiff did not allege that the Authority was actually violating the ADA, he must not have had a reasonable belief that the Authority was violating the ADA, as required by Labor Code section 1102.5. <br><br> 2. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 39, p. 23, lines 5-9, which reads: ". . . The second disclosure also arose from events involving Enarson, who was the lead negotiator on behalf of the Airport for the property known as the General Dynamics property. Enarson proceeded with the negotiations without ascertaining the extent of | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows: <br><br> 1. Plaintiff could not have had a reasonable belief that the General Dynamics lease |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| the "public hazards around the airport" and resulted in a lease agreement that loses millions of dollars per year for the Authority." | violated a federal or state law because the terms of the lease were authorized by statute. (See Public Utilities Code § 170056(f); Labor Code § 1102.5 [reasonable belief requirement])<br><br>2. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 39, p. 23, lines 10-15, which reads: "The third disclosure involved the misuse and waste of the usable land around the property known as the Teledyne Ryan property. Enarson proceeded with the negotiations without ascertaining the extent of the "public hazards around the airport" and that resulted in a lease agreement that loses millions of dollars per year for the Authority. Enarson then blocked open discussion of the problem and no resolution has been attempted.: | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Teledyne Ryan lease, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].)<br><br>3. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 39, p. 23, lines 15-18, which reads: "The fourth and final disclosure encompassed the issue of the contract bid by the Lindbergh Parking, Inc. (LPI) and its failure to meet its contract expectations and the offenses and actions by the LPI that indicate a lack of business integrity." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the LPi contract, as required by Labor Code section 1102.5. (Labor Code § |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | 1102.5) |
| | 2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |
| | 3. Plaintiff may not maintain a private right of action under the Ethics Code. |
| Paragraph 39, p. 23, line 18 through p. 24, line 7, which reads: "The Plaintiff believes it was the personal relationship of the President/CEO of the Authority, Thella Bowens (Doe No.1) who has shown favoritism, partiality and a refusal to hold those of the same minority race as herself to the same accountability as the Ethics Code and other laws and regulations require. Besides Enarson, who is white, and a premier kiss ass, Bowens has never applied the same policy standards to herself or to her Vice Presidents who are black. Maurice Gray is black and is the beneficiary of not having to comply with the standards and requirements that other Authority contractors have been held to. By eliminating the Plaintiff from his job she has assured that no one else surrounding her at the high management levels will speak up or oppose whatever it is she desires to do, both personally and in her job position. Thella Bowens (Doe No.1) made it clear through the attorney she hired from LUCE FORWARD and through the investigator the attorney hired that she alone would make the determinations as to conclusions and findings of the two. Bowens (Doe No.1) met on a regular, if not daily basis, with the two she hired and reviewed their "findings" and personally | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations that do not support any cause of action alleged by plaintiff.

1. Plaintiff may not maintain a private right of action under the Ethics Code.

2. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)

3. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 815.2(b).) |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP   NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S COMPLAINT   26   CASE NO. GIC 871979

6-113

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| directed them in their 'work', including their 'work' that invaded the Plaintiffs privacy and had no relation whatsoever to the Plaintiffs job or his job performance." | |
| Paragraph 40, which reads: "The Plaintiff believed in good faith that LPI was in violation of California Public Contracting laws found in the California Public Contract Code Section 100 et seq. The discovery that LPI had presented false expenses in its bid submission, combined with the unsatisfactory performance of the contract, its failure to submit insurance documents and its lack of business integrity when given time and opportunities to correct its wrongdoing seriously affected the reliability and credibility of the performance of LPI. The final deadline for Maurice Gray to submit a job description that detailed the duties he performed as President of LPI to justify his salary of $60,000.00 was quickly approaching when Thella Bowens (Doe No.1) made the decision to begin an 'investigation' of the Plaintiff. Bowens wanted Maurice Gray to continue in that position, partly because he was black, and she favored protection of the black employees, but also because she did not want anyone, including the Plaintiff, to speak up and oppose whatever decisions she made, whether they involved misuse of government funds as the Plaintiff believed when he opposed and objected to the leases that cost the Authority millions of dollars for nothing in exchange. Over and over again the Plaintiff voiced his opinions that waste of money occurred when Enarson, with Bowen's approval, failed to consider the budget and its inability to sustain payments when no revenue could be generated from projects improperly negotiated and Bowen's refusal to address those problems. LPI was the last straw for Bowens. The Plaintiff believed that Bowens and her Vice Presidents were using favoritism as a form of | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a specific state or federal law, rule, or regulation that he believes was violated by the LPi contract, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].)<br><br>3. Plaintiff may not maintain a private right of action under the Ethics Code.<br><br>4. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>5. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 815.2(b).) |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

27

CASE NO. GIC 871979

6-114

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| corruption in the LPI contract. There is no other "justification" for the timing, the identity of the retaliators, and the secretive and calculated course of conduct that Bowens called for choosing to 'investigate' the Plaintiff at that time. Bowens cannot show independent reasons for her hiring of an 'investigator' that demonstrates clear and convincing evidence that she would have conducted an 'investigation' if the Plaintiff had not engaged in protected disclosures or refused to participate in suspected and actual violations of state law governing public contracts." | |
| Paragraph 41, which reads: "The Ethics policies and Code are not uniformly followed, enforced or used by Authority management. The Plaintiff was singled out because he opposed and objected on numerous occasions to the actions of the Authority's President/ CEO Thella Bowens and her Vice Presidents when he believed he had reasonable cause to believe that the opposition was necessary to disclose a violation of state statute, or a violation or noncompliance with a state statute, rule or regulation. The Authority, as the Plaintiff's employer, retaliated against the Plaintiff for having exercised his rights under Labor Code section 1102.5(a)(h) (c)." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Authority's conduct, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. Plaintiff may not maintain a private right of action under the Ethics Code.<br><br>3. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>4. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 815.2(b).) |
| Paragraph 46, which reads: "Thella Bowens (Doe No.1) hired an attorney from LUCE FORWARD and he hired an investigator to supposedly look into "allegations" of violations of the Ethics policy and Code by the Plaintiff There is nothing in either the Ethics policy or the Ethics Code of the Authority that | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. The Authority is immune for its actions taken in connection with an investigation. |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| invites intrusion into the private life of the Plaintiff, including "investigating" anything in regard to his marriage. The Plaintiffs private life, including his marriage, has nothing to do with his job duties, his job position or any matter that is of any concern to the Authority or to Thella Bowens personally. The attorney from LUCE FORWARD hired by Thella Bowens and the investigator hired by the attorney from LUCE FORWARD are both subject to the Authority's Ethics policies and to the Ethics Code of the Authority, as both were hired by Thella Bowens on behalf of the Authority as consultants to her and the officers of the Authority with whom she shared the decision making of the 'investigation.' In addition, Thella Bowens and all of those with whom she shared the 'investigation' responsibilities were and are charged with knowledge of the Ethics policies and Ethics Code of the Authority and as so charged knowingly with the actions of intrusion committed by them individually and in the dual capacity of their job duties on behalf of the Authority." | (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2. The Authority is immune from liability for its discretionary acts.  (See Gov. Code § 820.2 and 815.2(b).) |
| Paragraph 47, which reads: "The Plaintiff had a reasonable expectation of privacy in regard to his marriage. The interrogation of witnesses as to their observations, personal knowledge or opinions regarding the Plaintiff's marriage, including communication within his marriage, the manner of communication between the Plaintiff and his wife, the appearance of the marriage to outsiders, and any other matters that the attorney for LUCE FORWARD and his hired investigator made regarding the Plaintiffs marriage from witnesses who were being interviewed regarding an 'investigation' whose subject matter had not been revealed to the Plaintiff was intentionally intruded in by the hired help of the Authority. The intrusion of the Authority's 'consultants' and the stated | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1.  The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2.  The Authority is immune from liability for its discretionary acts.  (See Gov. Code §§ 820.2 and 815.2(b).)<br><br>3.  Questioning third party witnesses regarding their observations of plaintiff and his wife is not an unreasonable invasion into plaintiff's |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| discussion regarding the findings of the 'consultants' with the Authority management on a regular basis that included findings of the interrogation of witnesses on the subject of the Plaintiffs marriage was highly offensive to the Plaintiff and would be highly offensive to a reasonable person." | privacy. |
| Paragraph 48, which reads: "The investigator hired by the attorney from LUCE FORWARD also intruded into the Plaintiff's privacy by coercing the owner of the car repair shop (where the Plaintiff had his car repaired) to hand over copies of car repair records and invoices showing payment of the car repairs. The owner immediately contacted the Plaintiff to explain that the investigator told him he was hired by the Authority to look into the Plaintiffs records and threatened him with legal proceedings if he did not immediately turn over the records to him. The owner protested and opposed the demand but was coerced into providing the records by the investigator. Neither the Authority, the attorney for LUCE FORWARD or the investigator had sought permission from the Plaintiff to obtain or look at those private records. The Plaintiff was furious at the intrusion into his private affairs without his knowledge or permission. Given the instruction that he could not tell the owner what the circumstances of the invasion into his privacy meant, the Plaintiff was further denied the opportunity to defend himself from the invasion or explain the reason why the investigator had committed this act of intrusion. Once again, the Plaintiff was left in a position of not knowing himself the reason for the 'investigation' and the embarrassment that this investigator could act to thither leave the Plaintiff in another position of looking like he had done something wrong when he had | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 815.2(b).)<br><br>3. Plaintiff did not have a reasonable expectation of privacy regarding his car repair records. |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| not." | |
| Paragraph 49, which reads: "The Plaintiff had a reasonable expectation of privacy in regard to his private vehicle and its repair documents and invoices. The intentional intrusion and false statements used by the investigator hired by the attorney for LUCE FORWARD to obtain the Plaintiffs private records were highly offensive to him and would be highly offensive to a reasonable person. The circumstances surrounding the Authority's intrusion were part of a calculated scheme to find some violation that could "justify" the termination of the Plaintiff because he had made disclosures regarding the Authority's operations and budget that he believed were illegal and would prevent the Plaintiff and others from reporting similar violations by the Authority and allow the Authority to continue to operate in whatever manner it desired to do so regardless of the consequences to the budget of the Authority." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>2. The Authority is immune from liability for its discretionary acts. (See Gov. Code § 820.2.)<br><br>3. Plaintiff did not have a reasonable expectation of privacy regarding his car repair records. |
| Paragraph 55, which reads: "The Plaintiff was discharged from employment for reasons that violate a public policy. The Plaintiff was forced to resign his position from the Authority because he had disclosed in good faith to his own Authority, a government agency, the violations of the Authority regarding its misuse of money, waste of government funds, the violations of law regarding four projects of which he had personal knowledge of the violations of law and rules and regulations that the Authority violated repeatedly." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Authority's acts, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>3. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 815.2(b).) |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| Paragraph 56, which reads: "The Plaintiff was exercising a statutory right or privilege to disclose the legal violations he in good faith believed were violations and in doing so was reporting to his own agency violations of statutes, rules and regulations that were of paramount public importance. It is well settled in California law that in addition to statutory provisions, valid administrative regulations such as Ethics Code may serve as a source of fundamental public policy because those regulations implement fundamental public policy." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Authority's acts, as required by Labor Code section 1102.5.  (Labor Code § 1102.5)<br><br>2.  The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>3.  The Authority is immune from liability for its discretionary acts.  (See Gov. Code §§ 820.2 and 815.2(b).) |
| Paragraph 57, which reads: "The Plaintiff absolutely made clear his opposition in private meetings, in public meetings, at open door and closed door meetings to the failure of the Authority to implement the annexation of the space needed to have the women's restroom comply with the ADA requirements and to complete the project at a reasonable cost and in a timely manner." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff does not allege that the Authority violated the ADA.  Instead, he only alleges that the Authority was restricted from complying with the ADA and the Authority was thus required to increase the project budget by over $2 million.  Since plaintiff did not allege that the Authority was actually violating the ADA, he must not have had a reasonable belief that the Authority was violating the ADA, as required by Labor Code section 1102.5.  (*Morgan, supra*, 88 Cal.App.4th 52, 69-70.) |
| Paragraph 58, which reads as follows:  The Plaintiff made clear to the Vice President to whom he reported that he objected and opposed during the negotiations and the due diligence process that Enarson (Vice President and confidante to Thella Bowens) was not | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff could not have had a reasonable |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S COMPLAINT

32

CASE NO. GIC 871979

6-119

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| properly understanding the lawful use and conditions of the General Dynamics property that resulted and continues to result in losses of millions of dollars for the Authority. | belief that the General Dynamics lease violated a federal or state law because the terms of the lease were authorized by statute. (See Public Utilities Code § 170056(f); Labor Code § 1102.5 [reasonable belief requirement]) |
| Paragraph 59, which reads as follows: "The Plaintiff disclosed and opposed the misuse and waste of the unusable land around the Teledyne Ryan property at Capitol Improvement meetings, at weekly Operations meetings, at Directors meetings and other times." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the lease, as required by Labor Code section 1102.5. (Labor Code § 1102.5) |
| Paragraph 60, which reads: "The Plaintiff conducted numerous disclosure meetings with the Vice President to whom he reported regarding the failure of LPI to meet the expenses and conditions that the company had used to bid on the parking operations contract. The Plaintiff also met repeatedly with Maurice Gray of LPI and gave him extended help and time to come into compliance on the contract and he failed and refused to do so. This correlated with the idea of conducting an 'investigation' of the Plaintiff rather than the contractor." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the LPi contract, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. The Authority is immune for its actions taken in connection with an investigation. (See Gov. Code §§ 821.6 and 815.2(b).)<br><br>3. The Authority is immune from liability for its discretionary acts. (See Gov. Code §§ 820.2 and 821.6.) |



1  FRED M. PLEVIN (SBN 126185)
   SANDRA L. MCDONOUGH (SBN 193308)
2  ALBERT R. LIMBERG (SBN 211106)
   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3  401 B Street, Tenth Floor
   San Diego, California  92101-4232
4  Telephone: 619-237-5200
   Facsimile: 619-615-0700

5
   AMY S. GONZALEZ (SBN 181745)
6  **SAN DIEGO COUNTY REGIONAL AIRPORT
   AUTHORITY**
7  3225 N. Harbor Drive
   San Diego, CA 92138
8  Telephone:  (619) 400-2425
   Facsimile: (619) 400-2428

9

10 Attorneys for Defendant
   SAN DIEGO COUNTY REGIONAL AIRPORT
11 AUTHORITY

12            SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                     COUNTY OF SAN DIEGO

14 JOSE HERNANDEZ,                    CASE NO. GIC 871979

15        Plaintiff,                  **DEFENDANT SAN DIEGO COUNTY
                                      REGIONAL AIRPORT AUTHORITY'S
16    v.                              DEMURRER TO PLAINTIFF'S
                                      COMPLAINT**
17 SAN DIEGO COUNTY REGIONAL
   AIRPORT AUTHORITY, a public entity;
18 and DOES 1 through 12, inclusive,   Date:         December 22, 2006
                                      Time:         1:30 p.m.
19        Defendants.                 Dept:         71
                                      Judge:        Hon. Richard E. Strauss
20                                    Complaint Filed:  September 1, 2006
                                      Trial Date:   Not Set
21

22                                        **EXEMPT FROM FEES
                                          GOVT. CODE § 6103**
23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &        DEFENDANT'S DEMURRER TO PLAINTIFF'S          1                    CASE NO. GIC 871979
CONNAUGHTON LLP   COMPLAINT

**7-121**

1    Pursuant to Code of Civil Procedure section 430.10(a), (e) and (f), defendant San Diego

2    County Regional Airport Authority ("the Authority") hereby demurs to each cause of action in

3    plaintiff's complaint as follows:

### FIRST CAUSE OF ACTION

#### Violation of California Labor Code Section 1102.5 et seq.

#### Retaliation for Protected Disclosure

7    1.    Plaintiff's first cause of action fails to state sufficient facts to constitute a cause of

8         action because the Authority is immune from suit under Government Code

9         sections 821.6 and 815.2(b).  (Code Civ. Proc. § 430.10(a) and (e).)

10   2.    Plaintiff's first cause of action fails to state sufficient facts to constitute a cause of

11        action because plaintiff has not pled that he reasonably believed that the

12        Authority's actions violated a state or federal law, rule or regulation.  (Code Civ.

13        Proc. § 430.10(a) and (f).)

14   3.    Plaintiff's first cause of action is uncertain.  (Code Civ. Proc. § 430.10(f).)

### SECOND CAUSE OF ACTION

#### Violation of Ethics Code

17   4.    Plaintiff's second cause of action is barred under Government Code section 815(a)

18        because the Authority, as a public entity, cannot be liable for common law claims.

19        (Code Civ. Proc. § 430.10(a) and (e).)

20   5.    Plaintiff's second cause of action is barred as a matter of law because there is no

21        private action for a violation of the Authority's Ethics Code.  (Code Civ. Proc. §

22        430.10(a) and (e).)

23   6.    Plaintiff's second cause of action fails to state sufficient facts to constitute a cause

24        of action because the Authority is immune from suit under Government Code

25        sections 821.6 and 815.2(b).  (Code Civ. Proc. § 430.10(a) and (e).)

26   7.    Plaintiff's second cause of action fails to state sufficient facts to constitute a cause

27        of action because the Authority is immune from suit under Government Code

28        sections 820.2 and 815.2(b).  (Code Civ. Proc. § 430.10(a) and (e).)

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

DEFENDANT'S DEMURRER TO PLAINTIFF'S
COMPLAINT

2

CASE NO. GIC 871979

8.   Plaintiff's second cause of action fails to state sufficient facts to constitute a cause of action because plaintiff has not pled that he reasonably believed that the Authority's actions violated a state or federal law, rule or regulation.  (Code Civ. Proc. § 430.10(a) and (f).)

9.   Plaintiff's second cause of action is uncertain.  (Code Civ. Proc. § 430.10(f).)

### THIRD CAUSE OF ACTION

#### Violation of the Right to Privacy

10.  Plaintiff's third cause of action is barred under Government Code section 815(a) because the Authority, as a public entity, cannot be liable for common law claims. (Code Civ. Proc. § 430.10(a) and (e).)

11.  Plaintiff's third cause of action fails to state sufficient facts to constitute a cause of action because the Authority is immune from suit under Government Code sections 821.6 and 815.2(b).  (Code Civ. Proc. § 430.10(a) and (e).)

12.  Plaintiff's third cause of action fails to state sufficient facts to constitute a cause of action because the Authority is immune from suit under Government Code sections 820.2 and 815.2(b).  (Code Civ. Proc. § 430.10(a) and (e).)

13.  Plaintiff's third cause of action fails to state sufficient facts to constitute a cause of action because plaintiff has not alleged a sufficient invasion of privacy.  (Code Civ. Proc. § 430.10(a) and (f).)

14.  Plaintiff's third cause of action is uncertain.  (Code Civ. Proc. § 430.10(f).)

### FOURTH CAUSE OF ACTION

#### Wrongful Discharge in Violation of Public Policy

15.  Plaintiff's fourth cause of action is barred under Government Code section 815(a) because the Authority, as a public entity, cannot be liable for common law claims. (Code Civ. Proc. § 430.10(a) and (e).)

16.  Plaintiff's fourth cause of action fails to state sufficient facts to constitute a cause of action because the Authority is immune from suit under Government Code sections 821.6 and 815.2(b).  (Code Civ. Proc. § 430.10(a) and (e).)

17. Plaintiff's fourth cause of action fails to state sufficient facts to constitute a cause of action because the Authority is immune from suit under Government Code sections 820.2 and 815.2(b). (Code Civ. Proc. § 430.10(a) and (e).)

18. Plaintiff's fourth cause of action fails to state sufficient facts to constitute a cause of action because plaintiff has not pled that he reasonably believed that the Authority's actions violated a state or federal law, rule or regulation. (Code Civ. Proc. § 430.10(a) and (f).)

19. Plaintiff's fourth cause of action is uncertain. (Code Civ. Proc. § 430.10(f).)

Dated: October 5, 2006

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

By: _Sandra L. McDonough_

FRED M. PLEVIN
SANDRA L. MCDONOUGH
ALBERT R. LIMBERG
Attorneys for Defendant
SAN DIEGO COUNTY REGIONAL
AIRPORT AUTHORITY

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

DEFENDANT'S DEMURRER TO PLAINTIFF'S
COMPLAINT

4

CASE NO. GIC 871979

**EXHIBIT 8**

1   FRED M. PLEVIN (SBN 126185)
    SANDRA L. MCDONOUGH (SBN 193308)
2   ALBERT R. LIMBERG (SBN 211110)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
3   401 B Street, Tenth Floor
    San Diego, California 92101-4232
4   Telephone: 619-237-5200
    Facsimile: 619-615-0700
5
    AMY S. GONZALEZ (SBN 181745)
6   **SAN DIEGO COUNTY REGIONAL AIRPORT**
    **AUTHORITY**
7   3225 N. Harbor Drive
    San Diego, CA 92138
8   Telephone: (619) 400-2425
    Facsimile: (619) 400-2428
9
10  Attorneys for Defendant
    SAN DIEGO COUNTY REGIONAL AIRPORT
11  AUTHORITY

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                        COUNTY OF SAN DIEGO

14  JOSE HERNANDEZ,                      CASE NO. GIC 871979

15           Plaintiff,                  **MEMORANDUM OF POINTS AND**
                                         **AUTHORITIES IN SUPPORT OF**
16      v.                               **DEFENDANT SAN DIEGO COUNTY**
                                         **REGIONAL AIRPORT AUTHORITY'S**
17  SAN DIEGO COUNTY REGIONAL            **DEMURRER AND/OR MOTION TO**
    AIRPORT AUTHORITY, a public entity;  **STRIKE**
18  and DOES 1 through 12, inclusive,

19           Defendants.                 Date:            December 22, 2006
                                         Time:            1:30 p.m.
20                                       Dept:            71
                                         Judge:           Hon. Richard E. Strauss
21                                       Complaint Filed: September 1, 2006
                                         Trial Date:      Not Set
22
23                                       **EXEMPT FROM FEES**
                                         **GOVT. CODE § 6103**
24
25
26
27
28

PAUL, PLEVIN,
SULLIVAN &     MEMO OF POINTS AND AUTHORITIES IN
CONNAUGHTON LLP  SUPPORT OF DEMURRER/MOTION TO STRIKE          CASE NO. GIC 871979

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION AND SUMMARY OF ALLEGATIONS ............................................. 1

II.   DEMURRER AND MOTION TO STRIKE STANDARDS ............................................ 4

    A.    General Standard for Demurrer. ............................................................ 4

    B.    Plaintiff Must Plead with Specificity Because the Authority is a
          Public Entity. ...................................................................................... 4

    C.    In the Alternative, this Court May Strike any Improper or Irrelevant
          Material ............................................................................................... 4

III.  EACH OF PLAINTIFF'S CAUSES OF ACTION IS BARRED BY
    IMPORTANT GOVERNMENTAL IMMUNITIES .................................................... 5

    A.    Government Code Sections 815.2(b) and 820.2 Bar Plaintiff's
          Second through Fourth Causes of Action. ............................................ 5

    B.    Government Code section 821.6 and 815.2(b) Immunize the
          Authority From Suit for Instituting Administrative Proceedings. .......... 7

    C.    The Authority is Immune from Liability for Non-Statutory Claims. ....... 7

IV.   EACH OF PLAINTIFF'S CLAIMS IS BARRED ON SUBSTANTIVE
    GROUNDS AS WELL ........................................................................................ 8

    A.    Plaintiff's First, Second and Fourth Causes of Action for Retaliation
          Fail as a Matter of Law. ....................................................................... 9

          1.    Plaintiff Has Not Alleged a Violation of a State or Federal
              Law or Regulation ..................................................................... 9

          2.    In Addition, Plaintiff Could Not Have Had a Reasonable
              Belief That He Was Disclosing a Violation of a State or
              Federal Law, Rule or Regulation. .............................................. 10

              a.    The General Dynamics Lease. ......................................... 10

              b.    The Teledyne Ryan Lease. .............................................. 11

          3.    Plaintiff's Belief Could Not Have Been Reasonable as a
              Matter of Law Because Defendant is Immune From
              Liability. ................................................................................... 11

    B.    Plaintiff Has Not Alleged a Right to Privacy Claim as a Matter of
          Law. ................................................................................................... 12

    C.    The Authority's Ethics Code Does Not Create a Private Right of
          Action. ............................................................................................... 13

V.    THE COMPLAINT IS UNCERTAIN ................................................................... 14

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

i

CASE NO. GIC 871979

8-126



VI.    CONCLUSION .................................................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

ii

CASE NO. GIC 871979

# TABLE OF AUTHORITIES

## STATE CASES

*Arriaga v. Loma Linda University*
    (1992) 10 Cal.App.4th 1556 ................................................................................13

*Blank v. Kirwan*
    (1985) 39 Cal.3d 311 ............................................................................................4

*Burgdorf v. Funder*
    (1966) 246 Cal.App.2d 443 ..................................................................................5

*CAMSI IV v. Hunter Technology Corp.*
    (1991) 230 Cal.App.3d 1525 ................................................................................4

*Caldwell v. Montoya*
    (1995) 10 Cal.4th 972 [820.2 bars claim for retaliatory discharge].................5, 6, 7

*Colome v. State Athletic Com.*
    (1996) 47 Cal.App.4th 1444 ..............................................................................5, 8

*County of Sacramento v. Superior Court*
    (1972) 8 Cal.3d 479 ..............................................................................................4

*Crusader Insurance Co. v. Scottsdale Insurance Co.*
    (1997) 54 Cal.App.4th 121 .................................................................................13

*Hardy v. Vial*
    (1957) 48 Cal.2d 577 ............................................................................................5

*Harshbarger v. City of Colton*
    (1988) 197 Cal.App.3d 1335 ................................................................................8

*Holmes v. General Dynamics Corp.*
    (1993) 17 Cal.App.4th 1418 ...............................................................................11

*Kemmerer v. County of Fresno*
    (1988) 200 Cal.App.3d 1426 .............................................................................5, 7

*Keyes v. Santa Clara Valley Water District*
    (1982) 128 Cal.App.3d 882 ..................................................................................4

*Kim v. Walker*
    (1989) 208 Cal.App.3d 375 ..................................................................................5

*Lawrence v. Bank of America*
    (1985) 163 Cal.App.3d 431 ..................................................................................4

*Lopez v. Southern Cal. Rapid Transit District*
    (1985) 40 Cal.3d 780 ............................................................................................4

*Marich v. MGM/UA Telecommunications, Inc.*
    (2003) 113 Cal.App.4th 415 .............................................................................8, 12

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

iii

CASE NO. GIC 871979

8-128

Michael J. v. County Department of Adoptions
    (1988) 201 Cal.App.3d 859 ................................................................................8

Miller v. National Broadcasting Co
    (1986) 187 Cal.App.3d 1463 ............................................................................12

Moradi-Shalal v. Fireman's Fund Insurance Companies
    (1988) 46 Cal.3d 287 ......................................................................................13

Morgan v. Regents of University of Cal.
    (2000) 88 Cal.App.4th 52 ..................................................................................9

Palmer v. Regents of University of California
    (2003) 107 Cal.App.4th 899 ..............................................................................8

Patten v. Grant Joint Union High School District
    (2005) 134 Cal.App.4th 1378 ..........................................................................10

Saltares v. Kristovich
    (1970) 6 Cal.App.3d 504 ..................................................................................11

Sanchez-Scott v. Alza Pharmaceuticals
    (2001) 86 Cal.App.4th 365 ..............................................................................12

Shoemaker v. Myers
    (1992) 2 Cal.App.4th 1407 ............................................................................7, 8

Summers v. City of Cathedral City
    (1990) 225 Cal.App.3d 1047 .............................................................................7

Tokeshi v. State of California
    (1990) 217 Cal.App.3d 999 ...............................................................................5

Vikco Insurance Services, Inc. v. Ohio Indemnity Company
    (1999) 70 Cal.App.4th 55 ................................................................................13

Widdows v. Koch
    (1968) 263 Cal.App.2d 228 .............................................................................12

Wilkins v. National Broadcasting Co., Inc.
    (1999) 71 Cal.App.4th 1066 ............................................................................12

Williams v. Beechnut Nutrition Corp.
    (1986) 185 Cal.App.3d 135 .............................................................................14

## STATE STATUTES

Code Civ. Proc., § 430.10 .............................................................................4, 14

Code Civ. Proc., § 435 .........................................................................................4

Gov. Code §§ 810-895.8 .......................................................................................5

Gov. Code § 811.2 ...............................................................................................8

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

iv

CASE NO. GIC 871979

8-129

1   Govt. Code § 815 ..................................................................................................3, 5, 6, 7, 8

2   Gov. Code § 815.2 .......................................................................................................5, 7, 8

3   Gov. Code § 820.2 ..............................................................................................3, 5, 6, 7, 11

4   Gov. Code § 820.4 .............................................................................................................12

5   Gov. Code § 821.6 .......................................................................................................5, 7, 8

6   Lab. Code § 1102.5 ...............................................................................................1, 2, 3, 9, 10

7   Public Utilities Code § 170056 .......................................................................................10

8   Public Utilities Code § 170002 .........................................................................................8

9   Labor Code § 1102.5 ..........................................................................................................9

10  Labor Code section 1102.5 ....................................................................................1, 2, 3, 9, 10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

v

CASE NO. GIC 871979

8-130

# I.

## INTRODUCTION AND SUMMARY OF ALLEGATIONS

Plaintiff Jose Hernandez was employed as a Director of Landside Operations for defendant San Diego County Regional Airport Authority ("the Authority"). In late December 2005, an Authority employee reported that Hernandez may have violated certain provisions of the Authority's Ethics Code, so it began an investigation. At the conclusion of the investigation, the Authority determined that Hernandez had acted inappropriately by accepting free goods and services from Authority vendors, including free roundtrip tickets to Hawaii, tickets to football and baseball games, and free parking passes. Hernandez resigned from his employment in February 2006 after the Authority informed him of its conclusions.

Hernandez now brings this baseless complaint in an effort to smear the Authority's reputation and to place blame on others for his own personal actions. Primarily, Hernandez alleges that the Authority retaliated against him for disclosing improper activities, even though Hernandez was merely engaged in his day-to-day duties of evaluating aspects of the Authority's operations. Although the complaint is replete with allegations of the Authority's alleged ethical violations, Plaintiff only explicitly alleges that he disclosed four of the alleged improprieties (See Complaint ¶ 39; see also ¶¶ 10-14)[1]:

- Bryan Enarson's alleged "side deal" with Host regarding the women's restroom renovation in Terminal One (Complaint ¶ 10);

- The lease of the General Dynamics parking lot (hereinafter "General Dynamics Lease") (Complaint ¶ 12);

- The lease of the Teledyne Ryan parking lot (hereinafter "Teledyne Ryan Lease") (Complaint ¶ 13); and

- Double-billing of expenses on the Lindbergh Parking ("LPi") Contract (Complaint ¶ 14).

---

[1] The complaint is uncertain as to whether plaintiff contends that other conversations that plaintiff had with Authority employees regarding alleged ethical violations constitute "protected disclosures" under Labor Code section 1102.5. Therefore, this demurrer only addresses the four disclosures, as explicitly alleged in paragraph 39 of the complaint.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

1

CASE NO. GIC 871979

8-131

1  The dates of the above disclosures by Plaintiff are notably missing from Plaintiff's complaint (see

2  Complaint ¶¶ 10-14 and 39), and as will be detailed herein, Plaintiff could not have reasonably

3  believed that any of these actions violated the law, especially since one of the transactions was

4  specifically authorized by statute.

5       In his second cause of action for "Violation of Ethics Code"[2], Plaintiff alleges that the

6  Authority, through its officers and employees, violated certain provisions of the Authority's Ethics

7  Code, but Plaintiff does not actually wrap these allegations into any cognizable cause of action

8  against the Authority.  In fact, the second cause of action appears more to be a dig at the Authority

9  than a claim for retaliation since Plaintiff does not even allege that he complained about the alleged

10 unethical acts.[3]  (Id. at ¶¶ 38-39.)[4]

11      Plaintiff also alleges a third cause of action for privacy based on the investigator's inquiry

12 into Plaintiff's car repairs through an on-site vendor at the Airport and Plaintiff's relationship with

13 his wife.  Finally, the fourth cause of action for wrongful termination in violation of public policy

14 appears to be merely a repeat of the first and second causes.

15      Overall, Plaintiff's complaint is uncertain and poorly pled.  In addition, each cause of

16 action in the complaint fails for the following reasons:

17      1)      The second cause of action fails because there is no private right of action for

18              violation of the Authority's Ethics Code.

19

20 [2] The legal theory underpinning the second cause of action is uncertain.  The second cause of action could be construed as alleging (1) an independent cause of action under the Authority's Ethics Code, (2) a Labor Code section

21 1102.5 claim, or (3) a wrongful termination in violation of public policy claim.  However, the complaint already contains express causes of action for (2) and (3).  In an abundance of caution, this demurrer and motion to strike

22 addresses each potential legal theory presented in the second cause of action.  As demonstrated herein, however, the second cause of action fails under any of the three potential legal theories.

23 [3] The alleged unethical acts include:  Flying to Texas for Blue Bell ice cream (Complaint ¶ 37(a)), Inappropriate CEO Ticket Changes and Premier Club Access (Id. at ¶ 37(b)), Shipping Meat from Texas for Free (Id. at ¶ 37(c)), Airline

24 Privileges for the Authority's CEO's sister (Id. at ¶ 37(d)), Free upgrades (Id. at ¶ 37(e) and (I)), Using Airport Parking Lots for non-Airport activities (Id. at ¶ 37(f) and (g)), Using official position to Obtain Tickets (Id. at ¶

25 37(j)), the Chairman having his office surveyed for listening devices (Id. at ¶ 37(k)), and an Unwarranted Investigation and Subsequent termination of Plaintiff (Id. at ¶ 15-16 and 23-33).  As further detailed in the

26 accompanying notice of motion and motion to strike, none of these alleged unethical acts, even if reported, violate the Ethics Code or support a Labor Code section 1102.5 claim.

27 [4] In fact, the only alleged unethical acts that Plaintiff affirmatively alleges that he reported are those listed in the First Cause of Action:  the Concession Renovations, the GD and Teledyne Ryan Leases, and the LPi Contract (Id. at ¶ 39.)

28

MEMO OF POINTS AND AUTHORITIES IN          2          CASE NO. GIC 871979
SUPPORT OF DEMURRER/MOTION TO STRIKE

2)   The second through fourth causes of action are all common law claims and are barred by Government Code section 815(a);

3)   Plaintiff's causes of action are barred by the discretionary act immunity and investigatory immunity found in Government Code sections 820.2 [second through fourth causes of action] and 821.6 [all causes of action], which apply to the Authority through Government Code section 815.2(b);

4)   The first, second and fourth causes of action, which allege retaliation and violations of Labor Code section 1102.5, fail as a matter of law because Plaintiff has not alleged a prima facie case showing that he reasonably believed that the Authority's actions violated a state or federal law, rule or regulation; and

5)   The third cause of action for invasion of privacy fails as a matter of law because Plaintiff did not have any reasonable expectation of privacy in his motor vehicle repair records or in third parties' opinions regarding his marriage;

For the foregoing reasons, and as more fully discussed herein, defendant respectfully requests that this court sustain its demurrer to each cause of action in the complaint. In the alternative, defendant moves to strike those allegations that are barred by the various deficiencies noted above, as detailed in the accompanying notice of motion and motion to strike the complaint.[5]

---

[5] The Authority requests that the Court strike allegations from the complaint on the following grounds:
- Plaintiff has failed to allege a state or federal law, rule or regulation that the Authority allegedly violated, as required by Labor Code section 1102.5 (Complaint ¶¶ 6, 10, 12, 13, 14, 18, 28, 29, 37 (a-o), 38-41, and 55-60);
- Plaintiff failed to allege that he reasonably believed that the Authority's actions violated a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b). (Complaint ¶¶ 10, 11, 12, 29, 37, 38-39, 48, and 57-58);
- Plaintiff has failed to allege that the Authority made or enforced a rule, policy or regulation that prevented him from disclosing violations of law, as required by Labor Code section 1102.5(a) (Complaint ¶ 38);
- Plaintiff has failed to allege that he disclosed certain alleged ethical violations (Complaint ¶ 37);
- The Authority is immune from liability for its actions in connection with the investigation of potential Ethics Code violations under Government Code sections 821.6 and 815.2(b) (Complaint ¶¶ 23-26, 28, 30, 38, 46-49, and 55-60);
- The Authority is immune from liability for its discretionary acts under Government Code sections 820.2 and 815.2(b) (Complaint ¶¶ 23-26, 28, 30, 38, 46-49, and 55-60);
- Plaintiff did not have a reasonable expectation of privacy in his car repair records (Complaint ¶ 25);
- Plaintiff did not have a reasonable expectation of privacy in third parties' observations of his marital relationship (Complaint ¶¶ 26 and 47); and
- Plaintiff may not pursue a private right of action for violations of the Authority's Ethics Code (Complaint ¶¶ 37-41).

---

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

3

CASE NO. GIC 871979

## II.

## DEMURRER AND MOTION TO STRIKE STANDARDS

**A.    General Standard for Demurrer.**

A demurrer tests the legal sufficiency of the Plaintiff's complaint. (Code Civ. Proc., § 430.10.) Although leave to amend is typically granted liberally, it should be denied where the nature of the claim is clear, but no liability exists under substantive law. (*Lawrence v. Bank of Am.* (1985) 163 Cal.App.3d 431, 436.) Thus, denial of leave to amend is proper where the Plaintiff cannot show in what manner he can amend and how the amendment will change the legal effect of his pleading. (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1539.) The burden of showing a reasonable possibility of successful amendment "is squarely on the Plaintiff." (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)

**B.    Plaintiff Must Plead with Specificity Because the Authority is a Public Entity.**

A Plaintiff's burden is more difficult when he seeks to impose liability on a public entity, as is the case here, because every fact material to the existence of the public entity's liability "must be pled with particularity." (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.) This heightened pleading requirement allows courts to evaluate the presence or absence of statutory immunities at the earliest possible stage in the litigation so as to avoid any unnecessary waste of time and expense. (See, *County of Sacramento v. Superior Court* (1972) 8 Cal.3d 479, 481 ["it is desirable that an important jurisdictional question presented by the defense of sovereign immunity from suit should be speedily determined"]; *Keyes v. Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 885-86 [Plaintiffs must plead facts sufficient to show that their claims lie "outside the breadth of any applicable statutory immunity"].)

The complaint at issue here falls short of meeting this elevated pleading standard and, as a result, should be dismissed without leave to amend.

**C.    In the Alternative, this Court May Strike any Improper or Irrelevant Material**

In the event that this Court does not sustain the Authority's demurrer to each cause of action, the Court has the authority to strike any improper or irrelevant matter from the pleadings pursuant to California Code of Civil Procedure sections 435 and 436(a).

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

4

CASE NO. GIC 871979

8-134

# III.

## EACH OF PLAINTIFF'S CAUSES OF ACTION IS BARRED BY IMPORTANT
## GOVERNMENTAL IMMUNITIES

In 1963, the California Legislature enacted several interrelated laws known as the Government Claims Act ("Act"). (*Tokeshi v. State of California* (1990) 217 Cal.App.3d 999, 1004; Gov. Code §§ 810-895.8.) It is well settled under the Act that a public entity is not liable for tortious injury unless the liability is specifically imposed by statute or the Constitution. (*Colome v. State Athletic Com.* (1996) 47 Cal.App.4th 1444, 1454-1455.) Here, Plaintiff's claims are barred by the discretionary act immunity (Gov. Code § 820.2), the investigatory immunity (Gov. Code § 821.6), and the immunity from common law claims (Gov. Code § 815(a).]

**A.    Government Code Sections 815.2(b) and 820.2 Bar Plaintiff's Second through Fourth Causes of Action.**

Government Code Section 820.2 provides that "except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." (Gov. Code § 820.2.) A "discretionary act" is any act that requires the exercise of "judgment or choice," or that emanates from the employee's decision as to what is "just and proper under the circumstances." (*Burgdorf v. Funder* (1966) 246 Cal.App.2d 443, 449.) This immunity applies to a wide variety of claims, including retaliatory discharge. (See *Caldwell v. Montoya* (1995) 10 Cal.4th 972, 978, 989 [820.2 bars claim for retaliatory discharge]; *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1438-39 [County immune under 820.2 for breach of the covenant of good faith and fair dealing and intentional infliction of emotional distress claims]; *Kim v. Walker* (1989) 208 Cal.App.3d 375, 382-383 [defamation occurring within course of discretionary acts held immune under 820.2]; *Hardy v. Vial* (1957) 48 Cal.2d 577, 584 [affidavits sworn by state college officials regarding actions of Plaintiff held absolutely privileged because statements were made within their discretionary authority].) Further, this immunity extends to the Authority by virtue of Government Code section 815.2(b). (Gov. Code § 815.2, subd.(b); *Kemmerer, supra*, 200 Cal.App.3d at p. 1435 ["Though sections 821.6 and 820.2

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

5

CASE NO. GIC 871979

8-135

1 | expressly immunize only the employee, if the employee is immune, so too is the [public entity]."].)

2 | In *Caldwell v. Montoya, supra*, the California Supreme Court upheld the trial court's

3 | sustaining of defendants' demurrer to a complaint alleging retaliation. The Court held that the

4 | school board's decision to terminate the school's superintendent was a discretionary act under

5 | section 820.2 because it involved a basic governmental policy decision entrusted to the broad

6 | official judgment of the school board. In so holding, the Court explained that it is well settled that

7 | discretionary immunity "extends to fundamental decisions within the executive or administrative

8 | authority of the agency or official." (*Caldwell, supra,* 10 Cal.4th at p. 983, fn. 5.) Further, an

9 | allegation that the standards used to evaluate an employee were wrong and impermissible (even

10 | retaliatory) cannot divest a discretionary policy decision of its immunity. (*Id.* at p. 984.) Finally,

11 | the Court concluded that section 820.2 applies to common law and statutory claims and an

12 | "immunity cannot be abrogated by a statute which simply imposes a general legal duty or liability

13 | on persons, including public employees." (*Id.* at p. 986.)

14 | *Caldwell* controls here. As the President and CEO, Bowens had broad responsibility for

15 | overseeing operation of the Authority, including investigating any alleged misconduct by one of

16 | the Authority's directors. Plaintiff's complaint focuses entirely on the motives of the Authority in

17 | initiating an investigation against him and his ultimate termination, both of which are discretionary

18 | acts. Bowens and the former Vice President of Operations' decision to terminate Plaintiff's

19 | employment necessarily involved the exercise of analysis and judgment as to what was proper in

20 | the circumstances. Therefore, much like the school board's decision in *Caldwell*, the Authority's

21 | decision to terminate Plaintiff was a policy decision and discretionary in nature, immunizing the

22 | Authority from suit under Government Code sections 820.2 and 815.2(b).

23 | Moreover, although Plaintiff characterizes his termination as "retaliatory," the Authority

24 | cannot be divested of its immunity merely because Plaintiff asserts that the investigation and

25 | termination were unfair. The immunity applies regardless of whether the Authority allegedly

26 | abused its discretion. As a result, Plaintiff's second through fourth causes of action is barred as a

27 | matter of law by the discretionary immunity found in Government Code section 820.2 and

28 | applicable to the Authority under section 815.2(b).

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

6

CASE NO. GIC 871979

8-136

**B.    Government Code section 821.6 and 815.2(b) Immunize the Authority From Suit for Instituting Administrative Proceedings.**

Likewise, Government Code sections 821.6 and 815.2(b) immunize the Authority from liability for instituting an investigation. Government Code section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." (Gov. Code § 821.6.) This immunity applies to the Authority as well. (Gov. Code § 815.2(b).)

Courts have applied this investigatory immunity to all public employees, and their respective public entities, who institute, investigate or are otherwise involved in an employee's termination. (*Kemmerer, supra,* 200 Cal.App.3d at pp. 1436-37 [holding public employees immune based upon their investigation of, and recommendation to terminate, Plaintiff]; *Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1064 [same].) Like section 820.2, section 821.6 immunity has been specifically applied to whistle-blower allegations and other wrongful termination claims. (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1425 [applying section 821.6 immunity to a common law "whistleblower" wrongful discharge claim]; and *Caldwell, supra,* 10 Cal.4th at p. 982.)

Here, Plaintiff alleges that defendant instituted an unfair investigation, which ultimately resulted in his termination. (Complaint ¶¶ 7 and 23-30.) The allegedly unfair investigation is an administrative proceeding under section 821.6 and cases interpreting that section. As a result, the Authority is immune from Plaintiff's claims arising out of the Authority's investigation and Plaintiff's resulting termination. The Authority's demurrer should therefore be sustained without leave to amend and/or the motion to strike allegations of the complaint related to the investigation and subsequent termination should be granted.

**C.    The Authority is Immune from Liability for Non-Statutory Claims.**

The Authority is also immune from the second through fourth causes of action because they

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

7

CASE NO. GIC 871979

8-137

1  are common law claims.[6]  Government Code section 815(a) expressly states "[e]xcept as otherwise

2  provided by statute, a 'public entity' is not liable for an injury, whether such injury arises out of an

3  act or omission of the public entity or a public employee or any other person." (Gov. Code § 815,

4  subd.(a).)  "Public entity" liability is limited because "[s]overeign immunity is the rule in

5  California." (*Colome*, 47 Cal. App. 4th at 1454-1455.)  Thus, the Tort Claims Act provides that all

6  public entities, including the Authority, are immune from liability *unless* the Legislature expressly

7  provides for such liability. (Gov. Code §§ 811.2 and 815.)  Therefore, common law claims may

8  not, as a matter of law, be brought against public entities. (Govt. Code § 815(a)); see *Harshbarger*

9  *v. City of Colton* (1988) 197 Cal.App.3d 1335, 1339 ["Government Code section 815, enacted in

10  1963, abolished all common law or judicially declared liabilities for public entities"]; *Michael J. v.*

11  *County Department of Adoptions* (1988) 201 Cal.App.3d 859, 866 [claims against public entities

12  must be based on statutes, not common law tort theories of liability].)  This immunity applies as

13  well to claims for wrongful discharge in violation of public policy and privacy claims. (*See*

14  *Palmer v. Regents of University of California* (2003) 107 Cal.App.4th 899 [explaining that a claim

15  for wrongful termination in violation of public policy is a "common law, judicially created tort"

16  that is "not authorized by statute"]; *Shoemaker, supra,* 2 Cal.App.4th at p. 1425 [stating that a

17  claim of wrongful termination in violation of public policy "does not escape the effect of"

18  immunity under Gov. Code section 821.6.]; *Marich v. MGM/UA Telecommunications, Inc.* (2003)

19  113 Cal.App.4th 415, 421 [privacy cause of action is a common law claim].)

20       The Authority is a "public entity" both under the Act (Gov. Code § 811.2) and as created

21  by California Public Utilities Code section 170002.  The Authority is therefore immune from

22  liability for the second through fourth causes of action, which are all common law claims.

23  **IV.**

24  **EACH OF PLAINTIFF'S CLAIMS IS BARRED ON SUBSTANTIVE GROUNDS AS**

25  **WELL**

26

27  ---

[6] Since there is no statutory authority for the second cause of action entitled "Violation of Ethics Code" [See Section IV(C), *infra*], defendant assumes that Plaintiff is trying to plead a common law claim in his second cause of action.

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

8

CASE NO. GIC 871979

8-138

1        Not only are Plaintiff's causes of action barred by the governmental immunities set forth

2  above, each of the causes of action also fail on its merits.

3  **A.**    **Plaintiff's First, Second and Fourth Causes of Action for Retaliation Fail as a Matter**

4       **of Law.**

5        Plaintiff's first, second and fourth causes of action all allege under different legal theories

6  that Plaintiff was retaliated against for complaining about the Authority's actions.  To establish a

7  *prima facie* case of retaliation under the common law or Labor Code section 1102.5(b), as with

8  FEHA and Title VII, Plaintiff must allege that (1) he engaged in a "protected activity," (2) the

9  Authority took an adverse employment action against him, and (3) a causal link exists between his

10  protected activity and the adverse employment action.  (*Morgan v. Regents of University of*

11  *Cal.* (2000) 88 Cal.App.4th 52, 69.)  In order to allege that Plaintiff engaged in a protected activity,

12  as required by the first prong of the prima facie case, Plaintiff must allege that he disclosed, to a

13  government or law enforcement agency, information that he reasonably believed disclosed a

14  violation of state or federal statute, rule, or regulation.  (Lab. Code § 1102.5, subd. (b).)

15        Plaintiff's claim cannot even get off the ground because he did not, and could not have,

16  reasonably believed that he disclosed the violation of a state or federal statute, rule, or regulation.

17  In particular, Plaintiff's complaint in this action only alleges violation of the Authority's internal

18  ethics code and not a violation of federal or state law, rule, or regulation; and Plaintiff knew, or

19  should have known, that the alleged wrongful acts were permissible.  As a result, he could not have

20  reasonably believed that the Authority violated a state or federal law, rule or regulation, and his

21  retaliation claims fail.

22      **1.**    **Plaintiff Has Not Alleged a Violation of a State or Federal Law or Regulation.**

23        By its very terms, Labor Code section 1102.5 requires a Plaintiff to disclose a violation of a

24  state or federal law, rule or regulation.  (See Labor Code § 1102.5(b).)  However, Plaintiff's own

25  complaint does not point to any alleged violation of a *state or federal* law, rule or regulation.

26  Instead, Plaintiff's complaint focuses primarily on violations of the Authority's own Ethics Code,

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

9

CASE NO. GIC 871979

8-139

1  which is simply an internal guideline and not a state or a federal law, rule[7] or regulation.[8]

2  Accordingly, Plaintiff's Labor Code section 1102.5 causes of action fail as a matter of law and the

3  Authority's demurrer to the first, second and fourth causes of action should be sustained.  In the

4  alternative, the Authority moves to strike all references to the Ethics Codes violations in the

5  complaint (see footnote 3 for a listing of alleged violations) because those allegations cannot

6  support a Labor Code section 1102.5 cause of action.

7        2.    **In Addition, Plaintiff Could Not Have Had a Reasonable Belief That He Was**

8             **Disclosing a Violation of a State or Federal Law, Rule or Regulation.**

9        Since Plaintiff has not alleged any violation of a state or federal law, rule or regulation in

10  his complaint, it naturally follows that he could not have had a reasonable belief that the Authority

11  was violating any alleged state or federal laws when he complained, and the analysis on the

12  retaliation claims can end there.  However, *assuming arguendo* that the Ethics Code falls within

13  the definition of a federal or state law under Labor Code section 1102.5, Plaintiff still could not

14  have had a reasonable belief that the Authority was violating the law because the Authority's

15  actions were permissible and known to the public.

16        a.    **The General Dynamics Lease.**

17        One of Plaintiff's alleged protected disclosures involved uncovering the financial

18  problems with the General Dynamics Lease.  (Complaint ¶ 12.)  However, the lease terms of the

19  General Dynamics Lease were mandated by Public Utilities Code section 170056(f).  As a result,

20  Enarson's and the Authority's acceptance of those lease terms cannot be a violation of law.

21  Plaintiff therefore could not have had a reasonable belief that the Authority was violating the law

22  by accepting the General Dynamics lease terms.

23  [7] In *Patten v. Grant Joint Union High School Dist.* (2005) 134 Cal.App.4th 1378, 1384, the court recognized that the
24  2003 Amendment to Labor Code section 1102.5, which added that the plaintiff could disclose a violation of a "rule"
    as a protected activity, made it clear that the alleged violated "rule" must be a "state or federal 'rule'". (*Ibid.*)

25  [8] The only referenced federal law in the complaint is the Americans with Disabilities Act ("ADA"). (See Complaint ¶
26  10.)  However, even that paragraph in the complaint does not allege that the Authority's actions violated the ADA.
    Instead, Plaintiff merely alleges that compliance with the ADA would be more expensive as a result of the Authority's
    actions. (*Ibid.*)  Plaintiff also vaguely alleges that the Authority's actions violated "state law" and that he believed
27  LPi violated the Public Contracting Law.  Such allegations are uncertain and do not meet Plaintiff's burden of
    pleading his causes of action with particularity.

28

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

10

CASE NO. GIC 871979

**8-140**

1          **b.    The Teledyne Ryan Lease.**

2          Plaintiff also alleges that he disclosed findings related to the environmental contamination

3    on the Teledyne Ryan Parking Lot and disclosed the amount of money that the Authority

4    negotiated for the lease. (Complaint ¶ 13.)  However, there can be no "disclosure" under section

5    1102.5 when the complainant merely republishes public information.  A disclosure requires that the

6    employee "expose to view" or "make known" a violation of the law. (See e.g. *Holmes v. General*

7    *Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under

8    wrongful termination in violation of public policy doctrine].)

9          Here, Plaintiff's "disclosures" seem to consist of merely talking about "information" that

10   was already known to employees of the Authority. (Complaint ¶ 13.)  If republication of publicly

11   known information could constitute a protected activity under section 1102.5, any employee of a

12   company who has been sued for any statutory violation could send a copy of that complaint to a

13   government official and thus become a "protected" employee under section 1102.5, even if that

14   employee was not the Plaintiff.  Such a result is absurd.  A republication does not "make known"

15   violations of law and cannot be a disclosure under section 1102.5 as a matter of law.

16         As a result of the foregoing, neither the disclosure regarding the GD Lease, nor the

17   disclosure regarding the Teledyne Ryan Lease, can support Plaintiff's section 1102.5 causes of

18   action, and therefore any reference to those leases must be stricken from the complaint.

19         **3.    Plaintiff's Belief Could Not Have Been Reasonable as a Matter of Law**

20                **Because Defendant is Immune From Liability.**

21         In addition, Plaintiff could not have had a reasonable belief that the Authority was

22   engaged in any unlawful acts because the Authority is immune from suit for its actions.

23   Primarily, as discussed herein, the Government Claims Act provides public entities with

24   immunity for their employees' discretionary acts. (Gov. Code §§ 820.2 and 815.2, subd.(b).)  In

25   addition to those cases already listed in Section III(A) above, this discretionary act immunity has

26   been applied in situations where a public administrator determines how assets of an estate should

27   be handled (*Saltares v. Kristovich* (1970) 6 Cal.App.3d 504, 515), and where city officials chose

28   one ambulance provider over another within their power under a legislative directive to develop

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

11

CASE NO. GIC 871979

8-141

1    rules for administration of the hospital (*Widdows v. Koch* (1968) 263 Cal.App.2d 228, 239-240).

2        In this case, a Vice President's determination of how to negotiate certain leases and

3    contracts undoubtedly is a discretionary decision.  Additionally, "a public employee is not liable

4    for his act or omission, exercising due care, in the execution or enforcement of any law." (Gov.

5    Code § 820.4.)  At best, Plaintiff seeks to assert that the execution or enforcement of the leases was

6    unlawful.  Under section 820.4 and 815.2(b), a public entity enjoys immunity for such execution or

7    enforcement.  Since Government Code sections 820.2 and 820.4 provide immunities for the

8    alleged activities of the Authority, Plaintiff could not have reasonably believed that the Authority's

9    actions were unlawful.

10   **B.    Plaintiff Has Not Alleged a Right to Privacy Claim as a Matter of Law.**

11       Not only does Plaintiff's "right to privacy" claim fail because it is a common law claim

12   and subject to the investigatory and discretionary act immunities, it also fails on its merits.

13   "Common law invasion of privacy actions require the Plaintiff to show:  (1) [intentional] intrusion

14   into a private place, conversation or matter, (2) in a manner highly offensive to a reasonable

15   person." (*Marich, supra,* 113 Cal.App.4th at p. 421.)  Further, the Court must make a preliminary

16   determination of "offensiveness" in determining whether an intrusion of privacy claim exists in

17   the first instance.  (*Sanchez-Scott v. Alza Pharmaceuticals* (2001) 86 Cal.4th 365, 376;

18   *Wilkins v. National Broadcasting Co., Inc.* (1999) 71 Cal.App.4th 1066, 1075-1076; *Miller v.*

19   *National Broadcasting Co,* (1986) 187 Cal.App.3d 1463 at pp. 1483-1484.)

20       Here, Plaintiff has alleged two privacy violations by the investigator:  (1) obtaining

21   Plaintiff's vehicle repair records; and (2) asking third parties about Plaintiff's marriage.

22   However, Plaintiff cannot show that the Authority intruded into either of these alleged personal

23   matters in a manner highly offensive to a reasonable person.

24       First, Plaintiff did not have a reasonable expectation of privacy in his vehicle repair

25   records, especially when the repairs were done at an on-site vendor.  Similarly, inquiries to third

26   parties regarding the nature of Plaintiff's marital relationship did not invade Plaintiff's reasonable

27   expectation of privacy.  Any of the co-workers' observations of Plaintiff and his wife are not

28   confidential or private on their face because they are merely outsiders' opinions and observations.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

12

CASE NO. GIC 871979

1   If the co-workers shared information with the investigators beyond simple observations, then this

2   information would be based on details provided by Plaintiff to the witnesses.  Plaintiff would thus

3   have waived any right to assert a privacy objection to the extent that he shared with his co-

4   workers personal details about his relationship with his wife.

5           Without demonstrating a reasonable expectation of privacy in either the vehicle repair

6   records, or the nature of his relationship with his wife, Plaintiff's right of privacy claim fails as a

7   matter of law.

8   **C.      The Authority's Ethics Code Does Not Create a Private Right of Action.**

9           In addition to the various immunities and substantive issues described above, Plaintiff's

10  second cause of action is also barred to the extent that Plaintiff seeks to create a private right of

11  action out of the Authority's Ethics Code.  As discussed previously, the Ethics Code does not rise

12  to the level of a state law or regulation, but even if it did, Plaintiff may not seek damages unless

13  the code specifically confers a private right of action for damages.  As the Court explained in

14  *Vikco Insurance Services, Inc. v. Ohio Indemnity Company* (1999) 70 Cal.App.4th 55:

15              [a]doption of a regulatory statute does not automatically create a
                private right to sue for damages resulting from violations of the
16              statute. Such a private right of action exists only if the language of
                the statute or its legislative history clearly indicates the Legislature
17              intended to create such a right to sue for damages. If the Legislature
                intends to create a private cause of action, we generally assume it
18              will do so directly [,] ... in clear, understandable, unmistakable
                terms.... [Citation.]
19

20  (*Id.* at 62-63, citing *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 294-

21  295 [internal quotes omitted].  *See also Crusader Ins. Co. v. Scottsdale Ins. Co.* (1997) 54

22  Cal.App.4th 121, 125-37 [judge may not insert what has been omitted from a statute; legislative

23  intent alone determines whether statute creates new private right to sue]; *Arriaga v. Loma Linda*

24  *University* (1992) 10 Cal.App.4th 1556, 1563-1564 [applying *Moradi-Shalal* and holding

25  provisions of Government Code do not create private right of action where statute showed no

26  such intent].)

27          The Authority did not provide, in "clear, understandable, unmistakable terms," a right to

28  sue for damages under the Ethics Code, nor is there such a right created by the Legislature.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN                    13
SUPPORT OF DEMURRER/MOTION TO STRIKE

CASE NO. GIC 871979

8-143

1    Accordingly, Plaintiff may not maintain a private right of action for individual damages under the

2    Authority's Ethics Code.

## V.

## THE COMPLAINT IS UNCERTAIN

5    A demurrer should be sustained when a pleading is uncertain, ambiguous or unintelligible.

6    (Code of Civ. Proc., § 430.10(f).)  To survive a demurrer based on uncertainty, a complaint must

7    contain factual allegations sufficient to give a defendant notice as to the issues of the action. (See

8    *Williams v. Beechnut Nutrition Corp.* (1986) 185 Cal.App.3d 135, 139 fn. 2.)  Plaintiff's

9    complaint does not meet that burden.

10    Here, Plaintiff's complaint contains duplicative and frivolous allegations.  In addition, the

11    second cause of action combines several different legal theories in one cause of action.  The

12    Authority therefore requests a more certain statement of the allegations and legal theories in the

13    event that Plaintiff is given leave to amend the complaint.

## VI.

## CONCLUSION

16    For the foregoing reasons, the Authority respectfully requests that this court sustain its

17    demurrer to all causes of action in the complaint.  In the alternative, the Authority requests that

18    the court strike improper allegations from the complaint, as further detailed in the accompanying

19    notice of motion and motion to strike.

21    Dated: October 5, 2006

PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP

By: *Sandra L. McDonough*

FRED M. PLEVIN
SANDRA L. MCDONOUGH
ALBERT R. LIMBERG
Attorneys for Defendant
SAN DIEGO COUNTY REGIONAL
AIRPORT AUTHORITY

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF DEMURRER/MOTION TO STRIKE

14

CASE NO. GIC 871979

1  CATHRYN CHINN, ESQ.  #93340
   3990 Old Town Avenue, Ste.  A109
2  San Diego, California 92110
   Telephone: 619-295-4190
3
   Attorney for Plaintiff
4      JOSE HERNANDEZ

5

6                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                      FOR THE COUNTY OF SAN DIEGO

8

9

10  JOSE HERNANDEZ,                    ) Case No.  GIC 871979
11                                     )
               Plaintiff,             ) PLAINTIFF'S OPPOSITION TO
12                                     ) DEFENDANT SAN DIEGO COUNTY
        v.                            ) REGIONAL AIRPORT AUTHORITY'S
13                                     ) DEMURRER AND/OR MOTION TO
    SAN DIEGO COUNTY REGIONAL          ) STRIKE
14  AIRPORT AUTHORITY, a public entity;)
    and DOES 1 through 10, inclusive,  )
15                                     ) Date:          December 22, 2006
               Defendants.            ) Time:          1:30 p.m.
16                                     ) Dept:          71
                                       ) Judge:         Hon.  Richard E.  Strauss
17                                     ) Complaint Filed: September 1, 2006
                                       ) Trial Date:    None Set
18                                     )
                                       )
19

20

21

22

23

24

25

26

27

28

                              -1-
PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

9-145

# I.

## INTRODUCTION AND SUMMARY OF FACTS

The elements of a cause of action under California Labor Code Section 1102.5 require that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show this explanation is merely a pretext for the retaliation. The statute covers public sector employees. The first question is whether the employee disclosed activities covered under the Act. Section 1102.5 describes the covered disclosure as the reporting of "a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation." (California Labor Code Section 1102.5 (a)-©)). This broad category of employer misconduct covers a multitude of violations and noncompliance that qualify as a protected disclosures. When making the disclosures that are the subject of this Complaint, the plaintiff Jose Hernandez had specific statutes and regulations in mind when he made the disclosures that he believed violated laws.

California Labor Code Section 1102.5 only requires that the plaintiff have reasonable cause to believe there was a violation or noncompliance by the Airport Authority. (The "Authority") Specifically, Labor Code Section 1102.4(b) provides:

"An employer may not retaliate against an employer for disclosing information to a government or law enforcement agency, where the employee has *reasonable cause* to believe that the information discloses a violation of state and federal statute, or a violation or noncompliance with a state or federal regulation."
[California Labor Code Section 1102.5(b)]

Whether or not an employee has "reasonable cause" to believe the disclosure was a protected disclosure is a question for the trier of fact. *(Green v. Ralee Engineering* (1998) 19 Cal.4th 66). In *Green* the plaintiff was not required to prove an actual violation as long as he reported his "reasonably based suspicions" of the illegal activity. The plaintiff, Jose Hernandez, was the Director of Landside Operations for the Authority. Throughout his experience as a Director Hernandez disclosed numerous activities that he believed were violations contained in the Authority's governing statutes. The Authority is a public entity created by state law, California Public Utilities Code sections 170000 - 170084. As a Director, the plaintiff was intimately familiar with these statutes and their enabling legislation. Hernandez knew the

-2-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

9-146

1   content of these laws and regulations and he referenced them constantly in his work. The

2   plaintiff reasonably believed that the Authority's activities violated the statutes and the

3   regulations. [Complaint paragraphs 11; 41]

4          While Section 1102.5 requires an employee make a disclosure to a specific entity, this

5   plaintiff works for a "government agency". Public sector employees may satisfy this requirement

6   simply by complaining to their supervisor. Hernandez satisfies this requirement by his

7   complaints to his supervisor, the Vice President of Operations Ted Sexton. Hernandez also

8   voiced his complaints in numerous private meetings, including committee members and

9   management meetings. [Complaint paragraphs 11; 12; 13; 18; 28; 38; 39 ] In this respect, Section

10  1102.5 provides:

11          "A report made by an employee of a government agency to his or her employer is a
            disclosure of information to a government or law enforcement agency pursuant to
12          subdivisions (a) and (b)." [California Labor Code Section 1102.5(e)]

13         Employees who do not report illegal activities, but refuse to participate in them are also

14  protected by Section 1102.5. (See Cal. Labor Code Section 1102.5(e). This section makes a

15  refusal and retaliation for that refusal actionable. While Hernandez did not refuse to participate

16  in an unlawful act, he can show covered disclosures that protect him from suffering the adverse

17  employment action that the Authority took against him for his reports of the illegal conduct.

18         The complaint details that Hernandez suffered adverse employment action following his

19  disclosures that resulted in the Authority singling him out and "investigating" him for

20  accusations that the Authority refused to reveal to him. The plaintiff was terminated without any

21  opportunity to refute any allegations. He suffered employment actions that materially affected

22  his employment in retaliation for voicing his complaints and opposition under the Authority's

23  governing statutes, (*Patten v. Grant Joint Union High School District* (2005) 134 Cal.App.4th

24  1378) The adverse employment action for Labor Code whistleblowing retaliation purposes

25  requires that, "the adverse action materially affect the terms and conditions of employment; the

26  test encompasses not only ultimate employment decisions, but also the entire spectrum of

27  employment actions that are reasonably likely to adversely and materially affect an employee's

28  job performance or opportunity for advancement in his or her career." (*Id.* At 121)

-3-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

1   Hernandez can demonstrate that the Authority knew about the disclosures and he

2   documents that knowledge in the Complaint. [Complaint paragraphs 11; 12; 13; 18; 28; 38; 39]

3   The burden will then shift to the Authority to show *by clear and convincing evidence* that the

4   Authority would have occurred for legitimate, independent reasons outside of the disclosures.

5   Hernandez will be able to prevail because he can show that the Authority investigated him for

6   allegations that pale compared to the routine violations and gross abuse of the Authority's own

7   policies and codes that the CEO Bowens, her Vice Presidents, and General Counsel all engaged

8   in and directed other employees to engage in as well.  At the very least nothing the plaintiff did

9   during his employment would call for adverse action as severe as termination if he had not been a

10  whistleblower.  Whether or not there is a causal link between the adverse action and the

11  disclosures is a fact specific inquiry that will be evidenced as this case proceeds to trial.          ]

12  It is a separate violation of California Labor Codes section 1102.5(a) (even where an

13  employer took no adverse employment action against an employee) for an employer to "make,

14  adopt or enforce any rule, regulation, or policy preventing an employee from disclosing

15  information to a government or law enforcement agency." Hernandez made repeated attempts to

16  report unlawful acts by Bowens, her Vice Presidents and General Counsel to the Authority's

17  investigators and was prevented from doing so.  This means that an employee may file a claim

18  even where there has been no disclosure or adverse employment action.  The mere existence of

19  the rule that he cannot disclose information to the investigators about unlawful conduct violates

20  the statute.

21  **II**

22  **PLAINTIFF HAS PLED FACTS SUFFICIENT TO SHOW HIS CLAIMS**

23  **LIE OUTSIDE THE BREADTH OF STATUTORY IMMUNITY**

24

25  The Authority takes too narrow a view of the imposition of liability against a public

26  entity.  There has been a "constant evolution of case precedent construing the California Torts

27  Act since 1963 when it was enacted." ( *Keyes v.  Santa Clara Valley Water District 128*

28  *Cal.App.3d 882, 890)* "In a 'governmental tort case' the rule is liability, immunity is the

-4-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

9-148

1  exception." *Virginia v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1855-56 Unless

2  the legislature has clearly provided for immunity, the important societal goal of compensating

3  injured parties for harmful acts must prevail.  The Authority not only faces direct liability for

4  their violation of certain mandatory duties imposed by statutes (California Public Utilities Code

5  Section 170000-170084 and California Code of Contracts Section 100 et.seq.)  but also under

6  Government Code Section 815.2(a) for tortious acts (invasion of privacy by intrusion) committed

7  within the scope of Authority employment.  This case involves statutory liability, explained

8  factually below, and exceptions to the common law immunity.  Section 815.2(a) provides:

9        "that a public entity is liable for injury proximately caused by an act or omission of an
         employee . . . if the act or omission would, apart from this section, have given rise to
10       the action against the employee."

11  Each theory of liability provides a separate and independent basis for Plaintiff's claims here. To

12  state a claim for relief under Section 816.6(a) the plaintiff must demonstrate:

13       "that (1) the statute which was violated imposes a mandatory duty; (2) the statute
         was intended to protect against the type of harm suffered; and (3) breach of the
14       statute's mandatory duty was a proximate cause of the injury suffered."
         *Braman v. State* (1994) 28 Cal.App.4th 344

15  Section 815.6 imposes liability upon public entities for failure to exercise reasonable diligence to

16  comply with a mandatory duty imposed by an enactment.  In each instance wherein Hernandez

17  complained, he knew that the Authority's governing statutes prohibited the violations that the

18  Authority was engaged in, specifically in four projects that are specifically pled in the Complaint

19  and which are discussed further below.

20

21  **A. DISCRETIONARY ACTS BY THE AUTHORITY**

22

23       The Authority makes a blanket claim of governmental immunity as "the result of the

24  exercise of the discretion" vested in it. [Demurrer 5:15] In fact, the opposite is true.  Under

25  Government Code section 820.2 (except as otherwise provided by statute):

26       "The entity is not immune from liability when it is under a statutory obligation . . .
         or when the decision is a nondiscretionary, ministerial act."*Island Health Plan v.*
27       *Superior Court* (2003) 108 Cal.App.4th 588, 593

28

-5-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

9-149

1  Further, under Section 820.2:

2  "[i]mmunity is reserved for those '*basic policy decisions which have been [expressly]*
   *committed to coordinate branches of the government, and as to which judicial*
3  *interference would be thus 'unseemly'* . . . there is no basis for immunizing lower
   level decisions that merely implement a basic policy decision already formulated."
4  *Barnes v. Leeds* (2004) 24 Cal. 676, 685

5  The scope of discretionary immunity is limited to giving government policymakers room 'in

6  which to perform their vital policymaking functions.' When "[T]he California Legislature has not

7  clearly provided for discretionary act immunity . . . they remain subject to liability . . . until the

8  Legislature chooses to extend such immunity." *Id.* p. 682.

9       Defendant relies on an older case, *Caldwell v. Montoya* (1995) 10 Cal.4th 972, for legal

10  authority to support an argument regarding discretionary immunity. *Caldwell* involves a decision

11  by an elected school board to replace the school districts highest appointed official. It is not

12  factually relevant to this case, but even *Caldwell*, p.96, states that under Section 820.2

13  discretionary act immunity extends to 'basic' governmental policy decisions. It states:

14  ". . . [i]mmune discretionary acts distinguish between 'planning' and 'operational'
    functions of a government.' Thus immunity applies to "basic policy decisions" but
15  not to "ministerial" decisions that merely implement a basic policy already
    formulated." *Id.* p. 981.

16  In *Barnes,* supra, p. 685, the Supreme Court ruled that "For immunity to apply, the defendants

17  must show that the decisions in question are properly considered as "basic policy decisions"

18  made at the "planning " stage of [the entity's] operations," rather than "routine duties incident to

19  the normal operations" of the employee's office operation. The acts alleged in the Complaint do

20  not fit within the type of policy decisions that the Supreme Court determined would be immune

21  under the statute. The routine decision to investigate any report of allegations of ethics policy

22  violations may not be characterized as a "quasi-legislative policy-making [decision which] is

23  sufficiently sensitive" to call for judicial abstention from interference that "might . . . affect the

24  coordinate body's decision making process" of a coordinate branch of government. *Id.* p.685

25       Additionally, the Defendants argue that "immunity applies as well to claims for wrongful

26  discharge in violation of public policy and privacy claims." [Demurrer 8:12-16] N o t  s o

27  f a s t! The Supreme Court of California also took a look at that issue in *Stockett v. Association*

28

-6-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

9-150

1    *of California Water Agencies Joint Powers Ins. Authority* 34 Cal.4th 441 (2004) and found that

2    a dismissed government employee of a public agency is **not** precluded from asserting a claim for

3    wrongful termination under the Tort Claims Act (Gov. Code Section 810 et seq.). *Id.* p. 443.

4    While Defendants cite *Palmer v. Regents of University of California* 107 Cal.App.4th 899 as

5    further support for their argument, that case factually differs from this one in that it involves a

6    plaintiff who filed suit for wrongful termination without exhausting the required grievance

7    procedures at the University. That case supports Hernandez' claim for wrongful discharge,

8    "[B]ecause . . . Palmer had stated a common law cause of action for wrongful discharge in

9    violation of public policy, we do not hold the Regents is immune from her *Tameny* action under

10    section 815, subdivision (a) . . ." The court confirmed that "while the public policy violated in a

11    common law wrongful termination cause of action must be 'tethered to' a constitutional or

12    statutory provision, the cause of action itself . . . " is permitted. *Id.* p.910.

**III.**

**PLAINTIFF'S CLAIM FOR RETALIATION**

15    **A. PROTECTED DISCLOSURES**

16        The Plaintiff's Complaint is replete with factual allegations that show the disclosures that

17    he believed were unlawful violations of numerous activities by the Authority. [Complaint

18    paragraphs 11; 12; 13; 18; 28; 38; 39 ] Hernandez complained to his supervisor on a daily basis

19    about the unlawful activity the Authority was engaged in, and he complained in private meetings

20    both in committee meetings he was required to attend, and in management meetings and staff

21    meetings.

22        Time after time the plaintiff voiced his opposition to the unlawful acts that he believed

23    were violations of the governing statutes of the Authority, and finally with the last project he

24    oversaw, he complained about the violations of the San Diego County Regional Airport

25    Authority's Code of Contracting that is codified in the state's Code of Contracts. [Complaint

26    paragraph 40]

27        The plaintiff disclosed each and every one of his complaints about the Authority's acts

28    that gave him reasonable cause to believe that the Authority violated statutes and failed to

-7-

1  comply with statutes of the California Public Utilities Code and the California Contracts Code.

2  These disclosures were made exclusively to members of the Authority as he learned of them

3  while performing his job as a Director.  None of the information of which he complained was

4  made public information by the Authority prior to the plaintiff's disclosure of it to the Authority.

5  [Complaint paragraphs 3; 10; 11; 12; 13; 14] The information learned and disclosed by the

6  Plaintiff was accumulated through his direct involvement in the production of the development

7  plans for each of the four projects to which he voiced his serious opposition because he believed

8  the Authority was engaging in unlawful acts.  As a Director for the Authority and having direct

9  oversight for each of the four properties that are the subject of his disclosures, nothing happened

10  on any of those properties without his knowledge of it.  From project development to

11  environmental assessment, to cash flow analysis, the Plaintiff was involved in every step of the

12  operations, and all findings he disclosed were made prior to any public dissemination of the

13  information.

14      During the negotiations of the General Dynamics site the Plaintiff produced the revenue

15  and expense analysis for the property with historical, actual, and projected revenue streams:

16  along with possible short-term development options.  The same was done by him with the

17  acquisition of the Teledyne Ryan property.  With regard to the Lpi contract, the Plaintiff had

18  direct oversight and approval of the monthly profit and loss statements for the parking

19  operations.  And finally, with regard to the improvements to the Southwest Airlines restroom

20  facilities, the Plaintiff had an overarching responsibility to the traveling passengers to ensure

21  public safety and health standards were met.

22      The Plaintiff disclosed to members of the Authority that the refusal to annex space

23  needed to enlarge the women's restroom was in violation of the ADA. [Complaint 4:22-27-5:1-

24  13] The Authority's failure to follow an ADA regulation qualifies as a protected disclosure.  The

25  Plaintiff had a sound reasonable cause to believe he was reporting an unlawful.

26      The Plaintiff disclosed to members of the Authority that the terms of the General

27  Dynamics lease were improperly negotiated by the Authority and that the lease payments were

28  too expensive and out of line. [Complaint 5:14-27] The governing statutes of the California

-8-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

9-152

1  Public Utilities Code section 170056(f) requires that:

2     " . . .[t]he port shall agree to lease for a period of 66 years, commencing on January
      1, 2003, to the authority parcels 1, 2, and 3 of the property originally leased to General
3     Dynamics . . . consisting of approximately 89.75 acres west of the Pacific Highway . . .
      subject to the following terms:

4
      (1) The rent shall be paid monthly in arrears at the rate of four million seven hundred
5     thousand dollars ($4,700,000) for calendar year 2003, six million seven hundred
      thousand dollars ($6,700,000) for calendar year 2004, and eight million seven hundred
6     thousand dollars ($8,700.000) for calendar year 2005.  Thereafter the annual rent shall
      be level, for the balance of the term, *based on the fair market value of the property as
7     of January 1, 2006, and a market rate of return on that date.*

8     (2) The authority shall lease to the port the *same fair market value per square foot* a
      total of not to exceed 250 parking spaces . . .The parties shall first meet and confer to
9     determine by appraisal and negotiation, *the fair market value rent.*  If the authority and
      port do not reach agreement within 60 days after commencement of meetings for that
10    purpose, either party may submit the matter to binding arbitration in San Diego in
      accordance with the Commercial Arbitration Rules of the American Arbitration
11    Association.

12    (3) All other terms of the ground lease **shall be in accordance with reasonable
      commercial practice in the San Diego area for long-term real property ground
13    leases."**

14
   The Plaintiff's disclosure that the Authority was failing to follow the requirements of the
15
   California Public Utilities Code sections, of which all managing members of the Authority were
16
   presumed to be familiar with as the statutory scheme for its very existence, qualifies as protected
17
   disclosures.  The Plaintiff had more than a reasonable belief that he was reporting unlawful acts;
18
   he was certain of it.
19
           The Plaintiff also disclosed to members of the Authority that the terms of the Teledyne
20
   Ryan lease were improperly negotiated by the Authority and the failure of the Authority to
21
   properly inspect and analyze the contamination of the property resulted in an increase of
22
   monetary expenses by the Authority from $10 to $30 million dollars *after the lease was signed* to
23
   remediate the environmental contaminated and the unexpected severe limitation of the use of the
24
   property.  California Public Utilities Code section 170056(a)(1)(B) specifies that the property
25
   subleased by the port from Teledyne Ryan Aeronautical shall not be transferred and shall remain
26
   under the ownership and control of the port.  The Authority then leased 46.77 acres of that
27
   property to develop parking spaces to contribute revenue to the Authority.  Because of the
28

-9-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

9-153

1   contamination the restricted development would net the Authority only $500,000.00.  The

2   Plaintiff adamantly opposed paying the grossly overcharged rent for the land the Authority could

3   not use, and suggested pro-rating the rent for the useable land.  Once again, the terms of the

4   ground lease was not in accordance with reasonable commercial practice in the San Diego area

5   for long-term real property ground leases, as required by statute.  Once again, the Authority did

6   not meet and confer on the fair market value rent by submitting the matter to arbitration.  The

7   Authority did no environmental appraisal before signing the lease and should have sought to

8   arbitrate the fair market value rent after discovering the true cost of the remediation of the

9   contamination.  The Plaintiff's disclosures of the unlawful acts qualify as protected disclosures.

10         The Plaintiff then disclosed to members of the Authority that a contractor, Lindbergh

11  Parking, Inc. [Lpi] had submitted unattainable expense numbers in their contract bid to falsely

12  bolster their bid proposal.  The Plaintiff also disclosed that Lpi was double billing the Authority

13  for Workers Compensation insurance and had failed to competitively bid for renewal of the

14  insurance. [Complaint 7:18-27-8:1-2, 15-27-9:1-2, 25-27-10:1-5] The Plaintiff believed these

15  acts violated provisions of both the Authority's Contracting and Debarment Code, Article 5, Part

16  5.1, section 5.11 (a)(3)(4)(5)(6)(8) and section 5.18(a); and the California Public Contract Code

17  as defined in section 1100 and in violation of California Public Contract Code section 100(b).

18  The Plaintiff's disclosure that the Authority was failing to follow the provisions of these laws

19  and regulations qualify as protected disclosures.  The Plaintiff had reasonable cause to believe he

20  was reporting unlawful acts.

21  **B. THERE WAS NO 'REPUBLICATION' OF THE DISCLOSURES**

22         None of the information which Plaintiff learned during the course of his employment as a

23  Director of the Authority was public information .The Plaintiff disclosed each and every one of

24  his complaints about the Authority's acts that gave him reasonable cause to believe that the

25  Authority violated statutes and regulations and failed to comply with statutes and regulations

26  only to members of the Authority as he learned of them.  None of the acts of which the Plaintiff

27  complained was made public information by the Authority prior to the Plaintiff's disclosures to

28  the Authority.  The information learned and disclosed by the Plaintiff was accumulated by the

-10-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

9-154

1  Plaintiff through his direct involvement in the production of plans for each of the four projects

2  about which he complained.  The Defendant cites no factual or legal authority for its unfounded

3  claim that any of the information disclosed by the Plaintiff was in the public arena prior to the

4  disclosures made by him.

5  **C.     THE ETHICS INVESTIGATION IS RETALIATION**

6       Throughout the Plaintiff's experience as a Director for the Authority it had always been

7  common practice to provide an employee full disclosure of any and all allegations to be

8  investigated.  After disclosure of the allegations, the employee was then walked through the steps

9  that would be taken in the investigation and given an option as to possible outcomes.  The

10  Plaintiff was never told what he was being "accused" of doing; he was never afforded an

11  opportunity to refute any allegations; the parties charged with the initial investigation cannot be

12  charged as being fair and impartial (among other reasons they their fees were paid by the

13  Authority); the Authority did not follow its own investigatory policy; did not provide for a final

14  evidentiary disclosure or determination hearing by an impartial investigatory party, but by a Vice

15  President of Operations who had consistently violated the Ethics Code and policy himself; and

16  finally, the investigation concluded that any allegations of quid pro quo were unsubstantiated and

17  could never be substantiated because nothing of that nature ever occurred.  It cannot be construed

18  that the Plaintiff had ever accepted any gifts or goods as additional compensation received in

19  addition to his salary and benefits.  Plaintiff never, at any time, did anything in return for

20  something else throughout his entire employment with the Authority.

21       It has always been the practice of the Authority to follow its own progressive discipline

22  policy, including the following steps: (step 1) verbal warning; (step 2) written warning; (step 3)

23  final written warning; (step 4) notice of suspension; and (step 5) notice of intention to terminate.

24  At no point did any of the Plaintiff's actions warrant the failure to follow any of these steps.

25  Prior to this action, he had always received exemplary performance evaluations, numerous letters

26  of commendation and had never been the subject of disciplinary action. [Complaint paragraph 7 ]

27  On the day the Plaintiff was removed from his office he was at no time asked if the allegations

28  (whatever they were) were true, or if he even knew anything about them.  The decision to

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

1  "investigate" had already been made by Bowens, the CEO and a major violator of the Ethics

2  Code and policy herself, even though there were no specific allegations to investigate.

3  [Complaint paragraphs 23; 27; 40] If there had been specific allegations to investigate the

4  investigators would have presented them to the Plaintiff to get his response. They did not present

5  them because they did not need his response. Bowens' intent was to get rid of the Plaintiff.

6  When the protected disclosures began to be made about LPI, it hit too close to home for Bowens:

7  her best friend is the lobbyist for LPI and they are constantly seen together, lunching and

8  conversing.

9        The decision to investigate the Plaintiff was made by Bowens and it was an arbitrary and

10  capricious decision that was an ultra vires act that took her decision to investigate outside the

11  scope of the Authority's enabling jurisdictional statute. Her behavior is not discretionary,

12  whether abusive or not. Defendant's demurrer correctly asserts that "Plaintiff's complaint

13  focuses entirely on the motives of the Authority in initiating an investigation against him."

14  [Demurrer 6:16-17] The Complaint shows that the Plaintiff did not "accept free goods and

15  services from Authority vendors", did not accept "free roundtrip tickets to Hawaii," did not

16  accept "tickets to football and baseball games" and did not accept "free parking passes." Each of

17  those contentions is untrue.

18        Further, the Plaintiff did not "resign" "after the Authority informed him of its

19  conclusions." Ted Sexton, the Authority's Vice President and a continuous violator of the

20  Authority's Ethics Code (who was also the Plaintiff's supervisor) fired the Plaintiff and

21  instructed him he could not leave the room until he signed the resignation papers.

22  **C. THE RIGHT TO PRIVACY BY INTRUSION**

23        California Government Code section 815.2 (a) provides that a public entity is liable for

24  injury proximately caused by an act or omission of an employee . . . if the act or omission would,

25  apart from this section, have given rise to the action against the employee. Article I, section 1 of

26  the California constitution guarantees every citizen of the state, including this plaintiff, a right to

27  privacy. This constitutional right cannot be deprived due to a governmental immunity statute.

28  "[A] plaintiff alleging an invasion of privacy in violation of the state constitutional right to

-12-

1  privacy must establish each of the following: (1) a legally protected privacy interest (2) a

2  reasonable expectation of privacy in the circumstances; and (3) conduct by Defendant

3  constituting a serious invasion of privacy. *California Consumer Health Care Council v. Kaiser*

4  *Foundation Health Plan, Inc.* 072506 CCAPP1, A108697 The court must assume the truth of

5  the facts alleged in the Complaint, facts that can be reasonably inferred from those expressly

6  pleaded, and facts of which judicial notice can be taken. *Schifando v. City of Los Angeles*

7  (2003) 31 Ca.4th 1074, 1081 This means that the court must assume the truth of the following

8  facts in the Complaint:

9     1. Thella Bowens hired an attorney from LUCE FORWARD and he hired an

10 investigator to supposedly look into "allegations" of violations of the Ethics policy and Code by the Plaintiff.

11     2. There is nothing in either the Ethics policy or the Ethics Code of the Authority that invites intrusion into the private life of the Plaintiff, including "investigating" anything in regard to his marriage, has nothing to do with his job duties, his job position or any

12 matter that is of any concern to the Authority or to Thella Bowens personally.

13     3. The attorney from LUCE FORWARD hired by Thella Bowens and the investigator hired by the attorney from LUCE FORWARD are both subject to the Authority's Ethics policies and to the Ethics Code of the Authority, as both were hired by Thella

14 Bowens on behalf of the Authority as consultants to her and the officers of the Authority with whom she shared the decision-making of the "investigation."

15     4. In addition, Thella Bowens and all of those with whom she shared the "investigation" responsibilities were and are charged with knowledge of the Ethics policies and Ethics

16 Code of the Authority and as so charged knowingly with the actions of intrusion committed by them individually and in the dual capacity of their job duties on behalf of

17 the Authority.

    5. The Plaintiff had a reasonable expectation of privacy in regard to his marriage.

18     6. The interrogation of witnesses as to their observations, personal knowledge or opinions regarding the Plaintiff's marriage, including communication within his

19 marriage, the manner of communication between the Plaintiff and his wife, the appearance of the marriage to outsiders, and any other matters that the attorney for

20 LUCE FORWARD and his hired investigator made regarding the Plaintiff's marriage from witnesses who were being interviewed regarding an "investigation" whose subject

21 matter had not been revealed to the Plaintiff was intentionally intruded into by the hired help of the Authority.

22     7. The intrusion of the Authority's "consultants" and the stated discussion regarding the findings of the 'consultants' with the Authority management on a regular basis that

23 included findings of the interrogation of witnesses on the subject of the Plaintiff's marriage was highly offensive to the Plaintiff and would be highly offensive to a

24 reasonable person.

25  No government employee, of the Authority or of any arm of any government, should be subjected

26  to their marriage being investigated by a hired lawyer or investigator being paid by the

27  government. It is unconsionable, inexcusable and beyond comprehension why the Authority

28  would be permitted to spend public money for such despicable conduct.

-13-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

8.  The investigator hired by the attorney from LUCE FORWARD also intruded into the Plaintiff's privacy by coercing the owner of the car repair shop (where the Plaintiff had his car repaired) to hand over copies of car repair records and invoices showing payment of the car repairs.
9.  The owner immediately contacted the Plaintiff to explain that the investigator told him he was hired by the Authority to look into the Plaintiff's records and threatened him with legal proceedings if he did not immediately turn over the records to him.
10.  The owner protested and opposed the demand but was coerced into providing the records by the investigator.
11.  Neither the Authority, the attorney for LUCE FORWARD or the investigator had sought permission from the Plaintiff to obtain or look at those private records.
12.  The Plaintiff was furious at the intrusion into his private affairs without his knowledge or permission.
13.  Given the instruction that he could not tell the owner what the circumstances of the invasion into his privacy meant, the Plaintiff was further denied the opportunity to defend himself from the invasion or explain the reason why the investigator had committed this act of intrusion.
14.  Once again, the Plaintiff was left in a position of not knowing himself the reason for the 'investigation' and the embarrassment that this investigator could act to further leave the Plaintiff in another position of looking like he had done something wrong when had not.
15.  The Plaintiff had a reasonable expectation of privacy in regard to his private vehicle and its repair documents and invoices.
16.  The intentional intrusion and false statements used by the investigator to obtain the Plaintiff's private records were highly offensive to him and would highly offensive to a reasonable person.

The state law in California provides a statutory notice must be given to a consumer before any consumer records are obtained . The acts of the Authority's investigator, and particularly by an investigator being supervised by an attorney, in obtaining the Plaintiff's records by coercion are unlawful acts.  It is an outrageous invasion to seek his private vehicle repair records that have absolutely nothing to do with the Plaintiff's employment, his job position, his job duties or anything remotely connected to his employment.  These records belonged to a car repair business that did private vehicle repairs convenient to the airport.  It is indicative of a fishing expedition to find some wrongdoing by the Plaintiff at all costs and is outrageous and intolerable conduct that no government employee or private employee should be subjected to by an employer.

**D.  LEAVE TO AMEND**

This Complaint contains factual allegations sufficient to give this Defendant notice as to the issues of the action.  It does not contain every single fact known to the Plaintiff, but enough facts so that the Defendant is fully aware that the issues are the disclosures the Plaintiff made that are protected under Labor Code section 1102, and that he suffered retaliation for reporting them.

-14-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

9-158

1  Additionally, the Complaint contains facts that support the investigation conducted by the

2  Authority were capricious and arbitrary, and retaliatory and that none of the acts are subject to

3  immunity.  None of the allegations in the Complaint are frivolous, they are factual.  Additionally,

4  "Ordinarily, it is an abuse of discretion to sustain a general demurrer to a complaint without leave

5  to amend if there is a reasonable possibility the defect in the complaint can be cured by

6  amendment .*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1830  In the interest of

7  seeking to clarify the Defendant's concerns that it requires a more certain statement of the

8  allegations and legal theories the Plaintiff has attached a First Amended Complaint.

9                                            **IV.**

10                                    **CONCLUSION**

11          For the foregoing reasons, the Plaintiff respectfully requests that this court deny the

12  Authority's demurrer to all causes of action in the complaint.  In the alternative, the Plaintiff

13  respectfully requests that the court deny the Authority's motion to strike allegations from the

14  complaint for the reasons stated in the accompanying response and opposition to that motion.

15

16  Dated: December 8, 2006

17                                          CATHRYN CHINN, Attorney for
                                            Plaintiff José Hernandez

18

19

20

21

22

23

24

25

26

27

28

-15-

**EXHIBIT 10**

*Personally Served 12-11*

1  CATHRYN CHINN, ESQ. #93340
   3990 Old Town Avenue, Ste. A109
2  San Diego, California 92110
   Telephone: 619-295-4190
3
   Attorney for Plaintiff
4       JOSE HERNANDEZ

5

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                    FOR THE COUNTY OF SAN DIEGO

8

9  _____

10 JOSE HERNANDEZ,                    ) Case No.  GIC 871979
                                      )
11         Plaintiff,                 ) **PLAINTIFF'S OPPOSITION TO**
                                      ) **DEFENDANT SAN DIEGO COUNTY**
12    .v.                             ) **REGIONAL AIRPORT AUTHORITY'S**
                                      ) **MOTION TO STRIKE**
13 SAN DIEGO COUNTY REGIONAL          )
   AIRPORT AUTHORITY, a public entity;) _____
14 and DOES 1 through 10, inclusive,  )
                                      ) Date:       December 22, 2006
15         Defendants.                ) Time:       1:30 p.m.
                                      ) Dept:       71
16                                    ) Judge:      Hon. Richard E. Strauss
                                      ) Complaint Filed: September 1, 2006
17                                    ) Trial Date:  None Set
                                      )
18                                    )
                                      )
19 _____

20

21

22

23

24

25

26

27

28

                                -1-
   PLAINTIFF'S .OPPOSITION TO DEFENDANTS  MOTION TO STRIKE........

                                                          **10-160**



1   Defendant San Diego County Regional Airport Authority has submitted a "Table of Allegations

2   to Be Stricken from the Complaint." The Table contains repetitive, duplicative legal grounds for

3   their basis for asking the court to strike certain allegations made in the complaint. These grounds

4   are as follows:

5   1.      "Improper and irrelevant allegations" that state that "The Authority's Ethics Code is not a

6           state or federal law, rule or regulation" should be denied.

7   The Authority's implementation of the Ethics Code is permitted as an enabling regulation under

8   the state statute found in the California Public Utilities Code, section 170000 et seq. There is no

9   other jurisdiction for the Ethics Code. All demands requested to be stricken on this basis should

10  be denied.

11  2.      "Local rules and internal regulations do not support a cause of action under Labor Code

12          section 1102.5, because they are not *state or federal laws*, rules or regulations":

13  The Authority's implementation of the Ethics Code is permitted as an enabling regulation under

14  the state statute found in the California Public Utilities Code, section 170000 et seq. There is no

15  other jurisdiction for the Ethics Code. All demands requested to be stricken on this basis should

16  be denied.

17  3.      "Plaintiff could not have had a reasonable belief that . . . violated a federal or state law

18          because":

19  The Plaintiff formed reasonable cause to believe that the governing statute of the Authority found

20  in California Public Utilities Code section 170000 et seq. was being repeatedly violated by the

21  actions of the Authority. The Plaintiff was very familiar with the content and requirements of the

22  Statute because he referred to its constantly in his work as a Director of the Authority.

23  4.      "A republication of publicly known information or findings does not support a Labor

24          Code section 1102.5 claim":

25  At the time the Plaintiff made his disclosures that he believed the Authority's activities were

26  violative of the governing statute of the Authority none of the information contained in the

27  disclosures were available to the public.

28  5.      "The Authority is immune from its actions . . .":

-2-

PLAINTIFF'S OPPOSITION TO DEFENDANTS MOTION TO STRIKE........

**10-161**

1   There is no immunity for the Authority's actions under California Government Code sections

2   820.2

3   6.      "Questioning third party witnesses regarding their observations of plaintiff and his wife is

4           not an unreasonable invasion into plaintiff's privacy":

5   Under California Government Code section 815.2(a) and the California constitution, Article I,

6   section 1, the Plaintiff, as a government employee, is protected from the Authority subjecting

7   him to having his marriage investigated by a paid investigator from the government.

8   7.      "Plaintiff has not set forth any violation of the Ethics Code":

9   The complaint is replete with references to the numerous violations of the Ethics Code by the

10  CEO of the Authority, the Vice Presidents of the Authority and the General Counsel of the

11  Authority. The existence of the Ethics Code was a sham. It was not followed, it was not applied

12  and it was not enforced by the Authority until the Authority decided to use it for the purpose of

13  finding a reason to terminate the Plaintiff.

14  8.      "Plaintiff has not sufficiently alleged that he refused to perform an activity that would

15          result in a violation of state or federal law";

16  There is no allegation because that is not one of the allegations that the plaintiff makes in the

17  complaint.

18  9.      "Plaintiff may not maintain a private right of action under the Ethics Code":

19  Plaintiff has not alleged a private right of action under the Ethics Code. Plaintiff has alleged that

20  the "investigation" by Thella Bowens and the two "investigators" she hired was an arbitrary and

21  capricious decision that renders it an ultra vires act outside the scope of the Authority's enabling

22  statute, and is an operative and routine act that takes it outside of the immunity statutes. The

23  decision to investigate was a retaliatory act directed at the plaintiff for his protected disclosures.

24          This opposition to the Motion to Strike is based on this response, the opposition to the

25  Plaintiff's demurrer, the entire file in this case, and any other evidence or argument properly

26  considered by the court in connection with this motion.

27  Dated: December 8, 2006

28                                          CATHRYN CHINN,
                                            Attorney for plaintiff Jose Hernandez

-3-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS MOTION TO STRIKE........

**EXHIBIT 11**

1   CATHRYN CHINN, ESQ. #93340
    3990 Old Town Avenue, Ste. A109
2   San Diego, California 92110
    Telephone: (619) 295-4190
3

    Attorney for Plaintiff
4        JOSE HERNANDEZ

5

6        SUPERIOR COURT OF THE STATE OF CALIFORNIA

7              FOR THE COUNTY OF SAN DIEGO

8   _____

9   JOSE HERNANDEZ,                    ) Case No.
                                       )
10              Plaintiff,             ) **FIRST AMENDED COMPLAINT**
                                       )
11       v.                            ) VIOLATION OF CALIFORNIA LABOR
                                       ) CODE SECTION 1102.5, et seq.;
12                                     ) VIOLATION OF CALIFORNIA PUBLIC
                                       ) UTILITIES CODE 170000, et seq.;
13  SAN DIEGO COUNTY                   ) VIOLATION OF SAN DIEGO COUNTY
    REGIONAL AIRPORT AUTHORITY,        ) REGIONAL AIRPORT AUTHORITY
14  a public entity: and DOES 1 through) CODE OF ETHICS SECTION 1.0 et seq;
    20, inclusive.                     ) INTRUSION OF RIGHT TO PRIVACY;
15                                     ) WRONGFUL DISCHARGE
                Defendants.            )
16  _____

17                              I

18              FACTS COMMON TO ALL CAUSES OF ACTION

19                      (Against All Defendants)

20  1.      All the events herein alleged occurred within the County of San Diego, State of

21  California.  Plaintiff is a resident of the County of San Diego, State of California and was

22  employed by the San Diego County Regional Airport Authority at the time of the events

23  herein alleged.  The defendant SAN DIEGO COUNTY REGIONAL AIRPORT

24  AUTHORITY (hereafter "AUTHORITY") is, and at all  material times herein was, a

25  public entity created by state law pursuant to the California Public Utilities Code Section

26  170000, et seq., Division 17, Chapter 1, Chapter 2, Chapter 3 to operate the San Diego

27  International Airport (Lindbergh Field) and is an  entity charged by law as the employer

28  of the staff members of the AUTHORITY and is duly organized and existing under the

laws of the State of California. Under California Public Utilities Code Section 170032 et seq. the AUTHORITY may be sued in all actions and proceedings in all courts of competent jurisdiction.

2.      The AUTHORITY is responsible for public health and safety surrounding the San Diego Airport, including airport land development and charged with minimizing "the public's exposure to excessive safety hazards around airports." The AUTHORITY'S management and budget of $113.8 million is overseen by the AUTHORITY'S President/CEO Thella Bowens (Doe No.1). Bowens reports to a Board of Directors and her employment is approved by the San Diego Port District.

3.      The Plaintiff JOSE HERNANDEZ began employment at the San Diego County Regional Airport Authority in March 2001 as Manager, Ground Transportation and was then promoted to Director, Landside Operations.. In this position Plaintiff managed the operations of the airport terminal buildings, the parking lots, the ground transportation services and provided "expert assistance in the planning and long-range business decision making for managing the airport's facilities." Plaintiff reported to the Vice President, Airport Operations, who had managerial responsibility for all aspects of airport operations. Plaintiff was specifically required to make decisions "in operating the parking facilities to ensure the highest levels of efficiency [and] economic advantage." Plaintiff was also required to represent the Authority in dealing with tenants and contractors.

4.      Plaintiff does not know the true names or capacities (whether individual or other wise) of defendants DOES 2 through 20) and will amend this pleading when their true identities have been ascertained.

5.      All defendants were the agents and employees of each other and performed the acts alleged in this complaint in the course and scope of their agency and employment with the consent and direction of the other; and in dual capacity as individuals, subjecting Plaintiff to, but not limited to, acts of harm, harassment and hostility.

6.      This action arises under the provisions of the California Labor Code Sections

2

**11-164**

1102.5 to 1102.8 et seq.; California Public Utilities Code Section 170000, et seq. as well as the San Diego County Regional Airport Authority's Code of Ethics and the Conflicts of Interest Code, Article 1, Part 1.1, Section 1.17(a);  Article 2, Parts 2.0 to 2.30; Article 3, Part 3.0, Section 3.01; Article 5, Part 5.1. Sections 5.10 to 5.18; San Diego County Regional Airport Authority Policies, Article 2, Part 2.0, Section 2.01 (1)(a)(b)(2) et seq.; California Public Contracts Code Section 100 et seq.

7.      Plaintiff was an outstanding employee who always performed at levels above and beyond what could normally be asked of an employee.  Plaintiff's performance was greatly praised by staff members, Board members and individuals from external agencies. The Vice President of Airport Operations stated that the number of employees performing at the Plaintiff's level could be "counted on one hand with several fingers left over." Plaintiff consistently and constantly reported on a daily basis to this Vice President all actions and events he was involved in, and withheld no information regarding his own activities, viewpoints, opinions and observance of the activities of other employees, including management.  Plaintiff has never been criticized or disciplined for anything during his employment with the Authority until the events of December 2005 that led to his improper termination from the Authority in February 2006.

### FIRST CAUSE OF ACTION

### Violation of California Labor Code Section 1102.5  et seq.

Retaliation for Protected Disclosure

(Against All Defendants).

8.      Plaintiff incorporates paragraphs 1 through 7 of the Facts Common to All Causes of Action as though fully set forth herein.

9.      Within the Airport Authority there was tension between the two operating divisions: the Operations Division headed by the Vice President to whom Plaintiff reported that was responsible for Airside, Terminal, and Parking/Ground Transportation; and the Real Estate and Capitol Development Division headed by Vice President

3

**11-165**

1    Bryan Enarson.  There were two distinct camps: Operations was primarily driven to

2    respond to the Authority's airline tenants and airport guests; while Enarson's Real

3    Estate/Capital Development was driven by his need for bureaucracy that prolonged

4    project completion times and substantially increased project expenses.  Enarson had

5    ingratiated himself to Bowens and set himself up as her close advisor.  Bowens comes

6    from a background as a budget analyst and is not considered a good public speaker or as a

7    comfortable public spokesperson for the Authority.  She looked to Enarson on a daily

8    basis as a confidante and leaned on him as her closest ally.  Enarson had Bowen's ear and

9    had not only constant access but also constant influence on Bowen.  The tension between

10   Enarson and the Vice President of Airport Operations began to involve Plaintiff and

11   escalated after Enarson's Real Estate/Capital Development received insufferable ratings

12   on the Airport's commissioned Tenant/Customer Satisfaction Survey.  Instead of focusing

13   efforts on improving the areas that were weakest, Enarson chose to take a proactive

14   approach to diminish the accomplishments of the Operations Division.  Enarson began to

15   insert himself in areas that were not his responsibility such as taking Bowens on walk-

16   throughs of the terminal buildings without the presence of a member from the Operations

17   Division to point out what displeased him and sought to take credit for Operations

18   initiating projects that were not his initiatives and were not pushed forward by him.

19   While Enarson's team was involved in the projects such as Flight Display Upgrades and

20   Security Check Point Reconfiguration the projects were driven by the Operations

21   Division, and not by Enarson.  Enarson began escalating his obstruction of development

22   projects.

23   10.      With space at a premium in the airport, the airport's redevelopment plan included

24   development of an overall concessions plan.  Enarson had received unacceptable ratings

25   on the concessions program which he oversaw as Vice President.  In the past, Enarson's

26   Development Division had simply taken space, but now resisted and refused to negotiate

27   space needed to improve the women's restroom.  The improvement plans had been in the

28   works for over five years and called for a removal of approximately 30 square feet from

4

1  the news and gift stand belonging to Host. In the process it was revealed that Enarson

2  had entered into side deals with a handshake agreement with Host that restricted the

3  Operations Division's ability to annex the space which was needed to comply with ADA

4  requirements. The Plaintiff had reasonable cause to believe that the Authority was in

5  violation of the federal American Disabilities Act and its enabling regulations. Because

6  Enarson refused to either take the space away from Host or renegotiate with them, major

7  modifications had to be made that increased the project budget by over $2 million.

8  During the long delays women were forced to endure the long lines to use the restrooms.

9  There was no access for the disabled to the restroom for which the Plaintiff also had

10  reasonable cause to believe that the Authority was in violation of the equal access

11  provision and regulation of the ADA.

12  11.   The Plaintiff disclosed to members of the Authority Enarson's "side deal" made

13  with out negotiation that restricted the Authority's ability to annex the space needed to

14  comply with ADA requirements for the airport restroom. Plaintiff also disclosed that

15  Enarson's refusal had increased the project budget by over $2 million. On both counts,

16  Plaintiff believed that he was disclosing legal violations: violations of the ADA

17  requirements and also disclosing the unauthorized use of public assets because Enarson

18  had a "handshake" deal. The project suffered over three (3) years of delays due to

19  Enarson's conflict with the airport's food and beverage concessionaire.

20  12.   The General Dynamics property is approximately 85 acres and sits along Pacific

21  Coast Highway on the north side of the airport. The property contains a 1,600 parking

22  stall long term parking lot (SAN Park Pacific Highway), and provides for Convention

23  Center truck staging, rental car storage, and Cruise Ship truck staging. The terms of the

24  original three year lease called for rent of $4.6 million year one, $6.6 million year two,

25  and $8.6 million year three. Enarson was the lead negotiator on the lease. When Plaintiff

26  compared the revenue potential of the approximately $3 million net from the parking

27  operation and $1 million from the vehicle storage, the lease payments were too expensive

28  and out of line. Plaintiff disclosed that the increased lease payments pulled funds away

5

1   from the operating budget and he believed it was an unauthorized use of the Authority

2   funds. Plaintiff also believed the failure to negotiate the lease properly was a violation of

3   law and contrary to public interest. The Plaintiff had reasonable cause to believe that this

4   failure and other actions related to the lease were unlawful acts that violated California

5   Public Utilities Code section 170056 (f)(1)(2)(3) Plaintiff had reasonable cause to

6   believe that the terms of the lease were in violation of the California Public Utilities Code

7   section 1700056(f)(3). Despite the Plaintiff's objections to the actual revenue streams,

8   Enarson decided the matter would go up to the Vice President level, where it died and no

9   corrective action was taken. The lease was signed contrary to the objections of true forms

10  of revenue streams.

11  13.    The Authority's Teledyne Ryan property lease calls for $3 million in annual

12  payments for the 46.77 acre property, located immediately east of the airport along

13  Harbor Drive. At the time the lease was negotiated, with Enarson as the lead negotiator,

14  contamination of the property allegedly required approximately $10 million. The failure

15  to properly inspect and analyze the actual contamination resulted in a finding that the

16  contamination remediation range would be approximately $30 million and would limit

17  the use of the property to the existing 350 space long term parking lot (SAN Park Harbor

18  Drive). Current revenues derived from the parking lot are approximately $1.2 million a

19  year with about $700,000.00 in expenses, netting the Authority only $500,000.00. The

20  original plan for the property was to phase in the parking development from what is now

21  Phase I, 350 parking stalls, to Phase 2, approximately 1,300 stalls. If the project had

22  stayed as planned the property would now be developed and be positioned to take

23  advantage of the increasing occupancy levels in the market. When the development

24  process began the discovery of the deep environmental concerns with the property, which

25  were not previously disclosed before Enarson completed the negotiations for the lease,

26  significantly curtailed the purpose of the lease because of the unusable areas. Plaintiff

27  disclosed the findings that there was no way to open Phase 2 of the parking development

28  and also disclosed the enormous amount of money the Authority was paying for the lease.

6

The Plaintiff believed that these acts by the Authority were unlawful and in violation of California Public Utilities Code section 170056(a)(1)(B). Further, the Plaintiff's disclosure of the unlawful acts occurred at committee meetings closed to the public, at management and staff meetings closed to the public. Plaintiff asked the Authority members, including Enarson, "Why are we paying all this money? Why are we paying the rent?" Enarson replied, "We're obligated to pay the rent." Plaintiff stated that "we can use a little bit, 351 parking stalls, yet we're paying $3 million and we can't use any of the rest. We're on the hook for the $30 million. We should only pay a pro rata amount." Enarson's response was that it would get pushed up to the Vice President group. When the Teledyne Ryan transition team, of which the Plaintiff was a member, re-briefed the Vice Presidents, at a second meeting, the members and officers were in awe, and asked, "Are you sure it's $30 million? Are you kidding me?" Enarson was agitated and Plaintiff received reports that Enarson was angry.

14.    In January 2004 Lindbergh Parking (hereafter "LPi") was awarded a new five (5) year service agreement for the management of the airports' employee and public parking lots. Services included the management of the airport's inter-terminal, "Red Bus" and the Employee shuttle service, as well as the taxicab and shuttle-for-hire dispatch system. The total operating budget is approximately $8 million. Although the Request for Proposal process was highly contested LPi was the preferred candidate largely because of its' lower operating expenses. The contract commenced on February 1, 2004. There were immediate disagreements with the operator because of contractual requirements. As a key component of the shuttle service, the operator was to provide new vehicles at the beginning of the agreement and change them over every 2 ½ years. The vehicles did not arrive until four months later. During these four months, the operator was able to make a substantial amount of profit because they did not have to make monthly lease payments for the vehicles since they had already been paid off. The fleet consisted of six (6) employee, three (3) Red Bus vehicles, and two (2) interchangeable shuttles. The average lease of a vehicle was $1,650.00 per month and amounted to approximately $18,150.00

7

1  per month in extra profit for the operators.  Their contract provided for an hourly

2  reimbursable for operating hours plus fuel expense.  No vehicle lease cost meant more

3  profit.  These difficulties were chalked up as operational issues and the Authority moved

4  on.

5         During the Request for Proposal process Lpi had indicated they could operate the

6  long term parking lot, SAN Park Pacific Highway, 1,600 parking stalls along Pacific

7  Highway, for approximately $1.3 million annually.  As the operating numbers began to

8  appear the actual expenses were projected at $1.7 million annually, higher than the

9  previous operator.  Expense projections for the other Authority parking properties

10  projected similar increases.  I t was clear that LPI purposely submitted unattainable

11  expense numbers in order to bolster their proposal.  The Plaintiff had reasonable cause to

12  believe that he was disclosing unlawful violations of both the Authority's Contract Code

13  and the California Code of Contracts section 100.  Although unhappy with the operator

   the Plaintiff had no choice but to work with the operator to control expenses.

14         Maurice Grey is the President of LPI.  Plaintiff made it clear to Grey that he

15  wanted to see the Liability and Workers Compensation Coverage for the parking service

16  competitively bid for renewal.  On the day before the existing coverage was set to expire

17  Grey presented Plaintiff with a premium scale which far exceed expense projections.

18  Plaintiff met with Grey and stressed to him that he needed to go through in detail all of

19  the operating expenses and analyze each of the employee job positions, including Grey's.

20  As part of the process Plaintiff asked Grey to prepare a job description of his own job and

21  the jobs of each of his managers.  All of them were interviewed to get a good

22  understanding of their duties.  The process determined that most, if not all, of the duties

23  claimed by Grey were actually performed by others.  Plaintiff explained to Grey that he

24  needed to be able to justify continuing paying his salary and that on paper, the salary was

25  not justified.  Plaintiff informed Grey he would give him three months, until the end of

26  summer, to show his job duties that would justify the pay and if not he would have to go.

27  Subsequently, Grey's management skills resulted in his expenses being out of control, he

28

8

1  failed to hire proper personnel, and he could not properly bid items.  Again Plaintiff

2  extended Grey's deadline to substantiate his job worth until the end of the year,

3  December 31, 2005.  The Plaintiff's disclosures of the Authority's failure to follow the

4  California Code of Contracts, section 100 were protected disclosures that the Plaintiff had

5  reasonable cause to believe were unlawful, and also were in violation of the Authority's

6  Contract Code.  The Plaintiff worked under the requirements of both of these laws in his

7  position as a Director, and expected the Authority to comply with each and every one of

8  the Code requirements and regulations.

9        Plaintiff then discovered that LPI was double billing the Authority for Workers

10  Compensation Insurance.  He had noted that the premiums were running twice the

11  amount of the previous year and were being billed to a different expense category.  As a

12  result Plaintiff posted a credit of approximately $150,000.00 against LPI's monthly

13  request for reimbursement.  Plaintiff had communicated throughout the process and

14  disclosed LPI's wrongdoing and financial misuse issues  with his direct supervisor, the

15  Vice President of Airport Operations.  The Vice President asked Plaintiff to work out the

16  issues with Grey because he was a Minority Owned Business and the Authority needed

17  the relationship in order to comply with FAA regulations governing Minority

18  participation.  Plaintiff had disclosed computational or other errors in LPI's bid

19  submission; the unsatisfactory performance of the contract; the failure of LPI to submit

20  insurance documents acceptable to the Authority; Grey's unjustified refusal to warrant his

21  performance and other offenses and actions that indicated a lack of business integrity by

22  LPI.  Plaintiff believed that disclosures he made pursuant to the contract contained

23  violations of the Ethics Code and also of rules and regulations of law.

24  15.      On or about July 11, 2006 Plaintiff filed his San Diego County Regional Airport

25  Authority Damage Claim Form alleging the incidents of disclosure contained above

26  herein and for the retaliation he suffered based on the disclosures of legal violations

27  described above.  On or about August 1, 2006 defendant AUTHORITY denied Plaintiff's

28  claim.

9

16.    California Labor Code Section 1102.5 is intended to encourage employees to report legal violations or a refusal to participate in such violations. Plaintiff in good faith reported, disclosed, divulged and brought to the attention of his employer facts and information relative to both suspected and actual violations of law directly related to his job. Plaintiff observed improper governmental activity by employees of the San Diego County Regional Airport Authority undertaken in the performance of the employees' official duties that demonstrated economic waste, incompetency and inefficiency in a government agency. Under California Labor Code Section 1102.5 ( c) an employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of a state or federal statute, or a violation or noncompliance with a state or federal rule or regulation. Further, under California Labor Code Section 1102.5 (b) an employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of noncompliance with a state or federal rule or regulation. Under California Labor Code Section 1102.5 (e) a report made by an employee of a government agency to his employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b).

17.    By September 2005 an Authority Internal Audit of parking management operating expenses had determined that Lpi had double-billed the Authority for Workers Compensation Insurance for a total of four (4) months.

18.    By October 2005 the Plaintiff had met with the Vice President of Operations to inform the Vice President of Operations of the status of LPI's non-compliance and areas of deficiencies and to obtain agreement that Maurice Gray would step down as President of LPI should he not be able to comply with the standards and improve the deficiencies and clarify his job duties for his position. Pursuant to the California Code of Contracts section 1100, the Authority was required to comply with the California Code of Contracts, section 100(b), which the Plaintiff had reasonable cause to believe was being

10

**11-172**

violated by the Authority. The Authority's Contracts Code, Article 5, sections

5.11(a)(3)(4)(5)(6)(8) and section 5.18(a) were also a basis for the Plaintiff to have

reasonable cause of violation by the Authority. The Plaintiff regularly worked with these

Codes and regulations and expected the Authority to follow them.

19.    By November 2005 the Vice President to whom the Plaintiff reported was well

aware that the Plaintiff would be leaving early in December for a planned vacation out of

state. On the late afternoon of December 1, 2005 the Plaintiff met with the Vice

President of Operations to see if there were any matters that needed to be attended to

before the start of his vacation. The Vice President of Operations advised the Plaintiff

that talks of "reorganization" had "resurfaced" but that final outcome of any

"reorganization" would be determined by Thella Bowens (Doe No. 1) and the Authority

Administration.

20.    On December 6, 2005 while on vacation the Plaintiff received a telephone call

from the Vice President of Operations, who was clearly upset, and who informed him of

the specifics of the plan of the reorganization. Both the responsibilities of the Vice

President and those of the Plaintiff were severely diminished. Over two-thirds of the

Authority employees had reported to the Vice President's office: now he had been

reassigned Chief of Staff for Thella Bowens (Doe No.1) even though no one reported

to him in that assignment.. He was permitted to keep the title of Vice President. .

21.    Vice President Bryan Enarson had convinced Thella Bowens (Doe No. 1) to

relieve him from the problems he had created as the Vice President of Development

(including the unresolved monetary havoc he had negotiated with the properties of

Jim's Air, General Dynamics, and Teledyne Ryan) and reposition him in a position with

Terminal Operations and other responsibilities.

22.    On December 7, 2005 the Plaintiff participated in a single telephone conference

call to discuss the Authority's reorganization specific to Parking and Ground

Transportation. The Authority no longer has a person with expertise managing those

positions. On December 8, 2005 all Authority employees were informed by e-mail that

11

1  the reorganization would take effect on January 3, 2006.

2  23.    On December 14, 2005 the Plaintiff was requested to attend a meeting with two

3  individuals, an attorney with LUCE FORWARD and an investigator hired by LUCE

4  FORWARD.  Neither of the individuals informed the Plaintiff of what the purpose of

5  their meeting was with the Plaintiff.  The attorney asked a number of vague and a

6  number of specific questions, interviewing the Plaintiff and asking him if he had

7  requested or taken personal gifts from any company at the airport (No); if he had

8  requested airline tickets from any airline (No); if he had requested first-class

9  upgrades from airlines (No); if he had attended a wedding in Jacksonville, Florida (No);

10  if he had received money from an airport vender (Never) and if he knew of other

11  employees at the airport that accepted gifts or items of value (Yes).  The questions did

12  not include follow-up inquiries to the information regarding his knowledge of other

13  employees who had in fact accepted gifts or items of value.  The attorney's questions

14  were asked in a hostile and unprofessional manner and the Plaintiff knew that the attorney

15  had been hired specifically to find some wrong-doing on his part.  Following this odd

16  interrogation the Plaintiff was told by two Vice Presidents that he was being put on Paid

17  Administrative Leave "until an investigation could be completed."  He was also told

18  specifically that he could not discuss anything related to this interrogation or "the

19  investigation" with anyone else.  Under California Labor Code section 1102.5 an

20  employer may not make or enforce any rule or policy preventing an employee from

21  disclosing information to a government agency, including the Authority, where the

22  employer has reasonable cause to believe that the information discloses a violation of

23  state statute, or a violation or noncompliance with a state rule or regulation.

24   The Plaintiff asked the Vice Presidents to clarify the specific charges but they refused to
do so.

25  24.    The attorney from LUCE FORWARD and his hired investigator then began to

26  contact various people of the Plaintiff's acquaintance.  These witnesses immediately

27  contacted the Plaintiff to complain about the hostile, rude and demanding treatment of the

28

1    attorney from LUCE FORWARD and the Plaintiff informed each witness that he was

2    unable to discuss anything regarding the matter, but all of the contacting witnesses

3    reported similar unprofessional treatment and reported their own conversations and

4    attempts at conversation with the lawyer from LUCE FORWARD. The lawyer seemed

5    to be fishing to find anything he could about the Plaintiff that might put him in a negative

6    light, and by all accounts he seemed to be failing. The lawyer from LUCE FORWARD

7    was reduced to "suggesting" various scenarios to the witnesses, some of whom

8    laughed at the lawyer and concluded he was engaged in a "witch hunt" to do harm to the

9    Plaintiff. The Plaintiff, unable to respond and tell the contacting witnesses anything, was

10   unable to defend himself. The Plaintiff knew what Thella Bowens (Doe No.1) was

11   doing to him and why she was doing it but could not disclose anything about it.

12   25.     As the attorney for LUCE FORWARD became more desperate to find some

13   wrong doing from people who did not want to see the Plaintiff harmed, he utilized the

14   Private Investigator to go after tangential subjects and try to get some "hard evidence"

15   that the Plaintiff had done something, anything, wrong. The attorney for LUCE

16   FORWARD sent the investigator over to the car repair place the Plaintiff used and

17   threatened and coerced the owner to give him copies of the repair bills for the Plaintiff's

18   car. The investigator specifically represented himself as working for the Authority and

19   not for LUCE FORWARD. The Plaintiff had never been asked to produce these car

20   repair bills and did not give his permission to the owner of the repair place to give them

21   to the investigator or to anyone else. The investigator produced the documents in front

22   of the attorney for LUCE FORWARD and in front of the Plaintiff. The investigator and

23   the attorney for LUCE FORWARD refused to say where they had obtained them. In fact,

24   it was the witness who called the Plaintiff and told him about the incident. The car repair

25   bills yielded no evidence of wrong doing by the Plaintiff.

26   26.     Next the attorney for LUCE FORWARD questioned witnesses about what they

27   knew about the Plaintiff's marriage, including whether they had observed

28   "communication" problems in the marriage. The witnesses quickly defended the

13

11-175

1  Plaintiff's marriage and quickly informed the Plaintiff of the attorney's specific

2  invasion into the Plaintiff's marriage and informed him that it was a great marriage and

3  asked the Plaintiff why this attorney was asking questions that had nothing to do with the

4  Plaintiff's job and were also none of his business.

5  27.    On February 7, 2006 the Plaintiff was called into a meeting by his former

6  Vice President of Operations and told they were here to "discuss the disposition of

7  of the recent investigation concerning possible misconduct on your behalf." The Plaintiff

8  was specifically told that he was unable to leave the meeting until a decision had been

9  made regarding his employment status and that he did not have the right to discuss the

10  matter with anyone regarding his options.  The former Vice President had prepared a

11  written outline reference which he claimed would show the Plaintiff that "it was no witch

12  hunt." The Plaintiff vehemently objected and told him that the 'investigation' "was just

13  that: a witch hunt aimed at specifically terminating my employment' with the Authority"

14  and "the point was made clear to me by the was the 'investigation' was conducted and

15  through the questions asked by the 'investigators'." The Plaintiff asked the former Vice

16  President if it was his opinion that the Plaintiff had asked for favors in exchange for

17  'gifts.' The former Vice President then reiterated his statement that the 'investigation' had

18  concluded that there was no Quid Pro Quo.The former Vice President then stated that

19  "the reason for such an extensive 'investigation' was to assure the Authority that there

20  were no signs of criminal activity from [the Plaintiff's] behavior." The Plaintiff asked

21  him if there was and the former Vice President stated: "to date" no evidence to support

22  this allegation could be found

23       The Former Vice President and the Plaintiff then discussed the Authority Policy

24  concerning "Conflict of Interest".  He specifically singled out one airline for his

25  acceptance of a comp stand-by ticket, available by the airline to the general public.

26  28.    Plaintiff then pointed out his points of concern to the former Vice President: (1)

27  the ambiguousness of the "Conflict of Interest" Code, and (2) more importantly, the

28  application of the policy among Authority employees.  The Plaintiff mentioned the

14

11-176

1  specific abuse of the policy from the Authority Vice Presidents, Board Members, and

2  the President/CEO Thella Bowens (Doe No.1) This included airline ticket changes,

3  upgrades, access to First Class lounges and other routinely-demanded expensive

4  privileges not allowed to other Authority employees. The Plaintiff pointed out to the

5  Vice President that the application of the "Conflict of Interest" Code policy was

6  selective and unfairly enforced. SDCRAA Code of Ethics Article 2, part 2 et.seq.

7  29.     The Plaintiff had discussed such items as the above-stated violations of the

8  Authority's policy with the former Vice President when he had been the Vice President

9  and the Plaintiff's supervisor and he had always seen no reason for concern, and no

10  action had been taken. This same former Vice President had himself directed the Plaintiff

11  to take care of tickets for Authority employees and Board Members. The Plaintiff asked

12  why it was okay for Thella Bowens (Doe No.1) to ask and receive favors and not okay

13  for employees to receive the same benefits. One example was Bowen's request to fly in

14  in BBQ meat from Texas. The former Vice President defended this practice as

15  approved as an "Accepted Industry Practice", which connotes that among the Regional

16  Airport Authority for the Counties paying to fly in meat from another state is a billable

17  expense .SDCRAA Code of Ethics Article 2, section 2.10 (d)(9)(A)(B)

18  30.     The former Vice President then told the Plaintiff that the Authority could no

19  longer trust his judgment and they are "forced to discontinue working relations."

20  His "choice" was to sign a resignation or they would terminate him. When the former

21  Vice President, now Chief of Staff to Thella Bowens (Doe No.1), asked the Plaintiff for

22  final comments he told him his opinion as to the unfairness of the 'investigation' and the

23  lack of professionalism on the part of the 'hired help' (the lawyer from LUCE

24  FORWARD and the 'investigator' he hired). The Plaintiff stated that the outcome of the

25  investigation had already been pre-determined and that the 'investigators' were not

26  impartial and did not let the 'truth come out.' The Plaintiff asked the following questions,

27  all of which went unanswered: How did this 'investigation' come about? Why were the

15

1 allegations made against him never explained? Why was the reasoning behind being

2 placed on administrative leave never disclosed? Am I the only person being

3 'investigated' or are there others? What authority was given to the 'investigators' to

4 allow them to invade my privacy and procure privileged information? The former Vice

5 President's last comment to the Plaintiff was: "Holy shit, I knew something like this

6 would happen as part of the reorganization."

7 31.    The conduct of the Authority employees and DOES 1 through 20 was a

8 substantial factor in causing the Plaintiff's harm.

9 32.    As a direct and proximate cause of the acts and conduct described above, Plaintiff

10 has been and continues to be subjected to shame, humiliation and extreme emotional

11 distress, all to the Plaintiff's damage in a sum as yet undetermined, and Plaintiff requests

12 leave of court to state such damages in accordance with proof at trial.

13 33.    As a direct and proximate cause of said acts of harm and conduct against the

14 Plaintiff by Defendants and DOES 1 through 20 the Plaintiff has lost standing in his

15 community, been held up to ridicule and shame, suffered great mental and emotional

16 distress, worry, fear of his economic future and depression, all to the Plaintiff's damage in

17 a sum that cannot be computed at this time, and the Plaintiff requests leave to amend this

18 complaint to state these damages in accordance with proof at trial.

19                               **SECOND CAUSE OF ACTION**

20                                **(Pretextual Investigation of**

21                                 **Violation of Ethics Code)**

22                                 **(Against All Defendants)**

23 34.    Plaintiff incorporates paragraphs 1 through 7 of the Facts Common to All

24 Causes of Action as though fully set forth herein and paragraphs 8 through 33 of the First

25 Cause of Action as though fully set forth herein.

26 35.    " It is the policy of the San Diego County Regional Airport Authority that (a)

27                                              16

28

Public officials, both elected and appointed, shall comply with both the letter and the spirit of the laws affecting the operations of government; (b) Public officials shall be independent, impartial and fair in their judgment and actions; ( c ) Public office shall be used for the public good, not for personal gain;." SDCRAA Policies Art. 2 Ethics, Part 2.0; Section 2.01 POLICY STATEMENT   The Authority then adopted a Code of Ethics and Conduct and specifically designated that the "employees" includes "the Authority's Executive Director" [Thella Bowens, Doe No.1]   General Counsel [Bret Lobner] "other officers and consultants." Further, "This Ethics Code shall be broadly construed to effectuate its purposes." The citizens served by the Authority "are entitled to fair, ethical and accountable . . . government." Code of Ethics, Art. 2, Part 2.0, Section 2.01

36.     Ethics Code Art. 2, Part 2.0, Section 2.02 "Act in the Public Interest" requires "[e]mployees of the Authority will work for the common good of the people of the County of San Diego and not for any private or personal interest. . . ." Under the Code of Ethics, Art. 2, Part 2.0, Section 2.10   "Prohibited Receipt of Benefits" (a) **"Benefit"** means any honorarium, gift or **travel expense** made to, or in the interest of, an individual or a member of the individual's immediate family." (2) **"Gift"** means any payment that confers a personal benefit on the recipient . . . *unless the rebate or discount is made in the regular course of business to members of the public without regard to official status."* The standard airline issued trip pass which is used when ticketing employees, other airline personnel and non-employees authorized for non-revenue travel ticket given to the Plaintiff is only valid for ninety days and the seats are limited because it is a stand-by ticket. All airlines have the autonomy to give them to anybody and is routinely given in the regular course of business to members of the public "without regard to official status." There was no requirement for the Plaintiff to report the gift of a stand-by complementary ticket whether it was used or not. In order to be a "benefit" the recipient must know that the rebate or discount is not made in the regular course of business to members of the public. Ethics Code, *supra,I* (4)(d)

17

11-179

37.     The Ethics Code Art. 2, Part 2.0, Section 2.10 contains specific <u>Restriction on</u> <u>Benefits</u> under (b) (1) No Board member or employee of the Authority shall request a benefit from any person or entity or accept any benefit intended to influence official duties.  (B)(2) No Board member or employee of the Authority shall accept anything of value from anyone, other than the Authority or another Board member or employee, for doing his or her job.  Violations of the above-stated Ethics Code, Sections 2.01; 2.02; and 2.10 occurred during the Plaintiff's employment as a Director with the Authority including, but not limited to the following incidents:

a.     The Vice President of Operations paid $1200.00 for a ticket on an airline to get Blue Bell ice cream for Thella Bowen's BBQ, received reimbursement for the travel expense under the guise that he was attending a cultural awareness development meeting with another airline.  The ice cream was available in Southern California.  When word got around the Authority about the cost of going to Texas for ice cream, the Vice President directed the Plaintiff to "shut that little shit up" referring to the budget analyst who continued to comment on it.  The Plaintiff refused the directive.  This travel expense was not reasonably related to a governmental purpose.

b.     Each time an Authority employee requested a change to be made to an airline ticket a benefit was accepted when the recipient took "any action exercising control over the benefit." Thella Bowen would purchase her own tickets and then request date changes and upgrades, along with Premier Lounge Access (only permitted for airline premier club members).  This practice was so prevalent by Bowens and her staff that on the day that the investigation of the Plaintiff began, Bowens had secured access to an airline Premier lounge prior to her trip to Asia.   Any change to any ticket itinerary is approximately fifty to one hundred dollars, a service charge, plus the cost in set p rice for an upgrade on a ticket, ranging from one hundred fifty to two hundred dollars each way. Thella Bowens routinely instructed her Assistant to contact either the Plaintiff or the Vice President that the Plaintiff reported to, to make the changes described above.  The

18

Plaintiff would make the changes for Bowen by going directly to the airline Station Manager and requesting the change for Thella Bowens. The Plaintiff performed this benefit accommodation more than thirty times for Bowen and her staff. All of these requested benefits were in violation of the Ethics policy.

c.       Each year Thella Bowens requested an employee BBQ named "Thella's BBQ." The event drew from fifty to over three hundred attendees. The centerpiece of the event called for pork, beef ribs and brisket to be flown out from her favorite restaurant in the Dallas Fort Worth area, Angelo's. Employees from the Director level and above were required to pay money to help subsidize the expense of the meat. Currently Thella's BBQ has been renamed the "Annual Employee Appreciation Employees BBQ" and now costs approximately ten to fifteen thousand dollars, not including the cost of the labor for the Authority employees who are designated to support the event. The Plaintiff was then instructed to contact an airline to make arrangements at her behest for free airline delivery of the meat. The net weight of the total delivery was over two hundred pounds at an approximate cost of $2500.00. The free airline flight of the meat violated the Ethics policy. The cost of the BBQ comes from the revenue collected by the Authority from the airlines and its users.

d.       Thella Bowens requested through a Vice President that he obtain special airline flight privileges for her sister who lives in Texas. Bowens asked for the ability to get either stand by or reduced rate tickets for her sister for business and personal travel. The request was made to the airline Station Manager. The airline Station Manager then responded to the conditions under which they could do it. This request by Thella Bowens (Doe No.1) violates the Ethics Code.

e.       The request from the Chairman of the Board of the Authority to secure First Class upgrade airline tickets on the day of his planned departure for his wife and himself required the intervention of the airline Station Manager. This tactic allowed the Chairman of the Board of the Authority to save approximately two hundred fifty dollars

19

1    for the upgrade expenses.  This action violates the Ethics Code.

2        f.    The Chairman of the Board of the Authority on several occasions

3    requested to enter into a temporary lease to use a portion of the parking lot at Harbor

4    Island for no expense for an activity he is involved with annually.  The lease of Authority

5    property for non-aviation use is strictly prohibited and a violation of the Ethics Code as

6    well as other laws and regulations.

7        g.    An Authority Board member annually inserts his official authority to

8    influence negotiations between a community event and the rental of the General

9    Dynamics property at a rate lower than the fair market value.  As a condition of this use,

10   all rental cars must be removed from the property and a large amount of vehicles

11   relocated from the property.  This violates the Ethics Code as well as other laws and

12   regulations.

13       h.    An Authority Board member requested assistance in rearranging his

14   itinerary so that he could attend the Little League World Championships in Williamsport,

15   Pennsylvania.  The Plaintiff had to work with three different airlines to coordinate the

16   First Class upgrade the Board member requested, as well as the time changes to allow the

17   Authority Board member his desired schedule.  This violates the Ethics Code.

18       I.    The Authority's Vice President of Budget and Finance repeatedly

19   requested from the Plaintiff assistance in changing flight schedules.  Over a one year

20   period the Plaintiff assisted with the change of approximately fifteen to twenty schedules,

21   all to accommodate personal and non Authority business travel to Las Vegas and Texas.

22   This violates the Ethics Code.

23       j.    The General Counsel of the Authority used his official position to obtain

24   fifty-yard-line premier seating at the Poinsettia Bowl football game by getting the

25   Plaintiff to use his official position as Director, Landside Operations to make contact with

26   the Holiday Bowl Committee and request premium seating for the event.  This involved

27   securing six tickets for $300.00, which the Plaintiff paid for so that the General Counsel

28

20

**11-182**