1  CATHRYN CHINN, ESQ. #93340
   3990 Old Town Avenue, Ste. A109
2  San Diego, California 92110
   Telephone: (619) 295-4190
3
       Attorney for Plaintiff
4          JOSE HERNANDEZ

5

6              SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                   FOR THE COUNTY OF SAN DIEGO

8  _____

9  JOSE HERNANDEZ,                    ) Case No. GIC 871979
                                      )
10                                    ) [PROPOSED]
                                      )
11            Plaintiff,              ) SECOND AMENDED COMPLAINT
                                      )
12     v.                             ) VIOLATION OF CALIFORNIA LABOR
                                      ) CODE SECTION 1102.5, et seq.;
13                                    ) (Retaliation for Disclosing and Opposing
                                      ) Violations of California Public Utilities
14 SAN DIEGO COUNTY                   ) Codes and California Code of Contracts)
   REGIONAL AIRPORT AUTHORITY,        )
15 a public entity: and DOES 1 through) Dept.:           71
   20, inclusive.                     ) Judge:           Hon. Richard E. Strauss
16                                    ) Complaint Filed: September 1, 2006
              Defendants.             ) Trial Date:      None Set
17 _____

18                                    I

19             FACTS COMMON TO ALL CAUSES OF ACTION

20                     (Against All Defendants)

21 1.      All the events herein alleged occurred within the County of San Diego, State of

22 California.  Plaintiff is a resident of the County of San Diego, State of California and was

23 employed by the San Diego County Regional Airport Authority at the time of the events

24 herein alleged.  The defendant SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

25 (hereafter "AUTHORITY") is, and at all material times herein was, a public entity created by

26 state law pursuant to the California Public Utilities Code Section 170000, et seq., Division 17,

27 Chapter 1, Chapter 2, Chapter 3 to operate the San Diego International Airport (Lindbergh

28 Field) and is an entity charged by law as the employer of the staff members of the

1    AUTHORITY and is duly organized and existing under the laws of the State of California.

2    Under California Public Utilities Code Section 170032 et seq. the AUTHORITY may be sued

3    in all actions and proceedings in all courts of competent jurisdiction.

4    2.     The AUTHORITY is responsible for public health and safety surrounding the San

5    Diego Airport, including airport land development and charged with minimizing "the public's

6    exposure to excessive safety hazards around airports." The AUTHORITY'S management and

7    budget of $113.8 million is overseen by the AUTHORITY'S President/CEO Thella Bowens

8    (Doe No.1). Bowens reports to a Board of Directors and her employment is approved by the

9    San Diego Port District.

10    3.     The Plaintiff JOSE HERNANDEZ began employment at the San Diego County

11    Regional Airport Authority in March 2001 as Manager, Ground Transportation and was then

12    promoted to Director, Landside Operations.. In this position Plaintiff managed the operations

13    of the airport terminal buildings, the parking lots, the ground transportation services and

14    provided "expert assistance in the planning and long-range business decision making for

15    managing the airport's facilities." Plaintiff reported to the Vice President, Airport Operations,

16    who had managerial responsibility for all aspects of airport operations. Plaintiff was

17    specifically required to make decisions "in operating the parking facilities to ensure the highest

18    levels of efficiency [and] economic advantage." Plaintiff was also required to represent the

19    Authority in dealing with tenants and contractors.

20    4.     Plaintiff does not know the true names or capacities (whether individual or other

21    wise) of defendants DOES 2 through 20) and will amend this pleading when their true

22    identities have been ascertained.

23    5.     All defendants were the agents and employees of each other and performed the

24    acts alleged in this complaint in the course and scope of their agency and employment with the

25    consent and direction of the other; and in dual capacity as individuals, subjecting

26    Plaintiff to, but not limited to, acts of harm, harassment and hostility.

27    6.     This action arises under the provisions of the California Labor Code Sections

28    1102.5 to 1102.8 et seq.; California Public Utilities Code Section 170000, et seq.

2

1   7.      Plaintiff was an outstanding employee who always performed at levels above and

2   beyond what could normally be asked of an employee.  Plaintiff's performance was

3   greatly praised by staff members, Board members and individuals from external agencies. The

4   Vice President of Airport Operations stated that the number of employees performing at the

5   Plaintiff's level could be "counted on one hand with several fingers left over."

6   Plaintiff consistently and constantly reported on a daily basis to this Vice President all actions

7   and events he was involved in, and withheld no information regarding his own

8   activities, viewpoints, opinions and observance of the activities of other employees, including

9   management.  Plaintiff has never been criticized or disciplined for anything during his

10  employment with the Authority until the events of December 2005 that led to

11  his improper termination from the Authority in February 2006.

12

13                          **FIRST CAUSE OF ACTION**

14          **Violation of California Labor Code Section 1102.5  et seq.**

15                     Retaliation for Protected Disclosure

16                           (Against All Defendants).

17  8.      Plaintiff incorporates paragraphs 1 through 7 of the Facts Common to All Causes

18  of Action as though fully set forth herein.

19  9.      Within the Airport Authority there was tension between the two operating

20  divisions: the Operations Division headed by the Vice President to whom Plaintiff reported that

21  was responsible for Airside, Terminal, and Parking/Ground Transportation; and the Real Estate

22  and Capitol Development Division headed by Vice President

23  Bryan Enarson.  There were two distinct camps: Operations was primarily driven to

24  respond to the Authority's airline tenants and airport guests; while Enarson's Real

25  Estate/Capital Development was driven by his need for bureaucracy that prolonged project

26  completion times and substantially increased project expenses.  Enarson had

27  ingratiated himself to Bowens and set himself up as her close advisor.  Bowens comes

28  from a background as a budget analyst and is not considered a good public speaker or as a

3

1  comfortable public spokesperson for the Authority. She looked to Enarson on a daily basis as a

2  confidante and leaned on him as her closest ally. Enarson had Bowen's ear and had not only

3  constant access but also constant influence on Bowen. The tension between Enarson and the

4  Vice President of Airport Operations began to involve Plaintiff and escalated after Enarson's

5  Real Estate/Capital Development received insufferable ratings on the Airport's commissioned

6  Tenant/Customer Satisfaction Survey. Instead of focusing efforts on improving the areas that

7  were weakest, Enarson chose to take a proactive approach to diminish the accomplishments of

8  the Operations Division. Enarson began to insert himself in areas that were not his

9  responsibility such as taking Bowens on walk-throughs of the terminal buildings without the

10  presence of a member from the Operations Division to point out what displeased him and

11  sought to take credit for Operations initiating projects that were not his initiatives and were not

12  pushed forward by him. While Enarson's team was involved in the projects such as Flight

13  Display Upgrades and Security Check Point Reconfiguration the projects were driven by the

14  Operations Division, and not by Enarson. Enarson began escalating his obstruction of

15  development projects.

16  10.      With space at a premium in the airport, the airport's redevelopment plan included

17  development of an overall concessions plan. Enarson had received unacceptable ratings on the

18  concessions program which he oversaw as Vice President. In the past, Enarson's Development

19  Division had simply taken space, but now resisted and refused to negotiate

20  space needed to improve the women's restroom. The improvement plans had been in the works

21  for over five years and called for a removal of approximately 30 square feet from the news and

22  gift stand belonging to Host. In the process it was revealed that Enarson had entered into side

23  deals with a handshake agreement with Host that restricted the Operations Division's ability to

24  annex the space which was needed to comply with ADA requirements. The Plaintiff had

25  reasonable cause to believe that the Authority was in violation of the federal American

26  Disabilities Act and its enabling regulations. Because Enarson refused to either take the space

27  away from Host or renegotiate with them, major modifications had to be made that increased

28  the project budget by over $2 million. During the long delays women were forced to endure the

4

1  long lines to use the restrooms.  There was no access for the disabled to the restroom for which

2  the Plaintiff also had reasonable cause to believe that the Authority was in violation of the equal

3  access provision and regulation of the ADA.

4  11.    The Plaintiff disclosed to members of the Authority Enarson's "side deal" made

5  with out negotiation that restricted the Authority's ability to annex the space needed to comply

6  with ADA requirements for the airport restroom.  Plaintiff also disclosed that Enarson's refusal

7  had increased the project budget by over $2 million.  On both counts, Plaintiff believed that he

8  was disclosing legal violations: violations of the ADA requirements and also disclosing the

9  unauthorized use of public assets because Enarson had a "handshake" deal.  The project

10  suffered over three (3) years of delays due to Enarson's conflict with the airport's food and

11  beverage concessionaire.

12  12.    The General Dynamics property is approximately 85 acres and sits along Pacific

13  Coast Highway on the north side of the airport.  The property contains a 1,600 parking stall

14  long term parking lot (SAN Park Pacific Highway), and provides for Convention

15  Center truck staging, rental car storage, and Cruise Ship truck staging.  The terms of the

16  original three year lease called for rent of $4.6 million year one, $6.6 million year two, and $8.6

17  million year three.  Enarson was the lead negotiator on the lease.  When Plaintiff compared the

18  revenue potential of the approximately $3 million net from the parking operation and $1 million

19  from the vehicle storage, the lease payments were too expensive and out of line.  Plaintiff

20  disclosed that the increased lease payments pulled funds away from the operating budget and he

21  believed it was an unauthorized use of the Authority funds.  Plaintiff also believed the failure to

22  negotiate the lease properly was a violation of law and contrary to public interest.  The Plaintiff

23  had reasonable cause to believe that this failure and other actions related to the lease were

24  unlawful acts that violated California Public Utilities Code section 170056 (f)(1)(2)(3)  Plaintiff

25  had reasonable cause to believe that the terms of the lease were in violation of the California

26  Public Utilities Code section 1700056(f)(3).  Despite the Plaintiff's objections to the actual

27  revenue streams,  Enarson decided the matter would go up to the Vice President level, where it

28  died and no corrective action was taken.  The lease was signed contrary to the objections of true

5

1   forms of revenue streams.

2   13.    The Authority's Teledyne Ryan property lease calls for $3 million in annual

3   payments for the 46.77 acre property, located immediately east of the airport along Harbor

4   Drive.  At the time the lease was negotiated, with Enarson as the lead negotiator, contamination

5   of the property allegedly required approximately $10 million.  The failure to properly inspect

6   and analyze the actual contamination resulted in a finding that the contamination remediation

7   range would be approximately $30 million and would limit the use of the property to the

8   existing 350 space long term parking lot (SAN Park Harbor Drive).  Current revenues derived

9   from the parking lot are approximately $1.2 million a year with about $700,000.00 in expenses,

10  netting the Authority only $500,000.00.  The original plan for the property was to phase in the

11  parking development from what is now Phase I, 350 parking stalls, to Phase 2, approximately

12  1,300 stalls.  If the project had stayed as planned the property would now be developed and be

13  positioned to take advantage of the increasing occupancy levels in the market.  When the

14  development process began the discovery of the deep environmental concerns with the

15  property, which were not previously disclosed before Enarson completed the negotiations for

16  the lease, significantly curtailed the purpose of the lease because of the unusable areas.  Plaintiff

17  disclosed the findings that there was no way to open Phase 2 of the parking development and

18  also disclosed the enormous amount of money the Authority was paying for the lease. The

19  Plaintiff believed that these acts by the Authority were unlawful and in violation of California

20  Public Utilities Code section 170056(a)(1)(B).  Further, the Plaintiff's disclosure of the

21  unlawful acts occurred at committee meetings closed to the public, at management and staff

22  meetings closed to the public. Plaintiff asked the Authority members, including Enarson, "Why

23  are we paying all this money?  Why are we paying the rent?" Enarson replied, "We're obligated

24  to pay the rent." Plaintiff stated that "we can use a little bit, 351 parking stalls, yet we're paying

25  $3 million and we can't use any of the rest.  We're on the hook for the $30 million.  We should

26  only pay a pro rata amount." Enarson's response was that it would get pushed up to the Vice

27  President group.  When the Teledyne Ryan transition team, of which the Plaintiff was a

28  member,  re-briefed the Vice Presidents, at a second meeting, the members and officers were in

6

1   awe, and asked, "Are you sure it's $30 million? Are you kidding me?" Enarson was agitated

2   and Plaintiff received reports that Enarson was angry.

3   14.    In January 2004 Lindbergh Parking (hereafter "LPi") was awarded a new five (5)

4   year service agreement for the management of the airports' employee and public parking lots.

5   Services included the management of the airport's inter-terminal, "Red Bus" and the Employee

6   shuttle service, as well as the taxicab and shuttle-for-hire dispatch system. The total operating

7   budget is approximately $8 million. Although the Request for Proposal process was highly

8   contested LPi was the preferred candidate largely because of its' lower operating expenses. The

9   contract commenced on February 1, 2004. There were immediate disagreements with the

10  operator because of contractual requirements. As a key component of the shuttle service, the

11  operator was to provide new vehicles at the beginning of the agreement and change them over

12  every 2 ½ years. The vehicles did not arrive until four months later. During these four months,

13  the operator was able to make a substantial amount of profit because they did not have to make

14  monthly lease payments for the vehicles since they had already been paid off. The fleet

15  consisted of six (6) employee, three (3) Red Bus vehicles, and two (2) interchangeable shuttles.

16  The average lease of a vehicle was $1,650.00 per month and amounted to approximately

17  $18,150.00 per month in extra profit for the operators. Their contract provided for an hourly

18  reimbursable for operating hours plus fuel expense. No vehicle lease cost meant more profit.

19  These difficulties were chalked up as operational issues and the Authority moved on.

20      During the Request for Proposal process Lpi had indicated they could operate the long

21  term parking lot, SAN Park Pacific Highway, 1,600 parking stalls along Pacific Highway, for

22  approximately $1.3 million annually. As the operating numbers began to appear the actual

23  expenses were projected at $1.7 million annually, higher than the previous operator. Expense

24  projections for the other Authority parking properties projected similar increases. I t was clear

25  that LPI purposely submitted unattainable expense numbers in order to bolster their proposal.

26  The Plaintiff had reasonable cause to believe that he was disclosing unlawful violations of both

27  the Authority's Contract Code and the California Code of Contracts section 100. Although

28  unhappy with the operator the Plaintiff had no choice but to work with the operator to control

7

1   expenses.

2       Maurice Grey is the President of LPI. Plaintiff made it clear to Grey that he wanted to
3   see the Liability and Workers Compensation Coverage for the parking service competitively bid
4   for renewal. On the day before the existing coverage was set to expire Grey presented Plaintiff
5   with a premium scale which far exceed expense projections. Plaintiff met with Grey and
6   stressed to him that he needed to go through in detail all of the operating expenses and analyze
7   each of the employee job positions, including Grey's. As part of the process Plaintiff asked
8   Grey to prepare a job description of his own job and the jobs of each of his managers. All of
9   them were interviewed to get a good understanding of their duties. The process determined that
10  most, if not all, of the duties claimed by Grey were actually performed by others. Plaintiff
11  explained to Grey that he needed to be able to justify continuing paying his salary and that on
12  paper, the salary was not justified. Plaintiff informed Grey he would give him three months,
13  until the end of summer, to show his job duties that would justify the pay and if not he would
14  have to go. Subsequently, Grey's management skills resulted in his expenses being out of
15  control, he failed to hire proper personnel, and he could not properly bid items. Again Plaintiff
16  extended Grey's deadline to substantiate his job worth until the end of the year, December 31,
17  2005. The Plaintiff's disclosures of the Authority's failure to follow the California Code of
18  Contracts, section 100 were protected disclosures that the Plaintiff had reasonable cause to
19  believe were unlawful, and also were in violation of the Authority's Contract Code. The
20  Plaintiff worked under the requirements of both of these laws in his position as a Director, and
21  expected the Authority to comply with each and every one of the Code requirements and
22  regulations.

23      Plaintiff then discovered that LPI was double billing the Authority for Workers
24  Compensation Insurance. He had noted that the premiums were running twice the amount of
25  the previous year and were being billed to a different expense category. As a result Plaintiff
26  posted a credit of approximately $150,000.00 against LPI's monthly request for reimbursement.
27  Plaintiff had communicated throughout the process and disclosed LPI's wrongdoing and
28  financial misuse issues with his direct supervisor, the Vice President of Airport Operations.

8

21-285

1    The Vice President asked Plaintiff to work out the issues with Grey because he was a Minority

2    Owned Business and the Authority needed the relationship in order to comply with FAA

3    regulations governing Minority participation. Plaintiff had disclosed computational or other

4    errors in LPI's bid submission; the unsatisfactory performance of the contract; the failure of LPI

5    to submit insurance documents acceptable to the Authority; Grey's unjustified refusal to

6    warrant his performance and other offenses and actions that indicated a lack of business

7    integrity by LPI. Plaintiff believed that disclosures he made pursuant to the contract contained

8    violations of the Ethics Code and also of rules and regulations of law.

9    15.      On or about July 11, 2006 Plaintiff filed his San Diego County Regional Airport

10    Authority Damage Claim Form alleging the incidents of disclosure contained above herein and

11    for the retaliation he suffered based on the disclosures of legal violations described above. On

12    or about August 1, 2006 defendant AUTHORITY denied Plaintiff's claim.

13    16.      California Labor Code Section 1102.5 is intended to encourage employees to

14    report legal violations or a refusal to participate in such violations. Plaintiff in good faith

15    reported, disclosed, divulged and brought to the attention of his employer facts and information

16    relative to both suspected and actual violations of law directly related to his job. Plaintiff

17    observed improper governmental activity by employees of the San Diego County Regional

18    Airport Authority undertaken in the performance of the employees' official duties that

19    demonstrated economic waste, incompetency and inefficiency in a government agency. Under

20    California Labor Code Section 1102.5 ( c) an employer may not retaliate against an employee

21    for refusing to participate in an activity that would result in a violation of a state or federal

22    statute, or a violation or noncompliance with a state or federal rule or regulation. Further, under

23    California Labor Code Section 1102.5 (b) an employer may not retaliate against an employee

24    for disclosing information to a government or law enforcement agency, where the employee has

25    reasonable cause to believe that the information discloses a violation of state or federal statute,

26    or a violation of noncompliance with a state or federal rule or regulation. Under California

27    Labor Code Section 1102.5 (e) a report made by an employee of a government agency to his

28    employer is a disclosure of information to a government or law enforcement agency pursuant to

1    subdivisions (a) and (b).

2    17.     By September 2005 an Authority Internal Audit of parking management operating

3    expenses had determined that Lpi had double-billed the Authority for Workers Compensation

4    Insurance for a total of four (4) months.

5    18.     By October 2005 the Plaintiff had met with the Vice President of Operations to

6    inform the Vice President of Operations of the status of LPI's non-compliance and areas of

7    deficiencies and to obtain agreement that Maurice Gray would step down as President of LPI

8    should he not be able to comply with the standards and improve the deficiencies and clarify his

9    job duties for his position.  Pursuant to the California Code of Contracts section 1100, the

10   Authority was required to comply with the California Code of Contracts, section 100(b), which

11   the Plaintiff had reasonable cause to believe was being violated by the Authority.  The

12   Authority's Contracts Code, Article 5, sections 5.11(a)(3)(4)(5)(6)(8) and section 5.18(a) were

13   also a basis for the Plaintiff to have reasonable cause of violation by the Authority. The Plaintiff

14   regularly worked with these Codes and regulations and expected the Authority to follow them.

15   19.     By November 2005 the Vice President to whom the Plaintiff reported was well

16   aware that the Plaintiff would be leaving early in December for a planned vacation out of

17   state.  On the late afternoon of December 1, 2005 the Plaintiff met with the Vice President of

18   Operations to see if there were any matters that needed to be attended to before the start of his

19   vacation.  The Vice President of Operations advised the Plaintiff that talks of "reorganization"

20   had "resurfaced" but that final outcome of any "reorganization" would be determined by Thella

21   Bowens (Doe No. 1) and the Authority Administration.

22   20.     On December 6, 2005 while on vacation the Plaintiff received a telephone call

23   from the Vice President of Operations, who was clearly upset, and who informed him of

24   the specifics of the plan of the reorganization.  Both the responsibilities of the Vice

25   President and those of the Plaintiff were severely diminished.  Over two-thirds of the

26   Authority employees had reported to the Vice President's office: now he had been

27   reassigned Chief of Staff for Thella Bowens (Doe No.1) even though no one reported

28   to him in that assignment..  He was permitted to keep the title of Vice President. .

1    21.    Vice President Bryan Enarson had convinced Thella Bowens (Doe No. 1) to

2    relieve him from the problems he had created as the Vice President of Development

3    (including the unresolved monetary havoc he had negotiated with the properties of

4    Jim's Air, General Dynamics, and Teledyne Ryan) and reposition him in a position with

5    Terminal Operations and other responsibilities.

6    22.    On December 7, 2005 the Plaintiff participated in a single telephone conference

7    call to discuss the Authority's reorganization specific to Parking and Ground Transportation.

8    The Authority no longer has a person with expertise managing those

9    positions. On December 8, 2005 all Authority employees were informed by e-mail that the

10   reorganization would take effect on January 3, 2006.

11   23.    On December 14, 2005 the Plaintiff was requested to attend a meeting with two

12   individuals, an attorney with LUCE FORWARD and an investigator hired by LUCE

13   FORWARD. Neither of the individuals informed the Plaintiff of what the purpose of

14   their meeting was with the Plaintiff. The attorney asked a number of vague and a

15   number of specific questions, interviewing the Plaintiff and asking him if he had requested or

16   taken personal gifts from any company at the airport (No); if he had

17   requested airline tickets from any airline (No); if he had requested first-class

18   upgrades from airlines (No); if he had attended a wedding in Jacksonville, Florida (No);

19   if he had received money from an airport vender (Never) and if he knew of other

20   employees at the airport that accepted gifts or items of value (Yes). The questions did

21   not include follow-up inquiries to the information regarding his knowledge of other

22   employees who had in fact accepted gifts or items of value. The attorney's questions were

23   asked in a hostile and unprofessional manner and the Plaintiff knew that the attorney had been

24   hired specifically to find some wrong-doing on his part. Following this odd

25   interrogation the Plaintiff was told by two Vice Presidents that he was being put on Paid

26   Administrative Leave "until an investigation could be completed." He was also told

27   specifically that he could not discuss anything related to this interrogation or "the

28   investigation" with anyone else. Under California Labor Code section 1102.5 an employer may

11

21-288

1   not make or enforce any rule or policy preventing an employee from

2   disclosing information to a government agency, including the Authority, where the employer

3   has reasonable cause to believe that the information discloses a violation of

4   state statute, or a violation or noncompliance with a state rule or regulation.

5    The Plaintiff asked the Vice Presidents to clarify the specific charges but they refused to

6   do so.

7   24.    The attorney from LUCE FORWARD and his hired investigator then began to

8   contact various people of the Plaintiff's acquaintance. These witnesses immediately contacted

9   the Plaintiff to complain about the hostile, rude and demanding treatment of the attorney from

10   LUCE FORWARD and the Plaintiff informed each witness that he was

11   unable to discuss anything regarding the matter, but all of the contacting witnesses

12   reported similar unprofessional treatment and reported their own conversations and

13   attempts at conversation with the lawyer from LUCE FORWARD. The lawyer seemed

14   to be fishing to find anything he could about the Plaintiff that might put him in a negative

15   light, and by all accounts he seemed to be failing. The lawyer from LUCE FORWARD was

16   reduced to "suggesting" various scenarios to the witnesses, some of whom

17   laughed at  the lawyer and concluded he was engaged in a "witch hunt" to do harm to the

18   Plaintiff. The Plaintiff, unable to respond and tell the contacting witnesses anything, was

19   unable to defend himself. The Plaintiff knew what Thella Bowens (Doe No.1) was

20   doing to him and why she was doing it but could not disclose anything about it.

21   25.    As the attorney for LUCE FORWARD became more desperate to find some

22   wrong doing from people who did not want to see the Plaintiff harmed, he utilized the Private

23   Investigator to go after tangential subjects and try to get some "hard evidence" that the Plaintiff

24   had done something, anything, wrong. The attorney for LUCE FORWARD sent the

25   investigator over to the car repair place the Plaintiff used and

26   threatened and coerced the owner to give him copies of the repair bills for the Plaintiff's car.

27   The investigator specifically represented himself as working for the Authority and not for

28   LUCE FORWARD. The Plaintiff had never been asked to produce these car

12

1  repair bills and did not give his permission to the owner of the repair place to give them

2  to the investigator or to anyone else.  The investigator produced the documents in front

3  of the attorney for LUCE FORWARD and in front of the Plaintiff.  The investigator and

4  the attorney for LUCE FORWARD refused to say where they had obtained them.  In fact, it was

5  the witness who called the Plaintiff and told him about the incident.  The car repair

6  bills yielded no evidence of wrong doing by the Plaintiff.

7  26.    Next the attorney for LUCE FORWARD questioned witnesses about what they

8  knew about the Plaintiff's marriage, including whether they had observed "communication"

9  problems in the marriage.  The witnesses quickly defended the

10  Plaintiff's marriage and quickly informed the Plaintiff of the attorney's specific

11  invasion into the Plaintiff's marriage and informed him that it was a great marriage and asked

12  the Plaintiff why this attorney was asking questions that had nothing to do with the Plaintiff's

13  job and were also none of his business.

14  27.    On February 7, 2006 the Plaintiff was called into a meeting by his former

15  Vice President of Operations and told they were here to "discuss the disposition of

16  of the recent investigation concerning possible misconduct on your behalf." The Plaintiff was

17  specifically told that he was unable to leave the meeting until a decision had been made

18  regarding his employment status and that he did not have the right to discuss the matter with

19  anyone regarding his options.  The former Vice President had prepared a written outline

20  reference which he claimed would show the Plaintiff that "it was no witch hunt." The Plaintiff

21  vehemently objected and told him that the 'investigation' "was just that: a witch hunt aimed at

22  specifically terminating my employment' with the Authority" and "the point was made clear to

23  me by the was the 'investigation' was conducted and through the questions asked by the

24  'investigators'." The Plaintiff asked the former Vice President if it was his opinion that the

25  Plaintiff had asked for favors in exchange for 'gifts.' The former Vice President then reiterated

26  his statement that the 'investigation' had concluded that there was no Quid Pro Quo.The former

27  Vice President then stated that "the reason for such an extensive 'investigation' was to assure

28  the Authority that there were no signs of criminal activity from [the Plaintiff's] behavior." The

13

1   Plaintiff asked him if there was and the former Vice President stated: "to date" no evidence to

2   support this allegation could be found

3       The former Vice President and the Plaintiff then discussed the Authority Policy

4   concerning "Conflict of Interest". He specifically singled out one airline for his

5   acceptance of a comp stand-by ticket, available by the airline to the general public.

6   28.   Plaintiff then pointed out his points of concern to the former Vice President: (1)

7   the ambiguousness of the "Conflict of Interest" Code, and (2) more importantly, the

8   application of the policy among Authority employees. The Plaintiff mentioned the specific

9   abuse of the policy from the Authority Vice Presidents, Board Members, and

10  the President/CEO Thella Bowens (Doe No.1) This included airline ticket changes, upgrades,

11  access to First Class lounges and other routinely-demanded expensive

12  privileges not allowed to other Authority employees. The Plaintiff pointed out to the

13  Vice President that the application of the "Conflict of Interest" Code policy was

14  selective and unfairly enforced. SDCRAA Code of Ethics Article 2, part 2 et.seq.

15  29.   The Plaintiff had discussed such items as the above-stated violations of the

16  Authority's policy with the former Vice President when he had been the Vice President

17  and the Plaintiff's supervisor and he had always seen no reason for concern, and no

18  action had been taken. This same former Vice President had himself directed the Plaintiff

19  to take care of tickets for Authority employees and Board Members. The Plaintiff asked

20  why it was okay for Thella Bowens (Doe No.1) to ask and receive favors and not okay

21  for employees to receive the same benefits. One example was Bowen's request to fly in

22  in BBQ meat from Texas. The former Vice President defended this practice as

23  approved as an "Accepted Industry Practice", which connotes that among the Regional

24  Airport Authority for the Counties paying to fly in meat from another state is a billable

25  expense .SDCRAA Code of Ethics Article 2, section 2.10 (d)(9)(A)(B)

26  30.   The former Vice President then told the Plaintiff that the Authority could no longer trust

27  his judgment and they are "forced to discontinue working relations."

28  His "choice" was to sign a resignation or they would terminate him. When the former

14

1  Vice President, now Chief of Staff to Thella Bowens (Doe No.1), asked the Plaintiff for

2  final comments he told him his opinion as to the unfairness of the 'investigation' and the lack

3  of professionalism on the part of the 'hired help' (the lawyer from LUCE FORWARD and the

4  'investigator' he hired).  The Plaintiff stated that the outcome of the

5  investigation had already been pre-determined and that the 'investigators' were not impartial

6  and did not let the 'truth come out.' The Plaintiff asked the following questions, all of which

7  went unanswered: How did this 'investigation' come about?  Why were the allegations made

8  against him never explained?  Why was the reasoning behind being placed on administrative

9  leave never disclosed?  Am I the only person being 'investigated' or are there others?  What

10  authority was given to the 'investigators' to allow them to invade my privacy and procure

11  privileged information?  The former Vice President's last comment to the Plaintiff was: "Holy

12  shit, I knew something like this would happen as part of the reorganization."

13  31.    The policies of the Authority are published and distributed to all employees and Board

14  members.  Specifically, these policies state: that (a) Public officials, both elected and appointed,

15  shall comply with both the letter and the spirit of the laws affecting the operations of

16  government; (b) Public officials shall be independent, impartial and fair in their judgment and

17  actions; ( c ) Public office shall be used for the public good, not for personal gain;." SDCRAA

18  Policies Art.  2 Ethics, Part 2.0; Section 2.01 POLICY STATEMENT   The Authority then

19  adopted a Code of Ethics and Conduct and specifically designated that the "employees"

20  includes "the Authority's Executive Director" [Thella Bowens, Doe No.1]   General Counsel

21  [Bret Lobner] "other officers and consultants." Further, "This Ethics Code shall be broadly

22  construed to effectuate its purposes." The citizens served by the Authority "are entitled to fair,

23  ethical and accountable . . . government." Code of Ethics, Art.  2, Part 2.0, Section 2.01

24  32.    The Authority has enacted specific standards of conduct that include the

25  following: Ethics Code Art.  2, Part 2.0, Section 2.02 "Act in the Public Interest" requires

26  "[e]mployees of the Authority will work for the common good of the people of the County of

27  San Diego and not for any private or personal interest. . . ." Under the Code of Ethics, Art.  2,

28

15

21-292

1  Part 2.0, Section 2.10   "Prohibited Receipt of Benefits" (a) **"Benefit"** means any honorarium,

2  gift or **travel expense** made to, or in the interest of, an individual or a member of the

3  individual's immediate family." (2) **"Gift"** means any payment that confers a personal benefit

4  on the recipient . . . *unless the rebate or discount is made in the regular course of business to*

5  *members of the public without regard to official status."* The standard airline issued trip pass

6  which is used when ticketing employees, other airline personnel and non-employees authorized

7  for non-revenue travel ticket given to the Plaintiff is only valid for ninety days and the seats are

8  limited because it is a stand-by ticket.  All airlines have the autonomy to give them to anybody

9  and is routinely given in the regular course of business to members of the public "without

10  regard to official status." There was no requirement for the Plaintiff to report the gift of a stand-

11  by complementary ticket whether it was used or not.  In order to be a "benefit" the recipient

12  must know that the rebate or discount is not made in the regular course of business to members

13  of the public.  Ethics Code, *supra,I* (4)(d)

14  33.    The Authority did not follow the Ethics provisions that governed it.  There was no

15  enforcement of the policies or code when violations blatantly occurred, particularly by the

16  Authority President and her Vice Presidents, or by the Board members.  It wasn't until Bowens

17  and Enarson determined that they would get rid of the Plaintiff were accusations of violations

18  of the ethics provisions made against the Plaintiff.  The "investigation" initiated by Bowens was

19  a selective enforcement of ethics provisions that singled out the Plaintiff for retaliation because

20  he had complained and disclosed matters that he believed were violations of law.  The

21  Authority's Ethics Code Art.  2, Part 2.0, Section 2.10 contains specific Restriction on

22  Benefits under (b) (1) No Board member or employee of the Authority shall request a

23  benefit from any person or entity or accept any benefit intended to influence official duties.

24  (B)(2) No Board member or employee of the Authority shall accept anything of value from

25  anyone, other than the Authority or another Board member or employee, for doing his or her

26  job.  Violations of the above-stated Ethics Code, Sections 2.01; 2.02; and 2.10 occurred during

27  the Plaintiff's employment as a Director with the Authority including, but not limited to the

28

16

1  following incidents:

2        a.    The Vice President of Operations paid $1200.00 for a ticket on an airline

3  to get Blue Bell ice cream for Thella Bowen's BBQ, received reimbursement for the

4  travel expense under the guise that he was attending a cultural awareness development meeting

5  with another airline.  The ice cream was available in Southern California.  When word got

6  around the Authority about the cost of going to Texas for ice cream, the Vice President directed

7  the Plaintiff to "shut that little shit up" referring to the budget analyst who continued to

8  comment on it.  The Plaintiff refused the directive.  This travel expense was not reasonably

9  related to a governmental purpose.

10        b.    Each time an Authority employee requested a change to be made to an

11  airline ticket a benefit was accepted when the recipient took "any action exercising control over

12  the benefit." Thella Bowen would purchase her own tickets and then request date changes and

13  upgrades, along with Premier Lounge Access (only permitted for airline premier club

14  members).  This practice was so prevalent by Bowens and her staff that on the day that the

15  investigation of the Plaintiff began, Bowens had secured access to an airline Premier lounge

16  prior to her trip to Asia.   Any change to any ticket itinerary is approximately fifty to one

17  hundred dollars, a service charge, plus the cost in set p rice for an upgrade on a ticket, ranging

18  from one hundred fifty to two hundred dollars each way. Thella Bowens routinely instructed her

19  Assistant to contact either the Plaintiff or the Vice President that the Plaintiff reported to, to

20  make the changes described above.  The Plaintiff would make the changes for Bowen by going

21  directly to the airline Station Manager and requesting the change for Thella Bowens.  The

22  Plaintiff performed this benefit accommodation more than thirty times for Bowen and her staff.

23  All of these requested benefits were in violation of the Ethics policy.

24        c.    Each year Thella Bowens requested an employee BBQ  named "Thella's

25  BBQ." The event drew from fifty to over three hundred attendees.  The centerpiece of the event

26  called for pork, beef ribs and brisket to be flown out from her favorite restaurant in the Dallas

27  Fort Worth area, Angelo's.  Employees from the Director level and above were required to pay

28

17

1    money to help subsidize the expense of the meat.  Currently Thella's BBQ has been renamed

2    the "Annual Employee Appreciation Employees BBQ" and now costs approximately ten to

3    fifteen thousand dollars, not including the cost of the labor for the Authority employees who are

4    designated to support the event.   The Plaintiff was then instructed to contact an airline to make

5    arrangements at her behest for free airline delivery of the meat.  The net weight of the total

6    delivery was over two hundred pounds at an approximate cost of $2500.00.  The free airline

7    flight of the meat violated the Ethics policy.  The cost of the BBQ comes from the revenue

8    collected by the Authority from the airlines and its users.

9         d.       Thella Bowens requested through a Vice President that he obtain special

10   airline flight privileges for her sister who lives in Texas.  Bowens asked for the ability to get

11   either stand by or reduced rate tickets for her sister for business and personal travel.  The

12   request was made to the airline Station Manager.  The airline Station Manager then responded

13   to the conditions under which they could do it.  This request by Thella Bowens (Doe No.1)

14   violates the Ethics Code.

15        e.       The request from the Chairman of the Board of the Authority to secure

16   First Class upgrade airline tickets on the day of his planned departure for his wife and himself

17   required the intervention of the airline Station Manager.  This tactic allowed the Chairman of

18   the Board of the Authority to save approximately two hundred fifty dollars for the upgrade

19   expenses.  This action violates the Ethics Code.

20        f.       The Chairman of the Board of the Authority on several occasions

21    requested to enter into a temporary lease to use a portion of the parking lot at Harbor Island for

22   no expense for an activity he is involved with annually.  The lease of Authority property for

23   non-aviation use is strictly prohibited and a violation of the Ethics Code as

24   well as other laws and regulations.

25        g.       An Authority Board member annually inserts his official authority to

26   influence negotiations between a community event and the rental of the General Dynamics

27   property at a rate lower than the fair market value.  As a condition of this use, all rental cars

28

18

1  must be removed from the property and a large amount of vehicles relocated from the property.

2  This violates the Ethics Code as well as other laws and regulations.

3      h.    An Authority Board member requested assistance in rearranging his

4  itinerary so that he could attend the Little League World Championships in Williamsport,

5  Pennsylvania.  The Plaintiff had to work with three different airlines to coordinate the First

6  Class upgrade the Board member requested, as well as the time changes to allow the Authority

7  Board member his desired schedule.  This violates the Ethics Code.

8      I.    The Authority's Vice President of Budget and Finance repeatedly requested from

9  the Plaintiff assistance in changing flight schedules.  Over a one year period the Plaintiff

10  assisted with the change of approximately fifteen to twenty schedules, all to accommodate

11  personal and non Authority business travel to Las Vegas and Texas.

12  This violates the Ethics Code.

13      j.    The General Counsel of the Authority Bret Lobner used his official position to

14  obtain fifty-yard-line premier seating at the Poinsettia Bowl football game by getting the

15  Plaintiff to use his official position as Director, Landside Operations to make contact with the

16  Holiday Bowl Committee and request premium seating for the event.  This involved securing

17  six tickets for $300.00, which the Plaintiff paid for so that the General Counsel Bret Lobner had

18  to reimburse the Plaintiff.  When the Holiday Bowl Committee member asked the Plaintiff if

19  the tickets were complimentary for no charge the Plaintiff refused the gift and paid for them.

20  The General Counsel Bret Lobner knew he was in violation of the Ethics Code when he made

21  the request for the favors from the Plaintiff.

22      After the Plaintiff filed his Claim with the Airport Authority, the General Counsel Bret

23  Lobner wrote to the Plaintiff that "the facts about me are false, misleading, defamatory,

24  slanderous, libelous" because the number of tickets he requested was six, not eight, and the

25  price he paid for the tickets was $300.00 not $400.00.   Lobner then threatened to pursue legal

26  action against the Plaintiff for "filing a false defamatory accusation against [him]" because "Mr.

27  Hernandez had volunteered to pick up the tickets since he already had plans to visit the ticket

28

19

1 the ticket [sic] location", a statement which is untrue. The General Counsel Bret Lobner's

2 threat is an additional and separate violation of the Ethics Code.

3       k.     The Plaintiff was present with the Vice President of Operations when the

4 Chairman of the Board of the Authority requested a contractor to be hired to re-survey

5 his Authority office space for "listening devices." The Chairman's office space had previously

6 on two separate occasions been surveyed for "bugging devices" or other "listening apparatus."

7 The Chairman was worried that his communications could be intercepted by the FBI or similar

8 such agencies. This contract request is a gross waste of the Authority funds.

9       l.     The Vice President of Budget and Finance, representing himself and

10 Thella Bowens as Board members of the Jackie Robinson YMCA, requested that the Plaintiff

11 secure a free round trip airline ticket for the owner of national basketball team.

12 The request was made so that the owner could be the featured speaker at a banquet.

13       m.     The Vice President of Operations with the full knowledge of Thella

14 Bowens, requested that the Plaintiff secure free round tip airline tickets to be donated

15 as the featured prizes of the annual United Way campaign. The Plaintiff did this twice.

16       n.     Thella Bowens requested from the Plaintiff that a marked reserved parking

17 stall be designated in the employee parking lot at the Commuter Terminal for her personal use.

18 Bowens then never used the stall, choosing to park elsewhere and

19 she reassigned the stall to the Vice President of Budget and Finance. That particular

20 reserved parking staff is clearly marked for use only by the President/CEO of the

21 Airport Authority. The designation of the parking stall to the Vice President of Budget and

22 Finance clearly connotes preferential treatment and is a violation of Airport Authority rules and

23 regulations.

24       o.     The Vice President of Operations instructed the Plaintiff to use his

25 position as Director of Landside Operations to secure a limousine from one of the Airport's

26 service providers to be used as part of the procession for a colleague's wife's

27 funeral.

28

20

34.    Under the Authority's Ethics Code found in Article 2, et seq.: "No Board member or employee of the Authority shall use or threaten to use any official power or influence to discourage, restrain or interfere with any other person for the purpose of preventing such person from acting in good faith to report or otherwise to bring to the attention of the Board *or any other appropriate agency, office or department* any information which, if true, would constitute:

(1) a work-related violation by a Board member or employee of any law or regulation, including this Ethics Code;

(2) a gross waste of Authority funds;

(3) a gross abuse of power;

(4) a conflict of interest of a Board member or employee; or

(5) No Board member or employee of the Authority shall use or threaten to use any official authority or influence to effect any action as a reprisal against a Board member or employee who reports or otherwise brings to the attention of the Board or other appropriate agency, office or department, any information regarding the subjects described in Subsection (a)

The Plaintiff attempted, time and time again, to bring to the attention of the attorney from LUCE FORWARD the above-stated Ethics violations and every single time the attorney from LUCE FORWARD interrupted and spoke over the Plaintiff to prevent the Plaintiff from reporting violations, both legal and ethical, that he was aware of and had not been 'investigated.' The attorney was not interested in knowing about the above-stated violations or any incident that did not show wrongdoing by the Plaintiff. The Plaintiff did his best to report, disclose, divulge and bring to the attention of his employer's 'investigator' (the attorney from LUCE FORWARD) facts and information relative to both suspected and actual violations of state law directly related to his job. The Plaintiff observed improper governmental activity by employees of the Authority undertaken in the performance of the employee's official duties that demonstrated economic waste, incompetency and inefficiency. The 'investigator' Thella Bowens hired (the lawyer from LUCE FORWARD) attempted to use and used, both directly

21

1  and indirectly, intimidating, threatening, coercing, and commanding tactics to influence the

2  information he was told by the Plaintiff and by the witnesses during their interviews.

3  Thella Bowens could not have reasonably believed that taking personnel action, including

4  hiring and directing an 'investigation' into the Plaintiff's alleged but not articulated violations

5  of the Authority's Ethics policy was and is justified based on her own and her direct report

6  employees' own well-know violations of the same policies and Codes.  Bowens was well aware

7  that the evidence of her own violations were known to the Plaintiff and when he reported those

8  violations to her hired 'investigator' he was cut off and told not to discuss them.  Other

9  witnesses also disclosed to Bowen's 'investigator' knowledge of Bowen's wrongdoing as well

10  as the Ethics violations by her Vice Presidents that Bowens condoned and ratified.

11  35.      The Plaintiff contends he disclosed a number of legal violations for which the Authority

12  retaliated against him.

13         The first disclosure arose from the Plaintiff's opposition to a "side deal" that Bryan

14  Enarson made with a concessionaire at the airport, Host, that restricted the Authority's ability to

15  annex the space needed to comply with ADA requirement for the

16  women's restrooom at the airport..  The result of Enarson's actions increased the project budget

17  by over $2 million.  The Plaintiff believed this resulted in legal noncompliance with the ADA

18  requirements that demand access for disabled individuals which were well settled at that time

19  and took precedence over the handshake agreement Enarson made without negotiation with

20  Host.

21         The second disclosure also arose from events involving Enarson, who was the lead

22  negotiator on behalf of the Airport for the property known as the General Dynamics property.

23  Enarson proceeded with the negotiations without ascertaining the extent of the "public hazards

24  around the airport"and resulted in a lease agreement that loses millions of dollars per year for

25  the Authority.

26         The third disclosure involved the misuse and waste of the usable land around the

27  property known as the Teledyne Ryan property.  Enarson proceeded with the negotiations

28

1   without ascertaining the extent of the "public hazards around the airport" and that resulted in a

2   lease agreement that loses millions of dollars per year for the Authority.  Enarson then blocked

3   open discussion of the problem and no resolution has been attempted.

4          The fourth and final disclosure encompassed the issue of the contract bid by the

5   Lindbergh Parking, Inc.  (LPI) and its failure to meet its contract expectations and the

6   offenses and actions by the LPI that indicate a lack of business integrity.

7          The Plaintiff believes it was the personal relationship of the President/CEO of the

8   Authority, Thella Bowens (Doe No.1) who has shown favoritism, partiality and a refusal to

9   hold those of the same minority race as herself to the same accountability as the Ethics Code

10  and other laws and regulations require.  Besides Enarson, who is white, and a

11  premier kiss ass, Bowens has never applied the same policy standards to herself or to her

12  Vice Presidents who are black.  Maurice Gray is black and is the beneficiary of not having to

13  comply with the standards and requirements that other Authority contractors have been held to.

14  By eliminating the Plaintiff from his job she has assured that no one else surrounding her at the

15  high management levels will speak up or oppose whatever it is she desires to do, both

16  personally and in her job position.  Thella Bowens (Doe No.1) made it clear through the

17  attorney she hired from LUCE FORWARD and through the investigator the attorney hired that

18  she alone would make the determinations as to conclusions and findings of the two.  Bowens

19  (Doe No.1) met on a regular, if not daily basis, with the two she hired and reviewed their

20  "findings" and personally directed them in their 'work', including their 'work' that invaded the

21  Plaintiff's privacy and had no relation whatsoever to the Plaintiff's job or his job performance.

22  36.    The Ethics Code, Art. 2, Part 2.0, Section 2.05 (a) requires that : "Board members

23  and employees of the Authority shall comply with the laws of the . . . State of California and the

24  ordinances, codes, rules and regulations of the Authority in the performance of their public

25  duties. . . ." Section 1.17 (a) of the Ethics Code provides: "Whenever in this Code any act or

26  omission is made unlawful, it shall include causing, permitting, aiding or abetting such act or

27  omission." Under these laws, all employees, including Thella Bowens (Doe No.1) and her Vice

28

23

21-300

1  Presidents and Directors who participated in acts that violated the Ethics Code, whether by

2  requesting them, directing them, condoning them or ratifying them, are "causing, permitting,

3  aiding or abetting" the acts.

4      37.     The Plaintiff believed in good faith that LPI was in violation of California Public

5  Contracting laws found in the California Public Contract Code Section 100 et seq.  The

6  discovery that LPI had presented false expenses in its bid submission, combined with the

7  unsatisfactory performance of the contract, its failure to submit insurance documents and its

8  lack of business integrity when given time and opportunities to correct its wrongdoing seriously

9  affected the reliability and credibility of the performance of LPI.  The final deadline for

10  Maurice Gray to submit a job description that detailed the duties he performed as President of

11  LPI to justify his salary of $60,000.00 was quickly approaching when Thella Bowens (Doe

12  No.1) made the decision to begin an 'investigation' of the Plaintiff.  Bowens wanted Maurice

13  Gray to continue in that position, partly because he was black, and she favored protection of the

14  black employees, but also because she did not want anyone, including the Plaintiff, to speak up

15  and oppose whatever decisions she made, whether they involved misuse of government funds

16  as the Plaintiff believed when he opposed and objected to the leases that cost the Authority

17  millions of dollars for nothing in exchange.  Over and over again the Plaintiff voiced his

18  opinions that waste of money occurred when Enarson, with Bowen's approval, failed to

19  consider the budget and its inability to sustain payments when no revenue could be generated

20  from projects improperly negotiated and Bowen's refusal to address those problems.  LPI was

21  the last straw for Bowens.  The Plaintiff believed that Bowens and her Vice Presidents were

22  using favoritism as a form of corruption in the LPI contract.  There is no other "justification"

23  for the timing, the identity of the retaliations, and the secretive and calculated course of conduct

24  that Bowens called for choosing to 'investigate' the Plaintiff at that time.  Bowens cannot show

25  independent reasons for her hiring of an 'investigator' that demonstrates clear and convincing

26  evidence that she would have conducted an 'investigation' if the Plaintiff had not engaged in

27  protected disclosures or refused to participate in suspected and actual violations of state law

28

24

1  governing public contracts.

2  38.    The Ethics policies and Code are not uniformly followed, enforced or used by

3  Authority management.  The Plaintiff was singled out because he opposed and objected on

4  numerous occasions to the actions of the Authority's President/CEO Thella Bowens and her

5  Vice Presidents when he believed he had reasonable cause to believe that the opposition was

6  necessary to disclose a violation of state statute, or a violation or noncompliance with a state

7  statute, rule or regulation.  The Authority, as the Plaintiff's employer, retaliated against the

8  Plaintiff for having exercised his rights under Labor Code section 1102.5(a)(b) ( c).

9  39.    Thella Bowens (Doe No.1) hired an attorney from LUCE FORWARD and he

10  hired an investigator to supposedly look into "allegations" of violations of the Ethics policy and

11  Code by the Plaintiff.  There is nothing in either the Ethics policy or the Ethics Code of the

12  Authority that invites "investigating" anything in regard to his  marriage.  The Plaintiff's private

13  life, including his marriage, has nothing to do with his job duties, his job position or any matter

14  that is of any concern to the Authority or to Thella Bowens personally.  The attorney from LUCE

15  FORWARD hired by Thella Bowens and the investigator hired by the attorney from LUCE

16  FORWARD are both subject to the Authority's Ethics policies and to the Ethics Code of the

17  Authority, as both were hired by Thella Bowens on behalf of the Authority as consultants to her

18  and the officers of the Authority with whom she shared the decision making of the

19  'investigation.' In addition, Thella Bowens and all of those with whom she  shared the

20  'investigation' responsibilities were and are charged with knowledge of the Ethics policies and

21  Ethics Code of the Authority.

22  40.    The interrogation of witnesses as to their observations, personal knowledge or opinions

23  regarding the Plaintiff's marriage, including communication within his marriage, the manner of

24  communication between the Plaintiff and his wife, the appearance of the marriage to outsiders,

25  and any other matters that the attorney for LUCE FORWARD and his hired investigator made

26  regarding the Plaintiff's marriage from witnesses who were being interviewed regarding an

27  'investigation' whose subject matter had not been revealed to the Plaintiff was intentionally

28

25

1  intruded in by the hired help of the Authority. The intrusion of the Authority's 'consultants' and
2  the stated discussion regarding the findings of the 'consultants' with the Authority management
3  on a regular basis that included findings of the interrogation of witnesses on the subject of the
4  Plaintiff's marriage was highly offensive to the Plaintiff.
5      41.    The investigator hired by the attorney from LUCE FORWARD coerced the owner of the
6  car repair shop (where the Plaintiff had his car repaired) to hand over copies of car repair
7  records and invoices showing payment of the car repairs. The owner immediately contacted the
8  Plaintiff to explain that the investigator told him he was hired by the Authority to look into the
9  Plaintiff's records and threatened him with legal proceedings if he did not immediately turn over
10  the records to him. The owner protested and opposed the demand but was coerced into
11  providing the records by the investigator. Neither the Authority, the attorney for LUCE
12  FORWARD or the investigator had sought permission from the Plaintiff to obtain or look at
13  those private records. The Plaintiff was furious at the intrusion into his private affairs without
14  his knowledge or permission. Given the instruction that he could not tell the owner what the
15  circumstances of the invasion into his privacy meant, the Plaintiff was further denied the
16  opportunity to defend himself from the accusations made by the Authority. Once again, the
17  Plaintiff was left in a position of not knowing himself the reason for the 'investigation' and the
18  embarrassment that this investigator could act to further leave the Plaintiff in another position of
19  looking like he had done something wrong when he had not.
20      42.    The circumstances surrounding the Authority's "investigation" were part of a calculated
21  scheme to find some violation that could "justify" the termination of the Plaintiff because he had
22  made disclosures regarding the Authority's operations and budget that he believed were illegal
23  and would prevent the Plaintiff and others from reporting similar violations by the Authority and
24  allow the Authority to continue to operate in whatever manner it desired to do so regardless of
25  the consequences to the budget of the Authority.
26
27
28

26

43.    The Plaintiff was forced to resign his position from the Authority because he had disclosed in good faith to his own Authority, a government agency, the violations of the Authority regarding its misuse of money, waste of government funds, the violations of law regarding four projects of which he had personal knowledge of the violations of law and rules and regulations that the Authority violated repeatedly.

44.    The Plaintiff absolutely made  clear his opposition in private meetings, in public meetings, and at open door and closed door meetings, to the failure of the Authority to implement the annexation of the space needed to have the women's restroom comply with the ADA requirements to provide access to disable travelers and to complete the project at a reasonable cost and in a timely manner.  The American Disabilities Act and its enabling statutes and regulations are federal law and federal regulations.

45.    The Plaintiff made clear to the Vice President to whom he reported that he objected and opposed during the negotiations and the due diligence process that Enarson ( Vice President and confidante to Thella Bowens ) was not properly understanding the lawful use and conditions of the General Dynamics property that resulted and continues to result in losses of millions of dollars for the Authority in violation California Public Utilities Code section 170056(f)(1)(2)(3)

46.    The Plaintiff disclosed and opposed the misuse and waste of the unusable land around the Teledyne Ryan property at Capitol Improvement meetings, at weekly Operations meetings, at Directors meetings and other times that the acts violated the California Public Utilities Code section 170056(a)(1)(B)

47.    The Plaintiff conducted numerous disclosure meetings with the Vice President to whom he reported regarding the failure of LPI to meet the expenses and conditions that the company had used to bid on the parking operations contract in violation of  California Code of Contracts section 1100; section 100.  The Plaintiff also met repeatedly with Maurice Gray of LPI and gave him extended help and time to come into compliance on the contract and he failed and

27

21-304

1  refused to do so.  This correlated with the idea of conducting an 'investigation' of the Plaintiff

2  rather than of the contractor.

3  48.    The conduct of the Defendants was a substantial factor in causing the Plaintiff's

4  harm.

5  49.    As a direct and proximate cause of the acts and conduct described above, Plaintiff

6  has ben and continues to be subjected to shame, humiliation and extreme emotional distress, all

7  to the Plaintiff's damages in a sum as yet undetermined, and Plaintiff requests leave of court to

8  state such damages in accordance with proof at trial.

9  50.    As a direct and proximate cause of said acts of harm and conduct against the

10  Plaintiff by Defendants and DOES 1 through 20 the Plaintiff has lost standing in his community,

11  been held up to ridicule and shame, suffered great mental and emotional distress, worry, fear of

12  his economic future and depression, all to the Plaintiff's

13  damage in a sum that cannot be computed at this time, and the Plaintiff requests leave to amend

14  this complaint to state those damages in accordance with proof at trial.

15

16  WHEREFORE, Plaintiff JOSE HERNANDEZ respectfully prays this court:

17       1.    For general damages according to proof;

18       2.    For attorneys fees and costs on this suit pursuant to CCP Section 1021.5;

19       3.    For such other and further relief as the court deems just and proper.

20

21  Dated: March 26, 2007

22                         CATHRYN CHINN, Attorney for

23                         Plaintiff Jose Hernandez

24

25

26

27

28

28

1  FRED M. PLEVIN (SBN 126185)
   SANDRA L. MCDONOUGH (SBN 193308)
2  ALBERT R. LIMBERG (SBN 211110)
   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
3  401 B Street, Tenth Floor
   San Diego, California 92101-4232
4  Telephone: 619-237-5200
   Facsimile: 619-615-0700
5
   AMY S. GONZALEZ (SBN 181745)
6  **SAN DIEGO COUNTY REGIONAL AIRPORT**
   **AUTHORITY**
7  3225 N. Harbor Drive
   San Diego, CA 92138
8  Telephone: (619) 400-2425
   Facsimile: (619) 400-2428
9
10 Attorneys for Defendant
   SAN DIEGO COUNTY REGIONAL AIRPORT
11 AUTHORITY

*F I L E D*
*Clerk of the Superior Court*

MAR 2 9 2007

By: C. BANKS, Deputy

12          SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                   COUNTY OF SAN DIEGO

| | |
|---|---|
| 14  JOSE HERNANDEZ, | CASE NO. GIC 871979 |
| 15          Plaintiff, | **REPLY BRIEF IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND/OR MOTION TO STRIKE** |
| 16       v. | |
| 17  SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY, a public entity; and DOES 1 through 12, inclusive, | |
| 18 | |
| 19          Defendants. | |

Date:            April 6, 2007
Time:            9:30 a.m.
Dept:            71
Judge:           Hon. Richard E. Strauss
Complaint Filed: September 1, 2006
Trial Date:      Not Set

**EXEMPT FROM FEES**
**GOVT. CODE § 6103**

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE

CASE NO. GIC 871979

**COPY**

# I. INTRODUCTION AND SUMMARY OF ALLEGATIONS

Plaintiff Jose Hernandez essentially concedes that the Authority's demurrer to the second through fourth causes of action in his First Amended Complaint ("FAC") is well-taken because Hernandez makes no argument in his opposition regarding those causes of action and the proposed Second Amended Complaint ("proposed SAC")[1] omits those causes of action. Therefore, the Authority respectfully requests that the Court sustain its demurrer to the second through fourth causes of action without leave to amend.

Hernandez' remaining cause of action under Labor Code section 1102.5 is also defective and Hernandez has not cured the deficiencies through the proposed Second Amended Complaint. Specifically, none of the four disclosures support a Labor Code section 1102.5 claim:

- Hernandez has not articulated how the Authority's General Dynamics lease violated any statute, rule or regulation when the financial terms of that lease are as dictated by the Public Utilities Code. Thus, Hernandez could not have had a reasonable belief that the lease violated any law;

- Hernandez has not articulated a law that he reasonably believed the Authority allegedly violated by entering into the Teledyne Ryan lease;

- Hernandez has not articulated a law that he reasonably believed the Authority allegedly violated with regard to the LPi contract either; and

- As a matter of law, the Authority increasing the restroom project expense cannot support a reasonable belief that the Authority violated the ADA or any of its implementing regulations.

In addition to the above deficiencies, the First Amended Complaint and proposed SAC contain numerous irrelevant and improper allegations as set forth in the Authority's notice of motion and motion to strike, which Hernandez has almost wholly ignored and failed to respond to.

For the foregoing reasons, and as more fully discussed in the Authority's supporting papers,

---

[1] Hernandez does not have the right to file his Second Amended Complaint without leave from the Court. (CCP § 473(a)(1).) The Authority references the proposed SAC throughout this reply in an effort to show that even the proposed amendment does not cure the deficiencies in Hernandez' FAC, and leave should not be granted.

1    the Authority respectfully requests that this court sustain its demurrer without leave to amend as to

2    each cause of action in the FAC.  Leave to amend should not be granted because Hernandez'

3    proposed SAC that does not address or cure any of the deficiencies in the Labor Code section

4    1102.5 cause of action from the FAC.  In the alternative, defendant moves to strike those allegations

5    that are barred by the various deficiencies as detailed in the notice of motion and motion to strike

6    the FAC.  In the event that the Court gives Hernandez one more opportunity to amend, the

7    Authority requests that any stricken allegations be removed from the SAC as well.

8    ## II.  DEMURRER AND MOTION TO STRIKE STANDARDS

9    **A.    Hernandez Must Plead with Specificity Because the Authority is a Public Entity.**

10        Hernandez has not met his burden of pleading his material allegations with particularity, as

11   the law requires when a plaintiff seeks to impose liability on a public entity.  (*Lopez v. Southern*

12   *Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.)  As a result, the Authority's demurrer should

13   be sustained without leave to amend.

14   **B.    In the Alternative, this Court May Strike any Improper or Irrelevant Material**

15        In the event that this Court does not sustain the Authority's demurrer to each cause of action,

16   the Court has the authority to strike any improper or irrelevant matter from the pleadings pursuant to

17   California Code of Civil Procedure sections 435 and 436(a).  Not surprisingly, Hernandez almost

18   completely disregarded the Authority's bases for moving to strike improper and irrelevant

19   allegations of the complaint in his opposition.  For example, paragraph 37 of the FAC, and each of

20   its subparts, contains allegations of alleged policy violations Hernandez did not "disclose" for

21   purposes of his Labor Code section 1102.5 claim.  (Compare FAC ¶37 with FAC ¶39.)  Further,

22   Hernandez cannot maintain a private right of action for these alleged ethics violations committed by

23   other individuals within the Authority because there is no private right of action under the

24   Authority's own Ethics Code.  (See *Vikco Insurance Services, Inc. v. Ohio Indemnity Company*

25   (1999) 70 Cal.App.4th 55, 62-63, citing *Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988)

26   46 Cal.3d 287, 294; *Arriaga v. Loma Linda University* (1992) 10 Cal.App.4th 1556, 1563-1564

27   [applying *Moradi-Shalal* and holding provisions of Government Code do not create private right of

28   action where statute showed no such intent].)  Since Hernandez did not "disclose" these alleged

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE

2

CASE NO. GIC 871979

22-308

1    ethics violations and he cannot maintain a separate cause of action based on these alleged

2    violations, the allegations must be stricken as improper and irrelevant matter. (CCP §§ 435-436.)

3    This is but one example of irrelevant and improper allegations in the FAC, which are still contained

4    in the SAC, and for which Hernandez has not properly set forth a reason for those allegations to

5    remain in the complaint. For a complete listing of the improper and irrelevant matter, the Authority

6    refers this court to its detailed notice of motion and motion to strike.

7    **C.    It is Proper for this Court to Sustain the Demurrer to the Labor Code section 1102.5**

8    **Claim**

9        Finally, Hernandez implies that sustaining a demurrer to his Labor Code section 1102.5

10   claim is improper because "whether or not an employee has 'reasonable cause' to believe the

11   disclosure was a protected disclosure is a question for the trier of fact." (Opposition 4:6-7.)

12   However, the case cited by Hernandez, *Green v. Ralee Engineering* (1998) 19 Cal.4th 66, does not

13   support Hernandez' proposition that "reasonable cause" is a question for the trier of fact. In fact,

14   *Green* actually supports the Authority's contention that the Court may determine as a matter of law

15   whether a plaintiff could have a reasonable belief. (*Id.* at p. 87.) In this case, Hernandez' own

16   allegations negate his legal conclusion that he could have had "reasonable cause" to believe he was

17   disclosing a violation of law, because the facts he has alleged compel the conclusion that such a

18   belief could not have been a reasonable one. Accordingly, it is proper for this Court to resolve the

19   "reasonable cause" issue on demurrer and/or motion to strike.

20   **III. HERNANDEZ FAILED TO PLEAD SUFFICIENT FACTS TO WITHSTAND**

21   **DEMURRER AS TO HIS LABOR CODE SECTION 1102.5 CLAIM**

22       Hernandez' FAC and proposed SAC still fall far short of setting forth the specific facts

23   required to plead his Labor Code section 1102.5 claim. To establish a *prima facie* case of

24   retaliation under Labor Code section 1102.5(b), as with FEHA and Title VII, Hernandez must allege

25   that (1) he engaged in a "protected activity," (2) the Authority took an adverse employment action

26   against him, and (3) a causal link exists between his protected activity and the adverse employment

27   action. (*Morgan v. Regents of University of Cal.* (2000) 88 Cal.App.4th 52, 69.) In order to allege

28   that Hernandez engaged in a protected activity, as required by the first prong of the prima facie case,

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE

3

CASE NO. GIC 871979

22-309

1 | Hernandez must allege that he disclosed, to a government or law enforcement agency, information

2 | that he reasonably believed disclosed a violation of state or federal statute, rule, or regulation. (Lab.

3 | Code § 1102.5, subd. (b).)  It is not enough for Hernandez to allege mere conclusions of law to

4 | support his retaliation claims. (*Ankeny v. Lockheed Missiles and Space Co.* (1979) 88 Cal.App.3d

5 | 531, 537.)

6 |        Hernandez' claim cannot even get off the ground because he did not, and could not have,

7 | reasonably believed that he disclosed violations of a state or federal statute, rule, or regulation.

8 | Even though Hernandez amended his complaint to reference federal and state statutes, he either

9 | knew, or as a matter of law he should have known, that the alleged wrongful acts were permissible.

10 | As a result, he could not have reasonably believed that the Authority violated a state or federal law,

11 | rule or regulation, and his retaliation claims both as alleged in the FAC and in the proposed SAC

12 | fail.

13 | **1.    Alleged Violations of the Authority's Ethics Code Cannot Support a Retaliation**

14 | **Claim**

15 |        By its very terms, Labor Code section 1102.5 requires a Plaintiff to disclose a violation of a

16 | state or federal law, rule or regulation. (See Labor Code § 1102.5(b).)  Hernandez' amended

17 | complaint focuses primarily on alleged violations of the Authority's own Ethics and Contracts

18 | Codes, which are simply internal guidelines and not state or a federal laws, rules or regulations.

19 | Accordingly, the Authority moves to strike all references to the Authority's Ethics or Contract

20 | Codes violations in the FAC because those allegations cannot support a Labor Code section 1102.5

21 | cause of action as a matter of law.

22 | **2.    Hernandez Could Not Have Had a Reasonable Belief That He Was Disclosing a**

23 | **Violation of a State or Federal Law, Rule or Regulation.**

24 |        Even *assuming arguendo* that the Ethics Code falls within the definition of a federal or state

25 | law under Labor Code section 1102.5, the facts, as alleged do not support Hernandez' ultimate

26 | conclusion that he reasonably believed that the Authority's actions violated any statutes, nor can

27 | these facts reasonably be interpreted to amount to any such violation. (See *Ankeny, supra,* 88

28 | Cal.App.3d at p. 537 [complaint must be supported by more than conclusory allegations].)  Further,

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE

4

CASE NO. GIC 871979

22-310

1   Hernandez has the burden of pleading the specific statute that was allegedly violated, and he has

2   failed to meet this burden with regard to his disclosures. (See *Green v. Ralee, supra,* 19 Cal.4th at

3   p. 83, fn. 7.) Without facts supporting Hernandez' alleged reasonable belief that the Authority's

4   actions violated a federal or state law or specific references to code sections that were violated,

5   Hernandez' retaliation claims must fail.

6                **a.**       **The General Dynamics Lease.**

7         One of Hernandez' alleged protected disclosures involved uncovering alleged financial

8   problems with the General Dynamics Lease. (FAC ¶ 12.) Both parties seem to agree that the terms

9   of the General Dynamics Lease were mandated by Public Utilities Code section 170056(f). If

10  anything, Hernandez' FAC alleges compliance with Public Utilities Code section 170056(f), not a

11  violation of that statute. (FAC ¶12.) Hernandez now seems to add in the proposed SAC that the

12  terms of the lease were in violation of Public Utilities Code section 170056(f)(3), but Hernandez

13  does not set forth, even in vague terms, which terms of the lease violated subsection (f)(3). In fact,

14  the only alleged unlawful portion of the lease on which Hernandez focuses is the dollar amount for

15  the lease, which is set forth and mandated by subsection (f)(1). Hernandez therefore could not have

16  had a reasonable belief that the Authority was violating the law by accepting the General Dynamics

17  lease terms, and the Authority moves to strike any reference to the General Dynamics lease from the

18  FAC. In addition, the Authority's demurrer to Hernandez' retaliation claim based on alleged

19  disclosures of the General Dynamics lease should be sustained without leave to amend.

20               **b.**       **The Teledyne Ryan Lease.**

21        Similarly, Hernandez has failed to cure the defects in his allegations with regard to the

22  Teledyne Ryan lease. As pointed out in the moving papers, Hernandez alleges that the

23  contamination on and the cost of the Teledyne Ryan parking lot violated Public Utilities Code

24  section 170056(a)(1)(B), but this section only states that the Teledyne Ryan property shall remain

25  the property of the San Diego Unified Port District. This code section has absolutely nothing to do

26  with environmental contamination or the negotiated price for the lease. Hernandez tries to resurrect

27  his Teledyne Ryan disclosure by stating in his opposition that the terms of the lease were not "in

28  accordance with reasonable commercial practice . . . **as required by statute**" (Opposition 10:4,

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE

5

CASE NO. GIC 871979

22-311

1  emphasis added), but he does not set forth the alleged statute that was violated by the Authority's

2  acts with regard to the Teledyne Ryan parking lot lease. Simply put, Hernandez has not been able to

3  articulate a statute that was violated by the Teledyne Ryan parking lot lease, or that he reasonably

4  believed was violated, as required by Labor Code section 1102.5. Hernandez has not cured these

5  fundamental errors in his proposed SAC either (see SAC ¶13, p. 6, line 20). As a result, the

6  Authority respectfully requests that this Court strike all references to the Teledyne Ryan lease

7  and/or sustain the Authority's demurrer to Hernandez' retaliation cause of action predicated on this

8  lease.

9          **c.**    **Lindbergh Parking**

10       In both the FAC (FAC ¶18) and the proposed SAC (SAC ¶14), Hernandez alleges that he

11  reasonably believed that the LPi contract violated the Authority's own Contract Code and the

12  "California Code of Contracts". As discussed above, the Authority's internal rules are not the

13  equivalent of a state or federal statute, rule or regulation, and thus cannot support a claim under

14  Labor Code section 1102.5. In addition, the "California Code of Contracts" does not exist and thus

15  cannot be the basis for a Labor Code section 1102.5 claim. Even if Hernandez meant to refer to the

16  Public Contract Code, his claim still fails. Section 100(b) of the Public Contract Code merely states

17  the legislature's intent in enacting the code "is to ensure full compliance with competitive bidding

18  statutes as a means of protecting the public from misuse of public funds." None of Hernandez'

19  disclosures regarding LPi can be construed as a disclosure regarding this statement of legislative

20  intent.

21          **d.**    **The Restroom**

22       Finally, Hernandez has failed to cure the problematic allegations regarding the restroom

23  project. Although Hernandez added a conclusory allegation in the proposed SAC that he had

24  reasonable cause to believe that the Authority was in violation of the ADA, the actual facts that are

25  pled do not support his conclusion. Instead, he alleges that the restroom project became more

26  expensive because the Authority would not utilize certain space in order to expand the restrooms.

27  (See FAC ¶11.) But there is no argument, or case support, for the concept that increased costs

28  associated with the restroom project can or did, violate the ADA, or even that it could have violated

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE

6

CASE NO. GIC 871979

22-312

1   the ADA. Thus, Hernandez could not have had a reasonable belief that any such violation occurred.

2   ### IV. CONCLUSION

3   The Court should sustain its demurrer to the second, third and fourth causes of action

4   without leave to amend since Hernandez has not opposed the demurrer to these claims, nor has he

5   even proposed to re-allege them in an amended pleading. Since Hernandez has demonstrated an

6   inability to cure the defects in his first cause of action, the Authority respectfully requests that the

7   Court sustain its demurrer to all causes of action in the First Amended Complaint without leave to

8   amend. In the alternative, the Authority requests that the court strike improper allegations from the

9   First Amended Complaint, as further detailed in the notice of motion and motion to strike. Should

10  Hernandez be permitted to amend, he should be ordered to exclude any stricken allegations from his

11  amended pleading.

12

13  Dated: March 29, 2007                        PAUL, PLEVIN, SULLIVAN &
                                                CONNAUGHTON LLP

14                                              By: _Sandra L McDonough_

15                                              FRED M. PLEVIN
                                                SANDRA L. MCDONOUGH

16                                              ALBERT R. LIMBERG
                                                Attorneys for Defendant

17                                              SAN DIEGO COUNTY REGIONAL
                                                AIRPORT AUTHORITY

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF                       7                           CASE NO. GIC 871979
DEMURRER/MOTION TO STRIKE

22-313

F I L E D
Clerk of the Superior Court
MAR 2 9 2007
By: C. BA___

**PROOF OF SERVICE**

I, Julia M. Szlakowski, the undersigned, hereby declare that I am over the age of eighteen years and not a party to this action. I am employed, or am a resident of, the County of San Diego, California, and my business address is: Paul, Plevin, Sullivan & Connaughton LLP, 401 B Street, Tenth Floor, San Diego, California 92101.

On March 29, 2007, I caused to be served the following document(s):

**REPLY BRIEF IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S DEMURRER TO PLAINTIFF'S FIRST AMENDED COMPLAINT AND/OR MOTION TO STRIKE**

on the interested party (ies) in this action by placing ☑ a true copy ☐ the original thereof and addressed as follows:

Cathryn Chinn, Esq.
1901 First Avenue, Suite 400
San Diego, CA 92101
Tel: 619-295-4190 / Fax: 619-295-9529
**Attorney for Plaintiff Jose Hernandez**

☐ (By **MAIL SERVICE**) I then sealed each envelope and, with postage thereon fully prepaid postage, I placed each for deposit with United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

☐ (By **FACSIMILE**) I transmitted the documents by facsimile machine, pursuant to California Rules of Court, Rule 2006. The facsimile machine I used complied with Rule 2003 and no error was reported by the machine. The transmitting facsimile machine number is **619-615-0700**. The fax number of the party being served is **619-295-9529**. Pursuant to Rule 2006.

☑ (By **OVERNIGHT DELIVERY**) I caused to be delivered such envelope by hand to the office of the addressee. I then sealed each envelope and, with postage thereon fully prepaid, I placed each for deposit this same day, at my business address shown above, following ordinary business practices for overnight delivery.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed March 29, 2007, at San Diego, California.

JULIA M. SZLAKOWSKI

**EXHIBIT 23**

CM-110

**ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):*
Fred M. Plevin (126185)
Sandra L. McDonough (193308)
Paul, Plevin, Sullivan & Connaughton LLP
401 B Street, Tenth Floor
San Diego, CA 92101
TELEPHONE NO.: 619-237-5200    FAX NO. *(Optional):* 619-615-0700
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* San Diego County Regional Airport Authority

FOR COURT USE ONLY
Clerk of the Superior Court
F I L E D
APR 0 6 2007
By: M. WONG-JIMENEZ, Deputy

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF** San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: P.O. Box 12018
CITY AND ZIP CODE: San Diego, CA 92112-0128
BRANCH NAME:

PLAINTIFF/PETITIONER: Jose Hernandez

DEFENDANT/RESPONDENT: San Diego County Regional Airport Authority

| CASE MANAGEMENT STATEMENT | CASE NUMBER: |
|---|---|
| (Check one): [X] UNLIMITED CASE (Amount demanded exceeds $25,000) [ ] LIMITED CASE (Amount demanded is $25,000 or less) | GIC871979 |

A CASE MANAGEMENT CONFERENCE is scheduled as follows:
Date: April 20, 2007    Time: 10:00 a.m.    Dept.: 75    Div.:    Room:
Address of court *(if different from the address above):*

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. [X] This statement is submitted by party *(name):* San Diego County Regional Airport Authority
   b. [ ] This statement is submitted jointly by parties *(names):*

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date):*
   b. [ ] The cross-complaint, if any, was filed on *(date):*

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. [ ] All parties named in the complaint and cross-complaint have been served, or have appeared, or have been dismissed.
   b. [ ] The following parties named in the complaint or cross-complaint
      (1) [ ] have not been served *(specify names and explain why not):*
      (2) [ ] have been served but have not appeared and have not been dismissed *(specify names):*
      (3) [ ] have had a default entered against them *(specify names):*
   c. [ ] The following additional parties may be added *(specify names, nature of involvement in case, and the date by which they may be served):*

4. **Description of case**
   a. Type of case in [ ] complaint [ ] cross-complaint    *(describe, including causes of action):*
      See 4(b)

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. January 1, 2007]

**CASE MANAGEMENT STATEMENT**

Legal
Solutions
& Plus

Cal. Rules of Court,
rules 3.720-3.730

23-315

CM-110

| PLAINTIFF/PETITIONER: Jose Hernandez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT:San Diego County Regional Airport Authority | GIC871979 |

4.  b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*
Hernandez alleges that defendant terminated his employment in retaliation for Hernandez' protected activities under Labor Code section 1102.5. Defendant denies any retaliation and liability in this action.

☐ *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5. **Jury or nonjury trial**
The party or parties request ☒ a jury trial ☐ a nonjury trial *(if more than one party, provide the name of each party requesting a jury trial):*

6. **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☒ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):* This case is not yet at issue. Once the case is at issue, defendant requests sufficient time and opportunity to file a motion for summary judgment prior to trial.
c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7. **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☒ days *(specify number):* 7
b. ☐ hours (short causes) *(specify):*

8. **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☒ by the attorney or party listed in the caption ☒ by the following:
a. Attorney: Amy Gonzalez
b. Firm: San Diego County Regional Airport Authority
c. Address: 3225 N. Harbor Drive, San Diego, CA 92138
d. Telephone number: 619-400-2425
e. Fax number: 619-400-2428
f. E-mail address: agonzale@san.org
g. Party represented: San Diego County Regional Airport Authority
☐ Additional representation is described in Attachment 8.

9. **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative Dispute Resolution (ADR)**
a. Counsel ☒ has ☐ has not provided the ADR information package identified in rule 3.221 to the client and has reviewed ADR options with the client.
b. ☐ All parties have agreed to a form of ADR. ADR will be completed by *(date):*
c. ☐ The case has gone to an ADR process *(indicate status):*

23-316

CM-110

| PLAINTIFF/PETITIONER: Jose Hernandez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: San Diego County Regional Airport Authority | GIC871979 |

10. d.  The party or parties are willing to participate in *(check all that apply)*:
    (1) ☐   Mediation
    (2) ☐   Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to close 15 days before arbitration under Cal. Rules of Court, rule 3.822)
    (3) ☐   Nonbinding judicial arbitration under Code of Civil Procedure section 1141.12 (discovery to remain open until 30 days before trial; order required under Cal. Rules of Court, rule 3.822)
    (4) ☐   Binding judicial arbitration
    (5) ☐   Binding private arbitration
    (6) ☐   Neutral case evaluation
    (7) ☐   Other *(specify):*

    e. ☐   This matter is subject to mandatory judicial arbitration because the amount in controversy does not exceed the statutory limit.
    f. ☐   Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.
    g. ☒   This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court *(specify exemption):*

**11. Settlement conference**
    ☒   The party or parties are willing to participate in an early settlement conference *(specify when):* July 2007

**12. Insurance**
    a. ☒   Insurance carrier, if any, for party filing this statement *(name):* ACE USA
    b.   Reservation of rights:   ☐ Yes   ☐ No
    c. ☐   Coverage issues will significantly affect resolution of this case *(explain):*

**13. Jurisdiction**
    Indicate any matters that may affect the court's jurisdiction or processing of this case, and describe the status.
    ☐ Bankruptcy      ☐ Other *(specify):*
    Status:

**14. Related cases, consolidation, and coordination**
    a. ☐   There are companion, underlying, or related cases.
        (1)   Name of case:
        (2)   Name of court:
        (3)   Case number:
        (4)   Status:
        ☐ Additional cases are described in Attachment 14a.
    b. ☐   A motion to   ☐ consolidate   ☐ coordinate   will be filed by *(name party):*

**15. Bifurcation**
    ☐   The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**16. Other motions**
    ☒   The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*
    Defendant expects to file a motion for summary judgment or, in the alternative, summary adjudication.

**CASE MANAGEMENT STATEMENT**

23-317

CM-110

| PLAINTIFF/PETITIONER: Jose Hernandez | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: San Diego County Regional Airport Authority | GIC871979 |

**17. Discovery**

   a. ☐ The party or parties have completed all discovery.

   b. ☒ The following discovery will be completed by the date specified *(describe all anticipated discovery)*:

| Party | Description | Date |
|---|---|---|
| Defendant | Written discovery | July 2007 |
| Defendant | Third party depositions | July 2007 |

   c. ☐ The following discovery issues are anticipated *(specify)*:

**18. Economic Litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90 through 98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case)*:

**19. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify)*:

**20. Meet and confer**

   a. ☒ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain)*: The parties will meet and confer prior to the CMC.

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify)*:

**21. Case management orders**

   Previous case management orders in this case are *(check one)*: ☐ none ☐ attached as Attachment 21.

**22. Total number of pages attached *(if any)*:** _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and ADR, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date: April 6, 2007

Sandra L. McDonough
   (TYPE OR PRINT NAME)

▶ *Sandra L. McDonough* (signature)
   (SIGNATURE OF PARTY OR ATTORNEY)

   (TYPE OR PRINT NAME)

▶ _____
   (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached

23-318

*Hernandez v. San Diego County Regional Airport Authority*
SDSC Case No. GIC871979

## PROOF OF SERVICE

I, the undersigned, hereby declare that I am over the age of eighteen years and not a party to this action. I am employed, or am a resident of, the County of San Diego, California, and my business address is: Paul, Plevin, Sullivan & Connaughton LLP, 401 B Street, Tenth Floor, San Diego, California 92101.

On April 6, 2007, I caused to be served the following document(s):

**CASE MANAGEMENT STATEMENT**

on the interested party (ies) in this action by placing ☑ a true copy ☐ the original thereof and addressed as follows:

Cathryn Chinn, Esq.
1901 First Avenue, Suite 400
San Diego, CA 92101
Tel: 619-294-9183 / Fax: 619-295-4190
**Attorney for Plaintiff Jose Hernandez**

☑    **(By MAIL SERVICE)** I then sealed each envelope and, with postage thereon fully prepaid postage, I placed each for deposit with United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

☐    **(By FACSIMILE)** I transmitted the documents by facsimile machine, pursuant to California Rules of Court, Rule 2006. The facsimile machine I used complied with Rule 2003 and no error was reported by the machine. The transmitting facsimile machine number is **619-615-0700**. The fax number of the party being served is **619-295-9529**. Pursuant to Rule 2006.

☐    **(By OVERNIGHT DELIVERY)** I caused to be delivered such envelope by hand to the office of the addressee. I then sealed each envelope and, with postage thereon fully prepaid, I placed each for deposit this same day, at my business address shown above, following ordinary business practices for overnight delivery.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed April 6, 2007, at San Diego, California.

Martha Martinez

PAUL PLEVIN
SULLIVAN &
CONNAUGHTON LLP

PROOF OF SERVICE                         1

**23-319**

1   FRED M. PLEVIN (SBN 126185)
    SANDRA L. MCDONOUGH (SBN 193308)
2   ALBERT R. LIMBERG (SBN 211110)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3   401 B Street, Tenth Floor
    San Diego, California 92101-4232
4   Telephone: 619-237-5200
    Facsimile: 619-615-0700

5
    AMY S. GONZALEZ (SBN 181745)
6   **SAN DIEGO COUNTY REGIONAL AIRPORT**
    **AUTHORITY**
7   3225 N. Harbor Drive
    San Diego, CA 92138
8   Telephone: (619) 400-2425
    Facsimile: (619) 400-2428
9

10  Attorneys for Defendant
    SAN DIEGO COUNTY REGIONAL AIRPORT
11  AUTHORITY

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                       COUNTY OF SAN DIEGO

14  JOSE HERNANDEZ,                      CASE NO. GIC 871979

15          Plaintiff,                   **NOTICE OF MOTION AND MOTION TO**
                                         **STRIKE PLAINTIFF'S SECOND AMENDED**
16      v.                               **COMPLAINT**

17  SAN DIEGO COUNTY REGIONAL
    AIRPORT AUTHORITY, a public entity;   Date:           May 11, 2007
18  and DOES 1 through 12, inclusive,     Time:           1:30 p.m.
                                          Dept:           75
19          Defendants.                   Judge:          Hon. Richard E. Strauss
                                          Complaint Filed: September 1, 2006
20                                        Trial Date:     Not Set

21                                            **EXEMPT FROM FEES**
                                             **GOVT. CODE § 6103**
22

23      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24      PLEASE TAKE NOTICE that on May 11, 2007, at 1:30 p.m., or as soon thereafter as

25  counsel may be heard, in Department 75 of the San Diego County Superior Court, located at 330

26  West Broadway, San Diego, California 92101, defendant San Diego County Regional Airport

27  Authority ("Authority") will and hereby does move to strike improper and irrelevant allegations

28  from the Second Amended Complaint ("SAC") pursuant to Code of Civil Procedure section

PAUL, PLEVIN,      NOTICE OF MOTION AND MOTION TO STRIKE          1
SULLIVAN &         PLAINTIFF'S SECOND AMENDED COMPLAINT
CONNAUGHTON LLP

1    436(a), as detailed in the table attached to this notice as Exhibit A and incorporated herein by

2    reference, on the following grounds:

   3     1.  Plaintiff has failed to allege a state or federal law, rule or regulation that the Authority

   4         allegedly violated, as required by Labor Code section 1102.5 (SAC ¶¶ 14, 18, 28, 29, 33

   5         (a-o), 34-38, 43, and 47.);

   6     2.  Plaintiff has failed to allege facts supporting his allegation that he reasonably believed that

   7         the Authority's actions violated a state or federal law, rule or regulation, as required by

   8         Labor Code section 1102.5(b).  (SAC ¶¶ 10, 11, 12, 13, 29, 33, 34-35, and 44-46);

   9     3.  Plaintiff has failed to allege that the Authority made or enforced a rule, policy or

10         regulation that prevented him from disclosing violations of law, as required by Labor

11         Code section 1102.5(a) (SAC ¶ 34); and

12     4.  Plaintiff has failed to allege that he disclosed certain purported ethical violations (SAC ¶

13         33).

14            This motion is based on this notice and motion, the accompanying memorandum of points

15    and authorities filed in support of the demurrer and this motion to strike, the entire file in this

16    case, and any other evidence or argument properly considered by the Court in connection with this

17    motion.

18            This Court follows California Rules of Court, Rule 3.1308.  The Court will therefore make

19    its tentative ruling available by telephone at (619) 531-3690 the court day before the scheduled

20    hearing at 3:00 p.m., or the tentative ruling may be reviewed on the Court's internet web site

21    (www.sdcourt.ca.gov) after 3:00 p.m. on that same day.

22    Dated: April 19, 2007

                                                PAUL, PLEVIN, SULLIVAN &
23                                                CONNAUGHTON LLP

24                                                By:

25                                                FRED M. PLEVIN
                                                SANDRA L. MCDONOUGH
26                                                ALBERT R. LIMBERG
                                                Attorneys for Defendant
27                                                SAN DIEGO COUNTY REGIONAL
                                                AIRPORT AUTHORITY

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S SECOND AMENDED COMPLAINT

2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## EXHIBIT A

### TABLE OF ALLEGATIONS TO BE STRICKEN FROM THE COMPLAINT

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| Para. 10, p. 4, lines 22-p. 5, lines 3, which reads: ". . . In the process it was revealed that Enarson had entered into side deals with a handshake agreement with Host that restricted the Operations Division's ability to annex the space which was needed to comply with ADA requirements. The Plaintiff had reasonable cause to believe that the Authority was in violation of the federal American Disabilities Act *[sic]* and its enabling regulations. Because Enarson refused to either take the space away from Host or renegotiate with them, major modifications had to be made that increased the project budget by over $2 million. During the long delays women were forced to endure the long lines to use the restrooms. There was no access for the disabled to the restroom for which the Plaintiff also had reasonable cause to believe that the Authority was in violation of the equal access provision and regulation of the ADA." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:

Plaintiff does not allege facts supporting his ultimate conclusion that he reasonably believed the Authority violated the ADA. Instead, he only alleges that he reported that the Authority was restricted from complying with the ADA and the Authority was thus required to increase the project budget by over $2 million. Plaintiff fails to allege which ADA provision was purportedly violated, or how the "side deal" or project's cost increase purportedly violated the ADA. Because plaintiff fails to allege facts supporting his conclusory allegation, he could not have had a reasonable belief that the Authority was violating the ADA, as required by Labor Code section 1102.5. |
| Paragraph 11, which reads: "The Plaintiff disclosed to members of the Authority Enarson's 'side deal' made with out negotiation that restricted the Authority's ability to annex the space needed to comply with ADA requirements for the airport restroom. Plaintiff also disclosed that Enarson's refusal had increased the project budget by over $2 million. On both counts, Plaintiff believed that he was disclosing legal violations: violations of the ADA requirements and also disclosing the unauthorized use of public assets because Enarson had a 'handshake' deal. The project suffered over three (3) years of delays due to Enarson's conflict with the airport's food and beverage | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:

Plaintiff does not allege facts supporting his ultimate conclusion that he reasonably believed the Authority violated the ADA. Instead, he only alleges that he reported that the Authority was restricted from complying with the ADA and the Authority was thus required to increase the project budget by over $2 million. Plaintiff fails to allege which ADA provision was purportedly violated, or how the "side deal" or project's cost increase purportedly violated the ADA. Because plaintiff fails to allege facts supporting his conclusory allegation, he could not have had a reasonable belief that the Authority was |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S SECOND AMENDED COMPLAINT

3

24-322

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| concessionaire." | violating the ADA, as required by Labor Code section 1102.5. |
| Paragraph 12, which reads: "The General Dynamics property is approximately 85 acres and sits along Pacific Coast Highway on the north side of the airport. The property contains a 1,600 parking stall long term parking lot (SAN Park Pacific Highway), and provides for Convention Center truck staging, rental car storage, and Cruise Ship truck staging. The terms of the original three year lease called for rent of $4.6 million year one, $6.6 million year two, and $8.6 million year three. Enarson was the lead negotiator on the lease. When Plaintiff compared the revenue potential of the approximately $3 million net from the parking operation and $1 million from the vehicle storage, the lease payments were too expensive and out of line. Plaintiff disclosed that the increased lease payments pulled funds away from the operating budget and he believed it was an unauthorized use of the Authority funds. Plaintiff also believed the failure to negotiate the lease properly was a violation of law and contrary to public interest. The Plaintiff had reasonable cause to believe that this failure and other actions related to the lease were unlawful acts that violated California Public Utilities Code section 170056 (f)(1)(2)(3)[.] Plaintiff had reasonable cause to believe that the terms of the lease were in violation of the California Public Utilities Code section 1700056(f)(3) *[sic]*. Despite the Plaintiff's objections to the actual revenue streams, Enarson decided the matter would go up to the Vice President level, where it died and no corrective action was taken. The lease was signed contrary to the objections of true forms of revenue streams." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff could not have had a reasonable belief that the General Dynamics lease violated a federal or state law because the terms of the lease were authorized by statute. (See Public Utilities Code § 170056(f); Labor Code § 1102.5 [reasonable belief requirement]) |
| Paragraph 13, which reads: "The Authority's Teledyne Ryan property lease calls for $3 | This paragraph is subject to a motion to strike under California Code of Civil Procedure |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| million in annual payments for the 46.77 acre property, located immediately east of the airport along Harbor Drive. At the time the lease was negotiated, with Enarson as the lead negotiator, contamination of the property allegedly required approximately $10 million. The failure to properly inspect and analyze the actual contamination resulted in a finding that the contamination remediation range would be approximately $30 million and would limit the use of the property to the existing 350 space long term parking lot (SAN Park Harbor Drive). Current revenues derived from the parking lot are approximately $1.2 million a year with about $700,000.00 in expenses, netting the Authority only $500,000.00. The original plan for the property was to phase in the parking development from what is now PhaseI, 350 parking stalls, to Phase 2, approximately 1,300 stalls. If the project had stayed as planned the property would now be developed and be positioned to take advantage of the increasing occupancy levels in the market. When the development process began the discovery of the deep environmental concerns with the property, which were not previously disclosed before Enarson completed the negotiations for the lease, significantly curtailed the purpose of the lease because of the unusable areas. Plaintiff disclosed the findings that there was no way to open Phase 2 of the parking development and also disclosed the enormous amount of money the Authority was paying for the lease. The Plaintiff believed that these acts by the Authority were unlawful and in violation of California Public Utilities Code section 170056(a)(1)(B). Further, the Plaintiff's disclosure of the unlawful acts occurred at committee meetings closed to the public, *[sic]* at management and staff meetings closed to the public. Plaintiff asked the Authority members, including Enarson, 'Why are we paying all this money? Why are we | section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff could not have had a reasonable belief that he was reporting a statutory violation when the referenced statute is in no way connected to the complained-of conduct. (See California Public Utilities Code section 170056(a)(1)(B).)<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| paying the rent?' Enarson replied, 'We're obligated to pay the rent.' Plaintiff stated that 'we can use a little bit, 351 parking stalls, yet we're paying $3 million and we can't use any of the rest. We're on the hook for the $30 million. We should only pay a pro rata amount.' Enarson's response was that it would get pushed up to the Vice President group. When the Teledyne Ryan transition team, of which the Plaintiff was a member, re-briefed the Vice Presidents, at a second meeting, the members and officers were in awe, and asked, 'Are you sure it's $30 million? Are you kidding me?' Enarson was agitated and Plaintiff received reports that Enarson was angry." | |
| Paragraph 14, p. 8, lines 9-23-p.9, line 8, which reads: "Plaintiff then discovered that LPI was double billing the Authority for Workers Compensation Insurance. He had noted that the premiums were running twice the amount of the previous year and were being billed to a different expense category. As a result Plaintiff posted a credit of approximately $150,000.00 against LPI's monthly request for reimbursement. Plaintiff had communicated throughout the process and disclosed LPI's wrongdoing and financial misuse issues with his direct supervisor, the Vice President of Airport Operations. The Vice President asked Plaintiff to work out the issues with Grey because he was a Minority Owned Business and the Authority needed the relationship in order to comply with FAA regulations governing Minority participation. Plaintiff had disclosed computational or other errors in LPI's bid submission; the unsatisfactory performance of the contract; the failure of LPI to submit insurance documents acceptable to the Authority; Grey's unjustified refusal to warrant his performance and other offenses and actions that indicated a lack of business integrity by | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he reasonably believes was violated by the LPi contract, as required by Labor Code section 1102.5. (Labor Code § 1102.5) Even if Plaintiff's reference to the "California Code of Contracts" is meant to refer to the California Public Contract Code, his claim still fails. Section 100(b) of the Public Contract Code merely states the legislature's intent in enacting that code is to "ensure full compliance with competitive bidding statutes as a means of protecting the public from misuse of public funds." None of Plaintiff's alleged disclosures could reasonably be interpreted as a disclosure of a "violation" of this statement of legislative intent.<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the |

NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S SECOND AMENDED COMPLAINT

24-325

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| LPI. Plaintiff believed that disclosures he made pursuant to the contract contained violations of the Ethics Code and also of rules and regulations of law." | plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |
| Paragraph 18, which reads: "By October 2005 the Plaintiff had met with the Vice President of Operations to inform the Vice President of Operations of the status of LPI's non-compliance and areas of deficiencies and to obtain agreement that Maurice Gray would step down as President of LPI should he not be able to comply with the standards and improve the deficiencies and clarify his job duties for his position. Pursuant to the California Code of Contracts section 1100, the Authority was required to comply with the California Code of Contracts, section 100(b), which the Plaintiff had reasonable cause to believe was being violated by the Authority. The Authority's Contracts Code, Article 5, sections 5.11(a)(3)(4)(5)(6)(8) and section 5.18(a) were also a basis for the Plaintiff to have reasonable cause of violation by the Authority. The Plaintiff regularly worked with these Codes and regulations and expected the Authority to follow them." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he reasonably believes was violated by the LPi contract, as required by Labor Code section 1102.5. (Labor Code § 1102.5) Even if Plaintiff's reference to the "California Code of Contracts" is meant to refer to the California Public Contract Code, his claim still fails. Section 100(b) of the Public Contract Code merely states the legislature's intent in enacting that code is to "ensure full compliance with competitive bidding statutes as a means of protecting the public from misuse of public funds." None of Plaintiff's alleged disclosures could reasonably be interpreted as a disclosure of a "violation" of this statement of legislative intent.<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |
| Paragraph 28, which reads as follows: | This paragraph is subject to a motion to strike |



| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| "Plaintiff then pointed out his points of concern to the former Vice President: (1) the ambiguousness of the 'Conflict of Interest' Code, and (2) more importantly, the application of the policy among Authority employees. The Plaintiff mentioned the specific abuse of the policy from the Authority Vice Presidents, Board Members, and the President/CEO Thella Bowens (Doe No.1) This included airline ticket changes, upgrades, access to First Class lounges and other routinely-demanded expensive privileges not allowed to other Authority employees. The Plaintiff pointed out to the Vice President that the application of the 'Conflict of Interest' Code policy was selective and unfairly enforced. SDCRAA Code of Ethics Article 2, part 2 et.seq." | under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Authority, as required by Labor Code section 1102.5.  (Labor Code § 1102.5) |
| Paragraph 29, which reads as follows:  "The Plaintiff had discussed such items as the above-stated violations of the Authority's policy with the former Vice President when he had been the Vice President and the Plaintiffs supervisor and he had always seen no reason for concern, and no action had been taken. This same former Vice President had himself directed the Plaintiff to take care of tickets for Authority employees and Board Members. The Plaintiff asked why it was okay for Thella Bowens (Doe No.1) to ask and receive favors and not okay for employees to receive the same benefits. One example was Bowen's request to fly in BBQ meat from Texas. The former Vice President defended this practice as approved as an 'Accepted Industry Practice', which connotes that among the Regional Airport Authority for the Counties paying to fly in meat from another state is a billable expense.  SDCRAA Code of Ethics Article 2, section 2.10 (d)(9)(A)(B)." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Authority, as required by Labor Code section 1102.5.  (Labor Code § 1102.5)<br><br>2.  A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law.  (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].)<br><br>3.  Plaintiff has not alleged that he reasonably believed that these actions were a violation of law, as required by Labor Code section |

24-327



| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | 1102.5. |
| Paragraph 33(a), which reads: "The Vice President of Operations paid $1200.00 for a ticket on an airline to get Blue Bell ice cream for Thella Bowen's BBQ, received reimbursement for the travel expense under the guise that he was attending a cultural awareness development meeting with another airline. The ice cream was available in Southern California. When word got around the Authority about the cost of going to Texas for ice cream, the Vice President directed the Plaintiff to 'shut that little shit up' referring to the budget analyst who continued to comment on it. The Plaintiff refused the directive. This travel expense was not reasonably related to a governmental purpose." [hereinafter "Blue Bell Transaction"] | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Blue Bell transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5)  The Authority's internal ethics code is not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2.  Plaintiff has not set forth any violation of the Authority's internal ethics code.<br><br>3.  Plaintiff has not alleged that he disclosed this Blue Bell Transaction, or that he reasonably believed this Blue Bell Transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4.  Plaintiff also has not sufficiently alleged that he refused to perform an activity that would result in a violation of state or federal law, rule, or regulation, as required by Labor Code section 1102.5(c).<br><br>5.  A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law.  (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |
| Paragraph 33(b), which reads: "Each time an | This paragraph is subject to a motion to strike |

24-328

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| Authority employee requested a change to be made to an airline ticket a benefit was accepted when the recipient took 'any action exercising control over the benefit.' Thella Bowen would purchase her own tickets and then request date changes and upgrades, along with Premier Lounge Access (only permitted for airline premier club members). This practice was so prevalent by Bowens and her staff that on the day that the investigation of the Plaintiff began, Bowens had secured access to an airline Premier lounge prior to her trip to Asia. Any change to any ticket itinerary is approximately fifty to one hundred dollars, a service charge, plus the cost in set p rice *[sic]* for an upgrade on a ticket, ranging from one hundred fifty to two hundred dollars each way. Thella Bowens routinely instructed her Assistant to contact either the Plaintiff or the Vice President that the Plaintiff reported to, to make the changes described above. The Plaintiff would make the changes for Bowen by going directly to the airline Station Manager and requesting the change for Thella Bowens. The Plaintiff performed this benefit accommodation more than thirty times for Bowen and her staff. All of these requested benefits were in violation of the Ethics policy." | under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:  1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by these transactions, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's internal ethics code is not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.  2. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed these Transactions were a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b). |
| Paragraph 33(c), which reads: "Each year Thella Bowens requested an employee BBQ named 'Thella's BBQ.' The event drew from fifty to over three hundred attendees. The centerpiece of the event called for pork, beef ribs and brisket to be flown out from her favorite restaurant in the Dallas Fort Worth area, Angelo's. Employees from the Director level and above were required to pay money to help subsidize the expense of the meat. Currently Thella's BBQ has been renamed the 'Annual Employee Appreciation Employees BBQ' and now costs approximately ten to fifteen thousand dollars, not including the cost | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:  1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the BBQ, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's internal codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.  2. The facts as alleged do not demonstrate a |

24-329

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| of the labor for the Authority employees who are designated to support the event. The Plaintiff was then instructed to contact an airline to make arrangements at her behest for free airline delivery of the meat. The net weight of the total delivery was over two hundred pounds at an approximate cost of $2500.00. The free airline flight of the meat violated the Ethics policy. The cost of the BBQ comes from the revenue collected by the Authority from the airlines and its users." | violation of the Authority's internal ethics code.<br><br>3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 33(d), which reads: "Thella Bowens requested through a Vice President that he obtain special airline flight privileges for her sister who lives in Texas. Bowens asked for the ability to get either stand by or reduced rate tickets for her sister for business and personal travel. The request was made to the airline Station Manager. The airline Station Manager then responded to the conditions under which they could do it. This request by Thella Bowens (Doe No.1) violates the Ethics Code." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's "rules and regulations" are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.<br><br>3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |

24-330

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| Paragraph 33(e), which reads: "The request from the Chairman of the Board of the Authority to secure First Class upgrade airline tickets on the day of his planned departure for his wife and himself required the intervention of the airline Station Manager. This tactic allowed the Chairman of the Board of the Authority to save approximately two hundred fifty dollars for the upgrade expenses. This action violates the Ethics Code." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5.  (Labor Code § 1102.5)  The Authority's internal codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2.  The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.<br><br>3.  Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4.  Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 33(f), which reads: "The Chairman of the Board of the Authority on several occasions requested to enter into a temporary lease to use a portion of the parking lot at Harbor Island for no expense for an activity he is involved with annually. The lease of Authority property for non-aviation use is strictly prohibited and a violation of the Ethics Code as well as other laws and regulations." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1.  Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5.  (Labor Code § 1102.5)  The Authority's internal codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5. |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
|  | 2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code. |
|  | 3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b). |
|  | 4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 33(g), which reads: An Authority Board member annually inserts his official authority to influence negotiations between a community event and the rental of the General Dynamics property at a rate lower than the fair market value. As a condition of this use, all rental cars must be removed from the property and a large amount of vehicles relocated from the property. This violates the Ethics Code as well as other laws and regulations. | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:  1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's internal codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.  2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.  3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).  4. Plaintiff did not allege that he refused to perform this directive, as required by Labor |

24-332

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | Code section 1102.5(c). |
| Paragraph 33(h), which reads: "An Authority Board member requested assistance in rearranging his itinerary so that he could attend the Little League World Championships in Williamsport, Pennsylvania. The Plaintiff had to work with three different airlines to coordinate the First Class upgrade the Board member requested, as well as the time changes to allow the Authority Board member his desired schedule. This violates the Ethics Code." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:

1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's internal codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.

2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.

3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).

4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 33(I), which reads: "The Authority's Vice President of Budget and Finance repeatedly requested from the Plaintiff assistance in changing flight schedules. Over a one year period the Plaintiff assisted with the change of approximately fifteen to twenty schedules, all to accommodate personal and non Authority business travel to Las Vegas and Texas. This violates the Ethics Code." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:

1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's internal codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | section 1102.5.

2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.

3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).

4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 33(j), which reads: "The General Counsel of the Authority used his official position to obtain fifty-yard-line premier seating at the Poinsettia Bowl football game by getting the Plaintiff to use his official position as Director, Landside Operations to make contact with the Holiday Bowl Committee and request premium seating for the event. This involved securing six tickets for $300.00, which the Plaintiff paid for so that the General Counsel Bret Lobner had to reimburse the Plaintiff. When the Holiday Bowl Committee member asked the Plaintiff if the tickets were complimentary for no charge the Plaintiff refused the gift and paid for them. The General Counsel Bret Lobner knew he was in violation of the Ethics Code when he made the request for the favors from the Plaintiff.

After the Plaintiff filed his Claim with the Airport Authority, the General Counsel Bret Lobner wrote to the Plaintiff that 'the facts about me are false, misleading, defamatory, slanderous, libelous' because the number of tickets he requested was six, not eight, and the price he paid for the tickets was $300.00 not | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:

1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by these transactions, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's internal codes are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.

2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.

3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed these transactions were a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).

4. Plaintiff did not allege that he refused to |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRICKING ALLEGATION FROM COMPLAINT |
|---|---|
| $400.00. Lobner then threatened to pursue legal action against the Plaintiff for 'filing a false defamatory accusation against [him]' because 'Mr. Hernandez had volunteered to pick up the tickets since he already had plans to visit the ticket the ticket *[sic]* location', a statement which is untrue. The General Counsel Bret Lobner's threat is an additional and separate violation of the Ethics Code." | perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 33(k), which reads: "The Plaintiff was present with the Vice President of Operations when the Chairman of the Board of the Authority requested a contractor to be hired to re-survey his Authority office space for 'listening devices.' The Chairman's office space had previously on two separate occasions been surveyed for 'bugging devices' or other 'listening apparatus.' The Chairman was worried that his communications could be intercepted by the FBI or similar such agencies. This contract request is a gross waste of the Authority funds." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5)<br><br>2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.<br><br>3. Plaintiff has not alleged that he disclosed this alleged violation, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 33(l), which reads: "The Vice President of Budget and Finance, representing himself and Thella Bowens as Board members of the Jackie Robinson YMCA, requested that the Plaintiff secure a free round trip airline ticket for the owner of national basketball team. The request was made so that the owner | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| could be the featured speaker at a banquet." | Labor Code section 1102.5. (Labor Code § 1102.5)

2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.

3. Plaintiff has not alleged that he disclosed this alleged ethical violation, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).

4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 33(m), which reads: "The Vice President of Operations with the full knowledge of Thella Bowens, requested that the Plaintiff secure free round tip airline tickets to be donated as the featured prizes of the annual United Way campaign. The Plaintiff did this twice." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:

1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5)

2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.

3. Plaintiff has not alleged that he disclosed this alleged ethical violation, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).

4. Plaintiff did not allege that he refused to perform this directive, as required by Labor |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S SECOND AMENDED COMPLAINT

17

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | Code section 1102.5(c).<br><br>5. Plaintiff may not maintain a private right of action under the Authority's internal ethics code. |
| Paragraph 33(n), which reads as follows: "Thella Bowens requested from the Plaintiff that a marked reserved parking stall be designated in the employee parking lot at the Commuter Terminal for her personal use. Bowens then never used the stall, choosing to park elsewhere and she reassigned the stall to the Vice President of Budget and Finance. That particular reserved parking staff *[sic]* is clearly marked for use only by the President/CEO of the Airport Authority. The designation of the parking stall to the Vice President of Budget and Finance clearly connotes preferential treatment and is a violation of Airport Authority rules and regulations." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's "rules and regulations" are not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.<br><br>2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code.<br><br>3. Plaintiff has not alleged that he disclosed these alleged ethical violations, or that he reasonably believed these transactions were a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b).<br><br>4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 33(o), which reads: "The Vice President of Operations instructed the Plaintiff to use his position as Director of Landside Operations to secure a limousine from one of the Airport's service providers to be used as part of the procession for a colleague's wife's funeral." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by this transaction, as required by |

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S SECOND AMENDED COMPLAINT

18

24-337

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| | Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's internal ethics code is not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5. |
| | 2. The facts as alleged do not demonstrate a violation of the Authority's internal ethics code. |
| | 3. Plaintiff has not alleged that he disclosed this alleged ethical violation, or that he reasonably believed this transaction was a violation of a state or federal law, rule or regulation, as required by Labor Code section 1102.5(b). |
| | 4. Plaintiff did not allege that he refused to perform this directive, as required by Labor Code section 1102.5(c). |
| Paragraph 34, p. 21, line 16-p. 22, line 10, which reads: "The Plaintiff attempted, time and time again, to bring to the attention of the attorney from LUCE FORWARD the above-stated Ethics violations and every single time the attorney from LUCE FORWARD interrupted and spoke over the Plaintiff to prevent the Plaintiff from reporting violations, both legal and ethical, that he was aware of and had not been 'investigated.' The attorney was not interested in knowing about the above-stated violations or any incident that did not show wrongdoing by the Plaintiff. The Plaintiff did his best to report, disclose, divulge and bring to the attention of his employer's 'investigator' (the attorney from LUCE FORWARD) facts and information relative to both suspected and actual violations of state law directly related to his job. The Plaintiff observed improper governmental activity by employees of the Authority undertaken in the performance of the | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:

1. Plaintiff has not set forth a state or federal law, rule, or regulation that he believes was violated by the Authority's acts, as required by Labor Code section 1102.5. (Labor Code § 1102.5) The Authority's internal ethics code is not a state or federal law, rule, or regulation covered by the provisions of Labor Code section 1102.5.

2. Plaintiff has not alleged that the Authority made, adopted or enforced a rule, regulation, or policy, as required by Labor Code section 1102.5(a), that prevented him from disclosing alleged improprieties. |

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S SECOND AMENDED COMPLAINT

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| employee's official duties that demonstrated economic waste, incompetency and inefficiency. The 'investigator' Thella Bowens hired (the lawyer from LUCE FORWARD) attempted to use and used, both directly and indirectly, intimidating, threatening, coercing, and commanding tactics to influence the information he was told by the Plaintiff and by the witnesses during their interviews. Thella Bowens could not have reasonably believed that taking personnel action, including hiring and directing an 'investigation' into the Plaintiff's alleged but not articulated violations of the Authority's Ethics policy was and is justified based on her own and her direct report employees' own well-know [sic] violations of the same policies and Codes. Bowens was well aware that the evidence of her own violations were known to the Plaintiff and when he reported those violations to her hired 'investigator' he was cut off and told not to discuss them. Other witnesses also disclosed to Bowen's 'investigator' knowledge of Bowen's wrongdoing as well as the Ethics violations by her Vice Presidents that Bowens condoned and ratified." | |
| Paragraph 35, p. 22, lines 13-20, line 6, which reads: ". . . The first disclosure arose from the Plaintiff's opposition to a 'side deal' that Bryan Enarson made with a concessionaire at the airport, Host, that restricted the Authority's ability to annex the space needed to comply with ADA requirement for the women's restroom at the airport.. [sic] The result of Enarson's actions increased the project budget by over $2 million. The Plaintiff believed this resulted in legal noncompliance with the ADA requirements that demand access for disabled individuals which were well settled at that time and took precedence over the handshake agreement Enarson made without negotiation | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows: Plaintiff does not allege facts supporting his ultimate conclusion that he reasonably believed the Authority violated the ADA. Instead, he only alleges that he reported that the Authority was restricted from complying with the ADA and the Authority was required to increase the project budget by over $2 million. But Plaintiff fails to allege <u>which</u> ADA provision was purportedly violated, or <u>how</u> the "side deal" or project's cost increase purportedly violated the ADA. Because fails to allege facts supporting his conclusory allegation, he could not have had a reasonable belief that the Authority was violating the |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| with Host." | ADA, as required by Labor Code section 1102.5. |
| Paragraph 35, p. 22, lines 21-25, which reads: "The second disclosure also arose from events involving Enarson, who was the lead negotiator on behalf of the Airport for the property known as the General Dynamics property. Enarson proceeded with the negotiations without ascertaining the extent of the 'public hazards around the airport' and resulted in a lease agreement that loses millions of dollars per year for the Authority." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff could not have had a reasonable belief that the General Dynamics lease violated a federal or state law because the terms of the lease were authorized by statute. (See Public Utilities Code § 170056(f); Labor Code § 1102.5 [reasonable belief requirement]) |
| Paragraph 35, p. 22, line 26-p. 23, line 3, which reads: "The third disclosure involved the misuse and waste of the usable land around the property known as the Teledyne Ryan property. Enarson proceeded with the negotiations without ascertaining the extent of the 'public hazards around the airport' and that resulted in a lease agreement that loses millions of dollars per year for the Authority. Enarson then blocked open discussion of the problem and no resolution has been attempted." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff could not have had a reasonable belief that he was reporting a statutory violation when the referenced statute is in no way connected to the complained of conduct. (See California Public Utilities Code section 170056(a)(1)(B); Labor Code § 1102.5)<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |
| Paragraph 35, p. 2, lines 4-6, which reads: "The fourth and final disclosure encompassed the issue of the contract bid by the Lindbergh Parking, Inc. (LPI) and its failure to meet its contract expectations and the offenses and actions by the LPI that indicate a lack of | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S SECOND AMENDED COMPLAINT

21

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| business integrity." | law, rule, or regulation that he reasonably believes was violated by the LPi contract, as required by Labor Code section 1102.5. (Labor Code § 1102.5) Even if Plaintiff's reference to the "California Code of Contracts" is meant to refer to the California Public Contract Code, his claim still fails. Section 100(b) of the Public Contract Code merely states the legislature's intent in enacting that code is to "ensure full compliance with competitive bidding statutes as a means of protecting the public from misuse of public funds." None of Plaintiff's alleged disclosures could reasonably be interpreted as a disclosure of a "violation" of this statement of legislative intent.<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |
| Paragraph 37, which reads: "The Plaintiff believed in good faith that LPI was in violation of California Public Contracting laws found in the California Public Contract Code Section 100 et seq. The discovery that LPI had presented false expenses in its bid submission, combined with the unsatisfactory performance of the contract, its failure to submit insurance documents and its lack of business integrity when given time and opportunities to correct its wrongdoing seriously affected the reliability and credibility of the performance of LPI. The final deadline for Maurice Gray to submit a job description that detailed the duties he performed as President of LPI to justify his salary of $60,000.00 was quickly approaching | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he reasonably believes was violated by the LPi contract, as required by Labor Code section 1102.5. (Labor Code § 1102.5) Even if Plaintiff's reference to the "California Code of Contracts" is meant to refer to the California Public Contract Code, his claim still fails. Section 100(b) of the Public Contract Code merely states the legislature's intent in enacting that code is "ensure full compliance |

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S SECOND AMENDED COMPLAINT

22

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| when Thella Bowens (Doe No.1) made the decision to begin an 'investigation' of the Plaintiff. Bowens wanted Maurice Gray to continue in that position, partly because he was black, and she favored protection of the black employees, but also because she did not want anyone, including the Plaintiff, to speak up and oppose whatever decisions she made, whether they involved misuse of government funds as the Plaintiff believed when he opposed and objected to the leases that cost the Authority millions of dollars for nothing in exchange. Over and over again the Plaintiff voiced his opinions that waste of money occurred when Enarson, with Bowen's approval, failed to consider the budget and its inability to sustain payments when no revenue could be generated from projects improperly negotiated and Bowen's refusal to address those problems. LPI was the last straw for Bowens. The Plaintiff believed that Bowens and her Vice Presidents were using favoritism as a form of corruption in the LPI contract. There is no other 'justification' for the timing, the identity of the retaliations *[sic]*, and the secretive and calculated course of conduct that Bowens called for choosing to 'investigate' the Plaintiff at that time. Bowens cannot show independent reasons for her hiring of an 'investigator' that demonstrates clear and convincing evidence that she would have conducted an 'investigation' if the Plaintiff had not engaged in protected disclosures or refused to participate in suspected and actual violations of state law governing public contracts." | with competitive bidding statutes as a means of protecting the public from misuse of public funds." None of Plaintiff's alleged disclosures could reasonably be interpreted as a disclosure of a "violation" of this statement of legislative intent.<br><br>2. A republication of publicly known information or findings does not support a Labor Code section 1102.5 claim because the plaintiff is not "making known" the violations of law. (See Labor Code § 1102.5(b); See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public policy doctrine].) |
| Paragraph 38, which reads: "The Ethics policies and Code are not uniformly followed, enforced or used by Authority management. The Plaintiff was singled out because he opposed and objected on numerous occasions to the actions of the Authority's President/ CEO Thella Bowens and her Vice Presidents | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>1. Plaintiff has not set forth a state or federal law, rule, or regulation that he reasonably |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| when he believed he had reasonable cause to believe that the opposition was necessary to disclose a violation of state statute, or a violation or noncompliance with a state statute, rule or regulation. The Authority, as the Plaintiff's employer, retaliated against the Plaintiff for having exercised his rights under Labor Code section 1102.5(a)(b) (c)." | believes was violated by the Authority's conduct, as required by Labor Code section 1102.5.  (Labor Code § 1102.5) |
| Paragraph 43 which reads: "The Plaintiff was forced to resign his position from the Authority because he had disclosed in good faith to his own Authority, a government agency, the violations of the Authority regarding its misuse of money, waste of government funds, the violations of law regarding four projects of which he had personal knowledge of the violations of law and rules and regulations that the Authority violated repeatedly." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:  Plaintiff has not set forth a state or federal law, rule, or regulation that he reasonably believes was violated by the Authority's acts, as required by Labor Code section 1102.5. (Labor Code § 1102.5) |
| Paragraph 44, which reads: "The Plaintiff absolutely made clear his opposition in private meetings, in public meetings, and at open door and closed door meetings, to the failure of the Authority to implement the annexation of the space needed to have the women's restroom comply with the ADA requirements to provide access to disable [sic] travelers and to complete the project at a reasonable cost and in a timely manner. The American Disabilities Act and its enabling statutes and regulations are federal law and federal regulations." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:  Plaintiff does not allege facts supporting his ultimate conclusion that he reasonably believed the Authority violated the ADA. Instead, he only alleges that he reported that the Authority was restricted from complying with the ADA and the Authority was thus required to increase the project budget by over $2 million.  Plaintiff fails to allege which ADA provision was purportedly violated, or how the "side deal" or project's cost increase purportedly violated the ADA.  Because plaintiff fails to allege facts supporting his conclusory allegation, he could not have had a reasonable belief that the Authority was violating the ADA, as required by Labor Code section 1102.5. |

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
| Paragraph 45, which reads as follows: "The Plaintiff made clear to the Vice President to whom he reported that he objected and opposed during the negotiations and the due diligence process that Enarson (Vice President and confidante to Thella Bowens) was not properly understanding the lawful use and conditions of the General Dynamics property that resulted and continues to result in losses of millions of dollars for the Authority in violation California Public Utilities Code section 170056(f)(1)(2)(3)" | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff could not have had a reasonable belief that the General Dynamics lease violated a federal or state law because the terms of the lease were authorized by statute. (See Public Utilities Code § 170056(f); Labor Code § 1102.5 [reasonable belief requirement]) |
| Paragraph 46, which reads as follows: "The Plaintiff disclosed and opposed the misuse and waste of the unusable land around the Teledyne Ryan property at Capitol Improvement meetings, at weekly Operations meetings, at Directors meetings and other times that the acts violated the California Public Utilities Code section 170056(a)(1)(B)" | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff could not have had a reasonable belief that he was reporting a statutory violation when the referenced statute is in no way connected to the complained of conduct. (See California Public Utilities Code section 170056(a)(1)(B); Labor Code § 1102.5) |
| Paragraph 47, which reads: "The Plaintiff conducted numerous disclosure meetings with the Vice President to whom he reported regarding the failure of LPI to meet the expenses and conditions that the company had used to bid on the parking operations contract in violation of California Code of Contracts section 1100; section 100. The Plaintiff also met repeatedly with Maurice Gray of LPI and gave him extended help and time to come into compliance on the contract and he failed and refused to do so. This correlated with the idea of conducting an 'investigation' of the Plaintiff rather than of the contractor." | This paragraph is subject to a motion to strike under California Code of Civil Procedure section 436(a) because it contains improper and irrelevant allegations as follows:<br><br>Plaintiff has not set forth a state or federal law, rule, or regulation that he reasonably believes was violated by the LPi contract, as required by Labor Code section 1102.5. (Labor Code § 1102.5) Even if Plaintiff's reference to the "California Code of Contracts" is meant to refer to the California Public Contract Code, his claim still fails. Section 100(b) of the Public Contract Code merely states the legislature's intent in enacting that code is to "ensure full compliance with competitive bidding statutes as a means of protecting the public from misuse of public funds." None of |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION AND MOTION TO STRIKE
PLAINTIFF'S SECOND AMENDED COMPLAINT

25

24-344

| ALLEGATION TO BE STRICKEN | LEGAL GROUNDS FOR STRIKING ALLEGATION FROM COMPLAINT |
|---|---|
|  | Plaintiff's alleged disclosures could reasonably be interpreted as a disclosure of a "violation" of this statement of legislative intent. |

24-345

**EXHIBIT 25**

1    FRED M. PLEVIN (SBN 126185)
    SANDRA L. MCDONOUGH (SBN 193308)
2    ALBERT R. LIMBERG (SBN 211110)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
3    401 B Street, Tenth Floor
    San Diego, California 92101-4232
4    Telephone: 619-237-5200
    Facsimile: 619-615-0700

5

6    AMY S. GONZALEZ (SBN 181745)
    **SAN DIEGO COUNTY REGIONAL AIRPORT**
    **AUTHORITY**
7    3225 N. Harbor Drive
    San Diego, CA 92138
8    Telephone: (619) 400-2425
    Facsimile: (619) 400-2428

9

10   Attorneys for Defendant
     SAN DIEGO COUNTY REGIONAL AIRPORT
11   AUTHORITY

12           SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                COUNTY OF SAN DIEGO

14   JOSE HERNANDEZ,               CASE NO. GIC 871979

15         Plaintiff,            **MEMORANDUM OF POINTS AND**
                           **AUTHORITIES IN SUPPORT OF**
16        v.                  **DEFENDANT SAN DIEGO COUNTY**
                           **REGIONAL AIRPORT AUTHORITY'S**
17   SAN DIEGO COUNTY REGIONAL      **DEMURRER AND MOTION TO STRIKE**
     AIRPORT AUTHORITY, a public entity;   **PLAINTIFF'S SECOND AMENDED**
18   and DOES 1 through 12, inclusive,      **COMPLAINT**

19         Defendants.

20                       Date:            May 11, 2007
                          Time:           1:30 p.m.
21                     Dept:          75
                          Judge:        Hon. Richard E. Strauss
22                     Complaint Filed:   September 1, 2006
                          Trial Date:     Not Set
23

24                      **EXEMPT FROM FEES**
                       **GOVT. CODE § 6103**

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

    POINTS AND AUTHORITIES IN SUPPORT OF
    DEMURRER AND MOTION TO STRIKE SAC

# I.

## INTRODUCTION AND SUMMARY OF ALLEGATIONS

Plaintiff Jose Hernandez has now had three opportunities to plead his claims against the San Diego County Regional Airport Authority's ("Authority"), but the Second Amended Complaint ("SAC") does nothing more than add conclusory allegations that do not support Hernandez' legal theories. In fact, the allegations in each of the three complaints filed in this case are nearly identical, and Hernandez has only modified the complaint by consolidating his allegations into one cause of action instead of four different causes of action. Since Hernandez has only made minor modifications to the allegations in the complaint, he has now shown that he is incapable of properly alleging a viable legal theory against the Authority. As a result, the Authority's demurrer should be sustained without leave to amend and/or its motion to strike should be granted.

Hernandez was employed as a Director of Landside Operations for the Authority. In late December 2005, an Authority employee reported that Hernandez may have violated certain provisions of the Authority's Ethics Code, so it began an investigation. At the conclusion of the investigation, the Authority determined that Hernandez had acted inappropriately by accepting free goods and services from Authority vendors, including free roundtrip tickets to Hawaii, tickets to football and baseball games, and free parking passes. Hernandez resigned from his employment in February 2006 after the Authority informed him of its conclusions.

Hernandez now brings this baseless Second Amended Complaint in an effort to smear the Authority's reputation and to place blame on others for his own personal actions. Primarily, Hernandez alleges that the Authority retaliated against him in violation of Labor Code section 1102.5 for disclosing improper activities, even though Hernandez was merely engaged in his day-to-day duties of evaluating aspects of the Authority's operations. Although the SAC is replete with allegations of the Authority's alleged ethical violations, Plaintiff explicitly alleges that he disclosed only four alleged improprieties (see SAC ¶ 35; see also ¶¶ 10-14):

- The General Dynamics parking lot lease ("General Dynamics Lease") (SAC ¶ 12);
- The Teledyne Ryan parking lot lease ("Teledyne Ryan Lease") (SAC ¶ 13);
- Double-billing of expenses on the Lindbergh Parking ("LPi") Contract (SAC ¶ 14);

1    and

2    • Bryan Enarson's alleged "side deal" with Host regarding the women's restroom

3    renovation in Terminal One (SAC ¶¶ 10-11).

4   However, none of the four disclosures support a Labor Code section 1102.5 claim because:

5    • Hernandez has not articulated how the Authority's General Dynamics lease violated

6    any statute, rule or regulation when the financial terms of that lease are as dictated by

7    the Public Utilities Code. Thus, Hernandez could not have had a reasonable belief

8    that the lease violated any law;

9    • Hernandez has not articulated a law that he reasonably believed the Authority

10    allegedly violated by entering into the Teledyne Ryan lease;

11    • Hernandez has not articulated a law that he reasonably believed the Authority

12    allegedly violated with regard to the LPi contract either; and

13    • As a matter of law, the Authority increasing the restroom project expense cannot

14    support a reasonable belief that the Authority violated the ADA or any of its

15    implementing regulations.

16        For the foregoing reasons, and as more fully discussed in the Authority's supporting papers,

17   the Authority respectfully requests that this Court sustain its demurrer without leave to amend as to

18   each cause of action in the SAC. Leave to amend should not be granted because Hernandez has

19   now had three opportunities to plead a proper and sustainable cause of action. In the alternative,

20   defendant moves to strike those allegations that are barred by the various deficiencies as detailed in

21   the notice of motion and motion to strike the SAC.

22                                              **II.**

23                    **DEMURRER AND MOTION TO STRIKE STANDARDS**

24   **A.    General Standard for Demurrer.**

25        A demurrer tests the legal sufficiency of the Plaintiff's complaint. (Code Civ. Proc.,

26   § 430.10.) Although leave to amend is typically granted liberally, it should be denied where the

27   nature of the claim is clear, but no liability exists under substantive law. (*Lawrence v. Bank of Am.*

28   (1985) 163 Cal.App.3d 431, 436.) Thus, denial of leave to amend is proper where the Plaintiff

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

POINTS AND AUTHORITIES IN SUPPORT OF          2          CASE NO. GIC 871979
DEMURRER/MOTION TO STRIKE SAC

1  cannot show in what manner he can amend and how the amendment will change the legal effect of

2  his pleading. (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1539.) The

3  burden of showing a reasonable possibility of successful amendment "is squarely on the Plaintiff."

4  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) Moreover, when a plaintiff is given an opportunity

5  to amend the complaint, strict construction of the complaint is required and it must be presumed

6  that plaintiff has stated the strongest possible case. (*Gonzales v. State* (1977) 68 Cal.App.3d 621.)

7  **B.    Plaintiff Must Plead with Specificity Because the Authority is a Public Entity.**

8      A plaintiff's burden is more difficult when he seeks to impose liability on a public entity, as

9  is the case here, because every fact material to the existence of the public entity's liability "must be

10 pled with particularity." (*Lopez v. Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.)

11 The SAC at issue here falls short of meeting this elevated pleading standard and, as a result, should

12 be dismissed without leave to amend.

13 **C.    In the Alternative, this Court May Strike any Improper or Irrelevant Material.**

14      In the event that this Court does not sustain the Authority's demurrer to the SAC, the Court

15 has the authority to strike any improper or irrelevant matter from the pleadings pursuant to

16 California Code of Civil Procedure sections 435 and 436(a).

17                                   **III.**

18 **HERNANDEZ FAILED TO PLEAD SUFFICIENT FACTS TO WITHSTAND DEMURRER**

19                **AS TO HIS LABOR CODE SECTION 1102.5 CLAIM**

20      Hernandez' SAC falls far short of setting forth the specific facts required to plead his Labor

21 Code section 1102.5 claim. To establish a *prima facie* case of retaliation under Labor Code section

22 1102.5(b), as with FEHA and Title VII, Hernandez must allege that: (1) he engaged in a "protected

23 activity;" (2) the Authority took an adverse employment action against him; and (3) a causal link

24 exists between his protected activity and the adverse employment action. (*Morgan v. Regents of*

25 *University of Cal.* (2000) 88 Cal.App.4th 52, 69.) In order to allege that Hernandez engaged in a

26 protected activity, as required by the first prong of the prima facie case, Hernandez must allege that

27 he disclosed, to a government or law enforcement agency, information that he reasonably believed

28 disclosed a violation of state or federal statute, rule, or regulation. (Lab. Code § 1102.5, subd. (b).)

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

POINTS AND AUTHORITIES IN SUPPORT OF
DEMURRER/MOTION TO STRIKE SAC

3

CASE NO. GIC 871979

25-349

1  It is not enough for Hernandez to allege mere conclusions of law to support his retaliation claims.

2  (*Ankeny v. Lockheed Missiles and Space Co.* (1979) 88 Cal.App.3d 531, 537.)

3        Hernandez' claim cannot even get off the ground because he did not, and could not have,

4  reasonably believed that he disclosed violations of a state or federal statute, rule, or regulation.

5  Even though Hernandez amended his complaint to reference federal and state statutes, he either

6  knew, or as a matter of law he should have known, that the alleged wrongful acts were permissible.

7  As a result, he could not have reasonably believed that the Authority violated a state or federal law,

8  rule or regulation, and his retaliation claims as alleged in the SAC fail.

9        **1.       Alleged Violations of the Authority's Ethics Code Cannot Support a Retaliation**

10               **Claim.**

11        By its very terms, Labor Code section 1102.5 requires a plaintiff to disclose a violation of a

12  state or federal law, rule or regulation.  (See Labor Code § 1102.5(b).)  Hernandez' amended

13  complaint focuses primarily on alleged violations of the Authority's own Ethics and Contracts

14  Codes, which are simply internal guidelines and not state or a federal laws, rules or regulations.

15  Accordingly, the Authority moves to strike all references to the Authority's Ethics or Contract

16  Codes violations in the SAC because those allegations cannot support a Labor Code section 1102.5

17  cause of action as a matter of law.

18        **2.       Hernandez Could Not Have Had a Reasonable Belief That He Was Disclosing a**

19               **Violation of a State or Federal Law, Rule or Regulation.**

20        Even *assuming arguendo* that the Ethics Code falls within the definition of a federal or state

21  law under Labor Code section 1102.5, the facts, as alleged, do not support Hernandez' ultimate

22  conclusion that he reasonably believed that the Authority's actions violated any statutes, nor can

23  these facts reasonably be interpreted to amount to any such violation.  (See *Ankeny, supra,* 88

24  Cal.App.3d at p. 537 [complaint must be supported by more than conclusory allegations].)  Further,

25  Hernandez has the burden of pleading the specific statute that was allegedly violated, and he has

26  failed to meet this burden with regard to his disclosures.  (See *Green v. Ralee Engineering* (1998)

27  19 Cal.4th 66, 83, fn. 7.)  Without facts supporting Hernandez' alleged reasonable belief that the

28  Authority's actions violated a federal or state law or specific references to code sections that were

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

POINTS AND AUTHORITIES IN SUPPORT OF                    4                    CASE NO. GIC 871979
DEMURRER/MOTION TO STRIKE SAC

1  violated, Hernandez' retaliation claims must fail.

2          **a.    The General Dynamics Lease.**

3        One of Hernandez' alleged protected disclosures involved uncovering alleged financial

4  problems with the General Dynamics Lease. (SAC ¶ 12.) Both parties seem to agree that the terms

5  of the General Dynamics Lease were mandated by Public Utilities Code section 170056(f). If

6  anything, Hernandez' SAC alleges compliance with Public Utilities Code section 170056(f), not a

7  violation of that statute. (*Ibid.*.) Hernandez now alleges that the terms of the lease were in violation

8  of Public Utilities Code section 170056(f)(3), but Hernandez does not set forth, even in vague

9  terms, which terms of the lease violated subsection (f)(3). In fact, the only alleged unlawful portion

10  of the lease on which Hernandez focuses is the dollar amount for the lease, which is set forth and

11  mandated by subsection (f)(1). Hernandez therefore could not have had a reasonable belief that the

12  Authority was violating the law by accepting the General Dynamics lease terms, and the Authority

13  moves to strike any reference to the General Dynamics lease from the SAC. In addition, the

14  Authority's demurrer to Hernandez' retaliation claim based on alleged disclosures of the General

15  Dynamics lease should be sustained without leave to amend.

16          **b.    The Teledyne Ryan Lease.**

17        Similarly, Hernandez has failed to cure the defects with regard to the Teledyne Ryan lease.

18  Plaintiff alleges that he disclosed findings related to the environmental contamination on the

19  Teledyne Ryan Parking Lot and disclosed the amount of money that the Authority negotiated for the

20  lease. (SAC ¶ 13.) Curiously, plaintiff contends he reasonably believed the Authority's conduct

21  regarding the Teledyne Ryan lease violated Public Utilities Code section 170056(a)(1)(B).

22  However, this section merely states that the Teledyne Ryan sublease shall not be transferred to the

23  Authority, and shall remain the property of the San Diego Unified Port District. This section has

24  absolutely nothing to do with environmental contamination or the negotiated price for the lease.

25  Plaintiff could not have had a reasonable belief that he was reporting a statutory violation when the

26  referenced statute is in no way connected to the complained of conduct.

27        Even if the Authority's conduct is considered a violation of Public Utilities Code section

28  170056(a)(1)(B), there can be no "disclosure" under section 1102.5 when the complainant merely

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

POINTS AND AUTHORITIES IN SUPPORT OF
DEMURRER/MOTION TO STRIKE SAC

5

CASE NO. GIC 871979

25-351

1   republishes public information. A disclosure requires that the employee "expose to view" or "make

2   known" a violation of the law. (See e.g. *Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th

3   1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in violation of public

4   policy doctrine].) Here, plaintiff's "disclosures" seem to consist of merely talking about

5   "information" that was already known to employees of the Authority. (SAC ¶ 13.) If republication

6   of publicly known information could constitute a protected activity under section 1102.5, any

7   employee of a company who has been sued for any statutory violation could send a copy of that

8   complaint to a government official and thus become a "protected" employee under section 1102.5,

9   even if that employee was not the plaintiff. Such a result is absurd. A republication does not "make

10  known" violations of law and cannot be a disclosure under section 1102.5 as a matter of law.

11          As a result of the foregoing, the "disclosure" regarding the Teledyne Ryan Lease cannot

12  support plaintiff's section 1102.5 causes of action, and therefore any reference to that lease must be

13  stricken from the Second Amended Complaint.

14          **c.      Lindbergh Parking.**

15          In the SAC (SAC ¶14), Hernandez alleges that he reasonably believed that the LPi contract

16  violated the Authority's own Contract Code and the "California Code of Contracts." As discussed

17  above, the Authority's internal rules are not the equivalent of a state or federal statute, rule or

18  regulation, and thus cannot support a claim under Labor Code section 1102.5. In addition, the

19  "California Code of Contracts" does not exist and thus cannot be the basis for a Labor Code section

20  1102.5 claim. Even if Hernandez meant to refer to the Public Contract Code, his claim still fails.

21  Section 100(b) of the Public Contract Code merely states the legislature's intent in enacting the

22  code "is to ensure full compliance with competitive bidding statutes as a means of protecting the

23  public from misuse of public funds." None of Hernandez' disclosures regarding LPi can be

24  construed as a disclosure regarding this statement of legislative intent.

25          **d.      The Restroom.**

26          Finally, Hernandez has failed to cure the problematic allegations regarding the restroom

27  project. Hernandez claims that there was a "side deal" between Host and Bryan Enarson that

28  increased the restroom project cost by more than $2 million. However, plaintiff's sparse factual

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

POINTS AND AUTHORITIES IN SUPPORT OF
DEMURRER/MOTION TO STRIKE SAC

6

CASE NO. GIC 871979

25-352

1  allegations do not support his ultimate conclusion that he reasonably believed an ADA violation had

2  occurred.  Plaintiff conveniently omits any specificity as to which ADA provision he believed was

3  violated.  Plaintiff also fails to allege how the "side deal" and increased costs associated with the

4  restroom project purportedly violated the ADA.  Thus, plaintiff could not have a reasonable belief

5  that any such violation occurred.

6                                          **IV.**

7                                     **CONCLUSION**

8          Since Hernandez has demonstrated an inability to cure the defects in his SAC, the Authority

9  respectfully requests that the Court sustain its demurrer to all causes of action in the SAC without

10  leave to amend.  In the alternative, the Authority requests that the Court strike improper allegations

11  from the SAC, as further detailed in the notice of motion and motion to strike.

12

13  Dated: April 19, 2007                          PAUL, PLEVIN, SULLIVAN &
                                                    CONNAUGHTON LLP

14                                             By: _____

15                                                 FRED M. PLEVIN
                                                   SANDRA L. MCDONOUGH
16                                                 ALBERT R. LIMBERG
                                                   Attorneys for Defendant
17                                                 SAN DIEGO COUNTY REGIONAL
                                                   AIRPORT AUTHORITY

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

POINTS AND AUTHORITIES IN SUPPORT OF
DEMURRER/MOTION TO STRIKE SAC

7

CASE NO. GIC 871979

25-353