765 F.2d 1440                                                                                      Page 8

765 F.2d 1440, 38 Fair Empl.Prac.Cas. (BNA) 999, 37 Empl. Prac. Dec. P 35,427, 2 Fed.R.Serv.3d 524
(Cite as: 765 F.2d 1440)

different division.

**Restricted Communication.** About the time of his transfer, Unt was directed both orally and in writing not to communicate with SAMSO concerning business matters. The trial court found that this directive was justified by legitimate reasons. SAMSO is Aerospace's primary customer with whom Aerospace was attempting to improve its working relationship. There was testimony that Unt's communications with SAMSO negatively impacted upon the goal of improved relations. Thus, the trial court could reasonably have concluded that the decision to restrict appellant's communication with the Air Force was not based on retaliatory motives, but rather on a desire to avoid jeopardizing its business interests.

**Discharge.** The trial court found that Unt's June 16, 1977, letter to the Commander of SAMSO violated an explicit company directive, contained false allegations of misconduct by Aerospace management, and was the ground for appellant's subsequent termination. The record supports this conclusion. In his letter, Unt alleged no acts of discriminatory conduct by Aerospace, but merely that Aerospace management had made certain " phony charges" against him to destroy his career. He charged several violations of law by Aerospace management, and requested that SAMSO take action on his claims of mismanagement and assist him concerning certain invention rights. Unt did not inform or seek the approval of his supervisors before sending the communication.

[8] Appellant claims that the object of his letter was to secure information substantiating his EEOC grievance or, in the alternative, that the letter constituted protected opposition to what he reasonably believed to be unlawful employment practices. Even if this were so, Aerospace articulated a legitimate, independent, and nondiscriminatory basis for the termination. *See Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 253 & 257, 101 S.Ct. 1089, 1093 & 1096, 67 L.Ed.2d 207 (1981); *E.E.O.C. v. Crown Zellerbach,* 720 F.2d 1008, 1012 (9th Cir.1983). An employee is not protected by Title VII when he violates legitimate company rules, knowingly

disobeys company orders, disrupts the work environment of his employer, or willfully interferes with the attainment of the employer's goals. *See Crown Zellerbach,* 720 F.2d at 1015; *Smith v. Singer Co.,* 650 F.2d 214, 217 (9th Cir.1981); *Pendleton v. Rumsfeld,* 628 F.2d 102, 108 (D.C.Cir.1980); *Hochstadt v. Worcester Foundation for Experimental Biology,* 545 F.2d 222, 230-34 (1st Cir.1976).

[9] Once Aerospace articulated a proper reason for disciplining Unt, appellant had the burden of proving that the stated reason was only a pretext for discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *Crown Zellerbach,* 720 F.2d at 1012. The trial court determined that this burden was not satisfied, and the record supports that finding.

**Fair hearing and Documentation.** Finally, the trial court concluded that Unt's grievances were handled no differently than grievances filed by other employees, *1447 and that the procedures employed in his case were justified by legitimate business reasons. The record is replete with evidence that supports this finding.

### C. Conclusion

The trial court determined that Aerospace did not discriminate or retaliate against Unt because of his opposition to unlawful employment practices or his participation in the grievance process. This factual conclusion is not clearly erroneous. It is apparent that Aerospace disciplined the appellant because of well documented performance deficiencies that were of legitimate concern to Aerospace management, and not because of any motive of reprisal for appellant's exercise of his Title VII rights. The trial court's findings of fact have provided us with a sufficient basis for determining the ground on which the court reached its decision, and we therefore affirm the judgment on this issue.

### II. PRIVACY ACT

[10] Appellant's second argument is that the district court erred in dismissing his claim for violation of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

765 F.2d 1440

765 F.2d 1440, 38 Fair Empl.Prac.Cas. (BNA) 999, 37 Empl. Prac. Dec. P 35,427, 2 Fed.R.Serv.3d 524
(Cite as: 765 F.2d 1440)

the Privacy Act, 5 U.S.C. § 552a, against Aerospace, the Air Force, SAMSO, and Air Force Systems Command. We review *de novo* a dismissal for failure to state a claim upon which relief can be granted by inquiring whether it is certain that no relief could be granted to appellants under any set of facts. *Preferred Communications, Inc. v. City of Los Angeles,* 754 F.2d 1396, 1399 (9th Cir.1985); *St. Michael's Convalescent Hospital v. California,* 643 F.2d 1369, 1372 (9th Cir.1981).

Frank Bane, SAMSO Contract Management Officer, advised Aerospace on June 20, 1977, that Unt had written to SAMSO on June 16 regarding his disputes with Aerospace. Aerospace requested a copy of the letter, but Bane refused. Aerospace then made a formal request for the letter pursuant to the Freedom of Information Act, 5 U.S.C. § 552. The SAMSO legal department concluded that there was no ground for withholding the letter, and on July 1, 1977, it was delivered to Aerospace. Appellant claims this violated section 552a(b) of the Privacy Act, which reads:
No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the written consent of, the individual to whom the record pertains * * *.

5 U.S.C. § 552a(b). This provision is subject to a number of exceptions, none of which apply here.

### A. Dismissal of Aerospace

The district court dismissed appellant's Privacy Act claim against Aerospace because it found that the Act creates a right of action only against a governmental entity. We agree.

The Privacy Act, § 552a(a)(1), defines the term "agency" by reference to 5 U.S.C. § 552(e), which provides:
For purposes of this section, the term "agency" * * * includes any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government (including the Executive Office of the President), or any independent regulatory agency.

[11] The private right of civil action created by the Act is specifically limited to actions against agencies of the United States Government. The civil remedy provisions of the statute do not apply against private individuals, *Bruce v. United States,* 621 F.2d 914, 916 n. 2 (8th Cir.1980); state agencies, *St. Michael's Convalescent Hospital,* 643 F.2d at 1373 (9th Cir.1981); private entities, *Irwin Memorial Blood Bank of the San Francisco Medical Society v. American National Red Cross,* 640 F.2d 1051, 1057-58 (9th Cir.1981) (American National Red Cross) and *United States v. Miller,* 643 F.2d 713, 715 n. 1 (10th Cir.1981) (national banks); or state and local officials, *Polchowski v. Gorris,* 714 F.2d 749, 752 (7th Cir.1983).

[12] Aerospace is a private not-for-profit corporation which does business with the *1448 United States Government. It is not an agency of the government within the definition of the Privacy Act. Nor does the mere fact that Aerospace receives funding and is regulated to some extent by the federal government bring it within the reaches of the Act.

In *St. Michael's Convalescent Hospital,* we held that federal regulation of state agencies administering the Medicaid program in California did not subject those agencies to the provisions of the Privacy Act, stating that:
Federal funding reaches a countless number of activities of local and state governments. To assure that the federal funds are spent for the purposes for which they were intended, extensive federal regulations are promulgated and must be complied with. However, those regulations do not convert acts of local and state governmental bodies into federal governmental acts. *United States v. Orleans,* 425 U.S. 807, 816, 96 S.Ct. 1971, 1976, 48 L.Ed.2d 390 (1976); *Forsham v. Harris,* 445 U.S. 169, 100 S.Ct. 977, 63 L.Ed.2d 293 (1980). " [E]xtensive, detailed and virtually day-to-day supervision" by the federal government is needed before "agency" status could be said to attach.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

765 F.2d 1440

Page 10

765 F.2d 1440, 38 Fair Empl.Prac.Cas. (BNA) 999, 37 Empl. Prac. Dec. P 35,427, 2 Fed.R.Serv.3d 524
**(Cite as: 765 F.2d 1440)**

643 F.2d at 1373-74 (citations omitted).

Even though Medi-Cal, the Medicaid program in California, received federal financial support and was highly regulated by the federal government, we concluded that the government did not exercise extensive supervision and control over the program sufficient to characterize the administrative bodies as federal agencies under the Privacy Act. *See Irwin Memorial Blood Bank,* 640 F.2d at 1057-58 (American National Red Cross, though a close ally of the United States, is not an "agency" for purposes of the Freedom of Information Act because its operations are not subject to substantial control or supervision). Similarly here, appellant has failed to demonstrate that the federal government's control over Aerospace, a private corporation, is sufficiently pervasive to confer governmental agency status upon it.

Appellant also contends that Aerospace violated § 552a(i)(3) of the Privacy Act, which provides:
Any person who knowingly and willfully requests or obtains any record concerning an individual from an agency under false pretenses shall be guilty of a misdemeanor and fined not more than $5,000.00.

[13] Appellant's attempt to state a claim against Aerospace under this provision of the Act is futile. This section provides for criminal penalties only, and generates no civil right of action. Moreover, the information that Aerospace obtained from SAMSO was about itself, not about "an individual," as required here.

**B. Dismissal of the Air Force, SAMSO, and Air Force Systems Command**

On September 3, 1980, the trial court, without stating its reasons, also granted dismissal of appellant's Privacy Act claims against the Air Force, SAMSO, and Air Force Systems Command. We affirm.

[14] The government appellees argue that Unt's letter was not a "record" contained in a "system of records" under 5 U.S.C. § 552a(b), and therefore,

that the disclosure to Aerospace was proper. Because we find that the letter failed to satisfy the initial requirement that it be a "record" afforded protection within the meaning of the Act, we conclude that disclosure was not in violation of the statute.

A "record" is defined under § 552a(a)(4) as:
... any item, collection, or grouping of information *about an individual* that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

(emphasis added).

An "individual" is a "citizen of the United States or an alien lawfully admitted for *1449 permanent residence." 5 U.S.C. § 552a(a)(2). Consequently, for appellant's letter to be subject to restrictive disclosure, it must reflect some quality or characteristic about him. *See Boyd v. Secretary of the Navy,* 709 F.2d 684, 686 (11th Cir.1983), *cert. denied,* 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). The letter, however, is not about Unt. Rather, it is clearly about Aerospace, a private corporation, and not an individual within the meaning of the statute. The letter reflects directly on the performance by Aerospace of its contract with the government, and only indirectly on any quality or characteristic possessed by appellant. While Unt's letter mentions his difficulties with Aerospace management, this fact does not change the communication into an item about him. The subject is Aerospace and was "about" Aerospace. Because appellant has failed to demonstrate that his letter to SAMSO was a "record" pursuant to § 552a(a)(2) & (4), we conclude that the district court was correct in dismissing his Privacy Act claims against the government appellees.

**III. SANCTIONS FOR FRIVOLOUS APPEAL**

Aerospace has requested an award of attorneys' fees and costs under Rule 38 of the Federal Rules of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

765 F.2d 1440, 38 Fair Empl.Prac.Cas. (BNA) 999, 37 Empl. Prac. Dec. P 35,427, 2 Fed.R.Serv.3d 524
**(Cite as: 765 F.2d 1440)**

Appellate Procedure, which provides that:
If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to appellee.

Aerospace claims that Unt's appeal is frivolous because (1) the Privacy Act explicitly creates a civil right of action against governmental agencies only, not against private corporations, and (2) appellant challenges findings of fact that are clearly supported by the record.

[15][16] An appeal is frivolous when the arguments are entirely without merit and when the result is obvious. *N.L.R.B. v. Catalina Yachts,* 679 F.2d 180, 182 (9th Cir.1982); *McConnell v. Critchlow,* 661 F.2d 116, 118 (9th Cir.1981). While the disposition of Unt's Privacy Act claim against Aerospace is obvious because private entities are not subject to the Act, the resolution of his Title VII claim is not so clear. Consequently, we decline to award damages against appellant.

The judgment of the district court is AFFIRMED.

FERGUSON, Circuit Judge, dissenting:
Unt wrote a letter to the Air Force in which he blew the whistle on his employer, The Aerospace Corp., a defense contractor. The Air Force received Unt's letter and promptly revealed it to the Aerospace Corp. without Unt's permission. Aerospace then fired him. The majority holds that despite the Air Force's undisputed ability to receive, maintain, retrieve, and reveal Unt's letter, which discloses that Unt is a whistleblower, to the very employer about which Unt was complaining, Unt's claim fails because the letter was not "about" Unt.

I dissent from this holding in Part II(B) of the opinion. I concur in Part I because it upholds the district court's finding of no discrimination, but I disagree with the dicta in that portion that might undermine federal protection for an employee's right to blow the whistle on his employer. I concur in Part II(A) of the opinion, but I disagree with its dicta concerning the nature of Unt's letter.

The plain language of the Act encompasses Unt's letter. Section 552a(b) provides: "No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains."
The Privacy Act's definition includes Unt's letter within its definitions of both "record" and "system of records." The majority did not discuss both parts of the statute because it held that the first requirement precluded coverage. Because I read the Act as encompassing Unt's letter, I address each of the Act's requirements-of a "record" and of a "system of records"-in turn.

*1450 I.

The Privacy Act defines "record" as
any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph.

5 U.S.C. § 552a(a)(4). No one seriously disputes that Unt's letter is an "item," or that it contains his hand-signed name. Instead, the majority claims this item is not "about" Unt because it is "about" Aerospace. This interpretation is illogical, contrary to the legislative intent, and defies the case laws' consistent concern with the actual effect of a record on a person's employment when assessing that record's nature or subject.

The Privacy Act nowhere states that an item must be exclusively about the individual protected. Thus, the majority errs when it reasons that the letter is about Aerospace, and, therefore, it is not about Unt. The syllogism is incomplete because the Act fails to supply the necessary "exclusivity" premise. The majority's conclusion is invalid. The majority's holding that this letter is not an item will only prompt government agencies to maintain items with several bits of information about different subjects to evade this judicially imposed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

765 F.2d 1440

765 F.2d 1440, 38 Fair Empl.Prac.Cas. (BNA) 999, 37 Empl. Prac. Dec. P 35,427, 2 Fed.R.Serv.3d 524
(Cite as: 765 F.2d 1440)

exclusivity requirement.

The legislative history also indicates that the Act encompasses an item like Unt's letter within its proscriptions against disclosure. Congress was concerned with the *nature* of the information conveyed by a record in assessing whether a record reflected adversely upon an individual:

The reference to personal characteristics does not exclude a file that contains only names and is headed by a general label for a category of records. If the heading or the *nature* of the file represents a judgment on the individual or a subjective view, then that file would be subject to the bill.... Thus it could cover a list which contained names only but which, *by its nature, conveyed something detrimental or threatening to the reputation, rights, benefits or privileges or qualification* of the individual simply by reason of being listed on it.

P.L. 93-579, 1974 U.S.Code Cong. & Ad.News 6916, 6993 (emphasis supplied). Unt's letter acquired such a detrimental nature upon disclosure to his employer-on whom Unt blew the whistle. It was, therefore, about Unt in a very real and threatening sense, although it turned out to be also about Aerospace in an immaterial sense.

The legislative history also describes broadly the records covered by the Act:

Rather than focus on a single record or subject file, the Committee has adopted an approach focused on the total information system which includes all phases of information collection, storage, handling, processing dessimination [sic] and transfer.... The bill thus is directed to the overall programs and policies of executive branch departments and agencies including the design, development, and management of an information system, *as well as to the maintenance of one particular file on an individual, or the gathering of information on one data subject.*

*Id.* (emphasis supplied). The Act covers all aspects of information management, from the systems level down to the single data subject. Its coverage is therefore not limited to items on single subjects, as the majority holds. The Act was intended to cover items such as Unt's letter, even though they cover two data subjects.[FN1]

> FN1. Two other federal "whistleblowing" statutes support this conclusion about legislative intent. These two statutes, 10 U.S.C. § 1587 and 5 U.S.C. § 2302, protect federally employed whistleblowers from adverse personnel action and thus show a broad legislative desire to protect those who blow the whistle on illegal actions that jeopardize the government's integrity.

II.

The Act also defines "system of records":
*1451 [T]he term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. §§ 552a(a)(5).

Unt's letter and the information it contained-that he turned in his defense employer-was retrievable; it was retrieved and disclosed. Unt's letter was thus a record within a system of records, despite the absence of computer age technology in its filing, retrieval and disclosure.

Our circuit has not yet addressed the question of what constitutes a "record which is contained in a system of records," but several other courts have. Their decisions about whether the claims fall within section 552a are based on concerns similar to those expressed by the legislature. The courts have shown concern with the nature of the record and the adverse effect of disclosure, particularly on employment decisions, in determining whether the record warranted the Act's protections. These decisions concerning the "system of records" requirement thus also conflict with the majority's failure to assess whether this record was "about" Unt by noting the real effect that this letter's disclosure had upon Unt.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

765 F.2d 1440                                                                                          Page 13

765 F.2d 1440, 38 Fair Empl.Prac.Cas. (BNA) 999, 37 Empl. Prac. Dec. P 35,427, 2 Fed.R.Serv.3d 524
(Cite as: 765 F.2d 1440)

In *Chapman v. NASA*, 682 F.2d 526 (5th Cir.1982), *cert. denied*, 469 U.S. 1038, 105 S.Ct. 517, 83 L.Ed.2d 406 (1984), NASA discharged Chapman. Chapman's immediate supervisor kept notes about Chapman, his job performance, and summaries of meetings, which were ultimately placed in Chapman's administrative file. The court held that these memos were subject to the Privacy Act. In distinguishing between private memory-refreshers, which are not subject to the Act, and records, which are, the court held: "[W]hen notes bear negatively on a worker's employment status or situation, they must be handled in a manner consistent with the letter and spirit of the Privacy Act." 682 F.2d at 529 . The notes on Chapman, like the letter from Unt, " played a part in [his] discharge." 682 F.2d at 527. Thus,

When Phinney tendered his personal notes to Hall, for use by NASA in proceedings looking to the discharge of Chapman, the private aspect of the notes evanesced and they became subject to the requirements of the Privacy Act.

682 F.2d at 529. The evil of disclosure of a communication originally intended to be private which then adversely affects the complainant's employment, upon which the *Chapman* court based its decision, is present in Unt's case. His letter, like the Chapman notes, falls within the Privacy Act's protections.

In *Olberding v. United States Department of Defense, Department of the Army*, 709 F.2d 621 (8th Cir.1983), army officers disclosed that Olberding had undergone psychiatric testing and that no disorders or illness had been found. The court found no violation of the Privacy Act, because the disclosed information was not disclosure " resulting from *a retrieval* of the information initially and directly from the record contained in the system of records." 709 F.2d at 622 (emphasis supplied). Rather, the information was retrieved from "the personal knowledge of the individual." *Id.* Thus, the court's emphasis in denying an actionable Privacy Act claim was upon the *retrievability*. Unt's letter was physically retrieved from the briefcase in which it was carried, and turned over to The Aerospace Corp. The evil of retrieval from stored files, with which the *Olberding* court

expressed concern, is thus present in Unt's case. *Cf. King v. Califano*, 471 F.Supp. 180 (D.D.C.1979) (personal opinion disclosed from individual's memory not a disclosure of a record within meaning of Privacy Act); *Doyle v. Behan*, 670 F.2d 535 (5th Cir.1982) (same).

In *Boyd v. Secretary of the Navy*, 709 F.2d 684 (11th Cir.1983), *cert. denied*, 464 U.S. 1043, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984), the Navy employed Boyd. Boyd claimed that the Navy refused him access to his own files, destroyed memoranda to \*1452 which he should have been granted access, and failed to maintain an accurate and timely record about him. The court held that the memoranda were records because they reflected poorly on some characteristic of Boyd. They were not, however, maintained within a system of records, in part because:

The memorandum in question ... was not used in making any decisions concerning Boyd's employment status. As such, it was merely a memory aid of the superiors who attended the meeting with Boyd.

*Id.* at 686-87. Unt alleges that the letter was used to make a decision about his employment status. The evil of using officially maintained information to affect adversely employment decisions, with which the *Boyd* court expressed concern, is therefore also present in Unt's case.

Several district court cases that have declined to characterize written material as records within a system of records have turned on factors not present in Unt's claim. *See Savarese v. United States Department of Health*, 479 F.Supp. 304, 307 (N.D.Ga.1979) (disclosed information was not retrievable by name or name-related identifier; Unt's letter, though only in a briefcase, was retrieved because it bore his name), *aff'd*, 620 F.2d 298 (5th Cir.1980), *cert. denied*, 449 U.S. 1078, 101 S.Ct. 858, 66 L.Ed.2d 801 (1981); *Smiertka v. United States Department of Treasury*, 447 F.Supp. 221 (D.D.C.1978) (disclosed information not retrievable by plaintiff's name, but "by someone else's identifier, in particular the name of the agency investigator who prepared them"), *vacated and remanded on other grounds*, 604 F.2d 698

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

765 F.2d 1440, 38 Fair Empl.Prac.Cas. (BNA) 999, 37 Empl. Prac. Dec. P 35,427, 2 Fed.R.Serv.3d 524
**(Cite as: 765 F.2d 1440)**

(D.C.Cir.1979). They are therefore unpersuasive in Unt's case.

Admittedly, a federal regulation indicates that Unt's claim might not be actionable. That regulation, however, is based on reasons entirely different from those of the majority. That regulation also conflicts with the Act's language and purpose. Thirty-two C.F.R. § 806b.3(p) defines "system of records" as:
Any group of records from which personal information is retrieved by the name of an individual or by some personal identifier, such as the individual's Social Security Number (SSN). If such retrieval is possible but not actually done, the group does not constitute a system of records.

To the extent that this regulation undermines legislative and judicial concern with government recordkeeping of all kinds-manual and computerized, with the nature and adverse employment consequences of disclosure, and with the values of government responsibility and individual privacy, I must disagree with its definition of a system of records. The actual and threatened harm resulting from disclosure of personal information does not change with the method of retrieval.

### CONCLUSION

The lesson of this regulation is: misfile personal data. The lesson of the majority's opinion is: file personal data with other data. Then, retrieving the data from wherever they were misfiled, left unfiled, or filed with other data would implicate no privacy values.

The Act itself, however, is far broader. In order to succeed under the 5 U.S.C. § 522a(b), Unt's letter must be a "record which is contained in a system of records." The legislature that adopted this phrase and the cases that have considered the phrase show that in determining whether a bit of information is a "record which is contained in a system of records," it is proper to look at the nature of the record, its ability to be retrieved, and the adverse effects of disclosure-particularly upon employment decisions.

Under these tests, Unt's letter deserves the Privacy Act's protection.

C.A.9 (Cal.),1985.
Unt v. Aerospace Corp.
765 F.2d 1440, 38 Fair Empl.Prac.Cas. (BNA) 999, 37 Empl. Prac. Dec. P 35,427, 2 Fed.R.Serv.3d 524

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

8

Westlaw.

809 F.2d 1371                                                                                                Page 1

809 F.2d 1371, 42 Fair Empl.Prac.Cas. (BNA) 1660, 42 Empl. Prac. Dec. P 36,795
(Cite as: 809 F.2d 1371)

▷
Yartzoff v. Thomas
C.A.9, 1987.

United States Court of Appeals,Ninth Circuit.
Andrew G. YARTZOFF, Plaintiff-Appellant,
v.
Lee M. THOMAS,[FN*] Administrator, U.S.
Environmental Protection Agency,
Defendant-Appellee.

FN* Lee M. Thomas is substituted for
William D. Ruckelshaus as the
Administrator of the U.S. Environmental
Protection Agency. Fed.R.App.P. 43(c).
No. 85-4073.

Argued and Submitted Sept. 3, 1986.
Decided Feb. 6, 1987.

Chemist of Russian origin brought action against
Environmental Protection Agency for employment
discrimination based on national origin and
retaliation for engaging in protective activities.
The United States District Court for the District of
Oregon, James M. Burns, J., granted summary
judgment for EPA, and plaintiff appealed. The
Court of Appeals, Nelson, Circuit Judge, held that:
(1) plaintiff's five allegations of national origin
discrimination insufficiently alleged claim of
national origin discrimination; (2) plaintiff failed to
establish prima facie case on three of retaliation
claims; and (3) questions of material fact
precluding summary judgment existed as to other
retaliation claims.

Affirmed in part, reversed in part, and remanded.
West Headnotes
[1] Administrative Law and Procedure 15A ⇐➤
744.1

15A Administrative Law and Procedure
    15AV  Judicial  Review  of  Administrative
Decisions
        15AV(D) Scope of Review in General
            15Ak744 Trial De Novo
                15Ak744.1 k. In General. Most Cited
Cases
    (Formerly 15Ak744)

Civil Rights 78 ⇐➤ 1510

78 Civil Rights
    78IV  Remedies  Under  Federal  Employment
Discrimination Statutes
        78k1503  Administrative  Agencies  and
Proceedings
            78k1510 k. Judicial Review and
Enforcement of Administrative Decisions. Most
Cited Cases
    (Formerly 78k347, 78k36)
Federal employees have same right to de novo
review of Title VII claims in district court that state
and private-sector employees have. Civil Rights
Act of 1964, § 701 et seq., as amended, 42
U.S.C.A. § 2000e et seq.

[2] Civil Rights 78 ⇐➤ 1544

78 Civil Rights
    78IV  Remedies  Under  Federal  Employment
Discrimination Statutes
        78k1543 Weight and Sufficiency of Evidence
            78k1544 k. In General. Most Cited Cases
    (Formerly 78k382.1, 78k382, 78k44(1))
Each of federal employee's allegations of national
origin discrimination failed due to insufficient
evidence establishing a prima facie case, as agency
was carrying out a reduction-in-force program and
thus imposed freeze on promotion. Civil Rights Act
of 1964, § 701 et seq., as amended, 42 U.S.C.A. §
2000e et seq.

[3] Civil Rights 78 ⇐➤ 1127

78 Civil Rights
    78II Employment Practices

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

809 F.2d 1371

Page 2

809 F.2d 1371, 42 Fair Empl.Prac.Cas. (BNA) 1660, 42 Empl. Prac. Dec. P 36,795
(Cite as: 809 F.2d 1371)

78k1124 Public Employment
78k1127 k. Hiring. Most Cited Cases
(Formerly 78k146, 78k9.10)
Federal employee who admitted he did not complete applications and otherwise comply with proper hiring and reclassification procedures failed to state claims for failure to hire and to promote. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[4] Civil Rights 78 ⊜1140**

78 Civil Rights
78II Employment Practices
78k1140 k. Disparate Impact. Most Cited Cases
(Formerly 78k153, 78k9.10)
Federal employee's Russian national origin discrimination claim failed under disparate impact theory absent allegations that otherwise neutral practices of agency had substantial adverse impact on group protected by Title VII. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[5] Civil Rights 78 ⊜1252**

78 Civil Rights
78II Employment Practices
78k1241 Retaliation for Exercise of Rights
78k1252 k. Causal Connection; Temporal Proximity. Most Cited Cases

**United States 393 ⊜36**

393 United States
393I Government in General
393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Federal employee failed to show that agency unlawfully discriminated against him because of actions he took to enforce rights protected under Title VII absent showing necessary causal link with respect to retaliation and surprise quality assurance tests, denial of request for promotion for which proper application procedures were not followed, and a claimed delay in prosecuting complaints by agency civil rights office. Civil Rights Act of 1964,

§ 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[6] United States 393 ⊜36**

393 United States
393I Government in General
393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Federal employee presented evidence sufficient to establish prima facie case of unlawful discrimination by agency against employer because of action he took to enforce rights protected under Title VII; there was evidence that employee engaged in protected activity by filing Title VII grievances and cooperating in investigations, agency's alleged transfers of job duties and undeserved performance ratings, if proven, would constitute adverse employment decisions, employee's supervisors were aware of his Title VII complaints and participation in administrative investigations, and subsequently issued subaverage performance rating and transferred additional job duties away from employee. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[7] Civil Rights 78 ⊜1249(1)**

78 Civil Rights
78II Employment Practices
78k1241 Retaliation for Exercise of Rights
78k1249 Public Employment
78k1249(1) k. In General. Most Cited Cases

**United States 393 ⊜36**

393 United States
393I Government in General
393k36 k. Appointment or Employment and Tenure of Agents, Clerks, and Employees in General. Most Cited Cases
Federal agency met its burden of articulating legitimate, nonretaliatory reasons for employment decisions regarding employee to raise genuine issue of fact as to whether agency retaliated against employee for engaging in protected Title VII

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

809 F.2d 1371                                                                            Page 3

809 F.2d 1371, 42 Fair Empl.Prac.Cas. (BNA) 1660, 42 Empl. Prac. Dec. P 36,795
(Cite as: 809 F.2d 1371)

activity. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

**[8] Federal Civil Procedure 170A ⇐2497.1**

170A Federal Civil Procedure
   170AXVII Judgment
      170AXVII(C) Summary Judgment
         170AXVII(C)2 Particular Cases
            170Ak2497 Employees and Employment Discrimination, Actions Involving
               170Ak2497.1 k. In General. Most Cited Cases
   (Formerly 170Ak2497)
Questions of fact precluding summary judgment existed as to whether proffered explanations of facially discriminatory conduct by agency against employee who took actions to enforce rights protected under Title VII were pretextual, including evidence of employee's precomplaint history of receiving high performance ratings and questions about whether his supervisors harassed and closely watched him during period after discrimination complaint. Civil Rights Act of 1964, § 701 et seq., as amended, 42 U.S.C.A. § 2000e et seq.

*1372 Andrew G. Yartzoff, in pro per.
James L. Sutherland, Eugene, Or., for defendant-appellee.

Appeal from the United States District Court for the District of Oregon.

Before WRIGHT, GOODWIN and NELSON, Circuit Judges.
NELSON, Circuit Judge:
Yartzoff appeals *pro se* from the district court's grant of summary judgment in favor of the Environmental Protection Agency ("EPA") in a Title VII suit alleging discrimination on the basis of national origin and retaliation for engaging in protected activities. He contends that genuine issues of material fact remain that should preclude summary judgment. We find that no genuine issue of material fact remains with respect to his national origin claims and some of his retaliation claims and that the EPA is entitled to judgment as a matter of law on those claims. The record indicates,

however, that a genuine issue exists with respect to some of his retaliation claims. Accordingly, we affirm the grant of summary judgment in part, reverse in part, and remand for further proceedings.

**I. BACKGROUND**

Yartzoff, of Russian origin, worked as a chemist at the EPA's research laboratory in Corvallis, Oregon, from December 1972 until December 1983. He had previously worked as a GS-11 chemist for the Food and Drug Administration in the 1960s, and he obtained a Ph.D. in chemistry in 1970. After joining the EPA at GS-7 in 1972, his position was upgraded to GS-9 in 1975. In six administrative complaints and two actions brought in district court, which form the basis of this appeal, Yartzoff alleges that the EPA made a variety of adverse employment decisions between March 1979 and February 1981 because of his Russian national origin or his pursuit of Title VII grievances.

*1373 In early March 1979, Yartzoff sent letters to his supervisors stating that his qualifications and duties justified a reclassification of his position to GS-11 or GS-12. He sent a copy of the letter to an Equal Employment Opportunity (EEO) counsellor. The supervisors treated the letters as a request for a desk audit, a procedure in which job duties are assessed before a position can be reclassified to a higher GS level, and denied the request in late March 1979. A day after the denial of this request, the EPA administered a surprise quality assurance performance test to laboratory employees, including Yartzoff.

In April 1979, the EPA received authorization to hire six chemists at GS-11 and GS-12. Yartzoff wrote to his supervisor stating that he was qualified for these positions, but others were hired.

Yartzoff filed the first of six formal complaints with the EPA's Office of Civil Rights in May 1979. During the period August 1979 to February 1980, Yartzoff's supervisors transferred several job duties away from him. At a meeting held on April 4, 1980 between Yartzoff, two of his supervisors, and an EEO counsellor to discuss his grievances,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

809 F.2d 1371                                                                                                     Page 4

809 F.2d 1371, 42 Fair Empl.Prac.Cas. (BNA) 1660, 42 Empl. Prac. Dec. P 36,795
**(Cite as: 809 F.2d 1371)**

Yartzoff's request for an immediate promotion to GS-11 was denied. The civil rights office investigated his charges in mid-April. In late April, Yartzoff's supervisors gave him an employment performance rating of below average in " cooperativeness" and average in other categories.

Later that year, an EPA personnel director in Las Vegas did not approve Yartzoff's written request for a self-improvement training program to improve his English, grammar, composition, and writing. The EPA's Office of Civil Rights investigated Yartzoff's administrative complaints at the Corvallis laboratory between December 2 and December 12, 1980. On February 9, 1981, Yartzoff's supervisors transferred additional job responsibilities away from him.

After the Office of Civil Rights did not render final determinations on his complaints within 180 days, Yartzoff filed two suits in federal district court seeking injunctive relief, back pay, fringe benefits, and general and punitive damages. Adopting a magistrate's findings and recommendation, the district court granted summary judgment in favor of the EPA on all of Yartzoff's national origin and retaliation claims. It held that Yartzoff failed to establish a prima facie case and that, even if he had on some of the claims, the EPA's evidence effectively rebutted it. Yartzoff timely appealed and argues that genuine issues of material fact exist that should preclude summary judgment. This court has jurisdiction under 28 U.S.C. § 1291.

## II. DISCUSSION

This court reviews the district court's grant of summary judgment de novo. *Williams v. Edward Apffels Coffee Co.,* 792 F.2d 1482, 1484 (9th Cir.1986). We must determine whether, viewing the evidence and the inferences from that evidence in the light most favorable to the nonmoving party, there remains any genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Proctor v. Consolidated Freightways Corp.,* 795 F.2d 1472, 1477 (9th Cir.1986); *Williams,* 792 F.2d at 1484; Fed.R.Civ.P. 56(c).

[1] At the outset, we note that Yartzoff's argument that *Chandler v. Roudebush,* 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416 (1976), provides an unqualified right to trial is mistaken. *Chandler* established that federal employees have the same right to de novo review of Title VII claims in district court that state and private-sector employees have. Yartzoff exercised this right by filing suit in federal district court. Once there, summary judgment rules apply. *Nolan v. Cleland,* 686 F.2d 806, 811 (9th Cir.1982).

### A. National Origin Claims

Yartzoff alleges that the EPA discriminated against him on the basis of his Russian national origin under 42 U.S.C. § 2000e-2(a) (1982). His complaint states *1374 claims for disparate treatment, not disparate impact. The Title VII analysis set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973), follows three steps:
[A] plaintiff must first establish a *prima facie* case of discrimination. If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its employment decision. Then, in order to prevail, the plaintiff must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive which is discriminatory.

*Lowe v. City of Monrovia,* 775 F.2d 998, 1005 (9th Cir.1985), *amended,* 784 F.2d 1407 (9th Cir.1986).

To establish a prima facie case of disparate treatment, the plaintiff must offer evidence that " give[s] rise to an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). A common way to establish this inference is to show that the four factors set forth in *McDonnell Douglas* are present: (1) the plaintiff belongs to a class protected by Title VII, (2) the plaintiff applied and was qualified for a job for which the employer was seeking applicants, (3) the plaintiff, despite being qualified, was

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

809 F.2d 1371                                                                Page 5

809 F.2d 1371, 42 Fair Empl.Prac.Cas. (BNA) 1660, 42 Empl. Prac. Dec. P 36,795
**(Cite as: 809 F.2d 1371)**

rejected, and (4) after the plaintiff's rejection, the position remained open and the employer continued to seek applications from persons of comparable qualifications. Satisfaction of these criteria is sufficient to establish a prima facie case. *Williams,* 792 F.2d at 1485; *Lowe,* 775 F.2d at 1005. But failure to allege "specific facts" sufficient to establish the existence of a prima facie case renders a grant of summary judgment appropriate. *Palmer v. United States,* 794 F.2d 534, 536-39 (9th Cir.1986); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e).

[2] Each of Yartzoff's five allegations of national origin discrimination fails because there is insufficient evidence to establish a prima facie case. The parties agree that Yartzoff falls within a class protected by Title VII. The claim based on his supervisor's refusal to perform a desk audit in March 1979, however, overlooks the fact that the EPA was then carrying out a reduction-in-force program. The program, announced in July 1978, imposed a freeze on promotions between February and July 1979. The second element of a prima facie case is absent because the EPA neither sought applicants nor was able to give promotions. *See Palmer,* 794 F.2d at 537-38.

[3] The two claims concerning the EPA's failure to hire Yartzoff for one of the six openings in April 1979 and its refusal to promote him in April 1980 both fail for the same reason. Whether or not we agree with the district court's assessment that Yartzoff had not produced sufficient evidence on which a factfinder could infer that he was qualified for the positions he sought, Yartzoff admits that he failed to complete applications and otherwise comply with proper hiring and reclassification procedures. In unusual circumstances, failure to apply for a position may not vitiate a Title VII action. *See International Bhd. of Teamsters v. United States,* 431 U.S. 324, 367-68, 97 S.Ct. 1843, 1870-71, 52 L.Ed.2d 396 (1977) (holding that a nonapplicant may pursue a Title VII action on a showing that he was deterred from applying by the employer's discriminatory practices). The record in this case, however, to say the least, does not show that Yartzoff was discouraged from applying. He

simply failed to do so.

The claim concerning the denial of Yartzoff's request for a self-improvement training program fails because the Las Vegas personnel director lacked authority to implement unilaterally such a program. A prima facie case in this setting should include evidence that the employer's agent was in fact authorized to grant the request. Although the personnel director informed Yartzoff that a training program had to be developed by Yartzoff and his supervisor, *1375 Yartzoff did not further pursue an attempt to arrange one of the programs available at Corvallis.

Finally, Yartzoff's claim that the EPA's Office of Civil Rights delayed acting on his complaints because of ethnic animus is meritless. The record shows that the office had a substantial backlog of cases to handle, and Yartzoff did not allege that his legal rights were prejudiced in any way by the timing of the administrative determinations. When the agency did not act within 180 days, Yartzoff availed himself of his statutory right to file suit in district court. *See* 42 U.S.C. § 2000e-16(c) (1982). On these pleadings, we hold that Yartzoff failed to state a claim.

[4] The district court also correctly disposed of the national origin claims if construed to advance a disparate impact theory. The complaint does not allege that otherwise neutral practices of the EPA had a substantial, adverse impact on a group protected by Title VII. *See Lowe,* 775 F.2d at 1004. Even if the *pro se* complaint is construed liberally to state a claim under a disparate impact theory, the record does not contain evidence of a substantial, adverse impact sufficient to survive summary judgment. Therefore, the EPA was entitled to summary judgment on all of the national origin claims.

**B. Retaliation Claims**

Yartzoff also alleges that the EPA unlawfully discriminated against him because of actions he took to enforce rights protected under Title VII. *See* 42 U.S.C. § 2000e-3(a) (1982). The

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

809 F.2d 1371                                                        Page 6

809 F.2d 1371, 42 Fair Empl.Prac.Cas. (BNA) 1660, 42 Empl. Prac. Dec. P 36,795
(Cite as: 809 F.2d 1371)

*McDonnell Douglas* order and allocation of proof that governs disparate treatment claims also governs retaliation claims. *See Ruggles v. California Polytechnic State Univ.,* 797 F.2d 782, 784 (9th Cir.1986); *Miller v. Fairchild Indus., Inc.,* 797 F.2d 727, 730 (9th Cir.1986).

### I. Yartzoff's Prima Facie Case

A plaintiff may establish a prima facie case of retaliation by showing that (1) he engaged or was engaging in activity protected under Title VII, (2) the employer subjected him to an adverse employment decision, and (3) there was a causal link between the protected activity and the employer's action. *Ruggles,* 797 F.2d at 785; *Miller,* 797 F.2d at 731; *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir.1982). At the summary judgment stage, the prima facie case need not be proved by a preponderance of the evidence. *Miller,* 797 F.2d at 731.

[5] We agree with the district court that Yartzoff failed to establish a prima facie case on three of the retaliation claims. Whether or not Yartzoff's letter-writing campaign in March 1979 constituted a protected activity under Title VII, he failed to show the necessary causal link with respect to the March 1979 surprise quality assurance test. The record clearly shows that the decision to administer the tests was made in January and February 1979, prior to the beginning of Yartzoff's letter-writing campaign. *See Miller,* 797 F.2d at 731 n. 1 (noting that an employer's decision on a course of action made prior to learning of the employee's protected activity does not give rise to an inference of causation). The record also fails to show a causal link with respect to the denial of Yartzoff's request for a promotion in April 1980 because, as discussed above, he failed to follow proper application procedures. Absent a proper application, he could not be promoted. Finally, the charge that the civil rights office delayed prosecuting Yartzoff's complaints in retaliation for filing the complaints is meritless.

[6] We disagree with the district court's conclusion, however, that Yartzoff failed to present evidence

sufficient to establish a prima facie case on the other retaliation claims: the transfer of various job duties from Yartzoff between August 1979 and February 1980, the issuance of a subaverage performance rating in April 1980, and the transfer of additional job duties in February 1981. The first two elements of the prima facie case are clearly met. Yartzoff engaged in protected activity by filing Title VII grievances beginning in May 1979 and *1376 by cooperating in investigations. *See* 42 U.S.C. § 2000e-3(a) (1982). Transfers of job duties and undeserved performance ratings, if proven, would constitute "adverse employment decisions" cognizable under this section. B. Schlei & P. Grossman, *Employment Discrimination Law* 554 (2d ed. 1983); *id.* at 105-06 (Cum.Supp.1983-1984).

Causation sufficient to establish the third element of the prima facie case may be inferred from circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in protected activities and the proximity in time between the protected action and the allegedly retaliatory employment decision. *Miller,* 797 F.2d at 731-32. In this case, the record contains evidence that Yartzoff's supervisors were aware of his Title VII complaints and of his participation in administrative investigations. *See id.; Cohen,* 686 F.2d at 796 (stating that an employer's awareness is essential to showing a causal link).

Proximity in time is apparent on the record: the transfers of job duties and the sub-average performance rating all occurred during the pendency of the administrative complaints and investigations. This inference of a causal link is strengthened by the closeness in time between particular events. *See B. Schlei & P. Grossman, supra,* at 559 & n. 145 (2d ed. 1983). The first series of transfers of job duties between August 1979 and February 1980 began less than three months after he filed his first administrative complaint. *See Hochstadt v. Worcester Found. for Experimental Biology, Inc.,* 425 F.Supp. 318, 324-25 (D.Mass.) (holding that discharge six months after EEOC settlement and a month after an informal complaint satisfies causation requirement), *aff'd,* 545 F.2d 222 (1st Cir.1976). The supervisors

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

809 F.2d 1371

Page 7

809 F.2d 1371, 42 Fair Empl.Prac.Cas. (BNA) 1660, 42 Empl. Prac. Dec. P 36,795
**(Cite as: 809 F.2d 1371)**

issued the sub-average performance rating in late April 1980, approximately three weeks after Yartzoff, the supervisors, and the EEO counsellor met to discuss the complaints on April 4, 1980, and two weeks after the civil rights office investigated the charges in mid-April. Additional job duties were transferred away from Yartzoff in February 9, 1981, less than two months after the civil rights office finished investigating his charges at Corvallis on December 12, 1980. *See Miller,* 797 F.2d at 731-32 (holding that an employer's knowledge of protected activity and the discharge of employees less than two months after negotiation of EEOC settlement agreements was sufficiently probative of a causal link to withstand summary judgment). Thus, Yartzoff set forth sufficient evidence on which to establish a prima facie case on these claims.

### 2. The EPA's Articulated Nonretaliatory Reasons for Its Adverse Employment Decisions

In Title VII retaliation cases, once the plaintiff has established a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nonretaliatory explanation for its decisions. *Miller,* 797 F.2d at 731. Only the burden of production shifts; the ultimate burden of persuasion remains with the plaintiff. *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *Cohen,* 686 F.2d at 796-97. The employer need not persuade the court that it was actually motivated by the proffered reasons: "It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Burdine,* 450 U.S. at 254-55, 101 S.Ct. at 1094. Thus, the EPA " 'need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Miller,* 797 F.2d at 731 (quoting *Burdine,* 450 U.S. at 257, 101 S.Ct. at 1096).

[7] We agree with the district court that the EPA met its burden of articulating legitimate, nonretaliatory reasons for its employment decisions regarding Yartzoff. The EPA presented evidence that the transfers of job duties were related to agency reorganization plans, budget cuts, and the inability of staff members to fulfill necessary duties, and that the issuance of the *1377 sub-average performance rating for "cooperativeness" was based on incidents allegedly showing that Yartzoff was uncooperative. These explanations raise a genuine issue of fact as to whether the EPA retaliated against Yartzoff.

### 3. Yartzoff's Evidence of the EPA's Pretext

If the defendant carries the burden of satisfactorily articulating a legitimate, nonretaliatory reason at trial, the legally mandatory inference of retaliatory discrimination arising from the plaintiff's prima facie case drops away. *See Burdine,* 450 U.S. at 255 & n. 10, 101 S.Ct. at 1095 & n. 10. The burden of production shifts back to the plaintiff to show that the alleged explanation is a pretext for impermissible retaliation. This burden thus merges with the plaintiff's ultimate burden of persuading the court that he is the victim of retaliation. *See id.* at 256, 101 S.Ct. at 1095. The plaintiff may succeed " either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* Evidence already introduced to establish the prima facie case may be considered, and "[i]ndeed, there may be some cases where the plaintiff's initial evidence, combined with effective cross-examination of the defendant, will suffice to discredit the defendant's explanation." *Id.* at 255 n. 10, 101 S.Ct. at 1095 n. 10; *accord Miller,* 797 F.2d at 732; *Williams,* 792 F.2d at 1486; *Lowe,* 775 F.2d at 1008. Accordingly, this court has observed that a grant of summary judgment, though appropriate when evidence of discriminatory intent is totally lacking, is generally unsuitable in Title VII cases in which the plaintiff has established a prima facie case because of the " 'elusive factual question' " of intentional discrimination. *Miller,* 797 F.2d at 732-33 (quoting *Burdine,* 450 U.S. at 255 n. 8, 101 S.Ct. at 1094 n. 8); *Lowe,* 775 F.2d at 1009, *as amended,* 784 F.2d at 1407; *see Schuler v. Chronicle Broadcasting Co.,* 793 F.2d 1010, 1011-12 (9th Cir.1986); *Steckl v. Motorola, Inc.,* 703 F.2d 392, 393 (9th Cir.1983).

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

809 F.2d 1371

809 F.2d 1371, 42 Fair Empl.Prac.Cas. (BNA) 1660, 42 Empl. Prac. Dec. P 36,795
(Cite as: 809 F.2d 1371)

[8] In this case, we need not rely solely on the evidence presented in support of the prima facie case because other evidence also tends to show the existence of a genuine issue as to whether the proffered explanations are pretextual. In particular, Yartzoff introduced evidence that for years prior to the filing of his complaints, he had always received performance ratings of average and above average on all employment indices. Following the filing of his administrative complaints and his April 1980 meeting with his supervisor to discuss his Title VII grievances, however, he received a sub-average rating for cooperativeness for the first time. Although the EPA introduced affidavits of co-workers attesting to Yartzoff's alleged uncooperative behavior, Yartzoff should be afforded an opportunity to cross-examine these individuals and allow the factfinder to weigh the evidence to determine whether the allegations of uncooperativeness were justified. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10.

Furthermore, evidence in the record raises questions about whether Yartzoff's supervisors harassed and closely watched him during the period in question. If proven at trial, such incidents would bear on the pretext issue. *See B. Schlei & P. Grossman, supra,* at 559 (2d ed. 1983) (noting that surveillance " strongly suggests the possibility of a search for a pretextual basis for discipline, which in turn suggests that subsequent discipline was for purposes of retaliation"). Finally, we believe that the fact that Yartzoff experienced not one, but a series of adverse employment decisions during a two-year period is itself probative of pretext and thus of the " elusive factual question" of intentional discrimination on the individual counts. Therefore, summary judgment on these counts was inappropriate.

Our holding that summary judgment was inappropriate on some of the retaliation claims, however, should not embolden Yartzoff in his hopes of ultimately succeeding *1378 at trial. In the face of strong evidence presented by the EPA showing legitimate reasons for its actions, Yartzoff's evidence appears weak. His claims taken as a whole contain many indicia of spuriousness, and he should be cautioned by the costs of litigation. If

his proof fails to sustain the claim of retaliatory employment practices, he may well suffer judgment for defense costs and attorneys' fees. The trier of fact could find that the case was brought in bad faith to harass the defendant.

### CONCLUSION

Summary judgment on the disparate treatment claims, and on some of the retaliation claims, was appropriate because Yartzoff failed to establish a prima facie case. On other retaliation counts, Yartzoff presented evidence sufficient to establish a prima facie case and to raise a reasonable inference that the EPA's proffered explanations may have been pretextual. Therefore, the decision of the district court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for further proceedings consistent with this opinion. Any future appeals in this case will be returned to this panel.

C.A.9, 1987.
Yartzoff v. Thomas
809 F.2d 1371, 42 Fair Empl.Prac.Cas. (BNA) 1660, 42 Empl. Prac. Dec. P 36,795

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**9**

Westlaw.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Page 1

▷

Neveu v. City of Fresno
E.D.Cal.,2005.

United States District Court,E.D. California.
Michael NEVEU, Plaintiff,
v.
CITY OF FRESNO, a municipality; Jerry Dyer,
individually; Michael Guthrie, individually; Greg
Garner, individually; Darrel Fifield, individually;
Marty West, individually; Roger Enmark,
individually; and Does 1 through 10, Defendants.
No. 104CV06490OWWLJO.

July 15, 2005.

**Background:** Police officer brought civil rights
claim against city and individual police department
members under § 1983 and two California
whistleblower statutes. Defendants moved to dismiss.

**Holdings:** The District Court, Wanger, J., held that:

(1) § 1983 claims based on discrete acts of failure to
promote officer occurring more than two years before
complaint was filed were time-barred under
applicable California statute of limitations for
personal injury actions;

(2) officer sufficiently alleged that captains, deputy
chief, and chief of police took " adverse employment
action" against him as required to state First
Amendment retaliation claim;

(3) individual defendants were not entitled to
qualified immunity;

(4) officer failed to state § 1983 claim against city or
police chief in his official capacity, where he did not
identify or define policy or custom involved;

(5) officer could not maintain § 1983 claim based on
Fourteenth Amendment equal protection violation,
where he did not allege he was treated differently
from others who were similarly situated;

(6) officer failed to exhaust administrative remedies
before suing under California Labor Code
whistleblower provision;

(7) officer could not bring claim against city under
California Government Code whistleblower
provision, and he failed to sufficiently plead all
elements necessary to state claim against individual
defendants;

(8) city was immune from liability for punitive
damages under § 1983; and

(9) claim for punitive damages under Government
Code whistleblower provision would not be stricken
for failure to plead malice.

Motions granted in part and denied in part.
West Headnotes
[1] Federal Civil Procedure 170A ☞1771

170A Federal Civil Procedure
   170AXI Dismissal
     170AXI(B) Involuntary Dismissal
       170AXI(B)3 Pleading, Defects In, in
General
         170Ak1771 k. In General. Most Cited
Cases
Motion to dismiss for failure to state a claim is
disfavored and rarely granted. Fed.Rules
Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

[2] Federal Civil Procedure 170A ☞1829

170A Federal Civil Procedure
   170AXI Dismissal
     170AXI(B) Involuntary Dismissal
       170AXI(B)5 Proceedings
        170Ak1827 Determination
         170Ak1829 k. Construction of
Pleadings. Most Cited Cases

**Federal Civil Procedure 170A ☞1835**

170A Federal Civil Procedure
   170AXI Dismissal
     170AXI(B) Involuntary Dismissal
      170AXI(B)5 Proceedings
        170Ak1827 Determination
         170Ak1835 k. Matters Deemed
Admitted. Most Cited Cases
In deciding whether to grant motion to dismiss for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Page 2

failure to state a claim, court accepts all factual allegations of complaint as true and draws all reasonable inferences in favor of nonmoving party. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A** ☞1835

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)5 Proceedings
                170Ak1827 Determination
                    170Ak1835 k. Matters Deemed Admitted. Most Cited Cases
On motion to dismiss for failure to state a claim, court need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit, nor is court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A** ☞1754

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1752 Affirmative Defenses, Raising by Motion to Dismiss
                    170Ak1754 k. Limitations, Laches and Prematurity. Most Cited Cases
Where facts and dates alleged in complaint demonstrate that complaint is barred by statute of limitations, motion to dismiss for failure to state a claim should be granted; there is no requirement, however, that affirmative defenses, including statutes of limitation, appear on face of complaint. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[5] Federal Civil Procedure 170A** ☞1754

170A Federal Civil Procedure
    170AXI Dismissal
        170AXI(B) Involuntary Dismissal
            170AXI(B)2 Grounds in General
                170Ak1752 Affirmative Defenses, Raising by Motion to Dismiss
                    170Ak1754 k. Limitations, Laches and Prematurity. Most Cited Cases
When motion to dismiss is based on running of statute of limitations, it can be granted only if assertions of complaint, read with required liberality,

would not permit plaintiff to prove that statute was tolled. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**[6] Federal Civil Procedure 170A** ☞943

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(J) Bill of Particulars; More Definite Statement
            170AVII(J)1 In General
                170Ak943 k. Nature and Purpose in General. Most Cited Cases

**Federal Civil Procedure 170A** ☞948

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(J) Bill of Particulars; More Definite Statement
            170AVII(J)1 In General
                170Ak947 Necessity
                    170Ak948 k. To Prepare Responsive Pleading. Most Cited Cases
Motion for a more definite statement attacks unintelligibility of complaint, not simply mere lack of detail, and is only proper when a party is unable to determine how to frame response to issues raised by complaint. Fed.Rules Civ.Proc.Rule 12(e), 28 U.S.C.A.

**[7] Federal Civil Procedure 170A** ☞945

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(J) Bill of Particulars; More Definite Statement
            170AVII(J)1 In General
                170Ak945 k. Grounds in General. Most Cited Cases
Court will deny motion for a more definite statement where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted. Fed.Rules Civ.Proc.Rule 12(e), 28 U.S.C.A.

**[8] Federal Civil Procedure 170A** ☞948

170A Federal Civil Procedure
    170AVII Pleadings and Motions
        170AVII(J) Bill of Particulars; More Definite Statement
            170AVII(J)1 In General

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159                                    Page 3

(Cite as: 392 F.Supp.2d 1159)

170Ak947 Necessity
170Ak948 k. To Prepare Responsive Pleading. Most Cited Cases
Motion for a more definite statement is proper only where complaint is so vague or ambiguous that opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself. Fed.Rules Civ.Proc.Rule 12(e), 28 U.S.C.A.

[9] Federal Civil Procedure 170A ☞943

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(J) Bill of Particulars; More Definite Statement
170AVII(J)1 In General
170Ak943 k. Nature and Purpose in General. Most Cited Cases
Motion for a more definite statement should not be used to test opponent's case by requiring him to allege certain facts or retreat from his allegations. Fed.Rules Civ.Proc.Rule 12(e), 28 U.S.C.A.

[10] Federal Civil Procedure 170A ☞945

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(J) Bill of Particulars; More Definite Statement
170AVII(J)1 In General
170Ak945 k. Grounds in General. Most Cited Cases
Motion for a more definite statement is likely to be denied where substance of claim has been alleged, even though some of the details are omitted. Fed.Rules Civ.Proc.Rule 12(e), 28 U.S.C.A.

[11] Federal Civil Procedure 170A ☞953

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(J) Bill of Particulars; More Definite Statement
170AVII(J)1 In General
170Ak952 Obtaining Evidence or Names of Witnesses
170Ak953 k. Depositions and Discovery, Availability Of. Most Cited Cases
If detail sought by motion for more definite statement is obtainable through discovery, the motion should be denied. Fed.Rules Civ.Proc.Rule 12(e), 28 U.S.C.A.

[12] Federal Civil Procedure 170A ☞1101

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(N) Striking Pleading or Matter Therein
170Ak1101 k. In General. Most Cited Cases
Only pleadings are subject to motions to strike. Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A.

[13] Federal Civil Procedure 170A ☞1104

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(N) Striking Pleading or Matter Therein
170Ak1104 k. Motion Not Favored. Most Cited Cases
Motions to strike are disfavored and infrequently granted. Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A.

[14] Federal Civil Procedure 170A ☞1125.1

170A Federal Civil Procedure
170AVII Pleadings and Motions
170AVII(N) Striking Pleading or Matter Therein
170Ak1125 Immaterial, Irrelevant or Unresponsive Matter
170Ak1125.1 k. In General. Most Cited Cases
Motions to strike should not be granted unless it is clear that matter to be stricken could have no possible bearing on subject matter of litigation. Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A.

[15] Civil Rights 78 ☞1343

78 Civil Rights
78III Federal Remedies in General
78k1342 Liability of Municipalities and Other Governmental Bodies
78k1343 k. In General. Most Cited Cases
Local governments are "persons" subject to suit for constitutional torts under § 1983. 42 U.S.C.A. § 1983.

[16] Civil Rights 78 ☞1345

78 Civil Rights
78III Federal Remedies in General
78k1342 Liability of Municipalities and Other

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Governmental Bodies
        78k1345 k. Acts of Officers and Employees in General; Vicarious Liability and Respondeat Superior in General. Most Cited Cases

**Civil Rights 78 ☞1351(1)**

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other Governmental Bodies
            78k1351 Governmental Ordinance, Policy, Practice, or Custom
                78k1351(1) k. In General. Most Cited Cases
Although local government can be held liable under § 1983 for its official policies or customs, it will not be held liable for an employee's actions outside of scope of implementation of policies or customs on respondeat superior theory. 42 U.S.C.A. § 1983.

**[17] Civil Rights 78 ☞1351(1)**

78 Civil Rights
    78III Federal Remedies in General
        78k1342 Liability of Municipalities and Other Governmental Bodies
            78k1351 Governmental Ordinance, Policy, Practice, or Custom
                78k1351(1) k. In General. Most Cited Cases
To prevail on § 1983 complaint against local government under *Monell* decision of United States Supreme Court, plaintiff must satisfy a three-part test: (1) local government officials must have intentionally violated plaintiff's constitutional rights, (2) violation must be a part of policy or custom and may not be an isolated incident, and (3) nexus must link the specific policy or custom to the plaintiff's injury. 42 U.S.C.A. § 1983.

**[18] Civil Rights 78 ☞1354**

78 Civil Rights
    78III Federal Remedies in General
        78k1353 Liability of Public Officials
            78k1354 k. In General. Most Cited Cases
Section 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded. 42 U.S.C.A. § 1983.

**[19] Civil Rights 78 ☞1354**

78 Civil Rights
    78III Federal Remedies in General
        78k1353 Liability of Public Officials
            78k1354 k. In General. Most Cited Cases
Section 1983 " official-capacity suits" generally represent only another way of pleading an action against entity of which an officer is an agent; as long as government entity receives notice and an opportunity to respond official-capacity suit is, in all respects other than name, to be treated as suit against the entity. 42 U.S.C.A. § 1983.

**[20] Civil Rights 78 ☞1326(2)**

78 Civil Rights
    78III Federal Remedies in General
        78k1323 Color of Law
            78k1326 Particular Cases and Contexts
                78k1326(2) k. Officers and Public Employees, in General. Most Cited Cases

**Civil Rights 78 ☞1354**

78 Civil Rights
    78III Federal Remedies in General
        78k1353 Liability of Public Officials
            78k1354 k. In General. Most Cited Cases
Section 1983 " personal-capacity suits" seek to impose personal liability upon a government official for actions he takes under color of state law. 42 U.S.C.A. § 1983.

**[21] Civil Rights 78 ☞1376(2)**

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith and Probable Cause
            78k1376 Government Agencies and Officers
                78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases
While plaintiff in personal-capacity suit need not establish connection to governmental policy or custom, officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law, 42 U.S.C.A. § 1983.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159
392 F.Supp.2d 1159
(Cite as: 392 F.Supp.2d 1159)

**[22] Civil Rights 78 ⌐⇒1376(2)**

78 Civil Rights
   78III Federal Remedies in General
      78k1372 Privilege or Immunity; Good Faith and Probable Cause
         78k1376 Government Agencies and Officers
            78k1376(2) k. Good Faith and Reasonableness; Knowledge and Clarity of Law; Motive and Intent, in General. Most Cited Cases
Individuals are not immune under doctrine of qualified immunity if they violated clearly established statutory or constitutional rights of which a reasonable person would have known. 42 U.S.C.A. § 1983.

**[23] Municipal Corporations 268 ⌐⇒741.35**

268 Municipal Corporations
   268XII Torts
      268XII(A) Exercise of Governmental and Corporate Powers in General
         268k741 Notice or Presentation of Claims for Injury
            268k741.35 k. Effect of Delay or Failure to Give. Most Cited Cases
Under California Tort Claims Act (CTCA), if claimant fails to timely file claim with public entity, and its claim is consequently rejected by public entity for that reason, courts are without jurisdiction to hear claimant's cause of action. West's Ann.Cal.Gov.Code §§ 945.4, 946.4.

**[24] Federal Civil Procedure 170A ⌐⇒677**

170A Federal Civil Procedure
   170AVII Pleadings and Motions
      170AVII(B) Complaint
         170AVII(B)1 In General
            170Ak677 k. Anticipating Defenses. Most Cited Cases
Plaintiff is ordinarily not required to plead around affirmative defenses.

**[25] Civil Rights 78 ⌐⇒1379**

78 Civil Rights
   78III Federal Remedies in General
      78k1378 Time to Sue
         78k1379 k. In General. Most Cited Cases

**Federal Courts 170B ⌐⇒425**

170B Federal Courts
   170BVI State Laws as Rules of Decision
      170BVI(C) Application to Particular Matters
         170Bk422 Limitation Laws
            170Bk425 k. Civil Rights Actions. Most Cited Cases
In California, claims brought under § 1983 are governed by California's statute of limitations for personal injury actions. 42 U.S.C.A. § 1983; West's Ann.Cal.C.C.P. § 335.1.

**[26] Federal Courts 170B ⌐⇒425**

170B Federal Courts
   170BVI State Laws as Rules of Decision
      170BVI(C) Application to Particular Matters
         170Bk422 Limitation Laws
            170Bk425 k. Civil Rights Actions. Most Cited Cases

**Federal Courts 170B ⌐⇒427**

170B Federal Courts
   170BVI State Laws as Rules of Decision
      170BVI(C) Application to Particular Matters
         170Bk422 Limitation Laws
            170Bk427 k. Computation and Tolling. Most Cited Cases
Although state law prescribes statute of limitations applicable to § 1983 claims, federal law governs time of accrual. 42 U.S.C.A. § 1983.

**[27] Limitation of Actions 241 ⌐⇒95(1)**

241 Limitation of Actions
   241II Computation of Period of Limitation
      241II(F) Ignorance, Mistake, Trust, Fraud, and Concealment or Discovery of Cause of Action
         241k95 Ignorance of Cause of Action
            241k95(1) k. In General; What Constitutes Discovery. Most Cited Cases
Under federal law, cause of action generally accrues when plaintiff knows or has reason to know of injury which is basis of his action.

**[28] Limitation of Actions 241 ⌐⇒58(1)**

241 Limitation of Actions
   241II Computation of Period of Limitation
      241II(A) Accrual of Right of Action or

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Defense
    241k58 Liabilities Created by Statute
        241k58(1) k. In General. Most Cited
Cases
Where employee alleges discrete retaliatory acts,
statute of limitations runs separately from each act.
42 U.S.C.A. § 1983; Civil Rights Act of 1964, § 701
et seq., 42 U.S.C.A. § 2000e et seq.

[29] Limitation of Actions 241 ☞58(1)

241 Limitation of Actions
    241II Computation of Period of Limitation
        241II(A) Accrual of Right of Action or
Defense
        241k58 Liabilities Created by Statute
        241k58(1) k. In General. Most Cited
Cases
Discrete employment actions, including failure to
promote, are not subject to continuing violations
doctrine. 42 U.S.C.A. § 1983; Civil Rights Act of
1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.

[30] Constitutional Law 92 ☞1553

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and
Press
        92XVIII(A) In General
        92XVIII(A)3 Particular Issues and
Applications in General
        92k1553 k. Retaliation. Most Cited
Cases
    (Formerly 92k90.1(1))
To state claim for retaliation based on exercise of
First Amendment rights, plaintiff must allege the
following elements: (1) he engaged in expressive
conduct that addressed a matter of public concern, (2)
government official took an adverse action against
him, and (3) the expressive conduct was a substantial
or motivating factor for the adverse action taken by
the government official. U.S.C.A. Const.Amend. 1.

[31] Constitutional Law 92 ☞1928

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and
Press
        92XVIII(P) Public Employees and Officials
        92k1928 k. Retaliation in General. Most
Cited Cases
    (Formerly 92k90.1(7.2))
In First Amendment retaliation case, an " adverse

employment action" is an act that is reasonably
likely to deter employees from engaging in
constitutionally protected speech; it is not necessary
that plaintiff demonstrate the loss of a valuable
governmental benefit or privilege. U.S.C.A.
Const.Amend. 1.

[32] Constitutional Law 92 ☞1955

92 Constitutional Law
    92XVIII Freedom of Speech, Expression, and
Press
        92XVIII(P) Public Employees and Officials
        92k1955 k. Police and Other Public Safety
Officials. Most Cited Cases
    (Formerly 92k90.1(7.2))

Municipal Corporations 268 ☞185(1)

268 Municipal Corporations
    268V Officers, Agents, and Employees
        268V(B) Municipal Departments and Officers
Thereof
        268k179 Police
        268k185 Suspension and Removal of
Policemen
        268k185(1) k. Grounds for Removal
or Suspension. Most Cited Cases
Police officer claiming he was subjected to First
Amendment retaliation for whistleblowing activity
sufficiently alleged that captains, deputy chief, and
chief of police took " adverse employment action"
against him by failing to promote him, placing him
on administrative leave, and refusing to reinstate him
despite fact three psychologists declared him fit for
duty. U.S.C.A. Const.Amend. 1.

[33] Civil Rights 78 ☞1376(2)

78 Civil Rights
    78III Federal Remedies in General
        78k1372 Privilege or Immunity; Good Faith
and Probable Cause
        78k1376 Government Agencies and
Officers
        78k1376(2) k. Good Faith and
Reasonableness; Knowledge and Clarity of Law;
Motive and Intent, in General. Most Cited Cases
To determine whether qualified immunity is
appropriate, court must identify specific right
allegedly violated and determine whether that right
was so clearly established as to alert reasonable
officer to its constitutional parameters; if the law is

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Page 7

clearly established, it determines whether a reasonable officer could have believed lawful the particular conduct at issue. 42 U.S.C.A. § 1983.

[34] Civil Rights 78 ☞1376(10)

78 Civil Rights
　78III Federal Remedies in General
　　78k1372 Privilege or Immunity; Good Faith and Probable Cause
　　　78k1376 Government Agencies and Officers
　　　　78k1376(10) k. Employment Practices. Most Cited Cases
Police officials were not immune from suit under § 1983 for allegedly retaliating against whistleblowing officer for having reported racial discrimination, sexual misconduct and overtime improprieties and for testifying that other officers were cheating on promotional exams. 42 U.S.C.A. § 1983.

[35] Civil Rights 78 ☞1359

78 Civil Rights
　78III Federal Remedies in General
　　78k1353 Liability of Public Officials
　　　78k1359 k. Employment Practices. Most Cited Cases

Civil Rights 78 ☞1395(8)

78 Civil Rights
　78III Federal Remedies in General
　　78k1392 Pleading
　　　78k1395 Particular Causes of Action
　　　　78k1395(8) k. Employment Practices. Most Cited Cases
Police officer failed to state § 1983 claim against city or police chief in his official capacity, even though officer alleged that chief had policymaking authority, where officer made only conclusory allegations regarding purported policy that was implemented and/or created by chief without defining or describing what that policy was; chief's alleged actions in a specific case were not per se an official policy. 42 U.S.C.A. § 1983.

[36] Civil Rights 78 ☞1351(1)

78 Civil Rights
　78III Federal Remedies in General
　　78k1342 Liability of Municipalities and Other Governmental Bodies
　　　78k1351 Governmental Ordinance, Policy, Practice, or Custom
　　　　78k1351(1) k. In General. Most Cited Cases
Municipal liability under § 1983 can be established by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate. 42 U.S.C.A. § 1983.

[37] Constitutional Law 92 ☞3040

92 Constitutional Law
　92XXVI Equal Protection
　　92XXVI(A) In General
　　　92XXVI(A)5 Scope of Doctrine in General
　　　　92k3038 Discrimination and Classification
　　　　　92k3040 k. Intentional or Purposeful Action Requirement. Most Cited Cases
　(Formerly 92k211(1))
To state a claim under § 1983 for violation of Equal Protection Clause of the Fourteenth Amendment, plaintiff must show that defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class. U.S.C.A. Const.Amend. 14; 42 U.S.C.A. § 1983.

[38] Constitutional Law 92 ☞3042

92 Constitutional Law
　92XXVI Equal Protection
　　92XXVI(A) In General
　　　92XXVI(A)5 Scope of Doctrine in General
　　　　92k3038 Discrimination and Classification
　　　　　92k3042 k. " Class of One" Claims. Most Cited Cases
　(Formerly 92k211(1))
Successful equal protection claim may be brought by class of one, where plaintiff alleges that he has been intentionally treated differently from others that are similarly situated. U.S.C.A. Const.Amend. 14.

[39] Labor and Employment 231H ☞854

231H Labor and Employment
　231HVIII Adverse Employment Action
　　231HVIII(B) Actions
　　　231Hk854 k. Exhaustion. Most Cited Cases
Litigant seeking damages under California statute establishing liability for employers who retaliate against their employees for disclosing information to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

government or law enforcement agencies is required to exhaust administrative remedies before the **Labor Commissioner** prior to bringing suit. West's Ann.Cal.Labor Code § 1102.5.

**[40] Administrative Law and Procedure 15A ⟐229**

15A Administrative Law and Procedure
  15AIII Judicial Remedies Prior to or Pending Administrative Proceedings
    15Ak229 k. Exhaustion of Administrative Remedies. Most Cited Cases
The " exhaustion of administrative remedies" rule, well established in California jurisprudence, is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before courts will act.

**[41] Municipal Corporations 268 ⟐185(1)**

268 Municipal Corporations
  268V Officers, Agents, and Employees
    268V(B) Municipal Departments and Officers Thereof
      268k179 Police
        268k185 Suspension and Removal of Policemen
          268k185(1) k. Grounds for Removal or Suspension. Most Cited Cases
Police officer could not bring claim against city under California whistleblower statute, establishing liability for any local agency officer, manager, or supervisor who retaliates against any employee for filing complaint with local agency reporting gross mismanagement, significant waste of funds, abuse of authority, or specific and substantial danger to public health or safety. West's Ann.Cal.Gov.Code § 53298.5(b).

**[42] Municipal Corporations 268 ⟐185(1)**

268 Municipal Corporations
  268V Officers, Agents, and Employees
    268V(B) Municipal Departments and Officers Thereof
      268k179 Police
        268k185 Suspension and Removal of Policemen
          268k185(1) k. Grounds for Removal or Suspension. Most Cited Cases
Police officer failed to sufficiently plead all elements

for whistleblower cause of action against chief, deputy chief, and captains where he had not alleged that (1) he filed complaints within 60 days of the acts or events, (2) complaints were filed under penalty of perjury, and (3) he attempted, in good faith, to exhaust available administrative remedies before filing his complaint, or in the alternative that there were no available administrative remedies. West's Ann.Cal.Gov.Code § 53298.

**[43] Limitation of Actions 241 ⟐58(1)**

241 Limitation of Actions
  241II Computation of Period of Limitation
    241II(A) Accrual of Right of Action or Defense
      241k58 Liabilities Created by Statute
        241k58(1) k. In General. Most Cited Cases
Police officer's cause of action under whistleblower statute accrued when individual defendants refused to reinstate him after allegedly having received opinions of three psychologists that he was fit for duty, not when he was placed on administrative leave, and his complaint thus would not be dismissed as untimely under California Tort Claims Act (CTCA). Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.; West's Ann.Cal.Gov.Code §§ 911.2, 945.4, 946.4, 53298.

**[44] Civil Rights 78 ⟐1465(1)**

78 Civil Rights
  78III Federal Remedies in General
    78k1458 Monetary Relief in General
      78k1465 Exemplary or Punitive Damages
        78k1465(1) k. In General. Most Cited Cases
Under § 1983, punitive damages are proper either when defendant's conduct was driven by evil motive or intent, or when it involved a reckless or callous indifference to the constitutional rights of others. 42 U.S.C.A. § 1983.

**[45] Civil Rights 78 ⟐1465(2)**

78 Civil Rights
  78III Federal Remedies in General
    78k1458 Monetary Relief in General
      78k1465 Exemplary or Punitive Damages
        78k1465(2) k. Government Liability. Most Cited Cases
Public entity cannot be sued under § 1983 for punitive damages. 42 U.S.C.A. § 1983.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

**[46] Federal Courts 170B ☞373**

170B Federal Courts
 170BVI State Laws as Rules of Decision
  170BVI(A) In General
   170Bk373 k. Substance or Procedure; Determinativeness. Most Cited Cases
Federal district courts sitting in diversity apply substantive law of the forum state, but apply procedural rules as stated in Federal Rules of Civil Procedure. Fed.Rules Civ.Proc.Rule 1 et seq., 28 U.S.C.A.

**[47] Federal Civil Procedure 170A ☞636**

170A Federal Civil Procedure
 170AVII Pleadings and Motions
  170AVII(A) Pleadings in General
   170Ak633 Certainty, Definiteness and Particularity
    170Ak636 k. Fraud, Mistake and Condition of Mind. Most Cited Cases

**Federal Civil Procedure 170A ☞1137**

170A Federal Civil Procedure
 170AVII Pleadings and Motions
  170AVII(N) Striking Pleading or Matter Therein
   170Ak1137 k. Prayer or Allegation of Damages. Most Cited Cases
California police officer's punitive damages claim under Government Code whistleblower provision would not be stricken for failure to plead malice; officer's allegations that city and individual officers retaliated against him for his whistleblowing activities were sufficient to infer intent to injure. Fed.Rules Civ.Proc.Rule 9(b), 28 U.S.C.A.; West's Ann.Cal.Civ.Code § 3294(a); West's Ann.Cal.Gov.Code § 53298.

**[48] Federal Civil Procedure 170A ☞1135**

170A Federal Civil Procedure
 170AVII Pleadings and Motions
  170AVII(N) Striking Pleading or Matter Therein
   170Ak1135 k. Limitations and Laches, Claims Barred By. Most Cited Cases
California police officer's allegations relating to

adverse employment actions taken more than two years before complaint was filed would not be stricken as untimely; those allegations could be evidence of improper motive, even though § 1983 claim based upon those actions was time-barred. Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A.; 42 U.S.C.A. § 1983; West's Ann.Cal.C.C.P. § 335.1.

**[49] Federal Civil Procedure 170A ☞1145.1**

170A Federal Civil Procedure
 170AVII Pleadings and Motions
  170AVII(N) Striking Pleading or Matter Therein
   170Ak1145 Determination of Motion
    170Ak1145.1 k. In General. Most Cited Cases
It is not appropriate to raise argument on the merits on motion to strike. Fed.Rules Civ.Proc.Rule 12(f), 28 U.S.C.A.

**[50] Constitutional Law 92 ☞1929**

92 Constitutional Law
 92XVIII Freedom of Speech, Expression, and Press
  92XVIII(P) Public Employees and Officials
   92k1929 k. Public or Private Concern. Most Cited Cases
   (Formerly 92k90.1(7.2))

**Constitutional Law 92 ☞1931**

92 Constitutional Law
 92XVIII Freedom of Speech, Expression, and Press
  92XVIII(P) Public Employees and Officials
   92k1931 k. Balancing of Interests. Most Cited Cases
   (Formerly 92k90.1(7.2))
To determine whether a public employee's speech is protected by the First Amendment, courts in the Ninth Circuit apply a two-step test; first step is to determine whether the speech addresses a matter of public concern, and if it does, next step is to engage in balancing analysis established by *Pickering* decision of United States Supreme Court. U.S.C.A. Const.Amend. 1.

**\*1165** Michael Alan Morguess, Lackie and Dammeier LLP, Upland, CA, for Plaintiff.
Joseph D. Rubin, Betts & Wright, Francine Marie Kanne, Fresno City Attorney's Office, Fresno, CA,

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Page 10

for Defendants.

## MEMORANDUM DECISION AND ORDER RE DEFENDANTS'

### (1) MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 2(b)(6);

### (2) MOTION FOR A MORE DEFINITE STATEMENT PURSUANT TO FED. R. CIV. P. 12(e); AND

### (3) MOTION TO STRIKE PORTIONS OF THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(f).

WANGER, District Judge.

### I. INTRODUCTION

This is a civil rights action by a City of Fresno police officer against the City of Fresno (" CITY" ) and several individual members of the City of Fresno Police Department. Michael Neveu (" Plaintiff" ) brings a civil rights claim under 42 U.S.C. § 1983 and under two California state " whistleblower" statutes. Defendants CITY OF FRESNO, JERRY DYER, MICHAEL GUTHRIE, GREG GARNER, DARREL FIFIELD, MARTY WEST, and ROGER ENMARK (" Defendants" ) move to dismiss Plaintiff's Second Amended Complaint. (Doc. 33, Def.'s Mem.). Plaintiff opposes the motion. (Doc. 27, Pl.'s Opp.).

### II. PROCEDURAL HISTORY

Plaintiff filed his original Complaint on November 11, 2004.[FN1] (Doc. 1, Compl.). Plaintiff filed a First Amended Complaint against the same defendants on December 17, 2004. (Doc. 19, First Am. Compl.). The defendants named in the First Amended Complaint moved to dismiss on January 18, 2005. (Doc. 20, Def.'s First Mot.). Plaintiff stipulated to file a Second Amended Complaint on January 28, 2005 (Doc. 22), and filed a Second Amended Complaint on March 4, 2005. (Doc. 23, Second Am. Compl.). The Second Amended Complaint is the operative complaint and it is this complaint that the Defendants now seek to dismiss. (See Doc. 33, Def.'s Mem.).[FN2]

> FN1. The defendants named in the original Complaint were: City of Fresno; Fresno Police Department; Jerry Dyer, Darrel

Fifield; Marty West; Dennis Montejano; John Fries; Roger Enmark; Greg Garner; Fremen Hunter; Michael Guthrie; and Keith Foster.

> FN2. Defendants filed their original Motion to Dismiss and Memorandum in Support on March 25, 2005. (See Docs. 24, 25). Due to formatting problems, Defendants refiled their supporting memorandum on May 12, 2005. (Doc. 33). All citations will be to the corrected document (i.e., Doc. 33).

Plaintiff opposes Defendants' Motion. (Doc. 27, Pl.'s Opp., filed March 15, 2005). Defendants replied. (Doc. 28, Def.'s Reply). Oral argument was heard on May *1166 23, 2005. Michael A. Morguess, Esq., appeared on behalf of Plaintiff. Joseph D. Rubin, Esq., appeared on behalf of Defendants.

### III. SUMMARY OF PLEADINGS

This civil rights action is brought by a Fresno City police officer against the City of Fresno, the Fresno Police Chief, and five individual Fresno City Police officers. Plaintiff brings his § 1983 claim based on an alleged violation of his First Amendment right to freedom of expression. Plaintiff claims he was retaliated against for reporting to his superiors a number of incidents of sexual harassment, racial discrimination, and cheating on police department exams. The allegations in the complaint are taken as true for the purpose of this motion to dismiss.

Plaintiff is and was at all relevant times a Fresno City police officer and has worked as a police officer for Fresno since February 1995. (Doc. 1, Compl. ¶¶ 3, 11).

Defendant JERRY DYER is and was during all relevant times the Chief of Police of the City of Fresno. Defendant ROGER ENMARK was at all relevant times Captain and Deputy Chief of the Fresno Police Department. Defendant DARREL FIFIELD was at all relevant times Deputy Chief for the Fresno Police Department. Defendant MICHAEL GUTHRIE was at all relevant times a Lieutenant for the Department. Defendants MARTY WEST and GREG GARNER were at all relevant times Captains for the Department. (Id. at ¶¶ 4-8).

Plaintiff alleges that Defendants retaliated against him for having reported sexual misconduct and racial

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Page 11

discrimination to the Internal Affairs and Human Resources Departments of the Fresno Police Department, and for having testified at an investigatory hearing that cheating was occurring on Fresno Police Department promotional exams. Plaintiff alleges two adverse employment actions. The first is that from June 1997 through December 2002, Defendants failed to promote him despite his high qualifications. The second is that, in March 2004, Defendants placed Plaintiff on administrative leave and required Plaintiff to undergo psychological examinations to determine his fitness for duty. Despite the recommendations of three psychologists that he was fit for duty, Defendants refused to reinstate him to duty in July 2004.[FN3]

> FN3. Plaintiff has since been reinstated to duty.

Plaintiff began working for the Fresno Police Department in 1995. (Doc. 1, Second Am. Compl. ¶ 11). Plaintiff alleges that he " has never received anything below ' exceeds expectations' on [his] evaluations...." (*Id.* at ¶ 13). Plaintiff alleges that he " has had only one incident of discipline in his personnel record spanning his career." (*Id.* at ¶ 14).

Plaintiff asserts he was retaliated against for four protected First Amendment activities. First, Plaintiff reported to Police Department Internal Affairs investigators alleged sexual misconduct by a Richard Mata, who was a police department official who was " suspended due to allegations of sexual molestation" and was " investigated for sexual intimacy and improper behavior towards a teenage girl." (*Id.* at ¶ 16). On or about July 16, 1996, Plaintiff was transferred from patrol to the post of " Explorer Post Advisor," the position from which Richard Mata had been suspended. Plaintiff alleges that unidentified Internal Affairs investigators instructed him to report directly to them any additional information relating to Richard Mata. In July 1996, Plaintiff learned of " administrative improprieties that appeared designed to foster opportunities for further sex crimes" and reported these in *1167 writing to Internal Affairs. (*Id.* at ¶¶ 21, 23). In or around August 1996, after he submitted the report, Defendant WEST " ordered [Plaintiff] not to put any information he obtained regarding the Mata allegations in writing, and to only verbally report it to [Plaintiff's immediate supervisors]." (*Id.* at ¶ 27). According to Plaintiff, Internal Affairs had instructed him not to report any information regarding Mata to his immediate

supervisors, even if they instructed him to do so. Plaintiff " refused to follow WEST'S order and reiterated that he was going to do exactly as Internal Affairs and Chief Winchester ordered." (*Id.* at ¶ 28).

Second, Plaintiff alleges that " [o]n or around December 23, 1996, [Plaintiff] documented and reported to [his immediate supervisors] racial harassment of Southeast Asian Explorers by Police Activity League volunteers...." (*Id.* at ¶ 29). One of Plaintiff's immediate supervisors (not a named defendant) advised him that " Plaintiff should not have documented the racial harassment because it caused staff at the Police Activity league to become upset, including retired Deputy Chief Lee Piscola, and that ' pissing off a retired Chief is a bad career move.' " (*Id.*).

Third, Plaintiff alleges that " [o]n or around December, 1996, [Plaintiff] submitted an extensive end of the year report documenting potentially embarrassing or troubling incidents involving [his immediate supervisors], including the ' banking' of overtime hours, which were unlawfully denied to [Plaintiff]." (*Id.* at ¶ 30). Furthermore, Plaintiff alleges that Defendant WEST prevented the report from reaching Chief Winchester's office. (*Id.*).

Fourth, Plaintiff alleges that in or about March 2002, he testified at an administrative hearing that cheating occurred on Department promotional exams. On or around March 2001, a new promotional testing system for the promotion to the rank of Sergeant was implemented by Chief DYER. (*Id.* at ¶¶ 32-34). According to Plaintiff, the system was created at the request of Defendants GARNER AND ENMARK. However, after the new system was implemented, some of the candidates complained that the system was " tainted and therefore inaccurate." (*Id.* at ¶ 34). The complaints resulted in a hearing that took place before the Civil Service Commission in February/March 2002. (*Id.*). Plaintiff he informed attorneys handling the hearing " that some promotional candidates were unlawfully given the answers prior to taking the ... promotional exam." The day after Plaintiff reported this information to the attorneys, Defendant GARNER " brought [Plaintiff] into his office, confronted [Plaintiff] in a hostile manner and stated words to the effect that ' Yesterday I spent the better part of the afternoon on the stand getting my [a* *] chewed off and I only kept wondering one thing-why your name had come up as a witness.' " (*Id.* at ¶ 36). Moreover, Plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Page 12

alleges that " [i]n an attempt to discredit NEVEU's testimony, Captain GARNER advised attorneys handling the hearing that NEVEU was a ' crack pot,' ' screwball,' and that he had ' ethical problems.' " (*Id.* at ¶ 37). On or about March 12, 2002, Plaintiff, as well as his wife, testified before the hearing " as to the improprieties and outright cheating on in the testing process." (*Id.* at ¶ 38).

Plaintiff alleges these activities are protected First Amendment activities and that Defendants retaliated against him for engaging in these activities. Plaintiff alleges two separate adverse employment actions. First, he alleges that from approximately June 1997 and December 2002, Defendants WEST, FIFIELD, GUTHRIE, and GARNER failed to promote Plaintiff. (*Id.* at ¶ 41). Plaintiff claims that someone informed him that " at staff meetings, WEST, FIFIELD, GUTHRIE, and GARNER*1168 always disapproved of any promotion or selection of NEVEU to ... [a] special unit, despite NEVEU's record· and commendations." (*Id.*). Furthermore, Plaintiff alleges that these Defendants denied the promotions because of reporting the Mata allegations, the alleged racial harassment, the " banking" of overtime hours, and testifying before the Civil Service Commission. (*Id.*). Finally, Plaintiff claims that on or about July 25, 2002, the sergeants promotion list containing Plaintiff's name was " killed" before reaching Plaintiff's name in retaliation for testifying before the Civil Service Commission. This allegation is not related to any particular defendant, although Plaintiff alleges in the next paragraph that he " was further informed that Captain WEST ' and that group' had done similar ' black listing' to other officers who spoke up." (*Id.* at ¶ 43).

Second, Plaintiff alleges that on March 1, 2004, Defendants DYER and ENMARK, with the assistance of GUTHRIE, placed him on administrative leave pending a fitness for duty examination. (*Id.* at ¶ 45). Plaintiff alleges that DYER, ENMARK, and GUTHRIE placed him on administrative leave " for engaging in the aforementioned protected activities." (*Id.* at ¶ 47). Plaintiff was subsequently examined by three· psychologists who declared him fit for duty. (*Id.* at ¶ 49). Plaintiff alleges that " [o]n· or around July 6, 2004, Chief DYER and Deputy Chief ENMARK refused to reinstate [him]." (*Id.* at ¶ 50).

On November 1, 2004, the same date that the original

Complaint in this action was filed, Plaintiff filed a government tort claim pursuant to the California Tort Claims Act (Cal. Gov.Code §§ 910 *et seq.*). Plaintiff received a response dated December 13, 2004, which stated that any causes of action accruing before November 1, 2003, were not presented within one year after the incident. (*Id.* at ¶ 51). Plaintiff interpreted this response as a rejection of his claim. (*Id.*).

## IV. *LEGAL STANDARDS*

### A. *Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6).*

[1][2] Fed.R.Civ.P. 12(b)(6) allows a defendant to attack a complaint for failure to state a claim upon which relief can be granted. A motion to dismiss under Fed.R.Civ.P. 12(b)(6) is disfavored and rarely granted: " [a] complaint should not be dismissed, unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would·entitle him to relief." *Van Buskirk v. CNN, Inc.,* 284 F.3d 977, 980 (9th Cir.2002) (citations omitted). In deciding whether to grant a motion to dismiss, the court " accept[s] all factual allegations of the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *TwoRivers v. Lewis,* 174 F.3d 987, 991 (9th Cir.1999).

[3] " The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit. Nor is the court required to accept as· true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir.2001) (citations omitted). For example, matters of public record may be considered under Fed.R.Civ.P. 201, including pleadings, orders and other papers filed with the court or records of administrative bodies. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir.2001). Conclusions of law, conclusory allegations, unreasonable inferences, or unwarranted deductions of fact need not be accepted. *See Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir.1981).

*1169 [4][5] " Where the facts and dates alleged in a complaint demonstrate that the complaint is barred by the statute of limitations, a Federal Rule of Civil Procedure 12(b)(6) motion should be granted." *Ritchie v. United States,* 210 F.Supp.2d 1120, 1123

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(N.D.Cal.2002). There is no requirement, however, that affirmative defenses, including statutes of limitation, appear on the face of the complaint. *Hyatt Chalet Motels, Inc. v. Carpenters Local 1065,* 430 F.2d 1119, 1120 (9th Cir.1970). " When a motion to dismiss is based on the running of the statute of limitations, it can be granted only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Jablon v. Dean Witter & Co.,* 614 F.2d 677, 682 (1980); *see also TwoRivers,* 174 F.3d at 991.

**B. Motion for a More Definite Statement Pursuant to Fed.R.Civ.P. 12(e).**

[6][7][8] A motion for a more definite statement pursuant to Fed.R.Civ.P. 12(e) attacks the unintelligibility of the complaint, not simply the mere lack of detail, and is only proper when a party is unable to determine how to frame a response to the issues raised by the complaint. A court will deny the motion where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted. *Bureerong v. Uvawas,* 922 F.Supp. 1450, 1461 (C.D.Cal.1996); *see also Famolare, Inc. v. Edison Bros. Stores, Inc.,* 525 F.Supp. 940, 949 (E.D.Cal.1981) (finding a Rule 12(e) motion proper " only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted" ). A motion for a more definite statement is proper only where the complaint is " so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself." *Cellars v. Pacific Coast Packaging, Inc.,* 189 F.R.D. 575, 578 (N.D.Cal.1999) (internal quotations and citation omitted); *see also Sagan v. Apple Computer Inc.,* 874 F.Supp. 1072, 1077 (C.D.Cal.1994) (citing *Van Dyke Ford, Inc. v. Ford,* 399 F.Supp. 277, 284 (E.D.Wis.1975)) (" A Rule 12(e) motion is more likely to be granted where the complaint is so general that ambiguity arises in determining the nature of the claim or the parties against whom it is being made." ); *Boxall v. Sequoia Union High Sch. Dist.,* 464 F.Supp. 1104, 1114 (N.D.Cal.1979) (finding a motion for a more definite statement should not be granted unless the defendant literally cannot frame a responsive pleading).

[9][10] " Rule 12(e) is designed to strike an unintelligibility rather than want of detail.... A motion for a more definite statement should not be used to

test an opponent's case by requiring him to allege certain facts or retreat from his allegations." *Palm Springs Med. Clinic, Inc. v. Desert Hosp.,* 628 F.Supp. 454, 464-65 (C.D.Cal.1986) (quoting *Juneau Square Corp. v. First Wis. Nat'l Bank,* 60 F.R.D. 46, 48 (E.D.Wis.1973)). A Rule 12(e) motion " is likely to be denied where the substance of the claim has been alleged, even though some of the details are omitted." *Sagan,* 874 F.Supp. at 1077 (citing *Boxall,* 464 F.Supp. at 1113-14).

[11] This liberal standard of pleading is consistent with Fed.R.Civ.P. 8(a)(2) which allows pleadings that contain a " short and plain statement of the claim." Both rules assume that the parties will familiarize themselves with the claims and ultimate facts through the discovery process. *See Sagan,* 874 F.Supp. at 1077 (" Motions for a more definite statement are viewed with disfavor and are rarely granted because of the minimal pleading requirements of the Federal Rules." ). If the detail sought by a motion for a more definite statement is obtainable through discovery, the motion should be denied. *1170 See McHenry v. Renne,* 84 F.3d 1172, 1176 (9th Cir.1996) (granting 12(e) motion where complaint " does not provide defendants with a fair opportunity to frame a responsive pleading" ); *see also Sagan,* 874 F.Supp. at 1077 (" Parties are expected to use discovery, not the pleadings, to learn the specifics of the claims being asserted." ); *Beery v. Hitachi Home Electronics (Amer.), Inc.,* 157 F.R.D. 477, 480 (C.D.Cal.1993) (finding motion for a more definite statement should be denied if the detail sought is obtainable through discovery); *Federal Savings and Loan Ins. Corp. v. Musacchio,* 695 F.Supp. 1053, 1060 (N.D.Cal.1988) (finding that if plaintiff's complaint meets the notice requirements of Fed.R.Civ.P. 8, and defendants are provided with a sufficient basis to respond, the proper avenue for eliciting additional detail is through discovery); *Famolare, Inc. v. Edison Brothers Stores, Inc.,* 525 F.Supp. 940, 949 (E.D.Cal.1981) (" A motion for a more definite statement should not be granted unless the defendant cannot frame a responsive pleading." ); *CMAX, Inc. v. Hall,* 290 F.2d 736, 738 (9th Cir.1961).

**C. Motion to Strike Pursuant to Fed.R.Civ.P. 12(f).**

[12] Fed.R.Civ.P. 12(f) provides that " redundant, immaterial, impertinent, or scandalous matters" may be " stricken from any pleading." Fed.R.Civ.P. 12(f). " [O]nly pleadings are subject to motions to strike."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159                                                    Page 14

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

*See Sidney-Vinstein v. A.H. Robins Co.,* 697 F.2d 880, 885 (9th Cir.1983).

[13][14] Motions to strike are disfavored and infrequently granted. *See Pease & Curren Ref., Inc. v. Spectrolab, Inc.,* 744 F.Supp. 945, 947 (C.D.Cal.1990), abrogated on other grounds by *Stanton Road Associates v. Lohrey Enters.,* 984 F.2d 1015 (9th Cir.1993). " [M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico v. Sun Microsystems, Inc.,* 758 F.Supp. 1335, 1339 (N.D.Cal.1991) (citation omitted).

### D. *42 U.S.C. § 1983*

" *Section 1983* provides for liability against any person acting under color of law who deprives another ' of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." [FN4] *S. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 887 (9th Cir.2003) (quoting 42 U.S.C. § 1983).

> FN4. Specifically, 42 U.S.C. § 1983 provides:
> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

### 1. Suits Against Local Governments: The *Monell* Doctrine.

[15] Local governments are " persons" subject to suit for " constitutional tort[s]" under 42 U.S.C. § 1983.[FN5] *1171 *Haugen v. Brosseau,* 339 F.3d 857, 874 (9th Cir.2003) (citing *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 691 n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). " [T]he legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress did intend municipalities and other local government units to be included among those persons to whom § 1983 applies." *Monell,* 436 U.S. at 690, 98 S.Ct. 2018. Local governments can be sued for monetary, declaratory, or injunctive relief where such suits arise out of unconstitutional actions that implement or execute a " policy statement, ordinance, or decision officially adopted and promulgated by that body's officers...." *Id.* 690-1, 98 S.Ct. 2018. If no official policy exists, " customs and usages" may fulfill this element of a § 1983 claim against a local government. *Id.*

> FN5. " There is certainly no constitutional impediment to municipal liability. ' The Tenth Amendment's reservation of nondelegated powers to the States is not implicated by a federal-court judgment enforcing the express prohibitions of unlawful state conduct enacted by the Fourteenth Amendment.' " *Monell,* 436 U.S. at 691, 98 S.Ct. 2018 (quoting *Milliken v. Bradley,* 433 U.S. 267, 291, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977)). There is no " basis for concluding that the Eleventh Amendment is a bar to municipal liability." *Id.* (citing *Fitzpatrick v. Bitzer,* 427 U.S. 445, 456, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976); *Lincoln County v. Luning,* 133 U.S. 529, 530, 10 S.Ct. 363, 33 L.Ed. 766 (1890)).

[16] A local government's liability is limited, however. Although a local government can be held liable for its official policies or customs, it will not be held liable for an employee's actions outside of the scope of these policies or customs. " A municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell,* 436 U.S. at 691, 98 S.Ct. 2018. " A local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its law-makers or by those whose edicts or acts may fairly be said to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694, 98 S.Ct. 2018.

[17] To prevail on a § 1983 complaint against a local government under *Monell,* a plaintiff must satisfy a three-part test:
(1) The local government official(s) must have intentionally violated the plaintiff's constitutional rights;
(2) The violation must be a part of policy or custom and may not be an isolated incident; and
(3) A nexus must link the specific policy or custom to the plaintiff's injury.

See *Monell,* 436 U.S. at 690-92, 98 S.Ct. 2018.

**2. Suits Against Governmental Officials**

**(a) Official-Capacity Suits**

[18][19] " [Section] 1983 claims against government officials in their official capacities are really suits against the governmental employer because the employer must pay any damages awarded." *Butler v. Elle,* 281 F.3d 1014, 1023 (9th Cir.2002) (citing *Ky. v. Graham,* 473 U.S. 159, 165-66, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985)); see also *Doe v. Lawrence Livermore Nat'l Lab.,* 131 F.3d 836, 839 (9th Cir.1997) (finding that " a suit against a state official in his official capacity is no different from a suit against the [official's office or the] State itself" ) (citing *Will v. Mich. Dep't of State Police,* 491 U.S. 58, 70-71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989)). " As the Supreme Court has stated, ' official-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Ruvalcaba v. City of Los Angeles,* 167 F.3d 514, 524 n. 3 (9th Cir.1999) (quoting *Graham,* 473 U.S. at 165, 105 S.Ct. 3099). " ' As long as the government entity receives*1172 notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.' " *Ruvalcaba,* 167 F.3d at 524 n. 3 (quoting *Graham,* 473 U.S. at 166, 105 S.Ct. 3099.).

**(b) Personal-Capacity Suits**

[20] " ' Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.' " *Dittman v. Cal.,* 191 F.3d 1020, 1027 (9th Cir.1999) (quoting

*Graham,* 473 U.S. at 165, 105 S.Ct. 3099); see also *Hafer v. Melo,* 502 U.S. 21, 25, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991) (finding that " [p]ersonal capacity suits seek to impose liability on state officials for acts taken under color of state law" ); *Stivers v. Pierce,* 71 F.3d 732, 749 (9th Cir.1995). In setting forth the distinctions between personal and official capacity suits, the Supreme Court said:
Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. See, e.g., *Scheuer v. Rhodes,* 416 U.S. 232, 237-238, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Official-capacity suits, in contrast, " generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell* [ ], 436 U.S. at 690 n. 55[ ], 98 S.Ct. 2018. As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon,* 469 U.S. at 471-472, 105 S.Ct. 873. It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Graham,* 473 U.S. 159, 166, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985).

[21][22] " While the plaintiff in a personal-capacity suit need not establish a connection to governmental ' policy or custom,' officials sued in their personal capacities, unlike those sued in their official capacities, may assert personal immunity defenses such as objectively reasonable reliance on existing law." *Pena v. Gardner,* 976 F.2d 469, 473 (9th Cir.1992) (quoting *Graham,* 473 U.S. at 166-167, 105 S.Ct. 3099). Individuals are not immune under the doctrine of qualified immunity if they violated " clearly established statutory or constitutional rights of which a reasonable person would have known." [FN6] *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). " A victory in such a suit is a ' victory against the individual defendant, rather than against the entity that employs him.' " *Cerrato v. San Francisco Community College Dist.,* 26 F.3d 968, 973 (9th Cir.1994) (quoting *Graham,* 473 U.S. at 166-67, 105 S.Ct. 3099).

FN6. Immunity is not absolute, as the Ninth

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

Page 16

(Cite as: 392 F.Supp.2d 1159)

Circuit has explained:
This court has held that, when a public official acts in reliance on a duly enacted statute or ordinance, that official ordinarily is entitled to qualified immunity. *See Grossman v. City of Portland,* 33 F.3d 1200, 1210 (9th Cir.1994) (holding that " an officer who reasonably relies on the legislature's determination that a statute is constitutional should be shielded from personal liability" ). The existence of an authorizing statute is not dispositive, however. Qualified immunity does not extend to a public official who enforces a statute that is " patently violative of fundamental constitutional principles." *Id.* at 1209.
*Dittman,* 191 F.3d at 1027.

*1173 E. State Law Claims Against Public Entities and the California Tort Claims Act.*

Plaintiff brings the following state law claims against Defendants: violation of Cal. Labor Code § 1102.5 and violation of Cal. Gov.Code § 52378, *et seq.* The California Tort Claims Act governs tort claims against public entities and their officials. *See* Cal. Gov.Code § 810 *et seq.* The California Tort Claims Act (" CTCA" ) requires plaintiffs to present a written claim to the public entity allegedly responsible for their damage before initiating suit on the cause of action. Cal. Gov.Code § 945.6.

Under the California Tort Claims Act, no suit for " money or damages" may be brought against a public entity until a written claim has been presented to the public entity and the claim either has been acted upon or is deemed to have been rejected. *Hart v. Alameda County,* 76 Cal.App.4th 766, 778, 90 Cal.Rptr.2d 386 (Cal.Ct.App.1999). The CTCA requires a plaintiff to file a timely tort claim with the public entity; if the claim is not timely, the public entity may reject the claim.

[23] If a claimant fails to timely file a claim with the public entity, and its claim is consequently rejected by the public entity for that reason, courts are without jurisdiction to hear the claimant's cause of action. *Greyhound Lines, Inc. v. County of Santa Clara,* 187 Cal.App.3d 480, 487, 231 Cal.Rptr. 702 (1986); *Moyer v. Hook,* 10 Cal.App.3d 491, 492-3, 89 Cal.Rptr. 234 (1970); *Carr v. State of Cal.,* 58 Cal.App.3d 139, 144-6, 129 Cal.Rptr. 730 (1976);

*Williams v. Mariposa County Unified Sch. Dist.,* 82 Cal.App.3d 843, 848-9, 147 Cal.Rptr. 452 (1978). For causes of action for death, personal injury, or injury to personal property, a claimant must file a claim within six months of the accrual of the cause of action. Cal. Gov.Code § 911.2.

The CTCA also permits the filing of an application to file a late claim for certain claims: " [w]hen a claim that is required by Section 911.2 to be presented not later than six months after the accrual of the cause of action is not presented within that time, a written application may be made to the public entity for leave to present that claim." Cal. Gov.Code § 911.4. The CTCA's six-month limitations period applies to causes of action for death, personal injury, or injury to personal property. *Id.* at § 911.2. If a claimant fails to timely file a petition to file a late claim, courts are without jurisdiction to hear the cause of action.

The overall policy of the claim requirements and time limitations of the California Tort Claims Act are to: (1) " give the governmental entity an opportunity to settle just claims before suit is brought;" (2) " permit the entity to make an early investigation of the facts on which a claim is based, thus enabling it to defend itself against unjust claims and to correct the conditions or practices which gave rise to the claim;" and (3) " avoid multiple suits arising out of the same transaction or occurrence and thus further[ ] the goal of judicial economy." *Greyhound Lines,* 187 Cal.App.3d at 487, 231 Cal.Rptr. 702 (quoting *Gehman v.Super. Ct.,* 96 Cal.App.3d 257, 262, 265, 158 Cal.Rptr. 62 (Cal.App.1979), disapproved on other grounds by *Dept. of Transportation v. Superior Ct. (" Frost" ),* 26 Cal.3d 744, 759 n. 5, 163 Cal.Rptr. 585, 608 P.2d 673 (1980)).

*F. State Law Claims.*

Cal. Labor Code § 1102.5 is a " whistleblower" statute that establishes liability for employers who retaliate against their employees for disclosing information to government or law enforcement agencies. Specifically, § 1102.5(b) provides that:
An employer may not retaliate against an employee for disclosing information *1174 to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159
392 F.Supp.2d 1159
(Cite as: 392 F.Supp.2d 1159)

Cal. Gov.Code § 53298(a) establishes liability for
any local agency officer, manager, or supervisor who
retaliates against any employee for filing a complaint
with the local agency reporting " gross
mismanagement, a significant waste of funds, an
abuse of authority, or a specific and substantial
danger to public health or safety." Cal. Gov.Code §§
53298(a), 53296(c); see also LeVine v. Weis, 90
Cal.App.4th 201, 212, 108 Cal.Rptr.2d 562 (2001)
(discussing § 53298 in dicta ).

### V. ANALYSIS

#### A. Whether Plaintiff's § 1983 Claims Are Time-Barred.

[24] A plaintiff is ordinarily not required to plead
around affirmative defenses. Hyatt Chalet Motels,
430 F.2d at 1120. The statute of limitations is an
affirmative defense. A complaint may nevertheless be
dismissed pursuant to Rule 12(b)(6) if the facts and
dates alleged demonstrate that the complaint is time-
barred. Ritchie, 210 F.Supp.2d at 1123; Jablon, 614
F.2d at 682. Defendants argue that Plaintiff's § 1983
claims are time-barred based on the allegations in the
Second Amended Complaint. (Doc. 33, Def.'s Mem.
2-6).

[25] In California, claims brought under 42 U.S.C. §
1983 are governed by California's statute of
limitations for personal injury actions. Taylor v.
Regents of Univ. of Cal., 993 F.2d 710, 711-2 (9th
Cir.1993). Plaintiff's 42 U.S.C. § 1983 claim is
therefore governed by California's statute of
limitations for personal injuries under Cal. Civ. Proc.
§ 335.1. Currently, the limitations period is two
years; however, prior to January 1, 2003, the
limitations period for personal injuries was one
year.[FN7] The applicable statute of limitations here is
two years since the Complaint was filed after January
1, 2003.

>    FN7. California Senate Bill 688 amended
>    the one year statute of limitations to two
>    years, effective January 1, 2003.

[26][27] " Although state law prescribes the statute of
limitations applicable to section 1983 claims, federal
law governs the time of accrual." Gibson v. United
States, 781 F.2d 1334, 1339 (9th Cir.1986). " Under
federal law, a cause of action generally accrues when
a plaintiff knows or has reason to know of the injury
which is the basis of his action." Id. (internal

quotations omitted).

Plaintiff's § 1983 claims are based on allegations of
retaliation for his exercise of expression under the
First Amendment. The adverse employment actions
alleged include the following: (1) from June 1997 to
December 2002, Plaintiff was passed over for
promotions and special assignments (including an
incident in July 2002 when Defendants intentionally
" killed" a promotional list with Plaintiff's name to
avoid promoting Plaintiff); and (2) on March 1, 2004,
Plaintiff was placed on Administrative Leave
pending a fitness for duty examination. (See Doc. 27,
Pl.'s Opp. 10).

Defendants do not dispute that Plaintiff's March 1,
2004, Administrative Leave is not time-barred. (See
Doc. 33, Def.'s Mem. 6; Doc. 28, Def.'s Reply 4).
Plaintiff's complaint was filed on November 1,
2004.[FN8] Plaintiff's § 1983 claim based on *1175 his
placement on Administrative Leave was therefore
filed within the 2-year statutory period. Likewise,
Defendants do not dispute that alleged incidents of
failure to promote Plaintiff that occurred after
November 1, 2002 are not time-barred. The only
issue is whether incidents of failure to promote that
occurred before November 1, 2002 are time-barred.

>    FN8. Neither party addresses Plaintiff's §
>    1983 claim in light of the relation back
>    doctrine of Rule 15. Defendants assume for
>    purposes of argument that November 1,
>    2004, is the operative date, instead of March
>    3, 2005, which is the date the Second
>    Amended Complaint was filed. Before
>    proceeding with the statute of limitations
>    analysis, the operative date of filing must be
>    determined through a Rule 15 analysis.
>    Fed.R.Civ.P. 15(c)(2) provides that " [a]n
>    amendment of a pleading relates back to the
>    date of the original pleading when ... the
>    claim or defense asserted in the amended
>    pleading arose out of the conduct,
>    transaction, or occurrence set forth or
>    attempted to be set forth in the original
>    pleading." Here, Plaintiff's original
>    Complaint contained § 1983 claims. (Doc. 1,
>    Compl.¶ 62). Those claims related to the
>    same protected activities alleged in the
>    Second Amended Complaint; i.e., reporting
>    (a) the Mata sexual misconduct allegations;
>    (b) racial harassment of Southeast Asian
>    Explorers; (c) the " banking" of overtime

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Page 18

hours; and (d) testifying before the hearing regarding cheating on the promotional examination. Plaintiff's § 1983 claims in its Second Amended Complaint therefore arise out of the same transactions alleged in its original complaint. The relation back doctrine applies and the operative date for statute of limitations purposes is November 1, 2004.

[28]. Plaintiff argues that incidents occurring before November 1, 2002 are not time-barred because they are part of a " continuing violation." Plaintiff argues that the Ninth Circuit's " related acts" test applies, and cites two Ninth Circuit cases in support (i.e., *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480-81; *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.1982)). Defendants respond that the " related acts" test does not apply here because that test was overruled by the United States Supreme Court in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). Defendants note that the *Morgan* Court held that where a plaintiff alleges discrete retaliatory acts, the statute of limitations runs separately from each act. Defendants argue that Plaintiff's allegations that he was passed over for promotions a number of times from 1997 to December 2002 constitute discrete acts. Defendants argue that Plaintiff cannot base his § 1983 claim on alleged incidents of failure to promote that occurred before November 1, 2002 because the statute of limitations for each of those alleged actions has run.

[29] Discrete employment actions are not subject to the continuing violations doctrine. *Morgan*, 536 U.S. 101, 114, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). The United States Supreme Court includes " failure to promote" among discrete employment actions. *Id.* Each of Plaintiff's allegations of failure to promote is therefore a separate actionable violation with a distinct accrual date. Although *Morgan* was an employment discrimination action brought under Title VII, the Ninth Circuit applies the Supreme Court's holding in *Morgan* to actions brought under § 1983. *RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir.2002); *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822 (9th Cir.2003); *Thompson v. City of Shasta Lake*, 314 F.Supp.2d 1017, 1027 (E.D.Cal.2004).

Plaintiff argues that " [a] continuing violation may be established by showing a series of related acts against a single individual, one or more of which falls within the limitations period." (Doc. 27, Pl.'s Opp. 11). Plaintiff cites *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1480-81; *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.1982) in support of its argument that the " related acts" doctrine applies in determining whether alleged discriminatory acts *1176 constitute continuing violations. However, as the Ninth Circuit noted recently:

*Morgan* overruled previous Ninth Circuit authority holding that, if a discriminatory act was " related and similar to" acts that took place outside the limitations period, all the related acts-including the earlier acts-were actionable as part of a continuing violation. [citation] *Morgan* held that " discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."

*RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1061 (9th Cir.2002) (quoting *Morgan*, 122 S.Ct. at 2072).

Insofar as Plaintiff's § 1983 claims are based on incidents of failure to promote that occurred before November 1, 2002 Defendants' Motion to Dismiss is GRANTED. This ruling has no bearing on the evidentiary admissibility of such prior acts or omissions, which must be separately determined.

**B.** *Whether Plaintiff States Individual Capacity Claims Against the Individual Defendants Under § 1983.*

Defendants argue that Plaintiff fails to state individual capacity claims under § 1983 against the Defendants GARNER, DYER, ENMARK, FIFIELD, and GUTHRIE because Plaintiff fails to state a claim for First Amendment retaliation. Defendants also argue that Plaintiff fails to state individual capacity claims against all individual Defendants because they are entitled to qualified immunity. (Doc. 33, Def.'s Mem. 8-12).

**1. Whether Plaintiff States Claims for First Amendment Retaliation.**

[30] The underlying constitutional violation on which Plaintiff bases his § 1983 claim is First Amendment retaliation. To state a claim for retaliation based on exercise of First Amendment rights, a plaintiff must allege the following elements: (1) the plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

engaged in expressive conduct that addressed a matter of public concern; (2) the government official took an adverse action against the plaintiff; and (3) the expressive conduct was a substantial or motivating factor for the adverse action taken by the government official. *Alpha Energy Savers, Inc. v. Hansen*, 381 F.3d 917, 923 (9th Cir.2004).

[31][32] Defendants GARNER, DYER, and ENMARK argue that Plaintiff's § 1983 claim against them must be dismissed because Plaintiff fails to allege the second element of a First Amendment retaliation claim, i.e., that GARNER, DYER, and ENMARK took an " adverse employment action" against Plaintiff. (Doc. 33, Def.'s Mem. at 8-12). However, Plaintiff responds that he alleges that all three of these defendants took an " adverse employment action" against him. (*See* Doc. 27, Pl.'s Opp. 15 n. 7; 16, n. 8). In a First Amendment retaliation case, an " adverse employment action" is an act that is reasonably likely to deter employees from engaging in constitutionally protected speech; it is not necessary that the plaintiff demonstrate the loss of a valuable governmental benefit or privilege. *Coszalter v. City of Salem*, 320 F.3d 968, 975 (9th Cir.2003) (holding that to determine whether an act constitutes an adverse employment action, " the inquiry is whether the exercise of the first amendment rights was deterred by the government employer's action" ) (internal quotations omitted). First, Plaintiff alleges that GARNER failed to promote him as retaliation for his " whistleblowing." (Doc. 1, Compl.¶ 41). Second, Plaintiff alleges that DYER and ENMARK placed Plaintiff on Administrative Leave after his complaints. (*Id.* at ¶ 45). Third, Plaintiff alleges that DYER and ENMARK refused to reinstate Plaintiff despite that three psychologists declared*1177 Plaintiff fit for duty. (*Id.* at ¶ 50). Each of these allegations identifies individual adverse employment action by each supervisor specifically directed against Plaintiff. Plaintiff has sufficiently alleged the " adverse employment action" element of a First Amendment retaliation claim against GARNER, DYER, and ENMARK.

Defendants also argue that Plaintiff fails to state a claim against Defendants FIFIELD and GUTHRIE because he did not allege the third element for a First Amendment Retaliation claim; i.e., that FIFIELD and GUTHRIE's failure to promote Plaintiff was motivated by Plaintiff's expression. (Doc. 33, Def.'s Mem. 12). However, Plaintiff notes that Paragraph 41

of the Complaint does allege causation: " NEVEU was denied each and every promotion as a result of WEST, FIFIELD, GUTHRIE, and GARNER'S actions, and in retaliation for NEVEU reporting the Mata allegations, the alleged racial harassment, and the end of the year report...." .

Defendants' arguments that Plaintiff has not alleged all three elements of a First Amendment claim are without merit and found no support in the pleadings. Defendants' Motion to Dismiss Plaintiff's § 1983 claims against the individual Defendants on the grounds that Plaintiff fails to allege First Amendment retaliation claims against them is **DENIED.**

### 2. Qualified Immunity.

[33] Defendants next argue that GARNER, DYER, ENMARK, FIFIELD, GUTHRIE, and WEST are entitled to qualified immunity. Public officials sued in their individual capacity, as here, are immune from suit if " their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Dittman*, 191 F.3d at 1027. " To determine whether qualified immunity is appropriate, a court must identify the specific right allegedly violated and determine whether that right was so clearly established as to alert a reasonable officer to its constitutional parameters; if the law is clearly established, it determines whether a reasonable officer could have believed lawful the particular conduct at issue." *Knox v. Southwest Airlines*, 124 F.3d 1103, 1107 (9th Cir.1997) (internal quotations and citations omitted); *see also Saucier*, 533 U.S. at 201, 121 S.Ct. 2151. Defendants' arguments in support of qualified immunity consist solely of conclusory statements that the individual defendants in question are immune from suit. (Doc. 33, Def.'s Mem., 10.4; 11.7; 11.25; 12.8). Defendants cite a few cases that address general immunity principles, but cite no authority to support that police officials are immune from suit when they retaliate against a whistleblowing employee for reporting sexual or racial discrimination to superiors, or for testifying that other officers were cheating on promotional exams. See *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159                                          Page 20

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

971, 977 (9th Cir.1998); *Knox v. Southwest Airlines,* 124 F.3d 1103, 1107 (9th Cir.1997).

[34] Plaintiff alleges that his superiors denied him promotions and placed him on administrative leave because he reported sexual misconduct/harassment and racial discrimination and testified that cheating was occurring on police department promotional exams. Plaintiff argues that these allegations are sufficient to overcome qualified immunity at this stage in the litigation.

Plaintiffs' allegations do not establish that the officers here acted reasonably under the totality of the circumstances or in *1178 reasonable reliance on a clearly established statute or constitutional provision. Plaintiff complains that he was retaliated against for having reported racial discrimination, sexual misconduct, and overtime improprieties, and for having testifying regarding cheating in the police department. Reporting such activities is expressive conduct regarding matters of public concern and is conduct facially protected by the First Amendment right to free speech. Defendants do not attempt to identify any statute or constitutional provision under which Defendants could have reasonably carried out such actions. Defendant's Motion to Dismiss Plaintiff's § 1983 claims on qualified immunity grounds is DENIED.

**C. Whether Plaintiff States a Claim Against the CITY Under § 1983.**

Defendants argue that Plaintiff fails to state a claim against the CITY because he does not allege the existence of a *Monell* policy or custom. (Doc. 33, Def.'s Mem. 13; *see also* Doc. 28, Def.'s Reply 5-6). Plaintiff responds, in conclusory fashion, that he has alleged that Chief DYER has policy-making authority. Plaintiff does not argue that he has alleged the existence of a defined policy that operated to violate his civil rights. Defendants argue that the alleged actions of Chief DYER do not constitute a " policy." (Doc. 28, Def.'s Reply 6.18-27).

Local governments are " persons" subject to suit for " constitutional tort[s]" under 42 U.S.C. § 1983. *Haugen,* 339 F.3d at 874. The CITY, as a local government, is therefore subject to suit under § 1983. However, local governments can only be sued where the claims arise out of unconstitutional actions by their employees who implement or execute a " policy statement, ordinance, or decision officially adopted

and promulgated by that body's officers...." *Monell,* 436 U.S. at 690-1, 98 S.Ct. 2018. In other words, a municipality cannot be held liable for an employee's actions outside the scope of implementation of the policies or customs on a *respondeat superior* theory. *Id.* A municipality can, however, be held liable for the acts of one of its employees acting in an " official" capacity. " ' [O]fficial-capacity suits ... generally represent only another way of pleading an action against an entity of which an officer is an agent.' " *Ruvalcaba,* 167 F.3d at 524 n. 3 (quoting *Graham,* 473 U.S. at 165, 105 S.Ct. 3099).

Here, Plaintiff attempts to plead an " official capacity" suit against Defendant DYER. However, Plaintiff's conclusory allegations regarding the purported policy implemented and/or created by Defendant DYER do not define or describe what that policy is. (*See* Compl. ¶¶ 4, 54). Plaintiff's " official capacity" claim against the CITY is deficient.

[35] Defendants argue that Plaintiff fails to state a claim against the CITY because he has not alleged that the Defendant officers had policy-making authority. Plaintiff responds that he has alleged that Chief DYER has policy-making authority. (Doc. 27, Pl.'s Opp. 17). Plaintiff cites Paragraphs 4 and 54 of his Complaint, which do contain allegations that Defendant DYER has policy-making authority. (*Id.*). However, Defendants correctly note that the alleged actions of Defendant DYER in a specific case are not *per se* an official policy. (Doc. 28, Def.'s Reply 6). Just as Plaintiff fails to state a claim against the CITY because he fails to identify the CITY's policy by describing a pattern or practice, Plaintiff also fails to state a claim against Defendant DYER in his official capacity for failing to define the same purported policy. Alleging that DYER had policy-making authority without defining the policy and its operation is not sufficient.

[36] Plaintiff's argument that delegation of authority to subordinates can subject*1179 a municipality to liability also fails. Plaintiff argues that municipal liability can be established by showing that " ' an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.' " (Doc. 27, Pl.'s Opp. 18) (quoting *Ulrich v. City and County of San Francisco,* 308 F.3d 968, 985 (9th Cir.2002)). However, Plaintiff fails to identify any allegations in the Complaint that identify what decision-making authority DYER delegated to his subordinates. Defendant notes that Plaintiff

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

incorporates Paragraphs 1-52 into his cause of action and that " [s]uch allegations include numerous actions taken by a variety of other officers...." (Doc. 28, Def.'s Reply 6). To the extent that Plaintiff attempts to allege official capacity claims against the Defendant Officers other than DYER, Plaintiff's attempts fail. Plaintiff's allegations of decision-making and policy-making authority are conclusory and insufficient. In addition, no policy is identified or defined.

Defendants' Motion to Dismiss Plaintiff's § 1983 claim against the CITY is GRANTED with leave to amend.

### D. Whether Plaintiff Can Maintain a § 1983 Claim Based On a Violation of the Fourteenth Amendment.

Defendants argue in a footnote that Plaintiff's § 1983 claim should be dismissed insofar as it is based on a violation of the Fourteenth Amendment. (Doc. 33, Def.'s Mem. 16, n. 3). Plaintiff does not address this argument in his opposition. (See Def.'s Reply 5). Defendants argue that Plaintiff appears to allege that Defendants violated his rights under the Equal Protection Clause of the Fourteenth Amendment by treating him differently for having exercised his rights to free speech. (Doc. 33, Def.'s Mem. 16, n. 3).

[37][38] " To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Lee v. City of Los Angeles, 250 F.3d 668, 686 (9th Cir.2001). The purpose of the equal protection clause is to " secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam) (quoting Sioux City Bridge Co. v. Dakota County, 260 U.S. 441, 445, 43 S.Ct. 190, 67 L.Ed. 340 (1923)). A successful equal protection claim may be brought by a " class of one," where the plaintiff alleges that he has been intentionally treated differently from others similarly situated. Id. at 563, 120 S.Ct. 1073.

Plaintiff identifies no allegations in his Complaint that he was treated differently from others who were similarly situated.

Defendant's Motion to Dismiss Plaintiff's § 1983 claims insofar as they are based on alleged violations of the Equal Protection Clause of the Fourteenth Amendment is GRANTED.

### E. State Law Claims.

#### 1. Whether Jurisdiction Exists over Plaintiff's Claim Under Cal. Labor Code § 1102.5.

Cal. Labor Code § 1102.5 establishes liability for employers who retaliate against their employees for disclosing information to government or law enforcement agencies. Defendants argue that a federal court lacks jurisdiction to hear Plaintiff's claim for violation of Cal. Labor Code § 1102.5 because, pursuant to Cal. Labor Code §§ 98.6 and 98.7, claims under Section 1102.5 are solely within the province *1180 of the Labor Commissioner. (Doc. 33, Def.'s Mem. 17; Doc. 28, Def.'s Reply 7). Plaintiff responds that, pursuant to Cal. Labor Code § 96, Plaintiff " may" file a claim with the Labor Commissioner, although he is not required to do so.

Cal. Labor Code § 98.7 provides that " [a]ny person who believes that he or she has been discharged or otherwise discriminated against in violation of any law under the jurisdiction of the Labor Commissioner may file a complaint with the division within six months after the occurrence of the violation." Cal. Labor Code § 98.6(a) describes claims brought pursuant to various sections of the labor code, including § 1102.5, as brought " under the jurisdiction of the labor commissioner." Neither of the provisions Defendants cite provides that exclusive jurisdiction over § 1102.5 claims lies with the Labor Commissioner. Defendants argue that Plaintiff cites no cases allowing a court to hear a claim under § 1102.5. Defendants also cite no cases holding that the Labor Commissioner has exclusive jurisdiction over § 1102.5 claims and that a court is not allowed to hear a § 1102.5 claim.

[39][40] The California Supreme Court has recently held that a litigant seeking damages under § 1102.5 is required to exhaust administrative remedies before the Labor Commissioner prior to bringing suit. Campbell v. Regents of the Univ. of Cal., 35 Cal.4th 311, 333-4, 25 Cal.Rptr.3d 320, 106 P.3d 976 (2005)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

(" We conclude that absent a clear indication of legislative intent, we should refrain from inferring a statutory exemption from our settled rule requiring exhaustion of administrative remedies." ) The exhaustion of administrative remedies rule is " well established in California jurisprudence." *Id.* at 321, 25 Cal.Rptr.3d 320, 106 P.3d 976. " ' [T]he rule is that where an administrative remedy is provided by statute, relief must be sought from the administrative body and this remedy exhausted before the courts will act.' " *Id.* (quoting *Abelleira v. Dist. Ct. of Appeal,* 17 Cal.2d 280, 292, 109 P.2d 942 (1941)). " Exhaustion of administrative remedies is a jurisdictional prerequisite to resort to the courts." *Id.* (quoting *Johnson v. City of Loma Linda,* 24 Cal.4th 61, 70, 99 Cal.Rptr.2d 316, 5 P.3d 874 (2000) (internal quotations omitted)).

Plaintiff does not allege that he exhausted available administrative remedies, including bringing a complaint before the Labor Commissioner, before bringing suit.

Defendants' Motion to Dismiss Plaintiff's claim under Cal. Labor Code § 1102.5 is **GRANTED** on the grounds that there is no jurisdiction.[FN9]

> FN9. Because there is no jurisdiction to hear this claim, Defendants' substantive arguments regarding the sufficiency of Plaintiff's Section 1105.2 claim will not be addressed.

### 2. Whether Plaintiff States a Claim Under Cal. Gov.Code § 53298, *et seq.*

Cal. Gov.Code § 53298(a) establishes liability for any local agency officer, manager, or supervisor who retaliates against any employee for filing a complaint with the local agency reporting " gross mismanagement, a significant waste of funds, an abuse of authority, or a specific and substantial danger to public health or safety." Cal. Gov.Code §§ 53298(a), 53296(c); *see also LeVine,* 90 Cal.App.4th at 212, 108 Cal.Rptr.2d 562 (discussing § 53298 in *dicta* ).

Plaintiff's claim under § 53298 arises out of his allegations that he was placed on Administrative Leave because of (1) his written reports of sexual molestation by former-officer Mata and of " administrative improprieties that appeared designed to foster opportunities for further sex crimes;" and (2) his " written reports of *1181 racial harassment of Southeast Asian Explorers by Police Activity League volunteers." (Doc. 23, Second Am. Compl. ¶¶ 21, 29, 60). Although Plaintiff's allegations are not entirely clear, it appears he filed at least some of these reports with the Internal Affairs and Human Resources Departments of the Fresno Police Department. (*See id.*). Plaintiff alleges that his reports of alleged sexual misconduct by Officer Mata and racial discrimination against " Southeast Asian Explorers" constituted " an abuse of authority and a substantial and specific danger to public health and safety." (*Id.* at ¶ 60).

#### (a) Whether Plaintiff States a Cal. Gov.Code § 53298 Claim against the CITY).

[41] Defendants argue that Plaintiff is not entitled to bring a § 53298 claim against the CITY as is explicitly set forth in the statute. (Doc. 33, Def.'s Mem. 18). Plaintiff does not dispute Defendant's argument in his opposition. (*See* Doc. 28, Def.'s Reply 9).

Cal. Gov.Code § 53298.5(b) provides that no cause of action for violation of that section shall be brought against the local public entity:
In no way [ ] shall the provisions of this article establish ... any new cause of action against the local public entity other than liabilities contained in existing law.

Defendant's Motion to Dismiss Plaintiff's Claim Under Cal. Gov.Code § 53298, *et seq.,* against the CITY is **GRANTED**.

#### (b) Whether Plaintiff States a Cal. Gov.Code § 53298 Claim against the Individual Defendants.

Defendants argue that Plaintiff fails to state a claim under § 53298 against the individual officers because he has not pleaded all required elements as set forth in Cal. Gov.Code §§ 53296(c)-(d), 53297(a)-(d), and 53298(a). Plaintiff argues that he has complied with the pleading requirements.

[42] The elements for this whistleblower cause of action are not clearly listed in any single section of the statute. Also, there does not appear to be any case law interpreting this statute. According to the statute's various provisions, it appears that the elements of a claim under § 53298 include the following:

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Page 23

1) The employee filed a complaint with a local agency regarding gross mismanagement, a significant waste of funds, an abuse of authority, or a specific and substantial danger to public health or safety. Cal. Gov.Code §§ 53297(a), 53276(c)-(d).
2) The complaint was filed within 60 days of the date of the act or event that is the subject of the complaint. *Id.* at § 53297(a).
3) The complaint was filed under penalty of perjury. *Id.* at § 53297(d).
4) The complaint was filed in accordance with the locally adopted administrative procedure, or in the alternative there was no administrative procedure available. *Id.* at § 53297(c).
5) The employee made a good faith effort to exhaust all available administrative remedies before filing the complaint.[FN10] *Id.* at § 53297(b).

> FN10. " The 60-day time limit specified in [§ 53297(a) ] shall be extended by the amount of time actually utilized by the employee in pursuing administrative remedies." *Id.* at § 53297(b).

6) A local agency officer, manager, or supervisor took a reprisal action against the employee for filing the complaint. *Id.* at § 53298(a).

Plaintiff here has alleged three of the six elements listed above: (1) the complaints *1182 he filed with Internal Affairs and/or Human Resources related to abuse of authority and a substantial and specific danger to public health or safety; (2) that these complaints were filed in accordance with the CITY's administrative policies and procedures; and (3) that his supervisors, who were local agency officers, took a reprisal action (i.e., placing him on Administrative Leave) as the result of his filing these complaints. Plaintiff has not alleged the three remaining elements; i.e., (1) that he filed these complaints within 60 days of the acts or events; (2) that the complaints were filed under penalty of perjury; and (3) that he attempted, in good faith, to exhaust the available administrative remedies before filing his complaint, or in the alternative that there were no available administrative remedies.

Assuming that the elements defined by the statute are pleading requirements, Plaintiff has failed to allege all elements necessary to state a claim. Defendants' Motion to Dismiss Plaintiff's claim under § 52378 is GRANTED with leave to amend.

**(c) Whether Plaintiff fails to allege causation between Plaintiff's whistleblowing activities and the retaliatory act.**

Defendants argue that because the whistleblowing activities alleged took place in 1996 and 1997, and the alleged retaliatory act (i.e., the placement of Plaintiff on Administrative Leave) took place over seven years later in March 2004, Plaintiff fails to establish a causal connection. Plaintiff's response is to refer to several paragraphs of the Second Amended Complaint (¶¶ 28-29, 37, 39-41, 43). Plaintiff states in his opposition that " [w]hile Plaintiff's argument about causation is tenuous, Defendants' contention that Plaintiff has failed to " establish" causation, ignores that this issue is for the fact-finder and cannot be resolved at the pleading stage." (Doc. 27, Pl.'s Opp. 20).

Plaintiff's Complaint alleges that, from 1997 to 2002, he was retaliated against by being passed over for promotions, and that eventually the retaliation culminated in his being placed on administrative leave in March 2004. While Plaintiff's argument about causation is tenuous, Defendants' contention that Plaintiff has failed to " establish" causation, ignores that this issue is for the fact-finder and cannot be resolved at the pleading stage.

Defendant's Motion to Dismiss Plaintiff's § 53298 claim on the grounds of failure to allege causation is **DENIED.**

**(d) Whether Plaintiff's § 53298 Claim is Time-Barred for Failure to Timely File a Claim under the California Tort Claims Act.**

Under the California Tort Claims Act, no suit for " money or damages" may be brought against a public entity until a written claim has been presented to the public entity and the claim either has been acted upon or is deemed to have been rejected. *Hart v. Alameda County,* 76 Cal.App.4th 766, 778, 90 Cal.Rptr.2d 386 (1999). The CTCA requires a plaintiff to file a timely tort claim with the public entity; if the claim is not timely, the public entity may reject the claim. If a claimant fails to timely file a claim with the public entity, and its claim is consequently rejected by the public entity for that reason, courts are without jurisdiction to hear the claimant's cause of action. *Greyhound Lines,* 187 Cal.App.3d at 487, 231 Cal.Rptr. 702; *Moyer,* 10 Cal.App.3d at 492-3, 89 Cal.Rptr. 234; *Carr,* 58 Cal.App.3d at 144-6, 129

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Page 24

Cal.Rptr. 730; *Williams v. Mariposa County,* 82 Cal.App.3d at 848-9, 147 Cal.Rptr. 452. For causes of action for death, personal injury, or injury to personal property, a claimant must file a claim within six months of the accrual of the cause of action. Cal. Gov.Code § 911.2.

**\*1183 [43]** The parties dispute when Plaintiff's cause of action under § 53298 accrued. Defendants argue that it accrued in March 2004, when Plaintiff was placed on administrative leave. Plaintiff suggests that it accrued on July 6, 2004, when Defendants DYER and ENMARK refused to reinstate Plaintiff after allegedly having received opinions from three psychologists that he was fit for duty. Neither party offers any argument or authority as to when a claim under § 53298 accrues. Plaintiff argued that the earliest he reasonably could have been aware of his whistleblower claim was July 2004, when Defendants refused to reinstate him to duty after having been declared fit for duty by three psychologists. Construing Plaintiff's allegations in the most favorable light, as is required on a Rule 12(b)(6) motion, Plaintiff's whistleblower claim under § 53298 is not deficient for failure to timely file a complaint under the California Tort Claims Act.

Defendant's Motion to Dismiss Plaintiff's § 53298 claim on the grounds it is barred by the California Tort Claims Act is DENIED.

### F. *Defendants' Motion to Strike Pursuant to Fed.R.Civ.P. 12(f).*

" [M]otions to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Colaprico,* 758 F.Supp. at 1339 (citation omitted).

### 1. Plaintiff's Claim for Punitive Damages under § 1983.

**[44][45]** First, Defendants argue that Plaintiff's claim for punitive damages under § 1983 against the individual defendants should be dismissed because Plaintiff fails to plead sufficient facts to support claims of malice against them. (Doc. 33, Def.'s Mem. 20). Under § 1983, punitive damages are proper either when a defendant's conduct was driven by evil motive or intent; or when it involved a reckless or callous indifference to the constitutional rights of others. *Smith v. Wade,* 461 U.S. 30, 56, 103 S.Ct.

1625, 75 L.Ed.2d 632 (1983); *Larez v. City of Los Angeles,* 946 F.2d 630, 639 (9th Cir.1991). A public entity cannot be sued under § 1983 as a matter of law for punitive damages. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). Insofar as Defendants seek to strike Plaintiff's punitive damages claim against the CITY, their motion is **GRANTED**.

As to the punitive damages claims against the individual defendants, Defendants' conclusory argument that " Plaintiffs [sic] allegations are insufficient to meet [the] standard as to all six individual Defendants" is not persuasive. It is not clear from Plaintiff's allegations whether the individual defendants were motivated by evil intent or whether they acted with recklessness or callous indifference to Plaintiff's constitutional rights. Plaintiff's allegations are sufficient to infer malice. *See* Fed.R.Civ.P. 9(b). Whether the officers acted with malice is a question of fact not properly decided on a motion to dismiss. Defendants' Motion to Strike Plaintiff's claim for punitive damages against the individual defendants is DENIED.

### 2. Plaintiff's Claim for Punitive Damages under Cal. Gov.Code § 53298.

**[46]** Second, Defendants argue that Plaintiffs' claim for punitive damages under Cal. Gov.Code § 53298 should be stricken for failure to plead malice. In support, Defendants cite the definition of malice at Cal. Civ.Code § 3294(c)(1) and two California state cases regarding malice pleading requirements. Federal district courts sitting in diversity apply the substantive**\*1184** law of the forum state, but apply procedural rules as stated in the Federal Rules of Civil Procedure. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also Clark v. Allstate Ins. Co.,* 106 F.Supp.2d 1016, 1019 n. 3 (S.D.Cal.2000). The California law Defendants cite is not controlling. While Cal. Civ.Code § 3294(a) applies insofar as it allows for the recovery of punitive damages on a successful tort claim (including statutory torts),[FN11] the Federal Rules of Civil Procedure govern pleading standards in federal district court.

> FN11. Cal. Civ.Code § 3294(a) allows for an award of punitive damages against a tortfeasor whose acts are characterized by oppression, fraud, or malice.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

[47] Specifically, Rule 9(b) governs pleading requirements for malice: " Malice, intent, knowledge and other condition[s] of mind of a person may be averred generally." · The court in *Clark*, following other federal district courts in California, held that " conclusory assertions that a defendant acted intentionally, with ' malice' or with ' conscious disregard' " are " adequate to plead the mental state required under Section 3294." *Clark*, 106 F.Supp.2d at 1019-20 (holding that because plaintiff's complaint alleges that defendant intentionally denied plaintiff's insurance claim and that it acted with an intent to injure plaintiff, the Complaint complied with Fed.R.Civ.P. 8, 9). Here Plaintiff alleges that Defendants retaliated against Plaintiff for his " whistleblowing" activities. (*See* Doc. 23, Second Am. Compl. ¶ 60). Allegations of retaliation are sufficient to infer intent to injure. Defendants' Motion to Strike Plaintiff's claim for punitive damages under Cal. Gov.Code § 53298 is DENIED.

### 3. Plaintiff's Allegations Relating to Defendants' Failure to Promote Plaintiff " Between June 1997 and December 2002."

Defendants argue that Plaintiff's allegations relating to Defendants' failure to promote Plaintiff " between approximately June 1997 and December 2002" should be stricken because one of Plaintiff's previously-filed complaints alleged different dates. Specifically, Plaintiff's First Amended Complaint alleged that Defendants failed to promote him " between June 1997 and January 2002." Defendants argue that Plaintiff's " new" allegations contradict the allegations in the First Amended Complaint, that Plaintiff provided no explanation for the purported contradiction, and that therefore the " new" allegations need not be accepted as true and should be stricken. (Doc. 33, Def.'s Mem. 21). Defendants cited no law or rule that does not allow a plaintiff to expand the time period of alleged wrongdoing. The expanded time period in the operative complaint does not contradict the allegation in the earlier complaint. Defendants' Motion to Strike Plaintiff's allegations relating to Defendants' failure to promote him between June 1997 and December 2002 is DENIED.

### 4. Plaintiff's Allegations Relating to Adverse Employment Actions Taken Before November 1, 2002.

[48] Defendants argue that Plaintiff's allegations relating to adverse employment actions taken before

November 1, 2002, should be stricken as time-barred. Under notice pleading requirements, a party is not required to plead evidentiary facts. *See* Fed.R.Civ.P. 8(a). Allegations relating to adverse employment actions may be evidence of improper motive, even if a § 1983 claim based upon those actions would be time-barred. *Carpinteria Valley Farms, Ltd. v. County of Santa Barbara*, 344 F.3d 822, 829 (9th Cir.2003). It is not proper to make evidentiary rulings at the *1185 pleading stage. Striking allegations of adverse actions outside the statutory period for § 1983 violations is therefore not appropriate. Defendants' Motion to Strike Plaintiff's allegations relating to adverse actions prior to November 1, 2002 is DENIED.

### 5. Plaintiff's Allegations Relating to his Written Reports of the Alleged Sexual Misconduct of Officer Mata.

Defendants' papers do not make clear the precise allegations regarding Officer Mata that they move to strike. Defendants refer to Paragraphs 16-28 of the Second Amended Complaint in their motion and their reply, and appear to move to strike all allegations contained in these paragraphs. However, Defendants' argument relates only to Plaintiff's allegations regarding the purported dispute between Internal Affairs and Plaintiff's chain of command as to whether Plaintiff should report issues relating to Officer Mata in writing. (Doc. 28, Def.'s Reply 12). Defendants assume that Plaintiff's § 1983 cause of action is based upon this purported internal police dispute. Defendants argue that the allegations regarding the disagreement over the form of the reports does not, as a matter of law, relate to a matter of public concern, and is therefore not protected speech under the First Amendment. Plaintiff's response does not relate specifically to his allegations regarding the form of the reports, but instead appears to relate to all of his allegations regarding Mata. Plaintiff argues that reports of sexual misconduct by a police officer address matters of public concern and are therefore protected speech.

[49] The parties' treatment of this complex First Amendment issue is cursory and deficient. First, Defendants appear to raise an argument on the merits, which is not appropriate on a Rule 12(f) motion to strike. *See Ritzer v. Gerovicap Pharmaceutical Corp.*, 162 F.R.D. 642, 644 (D.Nev.1995). Defendant appears to argue that internal disputes over the form of reports are not, as a matter of law, matters of

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159
392 F.Supp.2d 1159
(Cite as: 392 F.Supp.2d 1159)

public concern. This argument goes to the merits of Plaintiff's First Amendment retaliation claim and is more appropriately dealt with on a Rule 12(b)(6) motion to dismiss.

Second, Defendants' characterization of Plaintiff's § 1983 claim is inaccurate, although Plaintiff does not dispute Defendants' characterization in his opposition. Defendants state that Plaintiff's § 1983 violation is " based on a dispute between the Internal Affairs Division and his chain of command as to whether he should report issues relating to Officer Mata in writing." (Doc. 33, Def.'s Mem. 24). Plaintiff's § 1983 cause of action, as stated in the Second Amended Complaint, contains no specific allegations regarding the protected speech upon which his § 1983 claim is based. (See Doc. 23, Second Am. Compl. ¶¶ 53-4). Allegations elsewhere in the complaint, however, provide additional information. Specifically, Plaintiff alleges that he was retaliated against for having reported to Internal Affairs, in writing, information regarding purported sexual misconduct by Officer Mata. Furthermore, Plaintiff alleges that he was retaliated against for disobeying orders from his immediate chain of command not to report the sexual misconduct to Internal Affairs, in writing or otherwise, and that he was only to report the alleged sexual misconduct to his immediate superiors.

Plaintiff's allegations regarding a purported " dispute" within the Fresno Police Department over whether reports of Officer Mata's alleged sexual misconduct should be in writing are irrelevant to Plaintiff's § 1983 claim and should therefore*1186 be stricken is not appropriately decided on a motion to strike.

[50] Public employees do not relinquish their right to free speech by virtue of their employment. *Ceballos v. Garcetti*, 361 F.3d 1168, 1173 (9th Cir.2004). However, public employees do not enjoy absolute First Amendment rights. *Id.* To determine whether a public employee's speech is protected by the First Amendment, courts in the Ninth Circuit apply a two-step test. *Id.* The first step is to determine whether the speech addresses a matter of public concern. *Id.* If it does, the next step is to engage in a balancing analysis established by the United States Supreme Court in *Pickering v. Bd. of Educ. of Township High School Dist., 205, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).* The balancing test requires a court to determine whether the public employee's

interest in expressing him- or herself outweighs the government's interest " in promoting workplace efficiency and avoiding workplace disruption." *Id.*

Defendants argue that allegations regarding the dispute between Internal Affairs and Plaintiff's chain of command over whether the reports regarding Officer Mata should be in writing are not matters of public concern and are therefore irrelevant to Plaintiff's First Amendment claim and should be stricken. This argument goes to the merits of Plaintiff's First Amendment retaliation claim and should not be dealt with on a motion to strike. The issue whether the expressive conduct upon which Plaintiff bases his First Amendment retaliation claim is protected speech was not fully briefed by the parties and should not be decided in the context of this motion.

The dispute over the reports concerning alleged violations of law by police officers is part of the overall alleged scheme of discrimination. Defendants' Motion to Strike Plaintiff's allegations in Paragraphs 16 through 28 is **DENIED**. Defendants' motion to strike the Mata allegations as irrelevant to the state whistleblower claims is **MOOT**.

## VI. CONCLUSION

Defendants' Motions to Dismiss pursuant to Rule 12(b)(6):
(1) Plaintiff's § 1983 claims insofar as they are based on adverse employment actions occurring before November 1, 2002 is **GRANTED** with prejudice;
(2) Plaintiff's § 1983 claims against the individual Defendants is **DENIED**;
(3) Plaintiff's § 1983 claim against the CITY is **GRANTED** with leave to amend; Defendants' Motion for a More Definite Statement pursuant to Rule 12(e) as to Plaintiff's § 1983 claim against the CITY is **MOOT**;
(4) Plaintiff's § 1983 claim based on deprivation of rights under the Fourteenth Amendment is **GRANTED**;
(5) Plaintiff's Cal. Labor Code § 1102.5 claim is **GRANTED**; and
(6) Plaintiff's Cal. Gov.Code § 53298 claim against the CITY is **GRANTED**; Plaintiff's Cal. Gov.Code § 53298 claim against the individual Defendants on the grounds of failure to plead all elements is **GRANTED** with leave to amend; Plaintiff's § 53298 claim against individual defendants on all other grounds is DENIED.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

392 F.Supp.2d 1159                                                  Page 27

392 F.Supp.2d 1159

(Cite as: 392 F.Supp.2d 1159)

Defendants' Motions to Strike pursuant to Rule 12(f)
Plaintiff's claim for punitive damages as to the CITY
is **GRANTED**. Defendants' Motion to Strike all
remaining claims is **DENIED**.

**SO ORDERED.**

E.D.Cal.,2005.
Neveu v. City of Fresno
392 F.Supp.2d 1159

**END OF DOCUMENT**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.