1   FRED M. PLEVIN (SBN 126185)
    SANDRA L. MCDONOUGH (SBN 193308)
2   ALBERT R. LIMBERG (SBN 211110)
    **PAUL, PLEVIN, SULLIVAN &**
3   **CONNAUGHTON** LLP
    401 B Street, Tenth Floor
4   San Diego, California 92101-4232
    Telephone: 619-237-5200
5   Facsimile: 619-615-0700

6   AMY S. GONZALEZ (SBN 181745)
    **SAN DIEGO COUNTY REGIONAL AIRPORT**
7   **AUTHORITY**
    3225 N. Harbor Drive
8   San Diego, CA 92138
    Telephone:  (619) 400-2425
9   Facsimile: (619) 400-2428

10

    Attorneys for Defendant
11  SAN DIEGO COUNTY REGIONAL AIRPORT
    AUTHORITY

12

13              UNITED STATES DISTRICT COURT

14            SOUTHERN DISTRICT OF CALIFORNIA

15  JOSE HERNANDEZ,                    CASE NO.

16          Plaintiff,                 **NOTICE OF REMOVAL OF ACTION:**
                                       **UNDER 28 U.S.C. § 1442(B)**
17       v.                            **(FEDERAL QUESTION)**

18  SAN DIEGO COUNTY
    REGIONAL AIRPORT
19  AUTHORITY, a public entity; and    **EXHIBITS 26-52**
    DOES 1 through 12, inclusive,
20
          Defendants.
21
22  ///                               '08  CV 0184  L  CAB
23  ///
24  ///
25
26
27
28

PAUL, PLEVIN,
SULLIVAN &          NOTICE OF REMOVAL                    1
CONNAUGHTON LLP

**EXHIBIT 26**

1   FRED M. PLEVIN (SBN 126185)
    SANDRA L. MCDONOUGH (SBN 193308)
2   ALBERT R. LIMBERG (SBN 211110)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3   401 B Street, Tenth Floor
    San Diego, California 92101-4232
4   Telephone: 619-237-5200
    Facsimile: 619-615-0700
5
    AMY S. GONZALEZ (SBN 181745)
6   **SAN DIEGO COUNTY REGIONAL AIRPORT**
    **AUTHORITY**
7   3225 N. Harbor Drive
    San Diego, CA 92138
8   Telephone: (619) 400-2425
    Facsimile: (619) 400-2428
9
10  Attorneys for Defendant
    SAN DIEGO COUNTY REGIONAL AIRPORT
11  AUTHORITY

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                      COUNTY OF SAN DIEGO

14  JOSE HERNANDEZ,                    CASE NO. GIC 871979

15              Plaintiff,             **NOTICE OF HEARING ON DEMURRER**
                                       **AND DEMURRER TO PLAINTIFF'S**
16      v.                             **SECOND AMENDED COMPLAINT**

17  SAN DIEGO COUNTY REGIONAL
    AIRPORT AUTHORITY, a public entity;
18  and DOES 1 through 12, inclusive,   Date:          May 11, 2007
                                        Time:          1:30 p.m.
19              Defendants.             Dept:          75
                                        Judge:         Hon. Richard E. Strauss
20                                      Complaint Filed: September 1, 2006
                                        Trial Date:    Not Set
21
                                            **EXEMPT FROM FEES**
22                                          **GOVT. CODE § 6103**

23      TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

24      PLEASE TAKE NOTICE that on May 11, 2007 at 1:30 p.m., or as soon thereafter as

25  counsel may be heard, in Department 75 of the San Diego County Superior Court, located at 330

26  West Broadway, San Diego, California 92101, defendant San Diego County Regional Airport

27  Authority ("Authority") demurs to plaintiff's Second Amended Complaint on the following

28  ground:

PAUL, PLEVIN,
SULLIVAN &        NOTICE OF HEARING ON DEMURRER AND          1
CONNAUGHTON LLP   DEMURRER TO PLAINTIFF'S SAC

1    The first cause of action fails as a matter of law because plaintiff has not alleged facts

2  supporting a prima facie case showing that he reasonably believed that the Authority's actions

3  violated a state or federal law, rule or regulation.

4    This demurrer is based on this notice, the accompanying demurrer and memorandum of

5  points and authorities filed in support of this demurrer and motion to strike, the entire file in this

6  case, and any other evidence or argument properly considered by the court in connection with this

7  demurrer.

8    This Court follows California Rules of Court, Rule 3.1308.  The Court will therefore make

9  its tentative ruling available by telephone at (619) 531-3690 the court day before the scheduled

10  hearing at 3:00 p.m., or the tentative ruling may be reviewed on the Court's internet web site

11  (www.sdcourt.ca.gov) after 4:00 p.m. on that same day.

12

13  Dated: April 19, 2007                    PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

14

15                                     By:
16                                         FRED M. PLEVIN
                                          SANDRA L. MCDONOUGH
17                                         ALBERT R. LIMBERG
                                          Attorneys for Defendant
18                                         SAN DIEGO COUNTY REGIONAL AIRPORT
                                          AUTHORITY
19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF HEARING ON DEMURRER AND                    2
DEMURRER TO PLAINTIFF'S SAC

BLUEBIRD OFFICE SUPPLIES (888) 477-0700 www.bluebirdonline.com

EXHIBIT 27

OFFICE 12
IVISION

1  FRED M. PLEVIN (SBN 126185)
   SANDRA L. MCDONOUGH (SBN 193308)        2001 APR 19  P 4: 22
2  ALBERT R. LIMBERG (SBN 211110)
   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP                    COURT
3  401 B Street, Tenth Floor                                       Y, CA
   San Diego, California 92101-4232
4  Telephone: 619-237-5200
   Facsimile: 619-615-0700
5
   AMY S. GONZALEZ (SBN 181745)
6  **SAN DIEGO COUNTY REGIONAL AIRPORT
   AUTHORITY**
7  3225 N. Harbor Drive
   San Diego, CA 92138
8  Telephone: (619) 400-2425
   Facsimile: (619) 400-2428
9
10 Attorneys for Defendant
   SAN DIEGO COUNTY REGIONAL AIRPORT
11 AUTHORITY

12            SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                      COUNTY OF SAN DIEGO

14 JOSE HERNANDEZ,                          CASE NO. GIC 871979

15          Plaintiff,                      **DEFENDANT SAN DIEGO COUNTY
                                            REGIONAL AIRPORT AUTHORITY'S
16      v.                                  DEMURRER TO PLAINTIFF'S SECOND
                                            AMENDED COMPLAINT**
17 SAN DIEGO COUNTY REGIONAL
   AIRPORT AUTHORITY, a public entity;
18 and DOES 1 through 12, inclusive,
                                            Date:          May 11, 2007
19          Defendants.                     Time:          1:30 p.m.
                                            Dept:          75
20                                          Judge:         Hon. Richard E. Strauss
                                            Complaint Filed: September 1, 2006
21                                          Trial Date:    Not Set

22                                             **EXEMPT FROM FEES
                                               GOVT. CODE § 6103**
23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &        | DEFENDANT'S DEMURRER TO PLAINTIFF'S
CONNAUGHTON LLP   | SECOND AMENDED COMPLAINT

1       Pursuant to Code of Civil Procedure section 430.10(a), (e) and (f), defendant San Diego

2   County Regional Airport Authority ("the Authority") hereby demurs to the only cause of action in

3   plaintiff's Second Amended Complaint as follows:

### FIRST CAUSE OF ACTION

**Violation of California Labor Code Section 1102.5 et seq.**

**Retaliation for Protected Disclosure**

7       1.      Plaintiff's first cause of action fails to state sufficient facts to constitute a cause of

8   action because plaintiff has not pled facts supporting his conclusion that he reasonably believed

9   that the Authority's actions violated a state or federal law, rule or regulation.  (Code Civ. Proc.

10   § 430.10(a), (e) and (f).)

Dated: April 19, 2007

PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP

By:
FRED M. PLEVIN
SANDRA L. MCDONOUGH
ALBERT R. LIMBERG
Attorneys for Defendant
SAN DIEGO COUNTY REGIONAL
AIRPORT AUTHORITY

DEFENDANT'S DEMURRER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT

1

27-357

**EXHIBIT  28**

1 │ FRED M. PLEVIN (SBN 126185)
   │ SANDRA L. MCDONOUGH (SBN 193308)
2 │ ALBERT R. LIMBERG (SBN 211110)
   │ **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3 │ 401 B Street, Tenth Floor
   │ San Diego, California 92101-4232
4 │ Telephone: 619-237-5200
   │ Facsimile: 619-615-0700
5 │
6 │ AMY S. GONZALEZ (SBN 181745)
   │ **SAN DIEGO COUNTY REGIONAL AIRPORT**
   │ **AUTHORITY**
7 │ 3225 N. Harbor Drive
   │ San Diego, CA 92138
8 │ Telephone:  (619) 400-2425
   │ Facsimile: (619) 400-2428
9 │
10 │ Attorneys for Defendant
    │ SAN DIEGO COUNTY REGIONAL AIRPORT
11 │ AUTHORITY
12 │
13 │            SUPERIOR COURT OF THE STATE OF CALIFORNIA
14 │                     COUNTY OF SAN DIEGO

| 15 | JOSE HERNANDEZ, | CASE NO. GIC 871979 |
|----|----------------|---------------------|
| 16 | Plaintiff, | **PROOF OF PERSONAL SERVICE** |
| 17 | v. | |
| 18 | SAN DIEGO COUNTY REGIONAL | Dept:  75 |
|    | AIRPORT AUTHORITY, a public entity; | Judge:  Hon. Richard E. Strauss |
| 19 | and DOES 1 through 12, inclusive, | Complaint Filed:  September 1, 2006 |
|    | | Trial Date:  Not Set |
| 20 | Defendants. | |

21
22
23
24
25
26
27
28

PROOF OF PERSONAL SERVICE

1    I, the undersigned, certify and declare that I am a citizen of the United States, over the age

2    of eighteen, employed in the County of San Diego, State of California, and not a party to the

3    within-entitled action.  1302 Kettner Blvd., San Diego, California 92101.

4    On April 19, 2007, I served a true copy of the within:

5    •    **NOTICE OF HEARING ON DEMURRER AND DEMURRER TO
         PLAINTIFF'S SECOND AMENDED COMPLAINT;**
6
     •    **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT
7         AUTHORITY'S DEMURRER TO PLAINTIFF'S SECOND AMENDED
          COMPLAINT;**
8
     •    **NOTICE OF MOTION AND MOTION TO STRIKE PLAINTIFF'S
9         SECOND AMENDED COMPLAINT;**

10   •    **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
          DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT
11        AUTHORITY'S DEMURRER AND MOTION TO STRIKE PLAINTIFF'S
          SECOND AMENDED COMPLAINT**

12   by delivering for personal service to the following:

13        Cathryn Chinn, Esq.
          1901 First Avenue, Suite 400
14        San Diego, CA 92101
          Tel:  619-295-4190 / Fax:  619-295-9529
15        **Attorney for Plaintiff Jose Hernandez**

16        I hereby certify that I am employed by CalExpress Messenger Service, San Diego,

17   California, at whose direction the personal service was made.

18        Executed April 19, 2007, at San Diego, California.

19

20

21                                                    CALEXPRESS MESSENGER

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP          PROOF OF PERSONAL SERVICE                    1

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS: 330 West Broadway
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central
TELEPHONE NUMBER: (619) 685-6148

PLAINTIFF(S) / PETITIONER(S): JOSE HERNANDEZ

DEFENDANT(S) / RESPONDENT(S): S D COUNTY REGIONAL AIRPORT AUTHRTY et.al.

HERNANDEZ VS S D COUNTY REGIONAL AIRPORT AUTHRTY

| NOTICE OF RESCHEDULED HEARING | CASE NUMBER:<br>GIC871979 |
|---|---|

Notice is given that the hearing in the above-entitled case has been rescheduled from 04/20/2007  10:00 AM   to date and time shown below.  All inquiries regarding this notice should be referred to the court listed above.

| TYPE OF HEARING | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/11/2007 | 10:00 am | C-75 | Richard E. L. Strauss |

Counsel: Check service list.  If you have brought a party into this case who is not included in the service list, San Diego Superior Court Local Rules, Division II, requires you to serve the party with a copy of this notice.

A case management statement must be completed by counsel for all parties or parties in pro per and timely filed with the court at least 15 days prior to the initial case management conference.  (San Diego Local Rules, Division II, CRC Rule 212).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR options.

29-360

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

| | |
|---|---|
| **SHORT TITLE:** HERNANDEZ vs S D COUNTY REGIONAL AIRPORT AUTHRTY | |
| **CLERK'S CERTIFICATE OF SERVICE BY MAIL** | **CASE NUMBER:**<br>**GIC871979** |

I certify that I am not a party to this cause. I certify that a true copy of the attached was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 04/24/2007.

Clerk of the Court, by: _M. Wong-Kamez_
M. Wong-Jimenez
_____, Deputy

SANDRA MCDONOUGH
401 B ST 10TH FLOOR
SAN DIEGO, CA 92101

CATHRYN CHINN
3990 OLD TOWN AVE STE A109
SAN DIEGO, CA 92110

29-361

SUPERIOR COURT OF CALIFORNIA
SAN DIEGO COUNTY
330 West Broadway
San Diego, CA 92101

ADDRESS SERVICE REQUESTED

379.SDCRT.S11

SANDRA MCDONOUGH
401 B ST 10TH FLOOR
SAN DIEGO, CA 92101

**EXHIBIT 30**

1  CATHRYN CHINN, ESQ. #93340
   3990 Old Town Avenue, Ste. A109
2  San Diego, California 92110
   Telephone: 619-295-4190
3
   Attorney for Plaintiff
4      JOSE HERNANDEZ

5

6                  SUPERIOR COURT OF THE STATE OF CALIFORNIA

7                       FOR THE COUNTY OF SAN DIEGO

8

9  ─────────────────────────────

10 JOSE HERNANDEZ,                    ) Case No. GIC 871979
                                      )
11            Plaintiff,              ) PLAINTIFF'S OPPOSITION TO
                                      ) DEFENDANT SAN DIEGO COUNTY
12     v.                             ) REGIONAL AIRPORT AUTHORITY'S
                                      ) DEMURRER AND/OR MOTION TO
13 SAN DIEGO COUNTY REGIONAL          ) STRIKE PLAINTIFF'S SECOND
   AIRPORT AUTHORITY, a public entity;) AMENDED COMPLAINT
14 and DOES 1 through 10, inclusive,  )─────────────────────────────
                                      )
15                                    ) Date:       May 11, 2007
                                      ) Time:       1:30 p.m.
16            Defendants.             ) Dept:       75
                                      ) Judge:      Hon. Richard E. Strauss
17                                    ) Complaint Filed: September 1, 2006
                                      ) Trial Date:    None Set
18                                    )
19                                    )

20 ─────────────────────────────

21

22

23

24

25

26

27

28

                                -1-
─────────────────────────────────────────────

## I.

### INTRODUCTION AND SUMMARY OF FACTS

Defendant's demurrer is based on a single assertion: that the plaintiff has not pled specific facts to support his allegation that he reasonably believed that the Authority's actions violated a federal law, rule or regulation. The Second Amended Complaint contains the following allegations:

"BRIAN ENARSON'S ALLEGED "SIDE DEAL" WITH HOST REGARDING THE WOMEN'S RESTROOM" [Defendants demurrer 2:2-3]

1. Bryan Enarson was the Vice President of the Real Estate and Capitol Development Division of the Authority. 3:19-23
2. In the past, Enarson's Development Division had simply taken space, but now resisted and refused to negotiate space needed to improve the women's restroom. 4:18-20
3. The improvement plans had been in the works for over five years and called for a removal of approximately 30 square feet from the news and gift stand belonging to Host. 4:20-22
4. In the process it was revealed that Enarson had entered into side deals with a handshake agreement with Host that restricted the Operations Division's ability to annex the space which was needed to comply with ADA requirments. 4:22-24
5. Because Enarson refused to either take the space away from Host or renegotiate with them, major modifications had to be made that increased the project budget by over $2 million. 4:26-28
6. During the long delays women were forced to endure the long lines to use the restrooms.4:28-5:1
7. There was no access for the disabled to the restroom for which the plaintiff also had reasonable cause to believe that the Authority was in violation of the equal access provision and regulation of the ADA. 5:1-3
8. The plaintiff disclosed to members of the Authority Enarson's "side deal" made without negotiation that restricted the Authority's ability to annex the space needed to comply with ADA requirments for the airport restroom. 5:4-6
9. Plaintiff also disclosed that Enarson's refusal had increased the project budget by over $2 million.5:6-7
10. On both counts, plaintiff believed that he was disclosing legal violations: violations of the ADA requirements and also disclosing the unauthorized use of public assets because Enarson had a "handshake" deal. 5:7-9
11. The plaintiff absolutely made clear his opposition in private meetings, in public meetings, and at open door and closed door meetings, to the failure of the Authority to implement the annexation of the space needed to have the women's restroom comply with the ADA requirements to provide access to disabled travelers and to complete the project at a reasonable cost and in a timely manner. 27:7-11
12. The American Disabilities Act and its enabling statutes and regulations are federal law and federal regulations. 27:11-12

-2-

30-364

**"THE GENERAL DYNAMICS PARKING LOT LEASE"** [Defendants demurrer 1:26]

1. The terms of the original three year lease called for rent of $4.6 million year one, $6.6 million year two, and $8.6 million year three. 5:15-17
2. Enarson was the lead negotiator on the lease. 5:17
3. When plaintiff compared the revenue potential of the approximately $3 million net from the parking operation and $1 million from the vehicle storage, the lease payments were too expensive and out of line. 5:17-19
4. Plaintiff disclosed that the increased lease payments pulled funds away from the operating budget and he believed it was an unauthorized use of the Authority funds. 5:19-21
5. Plaintiff also believed the failure to negotiate the lease properly was a violation of law and contrary to public interest. 5:21-22
6. The plaintiff had reasonable cause to believe that this failure and other actions related to the lease were unlawful acts that violated Public Utilities Code section 170056(f)(1)(2)(3). 5:22-24
7. Plaintiff had reasonable cause to believe that the terms of the lease were in violation of the California Public Utilities Code section 170056(f)(3). 5:24-26
8. Despite plaintiff's objections to the actual revenue streams, Enarson decided the matter would go up to the Vice President level, where it died and no corrective action was taken. 5:26-28
9. The lease was signed contrary to the objections of the forms of revenue streams. 5:28-6:1
10. The plaintiff made clear to the Vice President to whom he reported that he objected and opposed during the negotiations and due diligence process that Enarson (Vice President and confidante to Thella Bowens) was not properly understanding the lawful use and conditions of the General Dynamics property that resulted and continues to result in losses of millions of dollars for the Authority in violation of California Public Utilities Code section 170056(f)(1)(2)(3). 27:13-18

**"THE TELEDYNE PARKING LOT LEASE"** [Defendants demurrer 1:26]

1. At the time the lease was negotiated, with Enarson as the lead negotiator, contamination of the property allegedly required approximately $10 million.6:4-5
2. The failure to properly inspect and analyze the actual contamination resulted in a finding that the contamination remediation range would be approximately $30 million and would limit the use of the property to the existing 350 space long term parking lot. 6:5-8
3. Current revenues derived from the parking lot are approximately $1.2 million a year with about $700,000.00 in expenses, netting the Authority only $500,000.00. 6:8-10
4. The original plan for the property was to phase in the parking development from what is now Phase I, 350 parking stalls, to Phase 2, approximately 1,300 stalls. 6:10-12
5. If the project had stayed as planned the property would now be developed and be positioned to take advantage of the increasing occupancy levels in the market. 6:12-13
6. When the development process began the discovery of the deep environmental concerns with the property, which were not previously disclosed before Enarson completed the negotiations for the lease, significantly curtailed the purpose of the lease because of the unusable areas. 5:13-16
7. Plaintiff disclosed the findings that there was no way to open Phase 2 of the parking development and also disclosed the enormous amount of money the

-3-

PLAINTIFF'S OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

Authority was paying for the lease. 6:16-18

8.  The plaintiff believed that these acts by the Authority were unlawful and in violation of California Public Utilities Code section 170056(a)(1)(B). 6:18-20

9.  Further, the plaintiff's disclosure of the unlawful acts occurred at committee meetings closed to the public, at management and staff meetings closed to the public. 6:20-22

10. Plaintiff asked the Authority members, including Enarson, "Why are we paying all this money? Why are we paying the rent?" 6:22-23

11. Enarson replied, "We're obligated to pay the rent." 6:23-24

12. Plaintiff stated that "We can use a little bit, 351 parking stalls, yet we're paying $3 million and we can't use any of the rest. We're on the hook for $30 million. We should only pay a pro rata amount." 6:24-26

13. When the Teledyne Ryan transition team, of which the plaintiff was a member, re-briefed the Vice Presidents, at a second meeting, the members and officers were in awe and asked, "Are you sure it's $30 million? Are you kidding me?" 6:28-7:1

14. Enarson was agitated and plaintiff received reports Enarson was angry. 7:1-2

15. The plaintiff disclosed and opposed the misuse and waste of the unusable land around the Teledyne Ryan property at Capitol Improvement meetings, at weekly Operations meetings, at Directors meetings and other times that the acts violated the California Public Utilities Code section 170056(a)(1)(B). 27:19-23

"DOUBLE-BILLING OF EXPENSES ON THE LINDBERGH PARKING (LPI) CONTRACT"
[Defendants demurrer 1:28]

1.  In January 2004 Lindbergh Parking (LPI) was awarded a new five (5) year service agreement for the management of the airport's employee and public parking lots. 7:3-4

2.  The total operating budget is approximately $8 million. 7:6-7

3.  The contract commenced on February 1, 2004. There were immediate disagreements with the operator because of contractual requirements. 7:8-10

4.  As a key component of the shuttle service, the operator was to provide new vehicles at the beginning of the agreement and change them over every 2 1/2 years. The vehicles did not arrive until four months later. 7:10-12

5.  During these four months, the operator was able to make a substantial amount of profit because they did not have to make monthly lease payments for the vehicles since they had already been paid off. 7:12-14

6.  The average lease of a vehicle was $1,650 per month and amounted to approximately $18,150.00 per month in extra profit for the operator. 7:16-17

7.  Their contact provided for an hourly reimbursable for operating hours plus fuel expense. No vehicle lease meant more profit. 7:17-18

8.  During the Request for Proposal process LPI had indicated they could operate the long term parking lot . . . for approximately $1.3 million annually. 7:20-22

9.  As the operating numbers began to appear the actual expenses were projected at $1.7 million annually, higher than the previous operator. 7:22-23

10. Expense projections for the other Authority parking properties projected similar increases. It was clear that LPI purposely submitted unattainable expense numbers in order to bolster their proposal. 7:23-25

11. The plaintiff had reasonable cause to believe he was disclosing unlawful violations of both the Authority's Contract Code and the California Code of Contracts section 100. 7:26-27

12. Plaintiff made it clear to Grey [the president of LPI] that he wanted to see the Liability and Workers Compensation coverage for the parking service competitively bid for renewal. 8:1-4

13. On the day before the existing coverage was set to expire Grey presented plaintiff

-4-

PLAINTIFF'S OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

30-366

with a premium scale which far exceeded expense projections.  8:4-5

14. Plaintiff met with Grey and stressed to him that he needed to go through in detail all of the operating expenses and analyze each of the employee job positions, including Grey's.  8:5-7

15. The process determined that most, if not all, of the duties claimed by Grey were actually performed by others.  8:9-10

16. Plaintiff informed Grey that he would give him three months, until the end of summer, to show his job duties that would justify the pay and if not he would have to go.  8:12-14

17. Subsequently, Grey's management skills resulted in his expenses being out of control, he failed to hire proper personnel, and he could not properly bid items.  8:14-15

18. The plaintiff's disclosure of the Authority's failure to follow the California Code of Contracts, section 100 were protected disclosures that the plaintiff had reasonable cause to believe were unlawful, and also were in violation of the Authority's Contract Code.  8:17-19

19. The plaintiff worked under the requirements of both of these laws in his position as Director, and expected the Authority to comply with each and every one of the Code requirements and regulations.  8:19-22

20. Plaintiff then discovered that LPI was double billing the Authority for Workers Compensation Insurance.  8:23-23

21. He had noted that the premiums were running twice the amount of the previous year and were being billed to a different expense category.  8:24-25

22. As a result plaintiff posted a credit of approximately $150,000.00 against LPI's monthly request for reimbursement.  8:25-26

23. Plaintiff had communicated throughout the process and disclosed LPI's wrongdoing and financial misuse issues with his direct supervisor, the Vice President of Airport Operations.  8:27-28

24. The Vice President asked plaintiff to work out the issues with Grey because he was a Minority-Owned Business and the Authority needed the relationship in order to comply with FAA regulations governing minority participation.  8:1-2

25. Plaintiff had disclosed computational or other errors in LPI's bid submission; the unsatisfactory performance of the contract; the failure of LPI to submit insurance documents acceptable to the Authority; Grey's unjustified refusal to warrant his performance and other offenses and actions that indicated a lack of business integrity by LPI.  9:1-7

26. Plaintiff believed the disclosures he made pursuant to the contract contained violations of the Ethics Code and also of rules and regulations of law.  9:7-8

27. The plaintiff conducted numerous disclosure meetings with the Vice President to whom he reported regarding the failure of LPI to meet the expenses and conditions that the company had used to bid on the parking operations contract in violation of California Code of Contracts section 1100, section 100.

## II

## POINTS AND AUTHORITIES

To state cause of action under California Labor Code Section 1102.5 requires that (1) the plaintiff establish a prima facie case of retaliation, (2) the defendant provide a legitimate, nonretaliatory explanation for its acts, and (3) the plaintiff show this explanation is merely a

-5-

1  pretext for the retaliation.  The statute covers public sector employees.  The first question is

2  whether the employee disclosed activities covered under the Act.  Section 1102.5 describes the

3  covered disclosure as the reporting of "a violation of state or federal statute, or a violation or

4  noncompliance with a state or federal rule or regulation."  (California Labor Code Section 1102.5

5  (a)- ( C  )).  This broad category of employer misconduct covers a multitude of violations and

6  noncompliance that qualify as a protected disclosures.  When making the disclosures that are the

7  subject of this Complaint, the plaintiff Jose Hernandez had specific statutes and regulations in

8  mind when he made the disclosures that he believed violated laws.

9          California Labor Code Section 1102.5 only requires that the plaintiff have reasonable

10  cause to believe there was a violation or noncompliance by the Airport Authority.  (The

11  "Authority") Specifically, Labor Code Section 1102.4(b) provides:

12          "An employer may not retaliate against an employer for disclosing information

13          to a government or law enforcement agency, where the employee has *reasonable*

14          *cause* to believe that the information discloses a violation of state and federal

15          statute, or a violation or noncompliance with a state or federal regulation."

16          [California Labor Code Section 1102.5(b)]

17          Whether or not an employee has "reasonable cause" to believe the disclosure was a

18  protected disclosure is a question for the trier of fact.  *(Green v.  Ralee Engineering* (1998) 19

19  Cal.4th 66).  In *Green* the plaintiff was not required to prove an actual violation as long as he

20  reported his "reasonably based suspicions" of the illegal activity.  The plaintiff, Jose Hernandez,

21  was the Director of Landside Operations for the Authority.  Throughout his experience as a

22  Director Hernandez disclosed numerous activities that he believed were violations contained in

23  the Authority's governing statutes.  The Authority is a public entity created by state law,

24  California Public Utilities Code sections 170000 - 170084.  As a Director, the plaintiff was

25  intimately familiar with these statutes and their enabling legislation.  Hernandez knew the

26  content of these laws and regulations and he referenced them constantly in his work.  The

27  plaintiff reasonably believed that the Authority's activities violated the statutes and the

28  regulations.

-6-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE.......

1  While Section 1102.5 requires an employee make a disclosure to a specific entity, this

2  plaintiff works for a "government agency". Public sector employees may satisfy this requirement

3  simply by complaining to their supervisor. Hernandez satisfies this requirement by his

4  complaints to his supervisor, the Vice President of Operations Ted Sexton. Hernandez also

5  voiced his complaints in numerous private meetings, including committee members and

6  management meetings. In this respect, Section 1102.5 provides:

7  "A report made by an employee of a government agency to his or her employer is a
   disclosure of information to a government or law enforcement agency pursuant to

8  subdivisions (a) and (b)." [California Labor Code Section 1102.5(e)]

9  Employees who do not report illegal activities, but refuse to participate in them are also

10 protected by Section 1102.5. (See Cal. Labor Code Section 1102.5(e). This section makes a

11 refusal and retaliation for that refusal actionable. While Hernandez did not refuse to participate

12 in an unlawful act, he can show covered disclosures that protect him from suffering the adverse

13 employment action that the Authority took against him for his reports of the illegal conduct.

14 The complaint details that Hernandez suffered adverse employment action following his

15 disclosures that resulted in the Authority singling him out and "investigating" him for

16 accusations that the Authority refused to reveal to him. The plaintiff was terminated without any

17 opportunity to refute any allegations. He suffered employment actions that materially affected

18 his employment in retaliation for voicing his complaints and opposition under the Authority's

19 governing statutes, (*Patten v. Grant Joint Union High School District* (2005) 134 Cal.App.4th

20 1378) The adverse employment action for Labor Code whistleblowing retaliation purposes

21 requires that, "the adverse action materially affect the terms and conditions of employment; the

22 test encompasses not only ultimate employment decisions, but also the entire spectrum of

23 employment actions that are reasonably likely to adversely and materially affect an employee's

24 job performance or opportunity for advancement in his or her career." (*Id.* At 121)

25 Hernandez can demonstrate that the Authority knew about the disclosures and he

26 documents that knowledge in the Complaint. The burden will then shift to the Authority to show

27 *by clear and convincing evidence* that the Authority would have occurred for legitimate,

28 independent reasons outside of the disclosures. Hernandez will be able to prevail because he can

-7-

PLAINTIFF'S OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

30-369

1  show that the Authority investigated him for allegations that pale compared to the routine

2  violations and gross abuse of the Authority's own policies and codes that the CEO Bowens, her

3  Vice Presidents, and General Counsel all engaged in and directed other employees to engage in

4  as well. At the very least nothing the plaintiff did during his employment would call for adverse

5  action as severe as termination if he had not been a whistleblower. Whether or not there is a

6  causal link between the adverse action and the disclosures is a fact specific inquiry that will be

7  evidenced as this case proceeds to trial.

8         It is a separate violation of California Labor Codes section 1102.5(a) (even where an

9  employer took no adverse employment action against an employee) for an employer to "make,

10  adopt or enforce any rule, regulation, or policy preventing an employee from disclosing

11  information to a government or law enforcement agency." Hernandez made repeated attempts to

12  report unlawful acts by Bowens, her Vice Presidents and General Counsel to the Authority's

13  investigators and was prevented from doing so. This means that an employee may file a claim

14  even where there has been no disclosure or adverse employment action. The mere existence of

15  the rule that he cannot disclose information to the investigators about unlawful conduct violates

16  the statute.

17                                          III.

18                       PLAINTIFF'S CLAIM FOR RETALIATION

19  A. PROTECTED DISCLOSURES

20         The Plaintiff's Complaint is replete with factual allegations that show the disclosures that

21  he believed were unlawful violations of numerous activities by the Authority. Hernandez

22  complained to his supervisor on a daily basis about the unlawful activity the Authority was

23  engaged in, and he complained in private meetings both in committee meetings he was required to

24  attend, and in management meetings and staff meetings.

25         Time after time the plaintiff voiced his opposition to the unlawful acts that he believed

26  were violations of the governing statutes of the Authority, and finally with the last project he

27  oversaw, he complained about the violations of the San Diego County Regional Airport

28  Authority's Code of Contracting that is codified in the state's Code of Contracts.

-8-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

1     The plaintiff disclosed each and every one of his complaints about the Authority's acts that

2 gave him reasonable cause to believe that the Authority violated statutes and failed to comply with

3 statutes of the California Public Utilities Code and the California Contracts Code. These

4 disclosures were made exclusively to members of the Authority as he learned of them while

5 performing his job as a Director. None of the information of which he complained was made

6 public information by the Authority prior to the plaintiff's disclosure of it to the Authority. The

7 information learned and disclosed by the Plaintiff was accumulated through his direct

8 involvement in the production of the development plans for each of the four projects to which he

9 voiced his serious opposition because he believed the Authority was engaging in unlawful acts.

10 As a Director for the Authority and having direct oversight for each of the four properties that are

11 the subject of his disclosures, nothing happened on any of those properties without his knowledge

12 of it. From project development to environmental assessment, to cash flow analysis, the Plaintiff

13 was involved in every step of the operations, and all findings he disclosed were made prior to any

14 public dissemination of the information.

15     During the negotiations of the General Dynamics site the Plaintiff produced the revenue

16 and expense analysis for the property with historical, actual, and projected revenue streams: along

17 with possible short-term development options. The same was done by him with the acquisition of

18 the Teledyne Ryan property. With regard to the Lpi contract, the Plaintiff had direct oversight and

19 approval of the monthly profit and loss statements for the parking operations. And finally, with

20 regard to the improvements to the Southwest Airlines restroom facilities, the Plaintiff had an

21 overarching responsibility to the traveling passengers to ensure public safety and health standards

22 were met.

23     The Plaintiff disclosed to members of the Authority that the refusal to annex space needed

24 to enlarge the women's restroom was in violation of the ADA. The Authority's failure to follow

25 an ADA regulation qualifies as a protected disclosure. The Plaintiff had a sound reasonable cause

26 to believe he was reporting an unlawful.

27     The Plaintiff disclosed to members of the Authority that the terms of the General

28 Dynamics lease were improperly negotiated by the Authority and that the lease payments were too

-9-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

1  expensive and out of line. The governing statutes of the California Public Utilities Code section

2  170056(f) requires that:

3     " . . .[t]he port shall agree to lease for a period of 66 years, commencing on January
       1, 2003, to the authority parcels 1, 2, and 3 of the property originally leased to General
4      Dynamics . . . consisting of approximately 89.75 acres west of the Pacific Highway . . .
       subject to the following terms:

5

6     (1) The rent shall be paid monthly in arrears at the rate of four million seven hundred
       thousand dollars ($4,700,000) for calendar year 2003, six million seven hundred
7      thousand dollars ($6,700,000) for calendar year 2004, and eight million seven hundred
       thousand dollars ($8,700.000) for calendar year 2005.  Thereafter the annual rent shall
8      be level, for the balance of the term, *based on the fair market value of the property as
       of January 1, 2006, and a market rate of return on that date.*

9     (2) The authority shall lease to the port the *same fair market value per square foot* a
       total of not to exceed 250 parking spaces . . .The parties shall first meet and confer to
10     determine by appraisal and negotiation, *the fair market value rent.*  If the authority and
       port do not reach agreement within 60 days after commencement of meetings for that
11     purpose, either party may submit the matter to binding arbitration in San Diego in
       accordance with the Commercial Arbitration Rules of the American Arbitration
12     Association.

13     (3) All other terms of the ground lease **shall be in accordance with reasonable
       commercial practice in the San Diego area for long-term real property ground
14     leases."**

15
   The Plaintiff's disclosure that the Authority was failing to follow the requirements of the
16
   California Public Utilities Code sections, of which all managing members of the Authority were
17
   presumed to be familiar with as the statutory scheme for its very existence, qualifies as protected
18
   disclosures.  The Plaintiff had more than a reasonable belief that he was reporting unlawful acts:
19
   he was certain of it.
20
        The Plaintiff also disclosed to members of the Authority that the terms of the Teledyne
21
   Ryan lease were improperly negotiated by the Authority and the failure of the Authority to
22
   properly inspect and analyze the contamination of the property resulted in an increase of monetary
23
   expenses by the Authority from $10 to $30 million dollars *after the lease was signed* to remediate
24
   the environmental contaminated and the unexpected severe limitation of the use of the property.
25
   California Public Utilities Code section 170056(a)(1)(B) specifies that the property subleased by
26
   the port from Teledyne Ryan Aeronautical shall not be transferred and shall remain under the
27
   ownership and control of the port.  The Authority then leased 46.77 acres of that property to
28

-10-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

1  develop parking spaces to contribute revenue to the Authority.  Because of the contamination the

2  restricted development would net the Authority only $500,000.00.  The Plaintiff adamantly

3  opposed paying the grossly overcharged rent for the land the Authority could not use, and

4  suggested pro-rating the rent for the useable land.  Once again, the terms of the ground lease was

5  not in accordance with reasonable commercial practice in the San Diego area for long-term real

6  property ground leases, as required by statute.  Once again, the Authority did not meet and confer

7  on the fair market value rent by submitting the matter to arbitration.  The Authority did no

8  environmental appraisal before signing the lease and should have sought to arbitrate the fair

9  market value rent after discovering the true cost of the remediation of the contamination.  The

10  Plaintiff's disclosures of the unlawful acts qualify as protected disclosures.

11       The Plaintiff then disclosed to members of the Authority that a contractor, Lindbergh

12  Parking, Inc. [LPI] had submitted unattainable expense numbers in their contract bid to falsely

13  bolster their bid proposal.  The Plaintiff also disclosed that LPI was double billing the Authority

14  for Workers Compensation insurance and had failed to competitively bid for renewal of the

15  insurance.  The Plaintiff believed these acts violated provisions of both the Authority's

16  Contracting and Debarment Code, Article 5, Part 5.1, section 5.11 (a)(3)(4)(5)(6)(8) and section

17  5.18(a); and the California Public Contract Code as defined in section 1100 and in violation of

18  California Public Contract Code section 100(b).  The Plaintiff's disclosure that the Authority was

19  failing to follow the provisions of these laws and regulations qualify as protected disclosures.  The

20  Plaintiff had reasonable cause to believe he was reporting unlawful acts.

21  **B.  THERE WAS NO 'REPUBLICATION' OF THE DISCLOSURES**

22       None of the information which Plaintiff learned during the course of his employment as a

23  Director of the Authority was public information .The Plaintiff disclosed each and every one of

24  his complaints about the Authority's acts that gave him reasonable cause to believe that the

25  Authority violated statutes and regulations and failed to comply with statutes and regulations only

26  to members of the Authority as he learned of them.  None of the acts of which the Plaintiff

27  complained was made public information by the Authority prior to the Plaintiff's disclosures to

28  the Authority.  The information learned and disclosed by the Plaintiff was accumulated by the

-11-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

30-373

1   Plaintiff through his direct involvement in the production of plans for each of the four projects

2   about which he complained.  The Defendant cites no factual or legal authority for its unfounded

3   claim that any of the information disclosed by the Plaintiff was in the public arena prior to the

4   disclosures made by him.

5   **C.      THE ETHICS INVESTIGATION IS RETALIATION**

6          The "investigation"of the plaintiff by Thella Bowens, CEO/President of the Authority,

7   lands squarely under the findings of the court in *Gardenhire v. Housing Authority of the City of*

8   *Los Angeles* 85 Cal.App.4th 236, 240 wherein it is clear that an investigation as a retaliatory

9   action against an employee is an adverse act.

10         Throughout the Plaintiff's experience as a Director for the Authority it had always been

11  common practice to provide an employee full disclosure of any and all allegations to be

12  investigated.  After disclosure of the allegations, the employee was then walked through the steps

13  that would be taken in the investigation and given an option as to possible outcomes.  The

14  Plaintiff was never told  what he was being "accused" of doing; he was never afforded an

15  opportunity to refute any allegations; the parties charged with the initial investigation cannot be

16  charged as being fair and impartial (among other reasons they their fees were paid by the

17  Authority); the Authority did not follow its own investigatory policy; did not provide for a final

18  evidentiary disclosure or determination hearing by an impartial investigatory party, but by a Vice

19  President of Operations who had consistently violated the Ethics Code and policy himself; and

20  finally, the investigation concluded that any allegations of quid pro quo were unsubstantiated and

21  could never be substantiated because nothing of that nature ever occurred.  It cannot be construed

22  that the Plaintiff had ever accepted any gifts or goods as additional compensation received in

23  addition to his salary and benefits.  Plaintiff never, at any time, did anything in return for

24  something else throughout his entire employment with the Authority.

25         It has always been the practice of the Authority to follow its own progressive discipline

26  policy, including the following steps: (step 1) verbal warning; (step 2) written warning; (step 3)

27  final written warning; (step 4) notice of suspension; and (step 5) notice of intention to terminate.

28  At no point did any of the Plaintiff's actions warrant the failure to follow any of these steps.  Prior

-12-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

30-374

1  to this action, he had always received exemplary performance evaluations, numerous letters of

2  commendation and had never been the subject of disciplinary action. [Complaint paragraph 7 ]

3  On the day the Plaintiff was removed from his office he was at no time asked if the allegations

4  (whatever they were) were true, or if he even knew anything about them.  The decision to

5  "investigate" had already been made by Bowens, the CEO and a major violator of the Ethics Code

6  and policy herself, even though there were no specific allegations to investigate. [Complaint

7  paragraphs 23; 27; 40] If there had been specific allegations to investigate the investigators would

8  have presented them to the Plaintiff to get his response.  They did not present them because they

9  did not need his response.  Bowens' intent was to get rid of the Plaintiff.

10        When the protected disclosures began to be made about LPI, it hit too close to home for

11  Bowens: her best friend is the lobbyist for LPI and they are constantly seen together, lunching and

12  conversing.  .

13        The decision to investigate the Plaintiff was made by Bowens and it was an arbitrary and

14  capricious decision that was an ultra vires act that took her decision to investigate outside the

15  scope of the Authority's enabling jurisdictional statute.  Her behavior is not discretionary, whether

16  abusive or not.  Defendant's demurrer correctly asserts that "Plaintiff's complaint focuses entirely

17  on the motives of the Authority in initiating an investigation against him." [Demurrer 6:16-17]

18  The Complaint shows that the Plaintiff did not "accept free goods and services from Authority

19  vendors", did not accept "free roundtrip tickets to Hawaii," did not accept "tickets to football and

20  baseball games" and did not accept "free parking passes." Each of those contentions is untrue.

21        Further, the Plaintiff did not "resign" "after the Authority informed him of its

22  conclusions." Ted Sexton, the Authority's Vice President and a continuous violator of the

23  Authority's Ethics Code (who was also the Plaintiff's supervisor) fired the Plaintiff and instructed

24  him he could not leave the room until he signed the resignation papers.

25  **D.  LEAVE TO AMEND**

26        This Complaint contains factual allegations sufficient to give this Defendant notice as to

27  the issues of the action.  It does not contain every single fact known to the Plaintiff, but enough

28  facts so that the Defendant is fully aware that the issues are the disclosures the Plaintiff made that

-13-

PLAINTIFF'S .OPPOSITION TO DEFENDANTS DEMURRER AND/OR MOTION TO STRIKE........

Apr 30 07 04:03p      Cathryn                                619 295-4190           p.1

1  are protected under Labor Code section 1102, and that he suffered retaliation for reporting them.

2  Additionally, the Complaint contains facts that support the investigation conducted by the

3  Authority were capricious and arbitrary, and retaliatory and that none of the acts are subject to

4  immunity.  None of the allegations in the Complaint are frivolous, they are factual.  Additionally,

5  "Ordinarily, it is an abuse of discretion to sustain a general demurrer to a complaint without leave

6  to amend if there is a reasonable possibility the defect in the complaint can be cured by

7  amendment .*Smith v. County of Kern* (1993) 20 Cal.App.4th 1826, 1830 .

8                                          IV.

9                                     CONCLUSION

10        For the foregoing reasons, the Plaintiff respectfully requests that this court deny the

11  Authority's demurrer to the second amended complaint.  In the alternative, the Plaintiff

12  respectfully requests that the court deny the Authority's motion to strike allegations from the

13  complaint for the reasons stated in the accompanying response and opposition to that motion.

14  Plaintiff requests that this court require the defendant to answer the complaint forthright so that

15  there is no further delay in the prosecution of the case.

16  Dated: April 27, 2007

                            CATHRYN CHINN, Attorney for
17                          Plaintiff Jose Hernandez

18

19

20

21

22

23

24

25

26

27

28

                                          -14-

30-376

**EXHIBIT 31**

**SUPERIOR COURT OF CALIFORNIA, CITY OF SAN DIEGO**
STREET ADDRESS:  330 West Broadway
MAILING ADDRESS:  330 West Broadway
CITY AND ZIP CODE:  San Diego, CA 92101
BRANCH NAME:   Central
TELEPHONE NUMBER: (619) 685-6148

PLAINTIFF(S) / PETITIONER(S): JOSE HERNANDEZ

DEFENDANT(S) / RESPONDENT(S): S D COUNTY REGIONAL AIRPORT AUTHRTY et.al.

HERNANDEZ VS S D COUNTY REGIONAL AIRPORT AUTHRTY

| NOTICE OF RESCHEDULED HEARING | CASE NUMBER: GIC871979 |
|---|---|

Notice is given that the hearing in the above-entitled case has been rescheduled from 05/11/2007  10:00 AM    to date and time shown below.  All inquiries regarding this notice should be referred to the court listed above.

| TYPE OF HEARING | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Civil Case Management Conference | 05/11/2007 | 01:30 pm | C-75 | Richard E. L. Strauss |

Counsel: Check service list.  If you have brought a party into this case who is not included in the service list, San Diego Superior Court Local Rules, Division II, requires you to serve the party with a copy of this notice.

A case management statement must be completed by counsel for all parties or parties in pro per and timely filed with the court at least 15 days prior to the initial case management conference. (San Diego Local Rules, Division II, CRC Rule 212).

All counsel of record or parties in pro per shall appear at the Case Management Conference, be familiar with the case, and be fully prepared to participate effectively in the hearing, including discussions of ADR options.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** HERNANDEZ vs S D COUNTY REGIONAL AIRPORT AUTHRTY

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER: GIC871979 |
|---|---|

I certify that I am not a party to this cause. I certify that a true copy of the attached was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 04/27/2007.

Clerk of the Court, by: _M. Wong-Jimenez_
M. Wong-Jimenez
_____ , Deputy

SANDRA MCDONOUGH
401 B ST 10TH FLOOR
SAN DIEGO, CA 92101

CATHRYN CHINN
3990 OLD TOWN AVE STE A109
SAN DIEGO, CA 92110

31-378

**SUPERIOR COURT OF CALIFORNIA**
**SAN DIEGO COUNTY**
330 West Broadway
San Diego, CA 92101

ADDRESS SERVICE REQUESTED

236.SDCRT.S11

**SANDRA  MCDONOUGH**
**401 B ST 10TH FLOOR**
**SAN DIEGO, CA 92101**

31-379



1  FRED M. PLEVIN (SBN 126185)
   SANDRA L. MCDONOUGH (SBN 193308)
2  ALBERT R. LIMBERG (SBN 211110)
   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
3  401 B Street, Tenth Floor
   San Diego, California  92101-4232
4  Telephone: 619-237-5200
   Facsimile: 619-615-0700

5
   AMY S. GONZALEZ (SBN 181745)
6  **SAN DIEGO COUNTY REGIONAL AIRPORT
   AUTHORITY**
7  3225 N. Harbor Drive
   San Diego, CA 92138
8  Telephone:  (619) 400-2425
   Facsimile: (619) 400-2428
9

10  Attorneys for Defendant
    SAN DIEGO COUNTY REGIONAL AIRPORT
11  AUTHORITY

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                        COUNTY OF SAN DIEGO

14  JOSE HERNANDEZ,                        CASE NO. GIC 871979

15              Plaintiff,                 **REPLY BRIEF IN SUPPORT OF
                                           DEFENDANT SAN DIEGO COUNTY
16       v.                                REGIONAL AIRPORT AUTHORITY'S
                                           DEMURRER TO PLAINTIFF'S SECOND
17  SAN DIEGO COUNTY REGIONAL              AMENDED COMPLAINT AND/OR
    AIRPORT AUTHORITY, a public entity;    MOTION TO STRIKE**
18  and DOES 1 through 12, inclusive,

19              Defendants.
                                           Date:           May 11, 2007
20                                         Time:           1:30 p.m.
                                           Dept:           75
21                                         Judge:          Hon. Richard E. Strauss
                                           Complaint Filed: September 1, 2006
22                                         Trial Date:     Not Set

23                                              **EXEMPT FROM FEES
                                                 GOVT. CODE § 6103**
24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF                              CASE NO. GIC 871979
DEMURRER/MOTION TO STRIKE

**32-380**

# I. INTRODUCTION AND SUMMARY OF ALLEGATIONS

This is Hernandez' third attempt to allege a proper and sustainable complaint, but he still has not provided sufficient argument or allegations to overcome the deficiences in his Second Amended Complaint. Specifically, none of his four "disclosures" support a Labor Code section 1102.5 claim:

- Hernandez has not articulated how the Authority's General Dynamics lease violated any statute, rule or regulation when the financial terms of that lease are as dictated by the Public Utilities Code. Thus, as a matter of law, Hernandez could not have had a reasonable belief that the lease, which was authorized by law, actually violated any law;
- Hernandez has not articulated a law that he reasonably believed the Authority allegedly violated by entering into the Teledyne Ryan lease;
- Hernandez has not articulated a law that he reasonably believed the Authority allegedly violated with regard to the LPi contract either; and
- As a matter of law, the Authority increasing the restroom project expense cannot support a reasonable belief that the Authority violated the ADA or any of its implementing regulations.

In addition to the above deficiencies, the Second Amended Complaint contains numerous irrelevant and improper allegations as set forth in the Authority's notice of motion and motion to strike, which Hernandez has almost wholly ignored and failed to respond to.

For the foregoing reasons, and as more fully discussed in the Authority's supporting papers, the Authority respectfully requests that this Court sustain its demurrer without leave to amend because plaintiff has not shown after three attempts that he can state a viable cause of action. In the alternative, defendant moves to strike those allegations that are barred by the various deficiencies as detailed in the notice of motion and motion to strike the SAC.

# II. DEMURRER AND MOTION TO STRIKE STANDARDS

**A.    Hernandez Must Plead with Specificity Because the Authority is a Public Entity.**

Hernandez has not met his burden of pleading his material allegations with particularity, as the law requires when a plaintiff seeks to impose liability on a public entity. (*Lopez v. Southern*

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF DEMURRER/MOTION TO STRIKE

1

CASE NO. GIC 871979

32-381

1  *Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 795.)  As a result, the Authority's demurrer should

2  be sustained without leave to amend.

3  **B.      In the Alternative, this Court May Strike any Improper or Irrelevant Material.**

4          In the event that this Court does not sustain the Authority's demurrer, the Court has the

5  authority to strike any improper or irrelevant matter from the pleadings pursuant to California Code

6  of Civil Procedure sections 435 and 436(a).  Not surprisingly, Hernandez almost completely

7  disregarded the Authority's bases for moving to strike improper and irrelevant allegations of the

8  complaint in his opposition.  For example, paragraph 33 of the SAC, and each of its subparts,

9  contains allegations of alleged policy violations that Hernandez did not even "disclose" for purposes

10  of his Labor Code section 1102.5 claim.  (Compare SAC ¶ 33 with SAC ¶ 35.)  This irrelevant

11  matter, along with all improper and irrelevant matter detailed in the Authority's motion and motion

12  to strike, must be stricken.

13  **C.      It is Proper for this Court to Sustain the Demurrer to the Labor Code Section 1102.5**

14          **Claim.**

15          Finally, Hernandez implies that sustaining a demurrer to his Labor Code section 1102.5

16  claim is improper because "whether or not an employee has 'reasonable cause' to believe the

17  disclosure was a protected disclosure is a question for the trier of fact."  (Opposition p. 6, lines 17-

18  19.)  However, the case cited by Hernandez, *Green v. Ralee Engineering* (1998) 19 Cal.4th 66, does

19  not support Hernandez' proposition that "reasonable cause" is a question for the trier of fact.  In

20  fact, *Green* actually supports the Authority's contention that the Court may determine as a matter of

21  law whether a plaintiff could have a reasonable belief of a legal violation.  (*Id.* at p. 87.)

22  Accordingly, it is proper for this Court to resolve the "reasonable cause" issue now.

23      **III.  HERNANDEZ FAILED TO PLEAD SUFFICIENT FACTS TO WITHSTAND**

24          **DEMURRER AS TO HIS LABOR CODE SECTION 1102.5 CLAIM**

25          Hernandez' SAC fails to set forth the specific facts required to plead his Labor Code section

26  1102.5 claim, and he has not provided any additional facts in his opposition to the Authority's

27  demurrer.  To establish a *prima facie* case of retaliation under Labor Code section 1102.5(b), as

28  with FEHA and Title VII, Hernandez must allege that:  (1) he engaged in a "protected activity;"

1    (2) the Authority took an adverse employment action against him; and (3) a causal link exists

2    between his protected activity and the adverse employment action.  (*Morgan v. Regents of*

3    *University of Cal.* (2000) 88 Cal.App.4th 52, 69.)  In order to allege that he engaged in a protected

4    activity, as required by the first prong of the prima facie case, Hernandez must allege that he

5    disclosed, to a government or law enforcement agency, information that he reasonably believed

6    disclosed a violation of state or federal statute, rule, or regulation.  (Lab. Code § 1102.5, subd. (b).)

7    It is not enough for Hernandez to allege mere conclusions of law to support his retaliation claims.

8    (*Ankeny v. Lockheed Missiles and Space Co.* (1979) 88 Cal.App.3d 531, 537.)

9        1.    **Alleged Violations of the Authority's Ethics Code Cannot Support a Retaliation**

10           **Claim.**

11         Hernandez did not provide any authority for his contention that a violation of the Authority's

12   internal codes or guidelines can support a Labor Code section 1102.5 claim because there is no such

13   authority.  Simply put, a Labor Code section 1102.5 claim requires a Plaintiff to disclose a violation

14   of a state or federal law, rule or regulation, and does not apply to internal guidelines.  (See Labor

15   Code § 1102.5(b).)  Accordingly, the Authority moves to strike all references to the Authority's

16   Ethics or Contract Codes violations in the SAC because those allegations cannot support a Labor

17   Code section 1102.5 cause of action as a matter of law.

18       2.    **Hernandez Could Not Have Had a Reasonable Belief That He Was Disclosing a**

19           **Violation of a State or Federal Law, Rule or Regulation.**

20         Even *assuming arguendo* that the Ethics Code falls within the definition of a federal or state

21   law under Labor Code section 1102.5, the facts as alleged do not support Hernandez' ultimate

22   conclusion that he reasonably believed that the Authority's actions violated any statutes, nor can

23   these facts reasonably be interpreted to amount to any such violation.  (See *Ankeny, supra,* 88

24   Cal.App.3d at p. 537 [complaint must be supported by more than conclusory allegations].)  Further,

25   Hernandez has the burden of pleading the specific statute that was allegedly violated, and he has

26   failed to meet this burden with regard to his disclosures.  (See *Green v. Ralee, supra,* 19 Cal.4th at

27

28

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE

3

CASE NO. GIC 871979

1    p. 83, fn. 7.)[1]

2             **a.      The General Dynamics Lease.**

3    Both parties seem to agree that the terms of the General Dynamics Lease were mandated by

4    Public Utilities Code section 170056(f).  However, the SAC actually alleges compliance with Public

5    Utilities Code section 170056(f), not a violation of that statute.  (SAC ¶ 12.)  Although Hernandez

6    alleges that the lease violated Public Utilities Code section 170056(f)(3), that subsection does not

7    focus on the dollar amount of the lease, but instead focuses on the "other terms" of the lease.

8    Hernandez has not alleged any disclosure related to terms of the lease beyond the dollar amount.

9    Since Hernandez did not disclose any violations under subsection (f)(3), and Hernandez could not

10   have had a reasonable belief that the Authority was violating the law by accepting the General

11   Dynamics monetary lease terms that were mandated by statute, the Authority moves to strike any

12   reference to the General Dynamics lease from the SAC.  In addition, the Authority's demurrer to

13   Hernandez' retaliation claim based on alleged disclosures of the General Dynamics lease should be

14   sustained without leave to amend.

15             **b.      The Teledyne Ryan Lease.**

16   Similarly, Hernandez has failed to cure the defects in his allegations with regard to the

17   Teledyne Ryan lease.  As pointed out in the moving papers, Hernandez alleges that the

18   contamination on and the cost of the Teledyne Ryan parking lot violated Public Utilities Code

19   section 170056(a)(1)(B), but this section only states that the Teledyne Ryan property shall remain

20   the property of the San Diego Unified Port District.  This code section has absolutely nothing to do

21   with environmental contamination or the negotiated price for the lease.  Hernandez tries to resurrect

22   his Teledyne Ryan disclosure by stating in his opposition that the terms of the lease were not "in

23   accordance with reasonable commercial practice . . . **as required by statute**" (Opposition 11:6,

24   emphasis added), but he does not set forth the alleged statute that was violated by the Authority's

25   acts with regard to the Teledyne Ryan parking lot lease.  Since Hernandez has not been able to

26

27   [1] As stated herein, Hernandez had four separate disclosures.  To the extent that each disclosure may support a separate
"cause of action" – the single invasion of a primary right or a separate and distinct obligation – the motion may be

28   granted on each separate ground.  (*Lillenthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1854-1855.)

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE          4          CASE NO. GIC 871979

1  identify a statute that was violated by the Teledyne Ryan parking lot lease, or that he reasonably

2  believed was violated, as required by Labor Code section 1102.5, the Authority respectfully requests

3  that this Court strike all references to the Teledyne Ryan lease and/or sustain the Authority's

4  demurrer to Hernandez' retaliation cause of action predicated on this lease.

5          **c.**     **Lindbergh Parking.**

6        Hernandez also alleges that he reasonably believed that the LPi contract violated the

7  Authority's own Contract Code and the "California Code of Contracts." (SAC ¶ 14.)  As discussed

8  above, the Authority's internal rules are not the equivalent of a state or federal statute, rule or

9  regulation, and thus cannot support a claim under Labor Code section 1102.5.  In addition, the

10 "California Code of Contracts" does not exist and thus cannot be the basis for a Labor Code section

11 1102.5 claim.  Even if Hernandez meant to refer to the Public Contract Code, his claim still fails.

12 Section 100(b) of the Public Contract Code merely states the legislature's intent in enacting the

13 code "is to ensure full compliance with competitive bidding statutes as a means of protecting the

14 public from misuse of public funds."  None of Hernandez' disclosures regarding LPi can be

15 construed as a disclosure regarding this statement of legislative intent.

16         **d.**     **The Restroom.**

17       Finally, Hernandez has failed to cure the problematic allegations regarding the restroom

18 project.  Although Hernandez added a conclusory allegation in the SAC that he had reasonable

19 cause to believe that the Authority was in violation of the ADA, the actual facts that are pled do not

20 support his conclusion.  Instead, he alleges that the restroom project became more expensive

21 because the Authority would not utilize certain space in order to expand the restrooms.  (See SAC

22 ¶ 11.) But there is no argument, or case support, for the concept that increased costs associated with

23 the restroom project can or did, violate the ADA, or even that it could have violated the ADA.

24 Thus, Hernandez could not have had a reasonable belief that any such violation occurred.

25 ////

26 ////

27 ////

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE

5

CASE NO. GIC 871979

32-385

## IV.  CONCLUSION

Since Hernandez has demonstrated an inability to cure the defects in his complaint, the Authority respectfully requests that the Court sustain its demurrer to the Second Amended Complaint without leave to amend.  In the alternative, the Authority requests that the Court strike improper allegations from the Second Amended Complaint, as further detailed in the notice of motion and motion to strike.

Dated: May 4, 2007

PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP

By: _____
FRED M. PLEVIN
SANDRA L. MCDONOUGH
ALBERT R. LIMBERG
Attorneys for Defendant
SAN DIEGO COUNTY REGIONAL
AIRPORT AUTHORITY

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY BRIEF IN SUPPORT OF
DEMURRER/MOTION TO STRIKE

6

CASE NO. GIC 871979

32-386

1 | *Hernandez v. San Diego County Regional Airport Authority*      MAY 4 '07 PM 4:09
SDSC Case No. GIC871979

2

3 | ## PROOF OF SERVICE

4 | I, the undersigned, hereby declare that I am over the age of eighteen years and not a party to this action. I am employed, or am a resident of, the County of San Diego, California, and my business address is: Paul, Plevin, Sullivan & Connaughton LLP, 401 B Street, Tenth Floor, San Diego, California 92101.

5

6 | On May 4, 2007, I caused to be served the following document(s):

7 | • **REPLY BRIEF IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY**
**REGIONAL AIRPORT AUTHORITY'S DEMURRER TO PLAINTIFF'S**
8 | **SECOND AMENDED COMPLAINT AND/OR MOTION TO STRIKE**

9 | on the interested party (ies) in this action by placing ☒ a true copy ☐ the original thereof and addressed as follows:

10

11 | Cathryn Chinn, Esq.
1901 First Avenue, Suite 400
San Diego, CA 92101
12 | Tel: 619-294-9183 / Fax: 619-295-4190
**Attorney for Plaintiff Jose Hernandez**

13

14 | ☐    (By **MAIL SERVICE**) I then sealed each envelope and, with postage thereon fully prepaid postage, I placed each for deposit with United States Postal Service, this same day, at my business address shown above, following ordinary business practices.

15

16 | ☐    (By **FACSIMILE**) I transmitted the documents by facsimile machine, pursuant to California Rules of Court, Rule 2006. The facsimile machine I used complied with Rule 2003 and no error was reported by the machine. The transmitting facsimile machine
17 | number is **619-615-0700**. The fax number of the party being served is **619-295-9529**. Pursuant to Rule 2006.

18

19 | ☒    (By **OVERNIGHT DELIVERY**) I caused to be delivered such envelope by hand to the office of the addressee. I then sealed each envelope and, with postage thereon fully prepaid, I placed each for deposit this same day, at my business address shown above,
20 | following ordinary business practices for overnight delivery.

21 | I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

22

23 | Executed May 4, 2007, at San Diego, California.

24

25 | Martha Martinez

26

27

28

PAUL PLEVIN
SULLIVAN &
CONNAUGHTON LLP

PROOF OF SERVICE                          1

**EXHIBIT 33**

**SUPERIOR COURT OF CALIFORNIA,
COUNTY OF SAN DIEGO
HALL OF JUSTICE**

**TENTATIVE RULINGS - May    10, 2007**

EVENT DATE: 05/11/2007                 EVENT TIME: 01:30:00 PM             DEPT.: C-75
JUDICIAL OFFICER:

CASE NO.:   GIC871979
CASE TITLE: HERNANDEZ VS S D COUNTY REGIONAL AIRPORT AUTHRTY

CASE CATEGORY:    Civil - Unlimited                   CASE TYPE:  Wrongful Termination

EVENT TYPE:  Demurrer / Motion to Strike
CAUSAL DOCUMENT/DATE FILED:   Demurrer, 04/19/2007

---

The demurrer of Defendant San Diego County Regional Airport Authority to the first and only cause of action asserted in Plaintiff Jose Hernandez's Second Amended Complaint is <u>overruled</u>. The Court finds that Plaintiff has adequately pled a prima facie case for retaliation under Labor Code § 1102.5 for purposes of the pleading stage of this matter.

Parties wishing to argue before the Court must appear on the date and at the time noticed for the hearing. If none of the parties appears on the date and at the time noticed for the hearing, the tentative ruling shall be adopted as the final ruling of the Court.

33-388

F I L E D
Clerk of the Superior Court

MAY 11 2007

By: J. JOHNSON, Deputy

THE SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF SAN DIEGO

JOSE HERNANDEZ,

                   Plaintiff,

     vs.

SAN DIEGO COUNTY REGIONAL
AIRPORT AUTHORITY, a public entity; and
DOES 1 through 12, inclusive,

              Defendants.

Case No:  GIC871979

DISCLOSURE BY JUDGE RICHARD E. L.
STRAUSS WITH REGARD TO THE
PARTICIPATION OF THE LAW FIRM OF
LUCE, FORWARD, HAMILTON, &
SCRIPPS IN THIS CASE

       Pursuant to Canon 3 of the Code of Judicial Ethics Judge Richard E. L. Strauss makes the

following disclosure:

       I have had some prior contact with the law firm Luce, Forward, Hamilton & Scripps

(hereinafter "the firm") that I find warrants disclosure pursuant to Canon 3.  Robin Durham, a

former attorney with the firm who is now retired, assisted my family with estate planning,

including finalizing the estate of my father-in-law when he died and my mother when she died.

There are still small loose ends to be tied up in my mother's estate but nothing of any

significance.  Mr. Durham also set up wills and trusts for myself, my wife, and my two sisters.

My mother-in-law recently passed away and a probate attorney from the firm will handle her

estate.  Similarly, because all the estate planning was done by the firm it is likely that a probate

1

Disclosure by Judge Richard E. L. Strauss

1   attorney for the firm will handle the estates of myself, my wife, and my sisters should the need

2   arise.

3          In addition to the above, Mark Hagerty, an attorney with the firm, assisted my mother-in-

4   law with some soil subsidence issues she had in approximately 2004.  It is my understanding the

5   matter is not yet resolved but I am not involved in that dispute.

6          I have no relationship to the firm beyond the above.  I have no bias or prejudice for or

7   against any party in this case and can decide all issues brought before me fairly and impartially.

8

9   Date:    MAY 1 1 2007              RICHARD E.L. STRAUSS

10                                     Hon. Richard E. L. Strauss
                                       Judge of the Superior Court

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

Disclosure by Judge Richard E. L. Strauss

34-390

**EXHIBIT  35**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

| | |
|---|---|
| STREET ADDRESS: | 330 West Broadway |
| MAILING ADDRESS: | 330 West Broadway |
| CITY AND ZIP CODE: | San Diego, CA 92101 |
| BRANCH NAME: | Central |
| TELEPHONE NUMBER: | (619) 685-6148 |

PLAINTIFF(S) / PETITIONER(S):     JOSE HERNANDEZ

DEFENDANT(S) / RESPONDENT(S):     S D COUNTY REGIONAL AIRPORT AUTHORITY et.al.

HERNANDEZ VS S D COUNTY REGIONAL AIRPORT AUTHRTY

| NOTICE OF HEARING | CASE NUMBER:<br>GIC871979 |
|---|---|

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above.  All inquiries regarding this notice should be referred to the court listed above.

| TYPE OF HEARING | DATE | TIME | DEPT | JUDGE |
|---|---|---|---|---|
| Trial Readiness Conference (Civil) | 12/21/2007 | 09:00 am | C-75 | Richard E. L. Strauss |

Refer to San Diego Superior Court Local Rules, Division II regarding posting of jury fees.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** HERNANDEZ vs S D COUNTY REGIONAL AIRPORT AUTHRTY

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER: GIC871979 |
| --- | --- |

I certify that I am not a party to this cause. I certify that a true copy of the attached was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 05/22/2007.

Clerk of the Court, by: _M. Wong-Jimenez_ _____ , Deputy

SANDRA MCDONOUGH
401 B ST 10TH FLOOR
SAN DIEGO, CA 92101

CATHRYN CHINN
1901 FIRST AVE., STE 400
SAN DIEGO, CA 92101

35-392

SUPERIOR COURT OF CALIFORNIA
SAN DIEGO COUNTY
330 West Broadway
San Diego, CA 92101

ADDRESS SERVICE REQUESTED

38.SDCRT.S11
SANDRA  MCDONOUGH
401 B ST 10TH FLOOR
SAN  DIEGO, CA 92101

35-393

**EXHIBIT 36**

**SUPERIOR COURT OF CALIFORNIA, COUN . . OF SAN DIEGO**
STREET ADDRESS:      330 West Broadway
MAILING ADDRESS:     330 West Broadway
CITY AND ZIP CODE:   San Diego, CA 92101
BRANCH NAME:         Central
TELEPHONE NUMBER:    (619) 685-6146

PLAINTIFF(S) / PETITIONER(S):    JOSE HERNANDEZ

DEFENDANT(S) / RESPONDENT(S):    S D COUNTY REGIONAL AIRPORT AUTHORITY et.al.

HERNANDEZ VS S D COUNTY REGIONAL AIRPORT AUTHRTY

| **NOTICE OF HEARING** | CASE NUMBER:<br>GIC871979 |
|---|---|

Notice is given that the above-entitled case has been set for the reason listed below and at the location shown above.  All inquiries regarding this notice should be referred to the court listed above.

| **TYPE OF HEARING** | **DATE** | **TIME** | **DEPT** | **JUDGE** |
|---|---|---|---|---|
| Civil Jury Trial | 01/04/2008 | 09:00 am | C-75 | Richard E. L. Strauss |

Refer to Rule 2.12 regarding posting of jury fees.

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

Central
330 West Broadway
San Diego, CA 92101

**SHORT TITLE:** HERNANDEZ vs S D COUNTY REGIONAL AIRPORT AUTHRTY

| CLERK'S CERTIFICATE OF SERVICE BY MAIL | CASE NUMBER:<br>GIC871979 |
| --- | --- |

I certify that I am not a party to this cause. I certify that a true copy of the attached was mailed following standard court practices in a sealed envelope with postage fully prepaid, addressed as indicated below. The mailing and this certification occurred at San Diego, California, on 05/22/2007.

Clerk of the Court, by: _M. Wong-Jimenez_____, Deputy
M. Wong-Jimenez

SANDRA MCDONOUGH
401 B ST 10TH FLOOR
SAN DIEGO, CA 92101

CATHRYN CHINN
1901 FIRST AVE., STE 400
SAN DIEGO, CA 92101

CLERK'S CERTIFICATE OF SERVICE BY MAIL                    Page: 2

36-395

SUPERIOR COURT OF CALIFORNIA
SAN DIEGO COUNTY
330 West Broadway
San Diego, CA 92101

**ADDRESS SERVICE REQUESTED**

30.SDCRT.S11

SANDRA  MCDONOUGH
401 B ST 10TH FLOOR
SAN  DIEGO, CA 92101

**36-396**

CIVIL BUSINESS OFFICE 12
CENTRAL DIVISION

2007 MAY 29 P 3: 33

CLERK-SUPERIOR COURT
SAN DIEGO COUNTY, CA

1   FRED M. PLEVIN (SBN 126185)
    SANDRA L. MCDONOUGH (SBN 193308)
2   ALBERT R. LIMBERG (SBN 211110)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3   401 B Street, Tenth Floor
    San Diego, California 92101-4232
4   Telephone: 619-237-5200
    Facsimile: 619-615-0700
5
    AMY S. GONZALEZ (SBN 181745)
6   **SAN DIEGO COUNTY REGIONAL AIRPORT
    AUTHORITY**
7   3225 N. Harbor Drive
    San Diego, CA 92138
8   Telephone: (619) 400-2425
    Facsimile: (619) 400-2428
9
10  Attorneys for Defendant
    SAN DIEGO COUNTY REGIONAL AIRPORT
11  AUTHORITY
12
13              SUPERIOR COURT OF THE STATE OF CALIFORNIA
14                      COUNTY OF SAN DIEGO
15  JOSE HERNANDEZ,                    CASE NO. GIC871979
16          Plaintiff,                 **DEFENDANT SAN DIEGO COUNTY
                                       REGIONAL AIRPORT AUTHORITY'S
17      v.                             ANSWER TO PLAINTIFF'S SECOND
                                       AMENDED COMPLAINT**
18  SAN DIEGO COUNTY REGIONAL
    AIRPORT AUTHORITY, a public entity;
19  and DOES 1 through 12, inclusive,
                                       Dept:             75
20          Defendants.                Judge:            Hon. Richard E. Strauss
                                       Complaint Filed:  September 1, 2006
21                                     Trial Date:       January 4, 2008
22                                     **EXEMPT FROM FEES
                                       GOVT. CODE § 6103**
23
24      Defendant San Diego County REGIONAL AIRPORT AUTHORITY ("defendant")
25  answers plaintiff Jose Hernandez' ("plaintiff") unverified second amended complaint as follows:
26                          **GENERAL DENIAL**
27      Pursuant to California Code of Civil Procedure section 431.30, defendant denies generally
28  each and every allegation of plaintiff's unverified complaint.

PAUL, PLEVIN,     ANSWER TO PLAINTIFF'S SECOND AMENDED          1
SULLIVAN &        COMPLAINT
CONNAUGHTON LLP

## AFFIRMATIVE DEFENSES

For a further and separate answer to the allegations contained in plaintiff's complaint, defendant submits the following affirmative defenses.

### FIRST AFFIRMATIVE DEFENSE

The second amended complaint fails to state facts sufficient to constitute a cause of action against defendant.

### SECOND AFFIRMATIVE DEFENSE

Plaintiff's second amended complaint is barred, in whole or in part, by the applicable statute of limitations, including, but not limited to, California Code of Civil Procedure sections 335.1, 338, 339, and/or 340.

### THIRD AFFIRMATIVE DEFENSE

Plaintiff has failed, refused, or neglected to mitigate or avoid the damages complained of in his second amended complaint and is thereby barred, in whole or in part, from recovering monetary damages from this answering defendant.

### FOURTH AFFIRMATIVE DEFENSE

Each of plaintiff's claims is barred because the actions taken by defendant, if any, were justified and/or privileged, and consistent with all applicable obligations and duties of defendant.

### FIFTH AFFIRMATIVE DEFENSE

Each of plaintiff's claims is barred by governmental immunities found in Government Code section 815, *et seq.* including section 821.6, for the acts alleged in the second amended complaint.

### SIXTH AFFIRMATIVE DEFENSE

Plaintiff's second amended complaint is barred because the alleged conduct of which Plaintiff complains, if committed, was made in good faith, honestly, not maliciously, and in the exercise of business judgment and for business reasons.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff's second cause of action is barred by the doctrine of estoppel.

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

ANSWER TO PLAINTIFF'S SECOND AMENDED COMPLAINT

2

37-398

1    **EIGHTH AFFIRMATIVE DEFENSE**

2    Plaintiff's second cause of action is barred by the doctrine of unclean hands.

3    **NINTH AFFIRMATIVE DEFENSE**

4    Defendant denies that plaintiff was retaliated against or engaged in a protected activity,

5    but if Plaintiff satisfies his burden under Labor Code section 1102.5, defendant maintains under

6    Labor Code section 1102.6 that the alleged prohibited action would have occurred for legitimate,

7    independent reasons even if plaintiff had not engaged in activities allegedly protected by Labor

8    Code section 1102.5.

9    **TENTH AFFIRMATIVE DEFENSE**

10    Plaintiff's claims are barred because he failed to file a timely claim as required by

11    Government Code sections 900, et seq. and 910, et seq.

12    **ELEVENTH AFFIRMATIVE DEFENSE**

13    Plaintiff has by his actions waived the right, if any, to seek the relief requested in his

14    complaint.

15    WHEREFORE, defendant prays that:

16    1.    Plaintiff be denied relief by way of his second amended complaint;

17    2.    Plaintiff's second amended complaint be dismissed;

18    3.    Defendant be dismissed with its cost of suit and attorneys' fees; and

19    4.    For such other and further relief as the Court deems proper.

20

21    Dated:  May 29, 2007                      PAUL, PLEVIN, SULLIVAN &
                                                CONNAUGHTON LLP
22

23                                              By _Sandra L. McDonough_
24                                                 FRED M. PLEVIN
                                                   SANDRA L. MCDONOUGH
25                                                 ALBERT R. LIMBERG
                                                   Attorneys for Defendant
26                                                 SAN DIEGO COUNTY REGIONAL
                                                   AIRPORT AUTHORITY
27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP        ANSWER TO PLAINTIFF'S SECOND AMENDED              3
                       COMPLAINT

37-399

1   *Hernandez v. San Diego County Regional Airport Authority*
    SDSC Case No. GIC871979

BUSINESS OFFICE 12
CENTRAL DIVISION

2001 MAY 29  P 3: 33

SUPERIOR COURT
SAN DIEGO COUNTY, CA

2

3                          **PROOF OF SERVICE**

4        I, the undersigned, hereby declare that I am over the age of eighteen years and not a party
    to this action. I am employed, or am a resident of, the County of San Diego, California, and my
    business address is: Paul, Plevin, Sullivan & Connaughton LLP, 401 B Street, Tenth Floor, San
5   Diego, California 92101.

6        On May 29, 2007, I caused to be served the following document(s):

7        •    **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT
              AUTHORITY'S ANSWER TO PLAINTIFF'S SECOND AMENDED
8             COMPLAINT**

9   on the interested party (ies) in this action by placing ☑ a true copy ☐ the original thereof and
    addressed as follows:
10
                              Cathryn Chinn, Esq.
11                         1901 First Avenue, Suite 400
                              San Diego, CA 92101
12                       Tel: 619-294-9183 / Fax: 619-295-4190
                         **Attorney for Plaintiff Jose Hernandez**
13
    ☑    (By **MAIL SERVICE**) I then sealed each envelope and, with postage thereon fully
14       prepaid postage, I placed each for deposit with United States Postal Service, this same
         day, at my business address shown above, following ordinary business practices.
15
    ☐    (By **FACSIMILE**) I transmitted the documents by facsimile machine, pursuant to
16       California Rules of Court, Rule 2006. The facsimile machine I used complied with Rule
         2003 and no error was reported by the machine. The transmitting facsimile machine
17       number is **619-615-0700**. The fax number of the party being served is **619-295-9529**.
         Pursuant to Rule 2006.
18
    ☐    (By **OVERNIGHT DELIVERY**) I caused to be delivered such envelope by hand to the
19       office of the addressee. I then sealed each envelope and, with postage thereon fully
         prepaid, I placed each for deposit this same day, at my business address shown above,
20       following ordinary business practices for overnight delivery.

21       I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.
22
    Executed May 29, 2007, at San Diego, California.
23

24

25                                              Martha Martinez

26

27

28

**EXHIBIT  38**

1  FRED M. PLEVIN (SBN 126185)
2  SANDRA L. MCDONOUGH (SBN 193308)
   ALBERT R. LIMBERG (SBN 211110)
3  **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
   401 B Street, Tenth Floor
4  San Diego, California 92101-4232
   Telephone: 619-237-5200
   Facsimile: 619-615-0700
5
6  AMY S. GONZALEZ (SBN 181745)
   **SAN DIEGO COUNTY REGIONAL AIRPORT**
   **AUTHORITY**
7  3225 N. Harbor Drive
8  San Diego, CA 92138
   Telephone: (619) 400-2425
   Facsimile: (619) 400-2428
9
10 Attorneys for Defendant
   SAN DIEGO COUNTY REGIONAL AIRPORT
11 AUTHORITY

FILED
CIVIL BUSINESS OFFICE 13
CENTRAL DIVISION

2007 AUG 31 ᴾ 4: 31

CLERK SUPERIOR COURT
SAN DIEGO COUNTY, CA

12

13           SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                      COUNTY OF SAN DIEGO

15 JOSE HERNANDEZ,                        CASE NO. GIC871979

16         Plaintiff,                     **DEFENDANT SAN DIEGO COUNTY**
                                          **REGIONAL AIRPORT AUTHORITY'S**
17      v.                                **NOTICE OF MOTION AND MOTION FOR**
                                          **SUMMARY JUDGMENT OR, IN THE**
18 SAN DIEGO COUNTY REGIONAL              **ALTERNATIVE, SUMMARY**
   AIRPORT AUTHORITY, a public entity;    **ADJUDICATION**
19 and DOES 1 through 12, inclusive,

20         Defendants.                    Date:           November 16, 2007
                                          Time:           1:30 p.m.
21                                        Dept:           75
                                          Judge:          Hon. Richard E. Strauss
22                                        Complaint Filed: September 1, 2006
                                          Trial Date:     January 4, 2008
23
24                                              **EXEMPT FROM FEES**
                                                **GOVT. CODE § 6103**
25

26      TO PLAINTIFF JOSE HERNANDEZ AND HIS ATTORNEYS OF RECORD:

27      PLEASE TAKE NOTICE that on November 16, 2007, at 1:30 p.m. in Department 75 of

28 the above-entitled Court, the Honorable Richard E. Strauss presiding, defendant San Diego

PAUL, PLEVIN,          NOTICE OF MOTION FOR SUMMARY              1
SULLIVAN &             JUDGMENT
CONNAUGHTON LLP

1  County Regional Airport Authority ("defendant" or the "Authority") will move the Court for an
2  order entering summary judgment in defendant's favor pursuant to the provisions of Section 437c
3  of the California Code of Civil Procedure. This motion will be made on the basis that no triable
4  issue of material fact exists as to any of plaintiff Jose Hernandez' ("plaintiff") remaining causes
5  of action in the Second Amended Complaint, and that defendant is entitled to judgment as a
6  matter of law.

7      In the alternative, defendant will move the Court for an order granting summary
8  adjudication on each of plaintiff's causes of action. Specifically, defendant will move the Court
9  for an order granting summary adjudication as follows:

10

11     Adjudication No. 1: Hernandez' First Cause of Action fails as a matter of law because the
12
13  Authority's Codes are not a Federal or State law, rule or regulation.

14     Adjudication No. 2: Hernandez' First Cause of Action fails as a matter of law because
15  Hernandez could not have had a reasonable belief that he was disclosing activity made unlawful
16  by a federal or state law, rule or regulation.

17     Adjudication No. 3: Hernandez' First Cause of Action fails as a matter of law because
18  there is no causal connection between Hernandez' alleged protected activities and his termination
19  because the disclosures were too remote in time.
20

21     Adjudication No. 4: Hernandez' First Cause of Action fails as a matter of law because
22  there is no causal connection between Hernandez' alleged protected activities and his termination
23  because the decisionmaker was not aware of the protected activities.

24     Adjudication No. 5: Hernandez' First Cause of Action fails as a matter of law because the
25  Authority had a legitimate non-retaliatory business reason for terminating Hernandez'
26  employment.
27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION FOR SUMMARY            2
JUDGMENT

38-402

1   **Adjudication No. 6**: Hernandez' First Cause of Action fails as a matter of law because he

2   has no evidence of pretext.

3

4   **Adjudication No. 7**: Hernandez' First Cause of Action under Labor Code section

    1102.5(a) fails as a matter of law because Hernandez has not identified a rule, regulation, or

5

    policy made, adopted or enforced by the Authority that prevents an employee from disclosing

6

7   information to a governmental agency.

8   **Adjudication No. 8**: Hernandez' First Cause of Action under Labor Code section

9   1102.5(a) fails as a matter of law because any instructions regarding confidentiality were made to

10  implement the protection of the attorney-client privilege (See Labor Code section 1102.5(g)).

11

12  **Adjudication No. 9**: Hernandez' First Cause of Action fails as a matter of law under

    Labor Code section 1102.5(c) because Hernandez did not refuse to participate in any unlawful

13

    activity

14

15  **Adjudication No. 10**: The Authority is immune from Hernandez' Labor Code section

16  1102.5 cause of action under Government Code section 821.6

17

18  **Adjudication No. 11**: This Court lacks jurisdiction over Hernandez' Labor Code section

    1102.5 cause of action because he failed to exhaust his administrative remedies under Labor Code

19

    sections 98.6 and 98.7.

20

21                      **GENERAL DYNAMICS DISCLOSURE:**

22

23  **Adjudication No. 12**: Hernandez' First Cause of Action under Labor Code section 1102.5,

    insofar as it is based on any alleged disclosure regarding the General Dynamics' lease, fails as a

24

    matter of law because Hernandez could not have had a reasonable belief that the General

25

    Dynamics' lease was unlawful.

26

27  **Adjudication No. 13**: Hernandez' First Cause of Action under Labor Code section 1102.5,

28  insofar as it is based on any alleged disclosure regarding the General Dynamics' lease, fails as a

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION FOR SUMMARY              3
JUDGMENT

1  matter of law because Hernandez has not identified a state or federal statute, rule or regulation of

2  which he disclosed a violation.

4    Adjudication No. 14:  Hernandez' First Cause of Action fails as matter of law, insofar as it

5  is based on any alleged disclosure regarding the General Dynamics' lease, because there is no

6  causal connection between his alleged protected activity and his termination.

7  ## TELEDYNE RYAN DISCLOSURE:

9    Adjudication No. 15:  Hernandez' First Cause of Action under Labor Code section 1102.5,

10  insofar as it is based on any alleged disclosure regarding the Teledyne Ryan lease, fails as a matter

11  of law because Hernandez could not have had a reasonable belief that the Teledyne Ryan lease

12  was unlawful.

13    Adjudication No. 16:  Hernandez' First Cause of Action under Labor Code section 1102.5,

14  insofar as it is based on any alleged disclosure regarding the Teledyne Ryan lease, fails as a matter

15  of law because Hernandez has not identified a state or federal statute, rule or regulation of which

16  he disclosed a violation.

17    Adjudication No. 17:  Hernandez' First Cause of Action fails as matter of law, insofar as it

18  is based on any alleged disclosure regarding the Teledyne Ryan lease, because there is no causal

19  connection between his alleged protected activity and his termination.

21  ## RESTROOM PROJECT DISCLOSURE:

22    Adjudication No. 18:  Hernandez' First Cause of Action under Labor Code section 1102.5,

23  insofar as it is based on any alleged disclosure regarding the restroom project, fails as a matter of

24  law because Hernandez could not have had a reasonable belief that the restroom project was

25  unlawful.

27    Adjudication No. 19:  Hernandez' First Cause of Action under Labor Code section 1102.5,

28  insofar as it is based on any alleged disclosure regarding the restroom project, fails as a matter of

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION FOR SUMMARY
JUDGMENT

4

1  law because Hernandez admits that the Authority did not violate the ADA, nor did it express its

2  intention to violate the ADA.

3

4      Adjudication No. 20:  Hernandez' First Cause of Action under Labor Code section 1102.5,

insofar as it is based on any alleged disclosure regarding the restroom project, fails as a matter of

5

law because Hernandez has not identified a state or federal statute, rule or regulation of which he

6

disclosed a violation.

7

8      Adjudication No. 21:  Hernandez' First Cause of Action, insofar as it is based on any

9  alleged disclosure regarding the restroom project, fails as matter of law because there is no causal

10  connection between his alleged protected activity and his termination.

11  <strong><u>LPI DISCLOSURE</u></strong>

12

13      Adjudication No. 22:  Hernandez' First Cause of Action under Labor Code section 1102.5,

14  insofar as it is based on any alleged disclosure regarding LPi, fails as a matter of law because

15  Hernandez could not have had a reasonable belief that he disclosed unlawful acts.

16      Adjudication No. 23:  Hernandez' First Cause of Action under Labor Code section 1102.5,

17

insofar as it is based on any alleged disclosure regarding LPi, fails as a matter of law because

18

Hernandez has not identified a state or federal statute, rule or regulation of which he disclosed a

19

violation.

20

21      Adjudication No. 24:  Hernandez' First Cause of Action fails as matter of law, insofar as it

22  is based on any alleged disclosure regarding LPi, because there is no causal connection between

23  his alleged protected activity and his termination.

24      This motion shall be based on this Notice of Motion and Motion; the Memorandum of

25  Points and Authorities, defendant's Separate Statement of Undisputed Material Facts; the Notice

26  of Lodgment of Non-California Authorities, the Notice of Lodgment of Exhibits and the Exhibits

27  attached thereto, the Declarations of Thella Bowens, Mark Burchyett, Bryan Enarson, John

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION FOR SUMMARY
JUDGMENT

5

1  Gamberzky, Troy Ann Leech, Sandra L. McDonough, Jim Prentice, Tony Russell, Theodore

2  Sexton, Edward Patrick Swan, Jr., and Jeffrey Woodson in support thereof, and all of the exhibits

3  identified therein, all filed or lodged in support of this motion and served herewith, the entire file

4  in this matter, including the Second Amended Complaint, as well as any further evidence and/or

5  argument that defendant may offer in connection with this motion.

6      This Court follows California Rules of Court, Rule 324. The Court will therefore make its

7  tentative ruling available by telephone at (619) 531-3690 the court day before the scheduled

8  hearing at 3:00 p.m., or the tentative ruling may be reviewed on the Court's internet web site

9  (www.sdcourt.ca.gov) after 4:00 p.m. on that same day.

10

11  Dated: August 31, 2007                    PAUL, PLEVIN, SULLIVAN &
                                              CONNAUGHTON LLP
12

13                                            By: _Sandra L McD_
14                                              FRED M. PLEVIN
                                                SANDRA L. MCDONOUGH
15                                              ALBERT R. LIMBERG
                                                Attorneys for Defendant
16                                              SAN DIEGO COUNTY REGIONAL
                                                AIRPORT AUTHORITY
17

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

NOTICE OF MOTION FOR SUMMARY              6
JUDGMENT

POS-020

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | |
|---|---|
| Fred M. Plevin (126185)<br>Sandra L. McDonough (193308)<br>Paul, Plevin, Sullivan & Connaughton LLP<br>401 B Street, Tenth Floor<br>San Diego, CA 92101<br>TELEPHONE NO.: 619-237-5200    FAX NO. *(Optional):* 619-615-0700<br>E-MAIL ADDRESS *(Optional):*<br>ATTORNEY FOR *(Name):* San Diego County Regional Airport Authority | FILED<br>CIVIL BUSINESS OFFICE 10<br>CENTRAL DIVISION<br>2007 SEP -4 P 4: 03<br>CLERK SUPERIOR COURT<br>SAN DIEGO COUNTY, CA<br>SEP 4 '07 PM 3:41 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
STREET ADDRESS: 330 West Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: San Diego, CA 92101
BRANCH NAME: Central Division

PETITIONER/PLAINTIFF: Jose Hernandez

RESPONDENT/DEFENDANT: San Diego County Regional Airport Authority

| PROOF OF PERSONAL SERVICE—CIVIL | CASE NUMBER:<br>GIC871979 |
|---|---|

*(Do not use this Proof of Service to show service of a Summons and Complaint.)*

1. I am over 18 years of age and not a party to this action.
2. I served the following documents *(specify):* SEE ATTACHMENT

[X] The documents are listed in the *Attachment to Proof of Personal Service—Civil (Documents Served)* (form POS-020(D)).

3. I personally served the following persons at the address, date, and time stated:
   a. Name: Cathryn Chinn, Esq. (Attorney for Plaintiff Jose Hernandez)
   b. Address: 1901 First Avenue, Suite 400, San Diego, CA 92101
   c. Date: August 31, 2007
   d. Time: 4:27   p.m.

   [ ] The persons are listed in the *Attachment to Proof of Personal Service—Civil (Persons Served)* (form POS-020(P)).

4. I am
   a. [ ] not a registered California process server.
   b. [X] a registered California process server.
   c. [ ] an employee or independent contractor of a registered California process server.
   d. [ ] exempt from registration under Business & Professions Code section 22350(b).

5. My name, address, telephone number, and, if applicable, county of registration and number are *(specify):*
   Larry Hunter   868
   Diversified Legal Services, Inc.
   P.O. Box 3969
   San Diego, CA 92163
   (619) 260-8224

6. [X] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
7. [ ] I am a California sheriff or marshal and certify that the foregoing is true and correct.

Date: 8/31/07

Larry Hunter
(TYPE OR PRINT NAME OF PERSON WHO SERVED THE PAPERS)

▶ _Larry Hunter_
(SIGNATURE OF PERSON WHO SERVED THE PAPERS)

Form Approved for Optional Use<br>Judicial Council of California<br>POS-020 [New January 1, 2005]    PROOF OF PERSONAL SERVICE—CIVIL    Legal<br>Solutions<br>Plus    Code of Civil Procedure, § 1011

38-407

POS-020(D)

| SHORT TITLE: Hernandez v. San Diego County Regional Airport Authority | CASE NUMBER: GIC871979 |
|---|---|

**ATTACHMENT TO PROOF OF PERSONAL SERVICE—CIVIL (DOCUMENTS SERVED)**

*(This Attachment is for use with form POS-020)*

**The documents that were personally served are as follows** *(describe each document specifically):*

DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S SEPARATE STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DECLARATION OF THELLA F. BOWENS IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DECLARATION OF MARK BURCHYETT IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DECLARATION OF BRYAN ENARSON IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DECLARATION OF JOHN GAMBERZKY IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

LEECH DECLARATION OF TROY ANN LEECH IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DECLARATION OF SANDRA L. MCDONOUGH IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DECLARATION OF JIM PRENTICE IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DECLARATION OF TONY RUSSELL IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DECLARATION OF THEODORE SEXTON IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

DECLARATION OF EDWARD PATRICK SWAN, JR. IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION

Form Approved for Optional Use
Judicial Council of California
POS-020(D) [New January 1, 2005]    **ATTACHMENT TO PROOF OF PERSONAL SERVICE—CIVIL (Documents Served)**    Legal Solutions Plus    Page 1 of 2

38-408

POS-020(D)

| SHORT TITLE: Hernández v. San Diego County Regional Airport Authority | CASE NUMBER: GIC871979 |
|---|---|

### ATTACHMENT TO PROOF OF PERSONAL SERVICE—CIVIL (DOCUMENTS SERVED)

*(This Attachment is for use with form POS-020)*

The documents that were personally served are as follows *(describe each document specifically):*

| DECLARATION OF JEFFREY WOODSON IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION |
|---|
| DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S NOTICE OF LODGMENT OF NON-CALIFORNIA AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION |
| DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION |
| |
| |
| |
| |
| |
| |
| |
| |

**ATTACHMENT TO PROOF OF PERSONAL SERVICE—CIVIL
(Documents Served)**
Legal
Solutions
Plus   Page 2   of 2

38-409

1   FRED M. PLEVIN (SBN 126185)
    SANDRA L. MCDONOUGH (SBN 193308)
2   ALBERT R. LIMBERG (SBN 211110)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3   401 B Street, Tenth Floor
    San Diego, California 92101-4232
4   Telephone: 619-237-5200
    Facsimile: 619-615-0700

5

6   AMY S. GONZALEZ (SBN 181745)
    **SAN DIEGO COUNTY REGIONAL AIRPORT**
7   **AUTHORITY**
    3225 N. Harbor Drive
8   San Diego, CA 92138
    Telephone: (619) 400-2425
9   Facsimile: (619) 400-2428

10  Attorneys for Defendant
    SAN DIEGO COUNTY REGIONAL
11  AIRPORT AUTHORITY

12

13              SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                       COUNTY OF SAN DIEGO

15  JOSE HERNANDEZ,                          CASE NO. GIC871979

16          Plaintiff,                       **DEFENDANT SAN DIEGO COUNTY
                                             REGIONAL AIRPORT
17      v.                                   AUTHORITY'S MEMORANDUM OF POINTS AND
                                             AUTHORITIES IN SUPPORT OF ITS
18  SAN DIEGO COUNTY REGIONAL                MOTION FOR SUMMARY JUDGMENT OR,
    AIRPORT AUTHORITY, a public entity;      IN THE ALTERNATIVE, SUMMARY
19  and DOES 1 through 12, inclusive,        ADJUDICATION**

20          Defendants.

21                                           Date:          November 16, 2007
                                             Time:          1:30 p.m.
22                                           Dept:          75
                                             Judge:         Hon. Richard E. Strauss
23                                           Complaint Filed: September 1, 2006
                                             Trial Date:    January 4, 2008
24
                                             **EXEMPT FROM FEES
25                                           GOVT. CODE § 6103**

26

27

28

PAUL, PLEVIN,        MEMO OF POINTS AND AUTHORITIES IN
SULLIVAN &           SUPPORT OF SUMMARY JUDGMENT MOTION
CONNAUGHTON LLP

FILED
CIVIL BUSINESS OFFICE 13
CENTRAL DIVISION

2007 AUG 31 P 4: 31

CLERK'S SUPERIOR COURT
SAN DIEGO COUNTY, CA

**TABLE OF CONTENTS**

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II.  STATEMENT OF FACTS ................................................................................. 1

     A.   Overview of Hernandez' Employment. ................................................ 1

     B.   Ethics Code. .................................................................................... 2

     C.   Investigation Into Hernandez' Unethical Actions. ............................... 3

     D.   Termination ..................................................................................... 5

III. HERNANDEZ' LABOR CODE SECTION 1102.5 CLAIM FAILS AS A
     MATTER OF LAW ......................................................................................... 6

     A.   Hernandez Cannot Establish His Prima Facie Case Under Labor
          Code Section 1102.5. ....................................................................... 7

          1.   Hernandez Did Not Engage in a Protected Activity. ................... 7

               a.   Alleged Violations of the Authority's Ethics Code
                    Cannot Support a Retaliation Claim. ............................... 8

               b.   Hernandez Could Not Have Had a Reasonable Belief
                    That He Was Disclosing a Violation of a State or
                    Federal Law, Rule or Regulation. .................................... 8

                    (1)   The General Dynamics Disclosure. ....................... 8

                    (2)   The Teledyne Ryan Disclosure. ........................... 9

                    (3)   LPi Disclosure. .................................................. 10

                    (4)   The Restroom Disclosure. ................................... 11

          2.   There is no Causal Link between Hernandez' Disclosures
               and His Termination. ............................................................. 12

               a.   There Is No Causal Link Because the
                    Decisionmakers Were Not Aware of Hernandez'
                    Anonymous "Protected Activity." .................................. 13

               b.   There Is No Causal Link Because the Protected
                    Activities Were Too Remote in Time. ............................ 13

     B.   The Authority Had a Legitimate Non-Retaliatory Business Reason
          for the Investigation and Resulting Termination. ............................... 14

     C.   Hernandez Has No Evidence of Pretext. ........................................... 15

IV.  HERNANDEZ' LABOR CODE SECTION 1102.5(a) CLAIM FAILS ON
     ITS FACE ................................................................................................... 16

1    V.    GOVERNMENT CODE SECTION 821.6 AND 815.2(B) IMMUNIZE
           THE AUTHORITY FROM SUIT FOR INSTITUTING
2          ADMINISTRATIVE PROCEEDINGS. ........................................................ 17

3    VI.   HERNANDEZ' FAILED TO EXHAUST HIS ADMINISTRATIVE
           REMEDIES .................................................................................................. 17
4
     VII   CONCLUSION............................................................................................... 18
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION

ii

1

## TABLE OF AUTHORITIES

2

### FEDERAL CASES

3

*Abdel v. Ikon Office Solutions, Inc.* (N.D. Cal. Aug. 25, 2006 No. C-05-1685 JCS) __
   F.Supp.2d __ [2006 WL 2474331, at 10 fn. 5].............................................................6

4

*Brooks v. City of San Mateo* (9th Cir. 2000) 229 F.3d 917 .......................................15

5

*Clark County School District v. Breeden* (2001) 532 U.S. 268...........................7, 12, 14

6

*Jurado v. Eleven-Fifty Corp.* (9th Cir. 1987) 813 F.2d 1406 ....................................15

7

*Nelson v. J.C. Penney Co.* (8th Cir. 1996) 75 F.3d 343.............................................14

8

*Neveu v. City of Fresno* (2005) 392 F.Supp.2d 1159 ................................................18

9

*Trent v. Valley Electric Association, Inc.* (9th Cir. 1994) 41 F.3d 524 ........................7

10

*Unt v. Aerospace Corp.* (9th Cir. 1985) 765 F.2d 1440 ............................................14

11

*Yartzoff v. Thomas* (9th Cir. 1987) 809 F.2d 1371 ..................................................15

12

13

### STATE CASES

14

*Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531 ......................7, 8

15

*Caldwell v. Montoya* (1995) 10 Cal.4th 972................................................................17

16

*Campbell v. Regents of the University of Cal.* (2005) 35 Cal.4th 311.........................18

17

*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142 .............................................13

18

*Discover Bank v. Superior Court* (2005) 134 Cal.App.4th 886 ...................................6

19

*Flait v. North America Watch Corp.* (1992) 3 Cal.App.4th 467 ............................14, 15

20

*Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66................................................8

21

*Holmes v. General Dynamics Corp.* (1993) 17 Cal.App.4th 1418 .............................10

22

*Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426.....................................17

23

*Lillenthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848 ...........................7

24

*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481 .............................16

25

*Morgan v. Regents of University of Cal.* (2000) 88 Cal.App.4th 52 ...............6, 12, 13, 15

26

*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407........................................................17

27

*Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047 ...............................17

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION

iii

1              **STATE STATUTES**

2  Government Code section 815.2................................................................17

3  Government Code section 821.6................................................................17

4  Government Code section 6103...................................................................1

5  Government Code section 81000 et seq......................................................2

6  Labor Code section 98.6...................................................................17, 18

7  Labor Code section 98.7...................................................................17, 18

8  Labor Code section 1101.........................................................................16

9  Labor Code section 1102.5................................................................*passim*

10  Labor Code section 1102.6........................................................................6

11  Public Contract Code Section 100...........................................................11

12  Public Utilities Code section 170002.........................................................8

13  Public Utilities Code section 170056..................................................2, 8, 9

14  Public Utilities Code section 170056 (a)(1).............................................9

15  Public Utilities Code section 170084.........................................................2

16  California Rules of Court, rule 977............................................................6

17              **MISCELLANEOUS**

18  Webster's 3rd New International Dictionary (2002)..................................16

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION          iv

**39-414**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Hernandez got caught with his hand in the cookie jar.  As the Director of Landside Operations for defendant San Diego County Regional Airport Authority (the "Authority"), Hernandez could not accept benefits in excess of $180 from any vendor doing business with the Authority.  Despite this prohibition, an investigation by the Authority revealed that Hernandez had accepted multiple free airline tickets from two different airlines doing business with the Authority, and he had also accepted a variety of other free perks, including sporting events tickets and parking passes from the Authority's vendors.  The Authority terminated Hernandez' employment based on his impermissible receipt of benefits from the Authority's vendors.[1]

Hernandez now claims that the Authority terminated him because he allegedly disclosed unlawful actions by the Authority.  Hernandez' sole cause of action for retaliation under Labor Code section 1102.5 must fail because he could not have reasonably believed that he disclosed any unlawful acts, as required by that section.  Even if he did disclose illegal activity, Hernandez lacks any causal connection between these disclosures and his termination because the disclosures were more than a year prior to his termination and, most importantly, the decisionmakers for Hernandez' termination did not know about these disclosures.  Finally, Hernandez will not be able to meet his ultimate burden of proving that the Authority's non-retaliatory business reason for terminating his employment – due to a violation of the Authority's Ethics Code prohibiting receipt of benefits – was actually a pretext for retaliation.  As a result, the Authority respectfully requests that this Court grant its motion for summary judgment, or in the alternative, summary adjudication.

## II. STATEMENT OF FACTS

### A.    Overview of Hernandez' Employment.

Prior to January 1, 2003, the San Diego Unified Port District ("Port") owned and operated the San Diego International Airport ("Airport").  On January 1, 2003, the Authority took over title

---

[1] Hernandez was given the choice of being terminated or resigning from his employment with the Authority. (Hernandez depo. 797:13-19 [Exh. 1].)  Hernandez chose to resign.  (*Id.* at 800:11-801:2.) For ease of reference throughout this memorandum, the Authority will refer to Hernandez' resignation as a termination.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION

1

1   and ownership of the Airport, and it also became the employer for the aviation employees from the

2   Port. (See PUC, §§ 170056, 170084.) Hernandez began employment with the Port on March 23,

3   2001, as the Manager of Ground Transportation (Hernandez Depo. 65:16-21 [Exh. 1][2]; Exh. 15),

4   and he became an Authority employee on January 1, 2003, along with other Port employees

5   working at the Airport. (Hernandez Depo. 98:8-15 [Exh. 1].)  On October 3, 2003, the Authority

6   promoted Hernandez to Director of Landside Operations[3] at the Authority. (Hernandez Depo.

7   93:16-25 [Exh. 1].) Hernandez held that position until his termination in February 2006.

8   (Hernandez Depo. 114:9-24 [Exh. 1].)

9           As Director of Landside Operations, Hernandez had approximately nine direct reports, and

10  he was responsible for managing the operation of airport terminal buildings and enforcement of

11  airport traffic operations.  Part of his duties included exercising discretion over contracts with, and

12  the operations of, numerous Authority vendors and contractors.  His authority extended to all

13  Airport operations from the parking lots into the terminals, and included taxi and shuttle

14  operations. (See Hernandez Depo. 98:16-99:25 [Exh. 1].)

15  **B.     Ethics Code.**

16          The Authority has adopted codes, including an Ethics Code (Article 2), to govern and

17  regulate the conduct of Authority employees. (See Exh. 3.) Section 2.10 titled "Prohibited Receipt

18  of Benefits" prohibits any employee of the Authority from accepting benefits aggregating more

19  than one-half the amount permitted under the California Political Reform Act[4] in any calendar year

20  ($180 in 2005; $170 in 2003 or 2004) from any source that the employee knows or should know is

21

22  [2] Relevant portions of Hernandez' deposition testimony is attached as Exhibit 1 to the Notice of Lodgment of Exhibits filed herewith.  All referenced exhibits are attached to the Notice of Lodgment of Exhibits.

23
    [3] The Authority has two different divisions:  Airside Operations and Landside Operations.  The Airside
24  Operations handle everything on the tarmac and runway, while Landside Operations is in charge of all
    non-airside operations, such as terminal operations, parking and ground transportation. (Hernandez Depo.
25  99:7-25 [Exh. 1].)

26  [4] The California Political Reform Act (Gov. Code, § 81000, et seq.) requires that certain public employees
    file public, personal financial disclosure reports known as "statements of economic interests" on a form
    known as Form 700.  Each government agency is required to adopt and implement a separate conflict of
27  interest code under the California Political Reform Act.  The Authority's Ethics Code contains such a
    Conflict of Interest code. (See Section 2.30 of Authority's Code [Exh. 3, pp. 25-29].)
28

PAUL, PLEVIN,     MEMO OF POINTS AND AUTHORITIES IN              2
SULLIVAN &        SUPPORT OF SUMMARY JUDGMENT MOTION
CONNAUGHTON LLP

1  doing business with the Authority, or intends to do business with the Authority, or has done

2  business with the Authority during the previous 12 months, or that the employee knows or should

3  know has or is seeking a license, permit, grant or benefit from the Authority, or that the employee

4  knows or should know is an agent of such a person or entity.  (See Exh. 3, pp. 12-13 [Ethics Code,

5  Art. 2, Part 2.0, Section 2.10(b)(3)].)   In addition, the Code prohibits an employee from accepting

6  anything of value from anyone, other than the Authority or another board member or employee, for

7  "doing his or her job."  (*Id.* at Section 2.10(b)(2).)

8         Therefore, under the Authority's Ethics Code, Hernandez, as Director of Landside

9  Operations, was prohibited from accepting benefits aggregating more than $180 in 2005 (or $170

10 in 2003 or 2004)[5] from any single source that he knows or should know does business with the

11 Authority, is seeking to do business with the Authority, or has done business with the Authority

12 within the 12 preceding months.  If the benefit is for "doing his job," Hernandez was prohibited

13 from accepting anything of value.

14        Additionally, under the California Political Reform Act, Hernandez was required, as a

15 Director at the Authority, to report annually on Form 700 all income and gifts received from

16 vendors.  (See Exh. 3, pp. 25-29; Russell Dec. ¶ 5.)  Hernandez only filed one Form 700 during his

17 employment, and he checked the box that he had no "reportable interests" for the period of

18 12/14/2004 through 12/31/04.  (Exh. 8.)  Hernandez did not file another Form 700 until after the

19 Authority terminated his employment following its investigation of Hernandez for accepting gifts

20 in violation of the Ethics Code.  (Exh. 9.)

21 C.     **Investigation Into Hernandez' Unethical Actions.**

22        In December 2005, two employees of the Authority independently advised Thella Bowens,

23 the CEO and President of the Authority, that they believed Hernandez had accepted benefits from

24 vendors and contractors at the Airport and/or that Hernandez was unethical.  (Bowens Dec. ¶¶ 4-5;

25 Prentice Dec. ¶¶3-5.)  Specifically, they alleged that Hernandez received free airline tickets, free

26

27 [5] See Exhibits 13 and 17, setting maximum dollar amounts of $340 effective January 1, 2003, and $360 effective January 1, 2005, under the California Political Reform Act.

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION                    3

1   golf outings, free drink coupons, and that Hernandez used Authority employees to conduct

2   personal business for him. (Bowens Dec. ¶ 5; Prentice Dec. ¶ 4.) Bowens initiated an

3   investigation into allegations received from these employees. (Bowens Dec. ¶ 6.) Edward Patrick

4   "Pat" Swan, Jr., an attorney and outside investigator from Luce, Forward, Hamilton & Scripps, and

5   John Gamberzky, a private investigator retained by Swan, conducted the investigation by

6   interviewing eleven current and former employees of the Authority (including Hernandez), as well

7   as six non-Authority personnel. (Swan Dec. ¶¶ 4-5, 8; Gamberzky Dec. ¶ 4.) The investigation

8   ultimately confirmed a number of the allegations, and revealed additional potential benefits

9   accepted by Hernandez. (Swan Dec. ¶¶ 12-17; Gamberzky Dec. ¶ 6; Exh. 4[6].) A summary of the

10  investigation and findings is as follows:

11      • **Free Airline Tickets**. The investigators determined, and Hernandez admitted

12         (Hernandez 198:8-200:17), that Hernandez accepted four free round-trip, space-available or

13         non-revenue airline tickets from Hawaiian Airlines to travel with his wife and two children

14         from San Diego to Hawaii for a family vacation. The investigators estimated the value of

15         the tickets to be between $800 and $2,400. The investigators also estimated that Hernandez

16         accepted at least five free airline tickets from Southwest Airlines (Exh. 4, pp. 6-9, 20)[7];

17      • **Sporting Events**. The investigators concluded that Hernandez accepted free sporting

18         events tickets from Ace Parking, Southwest Airlines and Hawaiian Airlines, as well as free

19         rounds of golf from Southwest Airlines, Baggage Claimers, and Ace Parking.[8] In the

20

21  _____

22  [6] The Authority commissioned the investigation as an attorney-client privileged investigation. The
    Authority only waives that privilege with regard to the findings of the investigation as set forth in Exhibit

23  4 and Swan's declaration. The Authority does not waive any of its own attorney-client privileged
    communications regarding the investigation.

24  [7] Hernandez admits to receiving at least two buddy passes from Southwest Airlines for his children in
    2004. (Hernandez Depo. 191:8-20 [Exh. 1].)

25  [8] Although Hernandez disputes that Ace Parking was a vendor of the Authority at the time he received

26  these benefits, Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority
    in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc.

27  ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of
    Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.)

28

MEMO OF POINTS AND AUTHORITIES IN        4
SUPPORT OF SUMMARY JUDGMENT MOTION

1    investigation, Hernandez admitted to receiving some of these tickets and rounds of golf.[9]

2    The investigators determined that at least one set of Chargers tickets was valued between

3    $470 and $940 (Exh. 4, pp. 9-13, 20);

4    • **Other Perks.** Finally, the investigators concluded that Hernandez may have received

5    other benefits from vendors, including free clothing from an Authority uniform vendor,

6    drink coupons from several airlines, free meals and sodas from Authority vendors and

7    contractors, and a free Ace Parking Pass for use at Qualcomm Stadium and Petco Park.

8    (Exh. 4, pp. 13-14 and 17-20.)[10]

9    Based on the above benefits that Hernandez received, the investigators concluded that

10   Hernandez accepted benefits in violation of the Authority's Ethics Code because the benefits from

11   a single source (Hawaiian Airlines, Southwest Airlines, and Ace Parking) aggregated more than

12   one-half the amount of gifts permitted under the California Political Reform Act in any calendar

13   year. (Exh. 4, p. 20.)

14   **D.    Termination.**

15   Swan provided Bowens with a written report of his findings. (Exh. 4.) Bowens determined

16   that Hernandez' receipt of benefits was unacceptable and in violation of the Authority's Ethics

17   Code. (Bowens Dec. ¶ 9.) As a result, she decided, upon the recommendation of Jeffrey

18   Woodson, Vice President of Administration, and Diane Richards, Director of Human Resources,

19   that Hernandez' employment should end. (*Ibid.*) The Authority gave Hernandez the option of

20   resigning or having the Authority terminate his employment. (Hernandez Depo. 797:13-19 [Exh.

21   1].) Hernandez chose to resign effective February 7, 2006. (*Id.* at 800:11-801:2.)

22   ///

23

24   [9] See Hernandez 145:17-25 [Hernandez received tickets from Ace Parking to a Raiders game]; 149:2-5
     [tickets to Padres game from Ace Parking]; 154:2-15 [Hernandez received tickets to a Chargers game
25   from Cheryl Black of Southwest Airlines]; 158:1-159:22 [2004 Southwest Golf Tournament]; 183:21-
     185:14 [Golf with Baggage Claimers].)

26   [10] Hernandez admitted to receiving some of these benefits: (See Hernandez Depo. 145:6-16 [Ace parking
     pass]; 188:7-190:22 [received drink coupons and gave them to Authority employees]; 204:9-25 [lunches
27   with LPi]; 207:21-209:9 [Kelly Pond clothing]

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN             5
SUPPORT OF SUMMARY JUDGMENT MOTION

39-419

1     **III. HERNANDEZ' LABOR CODE SECTION 1102.5**

2          **CLAIM FAILS AS A MATTER OF LAW**

3          Hernandez' sole claim arises under Labor Code section 1102.5[11]. To establish a *prima*

4     *facie* case of retaliation under Section 1102.5(b)[12] as with FEHA and Title VII, Hernandez must

5     allege that: (1) he engaged in a "protected activity" by complaining about unlawful activity; (2) the

6     Authority took an adverse employment action against him; and (3) a causal link exists between his

7     protected activity and the adverse employment action. (*Morgan v. Regents of Univ. of Cal.* (2000)

8     88 Cal.App.4th 52, 69.) If Hernandez can make out a *prima facie* case, the Authority must

9     articulate a legitimate, non-retaliatory reason for the adverse employment action. (*Id.* at p. 68; see,

10    e.g., Lab. Code, § 1102.6) The burden then shifts back to Hernandez to show the asserted reason is

11    pretextual and the true reason is retaliation. (*Morgan, supra,* 88 Cal.App.4th at p. 75; see *Abdel v.*

12    *Ikon Office Solutions, Inc.* (N.D. Cal. Aug. 25, 2006, No. C-05-1685 JCS) __ F.Supp.2d __ [2006

13    WL 2474331, at *10 fn. 5] [Labor Code section 1102.6's requirement of the employer providing

14    clear and convincing evidence of the non-retaliatory business reason for the action does not alter

15    the burden-shifting analysis of retaliation claims at the summary judgment stage, which requires

16    the employee to produce specific, substantial evidence of pretext to rebut the employer's

17    articulated legitimate non-retaliatory business reason for its action].)[13]   Hernandez' claim fails at

18    each level because he will not be able to meet his prima facie case or carry his ultimate burden of

19    demonstrating pretext. As a result, summary judgment is proper.

20    ///

21    ///

22    ///

23

24    [11] All statutory references herein are to the California Labor Code, unless otherwise noted.

       [12] Although Hernandez references Labor Code section 1102.5(c) in his Second Amended Complaint, he
25    has not identified any illegal act that he refused to engage in, as required by that subsection. (See Lab.
       Code, § 1102.5, subd. (c); Hernandez Depo. 891:5-15 [Exh. 1].)

26    [13] Although California Rules of Court, rule 977, prohibits citation of unpublished opinions of California's
27    appellate courts, it does not prohibit citation of unpublished federal opinions. (*Discover Bank v. Superior*
       *Court* (2005) 134 Cal.App.4th 886, 892 fn. 2.)

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION

6

**A.    Hernandez Cannot Establish His Prima Facie Case Under Labor Code Section 1102.5.**

**1.    Hernandez Did Not Engage in a Protected Activity.**

In order to prove that he engaged in a protected activity, as required by the first prong of the *prima facie* case, Hernandez must demonstrate through admissible evidence that he disclosed, to a government or law enforcement agency, information that he reasonably believed disclosed a violation of a state or federal statute, rule, or regulation. (Lab. Code, § 1102.5, subd. (b).) It is not enough for Hernandez to allege mere conclusions of law to support his retaliation claims. (*Ankeny v. Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531, 537.) Specifically, Hernandez must show that he had a "'reasonable belief' that the employment practice [he] protested was prohibited" under a state or federal law. (*Trent v. Valley Elec. Ass'n, Inc.* (9th Cir. 1994) 41 F.3d 524, 526; *Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, 271.)[14]

Here, Hernandez alleges four disclosures or protected activities in which he allegedly advised the Authority that: (1) it paid too much on its lease of General Dynamics' property (hereinafter "General Dynamics Disclosure"); (2) there is contamination on the Teledyne Ryan property (hereinafter "Teledyne Ryan Disclosure"); (3) the Authority's parking contractor, Lindbergh Parking, Inc. ("LPi") purposely underbid and double billed the Authority (hereinafter "LPi Disclosure"); and (4) the women's restroom project in Terminal One was costing too much money (hereinafter "Restroom Project Disclosure").[15] (Second Amended Complaint ("SAC") ¶ 35.) None of these disclosures can support a prima facie Labor Code section 1102.5(b) claim because Hernandez has not identified any state or federal statute, rule or regulation that he reasonably believed the Authority violated.[16]

---

[14] By its terms, Section 1102.5 imposes a "reasonableness" requirement relating to the underlying report or complaint, similar to that found in Title VII and the Fair Employment and Housing Act.

[15] Further background information related to each of these transactions is included below.

[16] For summary adjudication purposes, separate allegedly wrongful acts give rise to separate causes of action - whether or not they are pleaded in the same or separate counts. (*Lillenthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1854-55.) Accordingly, a motion may be made and granted on the separate allegations - even if the pleader has chosen to combine the claim with other counts within the same numbered cause of action. (*Ibid.*) It is thus proper to adjudicate each of these "disclosures" separately.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION

7

1        **a.**     **Alleged Violations of the Authority's Ethics Code Cannot Support a**

2                  **Retaliation Claim.**

3        Hernandez alleges that his protected disclosures revealed a violation of the Authority's

4 internal Ethics Code.  (See SAC page 7, lines 26-27 (hereinafter "[Page]:[Lines]"); 8:17-19; 9:7-8;

5 10:11-14.)  However, by its very terms, Labor Code section 1102.5 requires a plaintiff to disclose a

6 violation of a state or federal law, rule or regulation.  (See Lab. Code, § 1102.5(b).)  By contrast,

7 the Authority's own Ethics and Contracts Codes are simply internal guidelines and not state or

8 federal laws, rules or regulations, and thus cannot support a Labor Code section 1102.5 claim.[17]

9 (Exh. 7 [Code Section 1.01(a)].)  Accordingly, none of the disclosures regarding alleged violations

10 of the Ethics Code are "protected" disclosures under Section 1102.5.  Since Hernandez has not

11 identified any other legal violation, as stated herein, his entire Labor Code section 1102.5 claim

12 fails.

13        **b.**     **Hernandez Could Not Have Had a Reasonable Belief That He Was**

14                  **Disclosing a Violation of a State or Federal Law, Rule or Regulation.**

15        Even *assuming arguendo* that the Ethics Code falls within the definition of a federal or

16 state law under Labor Code section 1102.5, the facts do not support Hernandez' ultimate

17 conclusion that he reasonably believed that the Authority's actions violated any statutes, nor can

18 these facts reasonably be interpreted to amount to any such violation.  (See *Ankeny, supra,* 88

19 Cal.App.3d at p. 537 [complaint must be supported by more than conclusory allegations].)

20 Further, Hernandez has the burden of pleading the specific statute that was allegedly violated.  (See

21 *Green v. Ralee Engineering Co.* (1998) 19 Cal.4th 66, 83 fn. 7.)  Without facts supporting

22 Hernandez' alleged reasonable belief that the Authority's actions violated a federal or state law or

23 specific references to code sections that were violated, Hernandez' retaliation claims must fail.

24        **(1)**    **The General Dynamics Disclosure.**

25        When the Authority took over responsibility for the Airport from the Port, the California

26 Legislature enacted Public Utilities Code section 170056, which states that the Port would transfer

---

[17] Indeed, the Authority is a local government entity, not a state or federal entity.  (PUC, § 170002.)

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION      8

1  all title and ownership of the Airport to the Authority, with the exception of certain real properties,

2  including "[a]ll property originally leased to General Dynamics Corporation." (See PUC, §

3  170056 (a)(1)(A).) Instead of transferring the General Dynamics property, the Legislature required

4  the Port to lease that property to the Authority. (See PUC, § 170056(f).)

5      One of Hernandez' alleged protected disclosures involved uncovering alleged financial

6  problems with this General Dynamics Lease. (SAC ¶ 12.) In his deposition, Hernandez testified

7  that the nature of his disclosure was that the Authority overpaid for the General Dynamics

8  property. (Hernandez Depo. 393:6-17 [Exh. 1].) Hernandez also testified that it must be illegal to

9  overpay for property, but he could not cite to any specific law that makes it illegal to overpay for a

10  lease. (*Id.* at 390:14-391:2.) Simply put, Hernandez could not have reasonably believed he was

11  disclosing any unlawful conduct because he knew that the terms of the General Dynamics Lease

12  were mandated by a California Code. (*Id.* at 391:14-392:24.) Specifically, the dollar amount for

13  the lease is set forth and mandated by Public Utilities Code section 170056, subsection (f)(1).

14  Therefore, even if Hernandez subjectively believed that the Authority overpaid for the lease on the

15  General Dynamics property, he could not have reasonably believed that he was disclosing a

16  violation of law because he knew that the terms of the lease, including the price, were set by statute

17  and were thus not unlawful. Summary adjudication of Hernandez' Section 1102.5 claim based on

18  the General Dynamics Disclosure is therefore warranted and appropriate.

19      **(2)   The Teledyne Ryan Disclosure.**

20      Similarly, Hernandez claims that he disclosed irregularities regarding the Teledyne Ryan

21  property retained by the Port under Public Utilities Code section 170056(a)(1)(B). (SAC ¶ 13.)

22  Specifically, Hernandez alleges that he disclosed to the Teledyne Ryan task force at the Authority

23  that: (1) the Authority overpaid for its lease on the Teledyne Ryan property; (2) the property may

24  have been mischaracterized to the Authority by the Port; and (3) the Authority could not develop

25  the property in the way in which it initially thought it could develop the property. (Hernandez

26  Depo. 410:3-11 [Exh. 1].) Once again, however, Hernandez cannot point to the law that makes it

27  unlawful to overpay for a lease or to enter into a lease as a result of mischaracterizations by others.

28  (*Id.* at 408:3-25.)

1    Further, there can be no "disclosure" under Section 1102.5 when the complainant merely

2    republishes public information. A disclosure requires that the employee "expose to view" or

3    "make known" a violation of the law. (See, e.g., *Holmes v. General Dynamics Corp.* (1993) 17

4    Cal.App.4th 1418, 1433 [analyzing meaning of "disclosure" under wrongful termination in

5    violation of public policy doctrine].) Here, plaintiff's "disclosures" consist of merely talking about

6    "information" that was already known to employees of the Authority. (Hernandez Depo. 406:7-24

7    [Exh. 1].) If republication of publicly-known information could constitute a protected activity

8    under Section 1102.5, any employee of a company who has been sued for any statutory violation

9    could send a copy of that complaint to a government official and thus become a "protected"

10    employee under Section 1102.5, even if that employee was not the plaintiff. Such a result is

11    absurd. A republication does not "make known" violations of law and cannot be a disclosure

12    under Section 1102.5 as a matter of law.

13    As a result of the foregoing, the Teledyne Ryan Disclosure cannot support plaintiff's

14    Section 1102.5 cause of action, and summary adjudication should be granted on Hernandez's

15    Section 1102.5 claim based on this Disclosure.

16                    (3)    **LPi Disclosure.**

17    In late 2003, LPi, a parking vendor entered into a competitive bidding process to provide

18    parking operations to two newly-acquired parking lots for the Authority. (Hernandez Depo.

19    475:14-476:1 [Exh. 1].) Through the bidding process, the Authority selected LPi for the contract.

20    (*Id.* at 476:5-9.)

21    Hernandez alleges that he disclosed and reasonably believed that the Authority's new and

22    amended contract with LPi violated the Authority's own Contract Code and the "California Code

23    of Contracts" because LPi purposely submitted low numbers on its bid[18] and that LPi double billed

24    on its workers' compensation numbers. (Hernandez Depo. 521:3-20 [Exh. 1].) As discussed

25

26    ─────────────────
      [18] It is questionable as to whether any reasonable person could take Hernandez' "disclosure" as
      whistleblowing because he merely told Ted Sexton that he believed that the numbers submitted by LPi

27    were unattainable and untrue. (Hernandez depo. 496:4-9.) Hernandez did not go so far as to call LPi's
      conduct "unlawful." (*Ibid.*)

28

PAUL, PLEVIN,       MEMO OF POINTS AND AUTHORITIES IN              10
SULLIVAN &          SUPPORT OF SUMMARY JUDGMENT MOTION
CONNAUGHTON LLP

1   above, the Authority's internal rules are not the equivalent of a state or federal statute, rule or

2   regulation, and thus cannot support a claim under Labor Code section 1102.5. In addition, the

3   "California Code of Contracts" does not exist and thus cannot be the basis for a Labor Code

4   section 1102.5 claim. Even if Hernandez meant to refer to the Public Contract Code, his claim still

5   fails. Section 100(b) of the Public Contract Code merely states the legislature's intent in enacting

6   the code "is to ensure full compliance with competitive bidding statutes as a means of protecting

7   the public from misuse of public funds." None of Hernandez' disclosures regarding LPi can be

8   construed as a disclosure regarding this statement of legislative intent.

9          Most importantly, even if these disclosures somehow implicate a law, Hernandez did not

10  have a reasonable belief that LPi's conduct violated any laws. In fact, Hernandez admitted that the

11  underbidding was not unlawful, but "pretty close." (Hernandez Depo. 496:24-497:16 [Exh. 1].)

12         As to the double billing on the workers' compensation, Hernandez indicated that he noticed

13  that LPi included workers' compensation costs in its payroll overhead and also as its own line item

14  on the monthly bill to the Authority. (Hernandez Depo. 502:1-5 [Exh. 1].) Hernandez admitted

15  that he was not qualified to know whether this alleged double billing was illegal. (Id. at 511:13-

16  19.) As a result, he could not have had a reasonable belief that he was disclosing illegal conduct.

17                     **(4)    The Restroom Disclosure.**

18         Finally, Hernandez claims that there was a "side deal" between Host and Bryan Enarson,

19  the Authority's Vice President of Real Estate and Development, that increased by more than

20  $2 million the cost of the project to enlarge a women's restroom in the Southwest Airlines rotunda

21  of Terminal One at the Airport. By way of background, prior to the restroom enlargement plan, the

22  Authority decided to convert a Southwest Airlines' hold room into concession space, which it

23  leased to Host. (Enarson Dec. ¶ 11.) This decision resulted in an agreement with Host to improve

24  space in Terminal 1 into additional concession space. (Ibid.) The Host agreement further required

25  that Host would have to approve any additional space taken from Host after the improvements

26  were made. (Ibid.)

27         The Authority intended to build a new women's restroom in Terminal One. (Enarson Dec.

28  ¶ 13.) One of the locations that the Authority considered for the restroom would have required the

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN              11
SUPPORT OF SUMMARY JUDGMENT MOTION

1   Authority to take 30 feet of concession space from Host in order to comply with ADA access

2   requirements. (*Ibid.*)  However, Enarson did not want to take that space away from Host because

3   Host had just recently improved its concessions. (*Ibid.*)  Therefore, instead of building a non-

4   compliant restroom, the Authority chose a new location for the restroom. (*Ibid.*)

5        Although Hernandez testified that he told the Authority that they should use the 30 feet of

6   Host concession space to build and enlarge the women's restroom, he never disclosed actual ADA

7   violations.  Instead, the crux of Hernandez' allegation is that because the Authority would not take

8   the space away from Host and thus could not build an ADA-compliant restroom in that one

9   location, the project was stalled and did not go forward. (Hernandez Depo. 343:12-344:4; 367:9-

10  21; 370:4-14 [Exh. 1].)  In essence, the project stalled *because* the Authority wanted to comply

11  with the ADA.  Even Hernandez admitted that the Authority never indicated that it planned on

12  violating the ADA, nor did the Authority at any time violate the ADA. (*Id.* at 366:12-16; 371:15-

13  372:22.)  Since the Authority did not violate the ADA, and Hernandez did not disclose any

14  violations of the ADA, Hernandez' Labor Code section 1102.5 claim based on the restroom project

15  must fail.

16       In summary, since none of Hernandez' disclosures constitute protected activity under

17  Section 1102.5, summary judgment must be granted.

18       **2.    There is no Causal Link between Hernandez' Disclosures and His**

19              **Termination.**

20       Even if Hernandez can somehow prove that he engaged in a protected activity, his Section

21  1102.5 claim still fails because there is no causal link between his purported protected activity and

22  any adverse employment action.  Hernandez can prove a causal link only by showing that the

23  decisionmakers for his termination were "aware of the protected activities, and that the adverse

24  action followed within a relatively short time thereafter.  The causal link may be established by an

25  inference derived from circumstantial evidence, 'such as the employer's knowledge that the

26  [employee] engaged in protected activities and the proximity in time between the protected action

27  and allegedly retaliatory employment decision.'" (*Morgan, supra,* 88 Cal.App.4th at pp. 69-70

28  [citations omitted].)  Importantly, temporal proximity of as little as three or four months between

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN            12
SUPPORT OF SUMMARY JUDGMENT MOTION

1    the protected activity and the adverse employment action is insufficient to show causality between

2    the protected act and an adverse employment action. (*Breeden, supra*, 532 U.S. at 273-74.) Here,

3    Hernandez will not be able to demonstrate a causal link because the decisionmakers did not know

4    about his alleged protected activity and, even if they did, at least one year passed between

5    Hernandez' initial disclosures and his termination. Therefore, Hernandez' *prima facie* case fails on

6    the third prong as well.

7              a.      **There Is No Causal Link Because the Decisionmakers Were Not Aware**

8                      **of Hernandez' Anonymous "Protected Activity."**

9              The causal connection element fails in the first instance because those individuals who

10   initiated the investigation into Hernandez' activity, and those who made the decision to terminate

11   Hernandez' employment, did not know about his alleged protected activity. "Essential to a causal

12   link is evidence that the employer was aware that the plaintiff had engaged in the protected

13   activity." (*Morgan, supra*, 88 Cal.App.4th at pp. 69-70 [citations omitted]; *Colarossi v. Coty US*

14   *Inc.* (2002) 97 Cal.App.4th 1142, 1152 [employer must be aware of protected activity].)

15             Here, Hernandez only made his disclosures to his direct supervisor, Ted Sexton, and the

16   Teledyne Ryan task force. (See Hernandez Depo. 354:6-354:8; 397:22-398:9; 410:3-413:18;

17   493:24-494:8; 498:25-499:5) However, the individuals who precipitated the investigation of

18   Hernandez' gift-taking were Jim Prentice and Clifforine Massey, not Sexton or the task force.

19   (Bowens Dec. ¶¶ 4-5.) Thella Bowens commissioned the investigation based on Prentice and

20   Massey's information, and she made the ultimate termination decision, along with

21   recommendations from Jeffrey Woodson and Diane Richards. (*Id.* ¶¶ 8-9.) Since Hernandez did

22   not disclose any unlawful activity to any of these individuals, there is no causal connection

23   between Hernandez' alleged protected activities and those who made decisions regarding

24   Hernandez' termination. Thus, Hernandez' *prima facie* case fails.

25             b.      **There Is No Causal Link Because the Protected Activities Were Too**

26                     **Remote in Time.**

27             Hernandez' causal link also fails because there was such a large lapse of time between his

28   alleged disclosures and the adverse employment action. Hernandez testified that he began

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN              13
SUPPORT OF SUMMARY JUDGMENT MOTION

1    complaining about the Restroom Project in 2002 or 2003 (Hernandez Depo. 347:16-23; 355:24-

2    356:13; 357:19-24; 372:24-373:17 [Exh. 1]), he complained about the General Dynamics Lease

3    beginning in 2003 (*id.* at 396:9-397:7), and he began complaining about Teledyne Ryan in 2004

4    (*id.* at 413:3-12) and to LPi in 2004 (*id.* at 493:24-495:15; 500:18-24). Such a large lapse of time

5    between his first complaints in 2002 to the alleged adverse employment action in February 2006

6    and the initiation of the investigation in November 2005 does not establish the requisite causal

7    link. (See *Breeden, supra,* 532 U.S. at p. 268 [temporal proximity of three or four months is

8    insufficient to show a causal link]; *Nelson v. J.C. Penney Co.* (8th Cir. 1996) 75 F.3d 343, 346,

9    *cert. denied,* 519 U.S. 813 [one month connection between protected activity and termination,

10   standing alone is not enough to submit case to a jury; judgment for plaintiff reversed].) As a result,

11   Hernandez' Labor Code section 1102.5 claim fails.

**B.     The Authority Had a Legitimate Non-Retaliatory Business Reason for the**

**        Investigation and Resulting Termination.**

14        If an employee makes out his *prima facie* case, which Hernandez cannot do, the employer

15   need only produce evidence that it had a non-retaliatory reason for its actions to shift the burden

16   back to the plaintiff to prove retaliatory intent. (*Unt v. Aerospace Corp.* (9th Cir. 1985) 765 F.2d

17   1440, 1447 [employer produced well-documented performance deficiencies]; *Flait v. North Am.*

18   *Watch Corp.* (1992) 3 Cal.App.4th 467, 479.)

19        As stated earlier, the Authority initiated the investigation and terminated Hernandez'

20   employment due to concerns over Hernandez' violations of the Ethics Code. Section 2.10 titled

21   "Prohibited Receipt of Benefits" prohibits any employee of the Authority from accepting benefits

22   aggregating more than one-half the amount permitted under the California Political Reform Act in

23   any calendar year ($180 in 2005; $170 in 2003 or 2004) from any source that the employee knows

24   or should know is doing business with the Authority, or intends to do business with the Authority,

25   or has done business with the Authority during the previous 12 months, or that the employee

26   knows or should know has or is seeking a license, permit, grant or benefit from the Authority. (See

27   Exh. 3, pp. 12-13 [Ethics Code, Art. 2, Part 2.0, Section 2.10(b)(3)].) In addition, the Code

28   prohibits an employee from accepting anything of value from anyone, other than the Authority or

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION              14

1  another board member or employee, for "doing his or her job."  (*Id.* § 2.10(b)(2).)

2      Here, Hernandez admitted to receiving four free airline tickets to Hawaii from Hawaiian

3  Airlines.  (Hernandez Depo. 198:8-200:17 and 280:1-14 [Exh. 1].)  He also received at least two

4  tickets from a Southwest Airlines station manager.  (*Id.* at 281:6-282:1.)  Hernandez also admits

5  that both airlines were doing business with the Authority when he accepted the gift.  (*Id.* at 280:11-

6  14, 282:9-12.)  In addition, Hernandez accepted a parking pass from Ace Parking, knowing that

7  Ace had asked to take over the parking contract at the Authority beginning in 2005.  (*Id.* at 128:3-

8  25, 151:4-18 [Exh. 1].)  The investigators estimated the value of the tickets to Hawaii, which

9  Hernandez admitted to receiving, to be between $800 and $2,400.  (Exh. 4, p. 20.)  The value of

10  these tickets alone violated the dollar amount permitted by the Ethics Code.

11      Based on the above admissions, as well as the information gathered by the investigators

12  from other sources, Thella Bowens made the decision to terminate Hernandez' employment

13  because she believed that he had violated the Ethics Code.  (Bowens Dec. ¶ 9.)  The information

14  gathered by the investigator, and relied upon by Bowens and Woodson, proves the non-retaliatory

15  basis of the Authority's decision to terminate Hernandez' employment.

16  **C.    Hernandez Has No Evidence of Pretext.**

17      Summary judgment should be granted once the employer articulates a legitimate,

18  nonretaliatory reason for an adverse employment action, unless the employee produces "substantial

19  responsive evidence . . . of the untruth of the employer's justification or a pretext."  (*Flait, supra,* 3

20  Cal.App.4th at 476; see also *Morgan, supra,* 88 Cal.App.4th at p. 75; *Yartzoff v. Thomas* (9th Cir.

21  1987) 809 F.2d 1371, 1377; *Jurado v. Eleven-Fifty Corp.* (9th Cir. 1987) 813 F.2d 1406, 1411;

22  *Brooks v. City of San Mateo* (9th Cir. 2000) 229 F.3d 917, 928 [once the employer articulates its

23  legitimate reason, "plaintiff must demonstrate a genuine issue of material fact as to whether the

24  reason advanced by the employer was a pretext.  Only then does the case proceed beyond the

25  summary judgment stage."] [citations omitted].)  Here, Hernandez will not be able to meet his

26  burden of producing substantial, responsive evidence of pretext.  As a result, summary judgment

27  should be granted.

28  ///

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION       15

## IV. HERNANDEZ' LABOR CODE SECTION 1102.5(a) CLAIM FAILS ON ITS FACE

Hernandez also alleges in his sole cause of action that the Authority violated Labor Code section 1102.5(a), but he has failed to adequately allege a rule, regulation or policy adopted by the Authority as required by any cause of action under that section. Labor Code section 1102.5(a) provides as follows:

> An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(Lab. Code, § 1102.5, subd. (a).) A "policy" is a "settled or definite course or method adopted and followed by a government, institution, body, or individual." (*Lockheed Aircraft Corp. v. Superior Court* (1946) 28 Cal.2d 481, 485-86 [construing identical "rule, regulation or policy" language contained in Labor Code section 1101].) A rule is defined as a "prescribed, suggested, or self-imposed guide for conduct or action: a regulation or principle" and "an accepted procedure, custom or habit having the force of a regulation." (Webster's 3d New Internat. Dict. (2002) p. 1986.) A "regulation" is "an authoritative rule or principle dealing with details of procedure." (*Id.* at p. 1913.)

By contrast, Hernandez alleges here that the Authority adopted a rule or policy of preventing him from disclosing protected information under Section 1102.5, but the only request promulgated by that investigator was for Hernandez to keep the investigation confidential and not to discuss it with anyone. (SAC ¶ 23; Swan Dec. ¶ 7.) Specifically, the investigator indicated that Hernandez should not waive the attorney-client privilege. (Swan Dec. ¶ 7.)

First, this advisement of confidentiality is not a "rule, regulation or policy" as required by Section 1102.5(a) because it is not a widespread rule, procedure, custom, or principle. Even if it was such a rule or policy, it is not actionable under Section 1102.5 because it was a rule that implemented the confidentiality of the lawyer-client privilege. (See Lab. Code, § 1102.5(g) ["This section does not apply to rules, regulations or policies which implement . . . the confidentiality of the lawyer-client privilege . . . ."].) As a result, the Court should grant summary adjudication on

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION

16

39-430

1   Hernandez' Section 1102.5(a) claim as well.

2      **V. GOVERNMENT CODE SECTION 821.6 AND 815.2(B) IMMUNIZE THE**

3   **AUTHORITY FROM SUIT FOR INSTITUTING ADMINISTRATIVE PROCEEDINGS.**

4          As a separate matter, Government Code sections 821.6 and 815.2(b) immunize the Authority

5   from liability for instituting an investigation.  Government Code section 821.6 provides that "[a]

6   public employee is not liable for injury caused by his instituting or prosecuting any judicial or

7   administrative proceeding within the scope of his employment, even if he acts maliciously and

8   without probable cause."  This immunity applies to the Authority as well.  (Gov. Code § 815.2(b).)

9          Courts have applied this investigatory immunity to all public employees, and their respective

10  public entities, who institute, investigate or are otherwise involved in an employee's termination.

11  (*Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1436-37 [holding public employees

12  immune based upon their investigation of, and recommendation to terminate, Plaintiff]; *Summers v.*

13  *City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1064 [same].)  Government Code section

14  821.6 immunity has been specifically applied to whistle-blower allegations and other wrongful

15  termination claims.  (*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407, 1425 [applying section 821.6

16  immunity to a common law "whistleblower" wrongful discharge claim]; and *Caldwell v. Montoya*

17  (1995) 10 Cal.4th 972, 982.)

18         Here, Plaintiff alleges that defendant instituted an unfair investigation, which ultimately

19  resulted in his termination.  (SAC ¶¶ 23-30.)  The allegedly unfair investigation is an administrative

20  proceeding under section 821.6 and cases interpreting that section.  As a result, the Authority is

21  immune from Plaintiff's claims arising out of the Authority's investigation and Plaintiff's resulting

22  termination.  Summary judgment is therefore appropriate.

23  **VI. HERNANDEZ' FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES**

24         Finally, this Court lacks jurisdiction over Hernandez' claim under Labor Code Section

25  1102.5 because Hernandez failed to exhaust his administrative remedies.  Pursuant to Labor Code

26  sections 98.6 and 98.7, claims under Section 1102.5 are solely within the province of the Labor

27  Commissioner.  Specifically, Section 98.7 provides that "any person who believes that he or she

28  has been discharged or otherwise discriminated against in violation of any law under the

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION          17

39-431

1  jurisdiction of the Labor Commissioner may file a complaint with the division within six months

2  after the occurrence of the violation." (Lab. Code, § 98.7.)  A claim under Section 1102.5 is a

3  claim subject to the jurisdiction of the Labor Commissioner. (Lab. Code, § 98.6(a).)  It is well

4  settled that a litigant must exhaust all administrative remedies prior to bringing suit. (*Campbell v.*

5  *Regents of the Univ. of Cal.* (2005) 35 Cal.4th 311, 333-334.)  Since Hernandez has not alleged

6  that he filed a claim with the Labor Commissioner, this court does not have jurisdiction over his

7  Labor Code section 1102.5 cause of action. (See, e.g., *Neveu v. City of Fresno* (2005) 392

8  F.Supp.2d 1159, 1179-80 [motion to dismiss granted because litigant failed to file a complaint

9  with the Labor Commissioner prior to pursuing cause of action under Labor Code § 1102.5.)

## VII. CONCLUSION

11  For the foregoing reasons, the Authority respectfully requests that this Court grant its

12  motion for summary judgment or, in the alternative, summary adjudication.

Dated: August 31, 2007

PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP

By: *Sandra L McDonough*
    FRED M. PLEVIN
    SANDRA L. MCDONOUGH
    ALBERT R. LIMBERG
    Attorneys for Defendant SAN DIEGO COUNTY
    REGIONAL AIRPORT AUTHORITY

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

MEMO OF POINTS AND AUTHORITIES IN
SUPPORT OF SUMMARY JUDGMENT MOTION

18

39-432

**EXHIBIT 40**

1    FRED M. PLEVIN (SBN 126185)
     SANDRA L. MCDONOUGH (SBN 193308)
2    ALBERT R. LIMBERG (SBN 211110)
     PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP
3    401 B Street, Tenth Floor
     San Diego, California 92101-4232
4    Telephone: 619-237-5200
     Facsimile: 619-615-0700
5
     AMY S. GONZALEZ (SBN 181745)
6    SAN DIEGO COUNTY REGIONAL AIRPORT
     AUTHORITY
7    3225 N. Harbor Drive
     San Diego, CA 92138
8    Telephone: (619) 400-2425
     Facsimile: (619) 400-2428
9
10   Attorneys for Defendant
     SAN DIEGO COUNTY REGIONAL AIRPORT
11   AUTHORITY

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                       COUNTY OF SAN DIEGO

14
     JOSE HERNANDEZ,                       CASE NO. GIC871979
15
              Plaintiff,                   DEFENDANT SAN DIEGO COUNTY
16                                         REGIONAL AIRPORT AUTHORITY'S
                                           SEPARATE STATEMENT OF
17        v.                               UNDISPUTED MATERIAL FACTS IN
                                           SUPPORT OF MOTION FOR SUMMARY
18   SAN DIEGO COUNTY REGIONAL             JUDGMENT OR, IN THE ALTERNATIVE,
     AIRPORT AUTHORITY, a public entity;   SUMMARY ADJUDICATION
19   and DOES 1 through 12, inclusive,

20            Defendants.

21                                         Date:            November 16, 2007
                                           Time:            1:30 p.m.
22                                         Dept:            75
                                           Judge:           Hon. Richard E. Strauss
23                                         Complaint Filed: September 1, 2006
                                           Trial Date:      January 4, 2008
24
                                           EXEMPT FROM FEES
25                                         GOVT. CODE § 6103

     TO PLAINTIFF JOSE HERNANDEZ AND HIS ATTORNEYS OF RECORD:
26
          Defendant San Diego County Regional Airport Authority (hereinafter referred to as "the
27
     Authority") submits the following Separate Statement of Undisputed Material Facts in support of
28
     its Motion for Summary Judgment as to plaintiff Jose Hernandez' Second Amended Complaint:

PAUL, PLEVIN,     SEPARATE STATEMENT IN SUPPORT OF          1
SULLIVAN &        SUMMARY JUDGMENT MOTION
CONNAUGHTON LLP

40-433

| Undisputed Material Fact | Evidence |
|---|---|
| 1. Jose Hernandez became the Director of Landside Operations for defendant San Diego County Regional Airport Authority (the "Authority") on or about October 2003. | Hernandez Depo. 93:16-25 and 114:25-115:14 [Exh. 1]. Exhibit 16. |
| 2. Article 2, Part 2.0, Section 2.10(b) of the Authority's Ethics Code provides in part:<br><br>Restrictions on Benefits<br><br>(1) No Board member or employee of the Authority shall request a benefit from any person or entity or accept any benefit intended to influence official duties.<br><br>(2) No Board member or employee of the Authority shall accept anything of value from anyone, other than the Authority or another Board member or employee, for doing his or her job.<br><br>(3) No Board member or employee of the Authority shall accept benefits aggregating more than one-half (1/2) the amount of gifts permitted under the California Political Reform Act in any calendar year from any single source:<br><br>(A)   That the Board member or employee knows or should know is doing business with the Authority or intends to do business with the Authority or has done business with the Authority during the previous 12 months; or<br><br>(B)   That the Board member or employee knows or should know has or is seeking a license, permit, grant or benefit from the Authority; or<br><br>(C)   That the Board member or employee knows or should know is an agent (whether compensated or not) of any person or entity described in Subsections (A) or (B) | Exhibit 3, pp. 12-13. |
| 3. In approximately October or November 2005, two Authority employees advised Thella Bowens that they believed that Hernandez was behaving unethically and | Bowens Dec. p. 2, lines 7-19 (hereinafter noted as "Page:Line Numbers") |

SEPARATE STATEMENT IN SUPPORT OF SUMMARY JUDGMENT MOTION

2

**40-434**

| | | |
|---|---|---|
| 1 | receiving benefits from the Authority's vendors. | |
| 2 | | |
| 3 | 4. In November 2005, Bowens asked the Authority's Vice President of Administration, Jeffrey Woodson, to have an outside investigator conduct an investigation into the allegations that Hernandez had received benefits from the Authority's vendors. | Woodson Dec. 2:5-8; Bowens Dec. 2:20-22 |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | 5. Woodson approved the retention of Luce, Forward, Hamilton & Scripps ("Luce Forward") to conduct an investigation into the allegations made regarding Hernandez receiving benefits from the Authority's vendors. | Swan Dec. 2:9-12; Woodson Dec. 2:9-13 |
| 8 | | |
| 9 | | |
| 10 | 6. Edward Patrick Swan, Jr. of Luce Forward conducted an investigation, with assistance from John Gamberzky, regarding the allegations that Hernandez received benefits from the Authority's vendors. | Swan Dec. 3:1-10. |
| 11 | | |
| 12 | | |
| 13 | | |
| 14 | 7. Hernandez admits that he received four non-revenue tickets from Hawaiian Airlines in 2004, and that he knew Hawaiian Airlines was doing business with the Authority at the time he received the tickets. | Swan Dec. 3:11-12; Hernandez Depo. 198:8-200:17 and 280:1-14 [Exh. 1] |
| 15 | | |
| 16 | | |
| 17 | 8. Hernandez admits that he received at least two buddy passes from Southwest Airlines in 2004 for his children, and that he knew Southwest Airlines was doing business with the Authority at the time he received the tickets. | Hernandez Depo. 191:8-20 and 281:6-12 [Exh. 1]. |
| 18 | | |
| 19 | | |
| 20 | | |
| 21 | 9. Mr. Swan concluded in his investigation that there was sufficient evidence that Hernandez had accepted benefits from Authority vendors and contractors. He also concluded that there was sufficient evidence that Hernandez had violated Section 2.10 of the Authority's Ethics Code. | Swan Dec. 4:6-14; Exhibit 4, pp. 2 and 20-21; Exh. 3, pp. 12-13. |
| 22 | | |
| 23 | | |
| 24 | | |
| 25 | 10. Mr. Swan prepared a written report of his findings and sent them to Thella Bowens on or about January 19, 2006. | Swan Dec. 3:25-4:2; Exhibit 4 |
| 26 | | |
| 27 | 11. After reviewing the findings contained in Mr. Swan's January 19, 2006 report, and upon the recommendation of Jeffrey | Bowens Dec. 3:1-10; Exh. 3, pp. 12-13 [Ethics Code]; Woodson Dec. 2:25-3:4 |
| 28 | | |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

SEPARATE STATEMENT IN SUPPORT OF SUMMARY JUDGMENT MOTION

3

| | |
|---|---|
| Woodson and the Authority's Director of Human Resources, Diane Richards, Bowens determined that Hernandez' employment should be terminated because it appeared that he had accepted benefits in violation of Section 2.10 of the Authority's Ethics Code. | |
| 12. Mr. Swan advised Hernandez during the investigation that it was an attorney-client privileged investigation. Mr. Swan also told Hernandez that because the Authority held the privilege, he should keep the interview confidential. | Swan 2:26-28 |

In the alternative, the Authority submits the following Separate Statement of Undisputed Material Facts in Support of Its Motion for Summary Adjudication in regards to each cause of action and claim in plaintiff Jose Hernandez' Second Amended Complaint:

**Adjudication No. 1: Hernandez' First Cause of Action fails as a matter of law because the Authority's Codes are not a Federal or State law, rule or regulation.**

| Undisputed Material Fact | Evidence |
|---|---|
| 13. The Second Amended Complaint alleges that Hernandez disclosed violations of the Authority's Codes. | Second Amended Complaint 7:26-27; 8:17-19; 9:7-8; 10:11-14 |
| 14. The Authority's Code contains administrative, regulatory and revenue ordinances of the San Diego County Regional Airport Authority. | Exhibit 7 [Section 1.01 (a)] of the Authority's code |
| 15. The Authority is a local government entity. | Public Utilities Code section 170002 |

**Adjudication No. 2: Hernandez' First Cause of Action fails as a matter of law because Hernandez could not have had a reasonable belief that he was disclosing activity made unlawful by a federal or state law, rule or regulation.**

| Undisputed Material Fact | Evidence |
|---|---|
| 16. Hernandez alleges that he disclosed that | Hernandez Depo. 393:6-17 [Exh. 1]. |

| | | |
|---|---|---|
| | the Authority overpaid for the General Dynamics Lease.[1] | |
| 17. | The terms of the General Dynamics Lease are set by statute. | See Public Utilities Code section 170056(f)(1); Hernandez Depo. 391:14-392:24 and 397:8-11 [Exh. 1]. |
| 18. | Hernandez alleges that he disclosed that the Authority overpaid for the Teledyne Ryan lease. | Hernandez Depo. 410:3-11 and 408:3-25 [Exh. 1]. |
| 19. | Hernandez alleges that he disclosed that unless the Authority received space from Host, it would not be able to comply with the ADA regulations on the restroom project, and thus the project was held up. | Hernandez Depo. 343:16-344:4 and 357:10-358:6 [Exh. 1] |
| 20. | Hernandez alleges that he disclosed that LPi underbid the Authority and that LPi double-billed workers' compensation. | Hernandez Depo. 521:3-20 [Exh. 1] |

**Adjudication No. 3:** **Hernandez' First Cause of Action fails as a matter of law because there is no causal connection between Hernandez' alleged protected activities and his termination because the disclosures were too remote in time.**

| Undisputed Material Fact | Evidence |
|---|---|
| 21. Hernandez first made the disclosure regarding the restroom project in 2003 or 2004. | Hernandez Depo. 357:19-24 [Exh. 1]. |
| 22. Hernandez first made the disclosure regarding the General Dynamics Lease in approximately 2003. | Hernandez 393:1-24 [made the disclosure prior to the ratification of the lease]; Hernandez 396:9-16 [original discussions were as the terms of the agreement were being discussed with the Port]; Hernandez 386:18-22 [General Dynamics' lease was negotiated around the time that the Authority split from the Port] |
| 23. Hernandez first made the disclosure regarding the Teledyne Ryan Lease in late 2003 or 2004. | Hernandez 410:3-16 [Hernandez disclosed to Sexton immediately as they began to make the designs for the SAN Park project]; Hernandez 408:3-14 [developed the design documents for the SAN Park project in late 2003 or 2004] |

---

[1] The Authority does not admit that Hernandez made any disclosures, or that he engaged in any protected activities. However, for purposes of this motion only, the Authority will not dispute the content of Hernandez' alleged disclosures as set forth in any admissible evidence contained in Hernandez' deposition.

SEPARATE STATEMENT IN SUPPORT OF SUMMARY JUDGMENT MOTION

5

**40-437**

| Undisputed Material Fact | Evidence |
|---|---|
| 24. Hernandez first made the disclosure regarding LPi's expenses in 2004. | Hernandez 493:24-495:15 [Hernandez made his first disclosure at the three-month or six-month submittal]; Sexton Dec. 3:15-17 [the LPi contract began in January 2004] |
| 25. The investigation into alleged benefits received by Hernandez began in approximately November 2005. | Bowens Dec. 2:7-22; Woodson Dec. 2:5-8. |
| 26. Hernandez' employment with the Authority ended in February 2006. | Hernandez Depo. 114:19-24 [Exh. 1]. |

**Adjudication No. 4:  Hernandez' First Cause of Action fails as a matter of law because there is no causal connection between Hernandez' alleged protected activities and his termination because the decisionmaker was not aware of the protected activities.**

| Undisputed Material Fact | Evidence |
|---|---|
| 27. Thella Bowens made the decision to terminate Hernandez' employment. | Bowens Dec. 3:1-10 |
| 28. Bowens was unaware of any of Hernandez' alleged protected activities. | Bowens Dec. 3:18-4:8 |

**Adjudication No. 5:  Hernandez' First Cause of Action fails as a matter of law because the Authority had a legitimate non-retaliatory business reason for terminating Hernandez' employment.**

| Undisputed Material Fact | Evidence |
|---|---|
| 29. Jose Hernandez became the Director of Landside Operations for defendant San Diego County Regional Airport Authority (the "Authority") on or about October 2003. | Hernandez Depo. 93:16-25 and 114:25-115:14 [Exh. 1]. Exhibit 16. |
| 30. Article 2, Part 2.0, Section 2.10(b) of the Authority's Ethics Code provides in part:<br><br>Restrictions on Benefits<br><br>(1) No Board member or employee of the Authority shall request a benefit from any person or entity or accept any benefit intended to influence official duties.<br><br>(2) No Board member or employee of the Authority shall accept anything of value from anyone, other than the Authority or | Exhibit 3, pp. 12-13. |

40-438

| | |
|---|---|
| another Board member or employee, for doing his or her job.<br><br>(3) No Board member or employee of the Authority shall accept benefits aggregating more than one-half (1/2) the amount of gifts permitted under the California Political Reform Act in any calendar year from any single source:<br><br>    (A)    That the Board member or employee knows or should know is doing business with the Authority or intends to do business with the Authority or has done business with the Authority during the previous 12 months; or<br><br>    (B)    That the Board member or employee knows or should know has or is seeking a license, permit, grant or benefit from the Authority; or<br><br>    (C)    That the Board member or employee knows or should know is an agent (whether compensated or not) of any person or entity described in Subsections (A) or (B) | |
| 31. In approximately October or November 2005, two Authority employees advised Thella Bowens that they believed that Hernandez was behaving unethically and receiving benefits from the Authority's vendors. | Bowens Dec. p. 2, lines 7-19 (hereinafter noted as "Page:Line Numbers") |
| 32. In November 2005, Bowens asked the Authority's Vice President of Administration, Jeffrey Woodson, to have an outside investigator conduct an investigation into the allegations that Hernandez had received benefits from the Authority's vendors. | Woodson Dec. 2:5-8; Bowens Dec. 2:20-22 |
| 33. Woodson approved the retention of Luce, Forward, Hamilton & Scripps ("Luce Forward") to conduct an investigation into the allegations made regarding Hernandez receiving benefits from the Authority's vendors. | Swan Dec. 2:9-12; Woodson Dec. 2:9-13 |
| 34. Edward Patrick Swan, Jr. of Luce Forward conducted an investigation, with assistance from John Gamberzky, regarding the allegations that Hernandez | Swan Dec. 3:1-10. |

| | |
|---|---|
| received benefits from the Authority's vendors. | |
| 35. Hernandez admits that he received four non-revenue tickets from Hawaiian Airlines in 2004, and that he knew Hawaiian Airlines was doing business with the Authority at the time he received the tickets. | Swan Dec. 3:11-12; Hernandez Depo. 198:8-200:17 and 280:1-14 [Exh. 1] |
| 36. Hernandez admits that he received at least two buddy passes from Southwest Airlines in 2004 for his children, and that he knew Southwest Airlines was doing business with the Authority at the time he received the tickets. | Hernandez Depo. 191:8-20 and 281:6-12 [Exh. 1]. |
| 37. Mr. Swan concluded in his investigation that there was sufficient evidence that Hernandez had accepted benefits from Authority vendors and contractors. He also concluded that there was sufficient evidence that Hernandez had violated Section 2.10 of the Authority's Ethics Code. | Swan Dec. 4:6-14; Exhibit 4, pp. 2 and 20-21; Exh. 3, pp. 12-13. |
| 38. Mr. Swan prepared a written report of his findings and sent them to Thella Bowens on or about January 19, 2006. | Swan Dec. 3:25-4:2; Exhibit 4 |
| 39. After reviewing the findings contained in Mr. Swan's January 19, 2006 report, and upon the recommendation of Jeffrey Woodson and the Authority's Director of Human Resources, Diane Richards, Bowens determined that Hernandez' employment should be terminated because it appeared that he had accepted benefits in violation of Section 2.10 of the Authority's Ethics Code. | Bowens Dec. 3:1-10; Exh. 3, pp. 12-13 [Ethics Code]; Woodson Dec. 2:25-3:4 |

**Adjudication No. 6:** **Hernandez' First Cause of Action fails as a matter of law because he has no evidence of pretext.**

| Undisputed Material Fact | Evidence |
|---|---|
| 40. Jose Hernandez became the Director of Landside Operations for defendant San Diego County Regional Airport Authority (the "Authority") on or about October 2003. | Hernandez Depo. 93:16-25 and 114:25-115:14 [Exh. 1]. Exhibit 16. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

SEPARATE STATEMENT IN SUPPORT OF
SUMMARY JUDGMENT MOTION

8

**40-440**

| | |
|---|---|
| 41. Article 2, Part 2.0, Section 2.10(b) of the Authority's Ethics Code provides in part:<br><br>Restrictions on Benefits<br><br>(1) No Board member or employee of the Authority shall request a benefit from any person or entity or accept any benefit intended to influence official duties.<br><br>(2) No Board member or employee of the Authority shall accept anything of value from anyone, other than the Authority or another Board member or employee, for doing his or her job.<br><br>(3) No Board member or employee of the Authority shall accept benefits aggregating more than one-half (1/2) the amount of gifts permitted under the California Political Reform Act in any calendar year from any single source:<br><br>(A)    That the Board member or employee knows or should know is doing business with the Authority or intends to do business with the Authority or has done business with the Authority during the previous 12 months; or<br><br>(B)    That the Board member or employee knows or should know has or is seeking a license, permit, grant or benefit from the Authority; or<br><br>(C)    That the Board member or employee knows or should know is an agent (whether compensated or not) of any person or entity described in Subsections (A) or (B) | Exhibit 3, pp. 12-13. |
| 42. In approximately October or November 2005, two Authority employees advised Thella Bowens that they believed that Hernandez was behaving unethically and receiving benefits from the Authority's vendors. | Bowens Dec. p. 2, lines 7-19 (hereinafter noted as "Page:Line Numbers") |
| 43. In November 2005, Bowens asked the Authority's Vice President of Administration, Jeffrey Woodson, to have an outside investigator conduct an investigation into the allegations that | Woodson Dec. 2:5-8; Bowens Dec. 2:20-22 |

| | |
|---|---|
| Hernandez had received benefits from the Authority's vendors. | |
| 44. Woodson approved the retention of Luce, Forward, Hamilton & Scripps ("Luce Forward") to conduct an investigation into the allegations made regarding Hernandez receiving benefits from the Authority's vendors. | Swan Dec. 2:9-12; Woodson Dec. 2:9-13 |
| 45. Edward Patrick Swan, Jr. of Luce Forward conducted an investigation, with assistance from John Gamberzky, regarding the allegations that Hernandez received benefits from the Authority's vendors. | Swan Dec. 3:1-10. |
| 46. Hernandez admits that he received four non-revenue tickets from Hawaiian Airlines in 2004, and that he knew Hawaiian Airlines was doing business with the Authority at the time he received the tickets. | Swan Dec. 3:11-12; Hernandez Depo. 198:8-200:17 and 280:1-14 [Exh. 1] |
| 47. Hernandez admits that he received at least two buddy passes from Southwest Airlines in 2004 for his children, and that he knew Southwest Airlines was doing business with the Authority at the time he received the tickets. | Hernandez Depo. 191:8-20 and 281:6-12 [Exh. 1]. |
| 48. Mr. Swan concluded in his investigation that there was sufficient evidence that Hernandez had accepted benefits from Authority vendors and contractors. He also concluded that there was sufficient evidence that Hernandez had violated Section 2.10 of the Authority's Ethics Code. | Swan Dec. 4:6-14; Exhibit 4, pp. 2 and 20-21; Exh. 3, pp. 12-13. |
| 49. Mr. Swan prepared a written report of his findings and sent them to Thella Bowens on or about January 19, 2006. | Swan Dec. 3:25-4:2; Exhibit 4 |
| 50. After reviewing the findings contained in Mr. Swan's January 19, 2006 report, and upon the recommendation of Jeffrey Woodson and the Authority's Director of Human Resources, Diane Richards, Bowens determined that Hernandez' employment should be terminated because it appeared that he had accepted benefits in violation of Section 2.10 of the Authority's Ethics Code. | Bowens Dec. 3:1-10; Exh. 3, pp. 12-13 [Ethics Code]; Woodson Dec. 2:25-3:4 |

**Adjudication No. 7:**  Hernandez' First Cause of Action under Labor Code section 1102.5(a) fails as a matter of law because Hernandez has not identified a rule, regulation, or policy made, adopted or enforced by the Authority that prevents an employee from disclosing information to a governmental agency.

| Undisputed Material Fact | Evidence |
|---|---|
| 51. Mr. Swan advised Hernandez during the investigation that it was an attorney-client privileged investigation. Mr. Swan also told Hernandez that because the Authority held the privilege, he should keep the interview confidential. | Swan 2:26-28 |

**Adjudication No. 8:**  Hernandez' First Cause of Action under Labor Code section 1102.5(a) fails as a matter of law because any instructions regarding confidentiality were made to implement the protection of the attorney-client privilege (See Labor Code section 1102.5(g)).

| Undisputed Material Fact | Evidence |
|---|---|
| 52. Mr. Swan advised Hernandez during the investigation that it was an attorney-client privileged investigation. Mr. Swan also told Hernandez that because the Authority held the privilege, he should keep the interview confidential. | Swan 2:26-28 |

**Adjudication No. 9:**  Hernandez' First Cause of Action fails as a matter of law under Labor Code section 1102.5(c) because Hernandez did not refuse to participate in any unlawful activity

| Undisputed Material Fact | Evidence |
|---|---|
| 53. Hernandez did not refuse to participate in any activity because he thought it was unlawful or illegal. | Hernandez Depo. 891:5-15 [Exh. 1].) |

**Adjudication No. 10:**  The Authority is immune from Hernandez' Labor Code section 1102.5 cause of action under Government Code section 821.6

| Undisputed Material Fact | Evidence |
|---|---|
| 54. Hernandez alleges harm in his Second Amended Complaint arising out of the Authority's investigation of his activities and his resulting termination. | See Second Amended Complaint generally, including paragraphs 23-30. |
| 55. In November 2005, Bowens asked the | Woodson Dec. 2:5-8; Bowens Dec. 2:20-22 |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

SEPARATE STATEMENT IN SUPPORT OF
SUMMARY JUDGMENT MOTION

11

| | |
|---|---|
| Authority's Vice President of Administration, Jeffrey Woodson, to have an outside investigator conduct an investigation into the allegations that Hernandez had received benefits from the Authority's vendors. | |
| 56. Woodson approved the retention of Luce, Forward, Hamilton & Scripps ("Luce Forward") to conduct an investigation into the allegations made regarding Hernandez receiving benefits from the Authority's vendors. | Swan Dec. 2:9-12; Woodson Dec. 2:9-13 |
| 57. Edward Patrick Swan, Jr. of Luce Forward conducted an investigation, with assistance from John Gamberzky, regarding the allegations that Hernandez received benefits from the Authority's vendors. | Swan Dec. 3:1-10. |
| 58. Mr. Swan concluded in his investigation that there was sufficient evidence that Hernandez had accepted benefits from Authority vendors and contractors. He also concluded that there was sufficient evidence that Hernandez had violated Section 2.10 of the Authority's Ethics Code. | Swan Dec. 4:6-14; Exhibit 4, pp. 2 and 20-21; Exh. 3, pp. 12-13. |
| 59. Mr. Swan prepared a written report of his findings and sent them to Thella Bowens on or about January 19, 2006. | Swan Dec. 3:25-4:2; Exhibit 4 |
| 60. After reviewing the findings contained in Mr. Swan's January 19, 2006 report, and upon the recommendation of Jeffrey Woodson and the Authority's Director of Human Resources, Diane Richards, Bowens determined that Hernandez' employment should be terminated because it appeared that he had accepted benefits in violation of Section 2.10 of the Authority's Ethics Code. | Bowens Dec. 3:1-10; Exh. 3, pp. 12-13 [Ethics Code]; Woodson Dec. 2:25-3:4 |

///

///

///

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

SEPARATE STATEMENT IN SUPPORT OF
SUMMARY JUDGMENT MOTION

12

40-444

1   **Adjudication No. 11:** This court lacks jurisdiction over Hernandez' Labor Code section 1102.5 cause of action because he failed to exhaust his administrative remedies under Labor
2   Code sections 98.6 and 98.7

| Undisputed Material Fact | Evidence |
|---|---|
| 61. Hernandez has not alleged that he filed a claim with the Labor Commissioner. | See Second Amended Complaint. |

## GENERAL DYNAMICS DISCLOSURE:[2]

**Adjudication No. 12:** Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the General Dynamics' lease, fails as a matter of law because Hernandez could not have had a reasonable belief that the General Dynamics' lease was unlawful.

| Undisputed Material Fact | Evidence |
|---|---|
| 62. Hernandez alleges that he disclosed that the Authority overpaid for the General Dynamics Lease. | Hernandez Depo. 393:6-17 [Exh. 1]. |
| 63. The terms of the General Dynamics Lease are set by statute. | See Public Utilities Code section 170056(f)(1); Hernandez Depo. 391:14-392:24 and 397:8-11 [Exh. 1]. |

**Adjudication No. 13:** Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the General Dynamics' lease, fails as a matter of law because Hernandez has not identified a state or federal statute, rule or regulation of which he disclosed a violation.

| Undisputed Material Fact | Evidence |
|---|---|
| 64. Hernandez alleges that he disclosed that the Authority overpaid for the General Dynamics Lease. | Hernandez Depo. 393:6-17 [Exh. 1]. |
| 65. The terms of the General Dynamics Lease are set by statute. | See Public Utilities Code section 170056(f)(1); Hernandez Depo. 391:14-392:24 and 397:8-11 [Exh. 1]. |

---

[2] For summary adjudication purposes, separate allegedly wrongful acts give rise to separate causes of action - whether or not they are pleaded in the same or separate counts. (*Lillenthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1854-1855.) Accordingly, a motion may be made and granted on the separate allegations - even if the pleader has chosen to combine the claim with other counts within the same numbered cause of action. (*Ibid.*) It is thus proper to adjudicate each of these "disclosures" separately. If the court grants any one of Adjudications 1 through 6 or 10 through 11, then the Court does not need to address Adjudications 12-24, which simply seek to separately adjudicate each alleged protected activity.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

SEPARATE STATEMENT IN SUPPORT OF
SUMMARY JUDGMENT MOTION

13

40-445

1

2  **Adjudication No. 14**: Hernandez' First Cause of Action fails as matter of law, insofar as it is based on any alleged disclosure regarding the General Dynamics' lease, because there is no causal connection between his alleged protected activity and his termination.

3

| Undisputed Material Fact | Evidence |
|---|---|
| 66. Hernandez first made the disclosure regarding the General Dynamics Lease in approximately 2003. | Hernandez 393:1-24 [made the disclosure prior to the ratification of the lease]; Hernandez 396:9-16 [original discussions were as the terms of the agreement were being discussed with the Port]; Hernandez 386:18-22 [General Dynamics' lease was negotiated around the time that the Authority split from the Port] |
| 67. Hernandez' employment with the Authority ended in February 2006. | Hernandez Depo. 114:19-24 [Exh. 1]. |
| 68. Thella Bowens made the decision to terminate Hernandez' employment. | Bowens Dec. 3:1-10 |

### TELEDYNE RYAN DISCLOSURE:

**Adjudication No. 15**: Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the Teledyne Ryan lease, fails as a matter of law because Hernandez could not have had a reasonable belief that the Teledyne Ryan lease was unlawful.

| Undisputed Material Fact | Evidence |
|---|---|
| 69. Hernandez alleges that he disclosed that the Authority overpaid for the Teledyne Ryan lease. | Hernandez Depo. 410:3-11 and 408:3-25 [Exh. 1]. |

**Adjudication No. 16**: Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the Teledyne Ryan lease, fails as a matter of law because Hernandez has not identified a state or federal statute, rule or regulation of which he disclosed a violation.

| Undisputed Material Fact | Evidence |
|---|---|
| 70. Hernandez alleges that he disclosed that the Authority overpaid for the Teledyne Ryan lease. | Hernandez Depo. 410:3-11 and 408:3-25 [Exh. 1]. |
| 71. The Authority's Code contains administrative, regulatory and revenue ordinances of the San Diego County Regional Airport Authority. | Exhibit 7 [Section 1.01 (a)] |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

SEPARATE STATEMENT IN SUPPORT OF          14
SUMMARY JUDGMENT MOTION

| 72. The Authority is a local government entity. | Public Utilities Code section 170002 |
|---|---|

**Adjudication No. 17:** Hernandez' First Cause of Action fails as matter of law, insofar as it is based on any alleged disclosure regarding the Teledyne Ryan lease, because there is no causal connection between his alleged protected activity and his termination.

| Undisputed Material Fact | Evidence |
|---|---|
| 73. At the time that the Authority entered into the lease on the Teledyne Ryan property, it was aware that there was contamination on the property. | Hernandez Depo. 406:4-24 [Exh. 1] |
| 74. Hernandez did not speak to anyone regarding the contamination on the property until after the Authority entered into the lease with regard to the Teledyne Ryan property. | Hernandez Depo. 406:25-408:2 [Exh. 1] |
| 75. Paul Manasjan also expressed dissatisfaction regarding the Teledyne Ryan Lease. | Hernandez Depo. 413:22-414:6 [Exh. 1] |
| 76. Paul Manasjan is still employed at the Authority. | Woodson Dec. 3:19-20. |
| 77. Hernandez first made the disclosure regarding the Teledyne Ryan Lease in late 2003 or 2004. | Hernandez 410:3-16 [Hernandez disclosed to Sexton immediately as they began to make the designs for the SAN Park project]; Hernandez 408:3-14 [developed the design documents for the SAN Park project in late 2003 or 2004] |
| 78. Hernandez' employment with the Authority ended in February 2006. | Hernandez Depo. 114:19-24 [Exh. 1]. |
| 79. Thella Bowens made the decision to terminate Hernandez' employment. | Bowens Dec. 3:1-10 |

///

///

///

## RESTROOM PROJECT DISCLOSURE:

**Adjudication No. 18:** Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the restroom project, fails as a

1 matter of law because Hernandez could not have had a reasonable belief that the restroom
2 project was unlawful.

| Undisputed Material Fact | Evidence |
| --- | --- |
| 80. Hernandez alleges that he disclosed that unless the Authority received space from Host, it would not be able to comply with the ADA regulations on the restroom project, and thus the project was held up. | Hernandez Depo. 343:16-344:4 and 357:10-358:6 [Exh. 1] |

**Adjudication No. 19**: Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the restroom project, fails as a matter of law because Hernandez admits that the Authority did not violate the ADA, nor did it express its intention to violate the ADA.

| Undisputed Material Fact | Evidence |
| --- | --- |
| 81. The Authority never indicated that it did not want to comply with the ADA, nor did the Authority at any time violate the ADA. | Hernandez 366:12-367:21; 371:15-372:22. |

**Adjudication No. 20**: Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the restroom project, fails as a matter of law because Hernandez has not identified a state or federal statute, rule or regulation of which he disclosed a violation.

| Undisputed Material Fact | Evidence |
| --- | --- |
| 82. Hernandez alleges that he disclosed that unless the Authority received space from Host, it would not be able to comply with the ADA regulations on the restroom project, and thus the project was held up. | Hernandez Depo. 343:16-344:4 and 357:10-358:6 [Exh. 1] |
| 83. The Authority's Code contains administrative, regulatory and revenue ordinances of the San Diego County Regional Airport Authority. | Exhibit 7 [Section 1.01 (a)] |
| 84. The Authority is a local government entity. | Public Utilities Code section 170002 |

**Adjudication No. 21**: Hernandez' First Cause of Action, insofar as it is based on any alleged disclosure regarding the restroom project, fails as matter of law because there is no causal connection between his alleged protected activity and his termination.

| Undisputed Material Fact | Evidence |
| --- | --- |

| 85. Hernandez first made the disclosure regarding the restroom project in 2003 or 2004. | Hernandez Depo. 357:19-24 [Exh. 1]. |
|---|---|
| 86. Parsons first raised the issue regarding the necessity of taking the 30 square feet of space in 2002. | Hernandez Depo. 347:16-348:3 [Exh. 1] |
| 87. The investigation into alleged benefits received by Hernandez began in approximately November 2005. | Bowens Dec. 2:7-22; Woodson Dec. 2:5-8. |
| 88. Hernandez' employment with the Authority ended in February 2006. | Hernandez Depo. 114:19-24 [Exh. 1]. |
| 89. Thella Bowens made the decision to terminate Hernandez' employment. | Bowens Dec. 3:1-10 |

## LPI DISCLOSURE

**Adjudication No. 22:** Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding LPi, fails as a matter of law because Hernandez could not have had a reasonable belief that he disclosed unlawful acts.

| Undisputed Material Fact | Evidence |
|---|---|
| 90. Hernandez alleges that he disclosed that LPi underbid the Authority and that LPi double-billed workers' compensation. | Hernandez Depo. 521:3-20 [Exh. 1] |

**Adjudication No. 23:** Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding LPi, fails as a matter of law because Hernandez has not identified a state or federal statute, rule or regulation of which he disclosed a violation.

| Undisputed Material Fact | Evidence |
|---|---|
| 91. The Second Amended Complaint alleges that Hernandez disclosed violations of the Authority's Codes. | Second Amended Complaint 7:26-27; 8:17-19; 9:7-8; 10:11-14 |
| 92. The Authority's Code contains administrative, regulatory and revenue ordinances of the San Diego County Regional Airport Authority. | Exhibit 7 [Section 1.01 (a)] |
| 93. The Authority is a local government entity. | Public Utilities Code section 170002 |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

SEPARATE STATEMENT IN SUPPORT OF SUMMARY JUDGMENT MOTION

17

40-449

**Adjudication No. 24**: Hernandez' First Cause of Action fails as matter of law, insofar as it is based on any alleged disclosure regarding LPi, because there is no causal connection between his alleged protected activity and his termination.

| Undisputed Material Fact | Evidence |
|---|---|
| 94. Hernandez first made the disclosure regarding LPi's expenses in 2004. | Hernandez 493:24-495:15 [Hernandez made his first disclosure at the three-month or six-month submittal]; Sexton Dec. 3:15-17 [the LPi contract began in January 2004] |
| 95. The investigation into alleged benefits received by Hernandez began in approximately November 2005. | Bowens Dec. 2:7-22; Woodson Dec. 2:5-8. |
| 96. Hernandez' employment with the Authority ended in February 2006. | Hernandez Depo. 114:19-24 [Exh. 1]. |
| 97. Thella Bowens made the decision to terminate Hernandez' employment. | Bowens Dec. 3:1-10 |

Dated: August 31, 2007

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

By: *Sandra L. McD*
FRED M. PLEVIN
SANDRA L. MCDONOUGH
ALBERT R. LIMBERG
Attorneys for Defendant
SAN DIEGO COUNTY REGIONAL
AIRPORT AUTHORITY

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

SEPARATE STATEMENT IN SUPPORT OF
SUMMARY JUDGMENT MOTION

18

**EXHIBIT 41**