## SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

### POLICIES

| | | | |
|---|---|---|---|
| ARTICLE | 5 | - | CONTRACTING AND DEBARMENT |
| PART | 5.0 | - | CONTRACTING AND PURCHASING |
| SECTION | 5.03 | - | REQUEST FOR PROPOSALS AND REQUEST FOR QUALIFICATION |

**PURPOSE:**  To direct the preparation of procedures for the Request for Proposal ("**RFP**") and Request for Qualification ("**RFQ**") processes of the San Diego County Regional Airport Authority (the "**Authority**").

**POLICY STATEMENT:**

(1)  In the event that any proposals for the provision of services, procurement of goods or other matters are subject to competitive bidding processes, then the Authority's staff shall prepare for review by the Authority's Executive Director or his or her designee (the "**Executive Director**"), a draft RFP or RFQ, as applicable.

(2)  The Executive Director will have the power to prepare, adopt, modify and amend the procedures (the "**Procedures**") for the RFP and RFQ processes. The Executive Director will deliver the initial Procedures to the Board and will notify the Board of any material amendments, modifications, additions or deletions to the Procedures.

(3)  The RFP and RFQ process shall be conducted in accordance with the Authority's other policies and codes and applicable federal, state and local laws.

[Resolution No. 2002-02 dated September 20, 2002.]
[Superceded by Resolution No. _____ dated _____.]

**53-611 (544)**

# SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

## POLICIES

| | | | |
|---|---|---|---|
| **ARTICLE** | **5** | – | **CONTRACTING AND DEBARMENT** |
| **PART** | **5.0** | – | **CONTRACTING AND PURCHASING** |
| **SECTION** | **5.04** | – | **COOPERATIVE PURCHASING** |

**PURPOSE:** To permit the Authority to use the competitively awarded purchasing contracts of other public agencies for the acquisition of supplies, materials and equipment. The use of this alternative contracting method provides the Authority with the ability to reduce the cost of purchasing supplies, materials, and equipment by pooling the purchasing power of more than one public agency or by avoiding the expenses of conducting its own individual competitive process.

**POLICY STATEMENT:**

(1)    The San Diego County Regional Airport Authority Act (Public Utilities Code section 170040) states that the Authority "may contract with any department or agency of the United States, with any state or local governmental agency, or with any person upon whose terms and conditions that the authority finds are in its best interests." Government Code section 6500 *et seq.*, provides that public agencies by agreement may jointly exercise any power common to the contracting parties, even though one or more of the parties may be located outside the state of California.

(2)    The procurement of supplies, materials and equipment is governed by Policy Section 5.01(2) subsections (a) through (c). In some instances, however, the Authority shall be allowed to enter into a cooperative procurement arrangement, joint powers agreement or other agreement to purchase supplies, materials and equipment as long as a competitive selection process was used by the other public agency to secure the underlying contract for the supplies, materials or equipment.

(3)    In accordance with Public Utilities Code section 170040 and Government Code section 6500 *et seq.*, the Authority is hereby authorized to use cooperative procurement arrangements, joint powers agreements or other agreements for the purpose of combining resources to increase efficiency or reduce administrative expenses in the purchase of supplies, materials and equipment.

53-611 (545)

Policy Section No. 5.04

(4)    The Authority may participate in cooperative procurement arrangements, joint powers agreements or other agreements with one or more other public bodies, or agencies of the United States for the purchase of supplies, materials and equipment if: (1) a public competitive selection process was used to secure the underlying contracts for goods, supplies or equipment with the lead public agency; (2) the Authority has identified a need for the supplies, materials or equipment; (3) a copy of the agreement or other written proof is security by the Authority reflecting that a public competitive process was used; and (4) it is determined to be in the best interest of the Authority to use the alternative contracting method described herein.

[Adopted by Resolution No. 2006-0046 dated May 1, 2006.]

53-611 (546)

### SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

### POLICIES

**ARTICLE  5**   -   **CONTRACTING AND DEBARMENT**
**PART   5.1**   -   **EQUAL OPPORTUNITY**
**SECTION  5.10**  -   **COMPLIANCE WITH EQUAL EMPLOYMENT OPPORTUNITY AND NONDISCRIMINATION POLICY**

---

**PURPOSE:**   To establish a formal policy statement of the Board of Directors (the "**Board**") of the San Diego County Regional Airport Authority (the "**Authority**") to ensure that contractors and lessees adhere to:  Title VII of the Civil Rights Act of 1964, as amended; the Civil Rights Act of 1991; the California Fair Employment and Housing Act; and any other applicable federal, state and local law or regulation relating to equal employment opportunity and nondiscrimination, including any such law, regulation and policy hereinafter enacted.

**POLICY STATEMENT:**

It is the policy of the Authority that all contractors and lessees interested in conducting business with the Authority shall not discriminate against any employee or applicant for employment because of race, color, religion, sex, national origin, ancestry, physical or mental disability, veteran status, medical condition, marital status, age (40 years and older), sexual orientation, pregnancy or other non-job related criteria and shall take action to assure applicants are employed and that employees are treated during employment, without regard to race, color, religion, sex, national origin, ancestry, physical or mental disability, veteran status, medical condition, marital status, age (40 years and older), sexual orientation, pregnancy or other non-job related criteria.

The Authority shall require all prospective contractors and lessees to complete and file with the Authority an Equal Employment Opportunity and Nondiscrimination Program and Statement of Compliance for the promotion of equal employment opportunities and nondiscrimination.

Further, the Authority believes that diversity in the workforce provides a variety of perspectives, promotes the exchange of ideas and provides an ability to respond to a diverse community.  This statement is provided to reaffirm the Authority's commitment to equal employment opportunity and nondiscrimination and to require its contractors and lessees to ensure that all employment actions shall be administered in a manner to further the principle of equal employment opportunity and nondiscrimination.

**PROVISIONS:**

(1)     The Board hereby declares that from the effective date of this policy, there shall be included in contract and lease documents covering services or lands under the control of the Authority, a provision requiring the contractor or lessee to formulate and file with the Authority

---

sd-101233                                                                              Page 1 of 2

**53-611 (547)**

an Equal Employment Opportunity and Nondiscrimination Program and Statement of Compliance for the promotion of equal employment opportunities and nondiscrimination. The contract or lease provision shall be included in all new, renewed and substantially amended contracts or leases. A sublessee who is the prime operator on leased premises shall be considered the lessee for the purposes and provisions of this policy.

(2)     The contract or lease provision incorporating the Equal Employment Opportunity and Nondiscrimination Program and Statement of Compliance requirement shall provide that the Authority may, upon reasonable notice and at reasonable times, have access to employment records so that the effectiveness of the Equal Employment Opportunity and Nondiscrimination Program may be evaluated. Contractor or lessee shall further be required to file the Equal Employment Opportunity and Nondiscrimination Program and Statement of Compliance annually with the Authority for approval and make such progress reports as required by the Authority.

(3)     Prior to final Board action on a new, renewed or a substantially amended contract or lease, contractor or lessee shall file with the office of Equal Opportunity Management an Equal Employment Opportunity and Nondiscrimination Program and Statement of Compliance for review and approval.

(4)     Currently exempt from the requirements of this policy are:

    (a)     Any lessee granted a lease for a term of five years or less;

    (b)     Any lessee with an average annual employment operating from the premises of 50 or less employees; provided, however, that said policy shall be applicable at any time said annual employment level exceeds 50 employees; and

    (c)     Any contractor or lessee who is subject to a federally mandated affirmative action program for employees, provided such contractor or lessee shall annually certify to the Authority that it is subject to such a program, and, upon request of the Authority, shall furnish evidence thereof.

(5)     This policy shall be reviewed and updated annually and when required by law.

[Resolution No. 2002-02 dated September 20, 2002.]
[Superceded by Resolution No. _____ dated _____.]

53-611 (548)

## SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

### POLICIES

ARTICLE  5    -   CONTRACTING AND DEBARMENT
PART  5.1   -   EQUAL OPPORTUNITY
SECTION  5.11  -   EQUAL OPPORTUNITY CONTRACTING POLICY

---

**PURPOSE:**   To promulgate a formal policy statement of the Board of Directors (the "**Board**") of the San Diego County Regional Airport Authority (the "**Authority**") to ensure that all businesses, including Disadvantaged Business Enterprises ("**DBEs**"), shall have the maximum opportunity to participate in the performance of all Authority and Department of Transportation ("**DOT**") assisted contracts and leasing opportunities.

**POLICY STATEMENT:**

(1)     Definitions: DBEs are for-profit, small business concerns that are at least 51% owned by one or more individuals who are both socially and economically disadvantaged or, in the case of a corporation, in which 51% of the stock is owned by one or more such individuals; and whose management and daily business operations are controlled by one or more of the socially and economically disadvantaged individuals who own it.

Socially and economically disadvantaged individuals means any individual who is a citizen or lawfully admitted permanent resident of the United States and who is:

        (a)     Any individual found to be socially and economically disadvantaged on a case-by-case basis;

        (b)     Any individual in the following groups, members of which are rebuttably presumed to be socially and economically disadvantaged:

                (i)      Black Americans;

                (ii)     Hispanic Americans;

                (iii)    Native Americans;

                (iv)     Asian-Pacific Americans;

                (v)      Subcontinent Asian Americans;

                (vi)     Women; and/or

                (vii)    Any additional groups whose members are designated as socially and economically disadvantaged by the Small Business Administration.

---

sd-101214                                                           Page 1 of 2

**53-611 (549)**

POLICY SECTION NO. 5.11

(2)      It is the policy of the Authority that all businesses, including those that meet the definition of socially and economically disadvantaged, as defined in 49 Code of Federal Regulations ("CFR") Part 26, be provided equal access to participate in the performance of all Authority and in DOT-assisted contract and leasing opportunities.

(3)      The Authority further has committed to take all necessary and reasonable steps to increase its utilization of DBEs to the extent feasible and legally permissible. It is also the Authority's policy to prohibit discrimination against any person because of race, color, religion, sex, national origin, ancestry, physical or mental disability, veteran status, medical condition, marital status, age (40 years and older), sexual orientation, pregnancy or other non-job related criteria, in the award or performance of Authority and DOT-assisted contracts or leases.

(4)      The Authority will create a level playing field on which DBEs can compete fairly for Authority and DOT-assisted contracts and ensure that the DBE program is narrowly tailored in accordance with applicable law. The Authority will strive to ensure that only firms that fully meet 49 CFR Part 26 eligibility standards are permitted to participate as DBEs. This policy will help remove barriers to the participation of DBEs in Authority and DOT-assisted contracts and assist in the development of firms to compete successfully in the marketplace outside the DBE program.

(5)      The Authority will take such action as may be necessary to ensure that, to the maximum extent practicable, at least 10% of all businesses at the airport(s) under the Authority's control that sell food, beverages, printed materials or other consumer products to the public, are small business concerns (as defined by the U.S. Secretary of Transportation by regulation), owned and controlled by socially and economically disadvantaged individuals.

(6)      The Director of Equal Opportunity Management shall be responsible for implementation of the Authority's DBE program and ensuring that the Authority's employees, agents, lessees and contractors adhere to the provisions of the DBE program. Implementation of the DBE program is accorded the same priority as compliance with all other legal obligations incurred by the Authority.

(7)      This policy shall be reviewed and updated annually and when required by law.

[Resolution No. 2002-02 dated September 20, 2002.]
[Superceded by Resolution No. _____ dated _____.]

53-611 (550)

# SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

## POLICIES

**ARTICLE 5    -    CONTRACTING AND DEBARMENT**
**PART 5.2    -    THIRD-PARTY CLAIMS**
**SECTION 5.20    -    ADJUSTMENT AND SETTLEMENT OF THIRD-PARTY CLAIMS**

---

**PURPOSE:**  To establish a policy governing adjustment and settlement of claims by the San Diego County Regional Airport Authority (the "**Authority**").

**POLICY STATEMENT:**

(1)    The Authority's Executive Director or his or her designee (the "**Executive Director**") shall be responsible for establishing guidelines for the processing, adjustment and final settlement of claims either against or on behalf of the Authority.

(2)    Claims <u>against</u> the Authority shall be:

    (a)    Considered for payment only after they have been filed with the Authority within the time limits allowed by California law;

    (b)    Presented to the Board together with the recommendation of the Executive Director and the Authority's General Counsel (the "**General Counsel**") for action by the Authority's Board of Directors (the "**Board**") after they have been investigated and reviewed by the Executive Director; and

    (c)    Followed up by written notice of the Board's action to the claimant, as required by law.

(3)    Claims <u>by</u> the Authority shall be:

    (a)    Whenever any Authority property is damaged or injured, an investigation and a written report of the findings shall be made to the Executive Director or his/her designee and reviewed by the General Counsel;

    (b)    The Executive Director and General Counsel shall take appropriate steps to collect such claims; and

    (c)    Offers to compromise such claims for less than the full amount of the claim shall be presented to the Board for action together with the recommendation of the Executive Director and General Counsel.

[Resolution No. 2002-02 dated September 20, 2002.]
[Superceded by Resolution No. _____ dated _____.]

---

**53-611 (551)**



# SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

## POLICIES

**ARTICLE 6** - **REAL PROPERTY MANAGEMENT**
**PART 6.0** - **LEASES**
**SECTION 6.01** - **LEASING POLICY**

---

**PURPOSE:** To establish general policies and practices relating to the negotiation of new leases, consent to subleases, assignment of existing leases and amendment of existing leases by the San Diego County Regional Airport Authority (the "Authority").

**POLICY STATEMENT:**

(1)    <u>Negotiation of New Leases</u>.

    (a)    <u>Leasing Authority</u>.  The Authority's Executive Director or his or her designee (the "**Executive Director**") shall bring all proposed occupancy permits and grants of privileges and franchises exceeding five years in duration to the Authority's Board of Directors (the "**Board**") for approval.  Subsequent to approval by the Board, the Executive Director shall enter into and execute on behalf of the Authority all such occupancy permits and grants of privileges and franchises.

    The Executive Director may enter into and execute occupancy permits and grants of privileges and franchises not exceeding five years in duration without first bringing the agreements, occupancy permits and grants of privileges and franchises to the Board for approval.  The Executive Director shall inform the Board on a regularly scheduled basis of all such agreements, permits and grants entered into and executed on behalf of the Authority without the prior approval of the Board.

    (b)    <u>Leasing Policy</u>.  The Authority shall seek market value when leasing or renting real property and shall reflect market terms and conditions in lease agreements.  Although the Authority shall seek market value when leasing or renting real property, in certain cases rent discounts and/or other concessions may be warranted.  The Authority shall grant rent discounts and/or other concessions only after consideration of the value of the rent discount or other concession, including, without limitation, the Authority's participation in development expenses, relative to the market value of the lease.

    The Authority shall grant leases of real property on a competitive basis to the prospective tenant that in the opinion of the Authority:  (1) proposes a development or utilization that fulfills Authority land use and development criteria for the property; (2) demonstrates an economically feasible program that will produce a market value rental return to the Authority over the term of the lease; and (3) possesses the financial capacity and managerial ability to develop and maintain the property at its highest and best use over the term of the lease.

---

sd-101545

**53-611 (552)**



Authority leases shall reflect percentage rents for land uses that are typically paid on a percentage rent basis and shall reflect flat rents for land uses that are typically paid on a flat rent basis. Percentage rents shall be expressed in terms of a percentage rental rate for gross revenue derived from an identified land use versus a minimum fixed rent for the land and improvements leased or rented. Flat rents shall be expressed in terms of fixed rent for the land and improvements leased or rented. Both percentage rent tenants and flat rent tenants shall be responsible for all expenses associated with development and operation of the premises by the tenant.

Authority leases that reflect percentage rents shall provide for periodic adjustment of minimum rent based on the relative change in the Consumer Price Index and for periodic review of percentage rent and minimum rent based on a current market value. The Executive Director shall determine whether a third party appraisal is necessary to determine such market value.

Authority leases shall provide for arbitration in the event the Authority and the tenant cannot agree on the rent for a rental period. In accordance with applicable sections of the *California Code of Civil Procedure*, three arbiters shall conduct the arbitration. The Authority and the tenant shall each appoint an arbiter. The two arbiters appointed by the Authority and the tenant shall appoint the third arbiter. The three arbiters must be qualified real estate appraisers that are licensed to practice within the state of California.

Authority leases shall reflect a length of term commensurate with the time reasonably required for amortization of the capital investment or reinvestment to be made in the premises by the tenant as a condition of the lease.

The Authority's leases shall, at the option of the Authority, require removal by the tenant of all improvements to the premises attributable to any capital investment or reinvestment in the premises by the tenant upon the terms and conditions set forth by the Executive Director.

(2)  Consent to Sublease.

(a)  Subleasing Authority. The Executive Director shall bring all proposed subleases exceeding five years in duration to the Board for its prior consent. Subsequent to the Board's prior consent, the Executive Director shall have the authority to consent to all such subleases on behalf of the Authority.

The Executive Director may consent to subleases not exceeding five years in duration without first bringing the subleases to the Board for its prior consent. The Executive Director shall inform the Board on a regularly scheduled basis of all such subleases consented to on behalf of the Authority without the prior consent of the Board.

(b)  Subleasing Policy. The Authority shall consent to subleases of real property provided the sublease incorporates and acknowledges the preeminent unsubordinated control of the Authority and, in the opinion of the Authority, the sublessee: (1) proposes a development or utilization that fulfills Authority land use and development criteria for the property; (2) demonstrates an economically feasible program that will produce a market value rental return to the Authority over the term of the sublease; and (3) possesses the financial capacity and managerial ability to develop and maintain the property at its highest and best use over the term of the sublease.

The Authority shall oppose subleases of real property when the sublessor, through the proposed sublease, will profit not on its investment or operation, but on the value of the real property leased from the Authority. Such circumstances arise when the contract rental value of the sublease premises is less than the market rental value of the sublease premises for the duration of the sublease. In such circumstances, the Authority shall not consent to the sublease unless it receives for its consent an amount equal to the difference between the market rental value of the sublease premises for the duration of the sublease and the contract rental value of the sublease premises for the duration of the sublease.

(3)    Assignment of Existing Leases.

(a)    Lease Assignment Authority. The Executive Director shall bring all proposed assignments of leasehold interests with a remaining term exceeding five years in duration to the Board for its prior consent. Subsequent to approval by the Board, the Executive Director shall consent to all such assignments on behalf of the Authority.

The Executive Director may consent to assignments of leasehold interests with remaining term not exceeding five years in duration without first bringing the assignments to the Board for its prior consent. The Executive Director shall inform the Board on a regularly scheduled basis of all such assignments consented to on behalf of the Authority without the prior consent of the Board.

(b)    Lease Assignment Policy. The Authority shall consent to assignment of leasehold interests provided, in the opinion of the Authority, the assignee: (i) proposes a development or utilization that fulfills Authority land use and development criteria for the property; (ii) demonstrates an economically feasible program that will produce a market value rental return to the Authority over the remaining term of the lease; and (iii) possesses the financial capacity and managerial ability to develop and maintain the property at its highest and best use over the remaining term of the lease.

The Authority shall oppose assignments of leasehold interests when the assignor, through the proposed assignment, will profit not on its investment or operation, but on the value of the real property leased from the Authority. Such circumstances arise when the contract rental value of the lease premises is less than the market rental value of the lease premises for the remaining term of the lease. In such circumstances, the Authority shall not consent to the assignment unless it receives for its consent an amount equal to the difference between the market rental value of the lease premises for the remaining term of the lease and the contract rental value of the lease premises for the remaining term of the lease.

In the event the Authority, the assignor and the assignee cannot agree on the market rental value of the lease premises, the Authority shall consent to the assignment and the market rental value of the lease premises shall be referred to arbitration, provided all conditions to such consent set forth in the lease or provided by law have been satisfied. And, in addition, the Authority and assignee agree to pay their respective costs associated with the arbitration.

(4)    Amendment of Existing Leases.

(a)    Lease Amendment Authority. The Executive Director shall bring all proposed amendments to leases with a remaining term exceeding five years in duration to the Board for

53-611 (554)

approval. Subsequent to approval by the Board, the Executive Director shall enter into and execute on behalf of the Authority all such amendments.

The Executive Director may enter into and execute on behalf of the Authority amendments to leases with remaining term not exceeding five years in duration without first bringing the amendments to the Board for approval. The Executive Director shall inform the Board on a regularly scheduled basis of all such amendments on behalf of the Authority without the prior approval of the Board.

(b)    Lease Amendment Policy. The Authority shall grant amendments to leases of real property provided, in the opinion of the Authority, the lessee: (i) proposes a development or utilization that fulfills Authority land use and development criteria for the property; (ii) demonstrates an economically feasible program that will produce a market value rental return to the Authority over the remaining term of the lease; and (iii) possesses the financial capacity and managerial ability to develop and maintain the property at its highest and best use over the remaining term of the lease.

The Authority shall oppose amendments to leases of real property when the lessee, through the amended lease, will profit not on its investment or operation, but on the value of the real property leased from the Authority. Such circumstances arise when the contract rental value of the lease premises under the Authority's lease is less than the market rental value of the lease premises for the remaining term of the lease. In such circumstances, the Authority shall not grant the amendment unless it receives for its consent an amount equal to the difference between the market rental value of the lease premises for the remaining term of the lease and the contract rental value of the lease premises under the Authority's lease for the remaining term of the lease.

[Resolution No. 2002-02 dated September 20, 2002.]
[Superceded by Resolution No. _____ dated _____.]

**53-611 (555)**

)

**EXHIBIT 8**

**CALIFORNIA FORM 700**
FAIR POLITICAL PRACTICES COMMISSION

**STATEMENT OF ECONOMIC INTERESTS**

**COVER PAGE**

*A Public Document*

Date Stamp
Official Use Only
**FEB 0 9 2005**
**Corporate Services**
✔

Please type or print in ink

| NAME (LAST) | (FIRST) | (MIDDLE) | DAYTIME TELEPHONE NUMBER |
|---|---|---|---|
| Hernandez | Jose | De Jesus | ( 619 ) 400-2690 |

| MAILING ADDRESS STREET (May use business address) | CITY | STATE | ZIP CODE | OPTIONAL: FAX / E-MAIL ADDRESS |
|---|---|---|---|---|
| 3225 N. Harbor Drive | San Diego | CA | 92101 | |

### 1. Office, Agency, or Court

Name of Office, Agency, or Court:

San Diego County Regional Airport Authority

Division, Board, District, if applicable:

Landside Operations

Your Position:

Director

→ If filing for multiple positions, list additional agency(ies)/
position(s): (Attach a separate sheet if necessary.)

Agency: _____

Position: _____

### 2. Jurisdiction of Office (Check at least one box)

☐ State
☐ County of _____
☐ City of _____
☐ Multi-County _____
☒ Other  San Diego County Regional Airport Authority

### 3. Type of Statement (Check at least one box)

☒ Assuming Office/Initial  Date: 12 / 14 / 04

☐ Annual: The period covered is January 1, 2004,
through December 31, 2004.

-or-

○ The period covered is _____/_____/_____, through
December 31, 2004.

☐ Leaving Office  Date Left: _____/_____/_____
(Check one)

○ The period covered is January 1, 2004, through the
date of leaving office.

-or-

○ The period covered is _____/_____/_____ through
the date of leaving office.

☐ Candidate

### 4. Schedule Summary

(Check applicable schedules or "No reportable interests.")

→ During the reporting period, did you have any reportable
interests to disclose on:

Schedule A-1      ☐ Yes – schedule attached
*Investments (Less than 10% Ownership)*

Schedule A-2      ☐ Yes – schedule attached
*Investments (10% or greater Ownership)*

Schedule B        ☐ Yes – schedule attached
*Real Property*

Schedule C        ☐ Yes – schedule attached
*Income, Loans, & Business Positions (Income Other than Gifts and
Travel Payments)*

Schedule D (Eliminated – report loans on Schedule C)

Schedule E        ☐ Yes – schedule attached
*Income – Gifts*

Schedule F        ☐ Yes – schedule attached
*Income – Travel Payments*

-or-

→ ☒ No reportable interests on any schedule

Total number of pages
completed including this cover page: ____1____

### 5. Verification

I have used all reasonable diligence in preparing this statement.
I have reviewed this statement and to the best of my knowledge
the information contained herein and in any attached schedules
is true and complete.

I certify under penalty of perjury under the laws of the State
of California that the foregoing is true and correct.

Date Signed _____February 4, 2005_____
(month, day, year)

Signature _____
(File the originally signed statement with your filing official.)

FPPC Form 700 (2004/2005)
FPPC Toll-Free Helpline: 866/ASK-FPPC

SDRAA 140

**EXHIBIT 9**

53-611 (558)

CALIFORNIA FORM **700**
FAIR POLITICAL PRACTICES COMMISSION

**STATEMENT OF ECONOMIC INTERESTS**

**COVER PAGE**

*A Public Document*

SDC 8A

Date Received
Official Use Only

Corporate Services

*Please type or print in ink*

| NAME (LAST) | (FIRST) | (MIDDLE) | DAYTIME TELEPHONE NUMBER |
|---|---|---|---|
| Hernandez | Jose | De Jesus | (619) 670-6632 |

MAILING ADDRESS    STREET    CITY    STATE    ZIP CODE    OPTIONAL: FAX / E-MAIL ADDRESS
(May use business address)

10139 Tres Lagos Court Spring Valley CA 91977

## 1. Office, Agency, or Court

Name of Office, Agency, or Court: San Diego County
Regional Airport Authority

Division, Board, District, if applicable:

Your Position:
Director, Landside Operations

➡ If filing for multiple positions, list additional agency(ies)/
position(s): (Attach a separate sheet if necessary.)

Agency: _____

Position: _____

## 2. Jurisdiction of Office *(Check at least one box)*

☐ State

☒ County of San Diego

☐ City of _____

☐ Multi-County _____

☐ Other _____

## 3. Type of Statement *(Check at least one box)*

☐ Assuming Office/Initial    Date: ___/___/___

☐ Annual: The period covered is January 1, 2005,
through December 31, 2005.

-or-

○ The period covered is ___/___/___, through
December 31, 2005.

☒ Leaving Office Date Left 02/07/06
(Check one)

○ The period covered is January 1, 2005, through
the date of leaving office.

-or-

○ The period covered is ___/___/___, through
the date of leaving office.

☐ Candidate

## 4. Schedule Summary

➡ Total number of pages
including this cover page: **1**

➡ **Check applicable schedules or "No reportable interests."**

I have disclosed interests on one or more of the
attached schedules:

Schedule A-1    ☐ Yes – schedule attached
*Investments (Less than 10% Ownership)*

Schedule A-2    ☐ Yes – schedule attached
*Investments (10% or greater Ownership)*

Schedule B    ☐ Yes – schedule attached
*Real Property*

Schedule C    ☐ Yes – schedule attached
*Income, Loans, & Business Positions (Income Other than Gifts and Travel Payments)*

Schedule D    ☒ Yes – schedule attached
*Income – Gifts*

Schedule E    ☐ Yes – schedule attached
*Income – Travel Payments*

-or-

☐ No reportable interests on any schedule

## 5. Verification

I have used all reasonable diligence in preparing this
statement. I have reviewed this statement and to the best
of my knowledge the information contained herein and in any
attached schedules is true and complete.

**I certify under penalty of perjury under the laws of the State
of California that the foregoing is true and correct.**

Date Signed 2/12/06
(month, day, year)

Signature _____
(File the originally signed statement with your filing official.)

FPPC Form 700 (2005/2006)
FPPC Toll-Free Helpline: 866/ASK-FPPC

53-611 (559)

**SCHEDULE D**
**Income − Gifts**

CALIFORNIA FORM **700**
FAIR POLITICAL PRACTICES COMMISSION
Name

> NAME OF SOURCE
ACE PARKING
ADDRESS
SAN DIEGO
BUSINESS ACTIVITY, IF ANY, OF SOURCE
PARKING MANAGEMENT

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $275 | PADRE TICKET |
| __/__/__ | $45 | GOLF |
| __/__/__ | $30 | LUNCH (3) |

> NAME OF SOURCE
IMAGE CONCEPTS
ADDRESS
SAN DIEGO
BUSINESS ACTIVITY, IF ANY, OF SOURCE
UNIFORMS

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $150 | UNIFORM SAMPLE! |
| __/__/__ | $ | |
| __/__/__ | $ | |

> NAME OF SOURCE
LINDBERGH PARKING INC
ADDRESS
SAN DIEGO AIRPORT
BUSINESS ACTIVITY, IF ANY, OF SOURCE
PARKING MANAGEMENT

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $60 | LUNCH (4) |
| __/__/__ | $60 | LUNCH (4) |
| __/__/__ | $60 | LUNCH (4) |

> NAME OF SOURCE
THE BAGGAGE CLAIMERS
ADDRESS
SAN DIEGO AIRPORT
BUSINESS ACTIVITY, IF ANY, OF SOURCE
BAGGAGE DELIVERY

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $45 | GOLF |
| __/__/__ | $35 | GOLF |
| __/__/__ | $35 | GOLF |

> NAME OF SOURCE
GARY KOUCH - PARK 'N' FLY
ADDRESS
LOS ANGELES
BUSINESS ACTIVITY, IF ANY, OF SOURCE
PARKING MANAGEMENT

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $85 | GOLF |
| __/__/__ | $85 | GOLF |
| __/__/__ | $ | |

> NAME OF SOURCE
SOUTHWEST AIRLINES
ADDRESS
SAN DIEGO AIRPORT
BUSINESS ACTIVITY, IF ANY, OF SOURCE
AIRLINE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $120 | FOOTBALL TICKETS |
| __/__/__ | ~~$100~~ | ~~AIRFARE~~ |
| __/__/__ | $ | |

Comments: THE ABOVE IS A SUMMARY OF GIFTS AS DETAILE. TO THE BEST OF MY ABILITY. THE FILE CONTAINING THE EXACT INFORMATION WITH THE PROPER DATES IS NO LONGER AVAILABLE.

FPPC Form 700 (2005/2006) Sch. D
FPPC Toll-Free Helpline: 866/ASK-FPPC

53-611 (560)

**EXHIBIT 10**



**CALIFORNIA FORM 700**
FAIR POLITICAL PRACTICES COMMISSION

## STATEMENT OF ECONOMIC INTERESTS
### COVER PAGE
*A Public Document*

Date Received
Official Use Only

Please type or print in ink

| NAME | (LAST) | (FIRST) | (MIDDLE) | DAYTIME TELEPHONE NUMBER |
|---|---|---|---|---|
| | HERNANDEZ | Jose | De Jesus | (619) 403-0045 |

MAILING ADDRESS    STREET    CITY    STATE    ZIP CODE    OPTIONAL: FAX / E-MAIL ADDRESS
(May use business address)
10139 Tres Lagos Court    Spring Valley    CA    91977

### 1. Office, Agency, or Court
Name of Office, Agency, or Court:
San Diego County Regional Airport Authority

Division, Board, District, if applicable:

Your Position:
Director, Landside Operations

➡ If filing for multiple positions, list additional agency(ies)/position(s): (Attach a separate sheet if necessary.)

Agency: _____

Position: _____

### 2. Jurisdiction of Office (Check at least one box)
☐ State
☒ County of San Diego
☐ City of _____
☐ Multi-County _____
☐ Other _____

### 3. Type of Statement (Check at least one box)
☐ Assuming Office/Initial    Date: ___/___/___

☒ Annual: The period covered is January 1, 2005, through December 31, 2005.

-or-

☒ The period covered is 01/01/05 through December 31, 2005.

☒ Leaving Office  Date Left: ___/___/___
(Check one)

○ The period covered is January 1, 2005, through the date of leaving office.

-or-

☒ The period covered is 01/01/05 through the date of leaving office.

☐ Candidate

### 4. Schedule Summary
➡ Total number of pages
Including this cover page: 2

➡ Check applicable schedules or "No reportable interests."
I have disclosed interests on one or more of the attached schedules:

Schedule A-1  ☐ Yes – schedule attached
*Investments (Less than 10% Ownership)*

Schedule A-2  ☐ Yes – schedule attached
*Investments (10% or greater Ownership)*

Schedule B  ☐ Yes – schedule attached
*Real Property*

Schedule C  ☐ Yes – schedule attached
*Income, Loans, & Business Positions (Income Other than Gifts and Travel Payments)*

Schedule D  ☐ Yes – schedule attached
*Income – Gifts*

Schedule E  ☒ Yes – schedule attached
*Income – Travel Payments*

-or-

☐ No reportable interests on any schedule

### 5. Verification
I have used all reasonable diligence in preparing this statement. I have reviewed this statement and to the best of my knowledge the information contained herein and in any attached schedules is true and complete.

I certify under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date Signed 4, 21, 2006
(Month, day, year)

Signature _____
(File the originally signed statement with your filing official)

FPPC Form 700 (2005/2006)
FPPC Toll-Free Helpline: 866/ASK-FPPC

JH 8

**53-611 (562)**

## SCHEDULE E
### Income – Gifts
### Travel Payments, Advances,
### and Reimbursements

| CALIFORNIA FORM | 700 |
| --- | --- |
| FAIR POLITICAL PRACTICES COMMISSION | |

Name *Jose Hernandez*

---

- Reminder – you must mark the gift or income box.
- You are not required to report "Income" from government agencies.

> NAME OF SOURCE
*Hawaiian Airlines*

ADDRESS
*San Diego International Airport*

CITY AND STATE
*San Diego   CA 92101*

BUSINESS ACTIVITY, IF ANY, OF SOURCE
*Airline*

DATE(S): *05/2004* ___ AMT: $ *0.00*
(if applicable)

TYPE OF PAYMENT: (must check one) ☒ Gift ☐ Income

DESCRIPTION: *Airline Tickets*
*Space Available Passes*
*Standby use only*

> NAME OF SOURCE
*Southwest Airlines*

ADDRESS
*San Diego International Airport*

CITY AND STATE
*San Diego   CA 92101*

BUSINESS ACTIVITY, IF ANY, OF SOURCE
*Airport*

DATE(S): *CY 2004* ___ AMT: $ *0.00*
(if applicable)

TYPE OF PAYMENT: (must check one) ☒ Gift ☐ Income

DESCRIPTION: *Airline Tickets*
*Buddy Passes*
*Stand By Use only*

> NAME OF SOURCE
_____

ADDRESS
_____

CITY AND STATE
_____

BUSINESS ACTIVITY, IF ANY, OF SOURCE
_____

DATE(S): ___/___/___ - ___/___/___ AMT: $ _____
(if applicable)

TYPE OF PAYMENT: (must check one) ☐ Gift ☐ Income

DESCRIPTION: _____

> NAME OF SOURCE
_____

ADDRESS
_____

CITY AND STATE
_____

BUSINESS ACTIVITY, IF ANY, OF SOURCE
_____

DATE(S): ___/___/___ - ___/___/___ AMT: $ _____
(if applicable)

TYPE OF PAYMENT: (must check one) ☐ Gift ☐ Income

DESCRIPTION: _____

---

Comments: *Tickets were issued on a "Space Available"*
*basis, "Stand By" use only.*

JH 9

FPPC Form 700 (2005/2006) Sch. E
FPPC Toll-Free Helpline: 866/ASK-FPPC



P. 5

## SCHEDULE D
## Income – Gifts



CALIFORNIA FORM **700**
FAIR POLITICAL PRACTICES COMMISSION

Name
_Jose Hernandez_

---

> NAME OF SOURCE
_Acta Bowling_

ADDRESS
_Bowling Management_

BUSINESS ACTIVITY, IF ANY, OF SOURCE
_10/88          SD Chargers_

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $ | |
| __/__/__ | $ | |
| 12/04 | $600 | Charger Football |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $ | |
| __/__/__ | $ | |
| __/__/__ | $ | |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $ | |
| __/__/__ | $ | |
| __/__/__ | $ | |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $ | |
| __/__/__ | $ | |
| __/__/__ | $ | |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $ | |
| __/__/__ | $ | |
| __/__/__ | $ | |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| __/__/__ | $ | |
| __/__/__ | $ | |
| __/__/__ | $ | |

Comments: _____

---

**JH 10**

FPPC Form 700 (2005/2006) Sch. D
FPPC Toll-Free Helpline: 866/ASK-FPPC

**53-611 (564)**

**EXHIBIT 11**

# SIGN IN SHEET

**COURSE NAME** Conflict of Interest

**DATE** 2-4-05

| NAME | TITLE | DEPARTMENT | EXTENSION |
|------|-------|-----------|-----------|
| N. ELLINGTON | (signature) | HR | 2519 |
| Howard Kourik | H. Kourik | IT | 2500 |
| Chris Murphy | (signature) | FDD | 2649 |
| Rob Wilmington | (signature) | MC | 2867 |
| Joseph Federman | (signature) | Fac. Mx. | 2730 |
| Cathy Hollain | Cathy Hollain | FDD | 2653 |
| Cheryl Brown | Cheryl Brown | Marketing & Communication | 2870 |
| Linda Johnson | Linda Johnson | Airport System Planning | 2463 |
| Richard Shime | (signature) | FDD | 2624 |
| maria upunker | maria upunker | Customer Serv | x2887 |
| Clifford Massey | Clifford Massey | Landside | 2693 |
| Edward Cook | (signature) | PROC | 2542 |
| Mukundan Varadharan | (signature) | I.T. | 2490 |

53-611 (566)

# SIGN IN SHEET

**COURSE NAME** *Conflict of Interest*

**DATE** 2-4-05

| NAME | SIGNATURE | DEPARTMENT | EXTENSION |
|---|---|---|---|
| Fred Bolger | *[signature]* | OCA | 2437 |
| CANH TRAN | *[signature]* | FDD | 2645 |
| Rick Trummer | *[signature]* | FDD | 2622 |
| Paul Manasjan | *[signature]* | EAD | 2783 |
| Richard Gibb | *[signature]* | EAD | 2790 |
| Larry Rodriguez | Larry Rodriguez | Procurement | 2543 |
| Wayne Harvey | Wayne Harvey | Fac. Main | 2727 |
| T. Leech | *[signature]* | REM | 2577 |
| RON LARSON | *[signature]* | LANDSIDE MTO | 2700 |
| Diana Lucero | Diana Lucero | P+CR | 2879 |
| Steve Shultz | Steve Shultz | P+CR | 2881 |
| Mike Flanagan | S. M. Flanagan | Audit | 2438 |
| William Hornung | William Hornung | Purchasing | 2535 |

53-611 (567)

**SIGN IN SHEET**

COURSE NAME _Conflict of Interest_

DATE _2-4-05_

| NAME | SIGNATURE | DEPARTMENT | EXTENSION |
|---|---|---|---|
| Jose Hernandez | | LANDSIDE | 2690 |
| DAN FRAZEE | | ENVIRONMENTAL AFFAIRS | 2785 |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**53-611 (568)**

**EXHIBIT 12**



# CONFLICT OF INTEREST CODE

*Corporate Services Department*

*Tony R. Russell, Director/Authority Clerk*

*Corporate Services*





53-611 (570)



# The Political Reform Act of 1974



- The Political Reform Act of 1974 was initiated as a ballot measure and approved by over 70 percent of California voters in the wake of the Watergate political scandals.



53-611 (571)

# The Political Reform Act (Contd.)



- The Act and its implementation have a broad reach across California Government.

- Thousands of public workers, ranging from the governor, department heads to board/commission members are required to file statements of economic interests.



53-611 (572)



# The Political Reform Act
## (Contd.)

- The Act also establishes a complex, decentralized system wherein each state and local government agency is required to adopt and implement a Conflict of Interest Code.

- The form alerts public officials about their own economic interests and potential areas of conflict in relation to their duties.



53-611 (573)



5

# When is Filing Required



- Upon assuming his or her public office or job, an official first files an "assuming office" or "initial" statement of economic interests.

- After that, the official or employee files an annual statement each year until he or she leaves office, at which time a leaving office statement must be filed.



**53-611 (574)**

# When is Filing Required (Contd.)



- Elected/Appointed Officials are required to file within 30 days of assuming office.

- Designated Employees are required to file within 30 days of assuming their position.

- Upon leaving office or employment, a Leaving Office Statement must be filed within 30 days.



6

7

# Filing of Form 700 to Meet Requirement



- Filers must sign the form 700 under penalty of perjury. Once filed, the form becomes a public document and must be made available to the public upon request.

- Public Officials are generally not required to list their home addresses or home telephone numbers on the form.



53-611 (576)

# What Should Be Reported



- Report investments and business positions in business entities, real property, and income from sources that are located or doing business in your Agency's jurisdiction.

- Assets and income of public officials which may be affected by their official actions should be disclosed.

8



# Other Requirements of the Act



- Public Officials, whether elected or appointed, should perform their duties in an impartial manner, free from bias caused by their own financial interests or the financial interests of persons who have supported them.

- In appropriate circumstances, officials should be disqualified from taking on issues that would present a conflict of interest.



9

53-611 (578)

10



# Disclosure Categories

- ## Category 1
  All investments, business positions, interests in real property and sources of income.

- ## Category 2
  All interests in real property.



11

# Disclosure Categories (Contd.)



- ## Category 3

  All investments, business positions, interests in real property and sources of income subject to the regulatory, permit or licensing authority of the San Diego County Regional Airport Authority.

- ## Category 4

  Investments in business entities and sources of income that engage in land development, construction, or the acquisition of real property.

53-611 (580)



# Disclosure Categories (Contd.)

## Category 5

- Investments in business entities and sources of income and sources of the type that contracts with the San Diego County Regional Airport Authority to provide services, supplies, materials, machinery or equipment to any department of the San Diego County Regional Airport Authority.

12



53-611 (581)



# Disclosure Categories (Contd.)

## Category 6

- Investments in business entities and sources of income of the type that contracts with the San Diego County Regional Airport Authority to provide to the designated employee's department services, supplies, materials, machinery or equipment.

13



14

# Where to File the Form



- The vast majority of public officials and employees file their Form 700 with a Filing Officer at their own agency.

- The Filing Officer will review, log, and file the statement, and provide access to the form.



53-611 (583)

15



# Enforcement/Penalties

- The FPPC and agencies have the authority to levy penalties when a statement is not filed on time.

- The FPPC has the authority to levy administrative fines of up to $5,000 for violation of the Political Reform Act or seek civil penalties in the courts.

- The FPPC may refer cases to the District Attorney.



**53-611 (584)**

**EXHIBIT 13**



2003/2004

# FORM 700
## Statement of Economic Interests

a public document

**Fair Political Practices Commission**
428 J Street, Suite 620 • Sacramento, CA 95814
Toll-Free Advice Line: 866-ASK-FPPC • (866) 275-3772
Telephone: (916) 322-5660
*www.fppc.ca.gov*

53-611 (586)

# QUICK TIPS FOR EASIER FILING

**1. Know your jurisdiction.**
You only have to report investments and business positions in business entities, real property, and income from sources that are located or doing business in your agency's jurisdiction. (Gifts are reportable regardless of the jurisdiction. (See Appendix-9 for an explanation of jurisdiction.)

**2. Determine your type of disclosure.**
Two types of public officials complete the Form 700.

- If you file this form because you hold a position listed under Gov. Code section 87200, or you are filing as a board/commission member of a newly created agency not yet covered under a conflict-of-interest code, disclose all of your economic interests in your agency's jurisdiction. (See Appendix-1 for a complete list of 87200 filers and information on newly created agencies.)

- If you file because your position is listed in a state or local agency's conflict-of-interest code, review your disclosure categories because they will describe the specific interests you must report. **Obtain your disclosure categories from your agency – they are not contained in the Form 700.**

**3. Reporting timeframes.**
Report your economic interests based on the type of statement you are filing. If you are completing a 2003 Annual Statement, **do not** change the pre-printed dates to reflect 2004. Your annual statement is used for reporting the previous year's economic interests. Economic interests for your annual filing covering January 1, 2004, through December 31, 2004, will be disclosed on your statement filed in 2005.

**4. Check your calendar.**
File this form by the due date. Statements that are mailed are considered filed on the date of the postmark. The law does not provide for filing deadline extensions.

**5. Use the provided schedules.**
Do not attach brokerage statements or other financial documents. For further guidance, the instructions for each schedule contain a detailed list of reportable interests.

**6. Use your computer.**
An interactive version of Form 700 is available on our website (*www.fppc.ca.gov*).

**7. Review your statement.**
Your Form 700 is a public record. Take a second look at your statement for accuracy and completeness before it is filed.

**8. Sign your statement.**
File your originally signed statement with your filing official. Keep a copy of your statement for your files. Remember that when you sign your statement, you are stating under penalty of perjury that it is true and correct.

**9. Amendments.**
You may amend your statement at any time. Amendment schedules are available from your filing official, the FPPC, or on our website (*www.fppc.ca.gov*).

**10. Call us.**
Call toll-free at 866-ASK-FPPC or locally at (916) 322-5660 if you need assistance.



## Form 700 Public Access

Statements of Economic Interests are public documents. The filing officer must permit any member of the public to inspect and copy any statement.

- Forms are available for public inspection during the agency's regular business hours.

- No conditions may be placed on persons seeking access to the forms.

- No information or identification may be requested from persons seeking access.

- Reproduction fees of no more than 10 cents per page may be charged.

---

| Where to Find... |
| --- |
| ❖ **Types of Statements**<br>See Appendix-2. |
| ❖ **When to File**<br>See Appendix-3. |
| ❖ **Where to File**<br>See Appendix-3. |
| ❖ **Terms and Definitions**<br>See Appendix-5. |

**53-611 (587)**

## INTRODUCTION

The Political Reform Act (Gov. Code sections 81000-91015) requires most state and local government officials and employees to publicly disclose their personal assets and income. They also must disqualify themselves from participating in decisions which may affect their personal economic interests. The Fair Political Practices Commission (FPPC) is the state agency responsible for issuing the attached Statement of Economic Interests, Form 700, and for interpreting the law's provisions.

**Gift Prohibition**
Most state and local officials, employees, and candidates are prohibited from accepting gifts totaling more than $340 in a calendar year from a single source.

In addition, state officials, state candidates, and certain state employees are subject to a $10 limit per calendar month on gifts from lobbyists and lobbying firms registered with the Secretary of State. (See Appendix-7 for more detailed information.)

State and local officials and employees also should check with their agency to determine if any other restrictions apply.

**Honorarium Ban**
Most state and local officials, employees, and candidates are prohibited from accepting an honorarium for any speech given, article published, or attendance at a conference, convention, meeting, or like gathering. (See Appendix-7 for more detailed information.)

**Loan Prohibitions**
State and local public officials may not receive any personal loan totaling more than $250 from an official, employee, or consultant of, or from anyone who contracts with, their governmental agencies. In addition, elected officials may not receive any personal loan totaling more than $500 from a single lender unless certain terms of the loan are specified in writing. Under certain circumstances, a personal loan that is not being repaid or is being repaid below certain amounts may become a gift to the official who received it. (See Appendix-9 for more detailed information.)

**Disqualification**
Public officials are, under certain circumstances, required to disqualify themselves from making, participating in, or attempting to influence governmental decisions that will affect their economic interests. This may include interests they are not required to disclose (for example, certain sources of income of $500 or more are not reportable, but may be disqualifying). Specific disqualification requirements apply to 87200 filers such as city councilmembers, members of boards of supervisors and planning commissioners. These officials must orally identify the economic interest that creates a conflict of interest and leave the room before a discussion or vote takes place at a public meeting.

For more information, consult Government Code section 87105 and regulation 18702.5, which are available on the FPPC website (www.fppc.ca.gov, click on the Library & Publications icon).

**Post-Governmental Employment**
Members of the State Legislature and certain state agency officials and employees who leave office are subject to restrictions on representing clients or employers before their former agencies.

**New Legislation Affecting Prospective Employment for Local Officials**
*(Effective January 1, 2004)*
Pursuant to this new legislation, local (as well as state) public officials may not make, participate in making, or use their official positions to influence, any governmental decision directly relating to any person with whom they are negotiating, or have any arrangement concerning, prospective employment. (AB 1678, Negrete-McLeod)

**Enforcement**
The filing officer who retains originally signed statements of economic interests may impose a fine for any statement that is filed late. The fine is $10 per day up to a maximum of $100. Late filing penalties can be reduced or waived under certain circumstances.

Persons who fail to timely file their Form 700 may be referred to the FPPC's enforcement division (and in some cases to the Attorney General or district attorney) for investigation and possible prosecution for violations of the Act. In addition to the late filing penalties, a fine of up to $5,000 per violation may be imposed. The FPPC has instituted an expedited enforcement program to handle Form 700 nonfilers. To report a suspected violation, or to find out more about the expedited enforcement program, call the FPPC's enforcement staff at 1-800-561-1861.

**For assistance concerning reporting, prohibitions, and restrictions under the Act:**

- Call the FPPC toll-free at (866) ASK-FPPC.
- Obtain the following FPPC publications from the FPPC website (www.fppc.ca.gov):
  -- Fact Sheet entitled "Can I Vote? Conflicts of Interest Overview"
  -- Fact Sheet entitled "Limitations and Restrictions on Gifts, Honoraria, Travel, and Loans"
  -- Fact Sheet entitled "Leaving Your State Job? Post-Employment Restrictions May Affect You"
  -- Pamphlet entitled "Your Duty to File: A Basic Overview of State Economic Disclosure Law and Reporting Requirements for Public Officials"

**53-611 (588)**

## INSTRUCTIONS — COVER PAGE

Enter your name, mailing address, and daytime telephone number in the spaces provided. The Form 700 is a document available for public review so you may list your business/office address instead of your home address.

### Part 1. Office, Agency, or Court

- Enter the name of the office sought or held, or the agency or court. (Examples: State Assembly; Board of Supervisors; Office of the Mayor; Department of Finance; Hope County Superior Court.)

- Indicate the name of your division, board, or district, if applicable. (Examples: Division of Waste Management; Board of Accountancy; District 45.)

- Enter your position title. (Examples: Director; Chief Counsel; City Council Member; Staff Services Analyst.)

- If you hold multiple positions (for example, a city council member who also is a member of a county board or commission), you may be required to file statements with each agency.

  To simplify your filing obligations, you may complete an expanded statement.

  To do this, enter the name of the other agency(ies) with which you are required to file and your position title(s) in the space provided. Attach an additional sheet if necessary. Complete one statement covering the disclosure requirements for all positions and file a copy with each agency. Each copy must contain an original signature.

  Remember that if you assume or leave a position after a filing deadline, you must complete a separate statement. For example, a city council member who assumes a position with a county special district after the April 1 annual filing deadline must file a separate assuming office statement. In subsequent years, the city council member may expand his or her annual filing to include both positions.

### Example:

This filer is a member of the Sacramento City Council.

| 1. Office, Agency or Court |
|---|
| Name of Entity: **City Council** |
| Division, Board, District, if applicable: **District 5** |
| Position: **City Councilmember** |
| ➞ If filing for multiple positions, list additional agency(ies) & position(s): (Attach a separate sheet if necessary) |
| Agency: _____ |
| Position: _____ |
| 2. Jurisdiction of Office (Check at least one box) |
| ☐ State |
| ☐ County of _____ |
| ☒ City of _Sacramento_ |
| ☐ Multi-County _____ |
| ☐ Other _____ |

### Part 2. Office Jurisdiction

- Check the box indicating the jurisdiction of your agency and, if applicable, identify the jurisdiction. Judges, judicial candidates, and court commissioners have statewide jurisdiction (*In re Baty* (1979) 5 FPPC Ops. 10). All other filers should review Appendix-9 to determine their jurisdiction.

- If your agency is a multi-county office, list each county in which your agency has jurisdiction.

- If your agency is other than a state office, court, county office, city office, or multi-county office (for example, school districts and special districts), check the "other" box and enter the county or city in which the agency has jurisdiction.

### Part 3. Type of Statement

Check at least one box. The period covered by a statement is determined by the type of statement you are filing. If you are completing a 2003 Annual Statement, **do not** change the pre-printed dates to reflect 2004. Your annual statement is used for reporting the previous year's economic interests. Economic interests for your annual filing covering January 1, 2004, through December 31, 2004, will be disclosed on your statement filed in 2005. (See Appendix-2 for detailed information about types of statements.)

Combining Statements: Certain types of statements may be combined. For example, if you leave office after January 1 but before the deadline for filing your annual statement, you may combine your annual and leaving office statements. Consult your filing officer or the FPPC.

### Part 4. Schedule Summary

- Check the "Yes" box for each schedule you use to disclose interests.

  - or -

  If you have nothing to disclose on any schedules, check the "No reportable interests" box. (Please do not attach any blank schedules.)

- Enter the total number of completed pages (including the cover page).

### Part 5. Verification

Complete the verification by signing the statement and entering the date signed. When you sign your statement, you are stating, under penalty of perjury, that it is true and correct. **An unsigned statement is not considered filed and you may be subject to late filing penalties.**

**53-611 (589)**



**CALIFORNIA FORM 700**
FAIR POLITICAL PRACTICES COMMISSION

STATEMENT OF ECONOMIC INTERESTS

COVER PAGE

*A Public Document*

Date Received
*Official Use Only*

*Please type or print in ink*

| NAME (LAST) | (FIRST) | (MIDDLE) | DAYTIME TELEPHONE NUMBER ( ) |
|---|---|---|---|
| MAILING ADDRESS STREET (May be business address) | CITY | STATE ZIP CODE | OPTIONAL: FAX / E-MAIL ADDRESS |

## 1. Office, Agency or Court

Name of Office, Agency or Court:

Division, Board, District, if applicable:

Your Position:

➡ If filing for multiple positions, list additional agency(ies)/
position(s): (Attach a separate sheet if necessary.)

Agency: _____

Position: _____

## 2. Jurisdiction of Office *(Check at least one box)*

☐ State
☐ County of _____
☐ City of _____
☐ Multi-County _____
☐ Other _____

## 3. Type of Statement *(Check at least one box)*

☐ Assuming Office/Initial    Date:___/___/___

☐ Annual: The period covered is January 1, 2003,
through December 31, 2003.
**-or-**
○ The period covered is ___/___/___, through
December 31, 2003.

☐ Leaving Office  Date Left: ___/___/___
(Check one)
○ The period covered is January 1, 2003, through
the date of leaving office.
**-or-**
○ The period covered is ___/___/___, through
the date of leaving office.

☐ Candidate

## 4. Schedule Summary

*(Check applicable schedules or "No reportable interests.")*

➡ During the reporting period, did you have any reportable
interests to disclose on:

Schedule A-1    ☐ Yes – schedule attached
*Investments (Less than 10% Ownership)*

Schedule A-2    ☐ Yes – schedule attached
*Investments (10% or greater Ownership)*

Schedule B    ☐ Yes – schedule attached
*Real Property*

Schedule C    ☐ Yes – schedule attached
*Income & Business Positions (Income Other than Loans, Gifts, and Travel)*

Schedule D    ☐ Yes – schedule attached
*Income – Loans*

Schedule E    ☐ Yes – schedule attached
*Income – Gifts*

Schedule F    ☐ Yes – schedule attached
*Income – Travel Payments*

**-or-**

➡ ☐ No reportable interests on any schedule

Total number of pages
completed including this cover page: _____

## 5. Verification

I have used all reasonable diligence in preparing this
statement. I have reviewed this statement and to the best of
my knowledge the information contained herein and in any
attached schedules is true and complete.

I certify under penalty of perjury under the laws of the State
of California that the foregoing is true and correct.

Date Signed _____
(month, day, year)

Signature _____
(File the originally signed statement with your filing official.)

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

**53-611 (590)**

## WHAT SCHEDULE DO I USE TO REPORT?.

Business positions .......................................................................................... Schedule A-2 or Schedule C

Commission income........................................................................Schedule A-2 or Schedule C (see Appendix-6)

Gifts received by family members .......................................... Disclosure may not be required, see Schedule E

Gifts received from family members............................................ Disclosure not required, see Schedule E

Income to my business ................................................................................................Schedule A-2

Individual Retirement Account ...................................................Schedule A-1 or Schedule B (see Appendix-10)

Investments............................................................................................Schedule A-1 or Schedule A-2

Loans made to others ...............................................Disclosure not required, but report repayments on Schedule C

Loans received...............................................................................Schedule B for real property or Schedule D

Loans to my business ............................................................................................Schedule A-2

Owning a business or partnership
    If I own less than 10% ........................................................................................Schedule A-1
    If I own 10% or more.........................................................................................Schedule A-2

Real estate holdings..............................................Schedule B (Schedule A-2 if held by a business entity/trust)

Rental income .........................................................................................Schedule B or Schedule C

Rental property...................................................Schedule B (Schedule A-2 if held by a business entity/trust)

Sale of my home/automobile/boat.............................................................................................Schedule C

Sole proprietorship.................................................................................................Schedule A-2

Spouse's income.........................................................................................Schedule A-2 or Schedule C

Stock holdings
    If I own less than 10% of a company's stock ...........................................................Schedule A-1
    If I own 10% or more of a company's stock .............................................................Schedule A-2

Tickets and passes .................................................................................................Schedule E

Travel reimbursements or payments...........................................................................Schedule F

Trusts ...................................................................................... Schedule A-2 (see Appendix-11)

**53-611 (591)**

# ANSWERING YOUR QUESTIONS

Q. I hold two other board positions in addition to my position with the county. Must I file three statements of economic interests?

A. Yes. However, you may complete only one statement by listing the county and the two boards on the cover page of the Form 700 as the agencies for which you will be filing. Report your economic interests using the broadest jurisdiction and disclosure requirements assigned to you by the three agencies. Make two copies of the entire statement *before signing it*, sign each copy with an original signature, and distribute one original to the county and to each of the two boards. Remember to complete separate statements for positions that you leave or assume during the year.

Q. I left one state agency to work for another state agency. Must I file leaving office and assuming office statements?

A. Yes.

Q. I have an investment interest in shares of stock in a company that does not have an office in my jurisdiction. Must I still disclose my investment interest in this company?

A. Possibly. The definition of "doing business in the jurisdiction" is not limited to whether the business has an office in your jurisdiction. See Appendix-9 for guidance.

Q. My economic interests are the same as those that I reported last year. May I file a copy of last year's statement?

A. No. You must file a new statement for the current reporting period.

Q. My spouse and I have a living trust. The trust holds rental property in my jurisdiction, our primary residence, and investments in diversified mutual funds. I have full disclosure. How is this trust disclosed?

A. Disclose the name of the trust, the rental property and its income on Schedule A-2. Your primary residence and investments in diversified mutual funds registered with the SEC are not reportable.

Q. On Schedule B-Interests in Real Property, I have disclosed my interest in a rental property. Must I also disclose the names of my tenants?

A. Only disclose the names of those tenants from whom your pro rata share of the income received was $10,000 or more in the reporting period. Otherwise, leave the space blank.

Q. I believe I am not required to disclose the names of clients from whom my pro rata share of income is $10,000 or more on Schedule A-2 because of their right to privacy. Is there an exception for reporting clients' names?

A. Regulation 18740 provides a procedure in which a client's name may not be disclosed if disclosure of the name would violate a legally recognized privilege under California law. This regulation may be obtained from our website at *www.fppc.ca.gov*.

Q. I am the sole owner of my business. Where do I disclose my income - on Schedule A-2 or C?

A. Sources of income to a business in which you have an ownership interest of 10% or greater are disclosed on Schedule A-2. See Appendix-5 which defines "business entity" for more information.

Q. How do I disclose my spouse's income from an employer?

A. Report the name of your spouse's employer as a source of income, and all other required information, on Schedule C.

Q. I hold many stocks through an account managed by a brokerage firm and I am required to report all investments. Must I disclose these stocks since I did not decide which stocks to purchase?

A. Yes, any stock in a business entity located or doing business in your jurisdiction worth $2,000 or more must be disclosed on Schedule A-1 or A-2.

Q. If I receive a gift of two tickets to a concert valued at $100 each, but gave the tickets to a friend because I could not attend the concert, do I have any reporting obligations?

A. Yes. Since you accepted the gift and exercised direction and control of the use of the tickets, you must disclose the gift on Schedule E.

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

Instructions-3

53-611 (592)

## INSTRUCTIONS – SCHEDULES A-1 AND A-2
## INVESTMENTS

"Investment" means any financial interest in any business entity which is located in, doing business in, planning to do business in, or which has done business during the previous two years in your agency's jurisdiction (see Appendix-9) in which you, your spouse, or your dependent children had a direct, indirect, or beneficial interest totaling $2,000 or more at any time during the reporting period.

**Reportable Investments include:**
- Stocks, bonds, warrants, and options, including those held in margin or brokerage accounts.
- Sole proprietorships.
- Your own business or your spouse's business (see Appendix-5 for the definition of business entity).
- Your spouse's investments that are held separately.
- Partnerships, such as a law firm, family farm, etc.
- Investments in reportable business entities held in a retirement account (see Appendix-10).
- If you, your spouse, or dependent children had a 10% or greater ownership interest in a business entity or trust (including a living trust), you must disclose investments held by the business entity or trust. (See Appendix-11 for more information on disclosing trusts.)
- Business trusts.

**You are _not_ required to disclose:**
- Diversified mutual funds registered with the Securities and Exchange Commission (SEC) under the Investment Company Act of 1940.
- Bank accounts, savings accounts, and money market accounts.
- Insurance policies.
- Annuities.
- Shares in a credit union.
- Government bonds (including municipal bonds).
- Retirement accounts invested in non-reportable interests such as insurance policies, diversified mutual funds, or government bonds (see Appendix-9).
- Defined benefit pension plans and profit sharing plans qualified under Internal Revenue Code section 401(a).
- Interests held in a blind trust (see Appendix-10).

---

**REMINDERS**
- Do you know your agency's jurisdiction?
- Did you hold investments at any time during the period covered by this statement?
- Code filers – Your disclosure categories may require disclosure only of specific investments.

---

Use Schedule A-1 to report investments if your ownership interest in the entity was less than 10%, such as stock. You also may be required to complete Schedule C to indicate gross income received. (See second example below.)

Use Schedule A-2 to report investments in which your ownership interest in the entity was 10% or greater, such as a sole proprietorship.

**TO COMPLETE SCHEDULE A-1:**
*Do not attach brokerage or financial statements.*
- Disclose the name of the business entity.
- Provide a general description of the business activity of the entity, such as pharmaceuticals, computers, automobile manufacturing, communications, etc.
- Check the box indicating the fair market value of your investment. The fair market value is how much your investment was worth on the open market at its highest value during the reporting period.
- Identify the nature of your investment, such as stocks, warrants, options, bonds.
- If you acquired or disposed of your investment interest during the reporting period, enter the date acquired or disposed.

**Examples:**
John Smith is a manager for a state agency. His conflict-of-interest code requires full disclosure of investments. John must disclose his stock holdings of $2,000 or more in any company that does business in California as well as those stocks held by his spouse and dependent children.

Susan Jones is a city council member. She has a 4% interest, worth $5,000, in a limited partnership located in the city. Susan must disclose the partnership on Schedule A-1 and income of $500 or more received from the partnership on Schedule C.

Alice Howard supervises the purchasing department of a governmental agency. She owns stock in a utility company that only does business in New York. Alice is a code filer and her disclosure category requires reporting of investments of the type that provide services or supplies to the agency. She is **not** required to report the utility company stock because the company does not do business in her jurisdiction.

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

Instructions-4

53-611 (593)

## SCHEDULE A-1
### Investments
### Stocks, Bonds, and Other Interests
(Ownership Interest is Less Than 10%)
*Do not attach brokerage or financial statements.*

| CALIFORNIA FORM **700** |
|---|
| FAIR POLITICAL PRACTICES COMMISSION |
| Name |

---

> **NAME OF BUSINESS ENTITY**

**GENERAL DESCRIPTION OF BUSINESS ACTIVITY**

**FAIR MARKET VALUE**
- ☐ $2,000 - $10,000
- ☐ $100,001 - $1,000,000
- ☐ $10,001 - $100,000
- ☐ Over $1,000,000

**NATURE OF INVESTMENT**
- ☐ Stock
- ☐ Other _____
  (Describe)

**IF APPLICABLE, LIST DATE:**

___/___/ **03**     ___/___/ **03**
ACQUIRED          DISPOSED

---

> **NAME OF BUSINESS ENTITY**

**GENERAL DESCRIPTION OF BUSINESS ACTIVITY**

**FAIR MARKET VALUE**
- ☐ $2,000 - $10,000
- ☐ $100,001 - $1,000,000
- ☐ $10,001 - $100,000
- ☐ Over $1,000,000

**NATURE OF INVESTMENT**
- ☐ Stock
- ☐ Other _____
  (Describe)

**IF APPLICABLE, LIST DATE:**

___/___/ **03**     ___/___/ **03**
ACQUIRED          DISPOSED

---

> **NAME OF BUSINESS ENTITY**

**GENERAL DESCRIPTION OF BUSINESS ACTIVITY**

**FAIR MARKET VALUE**
- ☐ $2,000 - $10,000
- ☐ $100,001 - $1,000,000
- ☐ $10,001 - $100,000
- ☐ Over $1,000,000

**NATURE OF INVESTMENT**
- ☐ Stock
- ☐ Other _____
  (Describe)

**IF APPLICABLE, LIST DATE:**

___/___/ **03**     ___/___/ **03**
ACQUIRED          DISPOSED

---

> **NAME OF BUSINESS ENTITY**

**GENERAL DESCRIPTION OF BUSINESS ACTIVITY**

**FAIR MARKET VALUE**
- ☐ $2,000 - $10,000
- ☐ $100,001 - $1,000,000
- ☐ $10,001 - $100,000
- ☐ Over $1,000,000

**NATURE OF INVESTMENT**
- ☐ Stock
- ☐ Other _____
  (Describe)

**IF APPLICABLE, LIST DATE:**

___/___/ **03**     ___/___/ **03**
ACQUIRED          DISPOSED

---

> **NAME OF BUSINESS ENTITY**

**GENERAL DESCRIPTION OF BUSINESS ACTIVITY**

**FAIR MARKET VALUE**
- ☐ $2,000 - $10,000
- ☐ $100,001 - $1,000,000
- ☐ $10,001 - $100,000
- ☐ Over $1,000,000

**NATURE OF INVESTMENT**
- ☐ Stock
- ☐ Other _____
  (Describe)

**IF APPLICABLE, LIST DATE:**

___/___/ **03**     ___/___/ **03**
ACQUIRED          DISPOSED

---

> **NAME OF BUSINESS ENTITY**

**GENERAL DESCRIPTION OF BUSINESS ACTIVITY**

**FAIR MARKET VALUE**
- ☐ $2,000 - $10,000
- ☐ $100,001 - $1,000,000
- ☐ $10,001 - $100,000
- ☐ Over $1,000,000

**NATURE OF INVESTMENT**
- ☐ Stock
- ☐ Other _____
  (Describe)

**IF APPLICABLE, LIST DATE:**

___/___/ **03**     ___/___/ **03**
ACQUIRED          DISPOSED

---

**Comments:** _____

FPPC Form 700 (2003/2004) Sch. A-1
FPPC Toll-Free Helpline: 866/ASK-FPPC

**53-611 (594)**

# INSTRUCTIONS – SCHEDULE A-2
## INVESTMENTS

Use Schedule A-2 to report investments in a business entity or trust (including a living trust), in which you, your spouse, or your dependent children had a 10% or greater interest, valued at $2,000 or more, during the reporting period and which is located in, doing business in, planning to do business in, or which has done business during the previous two years in your agency's jurisdiction (see Appendix-9). A trust located outside your agency's jurisdiction is reportable if it holds assets that are located in or doing business in the jurisdiction. You are not required to report a trust that contains no reportable interests.

Also report on Schedule A-2 investments and real property held by that entity or trust if your pro rata share of the interest was $2,000 or more during the reporting period. For example, if you had a 20% partnership interest in a business entity and the entity owns real property, you would report that real property if your pro rata share of the value of the property was $2,000 or more (for example, if the property's value was at least $10,000).

## TO COMPLETE SCHEDULE A-2:

**Part 1.** Disclose the name and address of the business entity or trust. If you are reporting an interest in a business entity, complete the box as follows:

- Provide a general description of the business activity of the entity.

- Check the box indicating the fair market value of your investment.

- If you acquired or disposed of this interest during the reporting period, enter the date acquired or disposed.

- Identify the nature of your investment.

- Disclose the job title or business position you held with the entity, if any (for example, if you were a director, officer, partner, trustee, employee, or held any position of management).

**Part 2.** Check the box indicating your gross income. (This includes your pro rata share of the gross income received by the business entity or trust, as well as your community property interest in your spouse's income.)

**Part 3.** Disclose the name of each source of income which is located in, doing business in, planning to do business in, or which has done business during the previous two years in your agency's jurisdiction, as follows:

- Disclose each source of income and outstanding loan to the business entity or trust identified in part 1 if your pro rata share of the gross income (including your community property interest in your spouse's income) to the business entity or trust from that source was

$10,000 or more during the reporting period. Loans from commercial lending institutions made in the lender's regular course of business on terms available to members of the public without regard to your official status are **not reportable**.

- Disclose each individual or entity that was a source of commission income of $10,000 or more during the reporting period through the business entity identified in part 1. (See Appendix-5 for an explanation of commission income.)

You may be required to disclose sources of income located outside your jurisdiction. For example, you may have a client who resides outside your jurisdiction but who does business on a regular basis with you. Such a client, if a reportable source of $10,000 or more, must be disclosed.

Leave this section blank if you do not have any reportable $10,000 sources of income to disclose. Adding phrases such as "various clients" or "not disclosing sources pursuant to attorney-client privilege" may trigger a request for an amendment to your statement. (See Appendix-10 for details about privileged information.)

**You may be required to disqualify yourself from decisions affecting sources of $500 or more in income, even though you are not required to report them.**

**Income, business positions, and real property reported on Schedule A-2 are not required to be disclosed on Schedules B or C.**

**Part 4.** Report any investments or interests in real property held by the entity or trust identified in part 1 if your pro rata share of the interest held was $2,000 or more during the reporting period.

- Check the applicable box indicating if the interest held is real property or an investment.

- If an investment, provide the name and description of the business entity.

- If real property, report the address or other precise location, such as an assessor's parcel number, of the real property.

- Check the box indicating the fair market value of your interest in the real property or investment.

- Identify the nature of your interest.

- If you acquired or disposed of your interest in the property or investment during the reporting period, enter the date acquired or disposed.

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

Instructions-5

53-611 (595)

## SCHEDULE A-2
## Investments, Income, and Assets
## of Business Entities/Trusts
(Ownership Interest is 10% or Greater)



CALIFORNIA **FORM** **700**
FAIR POLITICAL PRACTICES COMMISSION

Name _____

---

**▶ 1. BUSINESS ENTITY OR TRUST**

Name _____

Address _____

Check one
- ☐ Trust, go to 2   ☐ Business Entity, *complete the box, then go to 2*

GENERAL DESCRIPTION OF BUSINESS ACTIVITY _____

FAIR MARKET VALUE                 IF APPLICABLE, LIST DATE:
- ☐ $2,000 – $10,000
- ☐ $10,001 – $100,000          ___/___/03        ___/___/03
- ☐ $100,001 – $1,000,000       ACQUIRED          DISPOSED
- ☐ Over $1,000,000

NATURE OF INVESTMENT
- ☐ Sole Proprietorship  ☐ Partnership  ☐ _____
                                         Other

YOUR BUSINESS POSITION _____

**▶ 2. IDENTIFY THE GROSS INCOME RECEIVED (INCLUDE YOUR PRO RATA SHARE OF THE GROSS INCOME TO THE ENTITY/TRUST)**

- ☐ $0 – $499              ☐ $10,001 – $100,000
- ☐ $500 – $1,000          ☐ OVER $100,000
- ☐ $1,001 – $10,000

**▶ 3. LIST THE NAME OF EACH REPORTABLE SINGLE SOURCE OF INCOME OF $10,000 OR MORE** (attach a separate sheet if necessary)

_____

_____

**▶ 4. INVESTMENTS AND INTERESTS IN REAL PROPERTY HELD BY THE BUSINESS ENTITY OR TRUST**

Check one box:
- ☐ INVESTMENT     ☐ REAL PROPERTY

Name of Business Entity **or**
Street Address or Assessor's Parcel Number of Real Property

_____

Description of Business Activity **or**
City or Other Precise Location of Real Property

_____

FAIR MARKET VALUE                 IF APPLICABLE, LIST DATE:
- ☐ $2,000 – $10,000
- ☐ $10,001 – $100,000          ___/___/03        ___/___/03
- ☐ $100,001 – $1,000,000       ACQUIRED          DISPOSED
- ☐ Over $1,000,000

NATURE OF INTEREST
- ☐ Property Ownership/Deed of Trust   ☐ Stock   ☐ Partnership
- ☐ Leasehold _____  ☐ Other _____
              Yrs. remaining
- ☐ Check box if additional schedules reporting investments or real property are attached

---

**▶ 1. BUSINESS ENTITY OR TRUST**

Name _____

Address _____

Check one
- ☐ Trust, go to 2   ☐ Business Entity, *complete the box, then go to 2*

GENERAL DESCRIPTION OF BUSINESS ACTIVITY _____

FAIR MARKET VALUE                 IF APPLICABLE, LIST DATE:
- ☐ $2,000 – $10,000
- ☐ $10,001 – $100,000          ___/___/03        ___/___/03
- ☐ $100,001 – $1,000,000       ACQUIRED          DISPOSED
- ☐ Over $1,000,000

NATURE OF INVESTMENT
- ☐ Sole Proprietorship  ☐ Partnership  ☐ _____
                                         Other

YOUR BUSINESS POSITION _____

**▶ 2. IDENTIFY THE GROSS INCOME RECEIVED (INCLUDE YOUR PRO RATA SHARE OF THE GROSS INCOME TO THE ENTITY/TRUST)**

- ☐ $0 – $499              ☐ $10,001 – $100,000
- ☐ $500 – $1,000          ☐ OVER $100,000
- ☐ $1,001 – $10,000

**▶ 3. LIST THE NAME OF EACH REPORTABLE SINGLE SOURCE OF INCOME OF $10,000 OR MORE** (attach a separate sheet if necessary)

_____

_____

**▶ 4. INVESTMENTS AND INTERESTS IN REAL PROPERTY HELD BY THE BUSINESS ENTITY OR TRUST**

Check one box:
- ☐ INVESTMENT     ☐ REAL PROPERTY

Name of Business Entity **or**
Street Address or Assessor's Parcel Number of Real Property

_____

Description of Business Activity **or**
City or Other Precise Location of Real Property

_____

FAIR MARKET VALUE                 IF APPLICABLE, LIST DATE:
- ☐ $2,000 – $10,000
- ☐ $10,001 – $100,000          ___/___/03        ___/___/03
- ☐ $100,001 – $1,000,000       ACQUIRED          DISPOSED
- ☐ Over $1,000,000

NATURE OF INTEREST
- ☐ Property Ownership/Deed of Trust   ☐ Stock   ☐ Partnership
- ☐ Leasehold _____  ☐ Other _____
              Yrs. remaining
- ☐ Check box if additional schedules reporting investments or real property are attached

---

Comments: _____

FPPC Form 700 (2003/2004) Sch. A-2
FPPC Toll-Free Helpline: 866/ASK-FPPC

**53-611 (596)**

# INSTRUCTIONS – SCHEDULE B
## INTERESTS IN REAL PROPERTY

Reportable interests in real property are those properties located in your agency's jurisdiction (see Appendix-9), in which you, your spouse, or your dependent children had a direct, indirect, or beneficial interest totaling $2,000 or more any time during the reporting period.

**Interests in real property include:**

- An ownership interest (including a beneficial ownership interest).
- A deed of trust, easement, or option to acquire property.
- A leasehold interest (see Appendix-9).
- A mining lease, such as oil, gas, gold.
- An interest in real property held in a retirement account (see Appendix-10).
- An interest in real property held by a business entity or trust in which you, your spouse, or your dependent children had a 10% or greater ownership interest (report on Schedule A-2).
- Your spouse's interests in real property that are legally held separately by him or her.

**You may not be required to report:**

- A residence, such as a home or vacation cabin, used exclusively as a personal residence. However, a residence for which you claim a business deduction may be reportable. In this situation, you may report the portion of the residence claimed as the tax deduction as the fair market value.
- Interests in real property held through a blind trust (see Appendix-11 for exceptions).

**TO COMPLETE SCHEDULE B:**

- Report the address or other precise location, such as an assessor's parcel number, of the real property.
- Check the box indicating the fair market value of your interest in the property (regardless of what you owe on the property).
- If you acquired or disposed of your interest in the property during the reporting period, enter the date acquired or disposed.
- Identify the nature of your interest. If it is a leasehold, also disclose the number of years remaining on the lease.
- If you are reporting rental property, check the box indicating the gross rental income you received.

---

**REMINDERS**

- Income and loans already reported on Schedule B are not also required to be reported on Schedule C or D.
- Code filers – Do your disclosure categories require disclosure of real property?

---

- If you had a 10% or greater interest in a rental property, and your pro rata share of the gross rental income from a single tenant was $10,000 or more during the reporting period, list the name of the tenant. Leave this section blank if you do not have any single tenant who paid at least $10,000. Adding phrases such as "various tenants" or "tenants" may trigger a request for an amendment to your statement.

- Loans from a private lender that total $500 or more and are secured by real property may be reportable. Reportable loans may be disclosed on Schedule B or Schedule D. Loans from commercial lending institutions made in the lender's regular course of business on terms available to members of the public without regard to your official status are **not reportable**.

  -- Provide the name and address of the lender.
  -- Describe the lender's business activity.
  -- Disclose the interest rate and term of the loan. The term of a loan is the total number of months or years given for repayment of the loan at the time the loan was entered into. For variable interest rate loans, disclose the conditions of the loan, such as Prime + 2, or the average interest rate paid during the reporting period.
  -- Check the box indicating the highest balance of the loan during the reporting period.
  -- Identify a guarantor, if applicable.

If you have more than one reportable loan on a single piece of real property, report the additional loan(s) on Schedule D.

**Example:**
Joe Nelson is a city planning commissioner. Joe received rental income of $12,000 during the reporting period from a single tenant who rented property Joe owned in the city's jurisdiction.

If Joe had received the $12,000 from two or more tenants, the tenants' names would not be required as long as no single tenant paid $10,000 or more.

## SCHEDULE B
## Interests in Real Property



CALIFORNIA FORM **700**
FAIR POLITICAL PRACTICES COMMISSION

Name
_____

> STREET ADDRESS OR PRECISE LOCATION

CITY

**FAIR MARKET VALUE**
☐ $2,000 - $10,000
☐ $10,001 - $100,000
☐ $100,001 - $1,000,000
☐ Over $1,000,000

**IF APPLICABLE, LIST DATE:**
___/___/03     ___/___/03
ACQUIRED      DISPOSED

**NATURE OF INTEREST**
☐ Rental Property  ☐ Ownership/Deed of Trust  ☐ Easement

☐ Leasehold _____ Yrs. remaining    ☐ _____ Other

**IF RENTAL PROPERTY, GROSS INCOME RECEIVED**
☐ $0 - $499    ☐ $500 - $1,000    ☐ $1,001 - $10,000
☐ $10,001 - $100,000    ☐ OVER $100,000

**SOURCES OF RENTAL INCOME:** If you own a 10% or greater interest, list the name of each tenant that is a single source of income of $10,000 or more.

_____
_____
_____

**NAME OF LENDER**
_____

**ADDRESS**
_____

**BUSINESS ACTIVITY OF LENDER**
_____

**INTEREST RATE**            **TERM (Months/Years)**
_____%  ☐ None            _____

**HIGHEST BALANCE DURING REPORTING PERIOD**
☐ $500 - $1,000    ☐ $1,001 - $10,000
☐ $10,001 - $100,000    ☐ OVER $100,000

☐ Guarantor, if applicable

> STREET ADDRESS OR PRECISE LOCATION

CITY

**FAIR MARKET VALUE**
☐ $2,000 - $10,000
☐ $10,001 - $100,000
☐ $100,001 - $1,000,000
☐ Over $1,000,000

**IF APPLICABLE, LIST DATE:**
___/___/03     ___/___/03
ACQUIRED      DISPOSED

**NATURE OF INTEREST**
☐ Rental Property  ☐ Ownership/Deed of Trust  ☐ Easement

☐ Leasehold _____ Yrs. remaining    ☐ _____ Other

**IF RENTAL PROPERTY, GROSS INCOME RECEIVED**
☐ $0 - $499    ☐ $500 - $1,000    ☐ $1,001 - $10,000
☐ $10,001 - $100,000    ☐ OVER $100,000

**SOURCES OF RENTAL INCOME:** If you own a 10% or greater interest, list the name of each tenant that is a single source of income of $10,000 or more.

_____
_____
_____

**NAME OF LENDER**
_____

**ADDRESS**
_____

**BUSINESS ACTIVITY OF LENDER**
_____

**INTEREST RATE**            **TERM (Months/Years)**
_____%  ☐ None            _____

**HIGHEST BALANCE DURING REPORTING PERIOD**
☐ $500 - $1,000    ☐ $1,001 - $10,000
☐ $10,001 - $100,000    ☐ OVER $100,000

☐ Guarantor, if applicable

Comments: _____
_____

FPPC Form 700 (2003/2004) Sch. B
FPPC Toll-Free Helpline: 866/ASK-FPPC

**53-611 (598)**

# INSTRUCTIONS – SCHEDULE C
# INCOME & BUSINESS POSITIONS
## (Income Other than Loans, Gifts, and Travel Payments)

Report the source and amount of <u>gross</u> income received if the amount totals $500 or more and was received from any source which is located in, doing business in, planning to do business in, or which has done business during the previous two years in your agency's jurisdiction (see Appendix-7). <u>Gross income is the total amount of income before deducting expenses, losses, or taxes.</u>

**Do not use this schedule to report income from <u>or to</u> a business entity in which you have a 10% or greater ownership interest. Use Schedule A-2 instead.**

Also use Schedule C to report the job title or business position you held with a business entity (for example, if you were a director, officer, partner, trustee, employee, or held any position of management) during the period covered by the report unless you have already reported this position on Schedule A-2. **This requirement applies even if you received no income from the business entity during the period.**

**Commonly reportable income includes:**
- Salary/wages, per diem, reimbursement for expenses.
- Community property interest (50%) in your spouse's income - **report the employer's name and all other required information.**
- Income received from investment interests, such as partnerships, reported on Schedule A-1.
- Commission income not required to be reported on Schedule A-2. (See Appendix-5).
- Gross income from any sale, including the sale of a house or car. The total sale price is reportable.
- Rental income not required to be reported on Schedule B.
- Prizes or awards not disclosed as gifts.
- Payments received on loans you made to others, including loan repayments from a campaign committee.
- An honorarium received prior to becoming a public official. (See Appendix-7 concerning your ability to receive future honoraria.)
- Incentive compensation (See Appendix-8).

**You are <u>not</u> required to report:**
- Salary, reimbursement for expenses and per diem received by you or your spouse from a federal, state, or local government agency.
- Campaign contributions.

**REMINDERS**
- If you or your spouse is self-employed, report the business entity on Schedule A-2.
- Do not disclose on Schedule C income already reported on Schedules A-2 or B or business positions reported on Schedule A-2.

- A cash bequest or cash inheritance.
- Returns on a security registered with the Securities and Exchange Commission, including dividends, interest, or proceeds from a sale of stocks or bonds.
- Payments received under an insurance policy.
- Interest, dividends, or premiums on a time or demand deposit in a financial institution, shares in a credit union, an insurance policy, or a bond or other debt instrument issued by a government agency.
- Your spouse's income which is legally "separate" income.
- Income of dependent children.
- Automobile trade-in allowances from dealers.
- Loan repayments received from your spouse, child, parent, grandparent, grandchild, brother, sister, parent-in-law, brother-in-law, sister-in-law, nephew, niece, aunt, uncle, or first cousin unless he or she was acting as an intermediary or agent for any person not covered by this provision.
- Alimony or child support payments.
- Payments received under a defined benefit pension plan qualified under IRS Code section 401(a).

**TO COMPLETE SCHEDULE C:**
- Disclose the name and address of each source of income or each business entity with which you held a business position.
- Provide a general description of the business activity of the source or business entity (for example, law firm).
- Disclose the job title or business position, if any, you held with the business entity.
- If you received $500 or more during the reporting period from a source or business entity, check the box indicating the amount of gross income.
- Identify the consideration for which the income was received.
- For income from commission sales, check the box indicating the gross income received and list the name of each source of commission income of $10,000 or more (see Appendix-5). For income from rental property that is not required to be listed on Schedule B, enter "Rental Income" under "Name," check the box indicating the gross income received, and, if you had a 10% or greater interest in the rental property, list the name of each tenant if your pro rata share of the gross income from that tenant was $10,000 or more during the reporting period.

53-611 (599)

# SCHEDULE C
# Income & Business Positions
(Income Other than Loans, Gifts, and
Travel Payments)



CALIFORNIA FORM **700**
FAIR POLITICAL PRACTICES COMMISSION

Name
_____

> **NAME OF SOURCE**

**ADDRESS**

**BUSINESS ACTIVITY, IF ANY, OF SOURCE**

**YOUR BUSINESS POSITION**

**GROSS INCOME RECEIVED**
☐ $500 - $1,000    ☐ $1,001 - $10,000
☐ $10,001 - $100,000    ☐ OVER $100,000

**CONSIDERATION FOR WHICH INCOME WAS RECEIVED**
☐ Salary    ☐ Spouse's income    ☐ Loan repayment
☐ Sale of _____
                    *(Property, car, boat, etc.)*
☐ Commission or  ☐ Rental income, *list each source of $10,000 or more*

_____
_____
☐ Other _____
                    *(Describe)*

> **NAME OF SOURCE**

**ADDRESS**

**BUSINESS ACTIVITY, IF ANY, OF SOURCE**

**YOUR BUSINESS POSITION**

**GROSS INCOME RECEIVED**
☐ $500 - $1,000    ☐ $1,001 - $10,000
☐ $10,001 - $100,000    ☐ OVER $100,000

**CONSIDERATION FOR WHICH INCOME WAS RECEIVED**
☐ Salary    ☐ Spouse's income    ☐ Loan repayment
☐ Sale of _____
                    *(Property, car, boat, etc.)*
☐ Commission or  ☐ Rental income, *list each source of $10,000 or more*

_____
_____
☐ Other _____
                    *(Describe)*

> **NAME OF SOURCE**

**ADDRESS**

**BUSINESS ACTIVITY, IF ANY, OF SOURCE**

**YOUR BUSINESS POSITION**

**GROSS INCOME RECEIVED**
☐ $500 - $1,000    ☐ $1,001 - $10,000
☐ $10,001 - $100,000    ☐ OVER $100,000

**CONSIDERATION FOR WHICH INCOME WAS RECEIVED**
☐ Salary    ☐ Spouse's income    ☐ Loan repayment
☐ Sale of _____
                    *(Property, car, boat, etc.)*
☐ Commission or  ☐ Rental income, *list each source of $10,000 or more*

_____
_____
☐ Other _____
                    *(Describe)*

> **NAME OF SOURCE**

**ADDRESS**

**BUSINESS ACTIVITY, IF ANY, OF SOURCE**

**YOUR BUSINESS POSITION**

**GROSS INCOME RECEIVED**
☐ $500 - $1,000    ☐ $1,001 - $10,000
☐ $10,001 - $100,000    ☐ OVER $100,000

**CONSIDERATION FOR WHICH INCOME WAS RECEIVED**
☐ Salary    ☐ Spouse's income    ☐ Loan repayment
☐ Sale of _____
                    *(Property, car, boat, etc.)*
☐ Commission or  ☐ Rental income, *list each source of $10,000 or more*

_____
_____
☐ Other _____
                    *(Describe)*

**Comments:** _____
_____
_____

FPPC Form 700 (2003/2004) Sch. C
FPPC Toll-Free Helpline: 866/ASK-FPPC

**53-611 (600)**

# INSTRUCTIONS – SCHEDULE D
## INCOME – LOANS
### (Received or Outstanding)

Loans received or outstanding during the reporting period, which total $500 or more from a single source located in or doing business in your jurisdiction, are reportable (see Appendix-9). Your community property interest in loans received by your spouse also must be reported.

See Appendix-9 for important information about loan prohibitions.

**Commonly reportable loans include:**
- Real estate loans from private lenders.
- Margin accounts.
- Campaign loans secured by your personal assets or for which you are personally liable.

**You are not required to report:**
- Any loan from a commercial lending institution made in the lender's regular course of business on terms available to the public without regard to your official status.
- Any retail installment or credit card debts incurred in the creditor's regular course of business on terms available to the public without regard to your official status.
- Any loan from your spouse, child, parent, grandparent, grandchild, brother, sister, parent-in-law, brother-in-law, sister-in-law, nephew, niece, aunt, uncle, or first cousin or the spouse of any such person, unless the lender was acting as an intermediary or agent for any person not covered by this provision.
- Loans made to others. However, repayments may be reportable on Schedule C.
- A loan you co-signed for another person unless you made payments on the loan during the reporting period.

**TO COMPLETE SCHEDULE D:**
- Provide the name and address of the lender.
- Describe the lender's business activity.
- Disclose the interest rate and the term of the loan.
  - The term of the loan is the total number of months or years given for repayment of the loan at the time the loan was entered into.
  - For variable interest rate loans, disclose the conditions of the loan, such as Prime + 2, or the average interest rate paid during the reporting period.

- Check the box indicating the highest balance of the loan during the reporting period.
- Identify the security, if any, for the loan.

**You are not required to disclose on Schedule D loans already reported on Schedules A-2 or B.**

**Example:** Colleen Jones is a city council member. She received a $15,000 loan from a friend to make a down payment on her principal residence. Because the loan is not from a commercial lending institution, it is a reportable loan.

---

**REMINDERS**
- Do you know your agency's jurisdiction?
- Did you receive any loans or have loans outstanding during the period covered by this statement?
- Code filers – Income includes any loan. Did you receive a loan from an entity or individual required to be reported as a source of income under your disclosure categories?
- For loan restrictions, see Appendix-9.

**53-611 (601)**

## SCHEDULE D
## Income – Loans
(Received or Outstanding)



**CALIFORNIA FORM 700**

FAIR POLITICAL PRACTICES COMMISSION

Name
_____

---

- **You are not required to report loans from commercial lending institutions made in the lender's regular course of business on terms available to members of the public without regard to your official status.**

- **You are not required to report any indebtedness created as part of a retail installment or credit card transaction if made in the lender's regular course of business on terms available to members of the public without regard to your official status.**

---

**▶ NAME OF LENDER**
_____

ADDRESS
_____

BUSINESS ACTIVITY OF LENDER
_____

INTEREST RATE          TERM (Months/Years)
_____% ☐ None        _____

HIGHEST BALANCE DURING REPORTING PERIOD
☐ $500 - $1,000        ☐ $1,001 - $10,000
☐ $10,001 - $100,000   ☐ OVER $100,000

SECURITY FOR LOAN
☐ None                 ☐ Personal residence

☐ Real Property _____
                       *Street address*

                       _____
                       *City*

☐ Guarantor _____

☐ Other _____
                *(Describe)*

---

**▶ NAME OF LENDER**
_____

ADDRESS
_____

BUSINESS ACTIVITY OF LENDER
_____

INTEREST RATE          TERM (Months/Years)
_____% ☐ None        _____

HIGHEST BALANCE DURING REPORTING PERIOD
☐ $500 - $1,000        ☐ $1,001 - $10,000
☐ $10,001 - $100,000   ☐ OVER $100,000

SECURITY FOR LOAN
☐ None                 ☐ Personal residence

☐ Real Property _____
                       *Street address*

                       _____
                       *City*

☐ Guarantor _____

☐ Other _____
                *(Describe)*

---

Comments: _____

FPPC Form 700 (2003/2004) Sch. D
FPPC Toll-Free Helpline: 866/ASK-FPPC

**53-611 (602)**

## INSTRUCTIONS – SCHEDULE E
## INCOME – GIFTS

"Gift" means anything of value, for which you have not provided equal or greater consideration to the donor. A gift is reportable if its fair market value is $50 or more. In addition, multiple gifts totaling $50 or more received during the reporting period from a single source must be reported. **Gifts are reportable regardless of where the donor is located.**

It is the acceptance of a gift, not the ultimate use to which it is put, that imposes your reporting obligation. Therefore, except as noted below, you must report a gift even if you never used it or if you gave it away to another person.

If the exact amount of a gift is not known, you must make a good faith estimate of the item's fair market value. Listing the value of a gift as "over $50" or "value unknown" is not adequate disclosure. In addition, if you received a gift through an intermediary, you must disclose the name, address, and business activity of both the donor and the intermediary.

**Commonly reportable gifts include:**

- Tickets/passes to sporting or entertainment events.
- Tickets/passes to amusement parks.
- Parking passes.
- Food, beverages, and accommodations, including those provided in direct connection with your attendance at a convention, conference, meeting, social event, meal, or like gathering, where you did <u>not</u> give a speech, participate in a panel or seminar, or provide a similar service.
- Rebates/discounts not made in the regular course of business to members of the public without regard to official status.
- Wedding gifts (see Appendix-11 to determine how to value).
- An honorarium. You may report an honorarium as income on Schedule C, rather than as a gift on Schedule E, if you provided services of equal or greater value than the payment received. (See Appendix-7 regarding your ability to receive future honoraria.)
- Transportation and lodging (see Schedule F).
- Forgiveness of a loan received by you.

**You are <u>not</u> required to disclose:**

- Gifts that were not used and which, within 30 days after receipt, were returned to the donor or delivered to a charitable organization without being claimed by you as a charitable contribution for tax purposes.
- Gifts from your spouse, child, parent, grandparent, grandchild, brother, sister, parent-in-law, brother-in-law, sister-in-law, aunt, uncle, niece, nephew, or first cousin or the spouse of any such person, unless the donor was acting as an agent or intermediary for a reportable source who was the true donor.
- Gifts of hospitality involving food, drink, or occasional lodging provided in an individual's home when the individual or a member of the individual's family was present.
- Gifts equal in value exchanged between you and an individual, other than a lobbyist, on holidays, birthdays, or similar occasions.
- Gifts of informational material provided to assist you in the performance of your official duties, such as books, pamphlets, reports, calendars, periodicals, or educational seminars.
- A cash bequest or cash inheritance.
- Personalized plaques and trophies with an individual value of less than $250.
- Campaign contributions.
- Tickets to a fundraising event for an IRS Code section 501(c)(3) organization.
- Tickets to political fundraisers.
- Gifts given directly to members of your immediate family unless you received direct benefit from the gift or you exercised direction and control over the use or disposition of the gift.
- A pass or ticket that provided a one-time admission to an event (theater performance, sporting event) that was not used and was not transferred to another person. Commission regulation 18946.1 provides a method for determining the value of a ticket or pass that was used or transferred to another person and for determining the value of passes or tickets which provide repeated admission to facilities or services.
- Food, beverages, and necessary accommodations provided directly in connection with an event at which you gave a speech, participated in a panel or seminar, or provided a similar service.

**TO COMPLETE SCHEDULE E:**

- Disclose the name, address and business activity, if any, of the source.
- Provide the date (month, day, and year) of receipt, and disclose the fair market value and description of the gift.

---

**REMINDERS**
- Gifts are limited by law to a value of $340 from any one source in a calendar year.
- See Appendix-7 for additional gift and honoraria prohibitions.
- Code filers – You only need to report gifts from reportable sources.

---

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

Instructions-9

**53-611 (603)**

**SCHEDULE E**
**Income – Gifts**

CALIFORNIA FORM **700**
FAIR POLITICAL PRACTICES COMMISSION

Name

---

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |

> NAME OF SOURCE

ADDRESS

BUSINESS ACTIVITY, IF ANY, OF SOURCE

| DATE (mm/dd/yy) | VALUE | DESCRIPTION OF GIFT(S) |
|---|---|---|
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |
| ___/___/___ | $_____ | _____ |

---

Comments: _____

_____

FPPC Form 700 (2003/2004) Sch. E
FPPC Toll-Free Helpline: 866/ASK-FPPC

**53-611 (604)**



## INSTRUCTIONS — SCHEDULE F
## TRAVEL PAYMENTS, ADVANCES
## AND REIMBURSEMENTS

Travel payments reportable on Schedule F include advances and reimbursements for travel and related expenses, including lodging and meals.

Gifts of travel may be subject to a $340 gift limit. In addition, certain travel payments are reportable gifts, but are not subject to the gift limit. To avoid possible misinterpretation or the perception that you may have received a gift in excess of the gift limit, you may wish to provide a specific description of the purpose of your travel. See the FPPC fact sheet entitled "Limitations and Restrictions on Gifts, Honoraria, Travel, and Loans," which can be obtained from your filing officer or the FPPC at *www.fppc.ca.gov.*

**You are not required to disclose:**

- Travel payments received from any state, local, or federal government agency for which you provided services equal or greater in value than the payments received.

- Travel payments received from your employer in the normal course of your employment.

- Payments or reimbursements for transportation within California in connection with an event at which you gave a speech, participated in a panel or seminar, or performed a similar service.

- Food, beverages, and necessary accommodations received directly in connection with an event held inside or outside California at which you gave a speech, participated in a panel, or provided a similar service. Note that payments for transportation outside of California are reportable.

- A travel payment that was received from a nonprofit entity exempt from taxation under IRS Code section 501(c)(3) for which you provided equal or greater consideration.

**TO COMPLETE SCHEDULE F:**

- Disclose the name and address of the source of the travel payment.

- Identify the business activity, if any, of the source.

- Check the box to indicate if the payment was a gift or income, report the amount, and disclose the date(s) if applicable.

  -- Travel payments are gifts if you did not provide services that were equal to or greater in value than the payments received. You must disclose gifts totaling $50 or more from a single source during the period covered by the statement. Gifts of travel are reportable without regard to where the donor is located.

    When reporting travel payments that are gifts, you must provide a description of the gift and the date(s) received.

  -- Travel payments are income if you provided services that were equal to or greater in value than the payments received. You must disclose income totaling $500 or more from a single source during the period covered by the statement. The filer has the burden of proving the payments are income rather than gifts.

    When reporting travel payments as income, you must describe the services you provided in exchange for the payment. You are not required to disclose the date(s) for travel payments that are income.

**Example:**
City council member Rick Chandler is a board member of the League of California Cities. The League reimburses its board members for travel and lodging, as well as meals and other expenses associated with board meetings. If Mr. Chandler provides equal or greater consideration for the travel and lodging when he participates in the meeting, the reimbursements are reported as income.

**53-611 (605)**

## SCHEDULE F
## Income – Gifts
## Travel Payments, Advances,
## and Reimbursements

**CALIFORNIA FORM 700**

FAIR POLITICAL PRACTICES COMMISSION

Name
_____

---

- **Reminder – you must mark the gift or income box.**
- **You are not required to report "income" from government agencies.**

---

➤ NAME OF SOURCE
_____

ADDRESS
_____

CITY AND STATE
_____

BUSINESS ACTIVITY, IF ANY, OF SOURCE
_____
_____

DATE(S): ___/___/___ - ___/___/___   AMT: $_____
*(If applicable)*

TYPE OF PAYMENT: (must check one)  ☐ Gift  ☐ Income

DESCRIPTION: _____
_____

---

➤ NAME OF SOURCE
_____

ADDRESS
_____

CITY AND STATE
_____

BUSINESS ACTIVITY, IF ANY, OF SOURCE
_____
_____

DATE(S): ___/___/___ - ___/___/___   AMT: $_____
*(If applicable)*

TYPE OF PAYMENT: (must check one)  ☐ Gift  ☐ Income

DESCRIPTION: _____
_____

---

➤ NAME OF SOURCE
_____

ADDRESS
_____

CITY AND STATE
_____

BUSINESS ACTIVITY, IF ANY, OF SOURCE
_____
_____

DATE(S): ___/___/___ - ___/___/___   AMT: $_____
*(If applicable)*

TYPE OF PAYMENT: (must check one)  ☐ Gift  ☐ Income

DESCRIPTION: _____
_____

---

➤ NAME OF SOURCE
_____

ADDRESS
_____

CITY AND STATE
_____

BUSINESS ACTIVITY, IF ANY, OF SOURCE
_____
_____

DATE(S): ___/___/___ - ___/___/___   AMT: $_____
*(If applicable)*

TYPE OF PAYMENT: (must check one)  ☐ Gift  ☐ Income

DESCRIPTION: _____
_____

---

Comments: _____
_____

FPPC Form 700 (2003/2004) Sch. F
FPPC Toll-Free Helpline: 866/ASK-FPPC

53-611 (606)

# APPENDIX
## TWO CATEGORIES OF FILERS

**1. Officials and Candidates Specified in Gov. Code Section 87200 and Members of Boards/Commissions of Newly Created Agencies**

The Act requires the following individuals to fully disclose their personal assets and income described in the attached Form 700:

State Offices

- Governor
- Lieutenant Governor
- Attorney General
- Controller
- Insurance Commissioner
- Secretary of State
- Treasurer
- Members of the State Legislature
- Superintendent of Public Instruction
- State Board of Equalization Members
- Public Utilities Commissioners
- State Energy Resources Conservation and Development Commissioners
- State Coastal Commissioners
- Fair Political Practices Commissioners
- State Public Officials (including employees and consultants) Who Manage Public Investments
- Elected members of and candidates for the Board of Administration of the California Public Employees' Retirement System

Other officials and employees of state boards, commissions, agencies, and departments file Form 700 as described in part 2 on this page.

Judicial Offices

- Supreme, Appellate, and Superior Court Judges
- Court Commissioners
- Retired Judges, Pro-Tem Judges, and part-time Court Commissioners who serve or expect to serve 30 days or more in a calendar year

County and City Offices

- Members of Boards of Supervisors
- Mayors and Members of City Councils
- Chief Administrative Officers
- District Attorneys
- County Counsels
- City Attorneys
- City Managers
- Planning Commissioners
- County and City Treasurers
- County and City Public Officials (including employees and consultants) Who Manage Public Investments

Members of Boards/Commissions of Newly created Agencies

Members must fully disclose their personal assets and income until the positions are covered under a conflict-of-interest code.

**2. State and Local Officials and Employees Designated in a Conflict-of-Interest Code**

The Act requires every state and local government agency to adopt a unique conflict-of-interest code. The code lists each position within the agency filled by individuals who make or participate in making governmental decisions that could affect their personal economic interests. The code also requires individuals holding those positions to periodically file Form 700 disclosing certain personal economic interests as determined by the code's "disclosure categories." These individuals are called "designated employees" or "code filers."

Obtain your disclosure categories from your agency—they are not contained in the Form 700. Persons with broad decisionmaking authority must disclose more interests than those in positions with limited discretion. For example, you may be required to disclose only investments and business positions in or income from businesses of the type that contract with your agency, or you may not be required to disclose real property interests.

In addition, certain consultants to public agencies may qualify as public officials because they make, participate in making, or act in a staff capacity for governmental decisions.

Note:

- An official who holds a position specified in Gov. Code section 87200 is not required to file statements under the conflict-of-interest code of any agency that has the same or a smaller jurisdiction (for example, a state legislator who also sits on a state or local board or commission).

# TYPES OF STATEMENTS

**Assuming Office Statement:**

If you are a newly elected or newly appointed official or are newly employed in a position designated in a state or local agency's conflict-of-interest code, your assuming office date is the date you were sworn in, employed, or otherwise authorized to serve in the position.

For positions subject to confirmation by the State Senate or the Commission on Judicial Performance, your assuming office date is the date you were appointed or nominated to the position.

**Example:**

Maria Lopez was appointed by the Governor to serve on a state agency board that is subject to State Senate confirmation. The assuming office date is the date Maria accepts the position.

- Investments, interests in real property, and business positions held on the date you assumed the office or position must be reported. In addition, income (including loans, gifts, and travel payments) received during the 12 months prior to the date you assumed the office or position is reportable.

**Initial Statement:**

If your office or position has been added to a newly adopted or newly amended conflict-of-interest code, use the effective date of the code or amendment, whichever is applicable.

- Investments, interests in real property, and business positions held on the effective date of the code or amendment must be reported. In addition, income (including loans, gifts, and travel payments) received during the 12 months prior to the effective date of the code or amendment is reportable.

**Annual Statement:**

Generally, the period covered is January 1, 2003, through December 31, 2003. If the period covered by the statement is different than January 1, 2003, through December 31, 2003 (for example, you assumed office between October 1, 2002 and December 31, 2003, or you are combining statements), the period covered must be specified.

- Investments, interests in real property, business positions held and income (including loans, gifts,

and travel payments) received during the period covered by the statement must be reported.

**Leaving Office Statement:**

Generally, the period covered is January 1, 2003, through the date you left office. If the period covered is different than January 1, 2003, through the date you left office (for example, you assumed office between October 1, 2002 and December 31, 2002, or you are combining statements), the period covered must be specified.

- Investments, interests in real property, business positions held and income (including loans, gifts, and travel payments) received during the period covered by the statement must be reported.

**Candidate Statement:**

If you are filing a statement in connection with your candidacy for state or local office, investments, interests in real property, and business positions held on the date of filing your declaration of candidacy must be reported. In addition, income (including loans, gifts, and travel payments) received during the 12 months prior to the date of filing your declaration of candidacy is reportable. Candidates running for special district offices, such as school board trustees and water district board members, should consult the agency's conflict-of-interest code to determine if candidate statements are required and what economic interests to disclose.

**Amendments:**

If you discover errors or omissions on any statement, an amendment should be filed as soon as possible. To obtain amendment schedules, contact the FPPC, your filing official, or the FPPC website at *www.fppc.ca.gov.*

## WHERE TO FILE

**1. Officials Specified in Gov. Code Section 87200 (listed in Appendix-1):**

In most cases, the filing officials listed below will retain a copy of your statement and forward the original to the FPPC.

| 87200 Filers | Where to File |
|---|---|
| State offices | Your agency |
| Judicial offices | The clerk of your court |
| Retired Judges | Directly with FPPC |
| County offices | Your county clerk |
| City offices | Your city clerk |
| Multi-County offices | Your agency |

| 87200 Candidates | |
|---|---|
| State offices | County election official |
| Judicial offices | with whom you file your |
| Multi-County offices | declaration of candidacy |
| County offices | County Clerk |
| City offices | City Clerk |
| Public Employees' Retirement System (CalPERS) | CalPERS |

**2. Members of Boards/Commissions of Newly Created Agencies:**

File with your newly created agency or with your agency's code reviewing body as provided by your code reviewing body.

**3. Code Filers — State and Local Officials and Employees Designated in a Conflict-of-Interest Code:**

File with your agency, board, or commission unless it is otherwise specified in your agency's conflict-of-interest code. In most cases, the agency, board, or commission will retain the statements.

State Senate and Assembly staff members file statements directly with the FPPC.

Exceptions:

- Elected state officers are not required to file statements under any agency's conflict-of-interest code.

- 87200 filers are not required to file statements under any agency's conflict-of-interest code in the same jurisdiction. For example, a county supervisor who is appointed to serve for an agency with jurisdiction in the same county has no additional filing obligations.

## WHEN TO FILE

**Assuming Office and Initial Statements:**

| Filer | Deadline |
|---|---|
| Elected officials | 30 days after assuming office |
| Appointed positions specified in Gov. Code section 87200 (listed in Appendix-1) **or** Newly created board and commission members not covered by a conflict-of-interest code | 30 days after assuming office **or** 10 days after appointment or nomination if subject to Senate or judicial confirmation |
| Other appointed positions (including newly-hired employees) designated in a conflict-of-interest code | 30 days after assuming office (30 days after appointment or nomination if subject to Senate confirmation) |
| Positions newly-added to a new or amended conflict-of-interest code | 30 days after the effective date of the code or amendment |

Exceptions:

- Elected state officers who assume office in December or January are not required to file an assuming office statement, but will file the next annual statement due.

- If you complete a term of office and, within 30 days, begin a new term of the same office (for example, you are reelected or reappointed), you are not required to file an assuming office statement. Instead, you may file the next annual statement due.

- If you leave an office specified in Gov. Code section 87200 and, within 30 days, you assume another office or position specified in section 87200 that has the same jurisdiction (for example, a city planning commissioner elected mayor), you are not required to file an assuming office statement. Instead, you may file the next annual statement due.

- If you transfer from one designated position to another designated position within the same agency, contact your filing officer or the FPPC to determine your filing obligations.

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

Appendix-3

**53-611 (609)**

# WHEN TO FILE
## Continued

---

**Annual Statements:**

1. Elected state officers (including members of the State Legislature and Members elected to the Board of Administration of the California Public Employees' Retirement System);

   Judges and court commissioners; and

   Members of state boards and commissions specified in Gov. Code section 87200 (listed in Appendix-1):

   File no later than **Monday, March 1, 2004**

2. County and city officials specified in Gov. Code section 87200:

   File no later than **Thursday, April 1, 2004**.

3. Multi-County officials:

   File no later than **Thursday, April 1, 2004.**

4. State and local officials and employees designated in a conflict-of-interest code:

   File on the date prescribed in the code (April 1 for most filers).

Exception:

- If you assumed office between October 1, 2003, and December 31, 2003, and filed an assuming office statement, you are not required to file an annual statement until March 1, 2005, or April 1, 2005, whichever is applicable. The annual statement will cover the day after you assumed office through December 31, 2004.

Incumbent officeholders who file candidate statements also must file annual statements by the specified deadlines.

**Leaving Office Statements:**

Leaving office statements must be filed no later than **30 days** after leaving the office or position.

Exceptions:

- If you complete a term of office and, within 30 days, begin a new term of the same office (for example, you are reelected or reappointed), you are not required to file a leaving office statement.

Instead, you may file the next annual statement due.

- If you leave an office specified in Gov. Code section 87200 and, within 30 days, you assume another office or position specified in section 87200 that has the same jurisdiction (for example, a city planning commissioner elected mayor), you are not required to file a leaving office statement. Instead, you may file the next annual statement due.

- If you transfer from one designated position to another designated position within the same agency, contact your filing officer or the FPPC to determine your filing obligations.

**Candidate Statements:**

All candidates (including incumbents) for offices specified in Gov. Code section 87200 must file statements no later than the final filing date for their declaration of candidacy.

Exceptions:

- If you have filed an assuming office or annual statement for the same jurisdiction within 60 days before filing a declaration of candidacy, you are not required to file a candidate statement.

- For elective offices designated in an agency's conflict-of-interest code, you must file a candidate statement only if the code specifically requires one to be filed. You should obtain a copy of the disclosure categories from the code to verify what interests are reportable. Contact the agency to verify whether you are required to file and to obtain a copy of your disclosure categories.

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

Appendix-4

**53-611 (610)**

## TERMS & DEFINITIONS

The instructions located on the back of each schedule describe the types of interests that must be reported. The purpose of this section is to explain other terms used in this form that are not defined in the instructions to the schedules or elsewhere.

**Blind Trust:** See Trusts, Appendix-11.

**Business Entity:** Any organization or enterprise operated for profit, including a proprietorship, partnership, firm, business trust, joint venture, syndicate, corporation, or association. This would include a business for which you take business deductions for tax purposes, such as a small business operated in your home.

**Code Filer:** An individual who has been designated in a state or local agency's conflict-of-interest code to file statements of economic interests.

**Commission Income:** "Commission income" means gross payments of $500 or more received during the period covered by the statement as a broker, agent, or salesperson, including insurance brokers or agents, real estate brokers or agents, travel agents or salespersons, stockbrokers, and retail or wholesale salespersons, among others.

In addition, you may be required to disclose the names of sources of commission income if your pro rata share of the gross income was $10,000 or more from a single source during the reporting period. If your spouse received commission income, you would disclose your community property share (50%) of that income (for example, the names of sources of $20,000 or more in gross commission income received by your spouse).

Report commission income as follows:

- If the income was received through a business entity in which you or your spouse had a 10% or greater ownership interest (or if you receive commission income on a regular basis as an independent contractor or agent), use Schedule A-2.

- If the income was received through a business entity in which you or your spouse **did not receive commission income on a regular basis** or you had a less than a 10% ownership interest, use Schedule C.

The "source" of commission income generally includes all parties to a transaction, and each is attributed the full value of the commission.

Examples:

- You are a partner in Smith and Jones Insurance Company and have a 50% ownership interest in the company. You sold two Businessmen's Insurance Company policies to XYZ Company during the reporting period. You received commission income of $5,000 from the first transaction and $6,000 from the second. On Schedule A-2, report your partnership interest in and income received from Smith and Jones Insurance Company in parts 1 and 2. In part 3, list both Businessmen's Insurance Company and XYZ Company as sources of $10,000 or more in commission income.

- You are a stock broker for Prime Investments, but you have no ownership interest in the firm. You receive commission income on a regular basis through the sale of stock to clients. Your total gross income from your employment with Prime Investments was over $100,000 during the reporting period. On Schedule A-2, report your name as the name of the business entity in part 1 and the gross income you have received in part 2. (You do not need to complete the information in the box in part 1 indicating the general description of business activity, fair market value, or nature of investment.) In part 3, list Prime Investments and the names of any clients who were sources of $10,000 or more in commission income to you.

- You sell real estate on a part-time basis for Super Realty and you have no ownership interest in the company. Since you are not receiving commission income on a regular basis, you are not considered to be a business entity. On Schedule C, if you received gross commission income of $500 or more, identify Super Realty as a source of income to you. If you received commission income of $10,000 or more from a real estate transaction, you must report the name(s) of the source(s) on Schedule C.

Note: If your pro rata share of commission income from a single source is $500 or more, you may be required to disqualify yourself from decisions affecting that source of income, even though you are not required to report the income. *For information regarding disclosure of "incentive compensation," see Appendix-8.*

**Conflict of Interest:** A public official or employee has a conflict of interest under the Act when all of the following occur:

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

Appendix-5

- The official makes, participates in making, or uses his or her official position to influence a governmental decision;

- It is reasonably foreseeable that the decision will affect the official's economic interest;

- The effect of the decision on the official's economic interest will be material; and

- The effect of the decision on the official's economic interest will be different than its effect on the public generally. Check the Commission's website (*www.fppc.ca.gov*) for a fact sheet entitled, "Can I Vote? Conflict of Interest Overview"

**Conflict-of-Interest Code:** The Act requires every state and local government agency to adopt a conflict-of-interest code. The code may be contained in a regulation, policy statement, or a city or county ordinance, resolution, or other document.

An agency's conflict-of-interest code must designate all officials and employees of, and consultants to, the agency who make or participate in making governmental decisions that could cause conflicts of interest. These individuals are required by the code to file statements of economic interests and to disqualify themselves when conflicts of interest occur.

The disclosure required under a conflict-of-interest code for a particular designated official or employee should include only the kinds of personal economic interests he or she could significantly affect through the exercise of his or her official duties. For example, an employee whose duties are limited to reviewing contracts for supplies, equipment, materials, or services provided to the agency should be required to report only those interests he or she holds that are likely to be affected by the agency's contracts for supplies, equipment, materials, or services.

**Consultant:** An individual who contracts with or whose employer contracts with state or local government agencies and who makes, participates in making, or acts in a staff capacity for making governmental decisions. Consultants may be required to file Form 700. The obligation to file Form 700 is always imposed on the individual who is providing services to the agency, not on the business or firm that employs the individual.

FPPC Regulation 18701 defines "consultants" as including the following individuals who make a governmental decision whether to:

- Approve a rate, rule, or regulation;

- Adopt or enforce a law;

- Issue, deny, suspend, or revoke any permit, license, application, certificate, approval, order or similar authorization or entitlement;

- Authorize the agency to enter into, modify, or renew a contract provided it is the type of contract that requires agency approval;

- Grant agency approval to a contract that requires agency approval and to which the agency is a party, or to the specifications for such a contract;

- Grant agency approval to a plan, design, report, study or similar item;

- Adopt, or grant agency approval of, policies, standards, or guidelines for the agency, or for any of its subdivisions;

A consultant also is an individual who:

- Serves in a staff capacity with the agency and in that capacity participates in making a governmental decision; or

- Performs the same or substantially all the same duties for the agency that would otherwise be performed by an individual holding a position specified in the agency's conflict-of-interest code.

**Designated Employee:** An official or employee of a state or local government agency whose position has been designated in the agency's conflict-of-interest code to file statements of economic interests. Individuals who contract with government agencies (consultants) also may be designated in a conflict-of-interest code.

**Disclosure Categories:** The section of an agency's conflict-of-interest code that specifies the types of personal economic interests officials and employees of the agency must disclose on their statements of economic interests. Disclosure categories are usually contained in an appendix or attachment to the conflict-of-interest code. Contact your agency to obtain a copy of your disclosure categories.

**Diversified Mutual Fund:** Diversified portfolios of stocks, bonds, or money market instruments that are managed by investment companies whose business is pooling the money of many individuals and investing it to seek a common investment goal. Mutual funds are managed by trained professionals who buy and sell securities. A typical mutual fund will own between 75 to 100 separate securities at any given time so they also provide instant diversification. *Only diversified mutual funds registered with the Securities and Exchange*

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

Appendix-6

**53-611 (612)**

Commission under the *Investment Company Act of 1940* are exempt from disclosure.

**Elected State Officer:** Elected state officers include the Governor, Lieutenant Governor, Attorney General, Insurance Commissioner, State Controller, Secretary of State, State Treasurer, Superintendent of Public Instruction, members of the State Legislature, members of the State Board of Equalization, and elected members of the Board of Administration of the California Public Employees' Retirement System.

**Enforcement:** The FPPC investigates suspected violations of the Act. Other law enforcement agencies (the Attorney General or district attorney) also may initiate investigations under certain circumstances. If violations are found, the Commission may initiate administrative enforcement proceedings that could result in the imposition of monetary penalties of up to $5,000 per violation.

Instead of administrative prosecution, a civil action may be brought for negligent or intentional violations by the appropriate civil prosecutor (the Commission, Attorney General, or district attorney), or a private party residing within the jurisdiction. In civil actions, the measure of damages is up to the amount or value not properly reported.

Persons who violate the conflict of interest disclosure provisions of the Act also may be subject to discipline by their agency, including dismissal.

Finally, a knowing or willful violation of any provision of the Act is a misdemeanor. Persons convicted of a misdemeanor may be disqualified for four years from the date of the conviction from serving as a lobbyist or running for elective office, in addition to other penalties that may be imposed. The Act also provides for numerous civil penalties, including monetary penalties and damages, and injunctive relief from the courts.

**Expanded Statement:** Some officials or employees may have multiple filing obligations (for example, a city council member who also holds a designated position with a county agency, board, or commission). Such officials or employees may complete one "expanded" statement, Form 700, covering the disclosure requirements for all positions and file a complete, originally signed copy with each agency.

**Fair Market Value:** When reporting the value of an investment, interest in real property, or gift, you must disclose the fair market value – the price at which the item would sell for on the open market. This is

particularly important when valuing gifts, because the fair market value of a gift may be different from the amount it cost the donor to provide the gift. For example, the wholesale cost of a bouquet of flowers may be $10, but the fair market value may be $25 or more. In addition, there are special rules for valuing free tickets and passes. Call the FPPC for assistance.

**Gift and Honoraria Prohibitions:**

Gifts:

State and local officials who are listed in Gov. Code section 87200, (except judges, see below), candidates for these elective offices (including judicial candidates), and officials and employees of state and local government agencies who are designated in a conflict-of-interest code are prohibited from accepting a gift or gifts totaling more than $340 in a calendar year from a single source.

In addition, elected state officers, candidates for elective state offices, and officials and employees of state agencies are subject to a $10 per calendar month limit on gifts from lobbyists and lobbying firms registered with the Secretary of State.

Honoraria:

State and local officials who are listed in Gov. Code section 87200, (except judges, see below), candidates for these elective offices (including judicial candidates), and employees of state and local government agencies who are designated in a conflict-of-interest code are prohibited from accepting honoraria for any speech given, article published, or attendance at any public or private conference, convention, meeting, social event, meal, or like gathering.

Exceptions:

- Some gifts are not reportable or subject to the gift and honoraria prohibitions, and other gifts may not be subject to the prohibitions but are reportable. For detailed information, see the FPPC fact sheet entitled "Limitations and Restrictions on Gifts, Honoraria, Travel, and Loans," which can be obtained from your filing officer or the FPPC's website (*www.fppc.ca.gov*).

- The $340 gift limit and the honorarium prohibition do not apply to a part-time member of the governing board of a public institution of higher education, unless the member is also an elected official.

- If you are designated in a state or local government agency's conflict-of-interest code, the $340 gift limit

FPPC Form 700 (2003/2004)
FPPC Toll-Free Helpline: 866/ASK-FPPC

Appendix-7

**53-611 (613)**

and honorarium prohibition are applicable only to sources you would otherwise be required to report on your statement of economic interests. However, this exception is not applicable if you also hold a position listed in Gov. Code section 87200 (see Appendix-1).

- For state agency officials and employees, the $10 lobbyist/lobbying firm gift limit is applicable only to lobbyists and lobbying firms registered to lobby your agency. This exception is not applicable if you are an elected state officer or a member or employee of the State Legislature.

Judges:
Section 170.9 of the Code of Civil Procedure imposes gift limits on judges and prohibits judges from accepting any honorarium. Section 170.9 is enforced by the Commission on Judicial Performance. The FPPC has no authority to interpret or enforce the Code of Civil Procedure. Court commissioners are subject to the gift limit under the Political Reform Act.

**Income Reporting:** Reporting income under the Act is different than reporting income for tax purposes. The Act requires gross income (the amount received before deducting losses, expenses, or taxes) to be reported.

Pro Rata Share: The instructions for reporting certain types of income, such as business entity income and rental income, refer to your pro rata share of the income received. Your pro rata share is normally based on your ownership interest in the entity or property. For example, if you are a sole proprietor, you must disclose 100% of the gross income received by your business entity on Schedule A-2. If you own 25% of a piece of rental property, you must report 25% of the gross rental income received.

When you are required to report sources of income to a business entity, sources of rental income, or sources of commission income, you are only required to disclose individual sources of income of $10,000 or more. However, you may be required to **disqualify** yourself from decisions affecting sources of $500 or more in income, even though you are not required to report them.

**Incentive Compensation:** "Incentive compensation" means income received by an official who is an employee, over and above salary, which is either ongoing or cumulative, or both, as sales or purchases of goods or services accumulate. Incentive compensation is calculated by a predetermined formula set by the official's employer

which correlates to the conduct of the purchaser in direct response to the effort of the official.

Incentive compensation does not include:

- Salary;
- Commission income *(For information regarding disclosure of "commission income" see Appendix-5);*
- Bonuses for activity not related to sales or marketing, the amount of which is based solely on merit or hours worked over and above a predetermined minimum; and
- Such executive incentive plans as may be based on company performance, provided that the formula for determining the amount of the executive's incentive income does not include a correlation between that amount and increased profits derived from increased business with specific and identifiable clients or customers of the company.
- Payments for personal services which are not marketing or sales.

The purchaser is a source of income to the official if all three of the following apply:

- The official's employment responsibilities include directing sales or marketing activity toward the purchaser; and
- There is direct personal contact between the official and the purchaser intended by the official to generate sales or business; and
- There is a direct relationship between the purchasing activity of the purchaser and the amount of the incentive compensation received by the official.

Report incentive compensation as follows:

- In addition to salary, reimbursement of expenses, and other income received from your employer, separately report on Schedule C the name of each person who purchased products or services sold, marketed or represented by you if you received incentive compensation of $500 or more attributable to the purchaser during the period covered by the statement.
- If incentive compensation is paid by your employer in a lump sum, without allocation of amounts to specific customers, you must determine the amount the incentive compensation attributable to each of your customers. This may be based on the volume of sales to or purchases made by those customers and the amount of incentive compensation attributable to each



customer according to the formula utilized by your employer.

(See Regulations 18703.3 and 18728.5 for more information.)

**Jurisdiction:** As a public official or employee required to file statements of economic interests, you must disclose investments and sources of income that are located in or; doing business in your jurisdiction, are planning to do business in your jurisdiction, or which have done business during the previous two years in your jurisdiction, and interests in real property located in your jurisdiction.

A business entity is located in or doing business in your jurisdiction if the entity has business contacts on a regular or substantial basis with a person who maintains a physical presence in your jurisdiction.

Business contacts include, but are not limited to, manufacturing, distributing, selling, purchasing, or providing services or goods. Business contacts do not include marketing via the internet, telephone, television, radio, or printed media.

The same criteria are used to determine whether an individual, organization, or other entity is located in or doing business in your jurisdiction.

Exception:

• Gifts are reportable regardless of the location of the donor. For example, a state agency official with full disclosure must report gifts from sources located outside of California. (Designated employees should consult their disclosure categories to determine if the donor of a gift is of the type that must be disclosed.)

For reporting interests in real property, if your jurisdiction is the state, you must disclose real property located anywhere within the state of California.

For local agencies, an interest in real property is located in your jurisdiction if any part of the property is located in, or within two miles of, the region, city, county, district, or other geographical area in which the agency has jurisdiction, or if the property is located within two miles of any land owned or used by the agency.

See the following explanations to determine what your jurisdiction is:

State Offices and All Courts: Your jurisdiction is the state if you are an elected state officer, a state

legislator, a judge, a court commissioner, or a candidate for one of these offices. If you are an official or employee of, or a consultant to, a state board, commission, or agency, or of any court or the State Legislature, your jurisdiction is also the state.

County Offices: Your jurisdiction is the county if you are an elected county officer, a candidate for county office, or if you are an official or employee of, or a consultant to, a county agency or any agency with jurisdiction solely within a single county.

City Offices: Your jurisdiction is the city if you are an elected city officer, a candidate for city office, or you are an official or employee of, or a consultant to, a city agency or any agency with jurisdiction solely within a single city.

Multi-County Offices: If you are an elected officer, candidate, official or employee of, or a consultant to, a multi-county agency, your jurisdiction is the region, district, or other geographical area in which the agency has jurisdiction. (Example: A water district has jurisdiction in a portion of two counties. Members of the board are only required to report interests located or doing business in that portion of each county in which the agency has jurisdiction.)

Other (for example, school districts and special districts): If you are an elected officer, candidate, official or employee of, or a consultant to, an agency not covered above, your jurisdiction is the region, district, or other geographical area in which the agency has jurisdiction. See the multi-county example above.

**Leasehold Interest:** The term "interest in real property" includes leasehold interests. An interest in a lease on real property is reportable if the value of the leasehold interest is $2,000 or more. The value of the interest is the total amount of rent owed by you during the reporting period or for a candidate, assuming office, or initial statement, during the prior 12 months.

You are not required to disclose a leasehold interest with a value of less than $2,000 or a month-to-month tenancy.

**Loans:** State and local elected and appointed officials and employees are prohibited from receiving any personal loan totaling more than $250 from an official, employee, or consultant of their governmental agencies or any governmental agency over which the official or the official's agency has direction or control. In addition, loans of more than $250 from any person who has a contract with the official's agency or an agency under the official's control are prohibited

unless the loan is from a commercial lending institution or part of a retail installment or credit card transaction made in the regular course of business on terms available to members of the public.

State and local elected officials also are prohibited from receiving any personal loan of $500 or more unless the loan is in writing and clearly states the terms of the loan, including the parties to the loan agreement, the date, amount, and term of the loan, the date or dates when payments are due, the amount of the payments, and the interest rate on the loan.

Campaign loans and loans from family members are not subject to the $250 and $500 loan prohibitions.

A personal loan made to a public official that is not being repaid or is being repaid below certain amounts will become a gift to the official under certain circumstances. Contact the FPPC for further information.

You are not required to report loans from commercial lending institutions, or any indebtedness created as part of retail installment or credit card transactions that are made in the lender's regular course of business, without regard to official status, on terms available to members of the public.

**Privileged Information:** You are not required to disclose on Schedule A-2, Part 3, the name of a person who paid fees or made payments to a business entity if disclosure of the name would violate a legally recognized privilege under California law. For example, a name is protected by attorney-client privilege when facts concerning an attorney's representation of an anonymous client are publicly known and those facts, when coupled with disclosure of the client's identity, might expose the client to an official investigation or to civil or criminal liability.

A patient's name is protected by physician-patient privilege when disclosure of the patient's name would also reveal the nature of the treatment received by the patient because, for example, the physician is recognized as a specialist.

FPPC Regulation 18740 sets out specific procedures that must be followed in order to withhold the name of a source of income.

**Public Officials Who Manage Public Investments:** Individuals who invest public funds in revenue-producing programs must file Form 700. This includes individuals who direct or approve investment transactions, formulate or approve investment policies, and establish guidelines for

asset allocations. FPPC Regulation 18701 defines "public officials who manage public investments" to include the following:

- Members of boards and commissions, including pension and retirement boards or commissions, and committees thereof, who exercise responsibility for the management of public investments;

- High-level officers and employees of public agencies who exercise primary responsibility for the management of public investments, such as chief or principal investment officers or chief financial managers; and

- Individuals who, pursuant to a contract with a state or local government agency, perform the same or substantially all the same functions described above.

**Retirement Accounts (for example, deferred compensation and Individual retirement accounts (IRAs)):** Assets held in retirement accounts must be disclosed if the assets are reportable items, such as common stock (investments) or real estate (interests in real property). The most common reportable and non-reportable investments are listed on the instructions for Schedules A-1 and A-2. The most common reportable and non-reportable interests in real property are listed on the instructions for Schedule B.

If your retirement account holds reportable assets, only disclose the assets held in the account, not the account itself.

Schedule A-1: Report any business entity in which the value of your investment interest was $2,000 or more during the reporting period. (Use Schedule A-2 if you have a 10% or greater ownership interest in the business entity.)

Schedule B: Report any piece of real property in which the value of your interest was $2,000 or more during the reporting period.

Examples:

- Alice McSherry deposits $500 per month into her employer's deferred compensation program. She has chosen to purchase shares in two diversified mutual funds registered with the Securities and Exchange Commission. Because her funds are invested solely in non-reportable mutual funds (see Schedule A-1 instructions), Alice has no disclosure requirements with regard to the deferred compensation program.

- Bob Allison has $6,000 in an individual retirement account with an investment firm. He has chosen to purchase common stock in several companies doing business in his jurisdiction. One of his stock holdings, Gala Computers, reached a value of $2,500 during the reporting period. The value of his investment in each of the other companies was less than $2,000. Bob must report Gala Computers as an investment on Schedule A-1 because the value of his stock in that company was $2,000 or more.

- Adriane Fisher has $5,000 in a retirement fund that invests in real property located in her jurisdiction. The value of her interest in each piece of real property held in the fund was less than $2,000 during the reporting period. Although her retirement fund holds reportable assets, she has no disclosure requirement because she did not have a $2,000 or greater interest in any single piece of real property. If, in the future, the value of her interest in a single piece of real property reaches or exceeds $2,000, she will be required to disclose the real property on Schedule B for that reporting period.

**Trusts:** Investments and interests in real property held by a trust (including a living trust) are reported on Schedule A-2 if you, your spouse, or your dependent children had a 10% or greater interest in the trust and your pro rata share of a single investment or interest in real property was $2,000 or more.

You have an interest in a trust if you are a <u>trustor</u> and:

- Can revoke or terminate the trust;

- Have retained or reserved any rights to the income or principal of the trust or retained any reversionary or remainder interest; or

- Have retained any power of appointment, including the power to change the trustee, or the beneficiaries.

Or you are a <u>beneficiary</u> and:

- Presently receive income; or

- Have an irrevocable future right to receive income or principal. (See FPPC Regulation 18234 for more information.)

Examples:

- Sarah Murphy has set up a living trust which holds her principal residence, common stock in several companies that do business in her jurisdiction, and a rental home in her agency's jurisdiction. Since Sarah is the trustor and she

can revoke or terminate the trust, she must disclose any common stock worth $2,000 or more and the rental home on Schedule A-2. Sarah's residence is not reportable.

- Ben Yee is listed as a beneficiary in his grandparents' trust. However, Ben does not presently receive income from the trust, nor does he have an irrevocable future right to receive income or principal. Therefore, Ben is not required to disclose any assets contained in his grandparents' trust.

Blind Trusts:

A blind trust is a trust managed by a disinterested trustee who has complete discretion to purchase and sell assets held by the trust. If you have a direct, indirect, or beneficial interest in a blind trust, you may not be required to disclose your pro rata share of the trust's assets or income. However, the trust must meet certain standards which are set out in FPPC Regulation 18235, and you must disclose reportable assets originally transferred into the blind trust and income from those original assets until they have been disposed of by the trustee.

Trustees:

If you are only a trustee, you do not have a reportable interest in the trust. However, you may be required to report the income you received from the trust for performing trustee services.

**Wedding Gifts:** Wedding gifts must be disclosed if they were received from a reportable source during the period covered by the statement. Gifts valued at $50 or more are reportable; however, a wedding gift is considered a gift to both spouses equally. Therefore, you would count <u>one-half</u> of the value of a wedding gift to determine if it is reportable and need only report individual gifts with a total value of $100 or more unless a particular gift can only be used by you or is intended only for your use.

For example, you receive a placesetting of china valued at $150 from a reportable source as a wedding gift. Because the value to you is $50 or more, you must report the gift on Schedule E but may state its value as $75.

Wedding gifts are not subject to the $340 gift limit, but they are subject to the $10 lobbyist/lobbying firm gift limit for state officials.

**EXHIBIT 14**

FI-120

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
FRED M. PLEVIN (SBN 126185)
SANDRA L. MCDONOUGH (193308)
PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP
401 B Street, Tenth Floor
San Diego, CA  92101
TELEPHONE NO.: 619-237-5200
FAX NO. *(Optional):* 619-615-0700
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego
Superior Court, County of San Diego

SHORT TITLE OF CASE: HERNANDEZ V SD AIRPORT

| FORM INTERROGATORIES—GENERAL | CASE NUMBER: |
|---|---|
| Asking Party: DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY<br>Answering Party: PLAINTIFF JOSE HERNANDEZ<br>Set No.: ONE | GIC 871979 |

**Sec. 1.   Instructions to All Parties**

(a)  Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in civil cases.

(b)  For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010-2030.410 and the cases construing those sections.

(c)  These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

**Sec. 2.   Instructions to the Asking Party**

(a)  These interrogatories are designed for optional use by parties in unlimited civil cases where the amount demanded exceeds $25,000. Separate interrogatories, *Form Interrogatories—Economic Litigation* (form FI-129), which have no subparts, are designed for use in limited civil cases where the amount demanded is $25,000 or less; however, those interrogatories may also be used in unlimited civil cases.

(b)  Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(c)  You may insert your own definition of INCIDENT in Section 4, but only where the action arises from a course of conduct or a series of events occurring over a period of time.

(d)  The interrogatories in section 16.0, Defendant's Contentions—Personal Injury, should not be used until the defendant has had a reasonable opportunity to conduct an investigation or discovery of plaintiff's injuries and damages.

(e)  Additional interrogatories may be attached.

**Sec. 3.   Instructions to the Answering Party**

(a)  An answer or other appropriate response must be given to each interrogatory checked by the asking party.

(b)  As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure section 2030.260-2030.270 for details.

(c)  Each answer must be as complete and straightforward as the information reasonably available to you, including the information possessed by your attorneys or agents, permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d)  If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e)  Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f)  Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g)  If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h)  Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____     _____
            *(DATE)*                                          *(SIGNATURE)*

**Sec. 4. Definitions**

Words in **BOLDFACE CAPITALS** in these interrogatories are defined as follows:

(a)  *(Check one of the following):*

[ ]  (1)  **INCIDENT** includes the circumstances and events surrounding the alleged accident, injury, or other occurrence or breach of contract giving rise to this action or proceeding.


Legal
Solutions
Ca Plus

**53-611 (619)**

FI-120

☐ (2) INCIDENT means *(insert your definition here or on a separate, attached sheet labeled "Sec. 4(a)(2)"):*

(b) **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c) **PERSON** includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

(d) **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(e) **HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

(f) **ADDRESS** means the street address, including the city, state, and zip code.

## Sec. 5. Interrogatories

The following interrogatories have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

### CONTENTS

| | |
|---|---|
| 1.0 | Identity of Persons Answering These Interrogatories |
| 2.0 | General Background Information—Individual |
| 3.0 | General Background Information—Business Entity |
| 4.0 | Insurance |
| 5.0 | *[Reserved]* |
| 6.0 | Physical, Mental, or Emotional Injuries |
| 7.0 | Property Damage |
| 8.0 | Loss of Income or Earning Capacity |
| 9.0 | Other Damages |
| 10.0 | Medical History |
| 11.0 | Other Claims and Previous Claims |
| 12.0 | Investigation — General |
| 13.0 | Investigation — Surveillance |
| 14.0 | Statutory or Regulatory Violations |
| 15.0 | Denials and Special or Affirmative Defenses |
| 16.0 | Defendant's Contentions Personal Injury |
| 17.0 | Responses to Request for Admissions |
| 18.0 | *[Reserved]* |
| 19.0 | *[Reserved]* |
| 20.0 | How the Incident Occurred—Motor Vehicle |
| 25.0 | *[Reserved]* |
| 30.0 | *[Reserved]* |
| 40.0 | *[Reserved]* |
| 50.0 | Contract |
| 60.0 | *[Reserved]* |
| 70.0 | Unlawful Detainer *[See separate form FI-128]* |
| 101.0 | Economic Litigation *[See separate form FI-129]* |
| 200.0 | Employment Law *[See separate form FI-130]* |
| | Family Law *[See separate form 1292.10]* |

## 1.0 Identity of Persons Answering These Interrogatories

☒ 1.1 State the name, **ADDRESS**, telephone number, and relationship to you of each **PERSON** who prepared or assisted in the preparation of the responses to these interrogatories. *(Do not identify anyone who simply typed or reproduced the responses.)*

## 2.0 General Background Information—Individual

☒ 2.1 State:
(a) your name;
(b) every name you have used in the past; and
(c) the dates you used each name.

☒ 2.2 State the date and place of your birth.

☒ 2.3 At the time of the INCIDENT, did you have a driver's license? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☒ 2.4 At the time of the INCIDENT, did you have any other permit or license for the operation of a motor vehicle? If so, state:
(a) the state or other issuing entity;
(b) the license number and type;
(c) the date of issuance; and
(d) all restrictions.

☒ 2.5 State:
(a) your present residence ADDRESS;
(b) your residence ADDRESSES for the past five years; and
(c) the dates you lived at each ADDRESS.

☒ 2.6 State:
(a) the name, ADDRESS, and telephone number of your present employer or place of self-employment; and
(b) the name, ADDRESS, dates of employment, job title, and nature of work for each employer or self-employment you have had from five years before the INCIDENT until today.

☒ 2.7 State:
(a) the name and ADDRESS of each school or other academic or vocational institution you have attended, beginning with high school;
(b) the dates you attended;
(c) the highest grade level you have completed; and
(d) the degrees received.

☒ 2.8 Have you ever been convicted of a felony? If so, for each conviction state:
(a) the city and state where you were convicted;
(b) the date of conviction;
(c) the offense; and
(d) the court and case number.

☒ 2.9 Can you speak English with ease? If not, what language and dialect do you normally use?

☒ 2.10 Can you read and write English with ease? If not, what language and dialect do you normally use?

53-611 (620)

☐ 2.11 At the time of the INCIDENT were you acting as an agent or employee for any PERSON? If so, state:
(a) the name, ADDRESS, and telephone number of that PERSON; and
(b) a description of your duties.

☐ 2.12 At the time of the INCIDENT did you or any other person have any physical, emotional, or mental disability or condition that may have contributed to the occurrence of the INCIDENT? If so, for each person state:
(a) the name, ADDRESS, and telephone number;
(b) the nature of the disability or condition; and
(c) the manner in which the disability or condition contributed to the occurrence of the INCIDENT.

☐ 2.13 Within 24 hours before the INCIDENT did you or any person involved in the INCIDENT use or take any of the following substances: alcoholic beverage, marijuana, or other drug or medication of any kind (prescription or not)? If so, for each person state:
(a) the name, ADDRESS, and telephone number;
(b) the nature or description of each substance;
(c) the quantity of each substance used or taken;
(d) the date and time of day when each substance was used or taken;
(e) the ADDRESS where each substance was used or taken;
(f) the name, ADDRESS, and telephone number of each person who was present when each substance was used or taken; and
(g) the name, ADDRESS, and telephone number of any HEALTH CARE PROVIDER who prescribed or furnished the substance and the condition for which it was prescribed or furnished.

3.0  General Background Information — Business Entity

☐ 3.1 Are you a corporation? If so, state:
(a) the name stated in the current articles of incorporation;
(b) all other names used by the corporation during the past 10 years and the dates each was used;
(c) the date and place of incorporation;
(d) the ADDRESS of the principal place of business; and
(e) whether you are qualified to do business in California.

☐ 3.2 Are you a partnership? If so, state:
(a) the current partnership name;
(b) all other names used by the partnership during the past 10 years and the dates each was used;
(c) whether you are a limited partnership and, if so, under the laws of what jurisdiction;
(d) the name and ADDRESS of each general partner; and
(e) the ADDRESS of the principal place of business.

☐ 3.3 Are you a limited liability company? If so, state:
(a) the name stated in the current articles of organization;
(b) all other names used by the company during the past 10 years and the date each was used;
(c) the date and place of filing of the articles of organization;
(d) the ADDRESS of the principal place of business; and
(e) whether you are qualified to do business in California.

FI-120

☐ 3.4 Are you a joint venture? If so, state:
(a) the current joint venture name;
(b) all other names used by the joint venture during the past 10 years and the dates each was used;
(c) the name and ADDRESS of each joint venturer; and
(d) the ADDRESS of the principal place of business.

☐ 3.5 Are you an unincorporated association? If so, state:
(a) the current unincorporated association name;
(b) all other names used by the unincorporated association during the past 10 years and the dates each was used; and
(c) the ADDRESS of the principal place of business.

☐ 3.6 Have you done business under a fictitious name during the past 10 years? If so, for each fictitious name state:
(a) the name;
(b) the dates each was used;
(c) the state and county of each fictitious name filing; and
(d) the ADDRESS of the principal place of business.

☐ 3.7 Within the past five years has any public entity registered or licensed your business? If so, for each license or registration:
(a) identify the license or registration;
(b) state the name of the public entity; and
(c) state the dates of issuance and expiration.

4.0  Insurance

☐ 4.1 At the time of the INCIDENT, was there in effect any policy of insurance through which you were or might be insured in any manner (for example, primary, pro-rata, or excess liability coverage or medical expense coverage) for the damages, claims, or actions that have arisen out of the INCIDENT? If so, for each policy state:
(a) the kind of coverage;
(b) the name and ADDRESS of the insurance company;
(c) the name, ADDRESS, and telephone number of each named insured;
(d) the policy number;
(e) the limits of coverage for each type of coverage contained in the policy;
(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and
(g) the name, ADDRESS, and telephone number of the custodian of the policy.

☐ 4.2 Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the INCIDENT? If so, specify the statute.

5.0  [Reserved]

6.0  Physical, Mental, or Emotional Injuries

☐ 6.1 Do you attribute any physical, mental, or emotional injuries to the INCIDENT? (If your answer is "no," do not answer interrogatories 6.2 through 6.7).

☐ 6.2 Identify each injury you attribute to the INCIDENT and the area of your body affected.

53-611 (621)

FI-120

6.3 Do you still have any complaints that you attribute to the INCIDENT? If so, for each complaint state:
(a) a description;
(b) whether the complaint is subsiding, remaining the same, or becoming worse; and
(c) the frequency and duration.

6.4 Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure section 2034.210–2034.310) or treatment from a HEALTH CARE PROVIDER for any injury you attribute to the INCIDENT? If so, for each HEALTH CARE PROVIDER state:
(a) the name, ADDRESS, and telephone number;
(b) the type of consultation, examination, or treatment provided;
(c) the dates you received consultation, examination, or treatment; and
(d) the charges to date.

6.5 Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the INCIDENT? If so, for each medication state:
(a) the name;
(b) the PERSON who prescribed or furnished it;
(c) the date it was prescribed or furnished;
(d) the dates you began and stopped taking it; and
(e) the cost to date.

6.6 Are there any other medical services necessitated by the injuries that you attribute to the INCIDENT that were not previously listed (for example, ambulance, nursing, prosthetics)? If so, for each service state:
(a) the nature;
(b) the date;
(c) the cost; and
(d) the name, ADDRESS, and telephone number of each provider.

6.7 Has any HEALTH CARE PROVIDER advised that you may require future or additional treatment for any injuries that you attribute to the INCIDENT? If so, for each injury state:
(a) the name and ADDRESS of each HEALTH CARE PROVIDER;
(b) the complaints for which the treatment was advised; and
(c) the nature, duration, and estimated cost of the treatment.

7.0  Property Damage

7.1 Do you attribute any loss of or damage to a vehicle or other property to the INCIDENT? If so, for each item of property:
(a) describe the property;
(b) describe the nature and location of the damage to the property;

(c) state the amount of damage you are claiming for each item of property and how the amount was calculated; and
(d) if the property was sold, state the name, ADDRESS, and telephone number of the seller, the date of sale, and the sale price.

7.2 Has a written estimate or evaluation been made for any item of property referred to in your answer to the preceding interrogatory? If so, for each estimate or evaluation state:
(a) the name, ADDRESS, and telephone number of the PERSON who prepared it and the date prepared;
(b) the name, ADDRESS, and telephone number of each PERSON who has a copy of it; and
(c) the amount of damage stated.

7.3 Has any item of property referred to in your answer to interrogatory 7.1 been repaired? If so, for each item state:
(a) the date repaired;
(b) a description of the repair;
(c) the repair cost;
(d) the name, ADDRESS, and telephone number of the PERSON who repaired it;
(e) the name, ADDRESS, and telephone number of the PERSON who paid for the repair.

8.0  Loss of Income or Earning Capacity

8.1 Do you attribute any loss of income or earning capacity to the INCIDENT? (If your answer is "no," do not answer interrogatories 8.2 through 8.8).

8.2 State:
(a) the nature of your work;
(b) your job title at the time of the INCIDENT; and
(c) the date your employment began.

8.3 State the last date before the INCIDENT that you worked for compensation.

8.4 State your monthly income at the time of the INCIDENT and how the amount was calculated.

8.5 State the date you returned to work at each place of employment following the INCIDENT.

8.6 State the dates you did not work and for which you lost income as a result of the INCIDENT.

8.7 State the total income you have lost to date as a result of the INCIDENT and how the amount was calculated.

8.8 Will you lose income in the future as a result of the INCIDENT? If so, state:
(a) the facts upon which you base this contention;
(b) an estimate of the amount;
(c) an estimate of how long you will be unable to work; and
(d) how the claim for future income is calculated.

53-611 (622)

· FI-120

## 9.0 Other Damages

[ ] 9.1   Are there any other damages that you attribute to the INCIDENT? If so, for each item of damage state:
(a) the nature;
(b) the date it occurred;
(c) the amount; and
(d) the name, ADDRESS, and telephone number of each PERSON to whom an obligation was incurred.

[ ] 9.2   Do any DOCUMENTS support the existence or amount of any item of damages claimed in interrogatory 9.1? If so, describe each document and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

## 10.0 Medical History

[ ] 10.1   At any time before the INCIDENT did you have complaints or injuries that involved the same part of your body claimed to have been injured in the INCIDENT? If so, for each state:
(a) a description of the complaint or injury;
(b) the dates it began and ended; and
(c) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER whom you consulted or who examined or treated you.

[ ] 10.2   List all physical, mental, and emotional disabilities you had immediately before the INCIDENT. *(You may omit mental or emotional disabilities unless you attribute any mental or emotional injury to the INCIDENT.)*

[ ] 10.3   At any time after the INCIDENT, did you sustain injuries of the kind for which you are now claiming damages? If so, for each incident giving rise to an injury state:
(a) the date and the place it occurred;
(b) the name, ADDRESS, and telephone number of any other PERSON involved;
(c) the nature of any injuries you sustained;
(d) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER who consulted or who examined or treated you; and
(e) the nature of the treatment and its duration.

## 11.0 Other Claims and Previous Claims

[ ] 11.1   Except for this action, in the past 10 years have you filed an action or made a written claim or demand for compensation for your personal injuries? If so, for each action, claim, or demand state:
(a) the date, time, and place and location (closest street ADDRESS or intersection) of the INCIDENT giving rise to the action, claim, or demand;
(b) the name, ADDRESS, and telephone number of each PERSON against whom the claim or demand was made or the action filed;

(c) the court, names of the parties, and case number of any action filed;
(d) the name, ADDRESS, and telephone number of any attorney representing you;
(e) whether the claim or action has been resolved or is pending; and
(f) a description of the injury.

[ ] 11.2   In the past 10 years have you made a written claim or demand for workers' compensation benefits? If so, for each claim or demand state:
(a) the date, time, and place of the INCIDENT giving rise to the claim;
(b) the name, ADDRESS, and telephone number of your employer at the time of the injury;
(c) the name, ADDRESS, and telephone number of the workers' compensation insurer and the claim number;
(d) the period of time during which you received workers' compensation benefits;
(e) a description of the injury;
(f) the name, ADDRESS, and telephone number of any HEALTH CARE PROVIDER who provided services; and
(g) the case number at the Workers' Compensation Appeals Board.

## 12.0 Investigation—General

[ ] 12.1   State the name, ADDRESS, and telephone number of each individual:
(a) who witnessed the INCIDENT or the events occurring immediately before or after the INCIDENT;
(b) who made any statement at the scene of the INCIDENT;
(c) who heard any statements made about the INCIDENT by any individual at the scene; and
(d) who YOU OR ANYONE ACTING ON YOUR BEHALF claim have knowledge of the INCIDENT (except for expert witnesses covered by Code of Civil Procedure section 2034).

[ ] 12.2   Have YOU OR ANYONE ACTING ON YOUR BEHALF interviewed any individual concerning the INCIDENT? If so, for each individual state:
(a) the name, ADDRESS, and telephone number of the individual interviewed;
(b) the date of the interview; and
(c) the name, ADDRESS, and telephone number of the PERSON who conducted the interview.

[ ] 12.3   Have YOU OR ANYONE ACTING ON YOUR BEHALF obtained a written or recorded statement from any individual concerning the INCIDENT? If so, for each statement state:
(a) the name, ADDRESS, and telephone number of the individual from whom the statement was obtained;
(b) the name, ADDRESS, and telephone number of the individual who obtained the statement;
(c) the date the statement was obtained; and
(d) the name, ADDRESS, and telephone number of each PERSON who has the original statement or a copy.

53-611 (623)

**12.4 Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any photographs, films, or videotapes depicting any place, object, or individual concerning the INCIDENT or plaintiff's injuries? If so, state:
(a) the number of photographs or feet of film or videotape;
(b) the places, objects, or persons photographed, filmed, or videotaped;
(c) the date the photographs, films, or videotapes were taken;
(d) the name, ADDRESS, and telephone number of the individual taking the photographs, films, or videotapes; and
(e) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy of the photographs, films, or videotapes.

**12.5 Do YOU OR ANYONE ACTING ON YOUR BEHALF** know of any diagram, reproduction, or model of any place or thing (except for items developed by expert witnesses covered by Code of Civil Procedure sections 2034.210-2034.310) concerning the INCIDENT? If so, for each item state:
(a) the type (i.e., diagram, reproduction, or model);
(b) the subject matter; and
(c) the name, ADDRESS, and telephone number of each PERSON who has it.

**12.6 Was a report made by any PERSON** concerning the INCIDENT? If so, state:
(a) the name, title, identification number, and employer of the PERSON who made the report;
(b) the date and type of report made;
(c) the name, ADDRESS, and telephone number of the PERSON for whom the report was made; and
(d) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy of the report.

**12.7 Have YOU OR ANYONE ACTING ON YOUR BEHALF** inspected the scene of the INCIDENT? If so, for each inspection state:
(a) the name, ADDRESS, and telephone number of the individual making the inspection (except for expert witnesses covered by Code of Civil Procedure sections 2034.210–2034.310); and
(b) the date of the inspection.

**13.0 Investigation—Surveillance**

**13.1 Have YOU OR ANYONE ACTING ON YOUR BEHALF** conducted surveillance of any individual involved in the INCIDENT or any party to this action? If so, for each surveillance state:
(a) the name, ADDRESS, and telephone number of the individual or party;
(b) the time, date, and place of the surveillance;
(c) the name, ADDRESS, and telephone number of the individual who conducted the surveillance; and
(d) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy of any surveillance photograph, film, or videotape.

**13.2 Has a written report been prepared on the surveillance?** If so, for each written report state:
(a) the title;
(b) the date;
(c) the name, ADDRESS, and telephone number of the individual who prepared the report; and
(d) the name, ADDRESS, and telephone number of each PERSON who has the original or a copy.

**14.0 Statutory or Regulatory Violations**

**14.1 Do YOU OR ANYONE ACTING ON YOUR BEHALF** contend that any PERSON involved in the INCIDENT violated any statute, ordinance, or regulation and that the violation was a legal (proximate) cause of the INCIDENT? If so, identify the name, ADDRESS, and telephone number of each PERSON and the statute, ordinance, or regulation that was violated.

**14.2 Was any PERSON cited or charged with a violation of** any statute, ordinance, or regulation as a result of this INCIDENT? If so, for each PERSON state:
(a) the name, ADDRESS, and telephone number of the PERSON;
(b) the statute, ordinance, or regulation allegedly violated;
(c) whether the PERSON entered a plea in response to the citation or charge and, if so, the plea entered; and
(d) the name and ADDRESS of the court or administrative agency, names of the parties, and case number.

**15.0 Denials and Special or Affirmative Defenses**

**15.1 Identify each denial of a material allegation and each** special or affirmative defense in your pleadings and for each:
(a) state all facts upon which you base the denial or special or affirmative defense;
(b) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and
(c) identify all DOCUMENTS and other tangible things that support your denial or special or affirmative defense, and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**16.0 Defendant's Contentions—Personal Injury**

**18.1 Do you contend that any PERSON, other than you or** plaintiff, contributed to the occurrence of the INCIDENT or the injuries or damages claimed by plaintiff? If so, for each PERSON:
(a) state the name, ADDRESS, and telephone number of the PERSON;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

**16.2 Do you contend that plaintiff was not injured in the** INCIDENT? If so:
(a) state all facts upon which you base your contention;
(b) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(c) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

**53-611 (624)**

FI-120

☐ 16.3  Do you contend that the injuries or the extent of the injuries claimed by plaintiff as disclosed in discovery proceedings thus far in this case were not caused by the INCIDENT? If so, for each injury:
(a) identify it;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☐ 16.4  Do you contend that any of the services furnished by any HEALTH CARE PROVIDER claimed by plaintiff in discovery proceedings thus far in this case were not due to the INCIDENT? If so:
(a) identify each service;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☐ 16.5  Do you contend that any of the costs of services furnished by any HEALTH CARE PROVIDER claimed as damages by plaintiff in discovery proceedings thus far in this case were not necessary or unreasonable? If so:
(a) identify each cost;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☐ 16.6  Do you contend that any part of the loss of earnings or income claimed by plaintiff in discovery proceedings thus far in this case was unreasonable or was not caused by the INCIDENT? If so:
(a) identify each part of the loss;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☐ 16.7  Do you contend that any of the property damage claimed by plaintiff in discovery proceedings thus far in this case was not caused by the INCIDENT? If so:
(a) identify each item of property damage;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☐ 16.8  Do you contend that any of the costs of repairing the property damage claimed by plaintiff in discovery proceedings thus far in this case were unreasonable? If so:
(a) identify each cost item;
(b) state all facts upon which you base your contention;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
(d) identify all DOCUMENTS and other tangible things that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

☐ 16.9  Do YOU OR ANYONE ACTING ON YOUR BEHALF have any DOCUMENT (for example, insurance bureau index reports) concerning claims for personal injuries made before or after the INCIDENT by a plaintiff in this case? If so, for each plaintiff state:
(a) the source of each DOCUMENT;
(b) the date each claim arose;
(c) the nature of each claim; and
(d) the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

☐ 16.10  Do YOU OR ANYONE ACTING ON YOUR BEHALF have any DOCUMENT concerning the past or present physical, mental, or emotional condition of any plaintiff in this case from a HEALTH CARE PROVIDER not previously identified (except for expert witnesses covered by Code of Civil Procedure section 2034.210–2034.310)? If so, for each plaintiff state:
(a) the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER;
(b) a description of each DOCUMENT; and
(c) the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**17.0  Responses to Request for Admissions**

☐ 17.1  Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:
(a) state the number of the request;
(b) state all facts upon which you base your response;
(c) state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of those facts; and
(d) identify all DOCUMENTS and other tangible things that support your response and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT or thing.

**18.0**  *[Reserved]*

**19.0**  *[Reserved]*

**20.0  How the Incident Occurred—Motor Vehicle**

☐ 20.1  State the date, time, and place of the INCIDENT (closest street ADDRESS or intersection).

☐ 20.2  For each vehicle involved in the INCIDENT, state:
(a) the year, make, model, and license number;
(b) the name, ADDRESS, and telephone number of the driver;

53-611 (625)

FI-120

(c) the name, ADDRESS, and telephone number of each occupant other than the driver;

(d) the name, ADDRESS, and telephone number of each registered owner;

(e) the name, ADDRESS, and telephone number of each lessee;

(f) the name, ADDRESS, and telephone number of each owner other than the registered owner or lien holder; and

(g) the name of each owner who gave permission or consent to the driver to operate the vehicle.

☐ 20.3 State the ADDRESS and location where your trip began and the ADDRESS and location of your destination.

☐ 20.4 Describe the route that you followed from the beginning of your trip to the location of the INCIDENT, and state the location of each stop, other than routine traffic stops, during the trip leading up to the INCIDENT.

☐ 20.5 State the name of the street or roadway, the lane of travel, and the direction of travel of each vehicle involved in the INCIDENT for the 500 feet of travel before the INCIDENT.

☐ 20.6 Did the INCIDENT occur at an intersection? If so, describe all traffic control devices, signals, or signs at the intersection.

☐ 20.7 Was there a traffic signal facing you at the time of the INCIDENT? If so, state:

(a) your location when you first saw it;

(b) the color;

(c) the number of seconds it had been that color; and

(d) whether the color changed between the time you first saw it and the INCIDENT.

☐ 20.8 State how the INCIDENT occurred, giving the speed, direction, and location of each vehicle involved:

(a) just before the INCIDENT;

(b) at the time of the INCIDENT; and

(c) just after the INCIDENT.

☐ 20.9 Do you have information that a malfunction or defect in a vehicle caused the INCIDENT? If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, ADDRESS, and telephone number of each PERSON who is a witness to or has information about each malfunction or defect; and

(d) state the name, ADDRESS, and telephone number of each PERSON who has custody of each defective part.

☐ 20.10 Do you have information that any malfunction or defect in a vehicle contributed to the injuries sustained in the INCIDENT? If so:

(a) identify the vehicle;

(b) identify each malfunction or defect;

(c) state the name, ADDRESS, and telephone number of each PERSON who is a witness to or has information about each malfunction or defect; and

(d) state the name, ADDRESS, and telephone number of each PERSON who has custody of each defective part.

☐ 20.11 State the name, ADDRESS, and telephone number of each owner and each PERSON who has had possession since the INCIDENT of each vehicle involved in the INCIDENT.

25.0 [Reserved]

30.0 [Reserved]

40.0 [Reserved]

50.0 Contract

☐ 50.1 For each agreement alleged in the pleadings:

(a) identify each DOCUMENT that is part of the agreement and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT;

(b) state each part of the agreement not in writing, the name, ADDRESS, and telephone number of each PERSON agreeing to that provision, and the date that part of the agreement was made;

(c) identify all DOCUMENTS that evidence any part of the agreement not in writing and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT;

(d) identify all DOCUMENTS that are part of any modification to the agreement, and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT;

(e) state each modification not in writing, the date, and the name, ADDRESS, and telephone number of each PERSON agreeing to the modification, and the date the modification was made;

(f) identify all DOCUMENTS that evidence any modification of the agreement not in writing and for each state the name, ADDRESS, and telephone number of each PERSON who has the DOCUMENT.

☐ 50.2 Was there a breach of any agreement alleged in the pleadings? If so, for each breach describe and give the date of every act or omission that you claim is the breach of the agreement.

☐ 50.3 Was performance of any agreement alleged in the pleadings excused? If so, identify each agreement excused and state why performance was excused.

☐ 50.4 Was any agreement alleged in the pleadings terminated by mutual agreement, release, accord and satisfaction, or novation? If so, identify each agreement terminated, the date of termination, and the basis of the termination.

☐ 50.5 Is any agreement alleged in the pleadings unenforceable? If so, identify each unenforceable agreement and state why it is unenforceable.

☐ 50.6 Is any agreement alleged in the pleadings ambiguous? If so, identify each ambiguous agreement and state why it is ambiguous.

60.0 [Reserved]

**53-611 (626)**

1  CATHRYN CHINN, ESQ. #93340
   3990 Old Town Ave. Ste. A109
2  San Diego, California 92110
   Telephone: 619-295-4190
3
   Attorney for Plaintiff
4      JOSE HERNANDEZ

5

6

7              SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                   FOR THE COUNTY OF SAN DIEGO

9  _____

10 JOSE HERNANDEZ,                    )  CASE NO.  GIC 871979
                                      )
11          Plaintiff,                )  **PLAINTIFF'S RESPONSE TO
                                      )  DEFENDANTS REQUEST FOR
12      V.                            )  FORM INTERROGATORIES
                                      )  SET ONE**
13                                    )
   SAN DIEGO COUNTY REGIONAL          )  Dept. 71
14 AIRPORT AUTHORITY, a public entity;)  Judge: Hon.  Richard E.  Strauss
   and DOES 1 through 20, inclusive,  )  Complaint Filed: September 1, 2006
15                                    )  Trial Date: None Set
          Defendants.                 )
16                                    )

17 _____

18 PROPOUNDING PARTY:      Defendant SAN DIEGO COUNTY REGIONAL
                           AIRPORT AUTHORITY
19
   RESPONDING PARTY:       Plaintiff JOSE HERNANDEZ
20

21
   **RESPONSE TO FORM INTERROGATORY NO. 1.0 :**
22
   None.
23

24 **RESPONSE TO FORM INTERROGATORY NO. 2.1:**

25 Jose Hernandez.

26 **RESPONSE TO FORM INTERROGATORY NO. 2.2:**

27 9-21-69, Los Angeles, California

28 **RESPONSE TO FORM INTERROGATORY NO. 2.3:**
   California License C6168184

                              -1-

**53-611 (627)**

**RESPONSE TO FORM INTERROGATORY NO. 2.5:**
10139 Tres Lagos Ct.  Spring Valley 91977

**RESPONSE TO FORM INTERROGATORY NO. 26:**
Bags, Inc.
621 E. Washington St., Ste.  800, Orlanda Fl 32801

**RESPONSE TO FORM INTERROGATORY NO. 2.7:**
Cal.  State Univ.  Long Beach
Cal.  State Univ.  Chico 1992

**RESPONSE TO FORM INTERROGATORY NO. 2.8:**
No

**RESPONSE TO FORM INTERROGATORY NO. 29.:**
Yes.

**RESPONSE TO FORM INTERROGATORY NO. 210.:**
Yes.

None.

Dated:  _10/13/06_                    CATHRYN CHINN

-2-

53-611 (628)

1   CATHRYN CHINN, ESQ.  393340
    3990 Old Town Avenue, Ste. A109
2   San Diego, California 92110
    Telephone: 619-295-4190
3
    Attorney for Plaintiff
4       JOSE HERNANDEZ

5

6

7                SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                     FOR THE COUNTY OF SAN DIEGO

9       _____

10

11  JOSE HERNANDEZ,                    ) Case No.  GIC 871979
                                       )
12            Plaintiff,               ) PLAINTIFF'S SUPPLEMENTAL
                                       ) RESPONSE TO DEFENDANTS
13        v.                           ) FORM INTERROGATORIES
                                       ) SET ONE
14  SAN DIEGO COUNTY REGIONAL          )
    AIRPORT AUTHORITY, a public entity;)
15  and DOES 1 through 10, inclusive,  )
                                       )
16            Defendants.              )
        _____

17

18  No. 2.6:

19  Airport Authority March 2001 through February 2006
    Director of Landside Operations
20  Directed all landside operations at the airport

21  Bags, Inc.  April 2006 through the present
    Regional Director
22  Manage all west coast operations for remote airline check-in service

23

24  No. 2.7

25  Montebello High School
    Montebello CA
26  High School Graduate 1987

    Cal. State Univ.  Long Beach
27  Long Beach Ca
    1987-1989
28

                                    -1-
        _____
        PLAINTIFF'S .SUPPLEMENTAL RESPONSES TO INTERROGATORIES...........

1  | Cal. State Univ. Chico
   | Chico CA
2  | 1990-1992-1993
   | B.A. Industrial Arts
3  |
4  | Dated: *November 9, 2006*        *Cathryn Chinn*
5  |                                 CATHRYN CHINN
   |                                 Attorney for Plaintiff
6  |
7  |
8  |
9  |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
26 |
27 |
28 |

-2-

PLAINTIFF'S SUPPLEMENTAL RESPONSES TO INTERROGATORIES...........

**53-611 (630)**

FI-130

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
FRED M. PLEVIN (SBN 126185)
SANDRA L. MCDONOUGH (SBN 193308)
PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP
401 B Street, Tenth Floor
San Diego, CA  92101
TELEPHONE NO.: 619-237-5200    FAX NO. *(Optional):*  619-615-0700
E-MAIL ADDRESS *(Optional):*
ATTORNEY FOR *(Name):* DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Diego
Superior Court, County of San Diego

SHORT TITLE OF CASE: HERNANDEZ V SD AIRPORT

**FORM INTERROGATORIES—EMPLOYMENT LAW**
Asking Party: DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY
Answering Party: PLAINTIFF JOSE HERNANDEZ
Set No.: ONE

CASE NUMBER:
GIC 871979

## Sec. 1. Instructions to All Parties

(a) Interrogatories are written questions prepared by a party to an action that are sent to any other party in the action to be answered under oath. The interrogatories below are form interrogatories approved for use in employment cases.

(b) For time limitations, requirements for service on other parties, and other details, see Code of Civil Procedure sections 2030.010–2030.410 and the cases construing those sections.

(c) These form interrogatories do not change existing law relating to interrogatories nor do they affect an answering party's right to assert any privilege or make any objection.

## Sec. 2. Instructions to the Asking Party

(a) These form interrogatories are designed for optional use by parties in employment cases. (Separate sets of interrogatories, Form Interrogatories (form FI-120) and *Form Interrogatories—Economic Litigation* (form FI-129) may also be used where applicable in employment cases.)

(b) Insert the names of the EMPLOYEE and EMPLOYER to whom these interrogatories apply in the definitions in sections 4(d) and (e) below.

(c) Check the box next to each interrogatory that you want the answering party to answer. Use care in choosing those interrogatories that are applicable to the case.

(d) The interrogatories in section 211.0, Loss of Income Interrogatories to Employer, should not be used until the employer has had a reasonable opportunity to conduct an investigation or discovery of the employee's injuries and damages.

(e) Additional Interrogatories may be attached.

## Sec. 3. Instructions to the Answering Party

(a) You must answer or provide another appropriate response to each interrogatory that has been checked below.

(b) As a general rule, within 30 days after you are served with these interrogatories, you must serve your responses on the asking party and serve copies of your responses on all other parties to the action who have appeared. See Code of Civil Procedure sections 2030.260–2030.270 for details.

(c) Each answer must be as complete and straightforward as the information reasonably available to you permits. If an interrogatory cannot be answered completely, answer it to the extent possible.

(d) If you do not have enough personal knowledge to fully answer an interrogatory, say so, but make a reasonable and good faith effort to get the information by asking other persons or organizations, unless the information is equally available to the asking party.

(e) Whenever an interrogatory may be answered by referring to a document, the document may be attached as an exhibit to the response and referred to in the response. If the document has more than one page, refer to the page and section where the answer to the interrogatory can be found.

(f) Whenever an address and telephone number for the same person are requested in more than one interrogatory, you are required to furnish them in answering only the first interrogatory asking for that information.

(g) If you are asserting a privilege or making an objection to an interrogatory, you must specifically assert the privilege or state the objection in your written response.

(h) Your answers to these interrogatories must be verified, dated, and signed. You may wish to use the following form at the end of your answers:

*I declare under penalty of perjury under the laws of the State of California that the foregoing answers are true and correct.*

_____        _____
(DATE)                                    (SIGNATURE)

## Sec. 4. Definitions

Words in BOLDFACE CAPITALS in these interrogatories are defined as follows:

(a) PERSON includes a natural person, firm, association, organization, partnership, business, trust, limited liability company, corporation, or public entity.

Form Approved for Optional Use
Judicial Council of California
FI-130 [Rev. January 1, 2006]

FORM INTERROGATORIES—EMPLOYMENT LAW


Legal Solutions Plus

Page 1 of 8

Code of Civil Procedure,
§§ 2030.010–2030.410, 2033.710

53-611 (631)

(b) **YOU OR ANYONE ACTING ON YOUR BEHALF** includes you, your agents, your employees, your insurance companies, their agents, their employees, your attorneys, your accountants, your investigators, and anyone else acting on your behalf.

(c) **EMPLOYMENT** means a relationship in which an **EMPLOYEE** provides services requested by or on behalf of an **EMPLOYER**, other than an independent contractor relationship.

(d) **EMPLOYEE** means a **PERSON** who provides services in an **EMPLOYMENT** relationship and who is a party to this lawsuit. For purposes of these interrogatories, **EMPLOYEE** refers to *(insert name):* Plaintiff Jose Hernandez

*(If no name is inserted, EMPLOYEE means all such PERSONS.)*

(e) **EMPLOYER** means a **PERSON** who employs an **EMPLOYEE** to provide services in an **EMPLOYMENT** relationship and who is a party to this lawsuit. For purposes of these interrogatories, **EMPLOYER** refers to *(insert name):* San Diego County Regional Airport Authority
*(If no name is inserted, EMPLOYER means all such PERSONS.)*

(f) **ADVERSE EMPLOYMENT ACTION** means any **TERMINATION**, suspension, demotion, reprimand, loss of pay, failure or refusal to hire, failure or refusal to promote, or other action or failure to act that adversely affects the **EMPLOYEE'S** rights or interests and which is alleged in the **PLEADINGS**.

(g) **TERMINATION** means the actual or constructive termination of employment and includes a discharge, firing, layoff, resignation, or completion of the term of the employment agreement.

(h) **PUBLISH** means to communicate orally or in writing to anyone other than the plaintiff. This includes communications by one of the defendant's employees to others. (*Kelly v. General Telephone Co.* (1982) 136 Cal.App.3d 278, 284.)

(i) **PLEADINGS** means the original or most recent amended version of any complaint, answer, cross-complaint, or answer to cross-complaint.

(j) **BENEFIT** means any benefit from an **EMPLOYER**, including an "employee welfare benefit plan" or "employee pension benefit plan" within the meaning of Title 29 United States Code section 1002(1) or (2) or ERISA.

(k) **HEALTH CARE PROVIDER** includes any **PERSON** referred to in Code of Civil Procedure section 667.7(e)(3).

(l) **DOCUMENT** means a writing, as defined in Evidence Code section 250, and includes the original or a copy of handwriting, typewriting, printing, photostats, photographs, electronically stored information, and every other means of recording upon any tangible thing and form of communicating or representation, including letters, words, pictures, sounds, or symbols, or combinations of them.

(m) **ADDRESS** means the street address, including the city, state, and zip code.

---

## Sec. 5. Interrogatories

The following interrogatories for employment law cases have been approved by the Judicial Council under Code of Civil Procedure section 2033.710:

### CONTENTS

200.0  Contract Formation
201.0  Adverse Employment Action
202.0  Discrimination Interrogatories to Employee
203.0  Harassment Interrogatories to Employee
204.0  Disability Discrimination
205.0  Discharge in Violation of Public Policy
206.0  Defamation
207.0  Internal Complaints
208.0  Governmental Complaints
209.0  Other Employment Claims by Employee or Against Employer
210.0  Loss of Income Interrogatories to Employee
211.0  Loss of Income Interrogatories to Employer
212.0  Physical, Mental, or Emotional Injuries Interrogatories to Employee
213.0  Other Damages Interrogatories to Employee
214.0  Insurance
215.0  Investigation
216.0  Denials and Special or Affirmative Defenses
217.0  Response to Request for Admissions

### 200.0  Contract Formation

☐ **200.1** Do you contend that the **EMPLOYMENT** relationship was "at will"? If so:

    (a) state all facts upon which you base this contention;

    (b) state the name, **ADDRESS**, and telephone number of each **PERSON** who has knowledge of those facts; and

    (c) identify all **DOCUMENTS** that support your contention.

☐ **200.2** Do you contend that the **EMPLOYMENT** relationship was not "at will"? If so:

    (a) state all facts upon which you base this contention;

    (b) state the name, **ADDRESS**, and telephone number of each **PERSON** who has knowledge of those facts; and

    (c) identify all **DOCUMENTS** that support your contention.

☐ **200.3** Do you contend that the **EMPLOYMENT** relationship was governed by any agreement—written, oral, or implied? If so:

    (a) state all facts upon which you base this contention;

    (b) state the name, **ADDRESS**, and telephone number of each **PERSON** who has knowledge of those facts; and

    (c) identify all **DOCUMENTS** that support your contention.

---

53-611 (632)

200.4  Was any part of the parties' EMPLOYMENT relationship governed in whole or in part by any written rules, guidelines, policies, or procedures established by the EMPLOYER? If so, for each DOCUMENT containing the written rules, guidelines, policies, or procedures:

(a)  state the date and title of the DOCUMENT and a general description of its contents;

(b)  state the manner in which the DOCUMENT was communicated to employees; and

(c)  state the manner, if any, in which employees acknowledged either receipt of the DOCUMENT or knowledge of its contents.

200.5  Was any part of the parties' EMPLOYMENT relationship covered by one or more collective bargaining agreements or memorandums of understanding between the EMPLOYER (or an association of employers) and any labor union or employee association? If so, for each collective bargaining agreement or memorandum of understanding, state:

(a)  the names and ADDRESSES of the parties to the collective bargaining agreement or memorandum of understanding;

(b)  the beginning and ending dates, if applicable, of the collective bargaining agreement or memorandum of understanding; and

(c)  which parts of the collective bargaining agreement or memorandum of understanding, if any, govern (1) any dispute or claim referred to in the PLEADINGS and (2) the rules or procedures for resolving any dispute or claim referred to in the PLEADINGS.

200.6  Do you contend that the EMPLOYEE and the EMPLOYER were in a business relationship other than an EMPLOYMENT relationship? If so, for each relationship:

(a)  state the names of the parties to the relationship;

(b)  identify the relationship; and

(c)  state all facts upon which you base your contention that the parties were in a relationship other than an EMPLOYMENT relationship.

## 201.0  Adverse Employment Action

201.1  Was the EMPLOYEE involved in a TERMINATION? If so:

(a)  state all reasons for the EMPLOYEE'S TERMINATION;

(b)  state the name, ADDRESS, and telephone number of each PERSON who participated in the TERMINATION decision;

(c)  state the name, ADDRESS, and telephone number of each PERSON who provided any information relied upon in the TERMINATION decision; and

(d)  identify all DOCUMENTS relied upon in the TERMINATION decision.

201.2  Are there any facts that would support the EMPLOYEE'S TERMINATION that were first discovered after the TERMINATION? If so:

(a)  state the specific facts;

(b)  state when and how EMPLOYER first learned of each specific fact;

(c)  state the name, ADDRESS, and telephone number of each PERSON who has knowledge of the specific facts; and

(d)  identify all DOCUMENTS that evidence these specific facts.

201.3  Were there any other ADVERSE EMPLOYMENT ACTIONS, Including *(the asking party should list the ADVERSE EMPLOYMENT ACTIONS)*:

If so, for each action, provide the following:

(a)  all reasons for each ADVERSE EMPLOYMENT ACTION;

(b)  the name, ADDRESS, and telephone number of each PERSON who participated in making each ADVERSE EMPLOYMENT ACTION decision;

(c)  the name, ADDRESS, and telephone number of each PERSON who provided any information relied upon in making each ADVERSE EMPLOYMENT ACTION decision; and

(d)  the identity of all DOCUMENTS relied upon in making each ADVERSE EMPLOYMENT ACTION decision.

201.4  Was the TERMINATION or any other ADVERSE EMPLOYMENT ACTIONS referred to in Interrogatories 201.1 through 201.3 based in whole or in part on the EMPLOYEE'S job performance? If so, for each action:

(a)  identify the ADVERSE EMPLOYMENT ACTION;

(b)  identify the EMPLOYEE'S specific job performance that played a role in that ADVERSE EMPLOYMENT ACTION;

(c)  identify any rules, guidelines, policies, or procedures that were used to evaluate the EMPLOYEE'S specific job performance;

(d)  state the names, ADDRESSES, and telephone numbers of all PERSONS who had responsibility for evaluating the specific job performance of the EMPLOYEE;

(e)  state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the EMPLOYEE'S specific job performance that played a role in that ADVERSE EMPLOYMENT ACTION; and

(f)  describe all warnings given with respect to the EMPLOYEE'S specific job performance.

**FORM INTERROGATORIES—EMPLOYMENT LAW**

**53-611 (633)**

☐ 201.5  Was any PERSON hired to replace the EMPLOYEE after the EMPLOYEE'S TERMINATION or demotion? If so, state the PERSON'S name, job title, qualifications, ADDRESS and telephone number, and the date the PERSON was hired.

☐ 201.6  Has any PERSON performed any of the EMPLOYEE'S former job duties after the EMPLOYEE'S TERMINATION or demotion? If so:

(a)    state the PERSON'S name, job title, ADDRESS, and telephone number;

(b)    identify the duties; and

(c)    state the date on which the PERSON started to perform the duties.

☐ 201.7  If the ADVERSE EMPLOYMENT ACTION involved the failure or refusal to select the EMPLOYEE (for example, for hire, promotion, transfer, or training), was any other PERSON selected instead? If so, for each ADVERSE EMPLOYMENT ACTION, state the name, ADDRESS, and telephone number of each PERSON selected; the date the PERSON was selected; and the reason the PERSON was selected instead of the EMPLOYEE.

## 202.0  Discrimination—Interrogatories to Employee

☐ 202.1  Do you contend that any ADVERSE EMPLOYMENT ACTIONS against you were discriminatory? If so:

(a)    identify each ADVERSE EMPLOYMENT ACTION that involved unlawful discrimination;

(b)    identify each characteristic (for example, gender, race, age, etc.) on which you base your claim or claims of discrimination;

(c)    state all facts upon which you base each claim of discrimination;

(d)    state the name, ADDRESS, and telephone number of each PERSON with knowledge of those facts; and

(e)    identify all DOCUMENTS evidencing those facts.

☐ 202.2  State all facts upon which you base your contention that you were qualified to perform any job which you contend was denied to you on account of unlawful discrimination.

## 203.0  Harassment—Interrogatories to Employee

☐ 203.1  Do you contend that you were unlawfully harassed in your employment? If so:

(a)    state the name, ADDRESS, telephone number, and employment position of each PERSON whom you contend harassed you;

(b)    for each PERSON whom you contend harassed you, describe the harassment;

(c)    identify each characteristic (for example, gender, race, age, etc.) on which you base your claim of harassment;

(d)    state all facts upon which you base your contention that you were unlawfully harassed;

(e)    state the name, ADDRESS, and telephone number of each PERSON with knowledge of those facts;

(f)    identify all DOCUMENTS evidencing those facts.

## 204.0  Disability Discrimination

☐ 204.1  Name and describe each disability alleged in the PLEADINGS.

☐ 204.2  Does the EMPLOYEE allege any injury or illness that arose out of or in the course of EMPLOYMENT? If so, state:

(a)    the nature of such injury or illness;

(b)    how such injury or illness occurred;

(c)    the date on which such injury or illness occurred;

(d)    whether EMPLOYEE has filed a workers' compensation claim. If so, state the date and outcome of the claim; and

(e)    whether EMPLOYEE has filed or applied for disability benefits of any type. If so, state the date, identify the nature of the benefits applied for, and the outcome of any such application.

☐ 204.3  Were there any communications between the EMPLOYEE (or the EMPLOYEE'S HEALTH CARE PROVIDER) and the EMPLOYER about the type or extent of any disability of EMPLOYEE? If so:

(a)    state the name, ADDRESS, and telephone number of each person who made or received the communications;

(b)    state the name, ADDRESS, and telephone number of each PERSON who witnessed the communications;

(c)    describe the date and substance of the communications; and

(d)    identify each DOCUMENT that refers to the communications.

☐ 204.4  Did the EMPLOYER have any information about the type, existence, or extent of any disability of EMPLOYEE other than from communications with the EMPLOYEE or the EMPLOYEE'S HEALTH CARE PROVIDER? If so, state the sources and substance of that information and the name, ADDRESS, and telephone number of each PERSON who provided or received the information.

☐ 204.5  Did the EMPLOYEE need any accommodation to perform any function of the EMPLOYEE'S job position or need a transfer to another position as an accommodation? If so, describe the accommodations needed.

53-611 (634)

☐ 204.6  Were there any communications between the EMPLOYEE (or the EMPLOYEE'S HEALTH CARE PROVIDER) and the EMPLOYER about any possible accommodation of EMPLOYEE? If so, for each communication:

(a)  state the name, ADDRESS, and telephone number of each PERSON who made or received the communication;

(b)  state the name, ADDRESS, and telephone number of each PERSON who witnessed the communication;

(c)  describe the date and substance of the communication; and

(d)  identify each DOCUMENT that refers to the communication.

☐ 204.7  What did the EMPLOYER consider doing to accommodate the EMPLOYEE? For each accommodation considered:

(a)  describe the accommodation considered;

(b)  state whether the accommodation was offered to the EMPLOYEE;

(c)  state the EMPLOYEE'S response; or

(d)  if the accommodation was not offered, state all the reasons why this decision was made;

(e)  state the name, ADDRESS, and telephone number of each PERSON who on behalf of EMPLOYER made any decision about what accommodations, if any, to make for the EMPLOYEE; and

(f)  state the name, ADDRESS, and telephone number of each PERSON who on behalf of the EMPLOYER made or received any communications about what accommodations, if any, to make for the EMPLOYEE.

205.0  Discharge in Violation of Public Policy

☐ 205.1  Do you contend that the EMPLOYER took any ADVERSE EMPLOYMENT ACTION against you in violation of public policy? If so:

(a)  identify the constitutional provision, statute, regulation, or other source of the public policy that you contend was violated; and

(b)  state all facts upon which you base your contention that the EMPLOYER violated public policy.

206.0  Defamation

☐ 206.1  Did the EMPLOYER'S agents or employees PUBLISH any of the allegedly defamatory statements identified in the PLEADINGS? If so, for each statement:

(a)  identify the PUBLISHED statement;

(b)  state the name, ADDRESS, telephone number, and job title of each PERSON who PUBLISHED the statement;

(c)  state the name, ADDRESS, and telephone number of each PERSON to whom the statement was PUBLISHED;

(d)  state whether, at the time the statement was PUBLISHED, the PERSON who PUBLISHED the statement believed it to be true; and

(e)  state all facts upon which the PERSON who published the statement based the belief that it was true.

☐ 206.2  State the name and ADDRESS of each agent or EMPLOYEE of the EMPLOYER who responded to any inquiries regarding the EMPLOYEE after the EMPLOYEE'S TERMINATION.

☐ 206.3  State the name and ADDRESS of the recipient and the substance of each post-TERMINATION statement PUBLISHED about EMPLOYEE by any agent or employee of EMPLOYER.

207.0  Internal Complaints

☐ 207.1  Were there any internal written policies or regulations of the EMPLOYER that apply to the making of a complaint of the type that is the subject matter of this lawsuit? If so:

(a)  state the title and date of each DOCUMENT containing the policies or regulations and a general description of the DOCUMENT'S contents;

(b)  state the manner in which the DOCUMENT was communicated to EMPLOYEES;

(c)  state the manner, if any, in which EMPLOYEES acknowledged receipt of the DOCUMENT or knowledge of its contents, or both;

(d)  state, if you contend that the EMPLOYEE failed to use any available internal complaint procedures, all facts that support that contention; and

(e)  state, if you contend that the EMPLOYEE'S failure to use internal complaint procedures was excused, all facts why the EMPLOYEE'S use of the procedures was excused.

☐ 207.2  Did the EMPLOYEE complain to the EMPLOYER about any of the unlawful conduct alleged in the PLEADINGS? If so, for each complaint:

(a)  state the date of the complaint;

(b)  state the nature of the complaint;

(c)  state the name and ADDRESS of each PERSON to whom the complaint was made;

(d)  state the name, ADDRESS, telephone number, and job title of each PERSON who investigated the complaint;

(e)  state the name, ADDRESS, telephone number, and job title of each PERSON who participated in making decisions about how to conduct the investigation;

53-611 (635)



(f) state the name, **ADDRESS**, telephone number, and job title of each **PERSON** who was interviewed or who provided an oral or written statement as part of the investigation of the complaint;

(g) state the nature and date of any action taken in response to the complaint;

(h) state whether the **EMPLOYEE** who made the complaint was made aware of the actions taken by the **EMPLOYER** in response to the complaint, and, if so, state how and when;

(i) identify all **DOCUMENTS** relating to the complaint, the investigation, and any action taken in response to the complaint; and

(j) state the name, **ADDRESS**, and telephone number of each **PERSON** who has knowledge of the **EMPLOYEE'S** complaint or the **EMPLOYER'S** response to the complaint.

**208.0    Governmental Complaints**

[ ] **208.1** Did the **EMPLOYEE** file a claim, complaint, or charge with any governmental agency that involved any of the material allegations made in the **PLEADINGS**? If so, for each claim, complaint, or charge:

(a) state the date on which it was filed;

(b) state the name and **ADDRESS** of the agency with which it was filed;

(c) state the number assigned to the claim, complaint, or charge by the agency;

(d) state the nature of each claim, complaint, or charge made;

(e) state the date on which the **EMPLOYER** was notified of the claim, complaint, or charge;

(f) state the name, **ADDRESS**, and telephone number of all **PERSONS** within the governmental agency with whom the **EMPLOYER** has had any contact or communication regarding the claim, complaint, or charge;

(g) state whether a right to sue notice was issued and, if so, when; and

(h) state whether any findings or conclusions regarding the complaint or charge have been made, and, if so, the date and description of the agency's findings or conclusions.

[ ] **208.2** Did the **EMPLOYER** respond to any claim, complaint, or charge identified in Interrogatory 208.1? If so, for each claim, complaint, or charge:

(a) state the nature and date of any investigation done or any other action taken by the **EMPLOYER** in response to the claim, complaint, or charge;

(b) state the name, **ADDRESS**, telephone number, and job title of each person who investigated the claim, complaint, or charge;

(c) state the name, **ADDRESS**, telephone number, and job title of each **PERSON** who participated in making decisions about how to conduct the investigation; and

(d) state the name, **ADDRESS**, telephone number, and job title of each **PERSON** who was interviewed or who provided an oral or written statement as part of the investigation.

**209.0    Other Employment Claims by Employee or Against Employer**

[x] **209.1** Except for this action, in the past 10 years has the **EMPLOYEE** filed a civil action against any employer regarding the **EMPLOYEE'S** employment? If so, for each civil action:

(a) state the name, **ADDRESS**, and telephone number of each **EMPLOYER** against whom the action was filed;

(b) state the court, names of the parties, and case number of the civil action;

(c) state the name, **ADDRESS**, and telephone number of any attorney representing the **EMPLOYEE**; and

(d) state whether the action has been resolved or is pending.

[ ] **209.2** Except for this action, in the past 10 years has any employee filed a civil action against the **EMPLOYER** regarding his or her employment? If so, for each civil action:

(a) state the name, **ADDRESS**, and telephone number of each **EMPLOYEE** who filed the action;

(b) state the court, names of the parties, and case number of the civil action;

(c) state the name, **ADDRESS**, and telephone number of any attorney representing the **EMPLOYER**; and

(d) state whether the action has been resolved or is pending.

**210.0    Loss of Income—Interrogatories to Employee**

[x] **210.1** Do you attribute any loss of income, benefits, or earning capacity to any **ADVERSE EMPLOYMENT ACTION**? (*If your answer is "no," do not answer Interrogatories 210.2 through 210.6.*)

[x] **210.2** State the total amount of income, benefits, or earning capacity you have lost to date and how the amount was calculated.

[x] **210.3** Will you lose income, benefits, or earning capacity in the future as a result of any **ADVERSE EMPLOYMENT ACTION**? If so, state the total amount of income, benefits, or earning capacity you expect to lose, and how the amount was calculated.

[x] **210.4** Have you attempted to minimize the amount of your lost income? If so, describe how; if not, explain why not.

53-611 (636)

[x] 210.5  Have you purchased any be...fits to replace any benefits to which you would have been entitled if the ADVERSE EMPLOYMENT ACTION had not occurred? If so, state the cost for each benefit purchased.

[x] 210.6  Have you obtained other employment since any ADVERSE EMPLOYMENT ACTION? If so, for each new employment:
  (a)  state when the new employment commenced;
  (b)  state the hourly rate or monthly salary for the new employment; and
  (c)  state the benefits available from the new employment.

**211.0  Loss of Income—Interrogatories to Employer**
[See instruction 2(d).]

[  ] 211.1  Identify each type of BENEFIT to which the EMPLOYEE would have been entitled, from the date of the ADVERSE EMPLOYMENT ACTION to the present, if the ADVERSE EMPLOYMENT ACTION had not happened and the EMPLOYEE had remained in the same job position. For each type of benefit, state the amount the EMPLOYER would have paid to provide the benefit for the EMPLOYEE during this time period and the value of the BENEFIT to the EMPLOYEE.

[  ] 211.2  Do you contend that the EMPLOYEE has not made reasonable efforts to minimize the amount of the EMPLOYEE'S lost income? If so:
  (a)  describe what more EMPLOYEE should have done;
  (b)  state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts that support your contention; and
  (c)  identify all DOCUMENTS that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

[  ] 211.3  Do you contend that any of the lost income claimed by the EMPLOYEE, as disclosed in discovery thus far in this case, is unreasonable or was not caused by the ADVERSE EMPLOYMENT ACTION? If so:
  (a)  state the amount of claimed lost income that you dispute;
  (b)  state all facts upon which you base your contention;
  (c)  state the names, ADDRESSES, and telephone numbers of all PERSONS who have knowledge of the facts; and
  (d)  identify all DOCUMENTS that support your contention and state the name, ADDRESS, and telephone number of the PERSON who has each DOCUMENT.

**212.0  Physical, ...ental, or Emotional Injuries—Interrogatories to Employee**

[x] 212.1  Do you attribute any physical, mental, or emotional injuries to the ADVERSE EMPLOYMENT ACTION? (If your answer is "no," do not answer Interrogatories 212.2 through 212.7.)

[x] 212.2  Identify each physical, mental, or emotional injury that you attribute to the ADVERSE EMPLOYMENT ACTION and the area of your body affected.

[x] 212.3  Do you still have any complaints of physical, mental, or emotional injuries that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each complaint state:
  (a)  a description of the injury;
  (b)  whether the complaint is subsiding, remaining the same, or becoming worse; and
  (c)  the frequency and duration.

[x] 212.4  Did you receive any consultation or examination (except from expert witnesses covered by Code of Civil Procedure section 2034) or treatment from a HEALTH CARE PROVIDER for any injury you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each HEALTH CARE PROVIDER state:
  (a)  the name, ADDRESS, and telephone number;
  (b)  the type of consultation, examination, or treatment provided;
  (c)  the dates you received consultation, examination, or treatment; and
  (d)  the charges to date.

[x] 212.5  Have you taken any medication, prescribed or not, as a result of injuries that you attribute to the ADVERSE EMPLOYMENT ACTION? If so, for each medication state:
  (a)  the name of the medication;
  (b)  the name, ADDRESS and telephone number of the PERSON who prescribed or furnished it;
  (c)  the date prescribed or furnished;
  (d)  the dates you began and stopped taking it; and
  (e)  the cost to date.

[x] 212.6  Are there any other medical services not previously listed in response to interrogatory 212.4 (for example, ambulance, nursing, prosthetics) that you received for injuries attributed to the ADVERSE EMPLOYMENT ACTION? If so, for each service state:
  (a)  the nature;
  (b)  the date;
  (c)  the cost; and
  (d)  the name, ADDRESS, and telephone number of each HEALTH CARE PROVIDER.

**53-611 (637)**



[x] **212.7 Has any HEALTH CARE PROVIDER** advised that you may require future or additional treatment for any injuries that you attribute to the **ADVERSE EMPLOYMENT ACTION?** If so, for each injury state:

(a) the name and **ADDRESS** of each **HEALTH CARE PROVIDER;**

(b) the complaints for which the treatment was advised; and

(c) the nature, duration, and estimated cost of the treatment.

**213.0   Other Damages—Interrogatories to Employee**

[x] **213.1** Are there any other damages that you attribute to the **ADVERSE EMPLOYMENT ACTION?** If so, for each item of damage state:

(a) the nature;

(b) the date it occurred;

(c) the amount; and

(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has knowledge of the nature or amount of the damage.

[x] **213.2** Do any **DOCUMENTS** support the existence or amount of any item of damages claimed in Interrogatory 213.1? If so, identify the **DOCUMENTS** and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT.**

**214.0   Insurance**

[x] **214.1** At the time of the **ADVERSE EMPLOYMENT ACTION**, was there in effect any policy of insurance through which you were or might be insured in any manner for the damages, claims, or actions that have arisen out of the **ADVERSE EMPLOYMENT ACTION?** If so, for each policy state:

(a) the kind of coverage;

(b) the name and **ADDRESS** of the insurance company;

(c) the name, **ADDRESS**, and telephone number of each named insured;

(d) the policy number;

(e) the limits of coverage for each type of coverage contained in the policy;

(f) whether any reservation of rights or controversy or coverage dispute exists between you and the insurance company; and

(g) the name, **ADDRESS**, and telephone number of the custodian of the policy.

[ ] **214.2** Are you self-insured under any statute for the damages, claims, or actions that have arisen out of the **ADVERSE EMPLOYMENT ACTION?** If so, specify the statute.

**215.0   Investigation**

[x] **215.1** Have **YOU OR ANYONE ACTING ON YOUR BEHALF** interviewed any individual concerning the **ADVERSE EMPLOYMENT ACTION?** If so, for each individual state:

(a) the name, **ADDRESS**, and telephone number of the individual interviewed;

(b) the date of the interview; and

(c) the name, **ADDRESS**, and telephone number of the **PERSON** who conducted the interview.

[x] **215.2** Have **YOU OR ANYONE ACTING ON YOUR BEHALF** obtained a written or recorded statement from any individual concerning the **ADVERSE EMPLOYMENT ACTION?** If so, for each statement state:

(a) the name, **ADDRESS**, and telephone number of the individual from whom the statement was obtained;

(b) the name, **ADDRESS**, and telephone number of the individual who obtained the statement;

(c) the date the statement was obtained; and

(d) the name, **ADDRESS**, and telephone number of each **PERSON** who has the original statement or a copy.

**216.0   Denials and Special or Affirmative Defenses**

[ ] **216.1** Identify each denial of a material allegation and each special or affirmative defense in your **PLEADINGS** and for each:

(a) state all facts upon which you base the denial or special or affirmative defense;

(b) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and

(c) identify all **DOCUMENTS** and all other tangible things, that support your denial or special or affirmative defense, and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT.**

**217.0   Response to Request for Admissions**

[ ] **217.1** Is your response to each request for admission served with these interrogatories an unqualified admission? If not, for each response that is not an unqualified admission:

(a) state the number of the request;

(b) state all facts upon which you base your response;

(c) state the names, **ADDRESSES**, and telephone numbers of all **PERSONS** who have knowledge of those facts; and

(d) identify all **DOCUMENTS** and other tangible things that support your response and state the name, **ADDRESS**, and telephone number of the **PERSON** who has each **DOCUMENT** or thing.

53-611 (638)

CATHRYN CHINN, ESQ. #93340
3990 Old Town Ave. Ste. A109
San Diego, California 92110
Telephone: 619-295-4190

Attorney for Plaintiff
JOSE HERNANDEZ

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| JOSE HERNANDEZ,<br><br>    Plaintiff,<br><br>    V.<br><br>SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY, a public entity; and DOES 1 through 20, inclusive,<br><br>    Defendants. | CASE NO. GIC 871979<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANTS REQUEST FOR FORM INTERROGATORIES SET ONE EMPLOYMENT**<br><br>Dept.. 71<br>Judge: Hon. Richard E. Strauss<br>Complaint Filed: September 1, 2006<br>Trial Date: None Set |

PROPOUNDING PARTY:        Defendant SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY

RESPONDING PARTY:         Plaintiff JOSE HERNANDEZ

**RESPONSE TO FORM INTERROGATORY NO. 209.1 :**

None.

**RESPONSE TO FORM INTERROGATORY NO. 210.1:**

Yes.

**RESPONSE TO FORM INTERROGATORY NO. 210.2:**

Unknown at the present time.

**RESPONSE TO FORM INTERROGATORY NO. 210.3:**

Yes

-1-

PLAINTIFF'S RESPONSE TO DEFENDANTS FIRST REQUEST FOR PRODUCTION..........

53-611 (639)

**RESPONSE TO FORM INTERROGATORY NO. 210.4:**
    Yes, through obtaining current employment.

**RESPONSE TO FORM INTERROGATORY NO. 210.5:**
Yes. Retirement contribution $5,000.00

**RESPONSE TO FORM INTERROGATORY NO. 210.6:**
a. May 2006.
b. $95,000.00
c. Medical and dental benefits.

**RESPONSE TO FORM INTERROGATORY NO. 212:**
A. Yes

**RESPONSE TO FORM INTERROGATORY NO. 212.1:**
Yes.

**RESPONSE TO FORM INTERROGATORY NO. 212.2:**
Anxiety, depressions, sleeplessness, worry, weight loss, family strain, obsessional
Thinking, lack of concentration, loss of self esteem, loss of confidence, fear of being
Wrongfully attacked, fear of loss of reputation, interruption of career, fear of retribution
Toward friends by airport authority figures, fearful of crying spells, lack of emotional
Control, fear of economic future, inability to trust, lack of control over abuse by
Airport authority figures, being held up to ridicule, forbidden to voice my side of the
story to witnesses, and other symptoms.

**RESPONSE TO FORM INTERROGATORY NO. 212.3:**
All symptoms remain the same.

**RESPONSE TO FORM INTERROGATORY NO. 212.4:**
Yes,

**RESPONSE TO FORM INTERROGATORY NO. 212.5:**
Yes. Neoprene. Lunesta.

**RESPONSE TO FORM INTERROGATORY NO. 212.6:**

None.

Dated:  _10/13/06_                    _Cathryn Chinn_
                                      CATHRYN CHINN

PLAINTIFF'S RESPONSE TO DEFENDANTS FIRST REQUEST FOR PRODUCTION.........

**53-611 (640)**



1   CATHRYN CHINN, ESQ. 393340
    3990 Old Town Avenue, Ste. A109
2   San Diego, California 92110
    Telephone: 619-295-4190
3
    Attorney for Plaintiff
4       JOSE HERNANDEZ

5

6                SUPERIOR COURT OF THE STATE OF CALIFORNIA
7                    FOR THE COUNTY OF SAN DIEGO
8

9   _____

10
    JOSE HERNANDEZ,                    ) Case No. GIC 871979
11                                     )
          Plaintiff,                   ) PLAINTIFF'S SUPPLEMENTAL
12                                     ) RESPONSE TO DEFENDANTS
          v.                           ) FORM INTERROGATORIES-
13                                     ) EMPLOYMENT
    SAN DIEGO COUNTY REGIONAL          ) SET ONE
14  AIRPORT AUTHORITY, a public entity;)
    and DOES 1 through 10, inclusive,  )
15                                     )
          Defendants.                  )
16  _____

17
    No. 210.2:
18
    Estimated loss of salary $15,000.00 to date
19  Difference between original offer from subsequent employer loss: estimated $30,000.00

20  No. 210.6:

21  Confirmed

22  No. 212.3:

23  Duration is on daily basis and is constant

24  No. 212.4:

25  John Berger, M.D.
    405 Walnut
26  San Diego Ca 92103
    619-295-2147
27
    Interview and physical examination, lab tests
28
    The first week in December 2005

                              -1-
    _____
    PLAINTIFF'S .SUPPLEMENTAL RESPONSES TO INTERROGATORIES...........

53-611 (641)

1  Co-pay $5.00

2  No. 212.5

3  Lunesta for sleep regulation;
   anti-anxiety; and
4  depression medication
   prescribed the first week in December 2005, looking for the exact name of the medications
5
   Began taking them immediately and took them for approximately three months, ending in March
6  2006

7  There is no page 8 of these interrogatories and no answer to No. 212.7 was requested by
   defendant.  Plaintiff will answer this interrogatory if the defendant cares to provide it.
8

9  Dated: *November 9, 2006*          *Cathryn Chinn*
10                                     CATHRYN CHINN
                                       Attorney for Plaintiff
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    -2-

53-611 (642)

1  FRED M. PLEVIN (SBN 126185)
   SANDRA L. MCDONOUGH (SBN 193308)
2  JENNIFER E. BAUMANN (SBN 222548)
   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3  401 B Street, Tenth Floor
   San Diego, California 92101-4232
4  Telephone: 619-237-5200
   Facsimile: 619-615-0700

5
   AMY S. GONZALEZ (SBN 181745)
6  **SAN DIEGO COUNTY REGIONAL AIRPORT
   AUTHORITY**
7  3225 N. Harbor Drive
   San Diego, CA 92138
8  Telephone: (619) 400-2425
   Facsimile: (619) 400-2428

9

10 Attorneys for Defendant
   SAN DIEGO COUNTY REGIONAL AIRPORT
11 AUTHORITY

12            SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                     COUNTY OF SAN DIEGO

14

15 JOSE HERNANDEZ,                    CASE NO. GIC 871979

16         Plaintiff,                 **SPECIAL INTERROGATORIES, SET ONE**

17      v.

18 SAN DIEGO COUNTY REGIONAL          Dept:            71
   AIRPORT AUTHORITY, a public entity; Judge:           Hon. Richard E. Strauss
19 and DOES 1 through 12, inclusive,   Complaint Filed:  September 1, 2006
                                       Trial Date:       Not Set
20         Defendants.

21

22 PROPOUNDING PARTY:   DEFENDANT, SAN DIEGO COUNTY REGIONAL AIRPORT

23                      AUTHORITY

24 RESPONDING PARTY:    PLAINTIFF, JOSE HERNANDEZ

25         Defendant hereby requests that plaintiff answer the following special interrogatories under

26 oath within thirty (30) days as required by Code of Civil Procedure section 2030.210 *et seq.*

27 Responses should be directed to counsel for defendant, Paul, Plevin, Sullivan & Connaughton

28 LLP, 401 B Street, Tenth Floor, San Diego, California 92101, attn: Fred M. Plevin.

PAUL. PLEVIN,
SULLIVAN &        SPECIAL INTERROGATORIES, SET ONE          1                CASE NO. GIC 871979
CONNAUGHTON LLP

                                                                              **53-611 (643)**

1    As used below, the term "Document" or "Documents" is intended to be interpreted in its

2    broadest sense, including but not limited to any kind of written, typewritten, printed or recorded

3    material whatsoever, including but not limited to any notes, memoranda, complaints, claims,

4    affidavits, statements, papers, files, forms, data, tapes, printouts, letters, books, reports,

5    summaries, prescriptions, prognoses, policies, procedures, manuals, handbooks, minutes, logs,

6    communications, certificates, contracts, agreements, telegrams, records, correspondence, diaries,

7    calendars, recordings and transcriptions of recordings, information retrievable from computers,

8    photographs, pictures, diagrams, drawings, microfilm, invoices, bills, receipts, requests or any

9    other writing, however produced or reproduced, and further includes, without limitation, all

10   originals, all file copies and all other copies, no matter how prepared, and all drafts prepared in

11   connection with such Documents whether or not used, within the possession, custody and/or

12   control of plaintiff, or his agents, attorneys, physicians, psychologists, counselors, and/or any

13   other persons who may act on his behalf, excepting only those Documents that are privileged or

14   otherwise protected from discovery, as to which the claim of privilege or protection is specifically

15   stated by written notice to defendant no later than one week from the date of production.

16       As the term is used throughout, "Complaint" means the civil Complaint filed on Your

17   behalf in this action.

18       As the term is used throughout, "Authority official" is intended to be interpreted in its

19   broadest sense, including Board Members, Vice Presidents, Directors, Manager and employees of

20   the San Diego County Regional Airport Authority.

21       As the term is used throughout, "You" and "Your" are intended to be interpreted in its

22   broadest sense, including plaintiff and anyone acting on his behalf.

23   **SPECIAL INTERROGATORY NO. 1:**

24       Identify all "members of the Authority" referred to at paragraph 11, page 5, line 6 of Your

25   Complaint, wherein You allege that You made disclosures described in that paragraph to

26   "members of the Authority."

27   ///

28   ///

PAUL. PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

SPECIAL INTERROGATORIES, SET ONE                    2                    CASE NO. GIC 871979

**53-611 (644)**

1 **SPECIAL INTERROGATORY NO. 2:**

2        Identify each person present on any occasion when You disclosed to any "member of the

3 Authority" the "side deal" made by Bryan Enarson, as alleged in paragraph 11 (page 5, lines 6-8)

4 and in paragraph 39 (page 22, line 24 to page 23, line 50) of Your Complaint.

5 **SPECIAL INTERROGATORY NO. 3:**

6        Set forth the date on which You made each objection or disclosure to any Authority

7 official that increased lease payments for the General Dynamics property was an unauthorized use

8 of Authority funds, as alleged in paragraph 12 (page 5, lines 21-23) of Your Complaint.

9 **SPECIAL INTERROGATORY NO. 4:**

10        Identify each person present on any occasion when You made any objection or disclosure

11 to any Authority official that increased lease payments for the General Dynamics property was an

12 unauthorized use of Authority funds, as alleged in paragraph 12 (page 5, lines 21-23) of Your

13 Complaint.

14 **SPECIAL INTERROGATORY NO. 5:**

15        Identify each person present on any occasion when You made any objection or disclosure

16 to any Authority official of the $2 million increase to the project budget as a result of Enarson's

17 actions, as alleged in paragraph 11 (page 5, lines 8-9) of Your Complaint.

18 **SPECIAL INTERROGATORY NO. 6:**

19        Set forth the date on which You made any objection or disclosure to any Authority official

20 of the $2 million increase to the project budget as a result of Enarson's actions, as alleged in

21 paragraph 11 (page 5, lines 8-9) of Your Complaint.

22 **SPECIAL INTERROGATORY NO. 7:**

23        Set forth each date on which You disclosed to any "member of the Authority" the "side

24 deal" made by Bryan Enarson, as alleged in paragraph 11 (page 5, lines 6-8) and in paragraph 39

25 (page 22, line 24 to page 23, line 50) of Your Complaint.

26 **SPECIAL INTERROGATORY NO. 8:**

27        Set forth the date on which You made any objection or disclosure to any Authority official

28 of the findings and expenditures as alleged in paragraph 13 of Your Complaint (page 6, lines 15-

17).

**SPECIAL INTERROGATORY NO. 9:**

Identify each person present on any occasion when You made any objection or disclosure to any Authority official of the findings and expenditures as alleged in paragraph 13 of Your Complaint (page 6, lines 15-17).

**SPECIAL INTERROGATORY NO. 10:**

Identify the "Authority members" You refer to in paragraph 13 of Your Complaint, at page 6, line 18.

**SPECIAL INTERROGATORY NO. 11:**

Identify the "members and officers" You refer to in paragraph 13 of Your Complaint, at page 6, lines 24-25.

**SPECIAL INTERROGATORY NO. 12:**

Set forth the date on which You made any objection or disclosure to any Authority official of LPI's alleged wrongdoings and financial misuse issues, as alleged in paragraph 14 of Your Complaint (page 8, lines 19-21).

**SPECIAL INTERROGATORY NO. 13:**

Identify each person present on any occasion on which You made any objection or disclosure to any Authority official of LPI's alleged wrongdoings and financial misuse issues, as alleged in paragraph 14 of Your Complaint (page 8, lines 19-21).

**SPECIAL INTERROGATORY NO. 14:**

Set forth the date on which You made any objection or disclosure to any Authority official of any computational or other errors in LPI's bid submission; unsatisfactory contract performance; failure to submit insurance Documents acceptable to the Authority; and/or Grey's unjustified refusal to warrant his performance and other offenses, as alleged in paragraph 14 of Your Complaint (page 8, line 24 - page 9, line 1).

**SPECIAL INTERROGATORY NO. 15:**

Identify each person present on any occasion on which You made any objection or disclosure to any Authority official of any computational or other errors in LPI's bid submission;

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

SPECIAL INTERROGATORIES, SET ONE          4                              CASE NO. GIC 871979

**53-611 (646)**

1   unsatisfactory contract performance; failure to submit insurance Documents acceptable to the

2   Authority; and/or Grey's unjustified refusal to warrant his performance and other offenses, as

3   alleged in paragraph 14 of Your Complaint (page 8, line 24 - page 9, line 1).

4   **SPECIAL INTERROGATORY NO. 16:**

5          Set forth the date of each meeting You had with any Authority official during which the

6   subject of LPI's performance was discussed, as alleged in paragraph 18 of Your Complaint.

7   **SPECIAL INTERROGATORY NO. 17:**

8          Identify each person present at each meeting You had with any Authority official during

9   which the subject of LPI's performance was discussed, as alleged in paragraph 18 of Your

10  Complaint.

11  **SPECIAL INTERROGATORY NO. 18:**

12         Identify the vice president and the budget analyst referred to in paragraph 37a of your

13  Complaint, (page 17, lines 12-13).

14  **SPECIAL INTERROGATORY NO. 19:**

15         Identify all of the people who told You they had been contacted by Luce, Forward or by an

16  investigator, as alleged in paragraph 24 of Your Complaint.

17  **SPECIAL INTERROGATORY NO. 20:**

18         Identify the person who You allege was "coerced and threatened" by an investigator, as

19  alleged in paragraph 25 of Your Complaint (at page 12, lines 17-18).

20  **SPECIAL INTERROGATORY NO. 21:**

21         Identify all people who were questioned about Your marriage, as alleged in paragraph 26

22  of Your Complaint.

23  **SPECIAL INTERROGATORY NO. 22:**

24         Provide the date of each of the "private meetings" referred to in paragraph 57 of Your

25  Complaint (page 30, line 4).

26  **SPECIAL INTERROGATORY NO. 23:**

27         Identify each person present at each "private meeting" referred to in paragraph 57 of Your

28  Complaint (page 30, line 4).

1 | **SPECIAL INTERROGATORY NO. 24:**

2     Provide the date of each of the "public meetings" referred to in paragraph 57 of Your

3 | Complaint (page 30, lines 4-5).

4 | **SPECIAL INTERROGATORY NO. 25:**

5     Identify each person present at each "public meeting" referred to in paragraph 57 of Your

6 | Complaint (page 30, lines 4-5).

7 | **SPECIAL INTERROGATORY NO. 26:**

8     Provide the date of each of the "open door and closed door meetings" referred to in

9 | paragraph 57 of Your Complaint (page 30, lines 4-5).

10 | **SPECIAL INTERROGATORY NO. 27:**

11     Identify each person present at each "open door and closed door meetings" referred to in

12 | paragraph 57 of Your Complaint (page 30, lines 4-5).

13 | **SPECIAL INTERROGATORY NO. 28:**

14     Provide the date of each of the discussions with the Vice President to whom You reported

15 | as referred to in paragraph 58 of Your Complaint (page 30, lines 9-13).

16 | **SPECIAL INTERROGATORY NO. 29:**

17     Identify each person present at each of the discussions with the Vice President to whom

18 | You reported as referred to in paragraph 58 of Your Complaint (page 30, lines 9-13).

19 | **SPECIAL INTERROGATORY NO. 30:**

20     Provide the date of each of the "Capitol Improvement meetings" referred to in paragraph

21 | 59 of Your Complaint (page 30, lines 14-15).

22 | **SPECIAL INTERROGATORY NO. 31:**

23     Identify each person present at each of the "Capitol Improvement meetings" referred to in

24 | paragraph 59 of Your Complaint (page 30, lines 14-15).

25 | **SPECIAL INTERROGATORY NO. 32:**

26     Provide the date of each of the "weekly Operations meetings" referred to in paragraph 59

27 | of Your Complaint (page 30, lines 14-16).

28 | ///

PAUL. PLEVIN, SULLIVAN & CONNAUGHTON LLP

SPECIAL INTERROGATORIES, SET ONE     6      CASE NO. GIC 871979

53-611 (648)

1   **SPECIAL INTERROGATORY NO. 33:**

2       Identify each person present at each of the "weekly Operations meetings" referred to in

3   paragraph 59 of Your Complaint (page 30, lines 14-16).

4   **SPECIAL INTERROGATORY NO. 34:**

5       Provide the date of each of the "Directors meetings" referred to in paragraph 59 of Your

6   Complaint (page 30, lines 15-16).

7   **SPECIAL INTERROGATORY NO. 35:**

8       Identify each person present at each of the "Directors meetings" referred to in paragraph

9   59 of Your Complaint (page 30, lines 15-16).

10   **SPECIAL INTERROGATORY NO. 36:**

11       Provide the date of each "other time" You made the disclosures referred to in paragraph 59

12   of Your Complaint (page 30, lines 15-16).

13   **SPECIAL INTERROGATORY NO. 37:**

14       Identify each person present each "other time" You made the disclosures referred to in

15   paragraph 59 of Your Complaint (page 30, lines 15-16).

16   **SPECIAL INTERROGATORY NO. 38:**

17       Provide the date of each of the "disclosure meetings" referred to in paragraph 60 of Your

18   Complaint (page 30, lines 16-17).

19   **SPECIAL INTERROGATORY NO. 39:**

20       Identify each person present at each of the "disclosure meetings" referred to in paragraph

21   60 of Your Complaint (page 30, lines 16-17).

22   Dated: September 15, 2006             PAUL, PLEVIN, SULLIVAN &
23                                    CONNAUGHTON LLP

24

25                              By: *Sandra L. McDonough*
                                FRED M. PLEVIN
26                                 SANDRA L. MCDONOUGH
                                JENNIFER E. BAUMANN
27                                 Attorneys for Defendant
                                SAN DIEGO COUNTY REGIONAL
28                                 AIRPORT AUTHORITY

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

SPECIAL INTERROGATORIES, SET ONE           7                      CASE NO. GIC 871979

1  FRED M. PLEVIN (SBN 126185)
   SANDRA L. MCDONOUGH (SBN 193308)
2  JENNIFER E. BAUMANN (SBN 222548)
   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3  401 B Street, Tenth Floor
   San Diego, California  92101-4232
4  Telephone: 619-237-5200
   Facsimile: 619-615-0700
5
   AMY S. GONZALEZ (SBN 181745)
6  **SAN DIEGO COUNTY REGIONAL AIRPORT
   AUTHORITY**
7  3225 N. Harbor Drive
   San Diego, CA 92138
8  Telephone:  (619) 400-2425
   Facsimile: (619) 400-2428
9

10 Attorneys for Defendant
   SAN DIEGO COUNTY REGIONAL AIRPORT
11 AUTHORITY

12               SUPERIOR COURT OF THE STATE OF CALIFORNIA

13                          COUNTY OF SAN DIEGO

14

15 JOSE HERNANDEZ,                     CASE NO. GIC 871979

16        Plaintiff,                   **DECLARATION FOR ADDITIONAL
17                                      DISCOVERY**
        v.
18
   SAN DIEGO COUNTY REGIONAL            Dept:            71
19 AIRPORT AUTHORITY, a public entity;  Judge:           Hon. Richard E. Strauss
   and DOES 1 through 12, inclusive,    Complaint Filed: September 1, 2006
20                                       Trial Date:      Not Set
        Defendants.
21

22

23        I, Sandy L. McDonough, declare:

24        1.      I am presently an attorney for defendant, San Diego County Regional Airport

25 Authority, a party to this action or proceeding.

26        2.      I am propounding to plaintiff the attached set of interrogatories.

27        3.      This set of interrogatories will cause the total number of specially prepared

28 interrogatories propounded to the party to whom they are directed to exceed the number of

PAUL, PLEVIN,
 SULLIVAN &      DECLARATION FOR ADDITIONAL DISCOVERY          1              CASE NO. GIC 871979
CONNAUGHTON LLP

53-611 (650)

1    specially prepared interrogatories permitted by Sections 2030.30 of the Code of Civil Procedure.

2       4.      I have not previously propounded any interrogatories to this party.

3       5.      This set of interrogatories contains a total of 39 specially prepared interrogatories.

4       6.      I am familiar with the issues and the previous discovery conducted by all of the

5    parties in the case.

6       7.      I have personally examined each of the questions in this set of interrogatories.

7       8.      This number of questions is warranted under paragraph (2) of subdivision (c) of

8    Section 2030.040 of the Code of Civil Procedure due to the number of different causes of action

9    and complexity of legal issues.

10       9.      None of the questions in this set of interrogatories is being propounded for any

11    improper purpose, such as to harass the party, or the attorney for the party, to whom it is directed,

12    or to cause unnecessary delay or needless increase in the cost of litigation.

13       I declare under penalty of perjury under the laws of the State of California that the

14    foregoing is true and correct, and that this declaration was executed on September _15_, 2006.

15

16                         *Sandra L. McDonough*

                       SANDRA L. McDONOUGH

17

18

19

20

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

DECLARATION FOR ADDITIONAL DISCOVERY       2            CASE NO. GIC 871979

**53-611 (651)**

11-01-2006 2:33PM    FROM    P. 2

1 | CATHRYN CHINN, ESQ. #93340
3990 Old Town Ave. Ste. A109
2 | San Diego, California 92110
Telephone: 619-295-4190
3
Attorney for Plaintiff
4 | JOSE HERNANDEZ

5

6

7 | SUPERIOR COURT OF THE STATE OF CALIFORNIA

8 | FOR THE COUNTY OF SAN DIEGO

9

10 | JOSE HERNANDEZ,                     ) CASE NO. GIC 871979
11 |         Plaintiff,                  ) **PLAINTIFF'S RESPONSE TO**
                                        ) **DEFENDANTS REQUEST FOR**
12 |     v.                             ) **SPECIAL INTERROGATORIES**
                                        ) **SET ONE**
13 | SAN DIEGO COUNTY REGIONAL          )
14 | AIRPORT AUTHORITY, a public entity; ) Dept. 71
and DOES 1 through 20, inclusive,     ) Judge: Hon. Richard E. Strauss
15 |                                    ) Complaint Filed: September 1, 2006
        Defendants.                    ) Trial Date: None Set
16 |                                    )

17

18 | PROPOUNDING PARTY:        Defendant SAN DIEGO COUNTY REGIONAL
19 |                           AIRPORT AUTHORITY

20 | RESPONDING PARTY:         Plaintiff JOSE HERNANDEZ

21

22 | **RESPONSE TO SPECIAL INTERROGATORY NO. 1 :**

23 | Objection.  Calls for attorney client work product and invades others right to privacy.
Ted Sexton, Amile Porta, Troy Lee, and others.

24

25 | **RESPONSE TO SPECIAL INTERROGATORY NO. 2:**
Objection. Calls for attorney client work product and invades others right to privacy.
26 | Ted Sexton, Vernon Evans and others.

27 | **RESPONSE TO SPECIAL INTERROGATORY NO. 3:**
Approximately November 2004

28 | **RESPONSE TO SPECIAL INTERROGATORY NO. 4:**
Approximately November 2004.

-1-

**53-611 (652)**

1 **RESPONSE TO SPECIAL INTERROGATORY NO. 5:**
Objection.
2 Ted Sexton, Amile Porta, Ron Larson, Jay Bass, Troy Lee, and others.

3 **RESPONSE TO SPECIAL INTERROGATORY NO. 6:**
Approximately November 2004
4

5 **RESPONSE TO SPECIAL INTERROGATORY NO. 7:**
Approximately November 2004

6 **RESPONSE TO SPECIAL INTERROGATORY NO. 8:**
Approximately 2003.
7

8 **RESPONSE TO SPECIAL INTERROGATORY NO. 9:**
Objection.
Ted Sexton and others.
9

**RESPONSE TO SPECIAL INTERROGATORY NO. 10:**
10 Objection. Invades privacy of others.
Pretty extensive group. Brian Enarson, Vernon Evans, Ted Sexton, Bret Lobner,
11 Thella Bowens, and others.

12 **RESPONSE TO SPECIAL INTERROGATORY NO. 11:**
All the vice presidencts and Bowens.
13

14 **RESPONSE TO SPECIAL INTERROGATORY NO. 12:**
Approximately February 2004.

15 **RESPONSE TO SPECIAL INTERROGATORY NO. 13:**
 Ted Sexton
16

17 **RESPONSE TO SPECIAL INTERROGATORY NO. 14:**
Approximately February 2004.

18 **RESPONSE TO SPECIAL INTERROGATORY NO. 15:**
Ted Sexton.
19

**RESPONSE TO SPECIAL INTERROGATORY NO. 16:**
20 **On a weekly basis throughout 2005**

21 **RESPONSE TO SPECIAL INTERROGATORY NO. 17:**
Ted Sexton.
22

**RESPONSE TO SPECIAL INTERROGATORY NO. 18:**
23 Ted Sexton, Jim Prentice

24 **RESPONSE TO SPECIAL INTERROGATORY NO. 19:**
Objection Invades the privacy of third parties and is attorney client privileged information and
25 attorney work product.

26 **RESPONSE TO SPECIAL INTERROGATORY NO. 20:**
Objection. Invades the privacy of third parties and its attorney client privileged information and
27 attorney work product.

28 **RESPONSE TO SPECIAL INTERROGATORY NO. 21:**
 **Objection. Invades the privacy of third parties and its attorney client privileged**

-2-

PLAINTIFF'S RESPONSE TO DEFENDANTS FIRST REQUEST FOR PRODUCTION..........

**53-611 (653)**

1    information and attorney work product.

2    **RESPONSE TO SPECIAL INTERROGATORY NO. 22:**
     On a weekly basis.

3

4    **RESPONSE TO SPECIAL INTERROGATORY NO. 23:**
     Ted Sexton, Amile Porta, Jay Bass, Ron Larson, Amy Gosslin, Tom Horton, and others.

5    **RESPONSE TO SPECIAL INTERROGATORY N0. 24:**
     On a weekly basis.

6

7    **RESPONSE TO SPECIAL INTERROGATORY NO. 25:**
     All members of the capital improvement committee.

8    **RESPONSE TO SPECIAL INTERROGATORY NO. 26:**
     On a weekly basis.

9

10   **RESPONSE TO SPECIAL INTERROGATORY NO. 27:**
     Ted Sexton and others.

11   **RESPONSE TO SPECIAL INTERROGATORY NO. 28:**
     Ted Sexton

12

13   **RESPONSE TO SPECIAL INTERROGATORY NO. 29:**
     Ted Sexton

14   **RESPONSE TO SPECIAL INTERROGATORY NO. 30:**
     On a weekly basis throughout 2003 and 2004.

15

16   **RESPONSE TO SPECIAL INTERROGATORY NO. 31:**
     Those names are found in the weekly notes.

17   **RESPONSE TO SPECIAL INTERROGATORY NO. 32:**
     Held on Tuesday throughout 2003 and 2004 and 2005

18

19   **RESPONSE TO SPECIAL INTERROGATORY NO. 33:**
     All members of the Airport Operations department reporting directly to Ted Sexton

20   **RESPONSE TO SPECIAL INTERROGATORY NO. 34:**
     Held on a weekly basis.

21

22   **RESPONSE TO SPECIAL INTERROGATORY NO. 35:**
     The names of each of those present can be found in the weekly meeting notes.

23   **RESPONSE TO SPECIAL INTERROGATORY NO. 36:**
     During weekly conversations with Plaintiff's direct supervisor.

24

25   **RESPONSE TO SPECIAL INTERROGATORY NO. 37:**
     Ted Sexton.

26   **RESPONSE TO SPECIAL INTERROGATORY NO. 38:**
     On a weekly basis throughout the year.

27

28   **RESPONSE TO SPECIAL INTERROGATORY NO. 39:**
     Ted Sexton.

-3-

**53-611 (654)**