1 │ FRED M. PLEVIN (SBN 126185)
│ SANDRA L. MCDONOUGH (SBN 193308)
2 │ ALBERT R. LIMBERG (SBN 211110)
│ **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
3 │ 401 B Street, Tenth Floor
│ San Diego, California 92101-4232
4 │ Telephone: 619-237-5200
│ Facsimile: 619-615-0700
5 │
6 │ AMY S. GONZALEZ (SBN 181745)
│ **SAN DIEGO COUNTY REGIONAL AIRPORT**
│ **AUTHORITY**
7 │ 3225 N. Harbor Drive
│ San Diego, CA 92138
8 │ Telephone: (619) 400-2425
│ Facsimile: (619) 400-2428
9 │
10 │ Attorneys for Defendant
│ SAN DIEGO COUNTY REGIONAL AIRPORT
11 │ AUTHORITY

*(stamp: FILED / C... ...r Court / NOV 0 9 2007 / By: M. WONG-JIMENEZ, Deputy)*

12

13 │ SUPERIOR COURT OF THE STATE OF CALIFORNIA

14 │ COUNTY OF SAN DIEGO

15 │ JOSE HERNANDEZ,                     │ CASE NO. GIC871979

16 │         Plaintiff,                  │ **DEFENDANT SAN DIEGO COUNTY**
│                                        │ **REGIONAL AIRPORT AUTHORITY'S**
17 │     v.                              │ **REPLY MEMORANDUM OF POINTS AND**
│                                        │ **AUTHORITIES IN SUPPORT OF ITS**
18 │ SAN DIEGO COUNTY REGIONAL            │ **MOTION FOR SUMMARY JUDGMENT OR,**
│ AIRPORT AUTHORITY, a public entity;   │ **IN THE ALTERNATIVE, SUMMARY**
19 │ and DOES 1 through 12, inclusive,    │ **ADJUDICATION**

20 │         Defendants.

21 │                                      │ Date:            November 16, 2007
│                                        │ Time:            1:30 p.m.
22 │                                      │ Dept:            75
│                                        │ Judge:           Hon. Richard E. Strauss
23 │                                      │ Complaint Filed: September 1, 2006
│                                        │ Trial Date:      January 4, 2008

24 │                                      │ **EXEMPT FROM FEES**
│                                        │ **GOVT. CODE § 6103**
25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION .................................................................................................. 1

II.   THE AUTHORITY'S ADJUDICATIONS ARE PROPER ............................................ 1

III.  HERNANDEZ' LABOR CODE SECTION 1102.5 CLAIM FAILS ................................ 2

    A.    Hernandez Did Not Engage in a Protected Activity. ................................... 2

        1.    Hernandez Failed to Provide Any Evidence of His Belief
            Regarding Whether the Authority's Actions Were Unlawful .................. 2

        2.    Hernandez Failed to Articulate the Violation of a Federal or
            State Statute ............................................................................................ 3

    B.    Hernandez Failed to Produce Admissible Evidence of a Causal Link
        Between His Disclosures and the Termination. ............................................ 5

        1.    Hernandez' Speculation as to Bowens' Motivation Does Not
            Create a Causal Link .............................................................................. 6

        2.    Hernandez' Complaints Regarding LPi Began in 2004,
            More Than One Year Prior to Hernandez' Termination,
            Negating Any Causal Link ...................................................................... 6

        3.    There Is No Causal Connection Between the Investigation
            and The Complaints ................................................................................ 7

    C.    Hernandez Has Not Met His Burden of Demonstrating Pretext ................... 7

        1.    Use of an Outside Investigator Is Not Pretext ....................................... 7

        2.    Hernandez' Opinion as to Whether His Acts Warranted
            Termination Does Not Create a Triable Issue of Fact as to
            Pretext .................................................................................................... 7

        3.    Hernandez Has Not Identified Similarly Situated Individuals
            to Establish Pretext ................................................................................ 8

        4.    The Authority's Failure to Follow Progressive Discipline
            Policy Does Not Create Pretext .............................................................. 9

IV.   HERNANDEZ FAILED TO OVERCOME THE IMMUNITY IN
    SECTION 821.6 ................................................................................................... 9

V.    HERNANDEZ FAILED TO EXHAUST HIS ADMINISTRATIVE
    REMEDIES ....................................................................................................... 10

VI.   CONCLUSION .................................................................................................... 10

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

i

68-823

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Abdel v. Ikon Office Solutions, Inc.*
(N.D. Cal. Aug. 25, 2006, No. C-05-1685 JCS) __ F.Supp.2d __ ...............................6

*Clark County School District v. Breeden*
(2001) 532 U.S. 268..................................................................2

*Damon v. Fleming Supermarkets of Florida, Inc.*
(11th Cir. 1999) 196 F.3d 1354 ..............................................8

*Fuentes v. Perskie*
(3d Cir. 1994) 32 F.3d 759 ......................................................8

*Kariotis v. Navistar Intern. Transport Corp.*
(7th Cir. 1997) 131 F.3d 672 ..................................................8

*Mayberry v. Vought Aircraft Co.*
(5th Cir. 1995) 55 F.3d 1086 ..................................................7

*Mitchell v. Toledo Hospital*
(6th Cir. 1992) 964 F.2d 577 ..................................................8

*Neveu v. City of Fresno*
(2005) 392 F.Supp.2d 1159 ...................................................10

*Randle v. City of Aurora*
(10th Cir. 1995) 69 F.3d 441 ..................................................9

## STATE CASES

*Caldwell v. Montoya*
(1995) 10 Cal.4th 972 ...........................................................10

*Compton v. City of Santee*
(1993) 12 Cal.App.4th 591 .....................................................7

*D'Amico v. Board of Medical Examiners*
(1974) 11 Cal.3d 1 .............................................................6, 9

*Grant-Burton v. Covenant Care, Inc.*
(2002) 99 Cal.App.4th 1361 ..................................................3

*Guz v. Bechtel National Inc.*
(2000) 24 Cal.4th 317 .........................................................8, 9

*Hanson v. Lucky Stores, Inc.*
(1999) 74 Cal.App.4th 215 .....................................................6

*Hersant v. Department of Social Svcs.*
(1997) 57 Cal.App.4th 997 .....................................................7

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

ii

68-824

*Kemmerer v. County of Fresno*
(1988) 200 Cal.App.3d 1426 ................................................................10

*Kerr v. Rose*
(1990) 216 Cal.App.3d 1551 ..................................................................7

*Lilienthal & Fowler v. Superior Court*
(1993) 12 Cal.App.4th 1848 ...................................................................1

*Lyle v. Warner Brothers Television Productions*
(2006) 38 Cal.4th 264 ............................................................................2

*Martin v. Lockheed Missiles & Space Co.*
(1994) 29 Cal.App.4th 1718 ...................................................................6

*Morgan v. Regents*
(2000) 88 Cal.App.4th 52 .......................................................................6

*Sangster v. Paetkau*
(1998) 68 Cal.App.4th 151 .....................................................................6

*Scolinos v. Kolts*
(1995) 37 Cal.App.4th 635 .....................................................................3

*Sequoia Insurance Co. v. Superior Court*
(1993) 13 Cal.App.4th 1472 ...................................................................5

*Shoemaker v. Myers*
(1992) 2 Cal.App.4th 1407 ...................................................................10

*Summers v. City of Cathedral City*
(1990) 225 Cal.App.3d 1047 ................................................................10

## STATE STATUTES

Government Code section 822 ........................................................3, 4, 9, 10

Government Code section 6314 ...................................................................4

Labor Code section 1102.5 ..........................................................1, 2, 4, 6, 10

Penal Code section 424 ...............................................................................4

Public Utilities Code section 170064 ........................................................4, 5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

iii

68-825

## I. INTRODUCTION

Hernandez' opposition ignores the undisputed facts of this case: The Authority terminated him after an outside investigator determined that he violated the Authority's Ethics Code. The investigation occurred because two of Hernandez' co-workers (who had no connection to Hernandez' alleged complaints) alerted the Authority's CEO to Hernandez' conduct. Against this backdrop of the Authority's compelling reason for terminating Hernandez' employment, he has simply failed to create a triable issue of fact that the real reason for the Authority's action was retaliation because he hasn't shown either that he had a reasonable belief his "complaints" involved unlawful conduct, or a connection between his "complaints" and his termination.

## II. THE AUTHORITY'S ADJUDICATIONS ARE PROPER

Each of the Authority's adjudications are proper. An adjudication may be granted when it completely disposes of a cause of action. (CCP § 437c(f)(1).) Adjudications 1-6 and 10-11 address Hernandez' cause of action as one wholly inseparable cause of action. These adjudications are proper because if any one of them is granted, Hernandez' entire first cause of action is eliminated.

In the alternative, the Authority set forth adjudications 7-9 and 12-24, directed to separate theories of liability contained within Hernandez' single cause of action, in which he alleges that the Authority terminated him for complaining about four separate and unique events. While Hernandez could have alleged each of those theories in separate causes of action, he lumped them into one cause of action. It is therefore appropriate to adjudicate each theory as if it was a separate cause of action. (*Lilienthal & Fowler v. Superior Court* (1993) 12 Cal.App.4th 1848, 1853 [Where a plaintiff has lumped various theories into one cause of action, it is proper to adjudicate each separate theory of liability and treat it as a separate cause of action.].)[1]

Adjudications 12 through 23 all attack an element of Hernandez' prima facie case under Labor Code section 1102.5 as separate theories of liability. If any element of Hernandez' prima facie case under Labor Code section 1102.5 fails, then the entire cause of action or separate theory

---

[1] The Authority moved to strike each of the protected activities on independent grounds in the initial pleading stage. The Court denied the motion to strike because there was enough alleged in the complaint to withstand a motion to strike, but its ruling did not preclude the Authority from raising the same issues on summary judgment or adjudication.

1    of liability is disposed of and summary adjudication and/or judgment is proper. (See e.g. *Lyle v.*

2    *Warner Bros. Television Productions* (2006) 38 Cal.4th 264, 274.) Further, adjudications 7-9

3    address various subsections under Labor Code section 1102.5, which are inartfully lumped into one

4    cause of action. Granting of any of those adjudications will dispose of those separately cognizable

5    theories of liability as well. The Authority's adjudications are therefore properly constructed.

6        ### III. HERNANDEZ' LABOR CODE SECTION 1102.5 CLAIM FAILS

7        Hernandez has not met his burden of proving through admissible evidence: (1) that he

8    engaged in a protected activity by complaining about an unlawful activity; (2) a causal link between

9    any alleged protected activity; or (3) that the Authority's legitimate non-retaliatory business reason

10   was a pretext for retaliation. If any one of these prongs fail, then Hernandez' entire Labor Code

11   section 1102.5 claim fails and summary judgment is proper.

12   **A.    Hernandez Did Not Engage in a Protected Activity.**

13       In order to prove that he engaged in a protected activity Hernandez must demonstrate that he

14   made known information that he reasonably believed disclosed a violation of a state or federal

15   statute, rule, or regulation. (Lab. Code, § 1102.5, subd. (b).) Specifically, Hernandez must show

16   that he had a "'reasonable belief' that the employment practice [he] protested was prohibited" under

17   a state or federal law. (*Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, 271.)

18       **1.    Hernandez failed to provide any evidence of his belief regarding whether the Authority's actions were unlawful.**

19       Hernandez has a straightforward requirement in proving his retaliation claim: He must first

20   and foremost prove through admissible evidence that he believed he disclosed violations of state or

21   federal law. Hernandez has failed, however, to provide any evidence that he believed the

22   Authority's actions violated a law. His declaration vaguely states that he thought expenditures were

23   "gifts of public funds" or "unwarranted" but he does not state that he believed the alleged "gifts" or

24   "unwarranted" expenditures are unlawful. That is not to say that Hernandez must have known the

25   precise governing statute at the time he complained, but section 1102.5 minimally requires that he at

26   least believe (and reasonably so) the activities about which he complained are unlawful.

27       Although his attorneys argue quite fervently that the conduct that Hernandez allegedly

28   disclosed was unlawful, the Court cannot assume without any *evidence* that Hernandez knew or

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

2

1    believed that "gifts of public funds" were allegedly unlawful.  In fact, even if everyone other than

2    Hernandez knows that something is unlawful, under section 1102.5 it is the belief of the disclosing

3    party that is dispositive.  Without any evidence that Hernandez had a subjective belief that the

4    activity about which he complained was unlawful, his claim necessarily fails.

5          **2.      Hernandez failed to articulate the violation of a federal or state statute.**

6          Even if Hernandez declared his subjective believe that the Authority's "gift of public funds"

7    was unlawful, section 1102.5 requires his belief to be reasonable, and Hernandez must identify a

8    statute or rule that supports his claim of unlawfulness.  Hernandez has failed to meet this burden.

9          Prior to Hernandez' opposition to this motion, he relied on the Authority's Codes, the

10    "Contract" Code, the ADA, and certain Public Utilities Code sections to support his claim.  (SAC

11    ¶¶ 11-14.)  Hernandez apparently recognized those codes were inapplicable because his opposition

12    gives short shrift to the Authority's arguments regarding them.  Instead, he now improperly relies on

13    new statutes.[2]  However, these new statutes do not support his claim:

14         &bull; **Article 16, section 6 of the California Constitution does not relate to Hernandez' alleged disclosures.**

15          Hernandez first argues he disclosed violations of Article 16, section 6 of the California

16    Constitution.  This provision prohibits the *Legislature* from authorizing or making gifts of public

17    money.  In contrast, Hernandez alleges that the Authority "gave" public funds away because he

18    believes that the Authority could have negotiated more favorable lease terms.  Since the Authority is

19    not the *Legislature* nor does Hernandez allege legislative acts by the Authority, this section of the

20    Constitution does not apply and cannot form the basis of Hernandez' claim.

21         &bull; **Government Code section 822**

22          Hernandez also argues that Government Code section 822 prohibits gifts of public funds,

23    even though this section merely provides: "A public employee is not liable for money stolen from

---

24    [2] It is improper for Hernandez to add additional code sections at this late date because summary judgment is
25    framed by the pleadings.  (*Scolinos v. Kolts* (1995) 37 Cal.App.4th 635, 640-641.)  In a retaliation case, the
plaintiff must articulate in the complaint the specific code section and public policy that the employer
26    violated.  (See *Grant-Burton v. Covenant Care, Inc.* (2002) 99 Cal.App.4th 1361, 1371 [plaintiff properly
cited to the code section that formed the basis for her public policy discharge case and thus properly framed
27    the issues for summary judgment].)  Here, Hernandez improperly added new code sections in his opposition
and the Authority requests that the Court disregard these new found bases for Hernandez' complaints.

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

3

1  his official custody.  Nothing in this section exonerates a public employee from liability if the loss

2  was sustained as a result of his own negligent or wrongful act or omission."  On its face, this section

3  only applies to money that is stolen from a public employee's custody.  Further, this section defines

4  circumstances where an employee may be immune; it does not create an affirmative duty on behalf

5  of public employers.  Even still, Hernandez has not alleged that he disclosed any money stolen from

6  an official, negligently or otherwise.  Accordingly, Government Code section 822 cannot support

7  Hernandez' section 1102.5 claim either.

8  •  **Penal Code section 424 and Government Code section 6314**

9  Penal Code section 424 is also inapposite.  Section 424 prohibits a public official from
appropriating public funds for his own use or for the use of another without legal authority.

10  Here, Hernandez alleges four protected activities in which he allegedly advised the Authority that it

11  entered into two expensive leases, approved one expensive restroom project, and that one vendor

12  double-billed the Authority.  As to the leases and the restroom project, Enarson had the authority to

13  negotiate those terms and thus Penal Code section 424, which only applies to actions taken *without*

14  authority of law, does not apply.  (Enarson Dec. ¶¶ 3-4.)  Even if Enarson did not have authority,

15  there is no admissible evidence that Hernandez believed that Enarson lined his own pockets with

16  public funds[3], or that Enarson appropriated public funds for the use of another without authority of

17  the law.  Once again, Hernandez must show an independent statute that prohibits Enarson from

18  entering into the lease deals.  He has not done so.

19  •  **Public Utilities Code**

20  Hernandez also argues he disclosed violations of the Public Utilities Code, even though

21  those statutes do not relate to the disclosures at hand.  First, Public Utilities Code section 170064(b)

22  merely states that the Authority may adopt standards to meet the needs of the airport's users, but it

23  does not impose an affirmative obligation on the Authority to do so.  Further, subsection (c) of that

24  statute authorizes the Authority to conduct audits of the Port.  Hernandez' alleged disclosures do not

25  implicate either of these provisions.  Similarly, under Public Utilities Code section 170062(E), the

26
27
28

---

[3] Similarly Government Code section 6314 is inapposite because it only prohibits use of public funds for personal use.  Hernandez does not allege, for purposes of his protected activity under Labor Code section 1102.5, that he disclosed the personal receipt of public funds by any Airport Authority employee.

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT MOTION

4

1  Authority is tasked with maximizing the revenues for enterprises on its property *to the extent*

2  *practicable.* Here, it is not a per se violation of the law to enter into an expensive lease, and there is

3  no indication that Hernandez believed that it was impractical to maximize revenues on the

4  properties.

5       • **General Dynamics Lease**

6       Hernandez now claims that the disclosure he made regarding the General Dynamics lease

7  related to the renegotiation of the lease price following the initial three year period set by statute.

8  As both parties agree, the lease terms for the first three years were set by statute - $4,700,000 in

9  2003, $6,700,000 in 2004 and $8,700,000 in 2005. Following 2005, the annual rent would be level

10  based on the fair market value of the property as of January 1, 2006. Hernandez alleges that as part

11  of the renegotiation process, Hernandez advised Enarson that the fair market value of the lease was

12  $2 million less than the $8.7 million that the Authority paid under the statute. Apparently, Enarson

13  agreed in part with Hernandez because the ultimate lease terms agreed to as of January 1, 2006, was

14  $6.75 million per year for a term of 63 years, or approximately $2 million less than the $8.7 million

15  the Authority paid under the statute. (Enarson Dec. ¶ 3.)

16       In sum, the statute set the lease payment in 2005 and thus Hernandez could not reasonably

17  believe that the Authority's compliance with that lease payment violated the law. As to 2006,

18  Hernandez *agreed* that the fair market value (or the potential revenues) justified a $6.7 million lease

19  and that is precisely the lease that the Authority entered into. Thus, Hernandez could not have

20  reasonably believed that the $6.75 million lease payment was unlawful since he recommended it.

21       • **Teledyne Ryan Disclosure**

22       Finally, Hernandez admits "it is unclear on the face of the statute what obligation, if any, the

23  Airport had to Teledyne Ryan." (Opp., 12:17-19.) If the statute is unclear, it cannot support

24  Hernandez' retaliation claim. (*Sequoia Ins. Co. v. Superior Court* (1993) 13 Cal.App.4[th] 1472,

25  1480 [applicable statutes must sufficiently describe "the type of prohibited conduct to enable an

26  employer to know the fundamental public policies that are expressed in that law"].)

    **B.**    **Hernandez Failed to Produce Admissible Evidence of a Causal Link Between His Disclosures and the Termination.**

27

28       Even if Hernandez proves that he engaged in a protected activity, he must still produce

REPLY MEMO OF POINTS AND AUTHORITIES IN SUPPORT OF SUMMARY JUDGMENT MOTION

5

1    admissible evidence of a causal link between that activity and his termination.  Hernandez failed to

2    make this link because neither his suspicions regarding Bowens' motivation, nor the proximity of

3    time between his last disclosure and the investigation are sufficient to create a triable issue of fact.

      **1.    Hernandez' speculation as to Bowens' motivation does not create a causal link.**

5        First, Hernandez opines that his disclosures were likely personally threatening to Bowens,

6    and thus there must be a causal link between his disclosures and his termination.  However, mere

7    speculation about a decisionmaker's motive is insufficient to overcome summary judgment.  (*Martin*

8    *v. Lockheed Missiles & Space Co.* (1994) 29 Cal.App.4th 1718, 1734 ["the discharged employee, to

9    avert summary judgment, must produce 'substantial responsive evidence' that the employer's

10   showing was untrue or pretextual. [citation.] For this purpose, speculation cannot be regarded as

11   substantial responsive evidence"]; *Hanson v. Lucky Stores, Inc.* (1999) 74 Cal.App.4th 215, 225;

12   *Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163.)[4]  Thus, Hernandez' speculation as to whether

13   Bowens felt personally threatened and motivated to retaliate against Hernandez does not create a

14   triable issue of material fact as a matter of law.

15         **2.    Hernandez' complaints regarding LPI began in 2004, more than one year prior
            to Hernandez' termination, negating any causal link.**

16       Although Hernandez now puts in a self-serving declaration as to the date of his complaints

17   of alleged overcharges by LPi in order to place the complaint within 30 days of the investigation, he

18   cannot avoid summary judgment by simply ignoring the admissions he made in his deposition.

19   (*D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 [where "there is a clear and

20   unequivocal admission by the plaintiff ... in his deposition ... [the trial court is] forced to conclude

21   there is no substantial evidence of the existence of a triable issue of fact [notwithstanding a

22   contradictory declaration in opposition to summary judgment.]"])  It is undisputed that Hernandez

23   made the first disclosure regarding LPi's expenses in 2004, but the investigation that led to

24   Hernandez' termination was not initiated until over one year later in late 2005.  (Defendant's

25   Undisputed Material Fact ("Def. UMF") 24-25.)  As one court has pointed out, there is nothing

---

26
27   [4] FEHA and Title VII analysis framework are instructive for Labor Code section 1102.5 and wrongful
   discharge claims. (*Abdel v. Ikon Office Solutions, Inc.* (N.D. Cal. Aug. 25, 2006, No. C-05-1685 JCS) __
28   F.Supp.2d __ [2006 WL 2474331, at *10 fn. 5; *Morgan v. Regents* (2000) 88 Cal.App.4th 52, 69.)

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

6

**68-831**

1  "inherently suspicious" about an adverse employment action that occurs more than a year after

2  protected activity began even when the employee repeatedly complained over the entire time period,

3  and the timing of the first protected activity and the later adverse employment action might actually

4  be evidence *against* retaliation. (See *Mayberry v. Vought Aircraft Co.* (5th Cir. 1995) 55 F.3d 1086,

5  1092.) In this case as well, the timing negates causation because the adverse employment action

6  took place at least one year after the disclosures as to LPi began.

7      **3.    There is no causal connection between the investigation and the complaints.**

8      Hernandez completely ignores the fact that the individuals who lodged the complaints that

9  initiated the Authority's investigation into Hernandez' conduct, Jim Prentice and Clifforine Massey,

10  knew nothing about Hernandez' complaints. Without a causal connection between Hernandez'

    disclosures and the investigation that led to his termination, his claim fails.

11  **C.    Hernandez Has Not Met His Burden of Demonstrating Pretext.**

12      Finally (and only if Hernandez proves through admissible evidence that he engaged in a

13  protected activity and that there is a causal link between his activity and his termination), the Court

14  must determine whether Hernandez has produced "specific, substantial" evidence of unlawful

15  pretext to survive summary judgment. (E.g., *Hersant v. Dept. of Social Svcs.* (1997) 57 Cal.App.4th

16  997, 1005.) Conjecture, speculation or mudslinging is not enough. (*Compton v. City of Santee*

17  (1993) 12 Cal.App.4th 591, 595-96; *Kerr v. Rose* (1990) 216 Cal.App.3d 1551, 1563-64.)

18      Although Hernandez tries to create a triable issue of fact as to pretext by quibbling with the

19  process used for the termination, these attacks are not sufficient evidence of pretext to overcome the

20  Authority's compelling non-retaliatory business reason for Hernandez' termination.

21      **1.    Use of an outside investigator is not pretext.**

22      First, Hernandez argues that the fact that the Authority used an outside attorney investigator

23  to conduct the investigation is evidence of pretext because the Authority should have simply had a

24  conversation with Hernandez about his activities. There is nothing inherently pretextual or

25  unlawful about using an outside investigator, and the fact that the Authority used an outside

26  investigator is not specific, substantial evidence of pretext.

27      **2.    Hernandez' opinion as to whether his acts warranted termination does not create a triable issue of fact as to pretext.**

28      Second, Hernandez implies the Authority made an incorrect termination decision because

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

7

1  according to Hernandez, his conduct did not violate the Authority's ethical rules.  However,

2  Hernandez' disagreement with the soundness of the Authority's decision does not establish pretext.

3  (*Guz v. Bechtel Nat. Inc.* (2000) 24 Cal.4th 317, 358 ["if non-discriminatory, [the employer]'s true

4  reasons need not necessarily have been wise or correct."]; *Kariotis v. Navistar Intern. Transp. Corp.*

5  (7th Cir. 1997) 131 F.3d 672, 676 [suggesting that proffered reasons, if "nondiscriminatory on their

6  face" and "honestly believed" by employer, will suffice even if "foolish or trivial or baseless"];

7  *Fuentes v. Perskie* (3d Cir. 1994) 32 F.3d 759, 765 [issue is discriminatory animus, not whether

8  employer's decision was "wrong or mistaken," or whether employer is "wise, shrewd, prudent, or

9  competent"].)  As such, the question is not whether the Authority was wrong in determining that

10  Hernandez violated the Ethics Code.  Instead, the critical inquiry is whether the Authority had

11  retaliatory animus in conducting the investigation and terminating Hernandez' employment.

12  Hernandez cannot prove such animus through any admissible evidence, and thus cannot carry his

13  ultimate burden of demonstrating pretext through specific, substantial admissible evidence.

14       **3.    Hernandez has not identified similarly situated individuals to establish pretext.**

15       Hernandez also alleges that others regularly engaged in the same conduct as him, but the

16  Authority did not terminate those individuals.  In order to use evidence of what happened to others

17  as pretext, Hernandez must produce admissible evidence that the compared employees are similarly

18  situated in all respects to him, including the same supervisor, subject to the same standards, and that

19  they engaged in the same conduct without differentiating circumstances.  (*Mitchell v. Toledo Hosp.*

20  (6th Cir. 1992) 964 F.2d 577, 583.)  Thus, Hernandez must show through admissible evidence that

21  other employees who had his same supervisor, who had to fill out Form 700 and comply with the

22  California Political Reform Act, and who received the exact same benefits from the Authority's

23  vendors, received different treatment than he did.  (*Damon v. Fleming Supermarkets of Florida, Inc.*

24  (11th Cir. 1999) 196 F.3d 1354, 1363.)  Hernandez has not met this burden.

25       Although there are loose allegations of others receiving occasional flight upgrades,

26  Hernandez produced no admissible evidence that anyone else received the level of benefits that the

27  investigator determined Hernandez received.  Even further, there is no evidence that those who

28  allegedly received occasional benefits had the same supervisor or were subject to the same rules as

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

8

1   Hernandez.  Finally, Hernandez produced no evidence that Bowens, who authorized Hernandez'

2   investigation, knew about the alleged benefits that others received.  Moreover, even if any of the

3   employees were similarly situated, Hernandez cannot show that the Authority treated them

4   differently since the Authority investigated allegations of improper receipt of benefits by others, just

5   as it did with Hernandez.  (Exh. 6.)  Thus, Hernandez has failed to meet his burden of

6   demonstrating a similarly situated individual who was treated differently than Hernandez.

7   **4.    The Authority's failure to follow progressive discipline policy does not create pretext.**

8   Finally, Hernandez unsuccessfully attempts to create a triable issue of fact by arguing that

9   the Authority was required to follow a progressive discipline system.  However, this argument is

10  contrary to Hernandez' own testimony and thus cannot create a triable issue.  (*D'Amico, supra,* 11

11  Cal.3d at p. 21-22.)  Hernandez admitted in his deposition that he was an at-will employee who

12  could be terminated at any time, with or without cause.  (Hernandez Depo. 115:21-116:6; Exh. 16.)

13  This negates any supposed obligation of the Authority to use progressive discipline.

14  Even if we assume, for purposes of this motion only, that the Authority had a progressive

15  discipline policy, an employer's failure to follow its policies or internal procedures is not, on its

16  own, sufficient evidence of pretext.  (*Guz, supra,* 24 Cal.4th 317, 377-78 (concurrence) [stating that

17  "A mere failure to follow formal internal policies does not support a discrimination claim"]; *Randle*

18  *v. City of Aurora* (10th Cir. 1995) 69 F.3d 441, 454 ["The mere fact that an employer failed to

19  follow its own internal procedures does not necessarily suggest that the employer was motivated by

20  illegal discriminatory intent or that the substantive reasons given by the employer for its

21  employment decision were pretextual."])

22  Since Hernandez failed to prove his prima facie case and/or ultimately meet his burden of

23  demonstrating pretext, Hernandez' claim fails and summary judgment is appropriate.

24  **IV.  HERNANDEZ FAILED TO OVERCOME THE IMMUNITY IN SECTION 821.6**

25  Government Code section 821.6 provides an alternate ground for granting this motion.

26  Plaintiff's reliance on *Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407 to defeat the investigatory

27  immunity in section 821.6 is unavailing.  *Shoemaker* held that section 821.6 did not provide

28  immunity for a claim under Government Code section 19683 because (unlike FEHA or section

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

9

**68-834**

1102.5) section 19683 provides a remedy where a public employee uses official authority to harm another public employee, and its broad stated purpose is to hold all state officers personally accountable. *(Id.* at 1423.)  Section 1102.5, on the other hand, is more like the FEHA interpreted in *Caldwell v. Montoya* (1995) 10 Cal.4th 972 – it is a statute of general application, sweeping broadly across both the private and public sector.  In addition, unlike section 19683, Labor Code section 1102.5 does not create any personal liability.  Therefore, nothing in section 1102.5 forecloses the immunity in Government Code section 821.6.

Hernandez also argues that section 821.6 only applies to civil service proceedings, but it is well established that even an investigation of a public employee's personnel issue by an authorized governmental officer is an administrative proceeding protected by section 821.6.  (See e.g., *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1436-37; *Summers v. City of Cathedral City* (1990) 225 Cal.App.3d 1047, 1064; and *Caldwell*, 10 Cal.4th at pp. 978, 982.)

## V. HERNANDEZ FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES

Although Hernandez argues that Labor Code section 98.7 is permissive, rather than mandatory, the only permissive portion of the statute is that a claimant can choose not to file a claim with the Labor Commissioner, and thus decide not to pursue any litigation.  However, where, as here, the claimant ultimately plans on pursuing a claim in court, that litigant must first file a claim with the Labor Commissioner.  (See, e.g., *Neveu v. City of Fresno* (2005) 392 F.Supp.2d 1159, 1179-80 [motion to dismiss granted because litigant failed to file a complaint with the Labor Commissioner prior to pursuing cause of action under Labor Code § 1102.5].)

## VI. CONCLUSION

The Authority respectfully requests that this Court grant summary judgment or, in the alternative, summary adjudication, on each of Hernandez' claims.

Dated: November 9, 2007

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

By: *Sandra L. McDonough*

FRED M. PLEVIN
SANDRA L. MCDONOUGH
Attorneys for Defendant SAN DIEGO COUNTY
REGIONAL AIRPORT AUTHORITY

REPLY MEMO OF POINTS AND AUTHORITIES
IN SUPPORT OF SUMMARY JUDGMENT
MOTION

10

68-835

1  *Hernandez v. San Diego County Regional Airport Authority*
   SDSC Case No. GIC871979

2

3                          **PROOF OF PERSONAL SERVICE**

4       I, the undersigned, certify and declare that I am a citizen of the United States, over the age
   of eighteen, employed in the County of San Diego, State of California, and not a party to the
   within-entitled action. My business address is 4665 Park Blvd., San Diego, CA 92116.

5

6       On November 9, 2007 at _____ a.m./p.m., I served a true copy of the within:

7       •   **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S REPLY
           MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION
           FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY**

8          **ADJUDICATION;**

9       •   **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S
           OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL
           UNDISPUTED MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY**

10         **JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;**

11      •   **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S
           CONCORDANCE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN**

12         **THE ALTERNATIVE, SUMMARY ADJUDICATION;**

13      •   **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S
           RESPONSE TO PLAINTIFF JOSE HERNANDEZ' WRITTEN OBJECTIONS TO
           EVIDENCE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY**

14         **JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION;**

15      •   **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S
           OBJECTION TO EVIDENCE SUBMITTED BY PLAINTIFF IN OPPOSITION TO**

16         **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
           SUMMARY ADJUDICATION**

17      •   **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S NOTICE
           OF LODGMENT OF NON-CALIFORNIA AUTHORITIES IN SUPPORT OF ITS REPLY**

18         **TO THE MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE,
           SUMMARY ADJUDICATION**

19

20  by delivering for personal service to the following:

21      Cathryn Chinn / Peter G. Friesen
        1901 First Avenue, Suite 400

22      San Diego, CA 92101
        Tel: 619-294-9183 / Fax: 619-295-4190

23      **Attorneys for Plaintiff Jose Hernandez**

24      I hereby certify that I am employed by Diversified Legal Services, at whose direction the
   personal service was made.

25

26      Executed November 9, 2007, at San Diego, California.

27                                              _____
                                                DIVERSIFIED LEGAL SERVICES
28                                              MESSENGER

PAUL, PLEVIN,
SULLIVAN &        PROOF OF PERSONAL SERVICE              1
CONNAUGHTON LLP

                                                                    **68-836**

**BLUEBIRD** OFFICE SUPPLIES  (888) 477-0700  www.bluebirdonline.com

1  FRED M. PLEVIN (SBN 126185)
   SANDRA L. MCDONOUGH (SBN 193308)
2  ALBERT R. LIMBERG (SBN 211110)
   **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3  401 B Street, Tenth Floor
   San Diego, California 92101-4232
4  Telephone: 619-237-5200
   Facsimile: 619-615-0700
5
6  AMY S. GONZALEZ (SBN 181745)
   **SAN DIEGO COUNTY REGIONAL AIRPORT
   AUTHORITY**
7  3225 N. Harbor Drive
   San Diego, CA 92138
8  Telephone: (619) 400-2425
   Facsimile: (619) 400-2428
9
10 Attorneys for Defendant
   SAN DIEGO COUNTY REGIONAL AIRPORT
11 AUTHORITY

12              SUPERIOR COURT OF THE STATE OF CALIFORNIA
13
                       COUNTY OF SAN DIEGO
14
   JOSE HERNANDEZ,                          CASE NO. GIC871979
15
            Plaintiff,                      **DEFENDANT SAN DIEGO COUNTY
16                                          REGIONAL AIRPORT AUTHORITY'S
                                            OPPOSITION TO PLAINTIFF'S SEPARATE
       v.                                   STATEMENT OF ADDITIONAL
17                                          UNDISPUTED MATERIAL FACTS IN
   SAN DIEGO COUNTY REGIONAL                SUPPORT OF MOTION FOR SUMMARY
18 AIRPORT AUTHORITY, a public entity;      JUDGMENT OR, IN THE ALTERNATIVE,
   and DOES 1 through 12, inclusive,        SUMMARY ADJUDICATION**
19
            Defendants.
20
                                           Date:        November 16, 2007
21                                         Time:        1:30 p.m.
                                           Dept:        75
22                                         Judge:       Hon. Richard E. Strauss
                                           Complaint Filed:  September 1, 2006
23                                         Trial Date:  January 4, 2008

24                                         **EXEMPT FROM FEES
                                           GOVT. CODE § 6103**
25

26      TO PLAINTIFF JOSE HERNANDEZ AND HIS ATTORNEYS OF RECORD:

27 Defendant San Diego County Regional Airport Authority (hereinafter referred to as "the

28 Authority") submits the following opposition to plaintiff's separate statement of additional

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP      OPPOSITION TO PLAINTIFF'S SEPARATE              1
                     STATEMENT OF ADDITIONAL UNDISPUTED
                     MATERIAL FACTS RE MSJ.

FILED
Clerk of the Superior Court
NOV 09 2007
By: M. WONG-JIMENEZ, Deputy
NOV 9 2007 PM 4:24

69-837

undisputed material facts in support of its Motion for Summary Judgment as to plaintiff Jose

Hernandez' Second Amended Complaint:

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 1.  Plaintiff Jose Hernandez was hired in March 2001 as Manager of Ground Transportation. He then became Director of Landside Operations in 2003.  His responsibilities included the management of airport parking and terminal facilities, and the development and adherence to a budget for the operation of those facilities.<br><br>Decl. J. Hernandez ¶ 1[2]; Depo. J. Hernandez 104: 8; 397:14-16 | Not disputed for purposes of this motion only. |
| 2.  He worked within a budget dictated by anticipated revenues from the management of Airport properties and facilities.<br><br>Decl. J. Hernandez ¶ 1; Depo J. Hernandez 397:3-7; 417:13 | Not disputed for purposes of this motion only. |
| 3.  Hernandez reported directly to Theodore Sexton, Vice President of Operations, who reported to Thella Bowens.<br><br>Decl. J. Hernandez ¶ 1 | Not disputed for purposes of this motion only. |
| 4.  Bryan Enarson, Vice President of Development was a close confidant of Thella Bowens', and the lead negotiator on land lease contracts made with General Dynamics and Teledyne Ryan.<br><br>Decl. J. Hernandez ¶ 1; Depo. J. Hernandez 646:1-2; 388:8-12; 399:9-12; 400:1 | Objection.  Lacks foundation as to whether Enarson was a close confidant of Bowens. (Evid. Code § 403.) |
| 5.  One of Hernandez' duties was the evaluation of a lease from the Port of property located on the north side of the Airport (General Dynamics property).  The lease price contemplated the use of the property for parking, and revenues which would generate | Not disputed for purposes of this motion only. |

---

[1] By responding to the facts set forth by plaintiff in his separate statement, the Authority does not admit that any of these facts are material to this motion.  Rather, the Authority contends that the only material facts are those set forth in its own separate statement filed with the moving papers.

[2] Hernandez has failed to abide by California Rule of Court by citing to the evidence that supports his "facts" by page and line numbers as required by the California Rules of Court, rule 3.1350(f).  In fact, as for certain facts set forth herein, Hernandez refers to an entire declaration, without any pinpointed cite.

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

2

**69-838**

| | |
|---|---|
| to the lease holder for 2100 stalls.<br><br>Decl. J. Hernandez ¶ 2, Plaintiff's depo. 387:11-21, 389:15-17, 396:1-8 | |
| 6.  Hernandez' understanding of the lease was that the lease price was set by code for the years 2003, 2004 and 2005, and was thereafter subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 2; PUC § 170056(f)(1-3); Plaintiff's depo. 396:1-8; 397:8-11 | Not disputed for purposes of this motion only. |
| 7.  Hernandez conducted an evaluation of the cash flow of the property when the lease came up for renegotiation, and determined that deficiencies in the property prevented from generating sufficient revenue to cover the lease price by at least $2 million per year.  The deficiency center on the discovery of toxic waste in the soil beneath the property which severely limited the development of the property for parking.<br><br>Decl. J. Hernandez ¶ 2; Plaintiff's depo. 397:3-7 | Objection.  Improper opinion (Evid. Code § 800); lacks foundation (Evid. Code § 403). |
| 8.  Hernandez communicated the deficiency in the property to Sexton and Bowens, and that the continuation of the lease at its existing rate would amount to a gift of public money to the Port.<br><br>Decl. J. Hernandez ¶ 2; Plaintiff's depo. 393:6-24 | Objection.  It is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 [where "there is a clear and unequivocal admission by the plaintiff … in his deposition … [the trial court is] forced to conclude there is no substantial evidence of the existence of a triable issue of fact [notwithstanding a contradictory declaration in opposition to summary judgment.]"<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton about the General Dynamics Lease.  (Hernandez Depo. 394:10-16; 397:22-398:9; 522:25-523:5 [Exh. 2].)  Hernandez further testified that although Thella Bowens had had an open door policy, he would never go to her office and utilize the open door policy (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]).<br><br>Since Hernandez testified that he only told Sexton about the General Dynamics lease, he cannot create a triable issue of fact by now |

| | |
|---|---|
| | stating that he told Bowens as well. |
| | Further, Hernandez' statement is inadmissible hearsay to prove that the continuation of the lease would amount to a gift of public money. |
| | Further, although Hernandez does not state that the gift of funds was illegal, or that he believed the gift was illegal, to the extent that this statement is construed to be a legal conclusion, it is improper. (Evid. Code § 800.) |
| 9.   Sexton and Bowens refused to renegotiate the terms of the lease. Enarson, then speaking on Bowens' behalf, justified the lease amount by stating, "that was the price for Thella's (Bowens') freedom." <br><br> Decl. J. Hernandez ¶ 3; Plaintiff's depo. 393:6-24; 393:21-24; 394:17-25 | Objection.  Hearsay (Evid. Code § 1200.); Lacks foundation as to how Hernandez knows that Enarson spoke on Bowens' behalf. (Evid. Code § 403.) |
| 10.  Another of Hernandez' duties was the evaluation of a lease from the Port of property located at the west side of the Airport.  (The Teledyne Ryan property)  The lease of that property likewise contemplated the generation of revenues to cover the lease through its use as a parking lot.  The lease had been negotiated by Enarson and was not subject to renegotiation. <br><br> Decl. J. Hernandez ¶ 4; Plaintiff's depo. 388:8-12 | Not disputed for purposes of this motion only. |
| 11. Hernandez discovered this property was likewise contaminated and only a small portion of it was usable. <br><br> Decl. J. Hernandez ¶ 4; Plaintiff's depo. 389:19-22, 390:3-5, 396:20-25 | Not disputed for purposes of this motion only. |
| 12. The contamination was grossly understated by the Port as a $10 million expense (which the Port agreed to pay) when the real cost of remediation was in excess of $30 million. <br><br> Decl. J. Hernandez ¶ 4; Plaintiff's depo. 407:2-408:2, 409:3-6 | Objection.  Lacks foundation (Evid. Code § 403); improper opinion (Evid. Code § 800). |
| 13. Hernandez then informed Sexton, Enarson and Bowens that the lease constituted an unwarranted expenditure of public money to the Port of over $3 million per year. <br><br> Decl. J. Hernandez ¶ 4; Plaintiff's depo. | Lacks Foundation. (Evid. Code § 403.)  Lacks Personal Knowledge. (Evid. Code § 702.)  Hearsay. (Evid. Code § 1200.)  Improper Opinion.  (Evid. Code § 800.) <br><br> It is improper to create a triable issue of fact by |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

4

69-840

| | |
|---|---|
| 417:14-22, 418:3-10 | disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton and the Teledyne Task Force about the Teledyne Ryan lease. (Hernandez Depo. 410:3-413:18; 522:25-523:5 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]). Since Hernandez admitted that he only informed Sexton and the Teledyne Ryan Task Force about the Teledyne Ryan lease, he cannot now create a triable issue of fact by alleging in his declaration that he also told Bowens. |
| 14. Another of Hernandez' duties was to oversee the construction and/or maintenance of public facilities at the terminals, including public restrooms. Hernandez attempted to expand the size of the public restrooms to alleviate overcrowding in the east terminal and bring them into compliance with the state requirements that they be accessible by wheel chair, as required by the Americans with Disabilities Act (ADA).<br><br>Decl. J. Hernandez ¶5; Plaintiff's depo. 349:23-350:5, 352:3-353:8, 336:20-21, 337:17-19 | Not disputed for purposes of this motion only. |
| 15. He needed to annex 30 sq. ft. space from a concessionaire in order to comply with ADA requirements, but was told he could not do so by Enarson because Enarson had made handshake agreements with the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. 333:10-17, 335:4-8, 339:6-8, 336:20-21, 343:20-25 | Objection. Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Improper Legal Conclusion. (Evid. Code § 800); Hearsay. (Evid. Code § 1200.) Vague as to "he". |
| 16. He told Sexton, Enarson and Bowens that he did not believe Enarson had the authority to enter into such agreements with the concessionaires, and that Enarson's enforcement of the agreements constituted a gift to the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. | Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Hearsay. (Evid. Code § 1200.) Improper Opinion. (Evid. Code § 800).<br><br>This statement is hearsay if offered to prove that Hernandez did not believe that Enarson had the authority to enter into agreements. |

69-841

| | |
|---|---|
| 335:17-18; 336:1; 354:6-9; 368:10-16; 377:1-4 | Further, Hernandez fails to lay foundation and state facts to show that he has personal knowledge of the alleged agreements. |
| | Further, although Hernandez does not state that the gift was illegal, or that he believed the gift was illegal, to the extent that this statement is construed to be a legal conclusion, it is improper. (Evid. Code § 800.) |
| | Finally, it is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22. |
| | Hernandez admitted in his deposition that he only complained to Ted Sexton and a handful of others regarding the restroom project. (Hernandez Depo. 354:6-8; 375:17-21; 522:25-523:5 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy. (Hernandez Depo. 644:3-8.) Finally, Hernandez testified that the only person that he felt he could complain to was Ted. (Hernandez Depo. 644:9-16.) |
| | Since Hernandez admitted that he only informed Sexton, the terminal operations committee and the architect about the Restroom Project, he cannot now create a triable issue of fact by alleging in his declaration that he also told Bowens. |
| 17. Another of Hernandez' duties was to help negotiate and monitor contracts for the management of parking services. The low bidder (based on "projected" reimbursable expenses) on a contract to manage the Airport's parking lots was Lindbergh Parking Incorporated (LPI).<br><br>Decl. J. Hernandez ¶ 6 | Not disputed for purposes of this motion only. |
| 18. Its bid was so low that Hernandez – who had managed parking himself – suspected the bid was insincere. He thereafter closely monitored the performance of the contract and noted LPI was overcharging the Authority approximately $1 million to 1.5 million per year. This estimate was based, among other things, on the fact that LPI (1) did not lease new shuttle transportation vehicles as stated in its bid (but instead used older shuttles owned by LPI); (2) was seeking reimbursement for an unnecessary management position | Not disputed for purposes of this motion only. |

)

| | |
|---|---|
| (owner/manager being paid for management work he did not perform); and (3) double-billing the Authority for workers' compensation insurance.<br><br>Decl. J. Hernandez ¶ 6; Plaintiff's Depo. 478:16-22; 481:1-4; 483:2-6 | |
| 19. Hernandez reported these overcharges to Sexton, Enarson and Bowens, in October 2005 and placed LPI on a 90-day timetable to explain and justify all the expenses. He informed Sexton, Enarson and Bowens that the LPI contract constituted an unwarranted expenditure of public money to LPI.<br><br>Decl. J. Hernandez ¶ 7; Plaintiff's Depo. 505:11-23; 506:10-23; 508:7-13; 511:16-23 | It is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.<br>Hernandez admitted in his deposition that he only complained to Ted Sexton and Andrew McIntyre regarding LPI. (Hernandez Depo. 493:24-494:8; 498:25-499:11; 501:3-8; 503:5-504:6; 522:4-24 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would not go to her office and utilize the open door policy (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]).<br><br>Since Hernandez admitted that he only informed Sexton and McIntyre about LPI, he cannot now create a triable issue of fact by alleging in his declaration that he also told Bowens.<br><br>Hernandez first made the disclosure regarding LPi's expenses in 2004. (Hernandez 493:24-495:15 [Hernandez made his first disclosure at the three-month or six-month submittal]; Sexton Dec. 3:15-17 [the LPi contract began in January 2004].) |
| 20. The negotiating agent on behalf of LPI – Elizabeth Stump-Moore – was, however, a friend of Bowens'.<br><br>Decl. J. Hernandez ¶ 7; Plaintiff's Depo. 488:25; 489:19-25; 490:10-15 | Not disputed for purposes of this motion. |
| 21. On November 2, 2005, Bowens engaged a law firm to investigate Hernandez for "ethics" violations associated with the receipt of benefits from the Authority's vendors. This was the first occasion in the history of the Authority that a law firm was retained to investigate an employee for alleged ethics violations.<br><br>Decl. J. Hernandez ¶ 7; Decl. P. Swan ¶ 3 | Objection. The second sentence lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.)<br><br>Hernandez' declaration does not state that this was the first time the Authority retained a law firm to investigate ethics violations. Rather, Hernandez states in his declaration that this was the first time *that he was aware of* that anyone was questioned regarding receipt of tickets. |

| | |
|---|---|
| 22. The law firm, per report submitted by Patrick Swan, Esq., concluded Hernandez received (1) free rounds of golf; (2) airline tickets to Hawaii; and (3) charger football tickets, the value of which placed Hernandez in violation of the Ethics Code applicable to Authority employees.<br><br>Decl. P. Swan | Objection to the extent that this is a partial and incomplete summary of the findings in the report. |
| 23. Bowens claims to have terminated Hernandez' employment based on the conclusions in the report.<br><br>Decl. T. Bowens ¶ 9 | Not disputed for purposes of this motion. |
| 24. With regard to the "free rounds of golf," Hernandez cleared the trip with his boss, Sexton, before going, after disclosing the nature of the outing and that the golf rounds were supplied by Mike Parrish.<br><br>Decl. J. Hernandez ¶ 9; Plaintiff's depo. 158:18-22; 168:5-24 | Objection. Irrelevant. (Evid. Code § 350.) |
| 25. In the process, Sexton admitted he had attended the same golf outing under similar circumstances.<br><br>Decl. J. Hernandez ¶ 9 | Objection. Hearsay. (Evid. Code § 1200.) |
| 26. Hernandez compensated Parrish for the round by buying Parrish's lunch and dinner and by making gift contributions for the raffle. The net personal value to Hernandez was negative by over $200.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Plaintiff's depo. 159:14-19; 163:3-13; 164:10-14 | Objection. Lacks foundation; irrelevant. (Evid. Code §§ 350 and 403.)<br><br>The declaration of Pat Swan does not establish the alleged fact presented. |
| 27. Hernandez had a strong social relationship with Parrish, which included joint family outings and gatherings, dinners, barbecues and sporting events.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Decl. M. Parrish ¶ 2 | Not disputed for purposes of this motion. |
| 28. With regard to the Hawaii ticket, ticketing benefits were regarded by management as normal benefit of their workplace, and that Sexton assigned Hernandez responsibility on frequent occasions to obtain ticket upgrades | Objection. Lacks foundation and is vague as to who in "management" regarded ticketing benefits as a normal benefit of the workplace. (Evid. Code § 403.) Further, none of the cited evidence states that ticketing benefits were a |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

8

| | |
|---|---|
| for various employees and board members. Hernandez specifically discussed whether the practice was ethically acceptable and Sexton replied it was.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 240:1-25; 602:20-25; 609:1-611:25 | normal benefit of the workplace, or that Hernandez discussed whether the practice was ethically acceptable.<br><br>Hearsay. (Evid. Code § 1200.) |
| 29. Notwithstanding the practice among Hernandez' superiors to receive passes and upgrades, Hernandez' receipt of those benefits was limited to gifts from personal friends. The tickets on Southwest came from Parrish. The tickets on Hawaiian Air came from Janet Nix, another personal friend, who told him she gave tickets like those to all kinds of friends having nothing to do with business.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 199:3-22; Decl. M. Parrish ¶ 3 | Objection. Improper argument and opinion; lacks foundation. (Evid. Code §§ 403 and 800.) Further, although Hernandez may have received benefits from friends, those friends were also employees of the Authority's vendors. (Hernandez Depo. 191:8-20; 198:8-200:17; 280:1-14; and 281:6-12 [Exh. 1].) |
| 30. Moreover, the Hawaiian tickets were listed as "space available" and further identified as having "no dollar value" and could not be transferred or redeemed.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; ; Plaintiff's Depo. 280:15-20, 23-25; 281:1-2; Decl. M. Parrish par. 3 | Objection. Hearsay. (Evid. Code § 1200.) Lacks foundation. (Evid. Code § 403.) |
| 31. With regard to the football tickets, ACE parking did not have a contractor or vendor agreement of any sort with the Authority.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan; Plaintiff's Depo. 268:1-4; 272:5-9 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005: (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 32. Hernandez had a longstanding friendship with the ACE Parking manager who invited him to the game which preceded Hernandez' employment with the Authority. They were friends from Hernandez' prior employment relationship with ACE Parking.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan | Not disputed for purposes of this motion only. |
| 33. During Swan's interviews with Hernandez, he expressed no interest in the fact that Parrish and Hernandez were close | Objection. Hearsay. (Evid. Code § 1200.) |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

69-845

| | |
|---|---|
| personal friends.<br><br>Decl. J. Hernandez ¶ 13 | |
| 34. He avoided discussion of the tendency of other employees such as Bowens and Sexton to make active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.)<br><br>Lacks foundation. (Evid. Code § 403.) Hernandez has not established that employees "made active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars." |
| 35. When Hernandez attempted to explain these friendships and practices, Swan cut him off and would state that he was not interested in the nature of those friendships and what the office practice was.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 36. Hernandez had previously received outstanding performance evaluations.<br><br>Decl. J Hernandez ¶ 14; Plaintiff's Depo. 786:9-18 | Not disputed for purposes of this motion only. |
| 37. The Authority did, in fact, have a progressive disciplinary policy set forth in writing, which emphasizes the Authority's commitment to preserve employment through pre-termination warnings and training.<br><br>Decl. J. Hernandez ¶ 14; Plaintiff's Depo. 317:14-16 | This "fact" is contrary to Hernandez' own testimony and thus cannot create a triable issue of fact. (*D'Amico, supra,* 11 Cal.3d at p. 21-22.) Hernandez admitted in his deposition that he was an at-will employee and that he could be terminated at any time, with or without cause. (Hernandez Depo. 115:21-116:6; Exh. 16.) If he could be terminated at any time, then the Authority was under no obligation to progressively discipline Hernandez. Further, this fact lacks foundation because the cited testimony does not establish that the alleged policy is in writing. |
| 38. That the Authority failed to adhere to this policy and instead routed the matter to an expensive and contentious law firm is a truly extraordinary decision.<br><br>Decl. J. Hernandez ¶ 14 | Objection. Lacks foundation. |
| 39. Ace Parking did not have a direct service agreement with the Airport Authority. Ace did not have any sort of a business relationship with the Airport Authority.<br><br>Plaintiff's depo. 149:15-20; 150:20-25 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the |

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

| | |
|---|---|
| | owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 40. Ted Sexton, Vice-President of Operations at the Authority, requested Hernandez obtain Ace Parking passes for Authority employees. The Authority did not pay for the Ace passes.<br><br>Plaintiff's depo. 134:25; 135:11-17 | Objection. Lacks foundation and personal knowledge as to whether the Authority paid for the Ace passes. (Evid. Code §§ 403 and 702.) |
| 41. Ted Sexton told Hernandez it would be okay to go to the Southwest Airline Golf Tournaments. Sexton knew he was a guest of Southwest's.<br><br>Plaintiff's depo. 158:18-22; 168:5-8, 12-13, 18, 21-24 | Objection. Lacks foundation. (Evid. Code § 403.) Hearsay. (Evid. Code § 1200.) |
| 42. Hernandez had absolutely never received free food from the concessions in the Airport terminals.<br><br>Plaintiff's depo. 201:16-18 | Not disputed for purposes of this motion only. |
| 43. To this day Hernandez still stands by the fact that most of the items on the conflict-of-interest state form should not have been disclosed.<br><br>Plaintiff's depo. 284:11-15 | Objection. Lacks foundation. (Evid. Code § 403.)<br><br>Hernandez' deposition was in December 2006, almost one year ago. Therefore, the stated evidence does not support Hernandez' opinion of the items on the conflict of interest form as of today. |
| 44. Ted Sexton told Hernandez to write everything on the form, whether he thought it proper to do so or not.<br><br>Plaintiff's depo. 293:14-20 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.) |
| 45. Ted Sexton told Hernandez to report any Ace Parking item, even though Ace does not have a direct service agreement with the Authority Parking.<br><br>Plaintiff's depo. 268:1-5; 274:12-14; 267:14-18; 268:8-13 | Objection. Hearsay. (Evid. Code § 1200.) Lacks foundation. (Evid. Code § 403.) Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 46. Sexton told Hernandez if he did not put this information on the form there would be | Objection. Hearsay. (Evid. Code § 1200.) |

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

| | | |
|---|---|---|
| 1<br>2<br>3 | ramifications. There would be legal ramifications whether Hernandez did it or not, whether he believed it was right or wrong.<br><br>Plaintiff's depo. 268:8-13; 268:19-20; 270:3-7 | |
| 4<br>5<br>6<br>7<br>8 | 47. Sexton spoke on behalf of the Airport Authority, not as an individual. Sexton said people at the vice-president level would be looking at that documentation. Whether Hernandez thought it was right or not, people would be looking to make sure he filled it in.<br><br>Plaintiff's depo. 270:14-19; 267:19-25; 270:24-25; 271:1-2; 271:9-11 | Objection. Lacks foundation and lacks personal knowledge. (Evid. Code §§ 403 and 702.) Hernandez was the one who held the belief that Sexton spoke on behalf of the Airport Authority, not as an individual; Sexton did not make this assertion.<br><br>Hearsay. (Evid. Code § 1200.) |
| 9<br>10<br>11 | 48. Hernandez' reason for submitting it was threats or intimidation from not only Ted [Sexton], but the investigators.<br><br>Plaintiff's depo. 278:15-1749. | Irrelevant. (Evid. Code § 350.) The reason for submitting the form does not negate that Hernandez admitted that he received the benefits set forth on the form. (Hernandez Depo. 280:1-282:12 [Exh. 2].) |
| 12<br>13<br>14<br>15<br>16<br>17 | 49. In late 2004, early 2005, Ace Parking was not working to take over the parking contract. It was Scott Jones, as an individual, trying to buy the shares of Maurice Gray. There's a clear distinction. This contract is not with Ace Parking. It is with Scott Jones, as an individual.<br><br>Plaintiff's depo. 272:5-6, 6-9 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 18<br>19<br>20<br>21<br>22<br>23<br>24 | 50. Hernandez purchased tickets that were not available to the public for the Authority's general counsel, Bret Lobner. The tickets were blocked-out and unavailable for the box office to sell. Hernandez told Lobner they were unavailable to the public. Ted Sexton told Hernandez to get the tickets for Lobner. Hernandez was not already going to the stadium t purchase tickets that day.<br><br>Plaintiff's depo. 237:17-25; 238:10-12, 13-16, 17-22, 23-25; 240:5-10, 15-23; 242:19-25; 249:18-25; 250:1 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) Hearsay. (Evid. Code § 1200.) |
| 25<br>26<br>27<br>28 | 51. Clifforine Massey was an unreliable and undependable employee who refused to come to work. She was repeatedly counseled by Hernandez and placed on a disciplinary work plan by Human Resources. Massey refused to abide by the work plan and quit. | Objection. Lacks foundation and irrelevant. (Evid. Code §§ 350, 403 and 702.) |

| | |
|---|---|
| Plaintiff's depo. 315:13-25; 316:1-25; 317:1-2; 318:1-25 | |
| 52. Jim Prentice was a gossip who reported to Sexton. Prentice stirred-up gossip and chaos. He was an unreliable and undependable employee. Sexton referred to him as "that little shit."<br><br>Plaintiff's depo. 323:17-25; 324:9-25; 542:6-25; 543:1-25; 544:1-5 | Objection. Lacks foundation; hearsay; irrelevant. (Evid. Code §§ 350, 403, 702 and 1200.) |
| 53. The restroom project was stalled from 2002 through 2005 because V.P. Bryan Enarson was unwilling to request the redaction of 30 sq. ft. from Host. It still hasn't been built.<br><br>Plaintiff's depo. 341:9-13; 347:8-9 | Objection. Lacks foundation and personal knowledge; hearsay; irrelevant. (Evid. Code §§ 350, 403, 702 and 1200.) Whether the project is stalled is not material to this motion. |
| 54. It was V.P. Enarson's unwillingness to take that space away that made it impossible for the Authority to comply with ADA requirements of a 2% grade from the floor up to the restrooms and then landing requirements.<br><br>Plaintiff's depo. 343:20-25; 344:1 | Objection. Lacks foundation; improper opinion; irrelevant. (Evid. Code §§ 350, 403, 702 and 800.) |
| 55. Hernandez raised the ADA issues with Sexton. He briefed it time and time again to Ted, sometimes even on a daily, sometimes on a weekly, basis. Hernandez raised the ADA issue with Sexton because it was his number one priority. He raised the issue with Ted 50 to 100 times over a two-year period<br><br>Plaintiff's depo. 354:6-9; 357:13, 17-18; 359:19-24; 373:3-23. | Undisputed for purposes of this motion only. |
| 56. Sexton was afraid to bring up the issue to Bryan Enarson. He just didn't want to deal with him.<br><br>Plaintiff's depo. 374:2-4 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 57. Hernandez told Sexton the Authority was paying too much for the General Dynamics property. They would lose a couple million dollars, which would come out of the general budget and affect the terminal operations. This was prior to the ratification of the agreement. | Not disputed for purposes of this motion only. |

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

69-849

| | | |
|---|---|---|
| 1 | Plaintiff's depo. 393:4-24 | |
| 2 3 4 5 | 58. Ted Sexton said Thella was willing to overpay for that property so that she didn't have to be under the control of the Port District.<br><br>Plaintiff's depo. 394:17-25 | Objection. Lacks foundation and personal knowledge; improper opinion; hearsay. (Evid. Code §§ 350, 403, 702, 800 and 1200.) |
| 6 7 8 | 59. At every budget meeting it would come back up that they needed to make an adjustment for the $2 million additional lease payments on the General Dynamics lease.<br><br>Plaintiff's depo. 397:3-7 | Objection. Vague; lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 9 10 11 12 | 60. Hernandez told Ted Sexton that the Authority had paid too much and he didn't believe it was right or was in the Authority's best interest that it pay those type of rents on the property.<br><br>Plaintiff's depo. 399:3-8 | Not disputed for purposes of this motion only. |
| 13 14 15 16 | 61. The Authority put together a Teledyne Ryan redevelopment plan and noticed more and more and more environmental concerns to the point that it was close to $30 million in remediation costs.<br><br>Plaintiff's depo. 407:23-25; 408:1-2 | Not disputed for purposes of this motion only. |
| 17 18 19 20 21 22 | 62. As a public entity, it is necessary to make sure that what is paid can be recovered because it's not just Authority funds, it's airline funds. Proper due diligence must be followed when in agreeing to enter into an extended lease in this manner. When the Authority's own environmental assessments were done, those numbers greatly shot through the roof.<br><br>Plaintiff's depo. 408:17-25; 410:1-2 | Objection. Improper opinion and legal conclusion; lacks foundation. (Evid. Code §§ 403, 702 and 800.) |
| 23 24 25 26 27 | 63. Hernandez had continuing conversations with Ted Sexton because the Authority overpaid for the property and he wanted to understand why the Authority would continue to pay $3 million for the whole property when he could use only 5 acres of it.<br><br>Plaintiff's depo. 410:3-25 | Objection. Lacks foundation and personal knowledge; improper opinion. (Evid. Code §§ 403, 702 and 800.) |
| 28 | 64. Hernandez was a vocal opponent because he was coupled with overpayment on the | Objection. Lacks foundation; improper opinion. (Evid. Code §§ 403, 702 and 800.) |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

14

69-850

| | |
|---|---|
| General Dynamics side and now add that to one overpayment on Teledyne Ryan. And now the Authority is in the hole between $3 and $4 million a year in overpayment on two leases. Entering into a 66-year agreement for $3 million a year is almost $200 million.<br><br>Plaintiff's depo. 417:13-22; 418:3-10 | Hearsay. (Evid. Code § 1200.) |
| 65. The cost for remediation is $30 million with the settlement requiring the Port to pay $9.7 million, with the Port having the ability within the $9.7 million to recover expenses incurred against that money.<br><br>Plaintiff's depo. 424:19-23; 427:7-12 | Objection. Lacks foundation; improper opinion. (Evid. Code §§ 403, 702 and 800.) |
| 66. Today that property is used for only 350 parking spaces for which the Authority pays the $3 million; it won't happen. It will not be remediated by 2010; it won't happen. It will not be remediated in whole by 2010.<br><br>Plaintiff's depo. 466:19-20; 468:18-19; 469:1-2; 469:23-25; 470:3-5 | Objection. Lacks foundation; improper opinion. (Evid. Code §§ 403, 702 and 800.) Hernandez' deposition was in December 2006, almost one year ago. This fact has no bearing on what the property is used for today. |
| 67. Hernandez had ongoing conversations with Ted Sexton about his objections to the Authority's failure to properly assess the environmental aspects prior to entering the lease agreement and without understanding the full effects on the Authority's operating budget. There were many conversations with Sexton.<br><br>Plaintiff's depo. 470:16-25; 471:7-11 | Not disputed for purposes of this motion only, but improper hearsay to the extent that it is used to establish that the Authority failed to properly assess environmental aspects. |
| 68. LPI submitted an operating figure of $1.1 million and the Authority understood those actual operating expenses would be about a half a million dollars more a year. Hernandez told Ted Sexton immediately that there was a large variation between their submitted operating expenses and actual expense numbers.<br><br>Plaintiff's depo. 478:16-22; 481:1-4; 482:9-21; 494:2-25 | Objection. Lacks foundation because Hernandez cannot opine as to what "the Authority understood;" vague and ambiguous. (Evid. Code §§ 403 and 702.) |
| 69. LPI double-billed the Authority for workers' compensation costs starting in 2000 and again in 2005.<br><br>Plaintiff's depo. 500:18-24 | Objection. Improper opinion; lacks foundation. (Evid. Code §§ 403, 702 and 800.) |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

15

69-851

| | |
|---|---|
| 70. The Authority took credit for the double-billing. It was around the beginning of 2005. The Authority took full credit for those LPI expenses and it was easily over $100,000.00.<br><br>Plaintiff's depo. 502:8-25; 504:1-2; 508:7-13 | Not disputed for purposes of this motion only. |
| 71. Hernandez kept Ted Sexton informed.<br><br>Plaintiff's depo. 501:5-8; 502:20-21; 514:13-25; 515:5-10 | Not disputed for purposes of this motion only. |
| 72. Maurice Grey (LPI's owner) signs the expense documents to the Authority under penalty of perjury.<br><br>Plaintiff's depo. 506:10-23 | Not disputed for purposes of this motion only. |
| 73. Ted Sexton requested that Hernandez upgrade Thella's flight multiple times at no charge to Thella.<br><br>Plaintiff's depo. 544:15-20; 545:1-25; 546:1-25; 547:1-2; 548:2-25; 549:1-7; 549:14-22 | Objection. Irrelevant; hearsay. (Evid. Code §§ 350 and 1200.) |
| 74. Hernandez requested ticket changes for Thella Bowens over five times. He did no less than five different itinerary changes, plus date changes and time changes. The airlines' charges for itinerary and date changes range between $50 to $100 per boarding document. Thella Bowens was not charged by the airlines for the changes. Thella could have changed her tickets by simply calling reservations.<br><br>Plaintiff's depo. 550:15-551:1, 6-8; 551:21-22; 554:1-10 | Objection. Irrelevant; hearsay; improper opinion; lacks foundation and personal knowledge. (Evid. Code §§ 350, 403, 702 and 1200.)<br><br>Hernandez testified that Bowens never directly asked him for an upgrade or flight change. (Hernandez Depo. 549:8-10 [Exh. 2].) This statement also lacks foundation as to how much and whether an airline charges for changes and upgrades. |
| 75. Ted Sexton instructed Hernandez that he should get Thella access to premier airline lounges so she wouldn't have to wait in the public waiting rooms. Sexton requested that even for the briefest moments if the plane was late to have Thella sit in the lounge.<br><br>Plaintiff's depo. 556:19-23; 558:18-24; 559:2-7 | Objection. Irrelevant and hearsay. (Evid. Code §§ 350 and 1200.) |
| 76. Ted Sexton asked if special privileges could be obtained for Thella Bowens' sister.<br><br>Plaintiff's depo. 561:1-25 | Objection. Vague; hearsay. (Evid. Code § 1200.) |
| 77. Authority board member Morris Vance | Objection. Lacks foundation and hearsay. |

| | |
|---|---|
| requested and received at least two upgrades to first class and there were no charges. He requested several other first-class upgrades and paid no charges for upgrades or flight changes.<br><br>Plaintiff's depo. 595:25; 596:10-12; 599:1-6; 599:25; 600:3 | (Evid. Code §§ 403, 702 and 1200.) |
| 78. Authority Vice-President Vernon Evans repeatedly requested changes in flight schedules no less than 15-20 times in the last two years. Ted Sexton told Hernandez to "do whatever you can." Sexton knew the changes were at no cost. Hernandez asked Sexton if it was okay to change Evans' tickets at the time.<br><br>Plaintiff's depo. 604:5-11; 604:12-25; 605:18-23; 607:8-12; 608:6-10; 609:8-18; 610:1-13; 612:17-21 | Objection. Hearsay and lacks foundation. (Evid. Code §§ 403 and 1200.) |
| 79. Thella Bowens requested two free airline tickets from Hawaiian Airlines and from Southwest Airlines because she was on the board of United Way. The tickets were all donated to the Authority.<br><br>Plaintiff's depo. 619:12-17; 619:22-23; 620:19-21; 621:9-11 | Objection. Lacks foundation and personal knowledge; hearsay. (Evid. Code §§ 403, 702 and 1200.) Hernandez testified that Bowens never asked him directly for any airline benefits. (Hernandez Depo. 549:8-10 [Exh. 2].) |
| 80. There was a power struggle between Bryan Enarson and Ted Sexton. Enarson had more control and had one ear of Thella Bowens'.<br><br>Plaintiff's depo. 645:19-25; 646:1-2 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 81. Authority Vice-President Bryan Enarson requested free tickets, upgrades and special privileges from Hawaiian Airlines.<br><br>Plaintiff's depo. 687:4-15 | Objection. Hearsay; lacks foundation. (Evid. Code §§ 403, 702 and 1200.) Hernandez' only knowledge of Enarson's alleged tickets and upgrades comes from other people. (Hernandez Depo. 687:4-15 [Exh. 2].) Further, this fact is irrelevant because it does not state that Enarson actually received any of the alleged requested items. |

**Adjudication No. 1:  Hernandez' First Cause of Action fails as a matter of law because the Authority's Codes are not a Federal or State law, rule or regulation.**

| Plaintiff's Additional Undisputed Facts and | Authority's Response and Supporting |
|---|---|

| Supporting Evidence | Evidence |
|---|---|
| 5.   One of Hernandez' duties was the evaluation of a lease from the Port of property located on the north side of the Airport (General Dynamics property).  The lease price contemplated the use of the property for parking, and revenues which would generate to the lease holder for 2100 stalls.<br><br>Decl. J. Hernandez ¶ 2, Plaintiff's depo. 387:11-21, 389:15-17, 396:1-8 | Not disputed for purposes of this motion only. |
| 6.   Hernandez' understanding of the lease was that the lease price was set by code for the years 2003, 2004 and 2005, and was thereafter subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 2; PUC § 170056(f)(1-3); Plaintiff's depo. 396:1-8; 397:8-11 | Not disputed for purposes of this motion only. |
| 7.   Hernandez conducted an evaluation of the cash flow of the property when the lease came up for renegotiation, and determined that deficiencies in the property prevented from generating sufficient revenue to cover the lease price by at least $2 million per year.  The deficiency center on the discovery of toxic waste in the soil beneath the property which severely limited the development of the property for parking.<br><br>Decl. J. Hernandez ¶ 2; Plaintiff's depo. 397:3-7 | Objection.  Improper opinion (Evid. Code § 800); lacks foundation (Evid. Code § 403). |
| 10. Another of Hernandez' duties was the evaluation of a lease from the Port of property located at the west side of the Airport.  (The Teledyne Ryan property)  The lease of that property likewise contemplated the generation of revenues to cover the lease through its use as a parking lot.  The lease had been negotiated by Enarson and was not subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 388:8-12 | Not disputed for purposes of this motion only. |
| 11. Hernandez discovered this property was likewise contaminated and only a small portion of it was usable.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 389:19-22, 390:3-5, 396:20-25 | Not disputed for purposes of this motion only. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

18

69-854

| | |
|---|---|
| 12. The contamination was grossly understated by the Port as a $10 million expense (which the Port agreed to pay) when the real cost of remediation was in excess of $30 million.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 407:2-408:2, 409:3-6 | Objection. Lacks foundation (Evid. Code § 403); improper opinion (Evid. Code § 800). |
| 14. Another of Hernandez' duties was to oversee the construction and/or maintenance of public facilities at the terminals, including public restrooms. Hernandez attempted to expand the size of the public restrooms to alleviate overcrowding in the east terminal and bring them into compliance with the state requirements that they be accessible by wheel chair, as required by the Americans with Disabilities Act (ADA).<br><br>Decl. J. Hernandez ¶5; Plaintiff's depo. 349:23-350:5, 352:3-353:8, 336:20-21, 337:17-19 | Not disputed for purposes of this motion only. |
| 15. He needed to annex 30 sq. ft. space from a concessionaire in order to comply with ADA requirements, but was told he could not do so by Enarson because Enarson had made handshake agreements with the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. 333:10-17, 335:4-8, 339:6-8, 336:20-21, 343:20-25 | Objection. Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Improper Legal Conclusion. (Evid. Code § 800); Hearsay. (Evid. Code § 1200.) Vague as to "he". |
| 17. Another of Hernandez' duties was to help negotiate and monitor contracts for the management of parking services. The low bidder (based on "projected" reimbursable expenses) on a contract to manage the Airport's parking lots was Lindbergh Parking Incorporated (LPI).<br><br>Decl. J. Hernandez ¶ 6 | Not disputed for purposes of this motion only. |
| 18. Its bid was so low that Hernandez – who had managed parking himself – suspected the bid was insincere. He thereafter closely monitored the performance of the contract and noted LPI was overcharging the Authority approximately $1 million to 1.5 million per year. This estimate was based, among other things, on the fact that LPI (1) did not lease new shuttle transportation vehicles as stated in | Not disputed for purposes of this motion only. |

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

19

| | | |
|---|---|---|
| 1 | its bid (but instead used older shuttles owned by LPI); (2) was seeking reimbursement for an unnecessary management position (owner/manager being paid for management work he did not perform); and (3) double-billing the Authority for workers' compensation insurance.<br><br>Decl. J. Hernandez ¶ 6; Plaintiff's Depo. 478:16-22; 481:1-4; 483:2-6 | |
| 2 | | |
| 3 | | |
| 4 | | |
| 5 | | |
| 6 | | |
| 7 | 20. The negotiating agent on behalf of LPI – Elizabeth Stump-Moore – was, however, a friend of Bowens'.<br><br>Decl. J. Hernandez ¶ 7; Plaintiff's Depo. 488:25; 489:19-25; 490:10-15 | Not disputed for purposes of this motion. |
| 8 | | |
| 9 | | |

**Adjudication No. 2:  Hernandez' First Cause of Action fails as a matter of law because Hernandez could not have had a reasonable belief that he was disclosing activity made unlawful by a federal or state law, rule or regulation.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 5.  One of Hernandez' duties was the evaluation of a lease from the Port of property located on the north side of the Airport (General Dynamics property).  The lease price contemplated the use of the property for parking, and revenues which would generate to the lease holder for 2100 stalls.<br><br>Decl. J. Hernandez ¶ 2, Plaintiff's depo. 387:11-21, 389:15-17, 396:1-8 | Not disputed for purposes of this motion only. |
| 6.  Hernandez' understanding of the lease was that the lease price was set by code for the years 2003, 2004 and 2005, and was thereafter subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 2; PUC § 170056(f)(1-3); Plaintiff's depo. 396:1-8; 397:8-11 | Not disputed for purposes of this motion only. |
| 7.  Hernandez conducted an evaluation of the cash flow of the property when the lease came up for renegotiation, and determined that deficiencies in the property prevented from generating sufficient revenue to cover the lease price by at least $2 million per year.  The | Objection.  Improper opinion (Evid. Code § 800); lacks foundation (Evid. Code § 403). |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

20

69-856

| | |
|---|---|
| deficiency center on the discovery of toxic waste in the soil beneath the property which severely limited the development of the property for parking.<br><br>Decl. J. Hernandez ¶ 2; Plaintiff's depo. 397:3-7 | |
| 10. Another of Hernandez' duties was the evaluation of a lease from the Port of property located at the west side of the Airport. (The Teledyne Ryan property) The lease of that property likewise contemplated the generation of revenues to cover the lease through its use as a parking lot. The lease had been negotiated by Enarson and was not subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 388:8-12 | Not disputed for purposes of this motion only. |
| 11. Hernandez discovered this property was likewise contaminated and only a small portion of it was usable.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 389:19-22, 390:3-5, 396:20-25 | Not disputed for purposes of this motion only. |
| 12. The contamination was grossly understated by the Port as a $10 million expense (which the Port agreed to pay) when the real cost of remediation was in excess of $30 million.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 407:2-408:2, 409:3-6 | Objection. Lacks foundation (Evid. Code § 403); improper opinion (Evid. Code § 800). |
| 14. Another of Hernandez' duties was to oversee the construction and/or maintenance of public facilities at the terminals, including public restrooms. Hernandez attempted to expand the size of the public restrooms to alleviate overcrowding in the east terminal and bring them into compliance with the state requirements that they be accessible by wheel chair, as required by the Americans with Disabilities Act (ADA).<br><br>Decl. J. Hernandez ¶5; Plaintiff's depo. 349:23-350:5, 352:3-353:8, 336:20-21, 337:17-19 | Not disputed for purposes of this motion only. |
| 15. He needed to annex 30 sq. ft. space from a concessionaire in order to comply with ADA requirements, but was told he could not do so | Objection. Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Improper Legal Conclusion. (Evid. |

| | | |
|---|---|---|
| 1<br>2<br>3<br>4 | by Enarson because Enarson had made handshake agreements with the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. 333:10-17, 335:4-8, 339:6-8, 336:20-21, 343:20-25 | Code § 800); Hearsay. (Evid. Code § 1200.) Vague as to "he". |
| 5<br>6<br>7<br>8<br>9 | 17. Another of Hernandez' duties was to help negotiate and monitor contracts for the management of parking services. The low bidder (based on "projected" reimbursable expenses) on a contract to manage the Airport's parking lots was Lindbergh Parking Incorporated (LPI).<br><br>Decl. J. Hernandez ¶ 6 | Not disputed for purposes of this motion only. |
| 10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19 | 18. Its bid was so low that Hernandez – who had managed parking himself – suspected the bid was insincere. He thereafter closely monitored the performance of the contract and noted LPI was overcharging the Authority approximately $1 million to 1.5 million per year. This estimate was based, among other things, on the fact that LPI (1) did not lease new shuttle transportation vehicles as stated in its bid (but instead used older shuttles owned by LPI); (2) was seeking reimbursement for an unnecessary management position (owner/manager being paid for management work he did not perform); and (3) double-billing the Authority for workers' compensation insurance.<br><br>Decl. J. Hernandez ¶ 6; Plaintiff's Depo. 478:16-22; 481:1-4; 483:2-6 | Not disputed for purposes of this motion only. |
| 20<br>21<br>22<br>23 | 20. The negotiating agent on behalf of LPI – Elizabeth Stump-Moore – was, however, a friend of Bowens'.<br><br>Decl. J. Hernandez ¶ 7; Plaintiff's Depo. 488:25; 489:19-25; 490:10-15 | Not disputed for purposes of this motion. |

24    **Adjudication No. 3: Hernandez' First Cause of Action fails as a matter of law because there**

25    **is no causal connection between Hernandez' alleged protected activities and his termination**

26    **because the disclosures were too remote in time.**

27

28

| Plaintiff's Additional Undisputed Facts and | Authority's Response and Supporting |
|---|---|

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

| Supporting Evidence | Evidence |
|---|---|
| 8. Hernandez communicated the deficiency in the property to Sexton and Bowens, and that the continuation of the lease at its existing rate would amount to a gift of public money to the Port.<br><br>Decl. J. Hernandez ¶ 2; Plaintiff's depo. 393:6-24 | Objection. It is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 [where "there is a clear and unequivocal admission by the plaintiff … in his deposition … [the trial court is] forced to conclude there is no substantial evidence of the existence of a triable issue of fact [notwithstanding a contradictory declaration in opposition to summary judgment.]"<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton about the General Dynamics Lease. (Hernandez Depo. 394:10-16; 397:22-398:9; 522:25-523:5 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]).<br><br>Since Hernandez testified that he only told Sexton about the General Dynamics lease, he cannot create a triable issue of fact by now stating that he told Bowens as well.<br><br>Further, Hernandez' statement is inadmissible hearsay to prove that the continuation of the lease would amount to a gift of public money.<br><br>Further, although Hernandez does not state that the gift of funds was illegal, or that he believed the gift was illegal, to the extent that this statement is construed to be a legal conclusion, it is improper. (Evid. Code § 800.) |
| 13. Hernandez then informed Sexton, Enarson and Bowens that the lease constituted an unwarranted expenditure of public money to the Port of over $3 million per year.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 417:14-22, 418:3-10 | Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Hearsay. (Evid. Code § 1200.) Improper Opinion. (Evid. Code § 800.)<br><br>It is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton and the Teledyne Task Force about the Teledyne Ryan lease. (Hernandez Depo. 410:3-413:18; |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

23

**69-859**

| | |
|---|---|
| | 522:25-523:5 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]). Since Hernandez admitted that he only informed Sexton and the Teledyne Ryan Task Force about the Teledyne Ryan lease, he cannot now create a triable issue of fact by alleging in his declaration that he also told Bowens. |
| 16. He told Sexton, Enarson and Bowens that he did not believe Enarson had the authority to enter into such agreements with the concessionaires, and that Enarson's enforcement of the agreements constituted a gift to the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. 335:17-18; 336:1; 354:6-9; 368:10-16; 377:1-4 | Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Hearsay. (Evid. Code § 1200.) Improper Opinion. (Evid. Code § 800).<br><br>This statement is hearsay if offered to prove that Hernandez did not believe that Enarson had the authority to enter into agreements. Further, Hernandez fails to lay foundation and state facts to show that he has personal knowledge of the alleged agreements.<br><br>Further, although Hernandez does not state that the gift was illegal, or that he believed the gift was illegal, to the extent that this statement is construed to be a legal conclusion, it is improper. (Evid. Code § 800.)<br><br>Finally, it is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton and a handful of others regarding the restroom project. (Hernandez Depo. 354:6-8; 375:17-21; 522:4-523:5 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy. (Hernandez Depo. 644:3-8.) Finally, Hernandez testified that the only person that he felt he could complain to was Ted. (Hernandez Depo. 644:9-16.)<br><br>Since Hernandez admitted that he only informed Sexton, the terminal operations committee and the architect about the Restroom Project, he cannot now create a triable issue of fact by alleging in his declaration that he also told Bowens. |
| 19. Hernandez reported these overcharges to | It is improper to create a triable issue of fact by |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

24

69-860

| | | |
|---|---|---|
| 1 | Sexton, Enarson and Bowens, in October 2005 and placed LPI on a 90-day timetable to explain and justify all the expenses. He informed Sexton, Enarson and Bowens that the LPI contract constituted an unwarranted expenditure of public money to LPI.<br><br>Decl. J. Hernandez ¶ 7; Plaintiff's Depo. 505:11-23; 506:10-23; 508:7-13; 511:16-23 | disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton and Andrew McIntyre regarding LPI. (Hernandez Depo. 493:24-494:8; 498:25-499:11; 501:3-8; 503:5-504:6; 522:4-24 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]).<br><br>Since Hernandez admitted that he only informed Sexton and McIntyre about LPI, he cannot now create a triable issue of fact by alleging in his declaration that he also told Bowens.<br><br>Hernandez first made the disclosure regarding LPI's expenses in 2004. (Hernandez 493:24-495:15 [Hernandez made his first disclosure at the three-month or six-month submittal]; Sexton Dec. 3:15-17 [the LPi contract began in January 2004].) |
| 15 | 20. The negotiating agent on behalf of LPI – Elizabeth Stump-Moore – was, however, a friend of Bowens'.<br><br>Decl. J. Hernandez ¶ 7; Plaintiff's Depo. 488:25; 489:19-25; 490:10-15 | Not disputed for purposes of this motion. |
| 19 | 21. On November 2, 2005, Bowens engaged a law firm to investigate Hernandez for "ethics" violations associated with the receipt of benefits from the Authority's vendors. This was the first occasion in the history of the Authority that a law firm was retained to investigate an employee for alleged ethics violations.<br><br>Decl. J. Hernandez ¶ 7; Decl. P. Swan ¶ 3 | Objection. The second sentence lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.)<br><br>Hernandez' declaration does not state that this was the first time the Authority retained a law firm to investigate ethics violations. Rather, Hernandez states in his declaration that this was the first time *that he was aware of* that anyone was questioned regarding receipt of tickets. |
| 25 | 22. The law firm, per report submitted by Patrick Swan, Esq., concluded Hernandez received (1) free rounds of golf; (2) airline tickets to Hawaii; and (3) charger football tickets, the value of which placed Hernandez in violation of the Ethics Code applicable to Authority employees. | Objection to the extent that this is a partial and incomplete summary of the findings in the report. |

PAUL, PLEVIN,<br>SULLIVAN &<br>CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

25

| Decl. P. Swan | |
|---|---|
| 23. Bowens claims to have terminated Hernandez' employment based on the conclusions in the report.<br><br>Decl. T. Bowens ¶ 9 | Not disputed for purposes of this motion. |
| 24. With regard to the "free rounds of golf," Hernandez cleared the trip with his boss, Sexton, before going, after disclosing the nature of the outing and that the golf rounds were supplied by Mike Parrish.<br><br>Decl. J. Hernandez ¶ 9; Plaintiff's depo. 158:18-22; 168:5-24 | Objection. Irrelevant. (Evid. Code § 350.) |
| 25. In the process, Sexton admitted he had attended the same golf outing under similar circumstances.<br><br>Decl. J. Hernandez ¶ 9 | Objection. Hearsay. (Evid. Code § 1200.) |
| 26. Hernandez compensated Parrish for the round by buying Parrish's lunch and dinner and by making gift contributions for the raffle. The net personal value to Hernandez was negative by over $200.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Plaintiff's depo. 159:14-19; 163:3-13; 164:10-14 | Objection. Lacks foundation; irrelevant. (Evid. Code §§ 350 and 403.)<br><br>The declaration of Pat Swan does not establish the alleged fact presented. |
| 27. Hernandez had a strong social relationship with Parrish, which included joint family outings and gatherings, dinners, barbecues and sporting events.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Decl. M. Parrish ¶ 2 | Not disputed for purposes of this motion. |
| 28. With regard to the Hawaii ticket, ticketing benefits were regarded by management as normal benefit of their workplace, and that Sexton assigned Hernandez responsibility on frequent occasions to obtain ticket upgrades for various employees and board members. Hernandez specifically discussed whether the practice was ethically acceptable and Sexton replied it was.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 240:1-25; 602:20-25; 609:1-611:25 | Objection. Lacks foundation and is vague as to who in "management" regarded ticketing benefits as a normal benefit of the workplace. (Evid. Code § 403.) Further, none of the cited evidence states that ticketing benefits were a normal benefit of the workplace, or that Hernandez discussed whether the practice was ethically acceptable.<br><br>Hearsay. (Evid. Code § 1200.) |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

26

| | |
|---|---|
| 29. Notwithstanding the practice among Hernandez' superiors to receive passes and upgrades, Hernandez' receipt of those benefits was limited to gifts from personal friends. The tickets on Southwest came from Parrish. The tickets on Hawaiian Air came from Janet Nix, another personal friend, who told him she gave tickets like those to all kinds of friends having nothing to do with business.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 199:3-22; Decl. M. Parrish ¶ 3 | Objection.  Improper argument and opinion; lacks foundation.  (Evid. Code §§ 403 and 800.)  Further, although Hernandez may have received benefits from friends, those friends were also employees of the Authority's vendors.  (Hernandez Depo. 191:8-20; 198:8-200:17; 280:1-14; and 281:6-12 [Exh. 1].) |
| 30. Moreover, the Hawaiian tickets were listed as "space available" and further identified as having "no dollar value" and could not be transferred or redeemed.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; ; Plaintiff's Depo. 280:15-20, 23-25; 281:1-2; Decl. M. Parrish par. 3 | Objection.  Hearsay.   (Evid. Code § 1200.)  Lacks foundation.  (Evid. Code § 403.) |
| 31. With regard to the football tickets, ACE parking did not have a contractor or vendor agreement of any sort with the Authority.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan; Plaintiff's Depo. 268:1-4; 272:5-9 | Objection.  Lacks foundation.  Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005.  (Hernandez Depo. 151:4-18 [Exh. 1].)  Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority.  (*Id.* at 127:19-22.)  Scott Jones, the owner of Ace Parking, is a 40% owner of LPi.  (*Id.* at 75:18-19, 127:10-128:2.) |
| 32. Hernandez had a longstanding friendship with the ACE Parking manager who invited him to the game which preceded Hernandez' employment with the Authority.  They were friends from Hernandez' prior employment relationship with ACE Parking.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan | Not disputed for purposes of this motion only. |
| 33. During Swan's interviews with Hernandez, he expressed no interest in the fact that Parrish and Hernandez were close personal friends.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay.  (Evid. Code § 1200.) |
| 34. He avoided discussion of the tendency of other employees such as Bowens and Sexton to make active and aggressive use of their positions to acquire ticketing upgrades and | Objection.  Vague as to "he."  Hearsay.  (Evid. Code § 1200.)<br><br>Lacks foundation.  (Evid. Code § 403.) |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP      OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ      27

69-863

| | |
|---|---|
| benefits worth thousands of dollars.<br><br>Decl. J. Hernandez ¶ 13 | Hernandez has not established that employees "made active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars." |
| 35. When Hernandez attempted to explain these friendships and practices, Swan cut him off and would state that he was not interested in the nature of those friendships and what the office practice was.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 36. Hernandez had previously received outstanding performance evaluations.<br><br>Decl. J Hernandez ¶ 14; Plaintiff's Depo. 786:9-18 | Not disputed for purposes of this motion only. |
| 37. The Authority did, in fact, have a progressive disciplinary policy set forth in writing, which emphasizes the Authority's commitment to preserve employment through pre-termination warnings and training.<br><br>Decl. J. Hernandez ¶ 14; Plaintiff's Depo. 317:14-16 | This "fact" is contrary to Hernandez' own testimony and thus cannot create a triable issue of fact. (*D'Amico, supra,* 11 Cal.3d at p. 21-22.) Hernandez admitted in his deposition that he was an at-will employee and that he could be terminated at any time, with or without cause. (Hernandez Depo. 115:21-116:6; Exh. 16.) If he could be terminated at any time, then the Authority was under no obligation to progressively discipline Hernandez. Further, this fact lacks foundation because the cited testimony does not establish that the alleged policy is in writing. |
| 38. That the Authority failed to adhere to this policy and instead routed the matter to an expensive and contentious law firm is a truly extraordinary decision.<br><br>Decl. J. Hernandez ¶ 14 | Objection. Lacks foundation. |
| 39. Ace Parking did not have a direct service agreement with the Airport Authority. Ace did not have any sort of a business relationship with the Airport Authority.<br><br>Plaintiff's depo. 149:15-20; 150:20-25 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 41. Ted Sexton told Hernandez it would be okay to go to the Southwest Airline Golf Tournaments. Sexton knew he was a guest of Southwest's. | Objection. Lacks foundation. (Evid. Code § 403.) Hearsay. (Evid. Code § 1200.) |

| | |
|---|---|
| Plaintiff's depo. 158:18-22; 168:5-8, 12-13, 18, 21-24 | |
| 42. Hernandez had absolutely never received free food from the concessions in the Airport terminals.<br><br>Plaintiff's depo. 201:16-18 | Not disputed for purposes of this motion only. |
| 44. Ted Sexton told Hernandez to write everything on the form, whether he thought it proper to do so or not.<br><br>Plaintiff's depo. 293:14-20 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.) |
| 74. Hernandez requested ticket changes for Thella Bowens over five times. He did no less than five different itinerary changes, plus date changes and time changes. The airlines' charges for itinerary and date changes range between $50 to $100 per boarding document. Thella Bowens was not charged by the airlines for the changes. Thella could have changed her tickets by simply calling reservations.<br><br>Plaintiff's depo. 550:15-551:1, 6-8; 551:21-22; 554:1-10 | Objection. Irrelevant; hearsay; improper opinion; lacks foundation and personal knowledge. (Evid. Code §§ 350, 403, 702 and 1200.)<br><br>Hernandez testified that Bowens never directly asked him for an upgrade or flight change. (Hernandez Depo. 549:8-10 [Exh. 2].) This statement also lacks foundation as to how much and whether an airline charges for changes and upgrades. |
| 75. Ted Sexton instructed Hernandez that he should get Thella access to premier airline lounges so she wouldn't have to wait in the public waiting rooms. Sexton requested that even for the briefest moments if the plane was late to have Thella sit in the lounge.<br><br>Plaintiff's depo. 556:19-23; 558:18-24; 559:2-7 | Objection. Irrelevant and hearsay. (Evid. Code §§ 350 and 1200.) |
| 76. Ted Sexton asked if special privileges could be obtained for Thella Bowens' sister.<br><br>Plaintiff's depo. 561:1-25 | Objection. Vague; hearsay. (Evid. Code § 1200.) |
| 77. Authority board member Morris Vance requested and received at least two upgrades to first class and there were no charges. He requested several other first-class upgrades and paid no charges for upgrades or flight changes.<br><br>Plaintiff's depo. 595:25; 596:10-12; 599:1-6; 599:25; 600:3 | Objection. Lacks foundation and hearsay. (Evid. Code §§ 403, 702 and 1200.) |
| 78. Authority Vice-President Vernon Evans repeatedly requested changes in flight | Objection. Hearsay and lacks foundation. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

29

| | |
|---|---|
| schedules no less than 15-20 times in the last two years. Ted Sexton told Hernandez to "do whatever you can." Sexton knew the changes were at no cost. Hernandez asked Sexton if it was okay to change Evans' tickets at the time.<br><br>Plaintiff's depo. 604:5-11; 604:12-25; 605:18-23; 607:8-12; 608:6-10; 609:8-18; 610:1-13; 612:17-21 | (Evid. Code §§ 403 and 1200.) |
| 79. Thella Bowens requested two free airline tickets from Hawaiian Airlines and from Southwest Airlines because she was on the board of United Way. The tickets were all donated to the Authority.<br><br>Plaintiff's depo. 619:12-17; 619:22-23; 620:19-21; 621:9-11 | Objection. Lacks foundation and personal knowledge; hearsay. (Evid. Code §§ 403, 702 and 1200.) Hernandez testified that Bowens never asked him directly for any airline benefits. (Hernandez Depo. 549:8-10 [Exh. 2].) |
| 80. There was a power struggle between Bryan Enarson and Ted Sexton. Enarson had more control and had one ear of Thella Bowens'.<br><br>Plaintiff's depo. 645:19-25; 646:1-2 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 81. Authority Vice-President Bryan Enarson requested free tickets, upgrades and special privileges from Hawaiian Airlines.<br><br>Plaintiff's depo. 687:4-15 | Objection. Hearsay; lacks foundation. (Evid. Code §§ 403, 702 and 1200.) Hernandez' only knowledge of Enarson's alleged tickets and upgrades comes from other people. (Hernandez Depo. 687:4-15 [Exh. 2].) Further, this fact is irrelevant because it does not state that Enarson actually received any of the alleged requested items. |

**Adjudication No. 4:  Hernandez' First Cause of Action fails as a matter of law because there is no causal connection between Hernandez' alleged protected activities and his termination because the decisionmaker was not aware of the protected activities.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 8.  Hernandez communicated the deficiency in the property to Sexton and Bowens, and that the continuation of the lease at its existing rate would amount to a gift of public money to the Port.<br><br>Decl. J. Hernandez ¶ 2; Plaintiff's depo. 393:6-24 | Objection. It is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22 [where "there is a clear and unequivocal admission by the plaintiff … in his deposition … [the trial court is] forced to conclude there is no substantial evidence of the existence of a triable issue of fact [notwithstanding a contradictory |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

30

| | |
|---|---|
| | declaration in opposition to summary judgment.]" |
| | Hernandez admitted in his deposition that he only complained to Ted Sexton about the General Dynamics Lease. (Hernandez Depo. 394:10-16; 397:22-398:9; 522:25-523:5 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]). |
| | Since Hernandez testified that he only told Sexton about the General Dynamics lease, he cannot create a triable issue of fact by now stating that he told Bowens as well. |
| | Further, Hernandez' statement is inadmissible hearsay to prove that the continuation of the lease would amount to a gift of public money. |
| | Further, although Hernandez does not state that the gift of funds was illegal, or that he believed the gift was illegal, to the extent that this statement is construed to be a legal conclusion, it is improper. (Evid. Code § 800.) |
| 13. Hernandez then informed Sexton, Enarson and Bowens that the lease constituted an unwarranted expenditure of public money to the Port of over $3 million per year.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 417:14-22, 418:3-10 | Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Hearsay. (Evid. Code § 1200.) Improper Opinion. (Evid. Code § 800.)<br><br>It is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton and the Teledyne Task Force about the Teledyne Ryan lease. (Hernandez Depo. 410:3-413:18; 522:25-523:5 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]). Since Hernandez admitted that he only informed Sexton and the Teledyne Ryan Task Force about the Teledyne Ryan lease, he cannot now create a triable issue of fact by alleging in |

69-867

| | |
|---|---|
| | his declaration that he also told Bowens. |
| 16. He told Sexton, Enarson and Bowens that he did not believe Enarson had the authority to enter into such agreements with the concessionaires, and that Enarson's enforcement of the agreements constituted a gift to the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. 335:17-18; 336:1; 354:6-9; 368:10-16; 377:1-4 | Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Hearsay. (Evid. Code § 1200.)  Improper Opinion. (Evid. Code § 800.)<br><br>This statement is hearsay if offered to prove that Hernandez did not believe that Enarson had the authority to enter into agreements. Further, Hernandez fails to lay foundation and state facts to show that he has personal knowledge of the alleged agreements.<br><br>Further, although Hernandez does not state that the gift was illegal, or that he believed the gift was illegal, to the extent that this statement is construed to be a legal conclusion, it is improper. (Evid. Code § 800.)<br><br>Finally, it is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton and a handful of others regarding the restroom project. (Hernandez Depo. 354:6-8; 375:17-21; 522:25-523:5 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy.  (Hernandez Depo. 644:3-8.)  Finally, Hernandez testified that the only person that he felt he could complain to was Ted.  (Hernandez Depo. 644:9-16.)<br><br>Since Hernandez admitted that he only informed Sexton, the terminal operations committee and the architect about the Restroom Project, he cannot now create a triable issue of fact by alleging in his declaration that he also told Bowens. |
| 19. Hernandez reported these overcharges to Sexton, Enarson and Bowens, in October 2005 and placed LPI on a 90-day timetable to explain and justify all the expenses.  He informed Sexton, Enarson and Bowens that the LPI contract constituted an unwarranted expenditure of public money to LPI.<br><br>Decl. J. Hernandez ¶ 7; Plaintiff's Depo. 505:11-23; 506:10-23; 508:7-13; 511:16-23 | It is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton and Andrew McIntyre regarding LPI. (Hernandez Depo. 493:24-494:8; 498:25-499:11; 501:3-8; 503:5-504:6; 522:4-24 [Exh. 2].)  Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy |

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

32

**69-868**

| | |
|---|---|
| | (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]). |
| | Since Hernandez admitted that he only informed Sexton and McIntyre about LPI, he cannot now create a triable issue of fact by alleging in his declaration that he also told Bowens. |
| | Hernandez first made the disclosure regarding LPI's expenses in 2004. (Hernandez 493:24-495:15 [Hernandez made his first disclosure at the three-month or six-month submittal]; Sexton Dec. 3:15-17 [the LPi contract began in January 2004].) |

**Adjudication No. 5:  Hernandez' First Cause of Action fails as a matter of law because the Authority had a legitimate non retaliatory business reason for terminating Hernandez' employment.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 24. With regard to the "free rounds of golf," Hernandez cleared the trip with his boss, Sexton, before going, after disclosing the nature of the outing and that the golf rounds were supplied by Mike Parrish.<br><br>Decl. J. Hernandez ¶ 9; Plaintiff's depo. 158:18-22; 168:5-24 | Objection.  Irrelevant.  (Evid. Code § 350.) |
| 25. In the process, Sexton admitted he had attended the same golf outing under similar circumstances.<br><br>Decl. J. Hernandez ¶ 9 | Objection.  Hearsay.  (Evid. Code § 1200.) |
| 26. Hernandez compensated Parrish for the round by buying Parrish's lunch and dinner and by making gift contributions for the raffle.  The net personal value to Hernandez was negative by over $200.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Plaintiff's depo. 159:14-19; 163:3-13; 164:10-14 | Objection.  Lacks foundation; irrelevant. (Evid. Code §§ 350 and 403.)<br><br>The declaration of Pat Swan does not establish the alleged fact presented. |
| 27. Hernandez had a strong social relationship with Parrish, which included joint family | Not disputed for purposes of this motion. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

33

69-869

| | | |
|---|---|---|
| 1 | outings and gatherings, dinners, barbecues and sporting events.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Decl. M. Parrish ¶ 2 | |
| 4 | 28. With regard to the Hawaii ticket, ticketing benefits were regarded by management as normal benefit of their workplace, and that Sexton assigned Hernandez responsibility on frequent occasions to obtain ticket upgrades for various employees and board members. Hernandez specifically discussed whether the practice was ethically acceptable and Sexton replied it was.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 240:1-25; 602:20-25; 609:1-611:25 | Objection. Lacks foundation and is vague as to who in "management" regarded ticketing benefits as a normal benefit of the workplace. (Evid. Code § 403.) Further, none of the cited evidence states that ticketing benefits were a normal benefit of the workplace, or that Hernandez discussed whether the practice was ethically acceptable.<br><br>Hearsay. (Evid. Code § 1200.) |
| 11 | 29. Notwithstanding the practice among Hernandez' superiors to receive passes and upgrades, Hernandez' receipt of those benefits was limited to gifts from personal friends. The tickets on Southwest came from Parrish. The tickets on Hawaiian Air came from Janet Nix, another personal friend, who told him she gave tickets like those to all kinds of friends having nothing to do with business.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 199:3-22; Decl. M. Parrish ¶ 3 | Objection. Improper argument and opinion; lacks foundation. (Evid. Code §§ 403 and 800.) Further, although Hernandez may have received benefits from friends, those friends were also employees of the Authority's vendors. (Hernandez Depo. 191:8-20; 198:8-200:17; 280:1-14; and 281:6-12 [Exh. 1].) |
| 18 | 30. Moreover, the Hawaiian tickets were listed as "space available" and further identified as having "no dollar value" and could not be transferred or redeemed.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; ; Plaintiff's Depo. 280:15-20, 23-25; 281:1-2; Decl. M. Parrish par. 3 | Objection. Hearsay. (Evid. Code § 1200.) Lacks foundation. (Evid. Code § 403.) |
| 23 | 31. With regard to the football tickets, ACE parking did not have a contractor or vendor agreement of any sort with the Authority.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan; Plaintiff's Depo. 268:1-4; 272:5-9 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |

69-870

| | |
|---|---|
| 32. Hernandez had a longstanding friendship with the ACE Parking manager who invited him to the game which preceded Hernandez' employment with the Authority. They were friends from Hernandez' prior employment relationship with ACE Parking.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan | Not disputed for purposes of this motion only. |
| 33. During Swan's interviews with Hernandez, he expressed no interest in the fact that Parrish and Hernandez were close personal friends.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 34. He avoided discussion of the tendency of other employees such as Bowens and Sexton to make active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.)<br><br>Lacks foundation. (Evid. Code § 403.) Hernandez has not established that employees "made active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars." |
| 35. When Hernandez attempted to explain these friendships and practices, Swan cut him off and would state that he was not interested in the nature of those friendships and what the office practice was.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 36. Hernandez had previously received outstanding performance evaluations.<br><br>Decl. J Hernandez ¶ 14; Plaintiff's Depo. 786:9-18 | Not disputed for purposes of this motion only. |
| 37. The Authority did, in fact, have a progressive disciplinary policy set forth in writing, which emphasizes the Authority's commitment to preserve employment through pre-termination warnings and training.<br><br>Decl. J. Hernandez ¶ 14; Plaintiff's Depo. 317:14-16 | This "fact" is contrary to Hernandez' own testimony and thus cannot create a triable issue of fact. (*D'Amico, supra*, 11 Cal.3d at p. 21-22.) Hernandez admitted in his deposition that he was an at-will employee and that he could be terminated at any time, with or without cause. (Hernandez Depo. 115:21-116:6; Exh. 16.) If he could be terminated at any time, then the Authority was under no obligation to progressively discipline Hernandez. Further, this fact lacks foundation because the cited testimony does not establish that the alleged policy is in writing. |
| 38. That the Authority failed to adhere to this | Objection. Lacks foundation. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

35

| | |
|---|---|
| policy and instead routed the matter to an expensive and contentious law firm is a truly extraordinary decision.<br><br>Decl. J. Hernandez ¶ 14 | |
| 39. Ace Parking did not have a direct service agreement with the Airport Authority. Ace did not have any sort of a business relationship with the Airport Authority.<br><br>Plaintiff's depo. 149:15-20; 150:20-25 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 41. Ted Sexton told Hernandez it would be okay to go to the Southwest Airline Golf Tournaments. Sexton knew he was a guest of Southwest's.<br><br>Plaintiff's depo. 158:18-22; 168:5-8, 12-13, 18, 21-24 | Objection. Lacks foundation. (Evid. Code § 403.) Hearsay. (Evid. Code § 1200.) |
| 42. Hernandez had absolutely never received free food from the concessions in the Airport terminals.<br><br>Plaintiff's depo. 201:16-18 | Not disputed for purposes of this motion only. |
| 44. Ted Sexton told Hernandez to write everything on the form, whether he thought it proper to do so or not.<br><br>Plaintiff's depo. 293:14-20 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.) |
| 74. Hernandez requested ticket changes for Thella Bowens over five times. He did no less than five different itinerary changes, plus date changes and time changes. The airlines' charges for itinerary and date changes range between $50 to $100 per boarding document. Thella Bowens was not charged by the airlines for the changes. Thella could have changed her tickets by simply calling reservations.<br><br>Plaintiff's depo. 550:15-551:1, 6-8; 551:21-22; 554:1-10 | Objection. Irrelevant; hearsay; improper opinion; lacks foundation and personal knowledge. (Evid. Code §§ 350, 403, 702 and 1200.)<br><br>Hernandez testified that Bowens never directly asked him for an upgrade or flight change. (Hernandez Depo. 549:8-10 [Exh. 2].) This statement also lacks foundation as to how much and whether an airline charges for changes and upgrades. |
| 75. Ted Sexton instructed Hernandez that he should get Thella access to premier airline lounges so she wouldn't have to wait in the public waiting rooms. Sexton requested that even for the briefest moments if the plane was late to have Thella sit in the lounge. | Objection. Irrelevant and hearsay. (Evid. Code §§ 350 and 1200.) |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

36

| | |
|---|---|
| Plaintiff's depo. 556:19-23; 558:18-24; 559:2-7 | |
| 76. Ted Sexton asked if special privileges could be obtained for Thella Bowens' sister.<br><br>Plaintiff's depo. 561:1-25 | Objection. Vague; hearsay. (Evid. Code § 1200.) |
| 77. Authority board member Morris Vance requested and received at least two upgrades to first class and there were no charges. He requested several other first-class upgrades and paid no charges for upgrades or flight changes.<br><br>Plaintiff's depo. 595:25; 596:10-12; 599:1-6; 599:25; 600:3 | Objection. Lacks foundation and hearsay. (Evid. Code §§ 403, 702 and 1200.) |
| 78. Authority Vice-President Vernon Evans repeatedly requested changes in flight schedules no less than 15-20 times in the last two years. Ted Sexton told Hernandez to "do whatever you can." Sexton knew the changes were at no cost. Hernandez asked Sexton if it was okay to change Evans' tickets at the time.<br><br>Plaintiff's depo. 604:5-11; 604:12-25; 605:18-23; 607:8-12; 608:6-10; 609:8-18; 610:1-13; 612:17-21 | Objection. Hearsay and lacks foundation. (Evid. Code §§ 403 and 1200.) |
| 79. Thella Bowens requested two free airline tickets from Hawaiian Airlines and from Southwest Airlines because she was on the board of United Way. The tickets were all donated to the Authority.<br><br>Plaintiff's depo. 619:12-17; 619:22-23; 620:19-21; 621:9-11 | Objection. Lacks foundation and personal knowledge; hearsay. (Evid. Code §§ 403, 702 and 1200.) Hernandez testified that Bowens never asked him directly for any airline benefits. (Hernandez Depo. 549:8-10 [Exh. 2].) |
| 80. There was a power struggle between Bryan Enarson and Ted Sexton. Enarson had more control and had one ear of Thella Bowens'.<br><br>Plaintiff's depo. 645:19-25; 646:1-2 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 81. Authority Vice-President Bryan Enarson requested free tickets, upgrades and special privileges from Hawaiian Airlines.<br><br>Plaintiff's depo. 687:4-15 | Objection. Hearsay; lacks foundation. (Evid. Code §§ 403, 702 and 1200.) Hernandez' only knowledge of Enarson's alleged tickets and upgrades comes from other people. (Hernandez Depo. 687:4-15 [Exh. 2].) Further, this fact is irrelevant because it does not state that Enarson actually received any of the |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

37

69-873

| | alleged requested items. |
|---|---|

**Adjudication No. 6: Hernandez' First Cause of Action fails as a matter of law because he has no evidence of pretext.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 19. Hernandez reported these overcharges to Sexton, Enarson and Bowens, in October 2005 and placed LPI on a 90-day timetable to explain and justify all the expenses. He informed Sexton, Enarson and Bowens that the LPI contract constituted an unwarranted expenditure of public money to LPI.<br><br>Decl. J. Hernandez ¶ 7; Plaintiff's Depo. 505:11-23; 506:10-23; 508:7-13; 511:16-23 | It is improper to create a triable issue of fact by disputing prior testimony. *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 21-22.<br><br>Hernandez admitted in his deposition that he only complained to Ted Sexton and Andrew McIntyre regarding LPI. (Hernandez Depo. 493:24-494:8; 498:25-499:11; 501:3-8; 503:5-504:6; 522:4-24 [Exh. 2].) Hernandez further testified that although Thella Bowens had an open door policy, he would never go to her office and utilize the open door policy (Hernandez Depo. 644:3-8 [Exh. 2]), and that the only person he felt he could go to was Ted Sexton (Hernandez Depo. 644:9-16 [Exh. 2]).<br><br>Since Hernandez admitted that he only informed Sexton and McIntyre about LPI, he cannot now create a triable issue of fact by alleging in his declaration that he also told Bowens.<br><br>Hernandez first made the disclosure regarding LPi's expenses in 2004. (Hernandez 493:24-495:15 [Hernandez made his first disclosure at the three-month or six-month submittal]; Sexton Dec. 3:15-17 [the LPi contract began in January 2004].) |
| 20. The negotiating agent on behalf of LPI — Elizabeth Stump-Moore – was, however, a friend of Bowens'.<br><br>Decl. J. Hernandez ¶ 7; Plaintiff's Depo. 488:25; 489:19-25; 490:10-15 | Not disputed for purposes of this motion. |
| 21. On November 2, 2005, Bowens engaged a law firm to investigate Hernandez for "ethics" violations associated with the receipt of benefits from the Authority's vendors. This was the first occasion in the history of the Authority that a law firm was retained to investigate an employee for alleged ethics violations. | Objection. The second sentence lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.)<br><br>Hernandez' declaration does not state that this was the first time the Authority retained a law firm to investigate ethics violations. Rather, Hernandez states in his declaration that this |

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

| | |
|---|---|
| Decl. J. Hernandez ¶ 7; Decl. P. Swan ¶ 3 | was the first time *that he was aware of* that anyone was questioned regarding receipt of tickets. |
| 22. The law firm, per report submitted by Patrick Swan, Esq., concluded Hernandez received (1) free rounds of golf; (2) airline tickets to Hawaii; and (3) charger football tickets, the value of which placed Hernandez in violation of the Ethics Code applicable to Authority employees.<br><br>Decl. P. Swan | Objection to the extent that this is a partial and incomplete summary of the findings in the report. |
| 23. Bowens claims to have terminated Hernandez' employment based on the conclusions in the report.<br><br>Decl. T. Bowens ¶ 9 | Not disputed for purposes of this motion. |
| 24. With regard to the "free rounds of golf," Hernandez cleared the trip with his boss, Sexton, before going, after disclosing the nature of the outing and that the golf rounds were supplied by Mike Parrish.<br><br>Decl. J. Hernandez ¶ 9; Plaintiff's depo. 158:18-22; 168:5-24 | Objection. Irrelevant. (Evid. Code § 350.) |
| 25. In the process, Sexton admitted he had attended the same golf outing under similar circumstances.<br><br>Decl. J. Hernandez ¶ 9 | Objection. Hearsay. (Evid. Code § 1200.) |
| 26. Hernandez compensated Parrish for the round by buying Parrish's lunch and dinner and by making gift contributions for the raffle. The net personal value to Hernandez was negative by over $200.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Plaintiff's depo. 159:14-19; 163:3-13; 164:10-14 | Objection. Lacks foundation; irrelevant. (Evid. Code §§ 350 and 403.)<br><br>The declaration of Pat Swan does not establish the alleged fact presented. |
| 27. Hernandez had a strong social relationship with Parrish, which included joint family outings and gatherings, dinners, barbecues and sporting events.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Decl. M. Parrish ¶ 2 | Not disputed for purposes of this motion. |
| 28. With regard to the Hawaii ticket, ticketing benefits were regarded by management as | Objection. Lacks foundation and is vague as to who in "management" regarded ticketing |

69-875

| | |
|---|---|
| normal benefit of their workplace, and that Sexton assigned Hernandez responsibility on frequent occasions to obtain ticket upgrades for various employees and board members. Hernandez specifically discussed whether the practice was ethically acceptable and Sexton replied it was.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 240:1-25; 602:20-25; 609:1-611:25 | benefits as a normal benefit of the workplace. (Evid. Code § 403.) Further, none of the cited evidence states that ticketing benefits were a normal benefit of the workplace, or that Hernandez discussed whether the practice was ethically acceptable.<br><br>Hearsay. (Evid. Code § 1200.) |
| 29. Notwithstanding the practice among Hernandez' superiors to receive passes and upgrades, Hernandez' receipt of those benefits was limited to gifts from personal friends. The tickets on Southwest came from Parrish. The tickets on Hawaiian Air came from Janet Nix, another personal friend, who told him she gave tickets like those to all kinds of friends having nothing to do with business.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 199:3-22; Decl. M. Parrish ¶ 3 | Objection. Improper argument and opinion; lacks foundation. (Evid. Code §§ 403 and 800.) Further, although Hernandez may have received benefits from friends, those friends were also employees of the Authority's vendors. (Hernandez Depo. 191:8-20; 198:8-200:17; 280:1-14; and 281:6-12 [Exh. 1].) |
| 30. Moreover, the Hawaiian tickets were listed as "space available" and further identified as having "no dollar value" and could not be transferred or redeemed.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; ; Plaintiff's Depo. 280:15-20, 23-25; 281:1-2; Decl. M. Parrish par. 3 | Objection. Hearsay. (Evid. Code § 1200.) Lacks foundation. (Evid. Code § 403.) |
| 31. With regard to the football tickets, ACE parking did not have a contractor or vendor agreement of any sort with the Authority.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan; Plaintiff's Depo. 268:1-4; 272:5-9 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (Id. at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (Id. at 75:18-19, 127:10-128:2.) |
| 32. Hernandez had a longstanding friendship with the ACE Parking manager who invited him to the game which preceded Hernandez' employment with the Authority. They were friends from Hernandez' prior employment relationship with ACE Parking.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan | Not disputed for purposes of this motion only. |

| | |
|---|---|
| 33. During Swan's interviews with Hernandez, he expressed no interest in the fact that Parrish and Hernandez were close personal friends.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 34. He avoided discussion of the tendency of other employees such as Bowens and Sexton to make active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.)<br><br>Lacks foundation. (Evid. Code § 403.) Hernandez has not established that employees "made active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars." |
| 35. When Hernandez attempted to explain these friendships and practices, Swan cut him off and would state that he was not interested in the nature of those friendships and what the office practice was.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 36. Hernandez had previously received outstanding performance evaluations.<br><br>Decl. J Hernandez ¶ 14; Plaintiff's Depo. 786:9-18 | Not disputed for purposes of this motion only. |
| 37. The Authority did, in fact, have a progressive disciplinary policy set forth in writing, which emphasizes the Authority's commitment to preserve employment through pre-termination warnings and training.<br><br>Decl. J. Hernandez ¶ 14; Plaintiff's Depo. 317:14-16 | This "fact" is contrary to Hernandez' own testimony and thus cannot create a triable issue of fact. (*D'Amico, supra,* 11 Cal.3d at p. 21-22.) Hernandez admitted in his deposition that he was an at-will employee and that he could be terminated at any time, with or without cause. (Hernandez Depo. 115:21-116:6; Exh. 16.) If he could be terminated at any time, then the Authority was under no obligation to progressively discipline Hernandez. Further, this fact lacks foundation because the cited testimony does not establish that the alleged policy is in writing. |
| 38. That the Authority failed to adhere to this policy and instead routed the matter to an expensive and contentious law firm is a truly extraordinary decision.<br><br>Decl. J. Hernandez ¶ 14 | Objection. Lacks foundation. |
| 39. Ace Parking did not have a direct service agreement with the Airport Authority. Ace did not have any sort of a business | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior |

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

| | |
|---|---|
| relationship with the Airport Authority.<br><br>Plaintiff's depo. 149:15-20; 150:20-25 | to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 41. Ted Sexton told Hernandez it would be okay to go to the Southwest Airline Golf Tournaments. Sexton knew he was a guest of Southwest's.<br><br>Plaintiff's depo. 158:18-22; 168:5-8, 12-13, 18, 21-24 | Objection. Lacks foundation. (Evid. Code § 403.) Hearsay. (Evid. Code § 1200.) |
| 42. Hernandez had absolutely never received free food from the concessions in the Airport terminals.<br><br>Plaintiff's depo. 201:16-18 | Not disputed for purposes of this motion only. |
| 44. Ted Sexton told Hernandez to write everything on the form, whether he thought it proper to do so or not.<br><br>Plaintiff's depo. 293:14-20 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.) |
| 74. Hernandez requested ticket changes for Thella Bowens over five times. He did no less than five different itinerary changes, plus date changes and time changes. The airlines' charges for itinerary and date changes range between $50 to $100 per booking document. Thella Bowens was not charged by the airlines for the changes. Thella could have changed her tickets by simply calling reservations.<br><br>Plaintiff's depo. 550:15-551:1, 6-8; 551:21-22; 554:1-10 | Objection. Irrelevant; hearsay; improper opinion; lacks foundation and personal knowledge. (Evid. Code §§ 350, 403, 702 and 1200.)<br><br>Hernandez testified that Bowens never directly asked him for an upgrade or flight change. (Hernandez Depo. 549:8-10 [Exh. 2].) This statement also lacks foundation as to how much and whether an airline charges for changes and upgrades. |
| 75. Ted Sexton instructed Hernandez that he should get Thella access to premier airline lounges so she wouldn't have to wait in the public waiting rooms. Sexton requested that even for the briefest moments if the plane was late to have Thella sit in the lounge.<br><br>Plaintiff's depo. 556:19-23; 558:18-24; 559:2-7 | Objection. Irrelevant and hearsay. (Evid. Code §§ 350 and 1200.) |
| 76. Ted Sexton asked if special privileges could be obtained for Thella Bowens' sister.<br><br>Plaintiff's depo. 561:1-25 | Objection. Vague; hearsay. (Evid. Code § 1200.) |
| 77. Authority board member Morris Vance | Objection. Lacks foundation and hearsay. |

| | |
|---|---|
| requested and received at least two upgrades to first class and there were no charges. He requested several other first-class upgrades and paid no charges for upgrades or flight changes.<br><br>Plaintiff's depo. 595:25; 596:10-12; 599:1-6; 599:25; 600:3 | (Evid. Code §§ 403, 702 and 1200.) |
| 78. Authority Vice-President Vernon Evans repeatedly requested changes in flight schedules no less than 15-20 times in the last two years. Ted Sexton told Hernandez to "do whatever you can." Sexton knew the changes were at no cost. Hernandez asked Sexton if it was okay to change Evans' tickets at the time.<br><br>Plaintiff's depo. 604:5-11; 604:12-25; 605:18-23; 607:8-12; 608:6-10; 609:8-18; 610:1-13; 612:17-21 | Objection. Hearsay and lacks foundation. (Evid. Code §§ 403 and 1200.) |
| 79. Thella Bowens requested two free airline tickets from Hawaiian Airlines and from Southwest Airlines because she was on the board of United Way. The tickets were all donated to the Authority.<br><br>Plaintiff's depo. 619:12-17; 619:22-23; 620:19-21; 621:9-11 | Objection. Lacks foundation and personal knowledge; hearsay. (Evid. Code §§ 403, 702 and 1200.) Hernandez testified that Bowens never asked him directly for any airline benefits. (Hernandez Depo. 549:8-10 [Exh. 2].) |
| 80. There was a power struggle between Bryan Enarson and Ted Sexton. Enarson had more control and had one ear of Thella Bowens'.<br><br>Plaintiff's depo. 645:19-25; 646:1-2 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 81. Authority Vice-President Bryan Enarson requested free tickets, upgrades and special privileges from Hawaiian Airlines.<br><br>Plaintiff's depo. 687:4-15 | Objection. Hearsay; lacks foundation. (Evid. Code §§ 403, 702 and 1200.) Hernandez' only knowledge of Enarson's alleged tickets and upgrades comes from other people. (Hernandez Depo. 687:4-15 [Exh. 2].) Further, this fact is irrelevant because it does not state that Enarson actually received any of the alleged requested items. |

## GENERAL DYNAMICS DISCLOSURE:

**Adjudication No. 12: Hernandez' First Cause of Action under Labor Code section 1102.5,**

**insofar as it is based on any alleged disclosure regarding the General Dynamics' lease, fails**

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ    43

1   as a matter of law because Hernandez could not have had a reasonable belief that the

2   General Dynamics' lease was unlawful.

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 5. One of Hernandez' duties was the evaluation of a lease from the Port of property located on the north side of the Airport (General Dynamics property). The lease price contemplated the use of the property for parking, and revenues which would generate to the lease holder for 2100 stalls.<br><br>Decl. J. Hernandez ¶ 2, Plaintiff's depo. 387:11-21, 389:15-17, 396:1-8 | Not disputed for purposes of this motion only. |
| 6. Hernandez' understanding of the lease was that the lease price was set by code for the years 2003, 2004 and 2005, and was thereafter subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 2; PUC § 170056(f)(1-3); Plaintiff's depo. 396:1-8; 397:8-11 | Not disputed for purposes of this motion only. |
| 7. Hernandez conducted an evaluation of the cash flow of the property when the lease came up for renegotiation, and determined that deficiencies in the property prevented from generating sufficient revenue to cover the lease price by at least $2 million per year. The deficiency center on the discovery of toxic waste in the soil beneath the property which severely limited the development of the property for parking.<br><br>Decl. J. Hernandez ¶ 2; Plaintiff's depo. 397:3-7 | Objection. Improper opinion (Evid. Code § 800); lacks foundation (Evid. Code § 403). |

22   **Adjudication No. 13:** Hernandez' First Cause of Action under Labor Code section 1102.5,

23   insofar as it is based on any alleged disclosure regarding the General Dynamics' lease, fails

24   as a matter of law because Hernandez has not identified a state or federal statute, rule or

25   regulation of which he disclosed a violation.

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 5. One of Hernandez' duties was the | Not disputed for purposes of this motion only. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

44

| | |
|---|---|
| evaluation of a lease from the Port of property located on the north side of the Airport (General Dynamics property). The lease price contemplated the use of the property for parking, and revenues which would generate to the lease holder for 2100 stalls.<br><br>Decl. J. Hernandez ¶ 2, Plaintiff's depo. 387:11-21, 389:15-17, 396:1-8 | |
| 6.  Hernandez' understanding of the lease was that the lease price was set by code for the years 2003, 2004 and 2005, and was thereafter subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 2; PUC § 170056(f)(1-3); Plaintiff's depo. 396:1-8; 397:8-11 | Not disputed for purposes of this motion only. |
| 7.  Hernandez conducted an evaluation of the cash flow of the property when the lease came up for renegotiation, and determined that deficiencies in the property prevented from generating sufficient revenue to cover the lease price by at least $2 million per year. The deficiency center on the discovery of toxic waste in the soil beneath the property which severely limited the development of the property for parking.<br><br>Decl. J. Hernandez ¶ 2; Plaintiff's depo. 397:3-7 | Objection.  Improper opinion (Evid. Code § 800); lacks foundation (Evid. Code § 403). |

**Adjudication No. 14:**  Hernandez' First Cause of Action fails as matter of law, insofar as it is based on any alleged disclosure regarding the General Dynamics' lease, because there is no causal connection between his alleged protected activity and his termination.

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 5.  One of Hernandez' duties was the evaluation of a lease from the Port of property located on the north side of the Airport (General Dynamics property). The lease price contemplated the use of the property for parking, and revenues which would generate to the lease holder for 2100 stalls.<br><br>Decl. J. Hernandez ¶ 2, Plaintiff's depo. 387:11-21, 389:15-17, 396:1-8 | Not disputed for purposes of this motion only. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

45

69-881

| | |
|---|---|
| 6. Hernandez' understanding of the lease was that the lease price was set by code for the years 2003, 2004 and 2005, and was thereafter subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 2; PUC § 170056(f)(1-3); Plaintiff's depo. 396:1-8; 397:8-11 | Not disputed for purposes of this motion only. |
| 7. Hernandez conducted an evaluation of the cash flow of the property when the lease came up for renegotiation, and determined that deficiencies in the property prevented from generating sufficient revenue to cover the lease price by at least $2 million per year. The deficiency center on the discovery of toxic waste in the soil beneath the property which severely limited the development of the property for parking.<br><br>Decl. J. Hernandez ¶ 2; Plaintiff's depo. 397:3-7 | Objection. Improper opinion (Evid. Code § 800); lacks foundation (Evid. Code § 403). |
| 21. On November 2, 2005, Bowens engaged a law firm to investigate Hernandez for "ethics" violations associated with the receipt of benefits from the Authority's vendors. This was the first occasion in the history of the Authority that a law firm was retained to investigate an employee for alleged ethics violations.<br><br>Decl. J. Hernandez ¶ 7; Decl. P. Swan ¶ 3 | Objection. The second sentence lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.)<br><br>Hernandez' declaration does not state that this was the first time the Authority retained a law firm to investigate ethics violations. Rather, Hernandez states in his declaration that this was the first time *that he was aware of* that anyone was questioned regarding receipt of tickets. |
| 22. The law firm, per report submitted by Patrick Swan, Esq., concluded Hernandez received (1) free rounds of golf; (2) airline tickets to Hawaii; and (3) charger football tickets, the value of which placed Hernandez in violation of the Ethics Code applicable to Authority employees.<br><br>Decl. P. Swan | Objection to the extent that this is a partial and incomplete summary of the findings in the report. |
| 23. Bowens claims to have terminated Hernandez' employment based on the conclusions in the report.<br><br>Decl. T. Bowens ¶ 9 | Not disputed for purposes of this motion. |
| 24. With regard to the "free rounds of golf," Hernandez cleared the trip with his boss, Sexton, before going, after disclosing the nature of the outing and that the golf rounds | Objection. Irrelevant. (Evid. Code § 350.) |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

46

| | |
|---|---|
| were supplied by Mike Parrish.<br><br>Decl. J. Hernandez ¶ 9; Plaintiff's depo. 158:18-22; 168:5-24 | |
| 25. In the process, Sexton admitted he had attended the same golf outing under similar circumstances.<br><br>Decl. J. Hernandez ¶ 9 | Objection. Hearsay. (Evid. Code § 1200.) |
| 26. Hernandez compensated Parrish for the round by buying Parrish's lunch and dinner and by making gift contributions for the raffle. The net personal value to Hernandez was negative by over $200.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Plaintiff's depo. 159:14-19; 163:3-13; 164:10-14 | Objection. Lacks foundation; irrelevant. (Evid. Code §§ 350 and 403.)<br><br>The declaration of Pat Swan does not establish the alleged fact presented. |
| 27. Hernandez had a strong social relationship with Parrish, which included joint family outings and gatherings, dinners, barbecues and sporting events.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Decl. M. Parrish ¶ 2 | Not disputed for purposes of this motion. |
| 28. With regard to the Hawaii ticket, ticketing benefits were regarded by management as normal benefit of their workplace, and that Sexton assigned Hernandez responsibility on frequent occasions to obtain ticket upgrades for various employees and board members. Hernandez specifically discussed whether the practice was ethically acceptable and Sexton replied it was.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 240:1-25; 602:20-25; 609:1-611:25 | Objection. Lacks foundation and is vague as to who in "management" regarded ticketing benefits as a normal benefit of the workplace. (Evid. Code § 403.) Further, none of the cited evidence states that ticketing benefits were a normal benefit of the workplace, or that Hernandez discussed whether the practice was ethically acceptable.<br><br>Hearsay. (Evid. Code § 1200.) |
| 29. Notwithstanding the practice among Hernandez' superiors to receive passes and upgrades, Hernandez' receipt of those benefits was limited to gifts from personal friends. The tickets on Southwest came from Parrish. The tickets on Hawaiian Air came from Janet Nix, another personal friend, who told him she gave tickets like those to all kinds of friends having nothing to do with business.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 199:3-22; Decl. M. Parrish ¶ | Objection. Improper argument and opinion; lacks foundation. (Evid. Code §§ 403 and 800.) Further, although Hernandez may have received benefits from friends, those friends were also employees of the Authority's vendors. (Hernandez Depo. 191:8-20; 198:8-200:17; 280:1-14; and 281:6-12 [Exh. 1].) |

69-883

| | |
|---|---|
| 3 | |
| 30. Moreover, the Hawaiian tickets were listed as "space available" and further identified as having "no dollar value" and could not be transferred or redeemed.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; ; Plaintiff's Depo. 280:15-20, 23-25; 281:1-2; Decl. M. Parrish par. 3 | Objection.  Hearsay.    (Evid. Code § 1200.)<br>Lacks foundation.  (Evid. Code § 403.) |
| 31. With regard to the football tickets, ACE parking did not have a contractor or vendor agreement of any sort with the Authority.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan; Plaintiff's Depo. 268:1-4; 272:5-9 | Objection.  Lacks foundation.  Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].)  Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority.  (*Id.* at 127:19-22.)  Scott Jones, the owner of Ace Parking, is a 40% owner of LPi.  (*Id.* at 75:18-19, 127:10-128:2.) |
| 32. Hernandez had a longstanding friendship with the ACE Parking manager who invited him to the game which preceded Hernandez' employment with the Authority.  They were friends from Hernandez' prior employment relationship with ACE Parking.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan | Not disputed for purposes of this motion only. |
| 33. During Swan's interviews with Hernandez, he expressed no interest in the fact that Parrish and Hernandez were close personal friends.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay.  (Evid. Code § 1200.) |
| 34. He avoided discussion of the tendency of other employees such as Bowens and Sexton to make active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars.<br><br>Decl. J. Hernandez ¶ 13 | Objection.  Vague as to "he."  Hearsay.  (Evid. Code § 1200.)<br><br>Lacks foundation.  (Evid. Code § 403.)  Hernandez has not established that employees "made active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars." |
| 35. When Hernandez attempted to explain these friendships and practices, Swan cut him off and would state that he was not interested in the nature of those friendships and what the office practice was.<br><br>Decl. J. Hernandez ¶ 13 | Objection.  Hearsay.  (Evid. Code § 1200.) |

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

48

69-884

| | |
|---|---|
| 36. Hernandez had previously received outstanding performance evaluations.<br><br>Decl. J Hernandez ¶ 14; Plaintiff's Depo. 786:9-18 | Not disputed for purposes of this motion only. |
| 37. The Authority did, in fact, have a progressive disciplinary policy set forth in writing, which emphasizes the Authority's commitment to preserve employment through pre-termination warnings and training.<br><br>Decl. J. Hernandez ¶ 14; Plaintiff's Depo. 317:14-16 | This "fact" is contrary to Hernandez' own testimony and thus cannot create a triable issue of fact. (D'Amico, supra, 11 Cal.3d at p. 21-22.) Hernandez admitted in his deposition that he was an at-will employee and that he could be terminated at any time, with or without cause. (Hernandez Depo. 115:21-116:6; Exh. 16.) If he could be terminated at any time, then the Authority was under no obligation to progressively discipline Hernandez. Further, this fact lacks foundation because the cited testimony does not establish that the alleged policy is in writing. |
| 38. That the Authority failed to adhere to this policy and instead routed the matter to an expensive and contentious law firm is a truly extraordinary decision.<br><br>Decl. J. Hernandez ¶ 14 | Objection. Lacks foundation. |
| 39. Ace Parking did not have a direct service agreement with the Airport Authority. Ace did not have any sort of a business relationship with the Airport Authority.<br><br>Plaintiff's depo. 149:15-20; 150:20-25 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (Id. at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (Id. at 75:18-19, 127:10-128:2.) |
| 41. Ted Sexton told Hernandez it would be okay to go to the Southwest Airline Golf Tournaments. Sexton knew he was a guest of Southwest's.<br><br>Plaintiff's depo. 158:18-22; 168:5-8, 12-13, 18, 21-24 | Objection. Lacks foundation. (Evid. Code § 403.) Hearsay. (Evid. Code § 1200.) |
| 42. Hernandez had absolutely never received free food from the concessions in the Airport terminals.<br><br>Plaintiff's depo. 201:16-18 | Not disputed for purposes of this motion only. |
| 44. Ted Sexton told Hernandez to write everything on the form, whether he thought it proper to do so or not. | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.) |

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

69-885

| | |
|---|---|
| Plaintiff's depo. 293:14-20 | |
| 74. Hernandez requested ticket changes for Thella Bowens over five times. He did no less than five different itinerary changes, plus date changes and time changes. The airlines' charges for itinerary and date changes range between $50 to $100 per boarding document. Thella Bowens was not charged by the airlines for the changes. Thella could have changed her tickets by simply calling reservations.<br><br>Plaintiff's depo. 550:15-551:1, 6-8; 551:21-22; 554:1-10 | Objection. Irrelevant; hearsay; improper opinion; lacks foundation and personal knowledge. (Evid. Code §§ 350, 403, 702 and 1200.)<br><br>Hernandez testified that Bowens never directly asked him for an upgrade or flight change. (Hernandez Depo. 549:8-10 [Exh. 2].) This statement also lacks foundation as to how much and whether an airline charges for changes and upgrades. |
| 75. Ted Sexton instructed Hernandez that he should get Thella access to premier airline lounges so she wouldn't have to wait in the public waiting rooms. Sexton requested that even for the briefest moments if the plane was late to have Thella sit in the lounge.<br><br>Plaintiff's depo. 556:19-23; 558:18-24; 559:2-7 | Objection. Irrelevant and hearsay. (Evid. Code §§ 350 and 1200.) |
| 76. Ted Sexton asked if special privileges could be obtained for Thella Bowens' sister.<br><br>Plaintiff's depo. 561:1-25 | Objection. Vague; hearsay. (Evid. Code § 1200.) |
| 77. Authority board member Morris Vance requested and received at least two upgrades to first class and there were no charges. He requested several other first-class upgrades and paid no charges for upgrades or flight changes.<br><br>Plaintiff's depo. 595:25; 596:10-12; 599:1-6; 599:25; 600:3 | Objection. Lacks foundation and hearsay. (Evid. Code §§ 403, 702 and 1200.) |
| 78. Authority Vice-President Vernon Evans repeatedly requested changes in flight schedules no less than 15-20 times in the last two years. Ted Sexton told Hernandez to "do whatever you can." Sexton knew the changes were at no cost. Hernandez asked Sexton if it was okay to change Evans' tickets at the time.<br><br>Plaintiff's depo. 604:5-11; 604:12-25; 605:18-23; 607:8-12; 608:6-10; 609:8-18; 610:1-13; 612:17-21 | Objection. Hearsay and lacks foundation. (Evid. Code §§ 403 and 1200.) |
| 79. Thella Bowens requested two free airline tickets from Hawaiian Airlines and from | Objection. Lacks foundation and personal knowledge; hearsay. (Evid. Code §§ 403, 702 |

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

| | |
|---|---|
| Southwest Airlines because she was on the board of United Way. The tickets were all donated to the Authority.<br><br>Plaintiff's depo. 619:12-17; 619:22-23; 620:19-21; 621:9-11 | and 1200.) Hernandez testified that Bowens never asked him directly for any airline benefits. (Hernandez Depo. 549:8-10 [Exh. 2].) |
| 80. There was a power struggle between Bryan Enarson and Ted Sexton. Enarson had more control and had one ear of Thella Bowens'.<br><br>Plaintiff's depo. 645:19-25; 646:1-2 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 81. Authority Vice-President Bryan Enarson requested free tickets, upgrades and special privileges from Hawaiian Airlines.<br><br>Plaintiff's depo. 687:4-15 | Objection. Hearsay; lacks foundation. (Evid. Code §§ 403, 702 and 1200.) Hernandez' only knowledge of Enarson's alleged tickets and upgrades comes from other people. (Hernandez Depo. 687:4-15 [Exh. 2].) Further, this fact is irrelevant because it does not state that Enarson actually received any of the alleged requested items. |

**Teledyne Ryan Disclosure:**

**Adjudication No. 15:  Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the Teledyne Ryan lease, fails as a matter of law because Hernandez could not have had a reasonable belief that the Teledyne Ryan lease was unlawful.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 10. Another of Hernandez' duties was the evaluation of a lease from the Port of property located at the west side of the Airport. (The Teledyne Ryan property) The lease of that property likewise contemplated the generation of revenues to cover the lease through its use as a parking lot. The lease had been negotiated by Enarson and was not subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 388:8-12 | Not disputed for purposes of this motion only. |
| 11. Hernandez discovered this property was likewise contaminated and only a small portion of it was usable.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. | Not disputed for purposes of this motion only. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

51

69-887

| | |
|---|---|
| 389:19-22, 390:3-5, 396:20-25 | |
| 12. The contamination was grossly understated by the Port as a $10 million expense (which the Port agreed to pay) when the real cost of remediation was in excess of $30 million.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 407:2-408:2, 409:3-6 | Objection. Lacks foundation (Evid. Code § 403); improper opinion (Evid. Code § 800). |

**Adjudication No. 16: Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the Teledyne Ryan lease, fails as a matter of law because Hernandez has not identified a state or federal statute, rule or regulation of which he disclosed a violation.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 10. Another of Hernandez' duties was the evaluation of a lease from the Port of property located at the west side of the Airport. (The Teledyne Ryan property) The lease of that property likewise contemplated the generation of revenues to cover the lease through its use as a parking lot. The lease had been negotiated by Enarson and was not subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 388:8-12 | Not disputed for purposes of this motion only. |
| 11. Hernandez discovered this property was likewise contaminated and only a small portion of it was usable.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 389:19-22, 390:3-5, 396:20-25 | Not disputed for purposes of this motion only. |
| 12. The contamination was grossly understated by the Port as a $10 million expense (which the Port agreed to pay) when the real cost of remediation was in excess of $30 million.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 407:2-408:2, 409:3-6 | Objection. Lacks foundation (Evid. Code § 403); improper opinion (Evid. Code § 800). |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

52

69-888

**Adjudication No. 17: Hernandez' First Cause of Action fails as matter of law, insofar as it is based on any alleged disclosure regarding the Teledyne Ryan lease, because there is no causal connection between his alleged protected activity and his termination.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
| --- | --- |
| 10. Another of Hernandez' duties was the evaluation of a lease from the Port of property located at the west side of the Airport. (The Teledyne Ryan property) The lease of that property likewise contemplated the generation of revenues to cover the lease through its use as a parking lot. The lease had been negotiated by Enarson and was not subject to renegotiation.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 388:8-12 | Not disputed for purposes of this motion only. |
| 11. Hernandez discovered this property was likewise contaminated and only a small portion of it was usable.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 389:19-22, 390:3-5, 396:20-25 | Not disputed for purposes of this motion only. |
| 12. The contamination was grossly understated by the Port as a $10 million expense (which the Port agreed to pay) when the real cost of remediation was in excess of $30 million.<br><br>Decl. J. Hernandez ¶ 4; Plaintiff's depo. 407:2-408:2, 409:3-6 | Objection. Lacks foundation (Evid. Code § 403); improper opinion (Evid. Code § 800). |
| 21. On November 2, 2005, Bowens engaged a law firm to investigate Hernandez for "ethics" violations associated with the receipt of benefits from the Authority's vendors. This was the first occasion in the history of the Authority that a law firm was retained to investigate an employee for alleged ethics violations.<br><br>Decl. J. Hernandez ¶ 7; Decl. P. Swan ¶ 3 | Objection. The second sentence lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.)<br><br>Hernandez' declaration does not state that this was the first time the Authority retained a law firm to investigate ethics violations. Rather, Hernandez states in his declaration that this was the first time *that he was aware of* that anyone was questioned regarding receipt of tickets. |
| 22. The law firm, per report submitted by Patrick Swan, Esq., concluded Hernandez received (1) free rounds of golf; (2) airline | Objection to the extent that this is a partial and incomplete summary of the findings in the report. |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

53

| | |
|---|---|
| tickets to Hawaii; and (3) charger football tickets, the value of which placed Hernandez in violation of the Ethics Code applicable to Authority employees.<br><br>Decl. P. Swan | |
| 23. Bowens claims to have terminated Hernandez' employment based on the conclusions in the report.<br><br>Decl. T. Bowens ¶ 9 | Not disputed for purposes of this motion. |
| 24. With regard to the "free rounds of golf," Hernandez cleared the trip with his boss, Sexton, before going, after disclosing the nature of the outing and that the golf rounds were supplied by Mike Parrish.<br><br>Decl. J. Hernandez ¶ 9; Plaintiff's depo. 158:18-22; 168:5-24 | Objection.  Irrelevant.  (Evid. Code § 350.) |
| 25. In the process, Sexton admitted he had attended the same golf outing under similar circumstances.<br><br>Decl. J. Hernandez ¶ 9 | Objection.  Hearsay.  (Evid. Code § 1200.) |
| 26. Hernandez compensated Parrish for the round by buying Parrish's lunch and dinner and by making gift contributions for the raffle. The net personal value to Hernandez was negative by over $200.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Plaintiff's depo. 159:14-19; 163:3-13; 164:10-14 | Objection.  Lacks foundation; irrelevant. (Evid. Code §§ 350 and 403.)<br><br>The declaration of Pat Swan does not establish the alleged fact presented. |
| 27. Hernandez had a strong social relationship with Parrish, which included joint family outings and gatherings, dinners, barbecues and sporting events.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Decl. M. Parrish ¶ 2 | Not disputed for purposes of this motion. |
| 28. With regard to the Hawaii ticket, ticketing benefits were regarded by management as normal benefit of their workplace, and that Sexton assigned Hernandez responsibility on frequent occasions to obtain ticket upgrades for various employees and board members. Hernandez specifically discussed whether the practice was ethically acceptable and Sexton replied it was. | Objection.  Lacks foundation and is vague as to who in "management" regarded ticketing benefits as a normal benefit of the workplace. (Evid. Code § 403.)  Further, none of the cited evidence states that ticketing benefits were a normal benefit of the workplace, or that Hernandez discussed whether the practice was ethically acceptable. |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

54

| | |
|---|---|
| Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 240:1-25; 602:20-25; 609:1-611:25 | Hearsay. (Evid. Code § 1200.) |
| 29. Notwithstanding the practice among Hernandez' superiors to receive passes and upgrades, Hernandez' receipt of those benefits was limited to gifts from personal friends. The tickets on Southwest came from Parrish. The tickets on Hawaiian Air came from Janet Nix, another personal friend, who told him she gave tickets like those to all kinds of friends having nothing to do with business.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 199:3-22; Decl. M. Parrish ¶ 3 | Objection. Improper argument and opinion; lacks foundation. (Evid. Code §§ 403 and 800.) Further, although Hernandez may have received benefits from friends, those friends were also employees of the Authority's vendors. (Hernandez Depo. 191:8-20; 198:8-200:17; 280:1-14; and 281:6-12 [Exh. 1].) |
| 30. Moreover, the Hawaiian tickets were listed as "space available" and further identified as having "no dollar value" and could not be transferred or redeemed.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; ; Plaintiff's Depo. 280:15-20, 23-25; 281:1-2; Decl. M. Parrish par. 3 | Objection. Hearsay. (Evid. Code § 1200.) Lacks foundation. (Evid. Code § 403.) |
| 31. With regard to the football tickets, ACE parking did not have a contractor or vendor agreement of any sort with the Authority.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan; Plaintiff's Depo. 268:1-4; 272:5-9 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (Id. at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (Id. at 75:18-19, 127:10-128:2.) |
| 32. Hernandez had a longstanding friendship with the ACE Parking manager who invited him to the game which preceded Hernandez' employment with the Authority. They were friends from Hernandez' prior employment relationship with ACE Parking.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan | Not disputed for purposes of this motion only. |
| 33. During Swan's interviews with Hernandez, he expressed no interest in the fact that Parrish and Hernandez were close personal friends.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

55

**69-891**

| | |
|---|---|
| 34. He avoided discussion of the tendency of other employees such as Bowens and Sexton to make active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.)<br><br>Lacks foundation. (Evid. Code § 403.) Hernandez has not established that employees "made active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars." |
| 35. When Hernandez attempted to explain these friendships and practices, Swan cut him off and would state that he was not interested in the nature of those friendships and what the office practice was.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 36. Hernandez had previously received outstanding performance evaluations.<br><br>Decl. J Hernandez ¶ 14; Plaintiff's Depo. 786:9-18 | Not disputed for purposes of this motion only. |
| 37. The Authority did, in fact, have a progressive disciplinary policy set forth in writing, which emphasizes the Authority's commitment to preserve employment through pre-termination warnings and training.<br><br>Decl. J. Hernandez ¶ 14; Plaintiff's Depo. 317:14-16 | This "fact" is contrary to Hernandez' own testimony and thus cannot create a triable issue of fact. (*D'Amico, supra,* 11 Cal.3d at p. 21-22.) Hernandez admitted in his deposition that he was an at-will employee and that he could be terminated at any time, with or without cause. (Hernandez Depo. 115:21-116:6; Exh. 16.) If he could be terminated at any time, then the Authority was under no obligation to progressively discipline Hernandez. Further, this fact lacks foundation because the cited testimony does not establish that the alleged policy is in writing. |
| 38. That the Authority failed to adhere to this policy and instead routed the matter to an expensive and contentious law firm is a truly extraordinary decision.<br><br>Decl. J. Hernandez ¶ 14 | Objection. Lacks foundation. |
| 39. Ace Parking did not have a direct service agreement with the Airport Authority. Ace did not have any sort of a business relationship with the Airport Authority.<br><br>Plaintiff's depo. 149:15-20; 150:20-25 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

56

69-892

| | |
|---|---|
| 41. Ted Sexton told Hernandez it would be okay to go to the Southwest Airline Golf Tournaments.  Sexton knew he was a guest of Southwest's.<br><br>Plaintiff's depo. 158:18-22; 168:5-8, 12-13, 18, 21-24 | Objection. Lacks foundation.  (Evid. Code § 403.)  Hearsay.  (Evid. Code § 1200.) |
| 42. Hernandez had absolutely never received free food from the concessions in the Airport terminals.<br><br>Plaintiff's depo. 201:16-18 | Not disputed for purposes of this motion only. |
| 44. Ted Sexton told Hernandez to write everything on the form, whether he thought it proper to do so or not.<br><br>Plaintiff's depo. 293:14-20 | Objection.  Vague as to "he." Hearsay. (Evid. Code § 1200.) |
| 74. Hernandez requested ticket changes for Thella Bowens over five times.  He did no less than five different itinerary changes, plus date changes and time changes.  The airlines' charges for itinerary and date changes range between $50 to $100 per boarding document.  Thella Bowens was not charged by the airlines for the changes.  Thella could have changed her tickets by simply calling reservations.<br><br>Plaintiff's depo. 550:15-551:1, 6-8; 551:21-22; 554:1-10 | Objection.  Irrelevant; hearsay; improper opinion; lacks foundation and personal knowledge.  (Evid. Code §§ 350, 403, 702 and 1200.)<br><br>Hernandez testified that Bowens never directly asked him for an upgrade or flight change. (Hernandez Depo. 549:8-10 [Exh. 2].)  This statement also lacks foundation as to how much and whether an airline charges for changes and upgrades. |
| 75. Ted Sexton instructed Hernandez that he should get Thella access to premier airline lounges so she wouldn't have to wait in the public waiting rooms.  Sexton requested that even for the briefest moments if the plane was late to have Thella sit in the lounge.<br><br>Plaintiff's depo. 556:19-23; 558:18-24; 559:2-7 | Objection.  Irrelevant and hearsay.  (Evid. Code §§ 350 and 1200.) |
| 76. Ted Sexton asked if special privileges could be obtained for Thella Bowens' sister.<br><br>Plaintiff's depo. 561:1-25 | Objection.  Vague; hearsay.  (Evid. Code § 1200.) |
| 77. Authority board member Morris Vance requested and received at least two upgrades to first class and there were no charges.  He requested several other first-class upgrades and paid no charges for upgrades or flight changes. | Objection.  Lacks foundation and hearsay. (Evid. Code §§ 403, 702 and 1200.) |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

57

**69-893**

| | |
|---|---|
| Plaintiff's depo. 595:25; 596:10-12; 599:1-6; 599:25; 600:3 | |
| 78. Authority Vice-President Vernon Evans repeatedly requested changes in flight schedules no less than 15-20 times in the last two years. Ted Sexton told Hernandez to "do whatever you can." Sexton knew the changes were at no cost. Hernandez asked Sexton if it was okay to change Evans' tickets at the time.<br><br>Plaintiff's depo. 604:5-11; 604:12-25; 605:18-23; 607:8-12; 608:6-10; 609:8-18; 610:1-13; 612:17-21 | Objection. Hearsay and lacks foundation. (Evid. Code §§ 403 and 1200.) |
| 79. Thella Bowens requested two free airline tickets from Hawaiian Airlines and from Southwest Airlines because she was on the board of United Way. The tickets were all donated to the Authority.<br><br>Plaintiff's depo. 619:12-17; 619:22-23; 620:19-21; 621:9-11 | Objection. Lacks foundation and personal knowledge; hearsay. (Evid. Code §§ 403, 702 and 1200.) Hernandez testified that Bowens never asked him directly for any airline benefits. (Hernandez Depo. 549:8-10 [Exh. 2].) |
| 80. There was a power struggle between Bryan Enarson and Ted Sexton. Enarson had more control and had one ear of Thella Bowens'.<br><br>Plaintiff's depo. 645:19-25; 646:1-2 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 81. Authority Vice-President Bryan Enarson requested free tickets, upgrades and special privileges from Hawaiian Airlines.<br><br>Plaintiff's depo. 687:4-15 | Objection. Hearsay; lacks foundation. (Evid. Code §§ 403, 702 and 1200.) Hernandez' only knowledge of Enarson's alleged tickets and upgrades comes from other people. (Hernandez Depo. 687:4-15 [Exh. 2].) Further, this fact is irrelevant because it does not state that Enarson actually received any of the alleged requested items. |

### RESTROOM PROJECT DISCLOSURE:

**Adjudication No. 18: Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the restroom project, fails as a matter of law because Hernandez could not have had a reasonable belief that the restroom project was unlawful.**

| Plaintiff's Additional Undisputed Facts and | Authority's Response and Supporting |
|---|---|

| Supporting Evidence | Evidence |
|---|---|
| 14. Another of Hernandez' duties was to oversee the construction and/or maintenance of public facilities at the terminals, including public restrooms. Hernandez attempted to expand the size of the public restrooms to alleviate overcrowding in the east terminal and bring them into compliance with the state requirements that they be accessible by wheel chair, as required by the Americans with Disabilities Act (ADA).<br><br>Decl. J. Hernandez ¶5; Plaintiff's depo. 349:23-350:5, 352:3-353:8, 336:20-21, 337:17-19 | Not disputed for purposes of this motion only. |
| 15. He needed to annex 30 sq. ft. space from a concessionaire in order to comply with ADA requirements, but was told he could not do so by Enarson because Enarson had made handshake agreements with the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. 333:10-17, 335:4-8, 339:6-8, 336:20-21, 343:20-25 | Objection. Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Improper Legal Conclusion. (Evid. Code § 800); Hearsay. (Evid. Code § 1200.) Vague as to "he". |

**Adjudication No. 19:  Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the restroom project, fails as a matter of law because Hernandez admits that the Authority did not violate the ADA, nor did it express its intention to violate the ADA.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 14. Another of Hernandez' duties was to oversee the construction and/or maintenance of public facilities at the terminals, including public restrooms. Hernandez attempted to expand the size of the public restrooms to alleviate overcrowding in the east terminal and bring them into compliance with the state requirements that they be accessible by wheel chair, as required by the Americans with Disabilities Act (ADA).<br><br>Decl. J. Hernandez ¶5; Plaintiff's depo. 349:23-350:5, 352:3-353:8, 336:20-21, | Not disputed for purposes of this motion only. |

| 337:17-19 | |
|---|---|
| 15. He needed to annex 30 sq. ft. space from a concessionaire in order to comply with ADA requirements, but was told he could not do so by Enarson because Enarson had made handshake agreements with the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. 333:10-17, 335:4-8, 339:6-8, 336:20-21, 343:20-25 | Objection. Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Improper Legal Conclusion. (Evid. Code § 800); Hearsay. (Evid. Code § 1200.) Vague as to "he". |

**Adjudication No. 20: Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding the restroom project, fails as a matter of law because Hernandez has not identified a state or federal statute, rule or regulation of which he disclosed a violation.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 14. Another of Hernandez' duties was to oversee the construction and/or maintenance of public facilities at the terminals, including public restrooms. Hernandez attempted to expand the size of the public restrooms to alleviate overcrowding in the east terminal and bring them into compliance with the state requirements that they be accessible by wheel chair, as required by the Americans with Disabilities Act (ADA).<br><br>Decl. J. Hernandez ¶5; Plaintiff's depo. 349:23-350:5, 352:3-353:8, 336:20-21, 337:17-19 | Not disputed for purposes of this motion only. |
| 15. He needed to annex 30 sq. ft. space from a concessionaire in order to comply with ADA requirements, but was told he could not do so by Enarson because Enarson had made handshake agreements with the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. 333:10-17, 335:4-8, 339:6-8, 336:20-21, 343:20-25 | Objection. Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Improper Legal Conclusion. (Evid. Code § 800); Hearsay. (Evid. Code § 1200.) Vague as to "he". |

**Adjudication No. 21: Hernandez' First Cause of Action, insofar as it is based on any alleged**

OPPOSITION TO PLAINTIFF'S SEPARATE STATEMENT OF ADDITIONAL UNDISPUTED MATERIAL FACTS RE MSJ

60

**69-896**

disclosure regarding the restroom project, fails as matter of law because there is no causal connection between his alleged protected activity and his termination.

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 14. Another of Hernandez' duties was to oversee the construction and/or maintenance of public facilities at the terminals, including public restrooms. Hernandez attempted to expand the size of the public restrooms to alleviate overcrowding in the east terminal and bring them into compliance with the state requirements that they be accessible by wheel chair, as required by the Americans with Disabilities Act (ADA).<br><br>Decl. J. Hernandez ¶5; Plaintiff's depo. 349:23-350:5, 352:3-353:8, 336:20-21, 337:17-19 | Not disputed for purposes of this motion only. |
| 15. He needed to annex 30 sq. ft. space from a concessionaire in order to comply with ADA requirements, but was told he could not do so by Enarson because Enarson had made handshake agreements with the concessionaires.<br><br>Decl. J. Hernandez ¶ 5; Plaintiff's depo. 333:10-17, 335:4-8, 339:6-8, 336:20-21, 343:20-25 | Objection. Lacks Foundation. (Evid. Code § 403.) Lacks Personal Knowledge. (Evid. Code § 702.) Improper Legal Conclusion. (Evid. Code § 800); Hearsay. (Evid. Code § 1200.) Vague as to "he". |
| 21. On November 2, 2005, Bowens engaged a law firm to investigate Hernandez for "ethics" violations associated with the receipt of benefits from the Authority's vendors. This was the first occasion in the history of the Authority that a law firm was retained to investigate an employee for alleged ethics violations.<br><br>Decl. J. Hernandez ¶ 7; Decl. P. Swan ¶ 3 | Objection. The second sentence lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.)<br><br>Hernandez' declaration does not state that this was the first time the Authority retained a law firm to investigate ethics violations. Rather, Hernandez states in his declaration that this was the first time *that he was aware of* that anyone was questioned regarding receipt of tickets. |
| 22. The law firm, per report submitted by Patrick Swan, Esq., concluded Hernandez received (1) free rounds of golf; (2) airline tickets to Hawaii; and (3) charger football tickets, the value of which placed Hernandez in violation of the Ethics Code applicable to Authority employees.<br><br>Decl. P. Swan | Objection to the extent that this is a partial and incomplete summary of the findings in the report. |

69-897

| | |
|---|---|
| 23. Bowens claims to have terminated Hernandez' employment based on the conclusions in the report.<br><br>Decl. T. Bowens ¶ 9 | Not disputed for purposes of this motion. |
| 24. With regard to the "free rounds of golf," Hernandez cleared the trip with his boss, Sexton, before going, after disclosing the nature of the outing and that the golf rounds were supplied by Mike Parrish.<br><br>Decl. J. Hernandez ¶ 9; Plaintiff's depo. 158:18-22; 168:5-24 | Objection. Irrelevant. (Evid. Code § 350.) |
| 25. In the process, Sexton admitted he had attended the same golf outing under similar circumstances.<br><br>Decl. J. Hernandez ¶ 9 | Objection. Hearsay. (Evid. Code § 1200.) |
| 26. Hernandez compensated Parrish for the round by buying Parrish's lunch and dinner and by making gift contributions for the raffle. The net personal value to Hernandez was negative by over $200.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Plaintiff's depo. 159:14-19; 163:3-13; 164:10-14 | Objection. Lacks foundation; irrelevant. (Evid. Code §§ 350 and 403.)<br><br>The declaration of Pat Swan does not establish the alleged fact presented. |
| 27. Hernandez had a strong social relationship with Parrish, which included joint family outings and gatherings, dinners, barbecues and sporting events.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Decl. M. Parrish ¶ 2 | Not disputed for purposes of this motion. |
| 28. With regard to the Hawaii ticket, ticketing benefits were regarded by management as normal benefit of their workplace, and that Sexton assigned Hernandez responsibility on frequent occasions to obtain ticket upgrades for various employees and board members. Hernandez specifically discussed whether the practice was ethically acceptable and Sexton replied it was.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 240:1-25; 602:20-25; 609:1-611:25 | Objection. Lacks foundation and is vague as to who in "management" regarded ticketing benefits as a normal benefit of the workplace. (Evid. Code § 403.) Further, none of the cited evidence states that ticketing benefits were a normal benefit of the workplace, or that Hernandez discussed whether the practice was ethically acceptable.<br><br>Hearsay. (Evid. Code § 1200.) |
| 29. Notwithstanding the practice among | Objection. Improper argument and opinion; |

| | |
|---|---|
| Hernandez' superiors to receive passes and upgrades, Hernandez' receipt of those benefits was limited to gifts from personal friends. The tickets on Southwest came from Parrish. The tickets on Hawaiian Air came from Janet Nix, another personal friend, who told him she gave tickets like those to all kinds of friends having nothing to do with business.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 199:3-22; Decl. M. Parrish ¶ 3 | lacks foundation. (Evid. Code §§ 403 and 800.) Further, although Hernandez may have received benefits from friends, those friends were also employees of the Authority's vendors. (Hernandez Depo. 191:8-20; 198:8-200:17; 280:1-14; and 281:6-12 [Exh. 1].) |
| 30. Moreover, the Hawaiian tickets were listed as "space available" and further identified as having "no dollar value" and could not be transferred or redeemed.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; ; Plaintiff's Depo. 280:15-20, 23-25; 281:1-2; Decl. M. Parrish par. 3 | Objection. Hearsay.  (Evid. Code § 1200.) Lacks foundation. (Evid. Code § 403.) |
| 31. With regard to the football tickets, ACE parking did not have a contractor or vendor agreement of any sort with the Authority.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan; Plaintiff's Depo. 268:1-4; 272:5-9 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (Id. at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (Id. at 75:18-19, 127:10-128:2.) |
| 32. Hernandez had a longstanding friendship with the ACE Parking manager who invited him to the game which preceded Hernandez' employment with the Authority. They were friends from Hernandez' prior employment relationship with ACE Parking.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan | Not disputed for purposes of this motion only. |
| 33. During Swan's interviews with Hernandez, he expressed no interest in the fact that Parrish and Hernandez were close personal friends.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 34. He avoided discussion of the tendency of other employees such as Bowens and Sexton to make active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars. | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.)<br><br>Lacks foundation. (Evid. Code § 403.) Hernandez has not established that employees "made active and aggressive use of their |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

63

69-899

| | |
|---|---|
| Decl. J. Hernandez ¶ 13 | positions to acquire ticketing upgrades and benefits worth thousands of dollars." |
| 35. When Hernandez attempted to explain these friendships and practices, Swan cut him off and would state that he was not interested in the nature of those friendships and what the office practice was.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 36. Hernandez had previously received outstanding performance evaluations.<br><br>Decl. J Hernandez ¶ 14; Plaintiff's Depo. 786:9-18 | Not disputed for purposes of this motion only. |
| 37. The Authority did, in fact, have a progressive disciplinary policy set forth in writing, which emphasizes the Authority's commitment to preserve employment through pre-termination warnings and training.<br><br>Decl. J. Hernandez ¶ 14; Plaintiff's Depo. 317:14-16 | This "fact" is contrary to Hernandez' own testimony and thus cannot create a triable issue of fact. (*D'Amico, supra,* 11 Cal.3d at p. 21-22.) Hernandez admitted in his deposition that he was an at-will employee and that he could be terminated at any time, with or without cause. (Hernandez Depo. 115:21-116:6; Exh. 16.) If he could be terminated at any time, then the Authority was under no obligation to progressively discipline Hernandez. Further, this fact lacks foundation because the cited testimony does not establish that the alleged policy is in writing. |
| 38. That the Authority failed to adhere to this policy and instead routed the matter to an expensive and contentious law firm is a truly extraordinary decision.<br><br>Decl. J. Hernandez ¶ 14 | Objection. Lacks foundation. |
| 39. Ace Parking did not have a direct service agreement with the Airport Authority. Ace did not have any sort of a business relationship with the Airport Authority.<br><br>Plaintiff's depo. 149:15-20; 150:20-25 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 41. Ted Sexton told Hernandez it would be okay to go to the Southwest Airline Golf Tournaments. Sexton knew he was a guest of Southwest's.<br><br>Plaintiff's depo. 158:18-22; 168:5-8, 12-13, | Objection. Lacks foundation. (Evid. Code § 403.) Hearsay. (Evid. Code § 1200.) |

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

69-900

| | | |
|---|---|---|
| 1 | 18, 21-24 | |
| 2<br>3 | 42. Hernandez had absolutely never received free food from the concessions in the Airport terminals. | Not disputed for purposes of this motion only. |
| 4 | Plaintiff's depo. 201:16-18 | |
| 5<br>6<br>7 | 44. Ted Sexton told Hernandez to write everything on the form, whether he thought it proper to do so or not.<br><br>Plaintiff's depo. 293:14-20 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.) |
| 8<br>9<br>10<br>11<br>12<br>13<br>14 | 74. Hernandez requested ticket changes for Thella Bowens over five times. He did no less than five different itinerary changes, plus date changes and time changes. The airlines' charges for itinerary and date changes range between $50 to $100 per boarding document. Thella Bowens was not charged by the airlines for the changes. Thella could have changed her tickets by simply calling reservations.<br><br>Plaintiff's depo. 550:15-551:1, 6-8; 551:21-22; 554:1-10 | Objection. Irrelevant; hearsay; improper opinion; lacks foundation and personal knowledge. (Evid. Code §§ 350, 403, 702 and 1200.)<br><br>Hernandez testified that Bowens never directly asked him for an upgrade or flight change. (Hernandez Depo. 549:8-10 [Exh. 2].) This statement also lacks foundation as to how much and whether an airline charges for changes and upgrades. |
| 15<br>16<br>17<br>18<br>19 | 75. Ted Sexton instructed Hernandez that he should get Thella access to premier airline lounges so she wouldn't have to wait in the public waiting rooms. Sexton requested that even for the briefest moments if the plane was late to have Thella sit in the lounge.<br><br>Plaintiff's depo. 556:19-23; 558:18-24; 559:2-7 | Objection. Irrelevant and hearsay. (Evid. Code §§ 350 and 1200.) |
| 20<br>21 | 76. Ted Sexton asked if special privileges could be obtained for Thella Bowens' sister.<br><br>Plaintiff's depo. 561:1-25 | Objection. Vague; hearsay. (Evid. Code § 1200.) |
| 22<br>23<br>24<br>25<br>26 | 77. Authority board member Morris Vance requested and received at least two upgrades to first class and there were no charges. He requested several other first-class upgrades and paid no charges for upgrades or flight changes.<br><br>Plaintiff's depo. 595:25; 596:10-12; 599:1-6; 599:25; 600:3 | Objection. Lacks foundation and hearsay. (Evid. Code §§ 403, 702 and 1200.) |
| 27<br>28 | 78. Authority Vice-President Vernon Evans repeatedly requested changes in flight schedules no less than 15-20 times in the last | Objection. Hearsay and lacks foundation. (Evid. Code §§ 403 and 1200.) |

| | |
|---|---|
| two years. Ted Sexton told Hernandez to "do whatever you can." Sexton knew the changes were at no cost. Hernandez asked Sexton if it was okay to change Evans' tickets at the time.<br><br>Plaintiff's depo. 604:5-11; 604:12-25; 605:18-23; 607:8-12; 608:6-10; 609:8-18; 610:1-13; 612:17-21 | |
| 79. Thella Bowens requested two free airline tickets from Hawaiian Airlines and from Southwest Airlines because she was on the board of United Way. The tickets were all donated to the Authority.<br><br>Plaintiff's depo. 619:12-17; 619:22-23; 620:19-21; 621:9-11 | Objection. Lacks foundation and personal knowledge; hearsay. (Evid. Code §§ 403, 702 and 1200.) Hernandez testified that Bowens never asked him directly for any airline benefits. (Hernandez Depo. 549:8-10 [Exh. 2].) |
| 80. There was a power struggle between Bryan Enarson and Ted Sexton. Enarson had more control and had one ear of Thella Bowens'.<br><br>Plaintiff's depo. 645:19-25; 646:1-2 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 81. Authority Vice-President Bryan Enarson requested free tickets, upgrades and special privileges from Hawaiian Airlines.<br><br>Plaintiff's depo. 687:4-15 | Objection. Hearsay; lacks foundation. (Evid. Code §§ 403, 702 and 1200.) Hernandez' only knowledge of Enarson's alleged tickets and upgrades comes from other people. (Hernandez Depo. 687:4-15 [Exh. 2].) Further, this fact is irrelevant because it does not state that Enarson actually received any of the alleged requested items. |

## LPI DISCLOSURE

**Adjudication No. 22: Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding LPI, fails as a matter of law because Hernandez could not have had a reasonable belief that he disclosed unlawful acts.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 17. Another of Hernandez' duties was to help negotiate and monitor contracts for the management of parking services. The low bidder (based on "projected" reimbursable expenses) on a contract to manage the Airport's parking lots was Lindbergh Parking Incorporated (LPI). | Not disputed for purposes of this motion only. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

66

| Decl. J. Hernandez ¶ 6 | |
|---|---|
| 18. Its bid was so low that Hernandez – who had managed parking himself – suspected the bid was insincere. He thereafter closely monitored the performance of the contract and noted LPI was overcharging the Authority approximately $1 million to 1.5 million per year. This estimate was based, among other things, on the fact that LPI (1) did not lease new shuttle transportation vehicles as stated in its bid (but instead used older shuttles owned by LPI); (2) was seeking reimbursement for an unnecessary management position (owner/manager being paid for management work he did not perform); and (3) double-billing the Authority for workers' compensation insurance.<br><br>Decl. J. Hernandez ¶ 6; Plaintiff's Depo. 478:16-22; 481:1-4; 483:2-6 | Not disputed for purposes of this motion only. |

**Adjudication No. 23: Hernandez' First Cause of Action under Labor Code section 1102.5, insofar as it is based on any alleged disclosure regarding LPI, fails as a matter of law because Hernandez has not identified a state or federal statute, rule or regulation of which he disclosed a violation.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 17. Another of Hernandez' duties was to help negotiate and monitor contracts for the management of parking services. The low bidder (based on "projected" reimbursable expenses) on a contract to manage the Airport's parking lots was Lindbergh Parking Incorporated (LPI).<br><br>Decl. J. Hernandez ¶ 6 | Not disputed for purposes of this motion only. |
| 18. Its bid was so low that Hernandez – who had managed parking himself – suspected the bid was insincere. He thereafter closely monitored the performance of the contract and noted LPI was overcharging the Authority approximately $1 million to 1.5 million per year. This estimate was based, among other things, on the fact that LPI (1) did not lease new shuttle transportation vehicles as stated in its bid (but instead used older shuttles owned | Not disputed for purposes of this motion only. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

67

69-903

| | |
|---|---|
| by LPI); (2) was seeking reimbursement for an unnecessary management position (owner/manager being paid for management work he did not perform); and (3) double-billing the Authority for workers' compensation insurance.<br><br>Decl. J. Hernandez ¶ 6; Plaintiff's Depo. 478:16-22; 481:1-4; 483:2-6 | |

**Adjudication No. 24:  Hernandez' First Cause of Action fails as matter of law, insofar as it is based on any alleged disclosure regarding LPI, because there is no causal connection between his alleged protected activity and his termination.**

| Plaintiff's Additional Undisputed Facts and Supporting Evidence | Authority's Response and Supporting Evidence |
|---|---|
| 17. Another of Hernandez' duties was to help negotiate and monitor contracts for the management of parking services.  The low bidder (based on "projected" reimbursable expenses) on a contract to manage the Airport's parking lots was Lindbergh Parking Incorporated (LPI).<br><br>Decl. J. Hernandez ¶ 6 | Not disputed for purposes of this motion only. |
| 18. Its bid was so low that Hernandez – who had managed parking himself – suspected the bid was insincere.  He thereafter closely monitored the performance of the contract and noted LPI was overcharging the Authority approximately $1 million to 1.5 million per year.  This estimate was based, among other things, on the fact that LPI (1) did not lease new shuttle transportation vehicles as stated in its bid (but instead used older shuttles owned by LPI); (2) was seeking reimbursement for an unnecessary management position (owner/manager being paid for management work he did not perform); and (3) double-billing the Authority for workers' compensation insurance.<br><br>Decl. J. Hernandez ¶ 6; Plaintiff's Depo. 478:16-22; 481:1-4; 483:2-6 | Not disputed for purposes of this motion only. |
| 21. On November 2, 2005, Bowens engaged a law firm to investigate Hernandez for "ethics" violations associated with the receipt of benefits from the Authority's vendors.  This | Objection.  The second sentence lacks foundation and personal knowledge.  (Evid. Code §§ 403 and 702.) |

| | |
|---|---|
| was the first occasion in the history of the Authority that a law firm was retained to investigate an employee for alleged ethics violations.<br><br>Decl. J. Hernandez ¶ 7; Decl. P. Swan ¶ 3 | Hernandez' declaration does not state that this was the first time the Authority retained a law firm to investigate ethics violations. Rather, Hernandez states in his declaration that this was the first time *that he was aware of* that anyone was questioned regarding receipt of tickets. |
| 22. The law firm, per report submitted by Patrick Swan, Esq., concluded Hernandez received (1) free rounds of golf; (2) airline tickets to Hawaii; and (3) charger football tickets, the value of which placed Hernandez in violation of the Ethics Code applicable to Authority employees.<br><br>Decl. P. Swan | Objection to the extent that this is a partial and incomplete summary of the findings in the report. |
| 23. Bowens claims to have terminated Hernandez' employment based on the conclusions in the report.<br><br>Decl. T. Bowens ¶ 9 | Not disputed for purposes of this motion. |
| 24. With regard to the "free rounds of golf," Hernandez cleared the trip with his boss, Sexton, before going, after disclosing the nature of the outing and that the golf rounds were supplied by Mike Parrish.<br><br>Decl. J. Hernandez ¶ 9; Plaintiff's depo. 158:18-22; 168:5-24 | Objection.  Irrelevant.  (Evid. Code § 350.) |
| 25. In the process, Sexton admitted he had attended the same golf outing under similar circumstances.<br><br>Decl. J. Hernandez ¶ 9 | Objection.  Hearsay.  (Evid. Code § 1200.) |
| 26. Hernandez compensated Parrish for the round by buying Parrish's lunch and dinner and by making gift contributions for the raffle. The net personal value to Hernandez was negative by over $200.<br><br>Decl. J. Hernandez ¶ 9; Decl. P. Swan; Plaintiff's depo. 159:14-19; 163:3-13; 164:10-14 | Objection.  Lacks foundation; irrelevant. (Evid. Code §§ 350 and 403.)<br><br>The declaration of Pat Swan does not establish the alleged fact presented. |
| 27. Hernandez had a strong social relationship with Parrish, which included joint family outings and gatherings, dinners, barbecues and sporting events. | Not disputed for purposes of this motion. |

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

69

| | |
|---|---|
| Decl. J. Hernandez ¶ 9; Decl. P. Swan; Decl. M. Parrish ¶ 2 | |
| 28. With regard to the Hawaii ticket, ticketing benefits were regarded by management as normal benefit of their workplace, and that Sexton assigned Hernandez responsibility on frequent occasions to obtain ticket upgrades for various employees and board members. Hernandez specifically discussed whether the practice was ethically acceptable and Sexton replied it was.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 240:1-25; 602:20-25; 609:1-611:25 | Objection. Lacks foundation and is vague as to who in "management" regarded ticketing benefits as a normal benefit of the workplace. (Evid. Code § 403.) Further, none of the cited evidence states that ticketing benefits were a normal benefit of the workplace, or that Hernandez discussed whether the practice was ethically acceptable.<br><br>Hearsay. (Evid. Code § 1200.) |
| 29. Notwithstanding the practice among Hernandez' superiors to receive passes and upgrades, Hernandez' receipt of those benefits was limited to gifts from personal friends. The tickets on Southwest came from Parrish. The tickets on Hawaiian Air came from Janet Nix, another personal friend, who told him she gave tickets like those to all kinds of friends having nothing to do with business.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; Plaintiff's depo. 199:3-22; Decl. M. Parrish ¶ 3 | Objection. Improper argument and opinion; lacks foundation. (Evid. Code §§ 403 and 800.) Further, although Hernandez may have received benefits from friends, those friends were also employees of the Authority's vendors. (Hernandez Depo. 191:8-20; 198:8-200:17; 280:1-14; and 281:6-12 [Exh. 1].) |
| 30. Moreover, the Hawaiian tickets were listed as "space available" and further identified as having "no dollar value" and could not be transferred or redeemed.<br><br>Decl. J. Hernandez ¶ 10-11; Decl. P. Swan; ; Plaintiff's Depo. 280:15-20, 23-25; 281:1-2; Decl. M. Parrish par. 3 | Objection. Hearsay.  (Evid. Code § 1200.) Lacks foundation. (Evid. Code § 403.) |
| 31. With regard to the football tickets, ACE parking did not have a contractor or vendor agreement of any sort with the Authority.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan; Plaintiff's Depo. 268:1-4; 272:5-9 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 32. Hernandez had a longstanding friendship with the ACE Parking manager who invited him to the game which preceded Hernandez' employment with the Authority.  They were | Not disputed for purposes of this motion only. |

| | |
|---|---|
| friends from Hernandez' prior employment relationship with ACE Parking.<br><br>Decl. J. Hernandez ¶ 12; Decl. P. Swan | |
| 33. During Swan's interviews with Hernandez, he expressed no interest in the fact that Parrish and Hernandez were close personal friends.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 34. He avoided discussion of the tendency of other employees such as Bowens and Sexton to make active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.)<br><br>Lacks foundation. (Evid. Code § 403.) Hernandez has not established that employees "made active and aggressive use of their positions to acquire ticketing upgrades and benefits worth thousands of dollars." |
| 35. When Hernandez attempted to explain these friendships and practices, Swan cut him off and would state that he was not interested in the nature of those friendships and what the office practice was.<br><br>Decl. J. Hernandez ¶ 13 | Objection. Hearsay. (Evid. Code § 1200.) |
| 36. Hernandez had previously received outstanding performance evaluations.<br><br>Decl. J Hernandez ¶ 14; Plaintiff's Depo. 786:9-18 | Not disputed for purposes of this motion only. |
| 37. The Authority did, in fact, have a progressive disciplinary policy set forth in writing, which emphasizes the Authority's commitment to preserve employment through pre-termination warnings and training.<br><br>Decl. J. Hernandez ¶ 14; Plaintiff's Depo. 317:14-16 | This "fact" is contrary to Hernandez' own testimony and thus cannot create a triable issue of fact. (D'Amico, supra, 11 Cal.3d at p. 21-22.) Hernandez admitted in his deposition that he was an at-will employee and that he could be terminated at any time, with or without cause. (Hernandez Depo. 115:21-116:6; Exh. 16.) If he could be terminated at any time, then the Authority was under no obligation to progressively discipline Hernandez. Further, this fact lacks foundation because the cited testimony does not establish that the alleged policy is in writing. |
| 38. That the Authority failed to adhere to this policy and instead routed the matter to an expensive and contentious law firm is a truly extraordinary decision. | Objection. Lacks foundation. |

| | |
|---|---|
| Decl. J. Hernandez ¶ 14 | |
| 39. Ace Parking did not have a direct service agreement with the Airport Authority. Ace did not have any sort of a business relationship with the Airport Authority.<br><br>Plaintiff's depo. 149:15-20; 150:20-25 | Objection. Lacks foundation. Hernandez knew that Ace Parking tried to obtain a business relationship with the Authority in January 2005. (Hernandez Depo. 151:4-18 [Exh. 1].) Even prior to that, Lindbergh Parking, Inc. ("LPi") was a vendor doing business with the Authority. (*Id.* at 127:19-22.) Scott Jones, the owner of Ace Parking, is a 40% owner of LPi. (*Id.* at 75:18-19, 127:10-128:2.) |
| 41. Ted Sexton told Hernandez it would be okay to go to the Southwest Airline Golf Tournaments. Sexton knew he was a guest of Southwest's.<br><br>Plaintiff's depo. 158:18-22; 168:5-8, 12-13, 18, 21-24 | Objection. Lacks foundation. (Evid. Code § 403.) Hearsay. (Evid. Code § 1200.) |
| 42. Hernandez had absolutely never received free food from the concessions in the Airport terminals.<br><br>Plaintiff's depo. 201:16-18 | Not disputed for purposes of this motion only. |
| 44. Ted Sexton told Hernandez to write everything on the form, whether he thought it proper to do so or not.<br><br>Plaintiff's depo. 293:14-20 | Objection. Vague as to "he." Hearsay. (Evid. Code § 1200.) |
| 74. Hernandez requested ticket changes for Thella Bowens over five times. He did no less than five different itinerary changes, plus date changes and time changes. The airlines' charges for itinerary and date changes range between $50 to $100 per boarding document. Thella Bowens was not charged by the airlines for the changes. Thella could have changed her tickets by simply calling reservations.<br><br>Plaintiff's depo. 550:15-551:1, 6-8; 551:21-22; 554:1-10 | Objection. Irrelevant; hearsay; improper opinion; lacks foundation and personal knowledge. (Evid. Code §§ 350, 403, 702 and 1200.)<br><br>Hernandez testified that Bowens never directly asked him for an upgrade or flight change. (Hernandez Depo. 549:8-10 [Exh. 2].) This statement also lacks foundation as to how much and whether an airline charges for changes and upgrades. |
| 75. Ted Sexton instructed Hernandez that he should get Thella access to premier airline lounges so she wouldn't have to wait in the public waiting rooms. Sexton requested that even for the briefest moments if the plane was late to have Thella sit in the lounge.<br><br>Plaintiff's depo. 556:19-23; 558:18-24; 559:2-7 | Objection. Irrelevant and hearsay. (Evid. Code §§ 350 and 1200.) |
| 76. Ted Sexton asked if special privileges | Objection. Vague; hearsay. (Evid. Code § |

| | | |
|---|---|---|
| 1 | could be obtained for Thella Bowens' sister.<br><br>Plaintiff's depo. 561:1-25 | 1200.) |
| 3<br>4<br>5<br>6<br>7 | 77. Authority board member Morris Vance requested and received at least two upgrades to first class and there were no charges. He requested several other first-class upgrades and paid no charges for upgrades or flight changes.<br><br>Plaintiff's depo. 595:25; 596:10-12; 599:1-6; 599:25; 600:3 | Objection. Lacks foundation and hearsay. (Evid. Code §§ 403, 702 and 1200.) |
| 8<br>9<br>10<br>11<br>12<br>13 | 78. Authority Vice-President Vernon Evans repeatedly requested changes in flight schedules no less than 15-20 times in the last two years. Ted Sexton told Hernandez to "do whatever you can." Sexton knew the changes were at no cost. Hernandez asked Sexton if it was okay to change Evans' tickets at the time.<br><br>Plaintiff's depo. 604:5-11; 604:12-25; 605:18-23; 607:8-12; 608:6-10; 609:8-18; 610:1-13; 612:17-21 | Objection. Hearsay and lacks foundation. (Evid. Code §§ 403 and 1200.) |
| 14<br>15<br>16<br>17<br>18 | 79. Thella Bowens requested two free airline tickets from Hawaiian Airlines and from Southwest Airlines because she was on the board of United Way. The tickets were all donated to the Authority.<br><br>Plaintiff's depo. 619:12-17; 619:22-23; 620:19-21; 621:9-11 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403, 702 and 1200.) Hernandez testified that Bowens never asked him directly for any airline benefits. (Hernandez Depo. 549:8-10 [Exh. 2].) |
| 19<br>20<br>21 | 80. There was a power struggle between Bryan Enarson and Ted Sexton. Enarson had more control and had one ear of Thella Bowens'.<br><br>Plaintiff's depo. 645:19-25; 646:1-2 | Objection. Lacks foundation and personal knowledge. (Evid. Code §§ 403 and 702.) |
| 22<br>23<br>24<br>25<br>26 | 81. Authority Vice-President Bryan Enarson requested free tickets, upgrades and special privileges from Hawaiian Airlines.<br><br>Plaintiff's depo. 687:4-15 | Objection. Hearsay; lacks foundation. (Evid. Code §§ 403, 702 and 1200.) Hernandez' only knowledge of Enarson's alleged tickets and upgrades comes from other people. (Hernandez Depo. 687:4-15 [Exh. 2].) Further, this fact is irrelevant because it does not state that Enarson actually received any of the alleged requested items. |

27

28

1    Dated: November 9, 2007

PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP

By: *Sandra L. McDonough*
     FRED M. PLEVIN
     SANDRA L. MCDONOUGH
     ALBERT R. LIMBERG
     Attorneys for Defendant
     SAN DIEGO COUNTY REGIONAL
     AIRPORT AUTHORITY

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

OPPOSITION TO PLAINTIFF'S SEPARATE
STATEMENT OF ADDITIONAL UNDISPUTED
MATERIAL FACTS RE MSJ

74

BLUEBIRD (888) 477-0700
OFFICE SUPPLIES   www.bluebirdonline.com

**EXHIBIT 70**