## LUCE FORWARD
ATTORNEYS AT LAW · FOUNDED 1873
Luce, Forward, Hamilton & Scripps LLP

Ms. Thella F. Bowens
January 19, 2006
Page 10

him and offered the tickets and dropped them off. Hernandez did not recall how much they cost, but thought they were approximately $65 each. He said they were in the upper plaza. Hernandez said he went with Amiel Porta, and does not recall receiving four tickets. We showed Hernandez the copy of the four tickets, and Hernandez acknowledged that the tickets were on the Club Level and were $235 each. He still did not recall receiving four tickets.

We interviewed Dave Mueller, the Vice President of Operations for Ace Parking, on December 19, 2005. Mueller said Ace Parking had four Club Level season tickets for the San Diego Chargers. Mueller said he attended a game during the 2003 season and took Hernandez and an unidentified second person. Steve Burton, the President of Ace Parking, also attended the game. Mueller gave the two tickets to Hernandez for free.

**Finding:  Hernandez accepted free San Diego Charger football tickets from Southwest Airlines and Hawaiian Airlines in approximately 2004 and 2005.**

During his interview on December 14, 2005, Hernandez did not recall receiving any San Diego Charger football tickets other than those from Dave Mueller of Ace Parking. After the interview, we interviewed Cheryl Black, the current San Diego Station Manager for Southwest Airlines. She told us that during the 2005 football season, she received two San Diego Charger tickets shortly before the game. She said she offered them to Hernandez, who accepted them. Black did not know the location of the seats. Later she asked Hernandez how the game was and he thanked her. She said she did not know who may have gone to the game with Hernandez.

During his second interview on December 29, 2005, Hernandez admitted to receiving the two San Diego Charger football tickets from Black of Southwest Airlines. He explained that late on a Friday night, Black offered him the two tickets as she was unable to find anyone else to give them to. Hernandez went to the Airport and picked up the tickets at his office on a Saturday morning and then gave them to his wife who was going to the game with a friend. Hernandez said his wife and her friend already had tickets, so his wife gave away the free tickets at the stadium to strangers and did not resell the tickets. Hernandez said they were not very good seats. According to the San Diego Chargers, the minimum ticket price for a 2005 home game was $54 per ticket.

During our December 22, 2005 interview of Janet Nix, the San Diego Station Manager for Hawaiian Airlines, she told us that on one occasion in 2003 or 2004, she received two free San Diego Charger - Oakland Raider football tickets from Peter Dufay, the Hawaiian Airlines Air Charter Operations Manager based in Las Vegas. Dufay runs the Hawaiian Airlines' charter service for the Raiders. Nix said she may have given the Dufay tickets to Hernandez and Porta, both of whom are Raider fans. She said the seats were not very good.

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE

## LUCE FORWARD
ATTORNEYS AT LAW · FOUNDED 1873
Luce, Forward, Hamilton & Scripps LLP

Ms. Thella F. Bowens
January 19, 2006
Page 11

During our second interview of Hernandez on December 29, 2005, Hernandez initially denied receiving any other free Charger tickets from anyone affiliated with the Authority. We asked if he had received Charger tickets from Nix. Hernandez then said that Nix offered him tickets for the December 2005 Charger-Raider game that he did not accept because he was in Orlando Florida with his family. He said he did not know who got the tickets.

Hernandez said Nix also offered him tickets for the 2004 Charger-Raider game that he did accept. Hernandez said he already had his own tickets that he obtained through his sister via her job at TicketMaster, and he gave away the free tickets from Nix to strangers at the stadium.[21]

**Finding:  Hernandez accepted free San Diego Padre tickets from Ace Parking in approximately 2004 and 2005.**

During his interview on December 14, 2005, Hernandez recalled that Dave Mueller of Ace Parking invited him to one San Diego Padre game. He went alone with Mueller, and they sat on the first base line. He believed the ticket was valued at $45. He did not recall any other free Padre games.

On December 19, 2005, Dave Mueller of Ace Parking told us that Ace Parking has field level seats at Petco Park, and the seating area is food and drink catered. Parking is also included. Mueller said he has offered free Padre tickets to Hernandez, and the last game they attended was a daytime game during the 2005 season. Mueller did not recall how many games Hernandez had attended.

During the interviews of other Authority employees, we learned of several Padre games that Hernandez attended using free Ace Parking-supplied tickets. Some of these employees attended the games with Hernandez using the free tickets.

**Finding:  Hernandez accepted free rounds of golf from Ace Parking and Baggage Claimers in approximately 2004 and 2005.**

During his interview on December 14, 2005, Hernandez said he had played golf with Dave Mueller of Ace Parking approximately five times over the last two years. A couple of occasions were Authority golf tournaments. On the three other occasions, Mueller paid twice and Hernandez paid once. Hernandez said he did not recall any other occasions where his golf was paid for other than the Southwest Airlines' tournaments discussed below.

---

[21] We do not know what the value of these two tickets was.

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE

**LUCE FORWARD**
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Ms. Thella F. Bowens
January 19, 2006
Page 12

During our interview of Dave Mueller of Ace Parking, he could only recall one non-tournament outing where he played with Hernandez. They played at Del Mar Grand in Carmel Valley, and Ace Parking paid.

After Hernandez' first interview, we interviewed an Authority employee who told us that recently an Airport-based company, Baggage Claimers, had taken Hernandez and another employee for a free round of golf at Torrey Pines Golf Course.

During his second interview on December 29, 2005, Hernandez admitted that he and another Authority employee played golf at Torrey Pines Golf Course once with Mark Gardiner, a friend who operates the Baggage Claimers service at the Airport. Hernandez said that Baggage Claimers is a service used by the airlines, not the Authority. Gardiner paid for the round of golf.

**Finding:   Hernandez accepted free entry fees from Southwest Airlines for its annual charity golf tournament in 2003, 2004 and 2005 at the Real Del Mar Golf Resort & Country Club south of Tijuana, Mexico.**

During his interview on December 14, 2005, Hernandez admitted playing in the Southwest Airlines annual charity golf tournament at the Real Del Mar Golf Resort & Country Club south of Tijuana, Mexico in 2004 and 2005. He said Southwest Airlines invited him, and paid for his entry fee for golf and the dinner afterwards. Hernandez thinks the entry fee was $125 per person. Hernandez said that in 2005, he purchased giveaway gifts with his own money that equaled, in his mind, what it would cost to play in a golf tournament. He said the giveaway gifts were Callaway Golf items he purchased from a Target store. He estimated that he probably spent $200. He did not make any out-of-pocket giveaway gift purchases in 2004. He did not seek reimbursement from the Authority or anyone else for the Target purchases.

Hernandez said that during the 2004 tournament, he stayed in a hotel room paid for by Mike Parrish of Southwest Airlines. Hernandez said he slept on the floor. Hernandez said he paid for his own room in 2005.

During subsequent interviews of Cheryl Black and Mike Parrish of Southwest Airlines, we confirmed that Hernandez played in each of the annual tournaments in 2003, 2004 and 2005. We also confirmed this through interviews of other Authority employees who also attended and played for free during these annual charity tournaments. During our second interview of Hernandez on December 29, 2005, he said he may have played each of the past three years.

We do not know the actual entry fee for the three Southwest Airlines golf tournaments, or the actual value of the round of golf and meal afterward. Parrish estimated the tournament entry fee was $75 per person in 2003 and 2004. Cheryl Black did not provide an estimate. According to

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE

86-1234

**LUCE FORWARD**
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Ms. Thella F. Bowens
January 19, 2006
Page 13

the Real Del Mar Golf Resort & Country Club website, the green fees for 18 holes during the week are $59, and from Friday to Sunday are $79.

### 3.    Benefits from Kelly Pond

**Finding:  Hernandez accepted free clothing from Kelly Pond of Image Concepts between 2003 and 2005.**

Kelly Pond is the owner of Image Concepts, a clothing and uniform distributor. She operates the business out of her house, and told us that in the past year she had done approximately $800,000 worth of business. Her clients include the Authority, and LPI, which has the parking contract at the Airport.[22]    As the Director of Landside Operations for the Authority, Hernandez is responsible for approving reimbursements for uniform purchases that LPI makes from Pond. He is also responsible for issuing purchase orders to Pond for clothing purchased for Authority employees.

Prior to our first interview of Hernandez, we learned from other interviewees that Pond regularly gave Hernandez free sample shirts and other clothing that he kept or gave to other Authority employees. We were told that Pond had given Hernandez and his family free athletic clothing and shoes. We were also told that Hernandez requested (or subtlety demanded) free clothing from Pond.

During our first interview of Hernandez on December 14, 2005, Hernandez said that Pond had given him free sample shirts, and he either kept the samples or gave them away. Hernandez said he still had three sample shirts. Two are dress shirts and one is a casual shirt. He gave the other samples to persons at the Authority.

Hernandez said he never asked Pond for anything, or suggested he wanted anything. However, during the summer of 2005, when he was coaching his son's soccer team, Pond gave him three free shirts. They were monogrammed with the names "Coach Jose," "Coach David," and "Team Mom Roxy." Hernandez said the shirts cost approximately $8 each.

Hernandez denied that Pond had provided any clothing apparel of any type to his children's soccer teams or his wife's soccer teams, and denied the receipt of any other clothing apparel from Pond.

---

[22]  According to Authority records, LPI purchased $68,276.02 in uniforms from Pond's company between February and November 2005.

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE

**LUCE FORWARD**
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Ms. Thella F. Bowens
January 19, 2006
Page 14

On December 15, 2005, we interviewed Pond at my office. She told us that she had given samples of clothing to Hernandez. She also admitted giving him the three or four shirts monogrammed for his child's soccer team. She said they cost her $3.50 each.

Pond said approximately two years ago, she also provided approximately 7 to 11 green v-neck soccer shirts that Roxy, Hernandez' wife, had picked out. She said the shirts cost approximately $3 each. In return, Roxy gave Pond Avon cosmetic products that Pond said cost more than the shirts. Pond also recalled giving Roxy a birthday present, namely a $25 gift card to Bed, Bath & Beyond. Pond denied giving anything else of value to Hernandez or his family.

During interviews of other Authority employees, we were told that Pond had given free golf shoes to Hernandez and free athletic shoes to Hernandez' wife. We found this information credible, but we were unable to substantiate it. we were also told that during a recent going away party for an Authority employee, Pond gave Hernandez a $100 bill to buy drinks that Hernandez used to buy drinks at the bar where the party was held.

During the second interview of Hernandez on December 29, 2005, Hernandez admitted that several years ago, his wife traded Mary Kay Cosmetics to Pond for green-colored uniform shirts for his wife's indoor soccer team.[23] Hernandez said the shirts were valued at $3 to $4 each. Hernandez denied that he or his wife ever received shoes of any kind from Pond. Hernandez denied receiving $100 from Pond to pay for drinks. He first stated that Pond gave the money to Amiel Porta to buy drinks, then stated "the money was on the table." He said the money was used to buy drinks at the party, including drinks he consumed.

4.    **Benefits from USA Cab – Personal Automobile Repair**

**Finding: Hernandez accepted work from USA Cab on his family's personal automobiles, and it appears he paid for the work.**

Prior to our first interview of Hernandez, we learned through interviews that Hernandez had taken his personally owned black Ford Ranger pickup truck for repairs at USA Cab's facility on Imperial Avenue. USA Cab is one of the taxi companies that fall under Hernandez' jurisdiction as the Director of Landside Operations.

---

[23] Hernandez admitted that he had spoken to Pond after we interviewed her. During her interview, Pond told us that Hernandez called us after his first interview, but before we interviewed her.

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE

**LUCE FORWARD**
ATTORNEYS AT LAW · FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Ms. Thella F. Bowens
January 19, 2006
Page 15

During his first interview on December 14, 2005, Hernandez said he currently drove a 2000 silver Ford Sportrac pickup truck. He said he had owned it for one year. He said he previously owned a black 1996 Ford Ranger pickup truck. Hernandez denied that any work has been performed on his trucks by an Authority-related company. However, he said he had taken his wife's gold Ford Explorer to USA Cab for brake work. He said Tony Hueso was the owner, and the repair business is "open to anyone." About six months ago, his wife's Explorer needed brake work. The master cylinder was failing. Hernandez said he was desperate to get the brakes fixed and called Hueso to ask whether he knew of a reliable shop that could repair his wife' brakes. Hueso told him to bring the vehicle to USA Cab. Hernandez took it to USA Cab because he did not know of a trusted repair facility. He took it in the morning and it was in the shop for a day. One week later, he had to take it back to have the lines bled. He got rides to and from USA Cab from Authority employees. He paid for the work with his personal credit card.

On December 15, 2005, we interviewed Tony Hueso, one of the owners of USA Cab. Hueso said USA Cab operates a repair shop that provides repair and maintenance services for their taxicabs plus other companies' taxicabs. USA also services non-taxi vehicles for companies and individuals, typically customers who are familiar with the business or its employees. Hueso said Hernandez was one of the individuals whose personally owned vehicle has been serviced at USA Cab. Hueso admitted that his shop is not licensed by the California Department of Motor Vehicles, Bureau of Automotive Repair, to offer auto repair services to the general public.

Without looking at any records, Hueso recalled repairing the brakes on Hernandez' wife's Ford Explorer in the summer of 2005. Hernandez told Hueso he did not know whom to trust to repair the brakes. Hueso offered to have a USA Cab mechanic look at the vehicle. Hernandez drove the Explorer to USA Cab, dropped it there, and then called someone to pick him up. Hernandez returned later in the day to retrieve the Explorer after USA Cab replaced the brakes. Hernandez paid for the brake job.

Hueso also recalled that in the spring of 2005, Hernandez told him that his Ford Ranger pickup truck, or his Ford Explorer, needed new tires. Hueso said USA Cab sold and installed four new tires for Hernandez. USA Cab purchased the tires from a Firestone tire dealership, and Hernandez paid for the tires and installation.

Hueso retrieved invoices for 2003, 2004 and 2005 from manila folders stored in file cabinets. The invoices were hand-searched, and five Hernandez-related USA Cab invoices were found dating from February 26, 2003 to April 1, 2005. The following summarizes the five invoices:

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE

86-1237

# LUCE FORWARD
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Ms. Thella F. Bowens
January 19, 2006
Page 16

| Date | Vehicle | Work Done | Invoice Amount |
|------|---------|-----------|----------------|
| 02/26/03 | 1996 Ford Explorer (3SVG996) | Install three Firestone tires, reinstall spare and check fluids. | $169.46 |
| 02/25/04 | 1996 Ford Explorer (3SVG996) | Shock absorbers, fuel, air & oil filters, spark plugs, transmission filter & fluid, oil change, bleed brakes, brakes | $510.85 |
| 12/13/04 | 1997 Ford Ranger Truck (5Z54352) | Brake work, bearings, seals, rotate tires[24] | $236.51 |
| 03/04/05 | 1996 Ford Explorer (3SVG996) | Brake check, master cylinder, check motor oil, trans oil, P/S oil, radiator, air pressure tires | $173.14 |
| 04/01/05 | 1996 Ford Explorer (3SVG996) | Brake pedal low/master cylinder, under warranty | No charge |

Hueso stated that Hernandez paid for all automotive repairs received at USA Cab, and that the type of payment would be recorded in a separate accounting record maintained by USA Cab. We did not have an opportunity to review these payment records.

During our second interview of Hernandez on December 29, 2005, Hernandez produced his copy of the USA Cab invoices for the same five visits. Some, but not all, included stapled-on copies of charge card receipts as proof of payment. It was pointed out to Hernandez that one of the invoices indicated repair on his personal Ford Ranger pickup truck on December 13, 2004, and Hernandez admitted he now recalled work being done on his own personal vehicle, in addition to

---

[24] According to this USA Cab invoice dated December 13, 2004, Hernandez' personal vehicle, a Ford Ranger, was repaired on this date. This is inconsistent with Hernandez' claim (in his first interview on December 14, 2005) that he sought only one vehicle repair at USA Cab, namely a brake job for his wife's Explorer. This invoice also shows that Hernandez had brake work done at USA Cab before 2005 when he needed brake work done on his wife's Explorer.

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE



**LUCE FORWARD**
ATTORNEYS AT LAW • FOUNDED 1873
Luce, Forward, Hamilton & Scripps LLP

Ms. Thella F. Bowens
January 19, 2006
Page 17

his wife's vehicle. Hernandez stated he could not recall if USA Cab did any other work on his personal Ranger truck before he sold it (along with the repair paperwork) to an individual who took it to Tijuana, Mexico.

Hernandez reiterated that he paid for all the work performed on his vehicle and his wife's vehicle by USA Cab. Hernandez said that anyone could have repair work done on his or her personal vehicles at USA Cab.

Based on our investigation, we believe that Hernandez paid for the personal automobile repair performed for him by USA Cab. Based on the work described in the invoices, the invoice amounts appear to be reasonable. However, although he paid for the work on his personal vehicles, we believe Hernandez accepted a benefit from USA Cab – namely, USA Cab performed personal automobile repair work for Hernandez that was not generally available or known to the public at large. Quantifying the value of this benefit is difficult if not impossible.

5.     **Other Benefits**

**Finding:  Hernandez accepted a free Ace Parking parking pass for use at Qualcomm Stadium and Petco Park.**

During his first interview on December 14, 2005, Hernandez said Steve Kitt, his neighbor, gave him a free Ace Parking parking pass for use at Qualcomm Stadium and Petco Park. Hernandez said Kitt manages Ace Parking at Qualcomm Stadium and Petco Park. Kitt gave it to Hernandez in 2004 when the San Diego Padres started playing at Petco Park. He has used it on several occasions and let other Authority employees use it. The free parking pass has no expiration date. Hernandez said he has known Kitt for years as a neighbor, and Hernandez does not think Kitt gave him the free parking pass because Hernandez works at the Authority. Hernandez said he is close to Kitt and introduced Kitt to Kitt's new second wife. Hernandez said he did not believe that there was an appearance of impropriety.[25]

---

[25]  On December 19, 2005, Dave Mueller of Ace Parking said he does not know whether Hernandez has a permanent or VIP Ace parking pass. He said he does not believe that Hernandez has one, and that there is no such thing as a permanent parking pass for Petco or Qualcomm.

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE



## LUCE FORWARD
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Ms. Thella F. Bowens
January 19, 2006
Page 18

**Finding:** Hernández accepted free meals and sodas from Authority vendors and contractors.

During his first interview on December 14, 2005, Hernandez said he has lunches about every three weeks with the parking management staff at LPI. He said he has kept a list of the lunches and there have been approximately 25 lunches. He said he knows he has to report them if they are in the $325 or $350 range. He said the lunches cost approximately $8 to $10 each, and are generally at the Red Sails Inn. He has lunch with John Steele, the LPI Shuttle Manager, and/or Maurice Gray, the owner of LPI. Hernandez said he has paid for some of the lunches, but does not believe he can submit them for reimbursement. He said he is not prohibited from taking free lunches; he just has to report them. He believes he can offset the lunches by paying for some and that he does not have to report them.

Hernandez denied any free lunches or drinks at the Airport from Airport vendors. He said he reciprocates buying coffee for vendors. Hernandez said that Kelly Pond bought him lunch at the Cheesecake Factory when he first met her approximately three years ago. He denied any other free meals.

Through our interviews of other Authority employees, we learned that Hernandez would invite himself to lunch with LPI personnel in at least half of the lunches he had with them. We also learned that Hernandez rarely, if ever, paid for the lunches. The lunches would typically average $10 per person, and would generally be at the Red Sails Inn or the Brigantine. If Dave Mueller of Ace Parking joined the lunch, they would sometimes go to Miguel's Cocina Mexican Restaurant. The lunches occurred at least twice a month for the past three years.

During our second interview of Hernandez on December 29, 2005, Hernandez told us that two to three years ago, his supervisor Ted Sexton told him that "you can never buy lunch for a contractor, but a contractor can buy lunch for you." Hernandez told us that on one occasion in the past, one of Hernandez' reports asked him if they could submit a reimbursement request for a meal they bought for a contractor. Hernandez told the employee that the expense would be reimbursed one time only, and told the employee that the policy was "you can never buy lunch for a contractor, but a contractor can buy lunch for you."

These statements by Hernandez are contrary to the Business Expense Reports that Hernandez submitted during fiscal year 2004 through fiscal year 2006. These Business Expense Reports show that between July 24, 2003 and June 24, 2005, Hernandez submitted receipts and was reimbursed for 13 breakfasts and lunches in San Diego with representatives of Northwest Airlines (1), Park, Shuttle & Fly (2), Southwest Airlines (3), LPI (1), TSA (3), Neal Electric (1), Hertz (1) and Alaska Airlines (1).

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE



**LUCE FORWARD**
ATTORNEYS AT LAW · FOUNDED 1873
Luce, Forward, Hamilton & Scripps LLP

Ms. Thella F. Bowens
January 19, 2006
Page 19

Other Authority employees told us that they had seen Hernandez taking LPI supplied soda home with him. When interviewed on December 14, 2005, Hernandez admitted that he might occasionally take a can or two of soda home with him, but not the quantities claimed to have been observed by other Authority employees.

**Finding: Hernandez accepted free airline drink coupons from Delta Airlines, Southwest Airlines and Hawaiian Airlines.**

During his first interview on December 14, 2005, Hernandez admitted he accepted free airline drink coupons from Delta Airlines, Southwest Airlines and Hawaiian Airlines. He said he received two free airline drink coupons from an agent at Hawaiian Airlines. He said he still has them. He said Delta Airlines has also given him a stack of free airline drink coupons to give out. He still has a stack and has not given them out. Southwest Airlines has given him four or six free drink coupon books. There are approximately 12 coupons in each book. He does not have them anymore. On December 29, 2005, Hernandez told us he also has received free headset tickets from Delta Airlines.

6.    **Miscellaneous**

We investigated a number of other allegations of alleged receipt of benefits that we were not able to substantiate. In addition, other miscellaneous allegations were made that we believe merit brief discussion. Based on our investigation, we believe there is credible evidence that:

       (a)    Hernandez used Authority vehicles for personal use on more than one occasion to travel to his home or elsewhere.

       (b)    Hernandez used Authority personnel for personal use on more than one occasion. In particular, Hernandez' Administrative Assistant, Jennifer Hamilton, spent a number of hours, paid for by the Authority, assisting in the planning and preparation of the 30th birthday party for Hernandez' wife in 2004.

       (c)    Hernandez routinely dismisses Airport parking tickets for Airport-based contractors and vendors regardless of the merits of the violations.

       (d)    Hernandez has kept Airport Authority extended time parking passes in his office, and given them out in his unfettered discretion and on unknown occasions.

       (e)    Hernandez has granted permits to shuttle drivers without following proper protocol.

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE

SDRAA 134

## LUCE FORWARD
ATTORNEYS AT LAW • FOUNDED 1873
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

Ms. Thella F. Bowens
January 19, 2006
Page 20

(f)    In December 2004, Hernandez authorized LPI to purchase approximately 120 Chili's Restaurant Gift Cards, costing $20 each, for LPI employees. As part of the transaction, LPI received approximately 120 free/no cost gift certificates valued at $5 each, with a total value of $600 that LPI gave to Hernandez and that Hernandez claims he distributed to Authority personnel.

### Conclusion

Based on our investigation, and Hernandez' own statements, we believe Hernandez accepted benefits in violation of the Authority's Ethics Code. In particular, Hernandez accepted benefits aggregating more than one-half the amount of gifts permitted under the California Political Reform Act in any calendar year from a single source knowing that the source is doing business with the Authority.

In 2003 and 2004, the Authority's Ethics Code prohibited Hernandez from accepting benefits aggregating more than $170 from Hawaiian Airlines, which he knew was doing business with the Authority. Nonetheless, in May 2004, Hernandez accepted four free round-trip airline tickets to Hawaii from Hawaiian Airlines, which he knew was doing business with the Authority. While these tickets are non-revenue and may be of no value to Hawaiian Airlines, they certainly have value to the user who otherwise would have to pay for the airline travel. Janet Nix of Hawaiian Airlines, who gave the free tickets to Hernandez, estimated that the retail cost of such round trip travel would have been between $199 and $600 per ticket. Therefore, the total value of the tickets is estimated to be between $796 and $2,400

Similarly, in 2003, Hernandez accepted at least two, or four, free San Diego Charger-Oakland Raider football tickets from Ace Parking, the total value of which is estimated to be $470 to $940. At the time, Hernandez knew Ace Parking was doing business with the Authority through its ownership of or subcontract with LPI.

It is unknown if the benefits Hernandez accepted from Southwest Airlines in any calendar year exceeded $170 or $180. It is likely they did in 2004 when he accepted the free roundtrip airline tickets for his wife and children's travel between San Diego and Las Vegas.

As discussed above, Hernandez accepted other benefits from these same and other sources that he knew were doing business with the Authority during calendar years 2003, 2004 and 2005. While it appears that the lunches received in any calendar year from LPI exceeded $170 or $180, we cannot make that finding with certainty. Likewise, the aggregate value of benefits accepted by Hernandez from Ace Parking (even if we distinguish it from LPI) appears to exceed $170 or $180 in any calendar year. However, we again cannot make such a finding with any certainty.

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE

# LUCE FORWARD

ATTORNEYS AT LAW · FOUNDED 1873

Luce, Forward, Hamilton & Scripps LLP

Ms. Thella F. Bowens
January 19, 2006
Page 21

The Authority's Ethics Code also prohibits Hernandez from accepting anything of value from anyone, other than the Authority or another board member or employee, for "doing his . . . job," regardless of the value of the benefit. See Section 2.10(b)(2). However, the Authority's Ethics Code does not describe when this prohibition applies or how it should be interpreted. As a result, while we believe an argument can be made that most, if not all, the benefits discussed above were given to Hernandez for "doing" his job, we are disinclined to make such a finding at this point.

If you have any questions or comments, please do not hesitate to contact me.

Very truly yours,

Edward Patrick Swan, Jr.
of
LUCE, FORWARD, HAMILTON & SCRIPPS LLP

EPS/wp
Enclosures

cc:    Mr. John Gamberzky

PRIVILEGED AND CONFIDENTIAL PURSUANT
TO THE ATTORNEY-CLIENT PRIVILEGE AND
WORK PRODUCT PROTECTION – NOT DISCOVERABLE

Recycled Paper

BLUEBIRD
(310) 477-0700

| ATTORNEY OR PARTY WITHOUT ATTORNEY(Name, state bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Cathryn Chinn, Esq. (State Bar No. 93340)<br>1901 First Ave., Ste. 400<br>San Diego, CA 92101<br><br>TELEPHONE NO.: (619) 234-9000    FAX NO.: (619) 699-1159<br>ATTORNEY FOR (Name): Plaintiff JOSE HERNANDEZ | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**
☑ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92081-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649

| PLAINTIFF(S)/PETITIONER(S)<br>JOSE HERNANDEZ | JUDGE: Hon. Richard E. Strauss |
|---|---|
| DEFENDANT(S)/RESPONDENT(S)<br>SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY | DEPT: 75 |
| **NOTICE OF JURY FEE DEPOSIT**<br>(CCP 631, San Diego Superior Court Rules, Division II, Rule 2.12) | CASE NUMBER<br>GIC 871979 |

## NOTICE

TO:    The above Court, the Clerk thereof, and all concerned parties:
The above-entitled case, having been set for trial on Jan. 4, 2008_____, in Department _75_ at 9:00a.__.m., the statutory fee, prescribed as and for first day's deposit for trial by jury, is tendered herewith on behalf of (Plaintiff)(Defendant) Plaintiff JOSE HERNANDEZ
(Full Name)

Parcel No.(s) (If appropriate) N/A

Dated: _11-29-07_                        _Cathryn Chinn_
                                         (Signature of attorney)

## DECLARATION OF SERVICE BY MAIL

I declare that: I am over the age of 18 years and not a party to this case; I am employed in, or am a resident of the County where the mailing took place; and my residence or business address is:

I served the **NOTICE OF JURY FEE DEPOSIT** by placing a true copy in separate envelopes addressed to each addressee, respectively, as follows:

Fred M. Plevin, Esq.; Sandra L. McDonough, Esq.          Amy S. Gonzalez, Esq.
Paul, Plevin, Sullivan & Connaughton, LLP               San Diego County Regional Airport Auth.
401 B St., Tenth Floor                                  3225 N. Harbor Dr.
San Diego, CA 92101-4232                                San Diego, CA 92138

I then sealed each envelope and, with postage thereon fully prepaid, placed each for deposit in the United States Postal Service, on the date shown below at *(City and State)* San Diego, California.

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Date: _11-29-07_                         _Cathryn Chinn_
                                         (Type or Print Name)/(Signature)

SDSC CIV-105(Rev. 6-02)                  **NOTICE OF JURY FEE DEPOSIT**

87-1244

Recycled Paper

BLUEBIRD
(310) 477-0700

EXHIBIT 88

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, state bar number, and address):*
Fred M. Plevin (126185)
Sandra L. McDonough (193308)
Paul, Plevin, Sullivan & Connaughton LLP
401 B Street, Tenth Floor
San Diego, CA 92101
TELEPHONE NO.: 619-237-5200   FAX NO.: 619-615-0700
ATTORNEY FOR *(Name):* San Diego County Regional Airport Autho

**FOR COURT USE ONLY**

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN DIEGO**

☐ HALL OF JUSTICE, 330 W. BROADWAY, SAN DIEGO, CA 92101-3827
☐ NORTH COUNTY DIVISION, 325 S. MELROSE DR., VISTA, CA 92083-6643
☐ EAST COUNTY DIVISION, 250 E. MAIN ST., EL CAJON, CA 92020-3941
☐ RAMONA BRANCH, 1428 MONTECITO RD., RAMONA, CA 92065-5200
☐ SOUTH COUNTY DIVISION, 500 3RD AVE., CHULA VISTA, CA 91910-5649

PLAINTIFF(S)/PETITIONER(S) Jose Hernandez

JUDGE: Richard Strauss

DEFENDANT(S)/RESPONDENT(S) San Diego County Regional Airport
Authority

DEPT: 75

**NOTICE OF JURY FEE DEPOSIT**
(CCP 631, San Diego Superior Court Rules, Division II, Rule 2.12)

CASE NUMBER
GIC871979

**NOTICE**

TO: The above Court, the Clerk thereof, and all concerned parties:

The above-entitled case, having been set for trial on <u>January 4, 200</u>, in Department <u>75</u> at <u>9:00 a</u> .m., the statutory fee, prescribed as and for first day's deposit for trial by jury, is tendered herewith on behalf of (Plaintiff)(Defendant) <u>San Diego County Regional Airport Authority</u>
(Full Name)

Parcel No.(s) (if appropriate) _____

Dated: <u>December 7, 2007</u>

*FBnPlevin*
(Signature of attorney)
Fred M. Plevin

**DECLARATION OF SERVICE BY MAIL**

I declare that: I am over the age of 18 years and not a party to this case; I am employed in, or am a resident of the County where the mailing took place; and my residence or business address is:
401 B Street, Tenth Floor
San Diego, CA 92101
I served the **NOTICE OF JURY FEE DEPOSIT** by placing a true copy in separate envelopes addressed to each addressee, respectively, as follows:
Cathryn Chinn
1901 First Ave. Suite 400
San Diego, CA 92101
Phone: 619-295-4190
Fax: 619-295-4190

I then sealed each envelope and, with postage thereon fully prepaid, placed each for deposit in the United States Postal Service, on the date shown below at *(City and State)* <u>San Diego, California</u>

I declare under penalty of perjury, under the laws of the State of California, that the foregoing is true and correct.

Date: <u>December 7, 2007</u>   *Martha Martinez*
(Type or Print Name)/(Signature) Martha Martinez

SDSC CIV-105 (Rev. 8-02)   **NOTICE OF JURY FEE DEPOSIT**   SD-105

**88-1245**

Recycled Paper

BLUEBIRD
(310) 477-0700

1   Cathryn Chinn, Esq. (State Bar 93340)
    Peter G. Friesen, Esq. (State Bar 107631)
2   1901 First Avenue, Suite 400
    San Diego, California 92101
3   Telephone (619) 234-9000
    Facsimile (619) 699-1159

4

5   Attorney for Plaintiff
    JOSE HERNANDEZ

6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9       COUNTY OF SAN DIEGO, CENTRAL BRANCH, GENERAL UNLIMITED

10  JOSE HERNANDEZ,                          Case No.: GIC 871979

11              Plaintiff,                   DECLARATION OF CATHRYN CHINN IN
                                             OPPOSITION TO DEFENDANT SAN
12  v.                                       DIEGO COUNTY REGIONAL AIRPORT
                                             AUTHORITY'S MOTION FOR SUMMARY
13  SAN DIEGO COUNTY REGIONAL                JUDGMENT OR, IN THE ALTERNATIVE,
    AIRPORT AUTHORITY, a public entity       SUMMARY ADJUDICATION
14  and DOES 1 through 12, Inclusive,
                                             DATE:        November 16, 2007
15              Defendants.                  TIME:        1:30 p.m.
                                             DEPT.:       75
16                                           JUDGE:       HON. RICHARD E. STRAUSS
                                             ACTION FILED:    9/1/06
17                                           TRIAL DATE:      1/4/08

18

19

20       I, CATHRYN CHINN, declare as follows:

21       1.      I am an attorney licensed to practice before all courts in the State of California. I am

22  counsel of record for Plaintiff JOSE HERNANDEZ in the above-captioned action. The facts set

23  forth herein are personally known to me and, if called upon to testify, I could and would do so

24  competently.

25       2.      On Tuesday, November 20, 2007, Larry Kouns, Esq., counsel for Mr. Swan, placed

26  a call to my office. I was unavailable, so he left a message with Silvia, my assistant, indicating he

27  was interested in taking Mr. Swan's deposition off calendar pending the decision on the pending

28

         CHINN DECL. IN OPPOS. TO THIRD PARTY SWAN'S MOTION FOR PROTECTIVE ORDER

1 summary judgment motion.  He indicated that if the motion was granted, the deposition would not

2 be necessary, and, if the motion was not granted, Mr. Swan could be deposed thereafter.

3      3.    That same day Mr. Kouns' call was returned by Silvia, declarant's assistant.  Mr.

4 Kouns was unavailable.  Therefore, a voice message was left indicating the attorneys were out of

5 town and requesting Mr. Kouns forward the documents responsive to the document demand in the

6 notice of deposition so that they could be received by Monday, November 26, and the attorneys

7 would return his call that day regarding Mr. Kouns' request to take the deposition off calendar.

8      4.    When Mr. Friesen returned to the office on Monday, November 26, Silvia placed

9 another call to Mr. Kouns, leaving a voice mail message indicating Mr. Friesen would call him that

10 afternoon.  There were no meet-and-confer efforts as, before the call could be made, Mr. Kouns

11 unilaterally took the deposition off calendar, serving his moving papers for his Motion for Protective

12 Order.

13      5.    A true and correct copy of the 8/28/7 Declaration of Edward Patrick Swan, Jr. in

14 Support of Defendant San Diego County Regional Airport Authority's Motion for Summary

15 Judgment or, in the Alternative, Summary Adjudication is attached as Exhibit A to the Notice of

16 Lodgment filed herewith and made a part hereof.

17      6.    A true and correct copy of the 8/30/7 Declaration of Thella F. Bowens in Support of

18 Defendant San Diego County Regional Airport Authority's Motion for Summary Judgment or, in

19 the Alternative, Summary Adjudication is attached as Exhibit B to the Notice of Lodgment filed

20 herewith and made a part hereof.

21      7.    A true and correct copy of the letter dated 1/19/06 from Edward Patrick Swan, Jr.,

22 to Thella Bowens is attached as Exhibit C to the Notice of Lodgment filed herewith and made a part

23 hereof.

24      I declare under penalty of perjury under the laws of the State of California that the foregoing

25 is true and correct.  Executed this seventh day of December, 2007, in San Diego, California.

26

27                              CATHRYN CHINN

28

CHINN DECL. IN OPPOS. TO THIRD PARTY SWAN'S MOTION FOR PROTECTIVE ORDER
- 2 -

**89-1247**

BLUEBIRD OFFICE SUPPLIES (888) 477-0700 www.bluebirdonline.com

EXHIBIT 90



1    FRED M. PLEVIN (SBN 126185)
     SANDRA L. MCDONOUGH (SBN 193308)
2    ALBERT R. LIMBERG (SBN 211110)
     **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3    401 B Street, Tenth Floor
     San Diego, California 92101-4232
4    Telephone: 619-237-5200
     Facsimile: 619-615-0700
5
     AMY S. GONZALEZ (SBN 181745)
6    **SAN DIEGO COUNTY REGIONAL AIRPORT**
     **AUTHORITY**
7    3225 N. Harbor Drive
     San Diego, CA 92138
8    Telephone: (619) 400-2425
     Facsimile: (619) 400-2428
9
10   Attorneys for Defendant
     SAN DIEGO COUNTY REGIONAL AIRPORT
11   AUTHORITY

12
13                 SUPERIOR COURT OF THE STATE OF CALIFORNIA
14                            COUNTY OF SAN DIEGO

15   JOSE HERNANDEZ,                        CASE NO. GIC871979

16              Plaintiff,                  **DEFENDANT SAN DIEGO COUNTY**
                                            **REGIONAL AIRPORT AUTHORITY'S**
17        v.                                **REPLY IN SUPPORT OF ITS**
                                            **SUPPLEMENTAL BRIEF REGARDING**
18   SAN DIEGO COUNTY REGIONAL              **GOVERNMENT CODE SECTION 821.6 IN**
     AIRPORT AUTHORITY, a public entity;    **SUPPORT OF ITS MOTION FOR**
19   and DOES 1 through 12, inclusive,      **SUMMARY JUDGMENT OR, IN THE**
                                            **ALTERNATIVE, SUMMARY**
20              Defendants.                 **ADJUDICATION**
21
22                                          Date:            December 14, 2007
                                            Time:            1:30 p.m.
23                                          Dept:            75
                                            Judge:           Hon. Richard E. Strauss
24                                          Complaint Filed: September 1, 2006
                                            Trial Date:      January 4, 2008
25
                                            **EXEMPT FROM FEES**
26                                          **GOVT. CODE § 6103**
27
28

PAUL, PLEVIN,
SULLIVAN &        REPLY SUPPLEMENTAL BRIEF IN SUPPORT
CONNAUGHTON LLP   OF SUMMARY JUDGMENT MOTION

**F I L E D**
Clerk of the Superior Court
DEC 07 2007
By: M. WONG-JIMENEZ, Deputy

DEC 7 '07 PM 3:47

# I. INTRODUCTION

Plaintiff's supplemental opposition conveniently focuses on only half of Government Code section 821.6, and completely ignores the portion that applies to this case. Specifically, Section 821.6 applies not only to those who prosecute an administrative proceeding, but also to those who *initiate* an administrative proceeding, including those who participate in an investigation leading up to a potential administrative proceeding. In fact, there is no requirement that an actual administrative proceeding take place in order for the immunity to attach.

Since the Authority can pursue a violation of its Ethics Codes through a criminal action, its investigation of a violation of the Ethics Code (as a precursor to a potential action) necessarily falls within the ambit of Section 821.6's immunity. Accordingly, the Authority's investigation of Hernandez' violations of the Ethics Code is a protected act, and the Authority is shielded from liability for its actions in investigating and terminating Hernandez. Accordingly, summary judgment is appropriate.

# II. SECTION 821.6 IMMUNITY APPLIES TO HERNANDEZ' INVESTIGATION

For governmental entities, immunity is the rule and liability is the exception. (*Harshbarger v. City of Colton* (1988) 197 Cal.App.3d 1335, 1339; *Cochran v. Herzog Engraving Co.* (1984) 155 Cal.App.3d 405, 409; *Williams v. Horvath* (1976) 16 Cal.3d 834, 838 [intent of the Tort Claim Act "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances."].) Therefore, the scope of Section 821.6 should be given an "expansive interpretation" in order to "protect public officers from harassment in the performance of their duties." (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1292.)

In this case, as with all cases, Section 821.6: (1) applies to investigations, not just prosecutions; and (2) applies to all public employees who initiate investigations, not just prosecutors. Since this Action arises out of the investigation of Hernandez' alleged ethical violations and the resulting termination, Section 821.6 applies.

## A.    Section 821.6 Applies to Investigations.

By focusing on the prosecutorial aspect of Section 821.6, Hernandez completely ignores

90-1249

1   the plain language of the statute and a litany of cases which hold that Section 821.6 applies not

2   only to prosecutorial proceedings, but also to the initiation of administrative proceedings and **any**

3   **investigation leading up to the initiation of an administrative proceeding.** (Gov. Code §

4   821.6; *Amylou R. v. County of Riverside* (1994) 28 Cal.App.4th 1205, 1209-1211, 34 Cal.Rptr.2d

5   319 ["courts liberally construe 'administrative proceeding' to include investigatory and other

6   activities in preparation for more formal proceedings."]; *Richards v. Department of Alcoholic*

7   *Beverages Control* (2006) 139 Cal.App.4th 304, 318; *Javor v. Taggart* (2002) 98 Cal.App.4th

8   795, 808; *Baughman v. State of California* (1995) 38 Cal.App.4th 182, 192-193 [investigative

9   officers were immune for investigation]; *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d

10   1426, 1436-1437.)

11          Further, the immunity applies *even if* the investigation never leads to an actual

12   prosecution. (*Jacqueline T. v. Alameda County Child Protective Services* (2007) 155 Cal.App.4th

13   456, 468, fn. 5 [social worker's actions in connection with an investigation were immunized, even

14   though the social worker decided not to institute an administrative or judicial proceeding];

15   *Ingram, supra,* 74 Cal.App.4th 1280, 1293 [district attorney's conduct was an exercise of

16   prosecutorial discretion immunized under section 821.6 even though he decided not to prosecute

17   an action]; *Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1047.)

18          If Section 821.6 immunity did not cover investigations, two undesirable effects would

19   occur:  (1) public employees such as Thella Bowens, the Airport Authority's CEO, who are

20   charged with responsibility to initiate investigations, would be dissuaded from investigating

21   potentially unlawful activities for fear of facing liability for an investigation if they were wrong

22   about their suspicion of whether unlawful activity was occurring; or (2) all investigations would

23   lead to prosecutions, just to protect those who initiated the investigation from liability, even if a

24   prosecution was not warranted.  Neither result serves the purpose of the statute. (*Javor, supra,* 98

25   Cal.App.4th at pp. 808-809 [purpose of Section 821.6 immunity "'is to encourage fearless

26   performance of official duties'".]; *Kayfetz v. State of California* (1984) 156 Cal.App.3d 491, 497

27   [immunity under Section 821.6 "even from wrongfully motivated action, is granted, as a matter of

28   public policy, to avoid the risk of public officers avoiding their public duty for fear of the burden

REPLY SUPPLEMENTAL BRIEF IN SUPPORT                2
OF SUMMARY JUDGMENT MOTION

1    of trial and risk of its outcome.")

2         Here, there is no doubt that Hernandez' entire action is based on alleged wrongs that were

3    committed arising out of the Authority's investigation of his Ethics Code violations.  (SAC ¶¶ 23-

4    30.)  As stated in the moving papers and supplemental brief, any violation of the Authority's

5    Ethics Code or the California Political Reform Act is prosecutable as a misdemeanor.  (Pub. Util.

6    Code § 170042, subd. (c); Exh. 7, p. 12.)  As a result, the investigation here was preparatory to,

7    and a step in furtherance of, a possible prosecution or proceeding to enforce the Ethics Code.  As

8    such, the Authority is immunized from liability for the investigation under Section 821.6.

9    **B.**    **Section 821.6 Applies to Authority Employees and Agents, Not Just Prosecutors.**

10         Hernandez next argues that Section 821.6 only applies to prosecuting agencies, and not to

11    the Authority.  This argument ignores both the status of the Authority and the case law that

12    applies Section 821.6 to a broad class of employees.  First, the Authority is a "prosecuting

13    authority" in the sense that a violation of its Codes is a misdemeanor and it may prosecute a

14    violation of the Ethics Code.  (Exh. 7, p. 12.)  Second, even if this Court finds that the Authority

15    is not a "prosecutor," Section 821.6 immunity still applies to all employees of a public entity, not

16    just legally trained personnel.  (*Asgari v. City of Los Angeles* (1997) 15 Cal.4th 744, 756-757.)  It

17    even applies to employees who are somewhat removed from a prosecution or administrative

18    proceeding, such as county coroners.  (*Stearns v. County of Los Angeles* (1969) 275 Cal.App.2d

19    134, 137.)

20         *Stearns* provides a clear example of how broadly Section 821.6 reaches.  In *Stearns*, the

21    county coroner performed an autopsy on plaintiff Stearns' wife, the results of which led to the

22    prosecution of Stearns for the murder of his wife.  Stearns then sued the county coroner, claiming

23    that the coroner's negligent autopsy was the proximate cause of the wrongful prosecution of

24    Stearns.  The court held on demurrer that the county coroner was immune under Section 821.6 for

25    his alleged negligent autopsy because the autopsy was the triggering information that led to

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY SUPPLEMENTAL BRIEF IN SUPPORT
OF SUMMARY JUDGMENT MOTION

3

90-1251

1  initiating a judicial proceeding. (*Id.* at p. 137.)[1]

2        The Authority in this case plays much the same role as the coroner in *Stearns*. The

3  Authority was a gatherer of information in the investigation and the Authority prepared results of

4  its investigation, much like the coroner performed an autopsy and prepared a report of his

5  investigation. A District Attorney could rely upon the information gathered in the Authority's

6  investigation of Hernandez in order to initiate a criminal proceeding against Hernandez, much like

7  the County relied on the coroner's autopsy report in initiating its criminal proceeding against

8  Stearns. The Authority's actions in conducting that investigation are thus immune under Section

9  821.6 as an investigation that could be used to initiate a criminal action, just as the coroner's

10  actions were immune. Once again, it makes no difference whether a prosecutorial proceeding has

11  been, or ever will be, initiated. (*Jacqueline T., supra,* 155 Cal.App.4th at p. 468, fn. 5.)

12  **III. THE CASES RELIED UPON BY HERNANDEZ ARE INAPPOSITE AND DO NOT**

13  **NEGATE SECTION 821.6 IMMUNITY**

14        Hernandez tries to cast doubt on the applicability of Section 821.6 immunity by citing

15  cases involving false arrest, dissimilar whistleblower statutes, and the doctrines of exhaustion of

16  administrative remedies and due process. However, none of the concepts presented in the cases

17  cited by Hernandez apply to this case.

18  **A.      False Arrest Cases Have No Bearing on the Case at Hand.**

19        Hernandez' supplemental opposition focuses largely on cases holding that a police officer

20  is not immune for false arrest under Section 821.6, even if the purported crime that led to the

21  arrest is later prosecuted. Hernandez' reliance on these false arrest cases is misplaced because

22  there is a narrow exception to Section 821.6's immunity for false arrest cases. Case law has made

23

24  [1] Other cases are in accord in applying the immunity to non-prosecutors. (See e.g. (E.g., *Alicia T. v.
County of Los Angeles* (1990) 222 Cal.App.3d 869, 882-883 [county and its social workers held immune
from liability under Section 821.6 for alleged negligence in investigating report of child molestation];

25  *Jenkins v. County of Orange* (1989) 212 Cal.App.3d 278, 282-283 [county and its social workers held
immune from liability under Section 821.6 for "fail[ing] to use due care by not thoroughly investigating

26  the child abuse report"; *Ronald S. v. County of San Diego* (1993) 16 Cal.App.4th 887, 899 [county held
immune from liability under Section 821.6 for negligent selection of an adoptive home for a dependent

27  child].)

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY SUPPLEMENTAL BRIEF IN SUPPORT          4
OF SUMMARY JUDGMENT MOTION

1    it clear that since Government Code section 820.4 specifically provides liability for false

2    imprisonment, Section 821.6 cannot provide immunity for false arrest or false imprisonment.

3    (See *Gillan*, *supra*, 147 Cal.App.4[th] at pp. 1048-49, citing *Sullivan v. County of Los Angeles*

4    (1974) 12 Cal.3d 710, 719-722; *Asgari*, *supra*, 15 Cal.4[th] at p. 754.)[2] There is no similar

5    judicially or legislatively created exception to the immunity in Section 821.6 for an investigation,

6    such as the one that the Authority conducted with regard to Hernandez.[3] Even the *Asgari* court

7    recognized that the false arrest and false imprisonment carve-out is narrow, and does not preclude

8    immunity for other causes of action, even for those causes of action arising from information that

9    a public officer may provide to a prosecutor in connection with a false arrest. (*Ibid.* at p. 759.)

10   As a result, none of the cases relied upon by Hernandez that hold a public entity liable for false

11   arrest or false imprisonment are applicable to this case. (See Supp. Opp. 3:17-4:5.)

12   **B.      *Shoemaker v. Myers* Does Not Foreclose Section 821.6 Immunity.**

13            Hernandez' reliance on *Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407 to defeat the

14   investigatory immunity in section 821.6 is also unavailing. In *Shoemaker*, the employee brought a

15   whistleblower action under Government Code section 19683. Section 19683 provides a remedy to

16   an individual where a public employee uses official authority to harm another public employee, and

17   its broad stated purpose is to hold all state officers personally accountable. (*Id.* at p. 1423.) The

18   *Shoemaker* court declined to apply Section 821.6 because to do so would negate a specific statute

19   (Section 19683) designed with the sole purpose of holding state actors responsible. However, the

20   court in *Shoemaker* held that Section 821.6 did apply to the broader tort of common law retaliation,

21

22   [2] *Gillan* specifically discusses why the portion of *Asgari v. City of Los Angeles* (1997) 15 Cal.4[th] 744, on
     which Hernandez relies, is inapplicable to this case. As explained in *Gillan*, the exception to Section

23   821.6 for false arrest cases only applies to the actual tort or cause of action arising out of the confinement
     of the individual. (*Gillan* at pp. 1049-50.) Section 821.6 immunity still applies, however, to any

24   information gathered in the course of the arrest, and any action taken on that information. (*Ibid.; Asgari,
     supra*, 15 Cal.4[th] at p. 759.) Since Hernandez does not allege false arrest or imprisonment, the portion of

25   *Asgari* that holds defendants liable for false arrest or imprisonment prior to prosecution does not apply.

26   [3] The dissenting opinion in *Farnam v. State of California* (2000) 84 Cal.App.4[th] 1448, contains a
     discussion of the expansive scope given to Section 821.6, and the narrow carve-out from Section 821.6 for

27   false arrest and imprisonment cases. (*Id.* at pp. 1457-1460; See also *Jenkins, supra*, 212 Cal.App.3d at pp.
     283-284.)

28

90-1253

1    also known as wrongful termination in violation of public policy. (*Id.* at p. 1425.)

2           A Labor Code section 1102.5 claim, such as the one brought here, is more like a common

3    law wrongful termination in violation of public policy claim or a claim under the Fair Employment

4    Housing Act ("FEHA") in that, unlike Government Code section 19683, Section 1102.5 and the

5    FEHA are laws of general application, sweeping broadly across both the private and public sectors.

6    Most importantly, unlike Government Code section 19683, Section 1102.5 does not create any

7    personal liability for public employees, which was the basis upon which the Supreme Court

8    declined to apply Section 821.6 immunity to the statutory whistleblower claim.

9           Although no published cases have applied Section 821.6 immunity to a Labor Code section

10   1102.5 claim, the Supreme Court in *Caldwell v. Montoya* (1995) 10 Cal.4th 972 discussed the

11   applicability of governmental immunities to broader statutes of general application.  In *Caldwell*,

12   the Court held that FEHA, a statute of broad application, "promotes much more general policies

13   throughout the public and private sectors and advances no specifically *governmental* interest that

14   would support a finding of intent to abrogate any immunity of public employees." (*Id.* at p. 986,

15   fn. 7.)  Similarly, Labor Code section 1102.5 promotes general policies in both the public and

16   private sector and advances no specific governmental interest.  Thus, unlike the public employee

17   whistleblower statute applied in *Shoemaker*, which was designed specifically to hold state actors

18   personally liable, there is nothing in Labor Code section 1102.5 that forecloses the immunity in

19   Government Code section 821.6.  Accordingly, the reasoning of *Montoya*, not *Shoemaker*, applies

20   here.

21   **C.    The Administrative Exhaustion Doctrine and Due Process Concerns are Inapplicable**

22         **to an Analysis of Section 821.6.**

23          Hernandez confusingly cites to a number of cases that analyze whether the doctrine of

24   exhaustion of administrative remedies applies to certain internal grievance proceedings and to the

25   due process concerns that are inherent in civil service proceedings.  (See Supp. Opp. 2:20-3:1 and

26   p. 5, fn. 2)  However, neither the exhaustion of administrative remedies doctrine nor due process

27   concerns are applicable to an analysis of the applicability of Section 821.6.

28          In *Payne v. Anaheim Memorial Medical Center, Inc.* (2005) 130 Cal.App.4th 729, a case

90-1254

1    cited by Hernandez, the court examined whether a doctor had to exhaust, or utilize, a hospital's

2    internal grievance procedures before pursuing a cause of action under the Unruh Civil Rights Act.

3    Under the well-settled exhaustion doctrine, the court does not have jurisdiction over any lawsuit

4    unless and until a plaintiff utilizes internal grievance procedures or remedies, if those grievance

5    procedures are available and adequate. (*Id.* at pp. 742-743.) Thus, in exhaustion cases, the

6    critical inquiry is whether the *plaintiff* has exhausted or utilized all internal remedies before suing

7    in court. Here, the application of Section 821.6 does not depend on whether Hernandez utilized

8    any internal grievance procedures. Instead, the focus is on whether the Authority conducted an

9    investigation that could lead to, or was part of, an administrative or judicial proceeding under the

10   meaning of Section 821.6. As stated earlier, the investigation into Hernandez' actions was such

11   an investigation and the immunity applies.

12          Similarly, Hernandez focuses on whether the Authority's investigation met certain due

13   process concerns. (See Opp. p. 5, fn. 2.) Hernandez' argument seems to be that the only way that

14   a proceeding can qualify as an "administrative proceeding" under Section 821.6 is if that

15   proceeding complies with due process requirements, such as a *Skelly* hearing. (*Ibid.*) However,

16   Hernandez' assertion is simply that – just his assertion. There is no support for his argument in

17   any published cases, including those relied upon by Hernandez in his opposition. Simply put,

18   Section 821.6 cases have not required that an "administrative proceeding" meet any particular due

19   process requirements in order for the immunity to apply. Even if there was such a requirement

20   that the administrative or judicial proceeding comply with due process concerns, there is no doubt

21   that the potential criminal prosecutorial trial (which is the end result of a prosecution of an Ethics

22   Code violation in this case) has due process safeguards built in sufficient for it to qualify as a

23   judicial or administrative proceeding under Section 821.6.

24   **IV. THE AUTHORITY CONTINUES TO ASSERT ALL OTHER DEFENSES RAISED**

25                **IN ITS MOTION FOR SUMMARY JUDGMENT**

26          Hernandez' final point in his opposition confuses two separate and alternate grounds

27   raised by the Authority (among others) in its moving papers in support of motion for summary

28   judgment. The first ground referenced by Hernandez, which is the subject of this supplemental

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY SUPPLEMENTAL BRIEF IN SUPPORT
OF SUMMARY JUDGMENT MOTION

7

90-1255

1    briefing, is whether Section 821.6 applies to the Authority's investigation and termination of

2    Hernandez.  The second ground referenced by Hernandez, which is not the subject of this

3    supplemental briefing, is whether Hernandez adequately exhausted his administrative remedies

4    under Labor Code section 96 as to his Labor Code section 1102.5 claim.  To be clear, the

5    Authority has not abandoned any of its defenses in this matter.  Instead, the Authority simply did

6    not brief the other defenses because such briefing was not requested by the Court.

### V.  CONCLUSION

8    Since the purpose and character of the Authority's investigation was to investigate

9    potential violations of its Ethics Code and the Act, the investigation falls within the ambit of

10   Section 821.6, and the immunity must apply.  As a result, summary judgment for the Authority is

11   appropriate.  The Authority also urges the Court to grant summary judgment and/or adjudication

12   based on the additional grounds set forth in the moving and reply papers already on file with the

13   Court.

Dated: December 7, 2007                    PAUL, PLEVIN, SULLIVAN &
                                           CONNAUGHTON LLP

                                           By: _____
                                              FRED M. PLEVIN
                                              SANDRA L. MCDONOUGH
                                              ALBERT R. LIMBERG
                                              Attorneys for Defendant
                                              SAN DIEGO COUNTY REGIONAL
                                              AIRPORT AUTHORITY

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

REPLY SUPPLEMENTAL BRIEF IN SUPPORT
OF SUMMARY JUDGMENT MOTION.

8

90-1256

1  *Hernandez v. San Diego County Regional Airport Authority*
   SDSC Case No. GIC871979

2                          **PROOF OF SERVICE**

3

4          I, the undersigned, hereby declare that I am over the age of eighteen years and not a party
   to this action. I am employed, or am a resident of, the County of San Diego, California, and my
   business address is: Paul, Plevin, Sullivan & Connaughton LLP, 401 B Street, Tenth Floor, San

5  Diego, California 92101.

6          On December 7, 2007, I caused to be served the following document(s):

7          •     **DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT
                 AUTHORITY'S REPLY IN SUPPORT OF ITS SUPPLEMENTAL BRIEF**

8                **REGARDING GOVERNMENT CODE SECTION 821.6 IN SUPPORT OF
                 ITS MOTION FOR SUMMARY JUDGMENT OR, IN THE**

9                **ALTERNATIVE, SUMMARY ADJUDICATION**

10  on the interested party (ies) in this action by placing ☑ a true copy ☐ the original thereof and
    addressed as follows:

11
                          Cathryn Chinn / Peter G. Friesen
12                         1901 First Avenue, Suite 400
                           San Diego, CA 92101
13                  Tel: 619-294-9183 / Fax: 619-295-4190
                    **Attorney for Plaintiff Jose Hernandez**

14
    ☐      (By **MAIL SERVICE**) I then sealed each envelope and, with postage thereon fully
15         prepaid postage, I placed each for deposit with United States Postal Service, this same
           day, at my business address shown above, following ordinary business practices.

16
    ☑      (By **FACSIMILE**) I transmitted the documents by facsimile machine, pursuant to
17         California Rules of Court, Rule 2006. The facsimile machine I used complied with Rule
           2003 and no error was reported by the machine. The transmitting facsimile machine
18         number is **619-615-0700**. The fax number of the party being served is **619-295-9529**.
           Pursuant to Rule 2006.

19
    ☑      (By **OVERNIGHT DELIVERY**) I caused to be delivered such envelope by hand to the
20         office of the addressee. I then sealed each envelope and, with postage thereon fully
           prepaid, I placed each for deposit this same day, at my business address shown above,
21         following ordinary business practices for overnight delivery.

22          I declare under penalty of perjury under the laws of the State of California that the
    foregoing is true and correct.

23
    Executed December 7, 2007, at San Diego, California.
24

25

26                                          _____
                                                    Martha Martinez
27

28

90-1257

**Overnite Express**

(800) 683-7648
overniteexpress.com



| Service Required | |
|---|---|
| Morning Overnite | ☑ |
| Residence | ☐ |
| Declared Value | ☐ |

COD AMOUNT
$

I AUTHORIZE RELEASE OF THIS SHIPMENT WITHOUT SIGNATURE OF RECIPIENT.

RELEASE SIGNATURE:

**SHIPMENT NUMBER: 20948-300097-283**          **1 of 1**

| INTERNAL BILLING REFERENCE | ACCOUNT NUMBER |
|---|---|
| **SDCRAA/Hernandez** | **20948** |

3rd PARTY BILLING ACCOUNT # (OPTIONAL)

DATE
**12/07/2007**

| FROM (YOUR NAME) | YOUR PHONE # |
|---|---|
| **Martha Martinez** | **(619) 237-5200** |

COMPANY
**Paul Plevin Sullivan & Connaughton**

| STREET | FLOOR OR SUITE |
|---|---|
| **401 B Street** | **10th Floor** |

| CITY | STATE | ZIPCODE (REQUIRED) |
|---|---|---|
| **San Diego** | **CA** | **92101** |

| DELIVER TO | PHONE # |
|---|---|
| **Cathryn Chinn** | **(619) 294-9183** |

COMPANY
**c/o Winters & Assoc.**

| STREET (WE CANNOT DELIVER TO PO BOXES) | FLOOR OR SUITE |
|---|---|
| **1901 First Ave.** | **Suite 400** |

| CITY | STATE | ZIPCODE |
|---|---|---|
| **San Diego** | **CA** | **92101** |



1.1.2.6

**20948-300097-283**

SPECIAL INSTRUCTIONS:

Please fold this form on the dotted line and place it in the pouch on your shipment. Only one copy is required by Overnite Express. WARNING: Use only the printed label for shipping. Using a photocopy of this label for shipping purposes is fraudulent and could result in additional billing charges, along with cancellation of your Overnite Express account. Shipments with invalid account numbers will not be delivered.

90-1258

P. 1

```
TRANSMISSION  REPORT


                                    (FRI) DEC  7 2007 15:09
                                    PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

USER NAME      : 9295419O
DESTINATION    : 92954190              DOCUMENT#    : 511262646-905
DEST. NUMBER   : 9295419O              TIME STORED  : 15:05, 12/ 7
F CODE         :                       TIME SENT    : 15:05, 12/ 7
                                       DURATION     : 3min,45sec
                                       MODE         : ECM

PAGES          : 11 sheets
RESULT         : OK
```

## PPSC
## PAUL, PLEVIN,
## SULLIVAN &
## CONNAUGHTON LLP

401 B STREET, TENTH FLOOR, SAN DIEGO, CA 92101

PHONE 619-237-5200 | FAX 619-615-0700 | WWW.PAULPLEVIN.COM

### FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| TO | CATHRYN CHINN | DATE | December 7, 2007 |
| COMPANY | | FROM | Martha for: |
| | | | Sandra L. McDonough |
| FAX NO | 619-295-4190 | PHONE | (619) 744-3641 |
| PHONE NO | 619-294-9183 | NO OF PAGES | 11, including this page |
| RE | SD Airport Authority/Hernandez | | |

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ FOR YOUR INFORMATION

90-1259



PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

401 B STREET, TENTH FLOOR, SAN DIEGO, CA 92101
PHONE 619·237·5200 | FAX 619·615·0700 | WWW.PAULPLEVIN.COM

---

## FACSIMILE TRANSMITTAL

| | | | |
|---|---|---|---|
| TO | CATHRYN CHINN | DATE | December 7, 2007 |
| COMPANY | | FROM | Martha for: Sandra L. McDonough |
| FAX NO | 619-295-4190 | PHONE | (619) 744-3641 |
| PHONE NO | 619-294-9183 | NO OF PAGES | 11, including this page |
| RE | SD Airport Authority/Hernandez | | |

---

☐ URGENT  ☐ FOR REVIEW  ☐ PLEASE COMMENT  ☐ PLEASE REPLY  ☐ FOR YOUR INFORMATION

---

See attached.

This facsimile transmission contains confidential information from this firm. This information is intended solely for the person or entity named as a recipient. If you are not the intended recipient, any disclosure, copying, distribution, or use of this information is prohibited. If you receive this transmission by error, please notify us by telephone immediately so that we may arrange to retrieve this information at no cost to you.

**90-1260**

BLUEBIRD
OFFICE SUPPLIES
(888) 477-0700
www.bluebirdonline.com

**EXHIBIT 91**

1  Cathryn Chinn, Esq. (State Bar 93340)
   Peter G. Friesen, Esq. (State Bar 107631)
2  1901 First Avenue, Suite 400
   San Diego, California 92101
3  Telephone (619) 234-9000
   Facsimile (619) 699-1159
4

5

   Attorney for Plaintiff
6  JOSE HERNANDEZ

7

8          SUPERIOR COURT OF THE STATE OF CALIFORNIA

9     COUNTY OF SAN DIEGO, CENTRAL BRANCH, GENERAL UNLIMITED

10  JOSE HERNANDEZ,                    Case No. : GIC 871979

11              Plaintiff,             PLAINTIFF JOSE HERNANDEZ'
                                       OBJECTION TO DEFENDANT'S REPLY IN
12  v.                                 SUPPORT OF ITS SUPPLEMENTAL BRIEF
                                       RE GOVERNMENT CODE § 821.6 IN
13  SAN DIEGO COUNTY REGIONAL          SUPPORT OF ITS MOTION FOR
    AIRPORT AUTHORITY, a public entity SUMMARY JUDGMENT OR, IN THE
14  and DOES 1 through 12, Inclusive,  ALTERNATIVE, SUMMARY
                                       ADJUDICATION
15              Defendants.
                                       DATE:      December 14, 2007
16                                     TIME:      1:30 p.m.
                                       DEPT.:     75
17                                     JUDGE:     HON. RICHARD E. STRAUSS
                                       ACTION FILED:   9/1/06
18                                     TRIAL DATE:     1/4/08

19

20         Plaintiff JOSE HERNANDEZ hereby objects to the introduction of a new line of argument

21  presented by way of reply, specifically, page 1, lines 25-26: "Since this Action arises out of the

22  investigation of Hernandez' alleged ethical violations and the resulting termination, Section 821.6

23  applies."

24         The original argument was that Hernandez' termination was subject to a prosecutorial

25  immunity because it was a part of a judicial or administrative proceeding. The new argument is that

26  if an investigatory act is subject to immunity, all subsequent acts based on that investigation are

27  likewise immune, whether or not they are part of an administrative proceeding. Hernandez,

28  however, is not suing the Authority for its conduct of an investigation, but for its termination of his

       PL'S OBJ. TO DEF'S REPLY IN SUPP. OF ITS SUPPL. BRF RE GOV'T CODE § 821.6 IN SUPP. OF SJMO

1  employment.

2      It is apparently now settled that the termination of Hernandez' employment was not a judicial

3  or administrative proceeding–there being no evidence or authority to suggest otherwise.  Hernandez,

4  therefore, objects to any new argument that allegedly immune investigative acts (which immunity

5  Hernandez also disputes) likewise immunize all conduct purporting to be based on or inspired by

6  such investigation.  That argument was not part of the Authority's moving papers.  Hernandez can

7  address that contention if the Court so desires.

8

9  DATED:  December 10, 2007

10                                          CATHRYN CHINN, ESQ.
                                            PETER G. FRIESEN, Attorneys for
11                                          Plaintiff JOSE HERNANDEZ

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PL'S OBJ. TO DEF'S REPLY IN SUPP. OF ITS SUPPL. BRF RE GOV'T CODE § 821.6 IN SUPP. OF SJMO
- 2 -

91-1262

1    **Hernandez v. San Diego County Regional Airport Authority**
Superior Court Case No. GIC 871979

2                            **DECLARATION OF SERVICE BY MAIL**

3        I am, and was at the time of service of the papers herein referred to, over the age

4    of eighteen years and not a party to the action. I am employed in the County of San Diego,

5    State of California, in which county the service occurred. My business address is 1901

6    First Avenue, Suite 400, San Diego, California. I served the following document(s):

7    PLAINTIFF JOSE HERNANDEZ' OBJECTION TO DEFENDANT'S REPLY IN SUPPORT
OF ITS SUPPLEMENTAL BRIEF RE GOVERNMENT CODE § 821.6 IN SUPPORT OF ITS
8    MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY
ADJUDICATION
9

10   on the parties in said action by placing a true copy thereof enclosed in a sealed envelope

11   with postage fully prepaid, in the United States Mail at the corner of First and Grape

12   Streets, in San Diego, California, addressed as follows:

13                            **SEE ATTACHED LIST**

14       I declare under penalty of perjury under the laws of the State of California that the

15   foregoing is true and correct. Executed on December 10, 2007, at San Diego, California.

16

17                                    Silvia Flores

18

19

20

21

22

23

24

25

26

27

## SERVICE LIST

FRED M. PLEVIN (SBN 126185)
SANDRA L. MCDONOUGH (SBN 193308)
ALBERT R. LIMBERG (SBN 211110)
PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP
401 B Street, Tenth Floor
San Diego, California 92101-4232
Telephone: 619-237-5200
Facsimile: 619-615-0700

AMY S. GONZALEZ (SBN 181745)
SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY
3225 N. Harbor Drive
San Diego, CA 92138
Telephone: (619) 400-2425
Facsimile: (619) 400-2428
**ATTORNEYS FOR DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT
AUTHORITY**

91-1264

1   FRED M. PLEVIN (SBN 126185)
    SANDRA L. MCDONOUGH (SBN 193308)
2   ALBERT R. LIMBERG (SBN 211110)
    **PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
3   401 B Street, Tenth Floor
    San Diego, California 92101-4232
4   Telephone: 619-237-5200
    Facsimile: 619-615-0700
5

6   AMY S. GONZALEZ (SBN 181745)
    **SAN DIEGO COUNTY REGIONAL AIRPORT
    AUTHORITY**
7   3225 N. Harbor Drive
    San Diego, CA 92138
8   Telephone: (619) 400-2425
    Facsimile: (619) 400-2428
9

10   Attorneys for Defendant
    SAN DIEGO COUNTY REGIONAL AIRPORT
11   AUTHORITY

12

13           SUPERIOR COURT OF THE STATE OF CALIFORNIA

14                   COUNTY OF SAN DIEGO

15   JOSE HERNANDEZ,                 CASE NO. GIC871979

16           Plaintiff,             **NOTICE OF NEWLY PUBLISHED CASE IN
                            SUPPORT OF DEFENDANT SAN DIEGO
17       v.                       COUNTY REGIONAL AIRPORT
                            AUTHORITY'S MOTION FOR SUMMARY
18   SAN DIEGO COUNTY REGIONAL      JUDGMENT**
    AIRPORT AUTHORITY, a public entity;
19   and DOES 1 through 12, inclusive,

20           Defendants.         Date:           December 14, 2007
                                   Time:          1:30 p.m.
21                               Dept:          75
                                   Judge:         Hon. Richard E. Strauss
22                               Complaint Filed:   September 1, 2006
                                   Trial Date:      January 4, 2008
23                                      **EXEMPT FROM FEES
                                       GOVT. CODE § 6103**
24

25

26          Defendant San Diego County Regional Airport Authority (the "Authority") hereby brings

27   the recent California case of *Richardson-Tunnell v. School Insurance Program for Employees*

28   (2007) ___ Cal.Rptr.3d ___, 2007 WL 4295547, to the Court's attention in connection with the

NOTICE OF NEWLY PUBLISHED CASE IN         1
SUPPORT OF MSJ

*FILED*
*DEC 1 1 2007*
*By: M. WONG-MARTINEZ, Deputy*

1   Authority's motion for summary judgment, which will be heard on December 14, 2007.

2   *Richardson-Tunnell* case was decided on December 10, 2007, after the Authority submitted its

3   supplemental reply brief in support of its motion for summary judgment.

4        *Richardson-Tunnell* applied Government Code section 821.6 immunity to actions taken as

5   part of an investigation. *Richardson-Tunnell* also held that Section 821.6 applied to the plaintiff's

6   cause of action under Civil Code section 1708.8 because nothing in Civil Code section 1708.8

7   evidences an intent to create new government liability. In so holding, the court found that Section

8   821.6, a specific statute that provides immunity to public employees, controls over a more general

9   statute, such as Civil Code section 1708.8, which creates liability for all persons, both public and

10  private.

11        A copy of the *Richardson-Tunnell* decision is attached as Exhibit A for the Court's

12  convenience.

13

    Dated: December 11, 2007             PAUL, PLEVIN, SULLIVAN &

14                                CONNAUGHTON LLP

15

16                           By: *Sandra L. McDonough*

17                             FRED M. PLEVIN
                                 SANDRA L. MCDONOUGH

18                             ALBERT R. LIMBERG
                               Attorneys for Defendant

19                             SAN DIEGO COUNTY REGIONAL
                               AIRPORT AUTHORITY

20

21

22

23

24

25

26

27

28

NOTICE OF NEWLY PUBLISHED CASE IN
SUPPORT OF MSJ           2



--- Cal.Rptr.3d ---
--- Cal.Rptr.3d ----, 2007 WL 4295547 (Cal.App. 2 Dist.)
(Cite as: --- Cal.Rptr.3d ----)

Page 1

KLARE **RICHARDSON-TUNNELL**, Plaintiff and
Appellant, v. SCHOOL INSURANCE PROGRAM
FOR EMPLOYEES (SIPE) et al., Defendants and
Respondents.
Cal.App. 2 Dist.,2007.
KLARE **RICHARDSON-TUNNELL**, Plaintiff and
Appellant,
v.
SCHOOL INSURANCE PROGRAM FOR
EMPLOYEES (SIPE) et al., Defendants and
Respondents.
2d Civil No. B195938

Filed 12/10/07

(Super. Ct. No. CV 050780B) (San Luis Obispo
County)CERTIFIED FOR PUBLICATION
Klare Richardson-Tunnell appeals from a judgment
of dismissal after an order granting judgment on the
pleadings in favor of School Insurance Program for
Employees (SIPE) and Lucia Mar Unified School
District (District), each public entities. (Code Civ.
Proc., § 438.) In the course of an investigation into
Richardson-Tunnell's worker's compensation claim,
SIPE and the District videotaped her at her wedding,
at the wedding reception, and during her honeymoon.

The trial court found that her claims were barred by
governmental investigatory immunity (Gov.Code, §
821.6), [FN1] and that a plaintiff may not sue for
damages based on violation of the privacy clause of
article I, section 1 of the California Constitution.
Richardson-Tunnell contends (1) that SIPE and the
District waived governmental immunity by failing to
plead it, (2) that governmental immunity does not
apply to the alleged conduct, (3) that Civil Code
section 1708.8 provides an exception to
governmental immunity, and (4) that monetary
damages are available for violation of
constitutionally protected privacy. We reject the first
three contentions, and do not reach the fourth.
Accordingly, we affirm.

> 1. All statutory references are to the
> Government code unless otherwise
> stated.*Factual and Procedural History*
We set forth the facts as they are alleged in
Richardson-Tunnell's third amended complaint.
Richardson-Tunnel was a teacher employed by the

District (District). SIPE is a joint insurance
organization that administers workers compensation
claims for the District. Richardson-Tunnell suffered a
back injury at work, and in June of 2003 she
underwent disc replacement surgery. She was
married in October of 2003, while on disability leave.

SIPE and the District, with other defendants, directed
Anthony Esparza and Eye-Con Investigations
(Esparza) to surreptitiously attend Richardson-
Tunnell's wedding for the purpose of videotaping her.
On the day of the wedding, Esparza misrepresented
himself as an invited guest and videotaped the
ceremony and the reception. The wedding and
reception were held at the Victorian Pitkin-Conrow
House in Arroyo Grande, which Richardson-Tunnell
had rented for her exclusive use. On the morning
after the wedding, Esparza used a telephoto lens to
videotape Richardson-Tunnel and her husband while
they sunbathed on the second floor balcony of their
rented room at the Cliffs Resort. Esparza also
videotaped the honeymooners as they left the hotel,
and he followed them through Cambria, California.
SIPE and the District do not dispute that Richards-
Tunnell had a right to privacy at her wedding
ceremony, reception and honeymoon. Richardson-
Tunnel does not dispute that SIPE and the District are
public entities.

Richardson-Tunnell filed suit against SIPE, the
District, Anthony Esparza, Eye-Con Investigations,
and others, asserting four causes of action: (1)
violation of her constitutional right to privacy, (2)
violation of Civil Code section 1708.8, (3) general
negligence, and (4) invasion of privacy-intrusion. She
sought compensatory damages, treble damages
pursuant to Civil Code section 1708.8, and punitive
damages. SIPE and the District moved for judgment
on the pleadings. The court granted their motion
without leave to amend and dismissed all causes of
action against SIPE and District.
*Standard of Review*
A motion for judgment on the pleadings serves the
function of a demurrer, challenging only defects on
the face of the complaint. (*Cloud v. Northrop-
Gruman Corp.* (1998) 67 Cal.App.4th 995, 999.) On
review, we render our independent judgment on the
question whether the complaint states a cause of
action. (*Gerawan Farming, Inc. v. Lyons* (2000) 24
Cal.4th 468, 515.) We assume the truth of all material

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2007 WL 4295547 (Cal.App. 2 Dist.)
(Cite as: --- Cal.Rptr.3d ----)

Page 2

factual allegations of the complaint. (*Fisher v. City of Berkeley* (1984) 37 Cal.3d 644, 679, fn. 31.) "In view of the fact that tort causes of action against public entities are now based on statute, the general rule that statutory causes of action must be pleaded with particularity is applicable. Every fact essential to the existence of statutory liability must be pleaded." (*Susman v. City of Los Angeles* (1969) 269 Cal.App.2d 803, 809.)

The grounds for a motion for judgment on the pleadings must appear on the face of the complaint or from a matter of which the court may take judicial notice. (Code Civ. Proc., § 438, subd. (d).) On July 13, 2007, we granted SIPE and District's request for judicial notice of (1) the legislative history of Civil Code section 1708.8, and (2) voter information regarding Proposition 11 in 1972 and Proposition 7 in 1974.

*Government Tort Liability*

SIPE and the District are each public entities. A public entity is not liable for any injury "[e]xcept as otherwise provided by statute."(§ 815, subd. (a).) Any statutory liability is subject to statutory immunity. (§ 815, subd. (b).) A public entity is not liable for conduct by an employee for which that employee is immune. (§ 815.2, subd. (b).) A public employee is immune from liability for instituting or prosecuting judicial or administrative proceedings. (§ 821.6.)

*SIPE and District Did Not Waive Section 821.6 Immunity*

We reject Richardson-Tunnell's contention that SIPE and the District waived governmental immunity by failing to assert it in their answer to the complaint. Government tort immunity is jurisdictional and may be raised for the first time on appeal. (*Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426, 1435.) SIPE and District timely asserted immunity as a defense by raising it as a ground for their motion for judgment on the pleadings.

*The Alleged Conduct is Within the Scope of Government Code Section 821.6 Immunity*

Richardson-Tunnell contends that the alleged conduct of SIPE and District employees is not within the scope of section 821.6 because they intended to harass her, their conduct was not part of a criminal investigation or disciplinary action, and they acted outside the scope of employment. We disagree.

Government tort immunity applies to intentional tortious conduct unless the immunity statute provides otherwise. (*Gates v. Superior Court* (1995) 32 Cal.App.4th 481, 510.)Section 821.6 provides that "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause." "California courts construe section 821.6 broadly in furtherance of its purpose to protect public employees in the performance of their prosecutorial duties from the threat of harassment through civil suits." (*Gillan v. City of San Marino* (2007) 147 Cal.App.4th 1033, 1048.)

Investigations are considered to be part of judicial and administrative proceedings for purposes of section 821.6 immunity. (*Kemmerer v. County of Fresno, supra*, 200 Cal.App.3d at pp. 1436-1437.) Investigation of Richardson-Tunnel's workers' compensation claim is the sole purpose of the surveillance that can be inferred from the allegations of the complaint. An investigation is cloaked in immunity because it is an essential step to instituting administrative proceedings. (*Ibid.*) Richardson-Tunnel alleges that the administrators of her workers' compensation claim trespassed and invaded her privacy in the course of their investigatory surveillance. Their investigatory conduct is immune from tort liability. Immunity extends to investigations even if there is a later decision not to institute administrative proceedings or to initiate a prosecution. (*Ingram v. Flippo* (1999) 74 Cal.App.4th 1280, 1293.)

The alleged conduct was within the scope of public employment. Section 821.6 immunity applies only to conduct within the scope of employment. An employee is acting in the course and scope of his employment when he is engaged in work he was employed to perform, or when the act is incident to his duty and is performed for the benefit of his employer, not to serve his own purposes or convenience. (*Mazzola v. Feinstein* (1984) 154 Cal.App.3d 305, 311.) Scope of employment is ordinarily a question of fact for the jury (*Mary M. v. City of Los Angeles* (1991) 54 Cal.3d 202, 221), but where only one reasonable inference can be drawn we may decide the question as a matter of law. (*Fowler v. Howell* (1996) 42 Cal.App.4th 1746, 1751.) Richardson-Tunnel's complaint alleges that SIPE and the District "directed, solicited, induced or caused" the surveillance. The only reasonable inference to be drawn from these allegations is that the surveillance was incident to investigatory duties for the benefit of SIPE and the District, and was not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

92-1268

--- Cal.Rptr.3d ---
--- Cal.Rptr.3d ----, 2007 WL 4295547 (Cal.App. 2 Dist.)
(Cite as: --- Cal.Rptr.3d ----)

Page 3

for any individual public employee's own purposes. Whether the investigatory duties were carried out negligently, maliciously, or without probable cause, they were within the scope of employment for purposes of *section 821.6*. (*Baughman v. State* (1995) *38 Cal.App.4th 182, 192.)* In any case, if surveillance was conducted outside the course and scope of employment or by non-employees, section 815.2 would not impose any liability upon SIPE and the District.

*Civil Code Section 1708.8 Does Not Provide an Exception to the Immunity Afforded By Government Code Section 821.6*

Richardson-Tunnell contends that *Civil Code section 1708.8* creates an exception to governmental investigatory immunity. *Section 1708.8* was introduced in 1998 as Senate Bill 262. It was enacted in September of that year to protect against the "aggressive and often dangerous paparazzi-like behavior" of tabloid journalists. (Sen. Rules Com., Office of Senate Floor Analyses, 3d reading analysis of Sen. Bill No. 262 (1997-1998), as amended Aug. 18, 1998.) In the year preceding its enactment, Lady Diana, Princess of Wales, had been killed in a paparazzi auto chase, and the public became increasingly outraged about intrusive tabloid journalism. (See *Shulman v. Group W. Productions, Inc.* (1998) 18 Cal.4th 200.)[FN2] *Section 1708.8* imposes liability for an invasion of privacy with the intent to capture a visual image, sound recording or other physical impression of the plaintiff engaging in a personal or familial activity. As a remedy, it provides treble damages as well as disgorgement of profits. (*Id.*, subd. (d).)

> 2. In *Shulman,* an accident victim's statements to emergency personnel were surreptitiously recorded by a flight nurse on a medical evacuation helicopter and then broadcast in an episode of the television series "On Scene: Emergency Response." (*Shulman v. Group W. Productions, Inc., supra*, 18 Cal.4th at p. 209.)

*Civil Code section 1708.8* is outside the Tort Claims Act. "[T]he general rule is that the dominant immunity will override a liability created by a statute outside of the Tort Claims Act." (*Gates v. Superior Court, supra,* 32 Cal.App.4th at p. 510.) Thus, *section 821.6* will override liability created by *Civil Code section 1708.8,* absent an expression of legislative intent to the contrary. Richardson-Tunnell argues the reverse, citing *Gillan v. City of San*

*Marino, supra,* 147 Cal.App.4th 1033. That case is inapposite. In *Gillan,* the plaintiff asserted a claim for false arrest pursuant to *Civil Code section 52.1.* The *Gillan* court held that *section 821.6* immunity did not override *section 52.1* liability because the Tort Claims Act specifically authorized an action for false arrest against a public employee. (§ 820.4; *Gillan,* at pp. 1048-1049.) In our case, no provision of the Tort Claims Act authorizes an action for invasion of privacy against a public employee.

"[C]ourts which have considered the effect of Tort Claims Act immunity on legislatively adopted statutory causes of action have always characterized the question as one of legislative intent." (*Gates v. Superior Court, supra,* 32 Cal.App.4th at p. 510.) Nothing in *Civil Code section 1708.8* or its legislative history evidences an intent to create new government liability. We first look to the language of the statute, which specifically exempts a broad array of public and private investigations, including otherwise lawful governmental investigations: "This section shall not be construed to impair or limit any otherwise lawful activities of law enforcement personnel or employees of governmental agencies or other entities, either public or private who, in the course and scope of their employment, and supported by an articulable suspicion, attempt to capture any type of visual image, sound recording, or other physical impression of a person during an investigation, surveillance, or monitoring of any conduct to obtain evidence of suspected illegal activity, the suspected violation of any administrative rule or regulation, a suspected fraudulent insurance claim, or any other suspected fraudulent conduct or activity involving a violation of law or pattern of business practices adversely affecting the public health or safety." (Civ.Code, § 1708.8, subd. (g).)

The legislative history of *Civil Code section 1708.8* also demonstrates intent to preserve governmental immunities. An early legislative analysis for the Assembly Committee on Judiciary stated, *"[T]his bill:* [¶] ... [¶] 4) Specifically exempts legitimate law enforcement and other governmental agency activities from the scope of these causes of action." (Assem. Com. on Judiciary, analysis of Sen. Bill No. 262 (1997-1998 Reg. Sess.) as amended July 23, 1998.) Similarly, a Senate third reading analysis stated, *"[T]his bill:* [¶] ... [¶] Specifically exempts from the scope of these causes of action lawful activities of law enforcement of other governmental agencies or other entities, public or private, designed

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- Cal.Rptr.3d ---
--- Cal.Rptr.3d ---, 2007 WL 4295547 (Cal.App. 2 Dist.)
(Cite as: --- Cal.Rptr.3d ----)

Page 4

to obtain evidence of suspected illegal activity or insurance fraud." (Sen. Rules Com., Office of Senate Floor Analyses, 3d reading analysis of Sen. Bill No. 262 (1997-1998), as amended Aug. 20, 1998.)

Richardson-Tunnell argues that section 1708.8, subdivision (g) demonstrates a legislative intent to create liability for government investigations that are not supported by an "articulable suspicion." The plain language of subdivision (g) does not support this interpretation. It is an exemption provision and does not create any new liability: "This section shall not be construed to impair or limit any otherwise lawful activities...." When section 1708.8 was enacted, governmental immunity already existed for investigations incident to judicial and administrative proceedings. Whether such investigations also fall within subdivision (g) of section 1708.8's exemption provision is immaterial.

Section 821.6 and Civil Code section 1708.8 are not in conflict. Even if they were, section 821.6 would control. Section 821.6 is a specific statute that provides immunity to public employees that are engaged in prosecutorial and investigatory activities. Civil Code section 1708.8 is a general statute that creates liability against all persons engaged in paparazzi-like activities. A more specific statute prevails over a more general statute. (Code Civ. Proc., § 1859.) This is true even if the more general statute is more recent. (Agricultural Labor Relations Bd. v. Superior Court (1976) 16 Cal.3d 392, 420.) The specific immunity statute controls.

The legislative history also does not support Richardson-Tunnell's interpretation. After the "articulable suspicion" language was added to Senate Bill 262 in August of 1998, legislative analysts continued to describe the bill as "Exempt[ing] from the scope of these causes of action lawful activities of law enforcement of other governmental agencies or other entities, public or private, designed to obtain evidence of suspected illegal activity, insurance fraud, or a pattern of business practices which adversely affect the health or safety of the public." (Sen. Rules Com., Office of Senate Floor Analyses, 3d reading analysis of Sen. Bill No. 262 (1997-1998), as amended Aug. 18, 1998; accord Sen. Rules Com., Office of Senate Floor Analyses, 3d reading analysis of Sen. Bill No. 262 (1997-1998), as amended Aug. 20, 1998; Sen. Rules Com., Office of Sen. Floor Analyses, Unfinished Business, analysis of Sen. Bill No. 262 (1997-1998) as amended August 20, 1998.)

There is no reference after the amendment to the "articulable suspicion" language, to any new governmental liability, nor to limitation of pre-existing governmental immunities. We conclude that the exemption provision of Civil Code section 1708.8, subdivision (g) cannot be construed to impose liability upon a public entity where section 821.6 specifically affords immunity.

*Tort Damages for Invasion of Constitutionally Protected Privacy*

Injunctive relief is available as a remedy for violation of the privacy clause of the California Constitution (White v. Davis (1975) 13 Cal.3d 757), but Richardson-Tunnell seeks only damages. The trial court found that Richardson-Tunnell could not state a cause of action for damages for violation of the privacy clause. Our Supreme Court has not yet considered whether violation of the privacy clause permits an action for damages. (Katzberg v. Regents of University of California (2002) 29 Cal.4th 300, 313, fn. 13, 315, fn. 16.) We need not resolve the question. Whether or not damages are permitted, Richardson-Tunnell cannot state a cause of action for violation of the privacy clause because the alleged conduct is within the scope of section 821.6 immunity.

The constitutional right to privacy does not limit the scope of a preexisting statutory immunity. Richardson-Tunnell argues that section 821.6 immunity does not apply to invasions of privacy because statutory immunities do not defeat liability for invasions of constitutional rights. For this she relies upon a dissenting opinion in Gates v. Superior Court, supra, 32 Cal.App.4th 481, 526 (dis. opn. of Grignon, J.) and upon Urbaniak v. Newton (1991) 226 Cal.App.3d 1128, 1141. Urbaniak involved the litigation privilege of Civil Code section 47. Its holding is contrary to the recent decision of the Supreme Court that "the litigation privilege applies even to a constitutionally based privacy cause of action." (Jacob B. v. County of Shasta (2007) 40 Cal.4th 948, 961.) In Jacob B. the Court reasoned that "we are not aware of anything in the ballot materials or history of the 1972 initiative that added the constitutional right to privacy that suggested any intent to limit the scope of this preexisting privilege or to create a right of privacy that would prevail over the privilege. Rather, as we explain, we believe the constitutional right contains within it a limitation previously based on statute. When the voters adopted California Constitution, article I, section 1, they did so mindful of the preexisting litigation privilege."

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.



--- Cal.Rptr.3d ----
--- Cal.Rptr.3d ----, 2007 WL 4295547 (Cal.App. 2 Dist.)
**(Cite as: — Cal.Rptr.3d —)**

Page 5

(*Ibid.*) We assume the voters were similarly mindful of preexisting governmental tort immunities.

The voter information materials for the 1972 initiative demonstrate the intent to restrain "governmental snooping" and compilation of "cradle to grave" "dossiers of American citizens." (Voter Information Pamphlet for Proposition 11, General Election November 7, 1972, p. 26.) The restraint on governmental snooping is accomplished by the availability of injunctive relief for invasion of privacy. (*White v. Davis, supra,* 13 Cal.3d 757.) Government tort liability for damages for otherwise immune conduct was not an intended result.

The judgment is affirmed. Costs are awarded to respondents.

*CERTIFIED FOR PUBLICATION.*

COFFEE, J.

We concur:

YEGAN, Acting P.J.

PERREN, J.

　　　　Martin J. Tangeman, Judge

　　　Superior Court County of San Luis Obispo

Law Office of Daniel J. O'Neill and Daniel J. O'Neill for Plaintiff and Appellant Klare Richardson-Tunnell.

Cumberland, Coates & Duenow, David M. Cumberland, Greg A. Coates, and Kevin R. Anderson for Defendants and Respondents Schools Insurance Program for Employees and Lucia Mar Unified School District.

Cal.App. 2 Dist.,2007.
Richardson-Tunnell v. School Ins. Program for Employees (SIPE)
--- Cal.Rptr.3d ----, 2007 WL 4295547 (Cal.App. 2 Dist.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## PROOF OF PERSONAL SERVICE

I, the undersigned, certify and declare that I am a citizen of the United States, over the age of eighteen, employed in the County of San Diego, State of California, and not a party to the within-entitled action.  My business address is 4665 Park Blvd., San Diego, CA  92116.

On December 11, 2007, I served a true copy of the within:

- **NOTICE OF NEWLY PUBLISHED CASE IN SUPPORT OF DEFENDANT SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR SUMMARY JUDGMENT**

by delivering for personal service to the following:

Cathryn Chinn / Peter G. Friesen
1901 First Avenue, Suite 400
San Diego, CA 92101
Tel: 619-294-9183 / Fax:  619-295-4190
**Attorneys for Plaintiff Jose Hernandez**

I hereby certify that I am employed by Diversified Legal Services, at whose direction the personal service was made.

Executed December 11, 2007, at San Diego, California.

DIVERSIFIED LEGAL SERVICES
MESSENGER

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

PROOF OF PERSONAL SERVICE                    1

92-1272



BLUEBIRD (888) 477-0700
OFFICE SUPPLIES www.bluebirdonline.com

**EXHIBIT 93**

1  Lawrence J. Kouns, State Bar No. 095417
   Marc J. Feldman, State Bar No. 144830
2  LUCE, FORWARD, HAMILTON & SCRIPPS LLP
   600 West Broadway, Suite 2600
3  San Diego, California 92101-3372
   Telephone No.: 619.236.1414
4  Fax No.: 619.232.8311
   E-Mail:    mfeldman@luce.com
5
   Attorneys for Edward Patrick Swan, Jr.
6

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9        FOR THE COUNTY OF SAN DIEGO, SAN DIEGO JUDICIAL DISTRICT

10

11 | JOSE HERNANDEZ,                         | Case No. GIC 871979

12 |        Plaintiff,                       | **REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER [CCP § 2025.420]**

13 | v.

14 | SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY, a public entity and | 

15 | DOES 1 through 12, inclusive,           | Date:    December 19, 2007
                                              Time:    9:00 a.m. (*ex parte* calendar)
16 |        Defendants.                      | Dept:    75
                                              Judge:   Hon. Richard E. L. Strauss

17 |                                         | Trial Date: January 4, 2008

18          **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

19                                  **I.**

20                            **INTRODUCTION**

21          The deposition subpoena served on Edward Patrick Swan, Jr. ("Mr. Swan") by Plaintiff Jose

22 Hernandez ("Plaintiff") is Plaintiff's last-ditch effort to conjure up a response to the defenses raised in

23 Defendant San Diego County Regional Airport Authority's (the "Airport Authority") motion for

24 summary judgment.  In this act of desperation, Plaintiff is trying to get more than he is entitled to -

25 specifically, documents related to Mr. Swan's investigation of Plaintiff that are clearly protected by

26 the attorney work product protection and attorney-client privilege.  The Court should quash the

27 deposition subpoena and the accompanying document requests.

28

                                    1
   REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE
                            ORDER [CCP § 2025.420]

## II.

## THE COURT SHOULD QUASH THE DEPOSITION NOTICE AND SUBPOENA

**A.   The Documents Demanded in the Subpoena are Privileged and Neither the Airport Authority Nor Mr. Swan has Waived the Privilege**

   **1.   The Documents Demanded are Protected by the Attorney Work-Product Privilege and Attorney-Client Privilege.**

In the deposition subpoena served on Mr. Swan, Plaintiff demands that Mr. Swan produce at his deposition, among other things

> [a]ll notes, memoranda, reports, letters, and audio recordings…reflecting, mentioning or otherwise pertaining to the investigation of [Plaintiff's] alleged violation(s) of ethical rules[,]

> [a]ll notes, memoranda, reports, letters, or other oral communications and audio recordings reflecting, mentioning or otherwise pertaining to conversations with all officers, directors, agents and/or employees of the Airport Authority…

and

> [t]he complete electronic folder(s) and/or subdirectory(s) which contain(s) the computerized record of the final version of [Mr. Swan's] report on [Plaintiff], as well as rough drafts of that report.

(See Deposition Subpoena and Plaintiff Jose Hernandez' Notice of Deposition of Witness Edward P. Pat Swan, Jr., and Documents to be Produced at the Deposition, attached to the Notice of Lodgment in support of Movant Edward P. Swan Jr.'s Motion for Protective Order ("NOL"), Ex. 1.) Code of Civil Procedure section 2018.030 provides <u>an absolute bar</u> to the discovery of any writing that reflects an attorney's impressions, conclusions, opinions, or legal research or theories. (See Code Civ. Proc. § 2018.030.) The documents demanded by Plaintiff fall into this category. Plaintiff does not argue otherwise in his Opposition. Moreover, many of the documents are communications between the Airport Authority and Mr. Swan, and thus protected by the attorney-client privilege. Again, Plaintiff does not dispute this point. Plaintiff's sole argument in opposition to the motion for protective order is that the privilege has been waived.

/ / /

/ / /

/ / /

2

REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR PROTECTIVE ORDER [CCP § 2025.420]