FRED M. PLEVIN (SBN 126185)
SANDRA L. MCDONOUGH (SBN 193308)
ALBERT R. LIMBERG (SBN 211110)
**PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
401 B Street, Tenth Floor
San Diego, California 92101-4232
Telephone: 619-237-5200
Facsimile: 619-615-0700

AMY S. GONZALEZ (SBN 181745)
**SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY**
3225 N. Harbor Drive
San Diego, CA 92138
Telephone: (619) 400-2425
Facsimile: (619) 400-2428

Attorneys for Defendants
SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY and THELLA BOWENS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSE HERNANDEZ,

Plaintiff,

v.

SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY, a public entity; THELLA BOWENS, an individual; and DOES 1 through 20, inclusive,

Defendants.

CASE NO. 3:08-cv-00184-L-CAB

**DEFENDANT THELLA BOWENS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION TO DISMISS HERNANDEZ' THIRD AMENDED COMPLAINT**
**[F.R.C.P. Rule 12 (b)(6)]**

Date: May 19, 2008
Time: 10:30 a.m.
Dept.: 14
Judge: Honorable James Lorenz

[Magistrate Judge Cathy Ann Bencivengo]

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1

II. THE COURT SHOULD DISMISS PLAINTIFF'S SOLE CLAIM UNDER 42 U.S.C. SECTION 1983 ..... 2

III. HERNANDEZ' FIRST AMENDMENT CLAIM FAILS BECAUSE HIS ALLEGED DISCLOSURES ARE NOT PROTECTED SPEECH ..... 3

A. *Garcetti v. Ceballos* and Other Recent Cases Establish that Disclosures or Complaints by Public Employees Made in the Course of Their Public Employment Are Not Subject to Protection Under the First Amendment as a Matter of Law. ..... 4

B. Hernandez's Statements Are Not Protected by the First Amendment Because They Were Made Pursuant to His Duties as a Public Employee ..... 6

C. The Court can Dispose of Hernandez' First Amendment Claim on a Motion to Dismiss ..... 8

IV. DEFENDANTS DID NOT INFRINGE HERNANDEZ' LIBERTY INTERESTS ..... 9

V. HERNANDEZ FAILS TO PLEAD AN EQUAL PROTECTION CLAIM ..... 11

VI. BOWENS IS ENTITLED TO QUALIFIED IMMUNITY FROM HERNANDEZ' SECTION 1983 CLAIMS ..... 11

VII. CONCLUSION ..... 14

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Anderson v. Creighton*
483 U.S. 635 (1987)........................................12

*Balistreri v. Pacifica Police Department*
902 F.2d 696 (9th Cir. 1990)........................................1

*Barren v. Harrington*
152 F.3d 1193 (9th Cir.1998)........................................11

*Bell Atlantic Corp. v. Twombly*, ---, U.S.
127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)........................................3

*Biggs v. Best, Best & Krieger*
189 F.3d 989 (9th Cir. 1999)........................................12

*Bledsoe v. City of Horn Lake, Miss.*
449 F.3d 650 (5th Cir. 2006)........................................10

*Board of Regents v. Roth*
408 U.S. 564 (1972)........................................10

*Bollow v. Federal Reserve Bank*
650 F.2d 1093 (9th Cir. 1981)........................................2, 10

*Brady v. Gebbie*
859 F.2d 1543 (9th Cir. 1988)........................................9

*Brewster v. Board of Education of Lynwood Unified School District*
149 F.3d 971 (9th cir. 1998)........................................12, 13

*Camarillo v. McCarthy*
998 F.2d 638 (9th Cir. 1993)........................................12

*Cohen v. San Bernardino Valley College*
92 F.3d 968 (9th Cir. 1996)........................................12

*Coszalter v. City of Salem*
320 F.3d 968 (9th Cir. 2003)........................................3

*Freitag v. Ayers*
468 F.3d 528 (9th Cir. 2006)........................................5, 6, 8, 13

*Garcetti v. Ceballos*
543 U.S. 1186 (2005)........................................13

*Garcetti v. Ceballos*
547 U.S. 410 (2006)........................................1, 2, 4, 5, 8, 13

*Harlow v. Fitzgerald*
457 U.S. 800 (1982)........................................11, 12

*Hughes v. City of Garland*
204 F.3d 223 (5th Cir. 2000) .......... 10, 11

*Iqbal v. Hasty*
490 F.3d 143 (2d Cir.2007) .......... 3

*Malley v. Briggs*
475 U.S. 335 .......... 12

*L.W. v. Grubbs*
974 F.2d 119 (9th Cir. 1992) .......... 1

*Lee v. City of Los Angeles*
250 F.3d 668 (9th Cir 2001) .......... 11

*McGee v. Public Water Supply District #2*
471 F.3d 918 (8th Cir. 2006) .......... 6, 8

*North Star International v. Arizona Corp. Commission*
720 F.2d 578 (9th Cir. 1983) .......... 3

*Patterson v. City of Utica*
370 F.3d 322 (2d Cir. 2004) .......... 10

*Quinn v. Shirey*
293 F.3d 315 (6th Cir. 2002), *cert. denied,* 537 U.S. 1019, 123 S.Ct. 538, 154 L.Ed.2d 426 (2002) .......... 10

*Robertson v. Dean Witter Reynolds, Inc.*
749 F.2d 530 (9th Cir. 1984) .......... 2

*Rosenstein v. City of Dallas*
876 F.2d 392 (5th Cir. 1989) .......... 10

*Saucier v. Katz*
533 U.S. 194 (2001) .......... 11

*Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*
245 F.2d 67 (9th Cir. 1956) .......... 3

*Weisbarth v. Geauga Park District*
499 F.3d 538 (6th Cir. 2007) .......... 8

*Western Mining Council v. Watt*
643 F.2d 618 (9th Cir. 1981) .......... 3

*Winskowski v. City of Stephen*
442 F.3d 1107 (8th Cir. 2006) .......... 10

*Wood v. Strickland*
420 U.S. 308 (1975) .......... 12

///


## FEDERAL STATUTES

42 U.S.C.A. § 1983 ........................................ 1

42 U.S.C. § 1983 ........................................ 1, 2, 14

# I. INTRODUCTION

Defendant San Diego County Regional Airport Authority (the "Authority") removed this action to this Court following a successful summary adjudication motion in state court. At the hearing where the Superior Court announced its intention to grant summary judgment on Plaintiff Jose Hernandez' entire Second Amended Complaint, Hernandez orally sought, and was granted, leave to file a Third Amended Complaint ("TAC"). Hernandez' TAC was a last ditch effort to resurrect his defunct whistleblower and California Labor Code section 1102.5 claims by characterizing them as civil rights violations under 42 U.S.C. section 1983. His effort was unsuccessful.

Hernandez alleges the following two purported constitutional violations in the TAC against the Authority and Thella Bowens, the Authority's chief executive: (1) that the defendants terminated his employment in retaliation for exercising free speech rights guaranteed by the First Amendment; and (2) the defendants violated his liberty interests guaranteed by the 14th Amendment by failing to provide him with a "name clearing" hearing.[1] Both of these claims fail on their face.

Hernandez' act of desperation is creative, but ultimately unavailing. The basis of any Section 1983 claim is the deprivation of a constitutional right. 42 U.S.C.A. § 1983; *L.W. v. Grubbs* 974 F.2d 119, 120 (9th Cir. 1992); *Balistreri v. Pacifica Police Dept.*, 902 F.2d 696, 699 (9th Cir. 1990). The primary problem with Hernandez' constitutional claim is that he has not pleaded, nor can he plead, that he was deprived of any constitutional rights.

First, Hernandez' claim that he was terminated in retaliation for exercising his First Amendment rights fails because he did not engage in "protected speech". Under the rule set forth by the United States Supreme Court in *Garcetti v.*

---

[1] Hernandez also makes vague references to equal protection violations, but there are absolutely no facts alleged in the complaint to support an equal protection claim against Defendants.

*Ceballos*, 547 U.S. 410 (2006), public employee speech that is made pursuant to the employee's job duties is not entitled to First Amendment protection as a matter of law. In this case, it is clear from Hernandez' TAC that the alleged disclosures were made pursuant to his job duties (TAC ¶16, p. 10:5-7), and as such his claim falls directly within the *Garcetti* rule.

Second, Hernandez cannot allege sufficient facts to establish the violation of his constitutional liberty interests. Hernandez claims he was entitled to a name clearing hearing because the reasons for the termination[2] involved stigmatizing information, but he has failed to allege the public disclosure of the reasons for his resignation, or that he requested a name clearing hearing, which by itself is fatal to this claim. *Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1101 (9th Cir. 1981), *cert. denied*, 455 U.S. 948 (1982).

Because Hernandez fails to set forth the necessary elements of his claim, defendant Thella Bowens respectfully requests this Court dismiss Plaintiff's Third Amended Complaint without leave to amend.[3]

## II. THE COURT SHOULD DISMISS PLAINTIFF'S SOLE CLAIM UNDER 42 U.S.C. SECTION 1983

A district court should dismiss any claim that either lacks a cognizable legal theory or fails to state sufficient facts to support a cognizable legal theory. Fed. Rules Civ. Proc. rule 12(b)(6); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In considering a motion to dismiss under Rule 12(b)(6), material factual allegations should be accepted as true, but legal conclusions need

---

[2] Although Hernandez alleges that he was terminated, he actually chose to resign. TAC ¶ 43, page 27, lines 3-7.

[3] Bowens was served with the TAC after the Authority removed this action. The Authority answered the complaint in state court prior to removal, and will file a motion for judgment on the pleadings, to be heard at the same time as Bowens' Rule 12 motion. The primary grounds for the Authority's motion for judgment on the pleadings are the same as the grounds for Bowens' motion, except that Bowens has asserted the additional defense of qualified immunity, discussed in Section VI, *infra*.

not be. *North Star Int'l v. Arizona Corp. Comm'n,* 720 F.2d 578, 580 (9th Cir. 1983); *Western Mining Council v. Watt,* 643 F.2d 618, 624 (9th Cir. 1981). In addition, a court may take judicial notice of facts outside the pleadings. *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956). In this case, the court should dismiss the complaint with prejudice and without leave to amend because it does not contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* --- U.S. ----, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (announcing the "retirement" of the "no set of facts" formulation for dismissing a complaint on a Rule 12 motion and applying the plausibility standard); *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir.2007) (applying the *Twombly* plausibility standard in the context of a motion to dismiss Section 1983 claims).

## III. HERNANDEZ' FIRST AMENDMENT CLAIM FAILS BECAUSE HIS ALLEGED DISCLOSURES ARE NOT PROTECTED SPEECH

The first alleged constitutional violation upon which Hernandez bases his section 1983 claim is retaliation in violation of his First Amendment rights. In order to prevail on this claim, Hernandez must allege and prove that: (1) he engaged in protected speech; (2) he suffered an adverse employment action; and (3) his speech was a substantial factor for the adverse employment actions. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Hernandez' claim fails at the first prong of the test.

Hernandez bases his entire First Amendment claim on alleged disclosures that he claims were "directly related to his job." (TAC at ¶16.) Specifically, Hernandez alleges that he disclosed to his direct supervisor and other Authority executives regarding alleged improper decisions or actions by the Authority regarding lease, land use and tenant improvement issues, and alleged contract irregularities involving a parking vendor. (See generally, TAC at ¶¶10-14, 35, 45-47.) Since these alleged disclosures were within Hernandez' job duties as the

Authority's Director of Landside Operations,[4] his disclosures are without First Amendment protection as detailed in the recent United States Supreme Court decision, *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006).

Two inquiries guide the interpretation of a whether a public employee engaged in protected speech. The first requires determining whether the employee spoke pursuant to his duties as a public servant, or as a private citizen on a matter of public concern. *Garcetti,* 126 S.Ct. at 1958. *Garcetti* held that a public employee's speech or disclosures are not protected under the First Amendment where the subject speech comprises disclosures that the public employee made pursuant to his duties. *Garcetti,* 126 S.Ct. at 1960. If the alleged protected speech by the public employee was as a private citizen, as opposed to part of his duties, the second question then becomes whether the public employer had an adequate justification for treating the employee differently from any other member of the general public. *Garcetti,* 126 S.Ct. at 1958.

*Garcetti,* as well as other recent precedent, conclusively establishes that the First Amendment claim Hernandez has put forth in his TAC cannot survive the first inquiry. Each of the disclosures detailed by Hernandez was made pursuant to his duties as a public employee. As such, they fall within the *Garcetti* rule, and therefore, outside the scope of First Amendment protection as a matter of law.

**A. *Garcetti v. Ceballos* and Other Recent Cases Establish that Disclosures or Complaints by Public Employees Made in the Course of Their Public Employment Are Not Subject to Protection Under the First Amendment as a Matter of Law.**

The plaintiff in *Garcetti*, Richard Ceballos, was a calendar deputy in the Los Angeles District Attorney's office, with supervisory responsibilities over other

[4] Hernandez asserts in his TAC that the Authority is a "public entity." (TAC ¶2, p. 2:8-15.) As such, he was a public employee.

lawyers. *Garcetti*, 126 S.Ct. at 1955. After a request by a defense attorney, Ceballos investigated alleged inaccuracies in an affidavit used to obtain a critical search warrant and concluded the affidavit contained serious misrepresentations. *Id.* at 1955. Ceballos wrote a disposition memorandum recommending the case be dismissed. *Id.* at 1955-56. His supervisors proceeded with the prosecution despite Ceballos' recommendation, and Ceballos was called as a defense witness to recount his observations about the affidavit. *Id.* at 1956. When he was reassigned, transferred, and denied a promotion, Ceballos filed suit alleging violations of his First Amendment rights in retaliation for his disposition memorandum. *Id.* at 1956. The Supreme Court held that Ceballos' speech did not qualify for First Amendment protection because it was made as an employee, and not as a citizen. *Id.* at 1956. The controlling factor in *Garcetti* was whether the employee's expressions were made pursuant to his duties. *Id.*, at 1959-1960. If the speech is made by a public employee pursuant to their official duties, the speech is not afforded First Amendment protection. *Id.* at 1956-60.

Similarly, in *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006), a former correctional facility officer at Pelican Bay State Prison sued several administrators claiming they had retaliated against her for engaging in constitutionally protected speech. During her tenure as a corrections officer, Freitag had numerous encounters with prisoners engaging in sexual exhibitionist behavior. *Id.* at 533-34. Freitag submitted multiple reports recommending and/or requesting the offending inmate(s) receive discipline. *Id.* at 533-34. Prison officials repeatedly ignored, discarded, and/or denied the disciplinary requests. Freitag wrote letters to the warden, the associate warden, and the director of the California Department of Corrections and Rehabilitation ("CDCR") (in Sacramento), complaining about her supervisors' responses (or lack thereof) to the alleged incidents and the resulting hostile work environment, recommending enforcement of CDCR policies regarding repeat offenders, and requesting prison officers receive additional training. *Id.* at

533-34. Freitag also complained to a California Senator and cooperated with the resulting investigation by the Inspector General. *Id.* at 535.

While Freitag acted as a citizen when she complained to the Senator and communicated with the Inspector General's office, the court determined that her internal complaints were made pursuant to her duties as a correctional officer, and thus not constitutionally protected. *Id.* at 545-46.

Finally, in *McGee v. Public Water Supply Dist. #2*, 471 F.3d 918 (8th Cir. 2006), a former district manager's position was eliminated after he made statements questioning compliance with environmental regulations on two separate projects. McGee claimed he was terminated in retaliation for exercising his First Amendment rights. The court disagreed, holding that McGee's statements were made pursuant to his official duties, and not entitled to First Amendment protection. *McGee*, 471 F.3d at 921.

**B. Hernandez's Statements Are Not Protected by the First Amendment Because They Were Made Pursuant to His Duties as a Public Employee**

Like the public employees in *Garcetti, Freitag*, and *McGee*, Hernandez' disclosures were made pursuant to his duties as Director, Landside Operations. Indeed, Hernandez concedes these disclosures were "directly related to his job." (TAC ¶16, p. 10:5-7.) Further, according to the TAC, Hernandez performed the following job duties: "represent[ed] the Authority in dealing with tenants and contractors" (TAC ¶4, p. 3:8-9) and "managed the operations of the airport terminal buildings, the parking lots, the ground transportation services and provided expert assistance in the planning and long-range decision making for managing the airport's facilities." (TAC ¶4, p. 3:2-5.) Hernandez alleges he was "specifically required to make decisions in operating the parking facilities to ensure the highest levels of efficiency [and] economic advantage." (TAC ¶4, p. 3:6-8.) Hernandez "reported directly to the Vice President, Airport Operations, who had managerial responsibility for all aspects of airport operations." (TAC ¶ 4,

p. 3:5-6.) The Vice President of Airport Operations was Hernandez' direct supervisor, a person to whom "Plaintiff consistently and constantly reported . . . all actions and events he was involved in, and withheld no information regarding his own activities, viewpoints, opinions and observance of the activities of other employees, including management." (TAC ¶7, p. 3:22-25.)

Hernandez alleges four disclosures or protected activities, all of which were made as part of the above-referenced job duties:

The first disclosure involved an alleged "handshake" deal between Bryan Enarson (an Authority Vice President) and Host (an airport concessionaire) that allegedly restricted the Operations Division's ability to acquire space for a women's restroom, which allegedly impacted the project's budget. (TAC ¶10, p.5:15-17; ¶35, p. 22:16-23). This disclosure, which Hernandez made to "members of the Authority" (TAC ¶11, p. 5:25.), falls squarely within the duty to manage the operations of the airport terminal buildings and provide "expert assistance in the planning and long-range business decision making for managing the airport facilities," as well as representing the Authority in dealing with tenants and contractors. TAC ¶4, p. 3:2-5 and 3:8-9.

The second and third disclosures involved perceived financial problems with a lease of property formerly occupied by General Dynamics, for airport parking (TAC ¶12, p. 6:5-14; ¶35, p. 22:24-23:1) and alleged environmental and financial issues related to the long-term lease of property formerly occupied by Teledyne Ryan, for airport parking (TAC ¶13, p. 6:23-7:19; ¶35, p. 23:2-6), respectively. The second disclosure was made directly to Hernandez' supervisor, the Vice President of Airport Operations (TAC ¶45, p. 27.), while the third disclosure was made at closed door committee and staff meetings. (TAC ¶13, p. 7:13-15; TAC ¶46, p. 27:20-23.) These disclosures fall under Hernandez' duty to manage the operations of the parking lots and his duty to "ensure the highest levels of

///

efficiency [and] economic advantage" of the airport's parking facilities. TAC ¶4, p. 3:2-8.

The fourth and final disclosure involved Lindbergh Parking, Inc. ("LPI") (an airport contractor), and its purported computational errors in a bid submission, unsatisfactory contract performance, failure to submit required insurance information, and "other offenses and actions that indicated a lack of business integrity by LPI." (TAC ¶14, 9:19-26; ¶35, p. 23:7-9.) Hernandez discovered the conduct giving rise to his final disclosure while fulfilling his duty to "represent the Authority in dealing with tenants and contractors" as well as his duty to manage parking lot and ground transportation operations. (TAC ¶4, p. 3:2-5.) He was likewise fulfilling his duty when he reported the perceived problems to his direct supervisor. (TAC ¶ 14, p. 9:19-20.)

Because it is clear from Hernandez' own admission and from the allegations in the TAC that the alleged disclosures were made pursuant to his duties as a public employee, as opposed to as a private citizen speaking on matters of public concern, he is not afforded First Amendment protection for these statements.[5] *Garcetti*, 126 S.Ct. at 1956-60; *Freitag*, 468 F.3d at 545-46; *McGee*, 471 F.3d at 921. As such, Hernandez' Section 1983 claim fails to the extent it relies upon the First Amendment right to freedom of speech.

**C. The Court can Dispose of Hernandez' First Amendment Claim on a Motion to Dismiss**

Since Hernandez has alleged specific facts regarding his job duties as they relate to the disclosures that he made, it is proper for this court to dispose of Hernandez' First Amendment claim on a motion to dismiss. *Weisbarth v. Geauga Park District,* 499 F.3d 538, 546 (6th Cir. 2007). In *Weisbarth*, a former employee

[5] Because Plaintiff fails to get past the first hurdle of the analysis, Defendant will not in these moving papers address the remaining elements.

of the county park district brought a First Amendment retaliation claim against the park district alleging that she was terminated in retaliation for comments that she made to a consultant hired by the park district to interview employees as part of a departmental evaluation. The district court granted the park district's motion to dismiss, and the Sixth Circuit affirmed, holding that Weisbarth did not engage in protected speech under the rule set forth in *Garcetti* because Weisbarth statements to the consultant were pursuant to her official duties rather than as a private citizen, and thus she could not maintain her First Amendment retaliation claim. *Ibid.*

On appeal, Weisbarth argued that the court "should be hesitant to dispose of her First Amendment retaliation case based solely on the pleadings." *Ibid.* The Sixth Circuit disagreed and held that it was appropriate to decide a First Amendment retaliation claim on a motion to dismiss where, as here, the facts required to reach the conclusion that the employee spoke pursuant to his or her official duties rather than as a citizen are all set forth in the pleadings. *Ibid.* It is thus entirely appropriate to decide Hernandez' First Amendment retaliation claim on the pleadings as well, since all the facts regarding his job duties and the manner in which his disclosures relate to his job duties are all set forth in the pleadings, as discussed above.

## IV. DEFENDANTS DID NOT INFRINGE HERNANDEZ' LIBERTY INTERESTS

Hernandez also asserts in his TAC that the defendants violated his "liberty" interest guaranteed by the 14th Amendment, specifically, the right to be free of stigmatizing governmental statements and the right to a name clearing hearing. (TAC ¶¶ 51-52, p. 28:14-29:4.) In order to maintain this claim, Hernandez must allege that the Authority dismissed him for reasons that might seriously damage his standing in the community and that there was a public disclosure of the charges against Hernandez that led to his resignation. *Brady v. Gebbie*, 859 F.2d 1543, 1552 (9th Cir. 1988). In other circuits, courts have also required that the plaintiff

show that he requested a hearing to clear his name. *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000); *Quinn v. Shirey,* 293 F.3d 315, 323 (6th Cir. 2002) ("[A] plaintiff must request and be denied a name-clearing hearing in order to have been deprived of a liberty interest without due process."), *cert. denied,* 537 U.S. 1019, 123 S.Ct. 538, 154 L.Ed.2d 426 (2002); *Bledsoe v. City of Horn Lake, Miss.,* 449 F.3d 650, 653 (5th Cir. 2006) (plaintiff's failure to request a name-clearing hearing was fatal to his liberty interest claim); *Rosenstein v. City of Dallas,* 876 F.2d 392, 396 (5th Cir. 1989) (stating that the elements of a § 1983 claim based upon the lack of a name-clearing hearing include that the employee "requested a hearing in which to clear his name, and that the request was denied"); *Winskowski v. City of Stephen*, 442 F.3d 1107, 1110 (8th Cir. 2006) (same).

Hernandez has not alleged that the Authority published any false statements about him, or that he requested a name clearing hearing. Both of these omissions are fatal to his claim.

First, Hernandez overlooks a critical element to his claim – publication. "Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm 'good name, reputation, honor, or integrity.'" *Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1101 (9th Cir. 1981), *cert. denied*, 455 U.S. 948 (1982). "For this reason alone, [Plaintiff's] liberty claim must fail." *Ibid.* Here, Hernandez does not allege the publication of the reason for his resignation. Without publication, no liberty interest has been infringed as a matter of law. Because Hernandez fails to allege the violation of a liberty interest through publication, a name clearing hearing is not required. *Board of Regents v. Roth*, 408 U.S. 564, 573 & n.12 (1972); *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

Further, Hernandez has not alleged that he requested a hearing to clear his name. Without a request for a name-clearing hearing, there was no need for the

///

Authority to voluntarily offer the hearing and Hernandez' claim also fails. *Hughes,* 204 F.3d at 226.

Because Hernandez' liberty interest was not violated, and he was not entitled to, nor did he request, a name clearing hearing, his claim should be dismissed.

**V. HERNANDEZ FAILS TO PLEAD AN EQUAL PROTECTION CLAIM**

Without identifying the manner in which he was treated differently than others, Hernandez claims he was denied equal protection of the law because he did not get a name-clearing hearing. However, a name clearing hearing was not required under the facts alleged in the TAC (see above). Because the alleged deprivation of a non-existent right cannot form the basis of an equal protection claim, Hernandez' claim necessarily fails.

Aside from this obvious flaw, Hernandez' equal protection claim also fails because he fails to allege that he was treated differently than others on the basis of membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir 2001); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied,* 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999). Without this essential allegation, Hernandez' equal protection claim cannot stand.

**VI. BOWENS IS ENTITLED TO QUALIFIED IMMUNITY FROM HERNANDEZ' SECTION 1983 CLAIMS**

Even if this court finds that Hernandez has adequately stated a constitutional violation, Bowens is entitled to qualified immunity. Public officials performing discretionary functions are entitled to qualified immunity from civil liability and damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[6] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This qualified immunity applies to all

[6] Subsequent case law reveals that qualified immunity is more than just a defense to liability and damages, it is immunity from suit itself. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

public officials who carry out executive and administrative functions. *Wood v. Strickland*, 420 U.S. 308, 319-320 (1975) (overruled on other grounds in *Harlow*, supra, 457 U.S. 800). Administrative functions include employment activities, such as evaluating and disciplining employees. *Cohen v. San Bernardino Valley College*, 92 F.3d 968, 973 (9th Cir. 1996) ("government officials performing discretionary functions, such as . . . demoting, evaluating and disciplining employees are entitled to qualified immunity"). The doctrine of qualified immunity is broad and protects "all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

If a plaintiff sufficiently pleads a constitutional violation, the test for qualified immunity requires a two-part analysis: (1) whether the law governing the official's conduct was clearly established; and (2) if so, whether a reasonable official could believe his or her conduct was lawful. *Biggs v. Best, Best & Krieger*, 189 F.3d 989, 994 (9th Cir. 1999). Hernandez bears the burden of proving that the right allegedly violated was "clearly established" at the time of the Bowens' alleged improper conduct. *Brewster v. Board of Educ. of Lynwood Unified School Dist.*, 149 F.3d 971, 977 (9th cir. 1998); *Camarillo v. McCarthy*, 998 F.2d 638, 639 (9th Cir. 1993).

In determining whether the law was "clearly established," the right allegedly violated "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). General allegations of constitutional violations are not enough to satisfy the "clearly established" requirement. *Anderson*, 483 U.S. at 639.

Hernandez cannot satisfy his burden to prove he had a "clearly established" constitutional right because *Garcetti* and *Freitag* establish that Hernandez' First Amendment rights were not violated. Additionally, these cases also highlight the unsettled nature of the law surrounding a public employee's freedom of speech *at the time of Hernandez' resignation in February 2006*. In *Garcetti*, the Ninth

Circuit held in 2004 that Ceballos' memorandum was protected speech because it, in theory, addressed a matter of public concern. *Garcetti*, 126 S.Ct. at 1956. The petition for writ of certiorari to the United States Court of Appeals for the Ninth Circuit was granted in February 2005. *Garcetti v. Ceballos*, 543 U.S. 1186 (2005). In May 2006, the Supreme Court reversed the Ninth Circuit, holding that speech made by public employees pursuant to their duties is not protected by the First Amendment. *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951. Thus, at the time of Hernandez' resignation in February 2006, the law was unsettled with regard to whether a public employee's statement made pursuant to his job duties is protected speech under the First Amendment.

Similarly, in 2005 and 2006, the Ninth Circuit in *Freitag* was considering whether internal communications by Freitag related to her job duties were constitutionally protected. *Freitag v. Ayers*, 468 F.3d 528.

Even before *Garcetti* and *Freitag* were decided, the Ninth Circuit recognized that a public employee's right to free speech will "rarely, if ever, be sufficiently 'clearly established' to preclude qualified immunity under *Harlow* and its progeny." *Brewster*, 149 F.3d at 979-80 (citations omitted).

In light of *Garcetti* and *Freitag*, and the near impossible burden recognized in *Brewster*, it cannot be said that Hernandez' free speech rights were so "clearly established" as to preclude the application of qualified immunity. Thus, even if this Court determines Hernandez' disclosures might be protected, Bowens is nonetheless entitled to qualified immunity because Hernandez' right was not "clearly established."

Because Hernandez cannot prove he had "clearly established" right to a name-clearing hearing under the facts alleged in the TAC, Bowens is likewise entitled to qualified immunity from Hernandez' due process and equal protection claims.

///

## VII. CONCLUSION

Despite Hernandez' creative re-invention of his claims, his newly remodeled 42 U.S.C. section 1983 claims fail to get off the ground. For the reasons set forth above, Bowens respectfully requests this Court grant her motion to dismiss. Because Hernandez has already had four chances to plead his case, and because Hernandez' TAC establishes that he cannot state an actionable claim, Bowens respectfully requests this Court deny Hernandez a fifth opportunity, and grant this motion without leave to amend.

Dated: March 3, 2008

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

By: ______________________
FRED M. PLEVIN
SANDRA L. MCDONOUGH
ALBERT R. LIMBERG
Attorneys for Defendants
SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY and THELLA BOWENS