FRED M. PLEVIN (SBN 126185)
SANDRA L. MCDONOUGH (SBN 193308)
ALBERT R. LIMBERG (SBN 211110)
**PAUL, PLEVIN, SULLIVAN & CONNAUGHTON** LLP
401 B Street, Tenth Floor
San Diego, California 92101-4232
Telephone: 619-237-5200
Facsimile: 619-615-0700

AMY S. GONZALEZ (SBN 181745)
**SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY**
3225 N. Harbor Drive
San Diego, CA 92138
Telephone: 619-400-2425
Facsimile: 619-400-2428

Attorneys for Defendants
SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY and THELLA BOWENS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JOSE HERNANDEZ,

Plaintiff,

v.

SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY, a public entity; THELLA BOWENS, an individual; and DOES 1 through 20, inclusive,

Defendants.

CASE NO. 08 CV 0184 L CAB

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Date: May 19, 2008
Time: 10:30 a.m.
Dept. 14
Judge: Honorable James Lorenz

[Magistrate Judge Cathy Ann Bencivengo]

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .......... 1

II. THE COURT SHOULD DISMISS PLAINTIFF'S SOLE CLAIM UNDER 42 U.S.C. SECTION 1983 .......... 2

III. HERNANDEZ' FIRST AMENDMENT CLAIM FAILS BECAUSE HIS ALLEGED DISCLOSURES ARE NOT PROTECTED SPEECH .......... 3

A. *Garcetti v. Ceballos* and Other Recent Cases Establish that Disclosures or Complaints by Public Employees Made in the Course of Their Public Employment Are Not Subject to Protection Under the First Amendment as a Matter of Law. .......... 4

B. Hernandez's Statements Are Not Protected by the First Amendment Because They Were Made Pursuant to His Duties as a Public Employee .......... 6

C. The Court can Dismiss Hernandez' First Amendment Claim on a Motion for Judgment on the Pleadings .......... 8

IV. DEFENDANTS DID NOT INFRINGE HERNANDEZ' LIBERTY INTERESTS .......... 9

V. HERNANDEZ FAILS TO PLEAD AN EQUAL PROTECTION CLAIM .......... 10

VI. CONCLUSION .......... 11

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Balistreri v. Pacifica Police Department*
902 F.2d 696 (9th Cir. 1990) .................................................... 1

*Barren v. Harrington*
152 F.3d 1193 (9th Cir.1998) .................................................... 11

*Bledsoe v. City of Horn Lake, Miss.*
449 F.3d 650 (5th Cir. 2006) .................................................... 9

*Board of Regents v. Roth*
408 U.S. 564 (1972) .................................................... 10

*Bollow v. Federal Reserve Bank*
650 F.2d 1093 (9th Cir. 1981) .................................................... 2, 10

*Brady v. Gebbie*
859 F.2d 1543 (9th Cir. 1988) .................................................... 9

*Coszalter v. City of Salem*
320 F.3d 968 (9th Cir. 2003) .................................................... 3

*Freitag v. Ayers*
468 F.3d 528 (9th Cir. 2006) .................................................... 5, 6, 8

*Garcetti v. Ceballos*
547 U.S. 410 (2006) .................................................... 1, 2, 3, 4, 5, 6, 8

*Hughes v. City of Garland*
204 F.3d 223 (5th Cir. 2000) .................................................... 9, 10

*L.W. v. Grubbs*
974 F.2d 119 (9th Cir. 1992) .................................................... 1

*Lee v. City of Los Angeles*
250 F.3d 668 (9th Cir 2001) .................................................... 11

*McGee v. Public Water Supply District #2*
471 F.3d 918 (8th Cir. 2006) .................................................... 5, 6, 8

*McGlinchy v. Shell Chemical Co.*
845 F.2d 802 (9th Cir. 1988) .................................................... 2, 8

*Patterson v. City of Utica*
370 F.3d 322 (2d Cir. 2004) .................................................... 10

*Quinn v. Shirey*
293 F.3d 315 (6th Cir. 2002), *cert. denied,* 537 U.S. 1019, 123 S.Ct. 538, 154 L.Ed.2d 426 (2002) .................................................... 9

*Rosenstein v. City of Dallas*
876 F.2d 392 (5th Cir. 1989) .................................................... 10

*Weisbarth v. Geauga Park District*
499 F.3d 538 (6th Cir. 2007) .......... 8

*Winskowski v. City of Stephen*
442 F.3d 1107 (8th Cir. 2006) .......... 10

**STATUTES**

42 U.S.C. § 1983 .......... 1, 2, 3, 8, 10, 11

California Labor Code section 1102.5 .......... 1

Fed. R. Civ. Proc. 12(c) .......... 2

# I. INTRODUCTION

Defendant San Diego County Regional Airport Authority (the "Authority") removed this action to this Court following a successful summary adjudication motion in state court. At the hearing where the Superior Court announced its intention to grant summary judgment on Plaintiff Jose Hernandez' entire Second Amended Complaint, Hernandez orally sought, and was granted, leave to file a Third Amended Complaint ("TAC"). Hernandez' TAC was a last ditch effort to resurrect his defunct whistleblower and California Labor Code section 1102.5 claims by characterizing them as civil rights violations under 42 U.S.C. section 1983. His effort was unsuccessful.

Hernandez alleges the following two purported constitutional violations in the TAC against the Authority and Thella Bowens, the Authority's chief executive: (1) that the defendants terminated his employment in retaliation for exercising free speech rights guaranteed by the First Amendment; and (2) the defendants violated his liberty interests guaranteed by the 14th Amendment by failing to provide him with a "name clearing" hearing.[1] Both of these claims fail on their face.

Hernandez' act of desperation is creative, but ultimately unavailing. The basis of any Section 1983 claim is the deprivation of a constitutional right. 42 U.S.C.A. § 1983; *L.W. v. Grubbs* 974 F.2d 119, 120 (9th Cir. 1992); *Balistreri v. Pacifica Police Dept.*, 902 F.2d 696, 699 (9th Cir. 1990). The primary problem with Hernandez' constitutional claim is that he has not pleaded, nor can he plead, that he was deprived of any constitutional rights.

First, Hernandez' claim that he was terminated in retaliation for exercising his First Amendment rights fails because he did not engage in "protected speech". Under the rule set forth by the United States Supreme Court in *Garcetti v.*

[1] Hernandez also makes vague references to equal protection violations, but there are absolutely no facts alleged in the complaint to support an equal protection claim against Defendants.

*Ceballos*, 547 U.S. 410 (2006), public employee speech that is made pursuant to the employee's job duties is not entitled to First Amendment protection as a matter of law. In this case, it is clear from Hernandez' TAC that the alleged disclosures were made pursuant to his job duties (TAC ¶16, p. 10:5-7), and as such his claim falls directly within the *Garcetti* rule.

Second, Hernandez cannot allege sufficient facts to establish the violation of his constitutional liberty interests. Hernandez claims he was entitled to a name clearing hearing because the reasons for the termination[2] involved stigmatizing information, but he has failed to allege the public disclosure of the reasons for his resignation, or that he requested a name clearing hearing, which by itself is fatal to this claim. *Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1101 (9th Cir. 1981), *cert. denied*, 455 U.S. 948 (1982).

Because Hernandez fails to set forth the necessary elements of his claim, defendant the Authority respectfully requests this Court dismiss Plaintiff's Third Amended Complaint with prejudice and enter judgment in favor of the Authority.[3]

## II. THE COURT SHOULD DISMISS PLAINTIFF'S SOLE CLAIM UNDER 42 U.S.C. SECTION 1983

"After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Fed. R. Civ. Proc. 12(c). Where a motion for judgment on the pleadings raises the defense of failure to state a claim, the pleadings face the same test as a motion under Rule 12(b)(6). *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988). In

[2] Although Hernandez alleges that he was terminated, he actually chose to resign. TAC ¶ 43, page 27, lines 3-7.

[3] Defendant Thella Bowens was served with the TAC after the Authority removed this action. Bowens will file a motion to dismiss to be heard concurrently with the Authority's motion for judgment on the pleadings. The primary grounds for the Authority's motion for judgment on the pleadings are the same as the grounds for Bowens' motion, except that Bowens has asserted the additional defense of qualified immunity.

considering a motion for judgment on the pleadings, the court must accept all material allegations in the complaint as true. *Ibid.* However, conclusory allegations need not be accepted and are not sufficient to defeat a motion for judgment on the pleadings. *Ibid.*

## III. HERNANDEZ' FIRST AMENDMENT CLAIM FAILS BECAUSE HIS ALLEGED DISCLOSURES ARE NOT PROTECTED SPEECH

The first alleged constitutional violation upon which Hernandez bases his section 1983 claim is retaliation in violation of his First Amendment rights. In order to prevail on this claim, Hernandez must allege and prove that: (1) he engaged in protected speech; (2) he suffered an adverse employment action; and (3) his speech was a substantial factor for the adverse employment actions. *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003). Hernandez' claim fails at the first prong of the test.

Hernandez bases his entire First Amendment claim on alleged disclosures that he claims were "directly related to his job." (TAC at ¶16.) Specifically, Hernandez alleges that he disclosed to his direct supervisor and other Authority executives regarding alleged improper decisions or actions by the Authority regarding lease, land use and tenant improvement issues, and alleged contract irregularities involving a parking vendor. (See generally, TAC at ¶¶10-14, 35, 45-47.) Since these alleged disclosures were within Hernandez' job duties as the Authority's Director of Landside Operations,[4] his disclosures are without First Amendment protection as detailed in the recent United States Supreme Court decision, *Garcetti v. Ceballos*, 547 U.S. 410, 126 S.Ct. 1951 (2006).

Two inquiries guide the interpretation of a whether a public employee engaged in protected speech. The first requires determining whether the employee

[4] Hernandez asserts in his TAC that the Authority is a "public entity." (TAC ¶2, p. 2:8-15.) As such, he was a public employee.

spoke pursuant to his duties as a public servant, or as a private citizen on a matter of public concern. *Garcetti,* 126 S.Ct. at 1958. *Garcetti* held that a public employee's speech or disclosures are not protected under the First Amendment where the subject speech comprises disclosures that the public employee made pursuant to his duties. *Garcetti,* 126 S.Ct. at 1960. If the alleged protected speech by the public employee was as a private citizen, as opposed to part of his duties, the second question then becomes whether the public employer had an adequate justification for treating the employee differently from any other member of the general public. *Garcetti,* 126 S.Ct. at 1958.

*Garcetti,* as well as other recent precedent, conclusively establishes that the First Amendment claim Hernandez has put forth in his TAC cannot survive the first inquiry. Each of the disclosures detailed by Hernandez was made pursuant to his duties as a public employee. As such, they fall within the *Garcetti* rule, and therefore, outside the scope of First Amendment protection as a matter of law.

### A. *Garcetti v. Ceballos* and Other Recent Cases Establish that Disclosures or Complaints by Public Employees Made in the Course of Their Public Employment Are Not Subject to Protection Under the First Amendment as a Matter of Law.

The plaintiff in *Garcetti*, Richard Ceballos, was a calendar deputy in the Los Angeles District Attorney's office, with supervisory responsibilities over other lawyers. *Garcetti*, 126 S.Ct. at 1955. After a request by a defense attorney, Ceballos investigated alleged inaccuracies in an affidavit used to obtain a critical search warrant and concluded the affidavit contained serious misrepresentations. *Id.* at 1955. Ceballos wrote a disposition memorandum recommending the case be dismissed. *Id.* at 1955-56. His supervisors proceeded with the prosecution despite Ceballos' recommendation, and Ceballos was called as a defense witness to recount his observations about the affidavit. *Id.* at 1956. When he was reassigned, transferred, and denied a promotion, Ceballos filed suit alleging violations of his

First Amendment rights in retaliation for his disposition memorandum. *Id.* at 1956. The Supreme Court held that Ceballos' speech did not qualify for First Amendment protection because it was made as an employee, and not as a citizen. *Id.* at 1956. The controlling factor in *Garcetti* was whether the employee's expressions were made pursuant to his duties. *Id.*, at 1959-1960. If the speech is made by a public employee pursuant to their official duties, the speech is not afforded First Amendment protection. *Id.* at 1956-60.

Similarly, in *Freitag v. Ayers*, 468 F.3d 528 (9th Cir. 2006), a former correctional facility officer at Pelican Bay State Prison sued several administrators claiming they had retaliated against her for engaging in constitutionally protected speech. During her tenure as a corrections officer, Freitag had numerous encounters with prisoners engaging in sexual exhibitionist behavior. *Id.* at 533-34. Freitag submitted multiple reports recommending and/or requesting the offending inmate(s) receive discipline. *Id.* at 533-34. Prison officials repeatedly ignored, discarded, and/or denied the disciplinary requests. Freitag wrote letters to the warden, the associate warden, and the director of the California Department of Corrections and Rehabilitation ("CDCR") (in Sacramento), complaining about her supervisors' responses (or lack thereof) to the alleged incidents and the resulting hostile work environment, recommending enforcement of CDCR policies regarding repeat offenders, and requesting prison officers receive additional training. *Id.* at 533-34. Freitag also complained to a California Senator and cooperated with the resulting investigation by the Inspector General. *Id.* at 535.

While Freitag acted as a citizen when she complained to the Senator and communicated with the Inspector General's office, the court determined that her internal complaints were made pursuant to her duties as a correctional officer, and thus not constitutionally protected. *Id.* at 545-46.

Finally, in *McGee v. Public Water Supply Dist. #2*, 471 F.3d 918 (8th Cir. 2006), a former district manager's position was eliminated after he made

statements questioning compliance with environmental regulations on two separate projects. McGee claimed he was terminated in retaliation for exercising his First Amendment rights. The court disagreed, holding that McGee's statements were made pursuant to his official duties, and not entitled to First Amendment protection. *McGee*, 471 F.3d at 921.

**B. Hernandez's Statements Are Not Protected by the First Amendment Because They Were Made Pursuant to His Duties as a Public Employee**

Like the public employees in *Garcetti, Freitag*, and *McGee*, Hernandez' disclosures were made pursuant to his duties as Director, Landside Operations. Indeed, Hernandez concedes these disclosures were "directly related to his job." (TAC ¶16, p. 10:5-7.) Further, according to the TAC, Hernandez performed the following job duties: "represent[ed] the Authority in dealing with tenants and contractors" (TAC ¶4, p. 3:8-9) and "managed the operations of the airport terminal buildings, the parking lots, the ground transportation services and provided expert assistance in the planning and long-range decision making for managing the airport's facilities." (TAC ¶4, p. 3:2-5.) Hernandez alleges he was "specifically required to make decisions in operating the parking facilities to ensure the highest levels of efficiency [and] economic advantage." (TAC ¶4, p. 3:6-8.) Hernandez "reported directly to the Vice President, Airport Operations, who had managerial responsibility for all aspects of airport operations." (TAC ¶ 4, p. 3:5-6.) The Vice President of Airport Operations was Hernandez' direct supervisor, a person to whom "Plaintiff consistently and constantly reported . . . all actions and events he was involved in, and withheld no information regarding his own activities, viewpoints, opinions and observance of the activities of other employees, including management." (TAC ¶7, p. 3:22-25.)

Hernandez alleges four disclosures or protected activities, all of which were made as part of the above-referenced job duties:

The first disclosure involved an alleged "handshake" deal between Bryan

Enarson (an Authority Vice President) and Host (an airport concessionaire) that allegedly restricted the Operations Division's ability to acquire space for a women's restroom, which allegedly impacted the project's budget. (TAC ¶10, p.5:15-17; ¶35, p. 22:16-23). This disclosure, which Hernandez made to "members of the Authority" (TAC ¶11, p. 5:25.), falls squarely within the duty to manage the operations of the airport terminal buildings and provide "expert assistance in the planning and long-range business decision making for managing the airport facilities," as well as representing the Authority in dealing with tenants and contractors. TAC ¶4, p. 3:2-5 and 3:8-9.

The second and third disclosures involved perceived financial problems with a lease of property formerly occupied by General Dynamics, for airport parking (TAC ¶12, p. 6:5-14; ¶35, p. 22:24-23:1) and alleged environmental and financial issues related to the long-term lease of property formerly occupied by Teledyne Ryan, for airport parking (TAC ¶13, p. 6:23-7:19; ¶35, p. 23:2-6), respectively. The second disclosure was made directly to Hernandez' supervisor, the Vice President of Airport Operations (TAC ¶45, p. 27.), while the third disclosure was made at closed door committee and staff meetings. (TAC ¶13, p. 7:13-15; TAC ¶46, p. 27:20-23.) These disclosures fall under Hernandez' duty to manage the operations of the parking lots and his duty to "ensure the highest levels of efficiency [and] economic advantage" of the airport's parking facilities. TAC ¶4, p. 3:2-8.

The fourth and final disclosure involved Lindbergh Parking, Inc. ("LPI") (an airport contractor), and its purported computational errors in a bid submission, unsatisfactory contract performance, failure to submit required insurance information, and "other offenses and actions that indicated a lack of business integrity by LPI." (TAC ¶14, 9:19-26; ¶35, p. 23:7-9.) Hernandez discovered the conduct giving rise to his final disclosure while fulfilling his duty to "represent the Authority in dealing with tenants and contractors" as well as his duty to manage

parking lot and ground transportation operations. (TAC ¶4, p. 3:2-5.) He was likewise fulfilling his duty when he reported the perceived problems to his direct supervisor. (TAC ¶ 14, p. 9:19-20.)

Because it is clear from Hernandez' own admission and from the allegations in the TAC that the alleged disclosures were made pursuant to his duties as a public employee, as opposed to as a private citizen speaking on matters of public concern, he is not afforded First Amendment protection for these statements.[5] *Garcetti*, 126 S.Ct. at 1956-60; *Freitag*, 468 F.3d at 545-46; *McGee*, 471 F.3d at 921. As such, Hernandez' Section 1983 claim fails to the extent it relies upon the First Amendment right to freedom of speech.

**C. The Court can Dismiss Hernandez' First Amendment Claim on a Motion for Judgment on the Pleadings**

As referenced above, the standards for this motion for judgment on the pleadings are the same as a motion brought under Rule 12(b)(6). *McGlinchy*, 845 F.2d at 810. Since Hernandez has alleged specific facts regarding his job duties as they relate to the disclosures that he made, it is proper for this court to dispose of Hernandez' First Amendment claim on a motion to dismiss. *Weisbarth v. Geauga Park District,* 499 F.3d 538, 546 (6th Cir. 2007). In *Weisbarth*, a former employee of the county park district brought a First Amendment retaliation claim against the park district alleging that she was terminated in retaliation for comments that she made to a consultant hired by the park district to interview employees as part of a departmental evaluation. The district court granted the park district's motion to dismiss, and the Sixth Circuit affirmed, holding that Weisbarth did not engage in protected speech under the rule set forth in *Garcetti* because Weisbarth statements to the consultant were pursuant to her official duties rather than as a private citizen,

[5] Because Plaintiff fails to get past the first hurdle of the analysis, Defendant will not in these moving papers address the remaining elements.

and thus she could not maintain her First Amendment retaliation claim. *Ibid.*

On appeal, Weisbarth argued that the court "should be hesitant to dispose of her First Amendment retaliation case based solely on the pleadings." *Ibid.* The Sixth Circuit disagreed and held that it was appropriate to decide a First Amendment retaliation claim on a motion to dismiss where, as here, the facts required to reach the conclusion that the employee spoke pursuant to his or her official duties rather than as a citizen are all set forth in the pleadings. *Ibid.*

Because the standards for a Rule 12(b)(6) motion to dismiss are the same as a motion for judgment on the pleadings, it is thus entirely appropriate to decide Hernandez' First Amendment retaliation claim on the pleadings as well since all the facts regarding his job duties and the manner in which his disclosures relate to his job duties are all set forth in the pleadings, as discussed above.

## IV. DEFENDANTS DID NOT INFRINGE HERNANDEZ' LIBERTY INTERESTS

Hernandez also asserts in his TAC that the defendants violated his "liberty" interest guaranteed by the 14th Amendment, specifically, the right to be free of stigmatizing governmental statements and the right to a name clearing hearing. (TAC ¶¶ 51-52, p. 28:14-29:4.) In order to maintain this claim, Hernandez must allege that the Authority dismissed him for reasons that might seriously damage his standing in the community and that there was a public disclosure of the charges against Hernandez that led to his resignation. *Brady v. Gebbie*, 859 F.2d 1543, 1552 (9th Cir. 1988). In other circuits, courts have also required that the plaintiff show that he requested a hearing to clear his name. *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000); *Quinn v. Shirey,* 293 F.3d 315, 323 (6th Cir. 2002) ("[A] plaintiff must request and be denied a name-clearing hearing in order to have been deprived of a liberty interest without due process."), *cert. denied,* 537 U.S. 1019, 123 S.Ct. 538, 154 L.Ed.2d 426 (2002); *Bledsoe v. City of Horn Lake, Miss.*, 449 F.3d 650, 653 (5th Cir. 2006) (plaintiff's failure to request a name-clearing

hearing was fatal to his liberty interest claim); *Rosenstein v. City of Dallas,* 876 F.2d 392, 396 (5th Cir. 1989) (stating that the elements of a § 1983 claim based upon the lack of a name-clearing hearing include that the employee "requested a hearing in which to clear his name, and that the request was denied"); Winskowski v. City of Stephen, 442 F.3d 1107, 1110 (8th Cir. 2006) (same).

Hernandez has not alleged that the Authority published any false statements about him, or that he requested a name clearing hearing. Both of these omissions are fatal to his claim.

First, Hernandez overlooks a critical element to his claim – publication. "Unpublicized accusations do not infringe constitutional liberty interests because, by definition, they cannot harm 'good name, reputation, honor, or integrity.'" *Bollow v. Federal Reserve Bank*, 650 F.2d 1093, 1101 (9th Cir. 1981), *cert. denied*, 455 U.S. 948 (1982). "For this reason alone, [Plaintiff's] liberty claim must fail." *Ibid.* Here, Hernandez does not allege the publication of the reason for his resignation. Without publication, no liberty interest has been infringed as a matter of law. Because Hernandez fails to allege the violation of a liberty interest through publication, a name clearing hearing is not required. *Board of Regents v. Roth*, 408 U.S. 564, 573 & n.12 (1972); *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004).

Further, Hernandez has not alleged that he requested a hearing to clear his name. Without a request for a name-clearing hearing, there was no need for the Authority to voluntarily offer the hearing and Hernandez' claim also fails. *Hughes,* 204 F.3d at 226.

Because Hernandez' liberty interest was not violated, and he was not entitled to, nor did he request, a name clearing hearing, his claim should be dismissed.

## V. HERNANDEZ FAILS TO PLEAD AN EQUAL PROTECTION CLAIM

Without identifying the manner in which he was treated differently than others, Hernandez claims he was denied equal protection of the law because he did

not get a name-clearing hearing. However, a name clearing hearing was not required under the facts alleged in the TAC (see above). Because the alleged deprivation of a non-existent right cannot form the basis of an equal protection claim, Hernandez' claim necessarily fails.

Aside from this obvious flaw, Hernandez' equal protection claim also fails because he fails to allege that he was treated differently than others on the basis of membership in a protected class. *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir 2001); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir.1998), *cert. denied,* 525 U.S. 1154, 119 S.Ct. 1058, 143 L.Ed.2d 63 (1999). Without this essential allegation, Hernandez' equal protection claim cannot stand.

## VI. CONCLUSION

Despite Hernandez' creative re-invention of his claims, his newly remodeled 42 U.S.C. section 1983 claims fail to get off the ground. For the reasons set forth above, and because Hernandez' TAC establishes that he cannot state an actionable claim, the Authority respectfully requests this Court grant its motion for judgment on the pleadings and dismiss Hernandez' TAC with prejudice and enter judgment in favor of the Authority.

Dated: March 3, 2008

PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP

By:/s/ Albert R. Limberg
FRED M. PLEVIN
SANDRA L. MCDONOUGH
ALBERT R. LIMBERG
Attorneys for Defendants
SAN DIEGO COUNTY REGIONAL AIRPORT AUTHORITY and THELLA BOWENS